**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JEFFREY OUELLETTE, individually and on behalf of all others similarly situated, | ) ) ) | CIVIL ACTION NO: |
| Plaintiffs, | ) | 3:13-cv-01027-AWT |
| | ) | |
| v. | ) | |
| | ) | |
| THE FRESH MARKET, INC., | ) | JULY 27, 2015 |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS MOTION TO COMPEL**

Plaintiff Jeffrey Ouellette ("Ouellette" or "Plaintiff"), though his Counsel, hereby moves

to compel Fresh Market ("Defendant" or "Fresh Market") to supplement its discovery responses

and to produce certain witnesses to be deposed.

## I.      PRELIMINARY STATEMENT

During the relevant period of this lawsuit Defendant paid its Department Managers[1]

("DMs") half time overtime pay rather than paying time and a half as is the norm. As alleged

in the amended complaint, Plaintiff claims that Defendant violates the strict requirements of the

fluctuating work week ("FWW") in several ways, including but not limited to the bonuses it

pays to DMs, its failure to include those bonuses in the calculation of overtime and the lack of

a clear mutual understanding regarding the elements of the FWW.

---

[1] DMs are also sometimes referred to as Department Heads.

Plaintiff originally served discovery requests upon Defendant over a year and a half ago. As discussed below, Defendant still has not provided all pertinent information or documents about relevant topics in this case, such as: a class list of the DMs, DMs' payroll records, information and documents concerning all the bonuses and other types of compensation it paid DMs, its good faith affirmative defenses, the creation of its FWW policy, and other lawsuits, claims, grievances, administrative actions or charges brought against Defendant. After failing to obtain this information and documents through good faith efforts and facing stonewalling by Defendant, Plaintiff now has no other choice but to move to compel.  For the reasons discussed below, and because discovery is given broad and liberal treatment, this Court should grant this motion to compel.

## II.       PROCEDURAL AND FACTUAL BACKGROUND

On July 17, 2013, Ouellette filed his Collective Action Complaint (ECF No. 1) asserting unpaid overtime claims on behalf of a nationwide collective of similarly situated Department Managers ("DMs") ("the putative FLSA Collective"). The pertinent parts of the currently operative pleadings, read as follows:

| ¶ | Amended Collective Action Complaint (ECF No. 155) | Answer and Affirmative Defenses to Amended Complaint (ECF No. 157) |
|---|---|---|
| 21 | **"Defendant does not follow the strict and narrowly construed rules that allow some employers to use the fluctuating workweek method ("FWW")** method to calculate overtime pay for non-exempt employees under some circumstances." (Emphasis added). | "Defendant denies the allegations in Paragraph 21." |
| 22 | "Defendant's uniform conduct with respect to its DMs does not create, and in fact prevents, a clear and mutual understanding between Defendant and the DMs that each DM will receive a fixed amount of pay as straight time pay for whatever hours the DM is called upon to work in a workweek, whether few or many, or that a fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, by each DM. *See* 29 C.F.R. § 778.114 (a)." | "Defendant denies the allegations in Paragraph 22." |
| 24 | "Defendant **also pays non-discretionary bonuses to its Department Managers, including but not limited to** quarterly 'Department Head Bonuses', annual 'Holiday Bonuses', Certified Trainer Bonuses, 'New Store Bonuses', and 'New Store Gold Star Bonuses',[2] in direct violation of the April 2011 Final Rule from the U.S. Department of Labor that bonuses 'are incompatible with the fluctuating workweek method of computing overtime.' *See* 76 Fed. Reg. 18,832 (Apr. 5, 2011)." (Emphasis added). | "Defendant admits that it pays bonuses to some department managers but it denies the remaining allegations in Paragraph 24." |
| 25 | "These bonuses are paid based on a variety of criteria including but not limited to (a) the number of hours worked, (b) the location of the work (e.g., various departments and stores of various ages), (c) the type of work performed (e.g., training), and (d) the achievement of certain performance metrics, some of which include the amount of labor hours spent." | "Defendant denies the allegations in Paragraph 25 as an inaccurate characterization of how department manager bonuses are calculated." |
| 27 | "These bonuses are non-discretionary. These bonus payments are all considered 'payment for hours worked' under 29 C.F.R. § 778.117 but TFM fails to include all of these bonus payments in its calculation of overtime premiums due in violation of the Fair Labor Standards Act." | "Paragraph 27 contains no factual allegations and purports to state a legal conclusion, which requires neither an admission nor a denial. To the extent a response is required, defendant denies the allegations in Paragraph 27." |
| 29 | As part of its regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA.  This policy and pattern or practice includes but is not limited to… b. willfully failing to comply with the FWW method, **including by paying bonuses as described above, which causes the pay for Department Head's weekly work to vary …"**. (Emphasis added). | Defendant denies the allegations in Paragraph 28. |

Defendant raised as some of its defenses:

---

[2] In its Memorandum in Opposition to Plaintiff's Motion for Conditional Certification Defendant asserted that the "New Store Bonus" and the "New Store Gold Star Bonus" are one and the same. (ECF No. 194 p.1 n.1).

| **First Affirmative Defense**: | Plaintiff **and all other DMs** were properly paid for all hours worked in excess of 40 per work week based on the fluctuating work week method of calculating overtime. (Emphasis added). |
|---|---|
| **Ninth Affirmative Defense**: | At all times, defendant **acted in good faith** to comply with the FLSA and with reasonable grounds to believe that its actions did not violate the statutes cited in the Complaint… **This defense also may apply to the claims of some or all of the allegedly similarly situated persons** in the putative FLSA Collective. (Emphasis added). |
| **Tenth Affirmative Defense**: | "Plaintiff's claims are barred in whole or in part by the provisions of Section 10 of the Portal-to-Portal Act, 29 U.S.C. § 259, because **actions taken in connection with plaintiff's compensation were done in good faith** in conformity with and reliance upon written administrative regulations, orders, rulings, approvals, interpretations, and written and unwritten administrative practices or enforcement policies of the Administrator of the Wage and Hour Division of the United States Department of Labor. **This defense also may apply to the claims of some or all of the allegedly similarly situated persons** in the putative "FLSA Collective." (Emphasis added). |
| **Eleventh Affirmative Defense**: | "Plaintiff's claims are barred in whole or in part by the provisions of Section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, because **any acts or omissions giving rise to this action were done in good faith** and with reasonable grounds for believing that the actions or omissions were not violations of the FLSA. **This defense also may apply to the claims of some or all of the allegedly similarly situated persons** in the putative "FLSA Collective." (Emphasis added). |

On December 2, 2013, this Court entered an Order re Rule 26(f) report, whereby discovery would continue until 90 days after the close of the opt-in period. (ECF No. 36). On December 13, 2013, Plaintiff served on Defendant its First Interrogatories and Requests for Production of Documents. (Affidavit of Erick I. Díaz Vázquez attached hereto as Ex. 5 ¶ 4).

On December 18, 2013, the Parties had a good faith teleconference to attempt to resolve discovery disputes as to whether 19 opt in plaintiffs needed to respond to individualized discovery. (Ex. 5 ¶ 5). This issue was eventually resolved through a Court order. (*Id.*)

On February 24, 2014, Defendant mailed Plaintiff its Objections and Responses to Plaintiff's December 13, 2013 Interrogatories and Requests for Production. (Ex. 1). Defendant raised eight general objections and specifically objected to all but a few of Plaintiff's twenty interrogatories. (*Id.*)

4

On or around June 26, 2014, the Parties engaged in a good faith teleconference to attempt to resolve discovery disputes, including discussion of Rule 30(b) (6) deposition topics. (Ex. 5 ¶ 7). On July 3, 2014, Plaintiff's Counsel sent a letter to Defense Counsel as part of its good faith efforts to resolve disputes over Rule 30(b)(6) deposition topics. (Ex. 5 ¶ 8). Some of the objections raised as to the Rule 30(b)(6) topics echo objections Defendant has raised as to some of the interrogatories and document requests which are the subject matter of the accompanying Plaintiff's Motion to Compel Discovery. (*Id.*)

On July 11, 2014, Defense Counsel replied to Plaintiff's Counsel's July 3, 2014 letter. (Ex. 5 ¶ 9). In it, Defense Counsel addressed Plaintiff's revised Rule 30(b)(6) deposition notice.

On July 14, 2014, Plaintiff's Counsel sent a letter to Defense Counsel to resolve disputes over Rule 30(b)(6) topics. (Ex. 5 ¶ 10). On July 18, 2014, Defense Counsel replied via letter. (*Id.*)

On August 13, 2014, Plaintiff's Counsel had a good faith conference with Defense Counsel regarding Plaintiff's insistence that Defendant supplement its responses.  (Ex. 5 ¶ 11). On August 19, 2014, Defense Counsel sent a letter to Plaintiff's Counsel regarding a noticed deposition. In the letter, among other things, Defendant took the position that "retro payments . . . are not relevant to the claims or defenses at issue in the litigation."  (*Id*. at ¶ 12).

On September 4, 2014, Plaintiff's Counsel emailed Defense Counsel following up on its good faith efforts to obtain supplemental discovery from Defendant. (Ex. 5 ¶ 13).

On September 10, 2014, Plaintiff's Counsel supplemented its discovery responses as to Mr. Ouellette. (Ex. 5 ¶ 14). In the cover letter, Plaintiff's Counsel inquired about the information it had requested from Defendant via the September 4, 2014 email.

On March 25, 2015, this Court denied Defendant's motion for partial summary judgment and granted Plaintiff's motion under Fed. R. Civ. P. 56 to conduct further discovery. (ECF No. 148). On that same day, the Court also granted Plaintiff's motion to amend the complaint to add three bonuses to the allegations in the original complaint. (ECF No. 149). On March 27, 2015, the Court also denied Defendant's motion for a protective order precluding Plaintiff from taking a Rule 30(b)(6) deposition and the deposition of Maurice Gilbert. (ECF No. 152). In said ruling the Court noted that some of Defendant's objections as to some of the deposition topics were moot because the Court denied Defendant's motion for partial summary judgment and granted Plaintiff's motion for leave to amend the complaint. (*Id.* at p. 5).

On April 15, 2015, Plaintiff's Counsel sent a letter to Defense Counsel insisting that Defendant supplement outstanding discovery. (Ex. 5 ¶ 15). On April 29, 2015 the Parties had the first of two additional good faith teleconferences. (Ex. 5 ¶ 16). Some compromises were reached, but the Parties agreed that attempts to compromise as to certain disputes had been exhausted.

On May 4, 2015, Plaintiff's Counsel sent a letter to Defense Counsel following up on several issues discussed. (Ex. 5 ¶ 17). On May 6, 2015, the Parties had the continuation of the April 29, 2015 good faith teleconference. (*Id.* at ¶ 18)

On May 27, 2015 Defense Counsel sent to Plaintiff supplemental document production bates 7506 to 9826, and indicated that it would soon produce supplemental discovery responses. (Ex. 5 ¶ 19).

On May 28, 2015 this Court entered a new scheduling order (ECF No. 181). Pursuant to it, Defendant was "to comply with discovery requests which were opposed on the basis that it had filed a motion for summary judgment and or/that case was allegedly limited to quarterly and holiday bonuses, these objections now being mooted by the Court's recent rulings (e.g., request to provide Plaintiff will **all** bonus/compensation plan documents)" (emphasis added) by June 3, 2015.  This scheduling order also provided that Defendant was to supply Plaintiff with "personnel files **and payroll records** of opt in plaintiffs", "[w]ithin 30 days of opt in date."(emphasis added).

On June 5, 2015, Plaintiff's Counsel sent a letter to Defense Counsel supplementing Plaintiff's discovery responses, requesting Defendant's supplemental production, and preliminarily identifying some deficiencies in Defendant's supplemental May 27, 2015 production. (Ex. 5 ¶ 21).

On June 12, 2015, Plaintiff received Defendant's First Supplemental Objections and Responses to Plaintiff's First Interrogatories dated June 11, 2015. (Ex. 3). From said date until the present Defendant has been supplementing its production periodically by producing mostly personnel files for opt ins on an ongoing basis. (Ex. 5 ¶ 22).

On June 12, 2015, Defense Counsel sent a letter to Plaintiff's Counsel. (Ex. 5 ¶ 23). In said letter Defense Counsel asserted that Defendant has now produced policies for the bonuses expressly identified in the amended complaint, and that "[t]he other bonuses . . . are not part of this case." (*Id*. p. 2). On that same day, Defense Counsel sent an email to Plaintiff's Counsel offering to produce payroll data for opt ins electronically. (Ex. 5 ¶ 24).

On June 17, 2015, Attorney Díaz replied via email inquiring about said proposal. (Ex. 5 ¶ 25). On June 19, 2015, Plaintiff's Counsel sent a letter to Defense Counsel regarding discovery issues raised in the June 12, 2015 letter. (Ex. 5 ¶ 26). Plaintiff's Counsel, among other things, informed Defendant that Plaintiff had exhausted his efforts to obtain information regarding all bonuses and other compensation paid to Department Managers, and insisted that Defendant supplement its prior production for the opt ins.

On June 25, 2015, Defense Counsel emailed Plaintiff's Counsel indicating that she was following up on request for additional information. (Ex. 5 ¶ 27).

On July 4, 2015, Defense Counsel, Attorney Alexander, emailed Plaintiff's Counsel, Attorney Díaz, regarding production of electronic payroll records and reaffirmed Defendant's objection to producing information about bonuses other than those expressly stated in the amended complaint. (Ex. 5 ¶ 28). On July 6, 2015, Plaintiff's Counsel, Attorney Díaz, agreed to electronic payroll data production and asked for expected delivery date for same. (*Id*. at ¶ 29).

On July 10, 2015, Plaintiff's Counsel, Attorney Díaz, emailed Defense Counsel, Attorney Alexander, asking for update regarding production of electronic payroll data. (Ex. 5 ¶ 30). On July 13, 2015, Attorney Alexander replied via email in pertinent part stating that she would "get back [to] you the ETA as soon as possible." (*Id*.).

On July 13, 2015, Attorney Díaz emailed Attorney Alexander expressing frustration over the delay in obtaining payroll data because -although the Parties had good faith teleconferences on April 29, 2015 and on May 6, 2015- it was not until June 12, 2015 that Defendant for the first time suggested producing payroll data for the opt ins via electronic spreadsheets. (Ex. 5 ¶ 31).

On July 24, 2015, Defense Counsel sent an email indicating that Defendant will produce electronic payroll data for the opt in Plaintiffs before the end of the following week. (Ex. 5 ¶ 32).

Plaintiff's May 15, 2015 Renewed Motion for Conditional Certification and Court Authorized Notice Pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA") (ECF No. 170, 170-1) is fully briefed, and pending a decision by this Court.

## III.   LEGAL PRINCIPLES

### A.  Motions to Compel Discovery

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1) should be read broadly, and "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Fed. R. Civ. P. 37 provides that, "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions."  "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Favale v. Roman Catholic Diocese of Bridgeport*, 233 F.R.D. 243, 246 (D. Conn. 2005). The party objecting to discovery requests bears the burden of showing why its objections should be sustained. *Obiajulu v. City of Rochester*, 166 F.R.D. 293, 295 (W.D.N.Y. 1996).

### B. Fluctuating Work Week ("FWW")

Using the FWW method, an employer need only pay ½ of a regular rate for each additional hour over forty in a week –as opposed to the more prevalent method of paying overtime at a rate of time and a half the fixed regular rate- and the regular rate is determined by dividing the weekly pay by all hours worked. Therefore, the FWW method allows an employer to pay *less per hour* for each overtime hour worked above forty. *See* 29 C.F.R. § 778.114(b). This Court has noted that the "consequence" of utilizing the FWW method to pay overtime is "enormous". *Mian v. GPM Invs., LLC*, 896 F. Supp. 2d 145, 147 (D. Conn. 2012) (J. Underhill).

Under 29 C.F.R. § 778.114, employers may only use the FWW method if all of the following requirements are met: (1) the employee's hours fluctuate from week to week; (2) the employee receives a fixed weekly salary which remains the same regardless of the number of hours the employee works during the week (excluding overtime premiums); (3) the fixed amount is sufficient to provide compensation at a regular rate not less than the legal minimum wage; (4) the employer and employee have a clear mutual understanding that the employer will pay the employee a fixed salary regardless of the number of hours worked; and (5) the employee receives a fifty per-cent (50%) overtime premium in addition to the fixed weekly salary for all hours worked in excess of 40 during the week. *See, e.g., Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 255 (S.D.N.Y. 2013).

Because the FWW method can undermine the FLSA's remedial purpose, it is "an exception to the normal rights of the employee," and Defendant must prove "that all the requirements for applying the method are present." *Dingwall v. Friedman Fisher Assocs.*, 3 F. Supp. 2d 215, 221 (N.D.N.Y. 1998); *Stokes v. Norwich Taxi, LLC*, 289 Conn. 465, 481 (2008) ("We find more persuasive those decisions concluding … that the employer bears the burden to show that the fluctuating workweek method applies under the facts of the case."); *see also Burgess v. Catawba Cnty.*, 805 F. Supp. 341, 348 (W.D.N.C. 1992) (defendant bears burden of establishing that it complied with FWW regulations).

## IV.    ARGUMENT

**A. This Court should compel Defendant to produce a class list –including telephone numbers and email addresses- along with information and documents regarding members of the FLSA § 216(b) putative collective action or policies applicable to them (Interrogatories Nos. 1 through 5, 10, 12, 15, 17, and 18; Request for Production of Documents 1 through 5, 7, 9, 11, 12, 15 through 29).**

The first category of information and documents Plaintiff seeks by this motion to compel includes the putative class list and information and documents regarding putative class members who have not yet opted into the FLSA § 216(b) action. Defendant asserts that it "objects to Plaintiff's attempt to discover information concerning all putative 'class members' prior to the Court's ruling on Plaintiff's motion for conditional certification". [3] *See e.g.*, Objection Interrogatory No. 1 (Ex. 1).

---

[3] For the verbatim objections Defendant has asserted in response to Plaintiff's discovery requests, see Defendant's Objections and Responses to Plaintiff's First Interrogatories and Requests for Production of Documents (dated Feb. 24, 2014) attached hereto as Ex.1, and Defendant's First Supplemental Objections and Responses (dated June 11, 2015) attached hereto as Ex. 3.

Defendant further opposes producing the class list and information and documents regarding the putative collective members prior to conditional certification generally on grounds that requests for class list information, including telephone numbers and email addresses, "seeks to invade the privacy rights of Defendant's current and former employees… [and is] irrelevant tot Plaintiff's claims." *See e.g.*, Objection Interrogatory No. 2 (Ex. 1).

Even prior to conditional certification, this Court should compel Defendant to produce the class list and information and documents about the putative collective members because such information is relevant for Plaintiff to continue to discover evidence which supports his claim that the Department Managers ("DMs") are similarly situated and that they are due unpaid overtime wages. Indeed, this and other courts routinely permit pre-conditional certification discovery in collective actions such as this one. *See Zaniewski v. PRRC Inc.*, 2012 U.S. Dist. LEXIS 39261, at *4 (D. Conn. Mar. 22, 2012)[4] (granting motion to compel class list and noting that "Pre-certification discovery of potential class lists is favored by most cases considering the question, within the contexts of Rule 23, FLSA, or both."); *Youngblood v. Family Dollar Stores, Inc.,* 2011 U.S. Dist. LEXIS 52821, at *11-14  (S.D.N.Y. Jan. 5, 2011) (ordering employer to disclose contact information of putative class members prior to certification despite arguments it would violate class members' privacy); *Whitehorn v. Wolfgang's Steakhouse*, 2010 U.S. Dist. LEXIS 58460, at *4 (S.D.N.Y. 2010) ("While some district courts have exercised this discretion to deny pre-certification disclosure of contact information, the weight of authority in this district counsels in favor of allowing such disclosures in FLSA cases.).[5]

---

[4] Unpublished cases that have not been previously produced are attached hereto as Ex. 2.

[5] S*ee also Sedtal v. Genuine Parts Co.*, 2009 U.S. Dist. LEXIS 63261, at *20 (E.D. Tex. July 13, 2009) ("Allowing Plaintiffs to discover this information at this time may help them demonstrate that a sufficient number of similarly situated plaintiffs exists to conditionally certify the action."); *Fei v. WestLB AG*, No. 07 Civ. 8785 (HB) (FM), 2008 U.S. Dist. LEXIS 33310, at *5-6 (S.D.N.Y. Apr. 23, 2008)("[C]onditional certification is not a prerequisite to the turnover of information concerning the identity of potential class members.") *Hammond v. Lowe's Home*

Plaintiff's request for information, policies and documents related to <u>all</u> the putative collective members is supported by the same reasoning. Plaintiff wishes to determine whether all DMs were in fact subject to the same pay policies and the extent of the damages owed to the putative collective members. This information is discoverable, and Defendant should be compelled to produce it.

Defendant's additional objection to producing contact information and documents regarding the putative collective members is its claim that releasing such information invades the putative collective members' privacy. Such argument, however, has also been repeatedly rejected by courts. *Whitehorn*, 2010 U.S. Dist. LEXIS 58460, at *8 ("[C]ourts have found that the plaintiff's 'need and due process right to conduct discovery' outweighed any privacy concerns of the putative plaintiffs.'"); *Youngblood,* 2011 U.S. Dist. LEXIS 52821, at *13-14 ("disclosure of the names and addresses of potential class members 'does not involve revelation of personal secrets, intimate activities, or similar private information, which have been found to be serious invasions of privacy.'" ); *see also Khalilpour v. CELLCO P'ship*, 2010 U.S. Dist. LEXIS 43885, at *8-9 (N.D. Cal. April 1, 2010) (accord); *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 554 (N.D. Ill. 2008) (disclosure of contact information of putative class members does not implicate "more intimate privacy interests such as compelled disclosure of medical records and personal histories.") (citation omitted). Here, Plaintiff seeks information about the putative collective members so that he can prove that collective action treatment is appropriate. This information is well within the scope of permissible discovery at this stage in the litigation.

---

*Centers, Inc.*, 216 F.R.D. 666, 671 (D. Kan. 2003) (pre-certification disclosure is "necessary for the plaintiff to properly define the proposed class.").

The Court should also instruct Defendant to produce personnel files (Request No. 2) and payroll records (Request No. 16) for <u>all</u> of the DMs in the relevant period; not just for the opt ins.[6] Such information is relevant because, in cases like this one which involve the FLSA, the rate of incidence of violations may help Plaintiff establish liability. *See, e.g., Kiser v. Pride Communs., Inc.*, 2011 U.S. Dist. LEXIS 124124, *1, 2011 WL 5080162 (D. Nev. Oct. 26, 2011) (held information relating to payroll records, electronically stored data and paper documents used to generate payroll, time records, W-2 forms, and other documents or electronic data referencing payment or hours worked for both plaintiff and other employees "similarly situated" were relevant to the allegations in the FLSA complaint); *Rushing v. Rout,* 1997 U.S. Dist. LEXIS 23585, *6, 1997 WL 901901 (W.D. Tenn. Apr. 22, 1997) (held as a matter of law that defendants had an actual practice of improper deductions where they made at least seven deductions involving several employees in 1992 and 1995).

Additionally, Plaintiff is entitled to discovery of this information so as to be able to conduct class certification discovery on an equal footing with Defendant. *See Babbitt v. Albertson's*, 1992 U.S. Dist. LEXIS 19091, at *17 (N.D. Cal. 1992) (where defendant had access to information, "plaintiffs should have the same access to the information at the class certification stage."). Defendant obviously possesses the names and contact information for each and every present and former DM, and has the ability to contact them at will.  Plaintiff should not be disadvantaged in this respect. To level the playing field, Plaintiff must be permitted access to the same information concerning putative class members that Defendant has.

---

[6] To the extent that the Court disagrees to order Defendant to provide payroll records for the entire class at this time, it should set a deadline for Defendant to provide electronic payroll records for the opt ins. Defendant has suggested that they are forthcoming, but Plaintiff believes they should have been produced already.

For the reasons articulated above, the Court should compel Defendant to produce a class list —including telephone numbers and email addresses— along with information and documents regarding members of the FLSA § 216(b) putative collective, such as their personnel files, records regarding the hours that they worked, and their payroll records (Interrogatories Nos. 1, **2,** 3 through 5, 10, 12, 15, 17, and 18; Request for Production of Documents 1, **2,** 3 through 5, 7, 9, 11, 12, and 15, **16** through 29 ). *See Reich v. Homier Distrib. Co*., 2005 U.S. Dist. LEXIS 14091, *5 (N.D. Ind. July 12, 2005) (in case involving dispute over applicability of FWW method to calculate unpaid overtime, ordering employer to respond to interrogatory requesting names, contact information, and dates of employment for every person who, like plaintiff, worked as a "sales partner" for defendant).   This Court should also overrule Defendant's objections regarding the above interrogatories and document requests premised on its claims that it does not need to produce information or documents about the collective prior to conditional certification.

### B.  This Court should compel Defendant to respond to discovery requests regarding <u>all</u> of the bonuses and other compensation paid to Department Managers. (Interrogatories Nos. 5 and 6 and to Request No. 4).

Plaintiff asked Defendant to identify any documents, including but not limited to bonus policies, that describe the compensation or benefit plans applicable to DMs from July 17, 2010 to the present; to identify the effective dates of said documents, and to produce them. So far, Defendant has only identified and produced bonus policies concerning the four bonuses which are expressly referenced in the Amended Complaint (i.e., quarterly Department Head, annual "Holiday", New Store/New Store Gold Star, and Certified Trainer). In doing so, Defendant has stubbornly taken the position that any other bonus is not at issue in this case.[7] *See e.g*., July 4,

---

[7] This Court already implicitly held that the bonuses listed in the Complaint are not the only bonuses at issue in this case when it granted Plaintiff's motion to amend the original complaint. *See Orders re Plaintiff's Motion to*

2015 Email from Attorney Alexander at #3 Ex. Q attached to Ex. 5 ("we do not waive our position that such bonuses are not part of this case and we do not agree that such information is relevant or that you may pursue claims based on such bonuses.")

One common liability theory Plaintiff asserts is that the bonuses Defendant pays to its DMs violate the 2011 Final DOL Rule that bonuses are incompatible with the FWW overtime method. (*See* Am. Compl. ¶ 24). Another theory of liability is that some of the bonuses Defendant pays DMs are tied to the number of hours DMs work, to when the hours are worked, or to the type of work done. (*See, e.g.*, Am. Compl. ¶ 25; *see also O'Brien v. Town of Agawam*, 350 F.3d 279 (1st Cir. 2003) (bonuses vary week to week based on hours worked violate the FWW); *Ayers v. SGS Control Servs.,* 2007 U.S. Dist. LEXIS 19634, *33 (S.D.N.Y. Feb. 26, 2007) (ECF No. 28-24) ("any Plaintiff who received sea pay or day-off pay did not have 'fixed' weekly straight time pay, in violation of 29 C.F.R. § 778.114(a)")). Thus, which bonuses Defendant pays its DMs are relevant in this case.

For instance, paystubs and other documents received so far reveal that —in addition to the bonuses listed in the Amended Complaint— DMs have received Keyholder/Management Relief, Miscellaneous, Referral, and Relocation bonuses in addition to gift cards and "retro pay OT for travel time." (*See* e.g., ECF Nos. 170-9 pp. 13, 21, 24; 170-12 pp.2, 4-7.) Further, a document Defendant has produced reflecting earnings codes lists, *inter alia*, a Shadow Equity Bonus, Miscellaneous Bonus, and a Runzheimer bonus. (TFM 598-600). Defendant, however, has not produced any policy or other documents regarding these bonuses.

---

*Amend Complaint and Plaintiff's Motion for Conditional Certification* (ECF No. 149) at p. 5 ("Here, similarly, while the proposed amended complaint alleges five bonuses, only two of which the plaintiff received, **it also alleges a broader scheme**….") (emphasis added); *see also* May 28, 2015 Scheduling Order at p.1 (setting June 3, 2015 as deadline for Defendant to comply with discovery requests which were opposed on the basis that it had filed a motion for summary judgment and or/that case wa[s] allegedly limited to quarterly and holiday bonuses, these objections now being mooted by the Court's recent rulings (e.g., request to provide Plaintiff will **all** bonus/compensation plan documents).") (emphasis added).

Because information about other DM bonuses and other compensation is relevant to whether Defendant violates the FWW, this Court should compel it to identify <u>all</u> bonuses and other compensation policies and to produce corresponding documents. *See, e.g., Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 72 (D. Conn. 2010) (courts normally allow discovery to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case).

### C. This Court should compel Defendant to produce information about its affirmative defense that it acted in good faith in its attempt to comply with the FWW method (Interrogatory No. 16 and Requests No. 10).

Under the FLSA, employee-plaintiffs are awarded double liquidated damages unless the employer-defendant can show that its failure to pay overtime wages "was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999). In its Answer and Affirmative Defenses to Amended Complaint, Defendant has alleged as its Ninth, Tenth and Eleventh Defenses that it acted in good faith. (*See* § II, *supra, citing* ECF No. 157 pp. 7-8).

Plaintiff served on Defendant discovery requests regarding "any and all efforts undertaken by Defendant to learn and comply with the applicable federal or state overtime laws as they pertain to Plaintiff and members of the putative collective action, including but not limited to compliance with the fluctuating workweek ('FWW') method of overtime compensation." Interrogatory No. 16 and Request No. 10.

17

Defendant did not respond at all to these discovery requests, objecting to them, *inter alia*, on grounds that they seek "information protected by the attorney-client privilege, the work-product privilege, or any other applicable privilege." (Ex. 1).

Here, by asserting good faith defenses, Defendant has in effect used legal advice as a sword. In turn, by invoking the attorney client privilege in its objection to responding to relevant discovery requests about its good faith affirmative defenses, it is also using the privilege as a shield. That it cannot do. *See, e.g., Henry v. Quicken Loans, Inc*., 263 F.R.D. 458, 469 ( E.D. Mich. 2008) ("the attorney client privilege cannot at once be used as a shield and a sword.") In a recent case involving an FLSA collective action, a sister court held that where -like here- a defendant asserts good faith affirmative defenses against liquidated damages and a longer statute of limitations, plaintiff is entitled to discovery on said defenses. *Scott v. Chipotle Mexican Grill, Inc.*, 2014 U.S. Dist. LEXIS 175775, *245 (S.D.N.Y. Dec. 18, 2014) (denying defendant's motion for protective order based on attorney-client privilege grounds, and instructing employer to produce all documents previously withheld on privilege grounds which were responsive to discovery requests regarding employer's two FLSA statutory defenses requiring showings of good faith).

Here, Plaintiff may win, *inter alia*, liquidated damages under the FLSA if it can defeat Defendant's asserted affirmative defenses based on alleged good faith. *See, e.g., Graves v. Chubb & Son, Inc.*, 2014 U.S. Dist. LEXIS 44490, at *25-26 (D. Conn. March 31, 2014) (plaintiff won liquidated damages because defendant "has not brought forward any evidence at this stage to raise a material factual dispute as to whether it could meet the standard set forth in *Herman* of 'subjective good faith' and 'objectively reasonable grounds.'")

To do so, Plaintiff must be allowed discovery regarding the basis for Defendant's assertions of good faith efforts to comply with wage laws and the FWW method. Accordingly, this Court should overrule Defendant's assertions of attorney-client and work-product privilege and compel it to respond to Interrogatory No. 16 and Requests No. 10.

### D. This Court should compel Defendant to produce information about DMs who have suffered pay docking (Interrogatory No. 18 and Request No. 12).

Under the FWW method of paying overtime, an employer may pay a worker half-time for overtime hours worked instead of time-and-one-half if it follows a strict set of rules, which includes paying a "fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many." 29 C.F.R. § 778.114(a); *see also Sisson v. Radioshack Corp.,* 2013 U.S. Dist. LEXIS 40135, at * 4-12 (N.D. Ohio March 11, 2013) (ECF No. 170-20). If an employer reduces an employee's weekly compensation, then by docking the employee's pay it violates the FWW's fixed weekly salary requirement. *See Brumley v. Camin Cargo Control, Inc.*, 2010 U.S. Dist. LEXIS 144198, *13 (D.N.J. Apr. 20, 2010) (ECF No. 28-26) (denying summary judgment to Defendants on whether they complied with the FWW method where Defendant conceded that on at least one occasion it docked an inspector's fixed salary.) Therefore, whether DMs have suffered docking is relevant to Plaintiff's claims that Defendant violates the FWW. In pertinent part of Defendant's response to Interrogatory No. 18, it stated: "Defendant has produced the relevant payroll records for all employees who have opted into this matter for the periods they worked as Department Managers."[8] This response is deficient in two ways. First, Defendant should produce records not just for the opt ins; but for the putative collective members as well. This is because dockings of other DMs could invalidate

---

[8] This assertion referred to all the payroll records for opt ins as of Feb. 24, 2014. Plaintiff is currently waiting for payroll records for opt ins who joined the case after Feb. 24, 2014.

the FWW for <u>all</u> the DMs, not just the current opt ins. *See Dooley v. Liberty Mutual Insurance*, 369 F. Supp. 2d 81, 86  (D. Mass. 2005) (premium pay for employees who did Saturday work invalidated FWW method for all of defendant's employees-even those who did not work on Saturdays).

The second reason why Defendant's response is defective is that it cannot merely point to payroll records instead of responding to the interrogatory to fulfill its discovery obligations. *See, e.g., Vazquez-Fernandez v. Cambridge College, Inc.*, 269 F.R.D. 150, 160 (D. P.R. 2010) (ordering Defendant to Respond to Interrogatory No. 25 and noting that "it is not sufficient to answer an interrogatory by referring to pleadings or other discovery"). Indeed, payroll records -by themselves- may not allow Plaintiff to determine which DMs were docked pay. To illustrate, as part of Plaintiff's opposition to Defendant's second motion to stay (ECF No. 111), Plaintiff submitted that a preliminary review of payroll records and other documents produced as of that date suggested that there were three instances of suspected docking. (*Id*. at pp. 21-22, 23). In response, attached to Defendant's reply brief (ECF. 121-1), Defendant produced a declaration from Michael Hoffman stating that only one of those instances (i.e., Lemoine's) reflected an "error". (*Id*. ¶¶ 3-5).

Assuming *arguendo* that Hoffman's declaration is correct and only one of the three instances[9] identified in the opposition to the second motion to stay was a docking, then it illustrates why Defendant should expressly respond to this interrogatory. Namely, Defendant should answer the interrogatory instead of just referring to payroll records because those payroll records alone apparently cannot determine which instances DMs were docked pay.

---

[9] The three instances did not represent an exhaustive list of all potential dockings as discovery is ongoing.

If, however, the Court allows Defendant to refer Plaintiff to payroll documents in response to this interrogatory, Defendant should be ordered, at a minimum, to identify by bates numbers or through some other means in the instance of electronic payroll records, the specific payroll records it claims are responsive to this interrogatory seeking to identify instances of docking pay. *See Herdlein Technologies, Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 106-07 (W.D.N.C. 1993) ("a responding party who relies on the provisions of Rule 33(c) to produce business records in lieu of an express answer ***must specify in detail the records or documents from which the interrogating party may derive an answer to the interrogatory***.") (emphasis added).

In the alternative, if Defendant's position is that there were no such dockings of pay besides the one instance Plaintiff has identified (*see* ECF No. 121-1 at ¶ 5), then it should amend its response to this interrogatory accordingly instead of just referring Plaintiff to review the payroll records Defendant has produced.

> **E. This Court should compel Defendant to produce all information and documents regarding "all lawsuits, claims, grievances, administrative actions or charges, other than this lawsuit, brought by any person or entity against Defendant" concerning claims alleging violations of state or federal wage and hour laws. (Interrogatory No. 19 and Request No. 13).**

Plaintiff's Interrogatory No. 19 states:

Interrogatory No. 19: Please identify all lawsuits, claims, grievances, administrative actions or charges, other than this lawsuit, brought by any person or entity (including the name of the court or agency, the docket number, the names of all parties and the date of the filing) against Defendant concerning Defendant's employment practices including, without limitation, claims alleging violations of state or federal wage and hour laws.

Defendant's objection states in part: "For purposes of this response, Defendant interprets the term 'claims' to pertain to actual filings with administrative agencies or courts, and interprets the term 'charges' to pertain to actual filings with administrative agencies. Defendant is not interpreting either term to refer to informal inquiries." (Ex. 1). Notwithstanding the objection, Defendant answered Interrogatory No. 19 in pertinent part as follows:

> *Joshua Stallings v. The Fresh Market, Inc.*, case No. 120902216 (Philadelphia County Court of Common Pleas (filed Sept. 19, 2012). Plaintiff alleged that the Defendant's use of the fluctuating workweek method of calculating overtime was not permitted under the Pennsylvania Minimum Wage Act (PMWA)…The matter was discontinued and dismissed with prejudice in September 2013.

(Ex. 1).

In turn, Plaintiff's Request No. 13 asked for all documents regarding Defendant's response to Interrogatory No. 19.  Defendant partially responded to Request No. 13 by stating "since the Joshua Stallings v. The Fresh Market, Inc. case related only to a Pennsylvania state law that is not at issue in this case, documents related to that matter are not likely to lead to the discovery of admissible evidence in this case and thus are beyond the scope of permissible discovery." (Ex. 1). Notwithstanding the above objection, Defendant produced as part of discovery in this case a copy of the class action complaint in the *Joshua Stallings v. The Fresh Market, Inc.*, case No. 120902216. Defendant, however, has not produced any other documents regarding said case.

Defendant's responses above to Interrogatory No. 19 and Request No. 13, respectively, are insufficient. Defendant should identify even any "informal inquiries," as those may lead to discoverable information about similar claims brought against Defendant. Such information would be relevant, among other things, to determine whether Defendant took good faith measures to ensure it complied with the FLSA and wage laws.

Similarly, Defendant should produce other documents regarding the *Joshua Stallings v. The Fresh Market, Inc.* case. Plaintiff learned through public records that, in *Stallings*, Defendant unilaterally sent payments to the class members to compensate them for time and a half overtime pay. Thus, for example, documents regarding how defendant calculated those damages are relevant in this case to damages questions. Just the fact that *Stallings* involved Pennsylvania law is not a valid basis for Defendant to refuse to produce all non-privilege documents regarding that case. *See, e.g., Rodger v. Electronic Data Sys. Corp.*, 155 F.R.D. 537, 542 (E.D.N.C. 1994) (held defendants were required to provide plaintiffs with requested information with regard to discrimination and wage and hour lawsuits brought by employees in the State Operations Division).

### F. This Court should compel Defendant to produce information and documents regarding the creation of its FWW policy. (Request No. 18).

Plaintiff, through Request No. 18, requested all documents regarding "the creation and implementation of the overtime pay policy described in the lawsuit" during the period of the claim. In addition to standard boilerplate objections based on alleged irrelevance, undue burden and vagueness, Defendant objected to the request on the grounds of attorney-client privilege, work product doctrine, or any other privilege recognized by law. Notwithstanding objections, Defendant produced a document regarding the discontinuance of the FWW method of overtime in April 2015. However, to date Defendant, has not produced a single document regarding the *creation* of the FWW overtime policy. This Court should overrule Defendant's objections, and Defendant should have to produce documents regarding the creation and original implementation of the FWW.  Documents surrounding the creation and implementation of Defendant's FWW overtime policies are relevant to, among other things, the good faith defense.

Here, Defendant presumably consulted with legal counsel prior to creating and implementing FWW, which ostensibly is the basis for Defendant objecting to this request on privilege ground. Indeed, it is likely that it received advice as to how to implement the FWW in a way that complied with the law. However, because Defendant asserted a good faith defense against the alleged FLSA violations, Plaintiff is entitled to learn whether Defendant ignored its advice of counsel in any way, which could invalidate its asserted good faith defense.  Put differently, Fresh Market's state of mind is at issue and thus the privilege is waived. *See Scott v. Chipotle Mexican Grill, Inc*., 2014 U.S. Dist. LEXIS 175775, *239, 67 F. Supp. 3d 607 (S.D.N.Y. 2014) ("[T]here is far more evidence here than in *Wang* that the defendant had, and perhaps ignored, the advice of counsel in classifying its employees as exempt. Given the circumstances in this particular case, 'legal advice that [the defendant] received may well demonstrate the falsity of its claim of good faith belief,' putting [defendant's] state of mind at issue.") It is also worth noting that although Defendant asserted objections based on privilege as to Request No. 18, Defendant's privilege log does not identify any documents regarding the creation of the FWW.[10]

In sum, because documents responsive to Request No. 18 are relevant and not privileged, if they exist Defendant should be ordered to produce them.

---

[10] This is inferred from the fact that the privilege log lists documents with dates from 2011 forward or "undated" and the description provided of said documents does not suggest that they relate to the original creation of Defendant's FWW overtime policy.

**G. This Court should compel Defendant to identify any witnesses who are no longer employed by it, and Defendant should be ordered to identify and provide their last known contact information address.**

In its November 25, 2013 initial disclosures, Defendant stated in relevant part that Store Managers and "[o]ther employees and former employees of The Fresh Market who discussed the fluctuating work week method of calculating overtime with department managers" were likely to have discoverable information the Defendant may use to support its claims or defenses. (Ex. 4). In turn, Interrogatory No. 3 asked Defendant to provide, among other things, the names of the Store Managers and District Managers of the DMs in the putative collective. Defendant responded by providing only their names.

During a good faith teleconference, Plaintiff requested that Defendant supplement its production by identifying which of those Store Managers, District Managers or employees are no longer employed by Defendant, and to provide their last known contact information. Defendant refused to provide said information, arguing that former Store Managers and District Managers are represented by the Defendant, and that Plaintiff cannot contact them directly.

Local Rule 26 defines, "Identify (With Respect to Persons)", as "to provide , to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment". Further, Plaintiff's should receive this information to, among other things, be able to contact potential witnesses and learn more about the case, as may be necessary.  Hence, it is appropriate for Plaintiff to insist that Defendant provide it with a list of which Store Managers, District Managers or other persons identified in response to Plaintiff's discovery requests are no longer employed by Fresh Market, and for those individuals that Defendant provides their last known address.

Moreover, Defendant's argument that it should not have to provide last known contact information for former employees because it continues to represent former employees lacks merit for at least two reasons. First, and most importantly, courts that have addressed whether a defendant-employer's continues to represent its former employees during litigation have for the most part permitted discovery of contact information of the former employees, subject to the plaintiff's counsel not seeking confidential information arising out of attorney communication's with legal counsel.

In *Dubois v. Gradco*, 136 F.R.D. 341 (D. Conn. 1991), Judge Cabranes found that the former employees of an adverse corporate party could not themselves be considered adverse parties, within the meaning of Rule 4.2. The Court noted as a caveat to this general rule:

> Some former employees continue to personify the organization even after they have terminated their employment relationship. *An example would be a managerial level employee involved in the underlying transaction, who is also conferring with the organization's lawyer in marshaling the evidence on its behalf*. But the rationale is a different one. This kind of former employee is undoubtedly privy to privileged information, including work product, and an opposing lawyer is not entitled to reap a harvest of such information without a valid waiver by the organization, or according to narrow exceptions to the discovery . . .  which permitted ex parte interviews of former employees unless they remained members of the "control group" (such as non-employee directors).

*Dubois*, 136 F.R.D. at 346 (emphasis added) (citation omitted). Judge Cabranes also noted in *Gradco* that the defendant was not entitled to a protective order because it failed to identify any specified privilege information to with the former employees were privy and thus failed to carry its burden of justifying a protective order. *Id.*

Here, like in *Gradco*, Defendant has not carried its burden of identifying any specific privilege information to which the former Store Managers, District Managers or other former employees were privy which would justify them not being contacted by Plaintiff's Counsel to inquire of them in their capacity as witnesses. Therefore, this Court should require Defendant to provide Plaintiff with the last known contact information of any former Store Managers, District Managers or other employees likely to have discoverable information. *See United States v. Hous. Auth.*, 179 F.R.D. 69, 72-73 (D. Conn. 1997) (court granted plaintiff's motion for an *ex parte* interview with former official of defendant because defendants' counsel did not represent former official, and defendant presented no evidence that former official had participated in formulation or discussion of litigation tactics or strategy); *Sedtal v. Genuine Parts Co.*, 2009 U.S. Dist. LEXIS 63261, *22 (E.D. Tex. July 23, 2009) (compelling company to respond to interrogatory No. 18 requesting the names and addresses of all managers who resigned, were discharged, fired, terminated or otherwise separated from defendant)

Second, even assuming *arguendo* that Defendant's counsel represents some of The Fresh Market's former employees regarding this lawsuit, Plaintiff would still be entitled to obtain their last known address to conduct background checks on witnesses for potential impeachment purposes at depositions and trial, as may be necessary. Defendant cannot refuse to produce said information on speculation that Plaintiff will misuse it. *See Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 689 (D. Kan. 1996) ("[Defendant] expresses concern that counsel for plaintiff will contact its employees outside its presence. It may not pose its concern as cause to unilaterally disregard its duties of disclosure under Rule 26(a). Nor will the court indulge in speculation that counsel will unethically use the disclosed information.")

**H.   This Court should compel Defendant to produce Daniel J. Watkins Jr. and Michael Hoffman for their individual depositions.**

Michal Hoffman, Defendant's Director of Payroll, and Daniel J. Watkins, Jr., Defendant's Director of Planning & Analysis-Operations, have each submitted declarations to the Court in this case based on their personal knowledge about the allegations in this lawsuit. (*See, e.g.*, ECF Nos. 90-2, 98-1). Plaintiff has told Defendant that it wants to take their individual deposition. Defendant, however, objects to Hoffman and Watkins being deposed in an individual capacity unless said depositions are done in conjunction with their depositions in response to a Rule 30(b)(6) deposition, which Plaintiff intends to take.

Plaintiff now moves to compel Defendant to produce Hoffman and Watkins to be deposed in their individual capacities separate and apart from a Rule 30(b)(6) deposition which remains to be taken. Hoffman and Watkins clearly have discoverable information given that they have submitted declarations filed with the Court in this case. While Plaintiff would normally try to minimize disruption of witnesses' schedules, such as by attempting to take a Rule 30(b)(6) deposition and a personal deposition on the same date, here Plaintiff does not think that is possible.

As evinced by this motion to compel, Plaintiff is still trying to obtain additional documents from Defendant before it schedules the Rule 30(b)(6) deposition. In the meantime, Plaintiff should not have to wait to depose Hoffman and Watkins, whose declarations were provided in support of a motion for partial summary judgment. Other courts that have considered the issue have permitted individual depositions before the same witness is deposed pursuant to a corporate deposition. *See Taylor v. Shaw*, 2007 U.S. Dist. LEXIS 16305, *6-7 (D. Nev. Mar. 5, 2007) ("A deposition of an individual and a deposition of the same person as a representative of the organization are two distinct matters. Rule 30 allows depositions of a

witness in his individual capacity and in an organizational capacity because the depositions serve distinct purposes and impose different obligations."); *In re Motor Fuel Temperature Sales Practices Litig.*, 2009 U.S. Dist. LEXIS 118705, *38-39 (D. Kan. Dec. 16, 2009) ("[C]ourts have consistently held that the fact that a company's employee was deposed under Rule 30(b)(1) does not insulate the company from producing the same--or another--individual as a corporate representative to give a Rule 30(b)(6) deposition."); *Sabre v. First Dominion Capital, L.L.C.*, 2001 U.S. Dist. LEXIS 20637, *1 (S.D.N.Y. Dec. 10, 2001)(held there were separate seven hour limits on individual's deposition in individual capacity and 30(b)(6) deposition of same individual as designated corporate representative otherwise there would be potential for over-reaching by company in designating a person who was deposed individually as corporate representative).

I.   **This Court should compel Defendant to produce information and emails and/or notes from District Managers or Regional Managers in response to Interrogatory No. 12.**

Interrogatory No. 12 asks that Defendant identify documents used to communicate Defendant's overtime compensation system, including the FWW method. Defendant raised some objections to this interrogatory and produced some responsive documents. However, Defendant does not appear to have produced emails or notes from District Managers or Regional Managers that may be responsive. In a good faith teleconference, Plaintiff suggested that Defendant ask said managers whether there are any responsive emails. Defendant indicated that it stood on its objections and current production. [11]

---

[11] Plaintiff is under the impression that Defendant's position is that because DMs do not have work email addresses, there would not be any responsive emails. Regardless of whether DMs have work email, there may be responsive emails or notes. For instance, if someone from corporate sent emails to Regional or District Managers with talking points or updates about the FWW, then those emails would be relevant, discoverable and responsive.

Emails or notes from Regional or District Managers responsive to Interrogatory No. 12 and accompanying Request for Production No. 7, are relevant and discoverable. For instance, Plaintiff obtained through one of the opt in Plaintiffs a document from a District Manager in Georgia which states that DMs who do not work at least 40 hours and do not want to use vacation pay will not be paid their fixed weekly salary. (*See* ECF No. 111-15). Defendant has neither identified said document in response to Interrogatory No. 12 nor has it produced said document in response to Request for Production No. 7. Plaintiff, therefore, must insist that Defendant supplement its responses and production regarding District Manager and Regional Manager emails or notes regarding the FWW method because there may be other documents like the one from the Georgia District Manager which could help establish that Defendant violates the strict requirements of the FWW method.

Thus, this Court should compel Defendant to supplement its response to Interrogatory No. 12 and Request No. 7 or indicate in verified writing that after conducting diligent review and inquiry from District or Regional Managers there are no responsive emails or notes.

## V.     CONCLUSION

For the reasons discussed above, this Court should grant Plaintiff's Motion to Compel in its entirety, and enter Plaintiff's proposed Order regarding same attached hereto as Ex. 6.

The Plaintiff, Jeffrey Ouellette

By:

        _/s/ *Erick I. Díaz Vázquez*
Erick I. Díaz Vázquez
Hayber Law Firm, LLC
Bar No.: CT27023
221 Main Street, Suite 502
Hartford, Connecticut 06106
Telephone: (860) 522-8888
ediaz@hayberlawfirm.com
***Attorneys for Plaintiff and the Putative Collective***

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on July 27, 2015, a copy of the foregoing was filed electronically [and service made by mail to anyone unable to accept electronic filing].  Notice of this filing will be sent by email to all parties by operation of the Courts electronic filing system [or by mail for anyone unable to accept electronic filing].  Parties may access this filing through the Courts system.

 _/s/ *Erick I. Díaz Vázquez*
Erick I. Díaz Vázquez