# EXHIBIT 1

## SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS

This Agreement ("Settlement Agreement") is entered into by and between The Fresh Market, Inc. ("TFM") and Jeffrey Ouellette (the "Named Plaintiff"), for himself and on behalf of the individuals who have filed and not withdrawn written consents to join this action as party plaintiffs pursuant to 29 U.S.C. § 216(b) (together with the Named Plaintiff, the "Group 1 Plaintiffs") (collectively the "Parties") in the case of *Jeffrey Ouellette v. The Fresh Market, Inc.*, Civ. Docket No. 3:13-cv-01027(AWT) (the "Lawsuit"), currently pending in the United States District Court for the District of Connecticut.

### RECITALS

WHEREAS, on July 17, 2013, the Named Plaintiff commenced the Lawsuit by filing his Collective Action Complaint (ECF No. 1); and

WHEREAS, in the Lawsuit, the Named Plaintiff asserts claims for unpaid overtime compensation under the federal Fair Labor Standards Act ("FLSA"); and

WHEREAS, the Named Plaintiff pursues his unpaid overtime compensation claims on behalf of a putative nationwide collective group of allegedly similarly situated employees of TFM who worked as Department Managers and who received overtime compensation that was purportedly calculated based on the fluctuating workweek ("FWW") method of calculating overtime at any time between July 17, 2010 and May 1, 2015 ("the putative FLSA Collective"); and

WHEREAS, in addition to the Named Plaintiff, seventy-eight (78) other members of the putative FLSA Collective have opted into the lawsuit to date (together with the Named Plaintiff, the "Group 1 Plaintiffs" (the Group 1 Plaintiffs are identified by name on Exhibit D); and

WHEREAS, the Named Plaintiff alleges that TFM did not properly pay himself, the other Group 1 Plaintiffs or the other members of the putative FLSA Collective under the FLSA because it allegedly did not comply with the provisions of 29 C.F.R. § 778.114 and/or because it paid incentive

1

compensation to such individuals in addition to utilizing the FWW method to calculate overtime compensation and/or because it allegedly took certain deductions from the compensation of such individuals and/or because it allegedly did not properly include certain incentive compensation in the calculation of overtime compensation for such individuals; and

WHEREAS, TFM generally denied the Named Plaintiff's allegations in his Complaint, as amended, and asserted several affirmative defenses (ECF No. 157); and

WHEREAS, on November 6, 2013, the Named Plaintiff filed a Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("Motion for Conditional Certification") (ECF No. 28); and

WHEREAS, the Court denied the Motion for Conditional Certification on March 25, 2015 without prejudice (ECF No. 149); and

WHEREAS, on March 27, 2015, Plaintiff filed an Amended Collective Action Complaint (ECF No. 155) ("Amended Complaint") and thereafter filed a Renewed Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA (ECF No. 170) ("Second Motion for Conditional Certification"); and

WHEREAS, the Court denied the Named Plaintiff's Second Motion for Conditional Certification without prejudice on February 19, 2016; and

WHEREAS, the Parties have engaged in discovery throughout the pendency of the Lawsuit, and exchanged documents and information as necessary to calculate potential damages, including TFM's production of payroll records; and

WHEREAS, on or about October 13, 2015, the Parties agreed to conduct a private mediation in an effort to resolve the claims asserted herein. As part of their agreement to mediation, the Parties agreed to request to stay the case (and toll the statute of limitations) pending the completion of the

2

mediation, which was granted from the date of the agreement to mediate first though February 15, 2016 and then extended through March 16, 2016. (ECF Nos. 222 and 228); and

WHEREAS, the Parties mediated the claims in the Lawsuit on January 11, 2016, in New Haven, Connecticut with a nationally-recognized mediator of FLSA collective actions and, after a full-day mediation followed by two months of continued negotiations through the mediator, have arrived at an agreement to settle the claims in the Lawsuit on the terms set forth herein; and

WHEREAS, TFM denies all allegations and all liability and damages of any kind to anyone regarding the claims asserted in the Lawsuit, and denies that the Lawsuit could be litigated on a collective action basis, but nonetheless, without admitting or conceding any liability or damages whatsoever or the propriety of collective action status for trial, has agreed to settle on the terms and conditions in this Settlement Agreement to avoid the burden, expense and uncertainty of continuing the Lawsuit; and

WHEREAS, the Parties recognize that the outcome in the Lawsuit is uncertain and that achieving a final result through the litigation process would require substantial additional risk, discovery, time, and expense; and

WHEREAS, the Named Plaintiff and Plaintiff's Counsel have investigated and evaluated the facts and law relating to the claims asserted in the Lawsuit to determine how best to serve the interests of the Group 1 Plaintiffs and the other members of the putative FLSA Collective and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the settlement as provided in this Settlement Agreement is in the best interests of the Group 1 Plaintiffs and the other members of the putative FLSA Collective, and that the settlement described in this Settlement Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit; and

3

WHEREAS, the Group 1 Plaintiffs, by their signed Consents filed with the Court: (a) designated the Named Plaintiff as their agent to make decisions on their behalf concerning this Lawsuit, including conducting this litigation, settlement negotiations, and all other matters pertaining to their claims against TFM; (b) agreed to be bound by the decisions made and agreements entered into by the Named Plaintiff and Plaintiff's Counsel in the Lawsuit; and (c) agreed to be bound by any judgment and any settlement reached between the Named Plaintiff and TFM in the Lawsuit; and

WHEREAS, the Parties have agreed to settle this case as to the Group 1 Plaintiffs, and have agreed to provide a mechanism so that the remaining members of the putative FLSA Collective may receive notice of the settlement and be provided with an opportunity to consent to join the Lawsuit for the purpose of participating in the settlement as set forth below (the Group 1 Plaintiffs, and those remaining members of the putative FLSA Collective who timely consent to join the Lawsuit for the purpose of participating in the settlement, are hereinafter referred to collectively as the "Participating Plaintiffs").

NOW THEREFORE, the Parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, do hereby agree as follows:

## AGREEMENT

1.     Allocation of the Maximum Gross Settlement Amount. The "Maximum Gross Settlement Amount" shall be Five Million Dollars ($5,000,000). The Maximum Gross Settlement Amount represents the amount that TFM will pay if all remaining members of the putative FLSA Collective participate in the settlement, and is the maximum amount that TFM will be required to pay to satisfy its obligations under the Settlement Agreement, exclusive of TFM's separate and additional payment of the employer's share of required FICA taxes on payments required herein that are subject to reporting on a Form W-2. The Maximum Gross Settlement Amount shall be allocated as follows:

4

(a)     The Parties have agreed that Plaintiff's Counsel will seek Court approval of a payment of one-third of the Maximum Gross Settlement Amount, or One Million Six Hundred Sixty-Six Thousand, Six Hundred Sixty-Six Dollars and Sixty-Seven Cents ($1,666,666.67), as full payment of all attorneys' fees, costs, and expenses incurred in the Lawsuit on behalf of the Named Plaintiff, the Group 1 Plaintiffs, and the other members of the putative FLSA Collective ("Attorneys' Fees Payment"), whether or not incurred by Plaintiff's Counsel, which sum shall be paid from the Maximum Gross Settlement Amount. The Participating Plaintiffs are not entitled to any attorneys' fees or expenses for services provided by any attorney or law firm other than Hayber Law Firm, LLC and Head Law Firm, LLC. The Attorneys' Fees Payment shall be allocated to Plaintiff's Counsel between Hayber Law Firm and Head Law Firm, LLC (the foregoing attorneys and law firms are collectively referred to herein as "Plaintiff's Counsel"), in allocation amounts to be agreed upon between Plaintiff's Counsel before the filing of the joint motion for approval of this agreement with the court and included in that filing. Within fourteen (14) days of the execution of this agreement, Plaintiff's Counsel will file a joint motion for approval of this agreement requesting entry of the proposed order attached hereto as Exhibit E. TFM will not oppose Plaintiff's Counsel's request for Court approval of the Attorneys' Fees Payment.

(b)     The Settlement Administrator, Class Action Administration, LLC, shall be paid a fixed amount to be agreed upon by the Parties and the Settlement Administrator to administer the settlement, which sum shall be paid from the Maximum Gross Settlement Amount ("Administrative Costs"). The Settlement Administrator, as a pre-condition for being selected, shall agree that this fixed sum for Administrative Costs is the total amount that the Settlement Administrator shall be paid for the administration of this settlement. TFM shall not be responsible for any further costs of settlement administration.

5

(c)     Twenty-Five Thousand Dollars ($25,000) shall be paid to Named Plaintiff Jeffrey Ouellette (the "Ouellette Settlement Amount") in exchange for Ouellette's agreement to a general release as set forth in Exhibit A attached hereto which shall only become effective if the Ouellette Settlement Amount is approved and paid.

(d)     Plaintiff's Counsel will seek Court approval for a service payment of Fifteen Thousand Dollars ($15,000) to the Named Plaintiff for his role as the Named Plaintiff in the Lawsuit on behalf and for the benefit of the Group 1 Plaintiffs and the other members of the putative FLSA Collective, which sum shall be paid from the Maximum Gross Settlement Amount (the "Service Payment"). TFM will not oppose Plaintiff's Counsel's request for Court approval of the Service Payment.

(e)     Ten Thousand Dollars ($10,000) of the Maximum Gross Settlement Amount shall be set aside as a "Reserve Fund" to satisfy claims by individuals who are not initially identified as members of the putative FLSA Collective who submit proof of eligibility to participate in the settlement during the period of settlement administration, as determined by the Settlement Administrator.

(f)     If the Court does not approve the full amounts requested in Paragraphs 1(a)-(e) above, this shall not be a basis for voiding the Settlement Agreement. Rather, any amounts not approved pursuant to Paragraphs 1(a)-(e) above (as well as any portion of the Reserve Fund that is not claimed) shall be re-allocated to the amount to be allocated among the Named Plaintiff, the Group 1 Plaintiffs, and the remaining members of the putative FLSA Collective, as set forth below in Paragraph 1(g).

(g)     The amount remaining from the Maximum Gross Settlement Amount, after deduction of the Court-approved Attorneys' Fees Payment, Administrative Costs, Ouellette Settlement Amount, Service Payment, and Reserve Fund ("the Settlement Payment Allocation"), shall be allocated

6

among the Named Plaintiff, the Group 1 Plaintiffs, and the remaining members of the putative FLSA Collective, as follows:

(i)      Within fourteen days (14) following the date of Court approval of this Settlement Agreement, TFM will provide information to the Settlement Administrator (copying Plaintiff's Counsel) reflecting the names, dates of employment in a FWW-paid Department Manager position, and the payroll data necessary for the Settlement Administrator to calculate (i) amounts received in FWW-paid overtime during the two years prior to the filing date of their Consent (for the Named Plaintiff and the Group 1 Plaintiffs who filed their written consents before October 13, 2015) or October 13, 2015 (for Group 1 Plaintiffs who filed their written consents on or after October 13, 2015, and for all other members of the putative FLSA Collective) ("2 Year Amounts"), and (ii) amounts received in FWW-paid overtime outside of the time period for 2 Year Amounts dating back to July 10, 2010 ("Over 2 Year Amounts"), of the Named Plaintiff, the Group 1 Plaintiffs, and the remaining members of the putative FLSA Collective (collectively the Named Plaintiff, the Group 1 Plaintiffs, and the remaining members of the putative FLSA Collective are referred to herein as the "Putative Participating Plaintiffs"), who were employed in the position of Department Manager for TFM and paid by a FWW overtime calculation method in one or more work weeks, at any time between July 17, 2010 and May 1, 2015 (such information to align with information previously produced in discovery), as well as the last known addresses of all such individuals;

(ii)     The Settlement Administrator shall then assign each Putative Participating Plaintiff settlement points at a rate of one point per dollar of their 2 Year Amounts and one-half point per dollar of their Over 2 Year Amounts (the total of which constitutes that person's "Individual Points");

7

(iii)    The Settlement Payment Allocation shall be divided by the total number of Individual Points assigned by the Settlement Administrator for all Putative Participating Plaintiffs to determine the monetary value of a point; and

(iv)    Each Putative Participating Plaintiff shall then be assigned an "Individual Settlement Payment Allocation" based upon his or her total number of points times the monetary value of a point;

(v)    After adjustment for any recalculation required herein, the total of all of the Individual Settlement Payment Allocation amounts shall equal and not exceed the Settlement Payment Allocation; and

(vi)    Prior to and as needed for verification of accuracy before issuance of notice, the Settlement Administrator will provide counsel for the Parties with a Microsoft Excel spreadsheet showing each Putative Participating Plaintiff's Individual Settlement Payment Allocation as determined based on the calculations herein required by that date.

2.    <u>Motion for Court Approval.</u>  The Parties agree to jointly file with the Court a Motion for Approval of Settlement, and a proposed Order Approving Settlement which shall provide that upon approval and incorporation of the Settlement Agreement as an order of the Court, the Action shall be dismissed with prejudice.    The Parties will cooperate and take all necessary steps to effectuate judicial approval of this Settlement Agreement and the notices and agreements described herein.  The Parties agree that this settlement is contingent upon the Court's approval of this Settlement Agreement.  Should the Court not approve the Settlement Agreement in its entirety, the Parties agree to engage in follow-up negotiations with the intent of resolving the Court's concerns that precluded initial approval, if feasible, and resubmitting the settlement for approval within thirty (30) days.  If the settlement is not approved as resubmitted or if the Parties are not able to reach another agreement, litigation of the Lawsuit will

resume. If litigation of the Lawsuit resumes, the case will proceed as if no settlement had been attempted except that all applicable tolling agreements reached between the Parties shall be honored, and the Parties will jointly request a new scheduling order. TFM will retain the right to contest the merits of all claims being asserted.

3.   Named Plaintiff and Group 1 Plaintiffs.   Named Plaintiff and Plaintiff's Counsel represent and warrant that the Group 1 Plaintiffs: (a) designated the Named Plaintiff as their agent to make decisions on their behalf concerning this Lawsuit, including conducting this litigation, settlement negotiations, and all other matters pertaining to their claims against TFM; (b) agreed to be bound by the decisions made and agreements entered into by the Named Plaintiff and Plaintiff's Counsel in the Lawsuit; and (c) agreed to be bound by any judgment and any settlement reached between the Named Plaintiff and TFM in the Lawsuit. Therefore, upon Court approval of the Settlement Agreement, the Named Plaintiff and all Group 1 Plaintiffs shall be deemed to have resolved their dispute in the Lawsuit with TFM and to have released all Released Claims against all Released Parties as defined herein. Because the Group 1 Plaintiffs are already party plaintiffs in this action, are represented by Plaintiff's Counsel, and have authorized Named Plaintiff and Plaintiff's Counsel to negotiate this Settlement Agreement on their behalf, the Group 1 Plaintiffs shall be bound by this Settlement Agreement once it is approved by the Court and need not take any further action in order to be paid their Individual Settlement Payment Allocation, and they shall not be permitted to refrain from participating in, to object to, or otherwise to "opt out" of the Settlement Agreement.

4.   Remaining members of the Putative FLSA Collective.   The Parties agree to facilitate notice of the settlement and instructions for any members of the putative FLSA Collective who are not Group 1 Plaintiffs to opt into the Lawsuit pursuant to 29 U.S.C. § 216(b) and participate in the settlement.

(a)     The remaining members of the putative FLSA Collective will be provided with: (1) a Notice of Settlement, Consent to Join, and Release Agreement, which will be mailed to them by the Settlement Administrator, in the form attached hereto as Exhibit B, within fourteen (14) days after the Settlement Administrator receives the information from TFM pursuant to Section 1(g)(i), accompanied by a self-addressed stamped envelope ("SASE") for return mail to the Settlement Administrator; and (2) a reminder postcard in the form attached hereto as Exhibit C, which will be sent by the Settlement Administrator forty-five (45) days later to any of the remaining members of the putative FLSA Collective who have not opted into the Lawsuit at the time the postcard notice is sent. TFM has the right, in its discretion, to send out additional written reminders at its expense to the remaining members of the putative FLSA Collective who are not Group 1 Plaintiffs at any time after the mailing of the Notice of Settlement and before the Group 2 Opt-In Deadline, encouraging members of the putative FLSA Collective to return the Consents to Join and Release Agreements and participate in the settlement; provided, however, that any such additional written reminder shall not contain information inconsistent with or contradictory to the Notice of Settlement.   The Settlement Administrator will make reasonable efforts to obtain valid current addresses for the members of the putative FLSA Collective through the national change of address database, in addition to any other similar database approved by the Parties, prior to any mailing required under this Settlement Agreement. In the event that a mailing is returned as undeliverable, the Settlement Administrator shall promptly request TFM to provide (and TFM shall promptly make reasonable investigation, and provide if identified) to the Settlement Administrator the additional contact information, if any, contained in TFM's personnel records (phone, email, etc.), as well as Social Security Number, for that mail recipient, and the Settlement Administrator shall then promptly perform with all due diligence "skip tracing" efforts to determine a more likely accurate mailing address and remail to that address. The Settlement

10

Administrator shall establish procedures designed to reasonably allow for check re-issues for lost or discarded checks, resending lost or discarded Notice and related documents, and timely correcting deficiencies in submitted documents. In addition to the above, TFM shall retain the right and ability to communicate with any currently-employed members of the putative FLSA Collective who have not as of the date of such communication submitted a Consent to Join at its discretion regarding the reasons it settled this Lawsuit, and encouraging members of the putative FLSA Collective to opt into the Lawsuit in order to participate in the settlement; provided, however, that any such additional communication shall not contain information inconsistent with or contradictory to the Notice of Settlement.

(b)     Any members of the putative FLSA Collective who are not already Group 1 Plaintiffs will have a deadline of sixty (60) days from the initial mailing of the Notice of Settlement, Consent to Join, and Release Agreement in which to fully execute and return the Consent to Join and Release Agreement ("Group 2 Opt-In Deadline"). These documents must be signed and returned to the Settlement Administrator via U.S. First Class Mail, facsimile, and/or to the case-specific email address provided by the Settlement Administrator, and must be postmarked (for mail) or received by the Settlement Administrator (for facsimile or email) by the Group 2 Opt-In Deadline, which shall be specified in the Notice of Settlement, in order to be timely. Any individual who returns a signed Consent to Join and Release Agreement by the Group 2 Opt-In Deadline, will be deemed a "Group 2 Plaintiff." The Parties may, by mutual agreement, agree to extend the Group 2 Opt-In Deadline.

(c)     On a rolling basis, and in no event later than seven days following the Group 2 Opt-In Deadline, the Settlement Administrator will provide copies of the portions of the Consents to Join to be filed with the Court and the Release Agreements to counsel for the Parties. Plaintiff's Counsel will file with the Court copies of all Consents to Join from Group 2 Plaintiffs deemed timely by the Settlement Administrator within a reasonable time (not to exceed seven days) after receipt from the

11

Settlement Administrator.

(d)      On a rolling basis, and in no event later than seven days following the Group 2 Opt-In Deadline, the Settlement Administrator shall provide the Parties with all written notes, requests, or inquiries from a putative Participating Plaintiff, and a comprehensive spreadsheet identifying Group 2 Plaintiffs (as defined herein).

5.      Participating Plaintiffs and Payments.  The Named Plaintiff, the Group 1 Plaintiffs and all Group 2 Plaintiffs shall be deemed "Participating Plaintiffs" in this Lawsuit.

(a)      Only Participating Plaintiffs will be entitled to payment of their Individual Settlement Payment Allocations.

(b)      If the total of the Individual Settlement Payment Allocations of each of the Participating Plaintiffs is less than sixty percent (60%) of the Settlement Payment Allocation, then the amount of each Participating Plaintiff's Individual Settlement Payment Allocation shall be increased on a proportional basis until the total of the Participating Plaintiffs' Individual Settlement Payment Allocations equals sixty percent (60%) of the Settlement Payment Allocation.  If the total of the Individual Settlement Payment Allocations of each of the Participating Plaintiffs is equal to or more than sixty percent (60%) of the Settlement Payment Allocation, then the amount of each Participating Plaintiff's Individual Settlement Payment Allocation will not be increased by this provision.

(c)      Within fourteen (14) days after the Group 2 Opt-In Deadline (as extended, if applicable), the Settlement Administrator will provide counsel for the Parties with a Microsoft Excel spreadsheet showing each Participating Plaintiff's Individual Settlement Payment Allocation as determined in accordance with the adjustment and recalculation provisions required herein.

(d)      The Settlement Administrator shall also provide a report showing the total amount of money needed to satisfy TFM's obligations under this Settlement Agreement, including: the amount

of the Court-approved Attorneys' Fees Payment, Administrative Costs, Ouellette Settlement Amount, Service Payment, the claimed portion of the Reserve Fund, the total of each Participating Plaintiff's Individual Settlement Payment Allocation as determined in accordance with the adjustment and recalculation provisions required herein, and the employer's share of FICA taxes to be paid by TFM (separately and in addition to the Maximum Gross Settlement Amount) on the W-2 wage payments to Participating Plaintiffs.. Not later than fourteen (14) days after receiving the report from the Settlement Administrator, TFM shall remit the amount needed to satisfy its obligations under this Agreement to the Settlement Administrator to be held in escrow for the purpose of making payments as provided in this Agreement.

(e)     Within fourteen (14) days after receiving the funds from TFM, the Settlement Administrator shall send by First Class Mail the settlement checks to each Participating Plaintiff.

6.     <u>Unclaimed Settlement Amounts</u>.   The remainder, if any, of the Settlement Payment Allocation that was not claimed by Participating Plaintiffs by their submission of timely Consents to Join, after all adjustments and recalculations required by this Agreement, will be retained by TFM. The settlement checks shall bear notation that they expire within 120 days of issuance, and check funds that were not cashed, negotiated, or otherwise endorsed by that expiration date will be deemed returned to TFM.   The Settlement Administrator shall process or facilitate any required reversals/corrections of tax reporting and tax filings for checks unclaimed prior to the 120 day expiration period so that the unclaimed payment has no tax effect on the applicable Participating Plaintiff or on TFM.

7.     <u>Release.</u>   All Participating Plaintiffs (including the Named Plaintiff, all Group 1 Plaintiffs, and all remaining members of the putative FLSA Collective who become Group 2 Plaintiffs), on their own behalf and on behalf of their respective descendants, dependents, heirs, executors, administrators, successors, and assigns, shall, by operation of this Settlement Agreement (and, for Group

13

2 Plaintiffs, the Notice of Settlement, the Consents to Join, and the Release Agreements), and the Court's approval order, forever and fully release TFM and Apollo Global Management, their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Lawsuit (collectively, the "Releasees"), in their personal, individual, official and/or corporate capacities, from any and all past and present matters, claims, demands, causes of action, suits, debts, dues, sums of money, damages, and appeals of any kind, whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, of any kind whatsoever, for the payment of overtime, calculation of overtime or the "regular rate of pay," use of the fluctuating work week method of calculating overtime, non-payment or under-payment of wages or other compensation, or any and all other violations of minimum wage, overtime and/or wage payment laws, whether federal, state, or local, and any and all common laws relating to the payment of wages, any time the Participating Plaintiff worked as a Department Manager for TFM during the period from July 17, 2010 through May 1, 2015 ("Released Claims"). The Released Claims include any and all claims that are allowed by law for the causes of action brought in the Lawsuit, and/or any other claims under federal, state, or local law, that could have been brought that arose from or relate to the alleged failure to pay overtime or other wages for work performed as Department Managers at any time from July 17, 2010 through May 1, 2015. The Released Claims include without limitation all claims asserted in the Lawsuit and any other claims that could have been brought in the Lawsuit that arise from or relate to the alleged failure to pay overtime or the alleged underpayment of overtime or other wages or compensation, including, without limitation,

14

claims under the Fair Labor Standards Act, the Connecticut Minimum Wage Act, and the statutes, laws, and regulations of all states relating to the alleged failure to pay overtime and/or underpayment of overtime or other wages or compensation in any pay periods when the Participating Plaintiff worked as a Department Manager for TFM at any time from July 17, 2010 through May 1, 2015.

In addition, each Participating Plaintiff irrevocably and unconditionally releases, acquits, and forever discharges any claim that he/she may have against Releasees for attorneys' fees, costs, or expenses arising out of his/her claims in the Lawsuit.

8. <u>Non-Interference</u>. Nothing in this Agreement will interfere with the Participating Plaintiffs' right to file a charge, cooperate, or participate in an investigation or proceeding conducted by any federal or state regulatory or law enforcement agency. However, the consideration provided to the Participating Plaintiffs in this Agreement is the sole relief they are entitled to for the claims that are released herein and the Participating Plaintiffs will not be entitled to recover, and agree to waive any recovery, from TFM or any Releasee in connection with any such released claims without regard to who has brought such claim. TFM agrees that it is unaware of any fact indicating that claiming and receiving the settlement payments hereunder would violate, or otherwise be precluded by, any settlement or release agreement, severance agreement, or contract or agreement of any kind other than this Agreement that TFM has with a Participating Plaintiff.

9. <u>Tax Treatment</u>. For tax purposes, 50% of each Participating Plaintiff's Individual Settlement Payment Allocation payment shall be treated as wages and 50% of such payment shall be treated as liquidated damages, interest and non-wage income. The Service Payment payable to the Named Plaintiff shall be treated as non-wage income. TFM will withhold from the portion of each Participating Plaintiff's settlement payment that is treated as wages all applicable federal, state, and local income and employment taxes, and shall report that portion to the Internal Revenue Service ("IRS") on

15

an IRS Form W-2. The portion of each Participating Plaintiff's settlement payment that is treated as liquidated damages and interest is not wages, shall be paid without withholding, and shall be reported to the IRS on an IRS Form 1099, in Box 3 (or other similar box should the IRS change the form). Attorneys' fees and costs paid pursuant to Paragraph 1(a) are not wages but are designated as attorney's fees and costs; they shall be paid without withholding and shall be reported to the IRS as payment to Plaintiff's Counsel on IRS Form 1099 in Box 14 (or other similar box should the IRS change the form). The settlement amounts paid to Plaintiff's Counsel for fees and costs constitute payment of the Participating Plaintiffs' attorneys' fees and costs on claims under the FLSA, and there shall be no further recovery of attorneys' fees, costs or expenses in connection with this Lawsuit (whether to Plaintiff's Counsel or to any other attorneys or law firms who purport to have represented the interests of any of the Participating Plaintiffs).

TFM will pay all payroll taxes imposed on it by applicable law, including the employer's share of the FICA tax and any federal and state unemployment tax, with respect to the amounts treated as wages in this settlement. Each Participating Plaintiff agrees that he/she will pay all taxes as required on any payments to him or her from TFM reported on Forms 1099 and shall indemnify, defend and hold TFM harmless from and against any and all taxes, interest, penalties, attorneys' fees and other costs imposed on TFM as a result of that Participating Plaintiff's failure to timely pay such taxes that were not employer obligations; provided, however, that nothing in this provision shall require a Participating Plaintiff to pay his or her employer's share of taxes, or any taxes, interest, penalties, attorney's fees, or other costs imposed on TFM as a result of TFM's failure to timely pay such employer taxes that were not employee obligations. This Settlement Agreement does not cover, limit, or in any way involve TFM's discretion with respect to its 401(k) plan and/or other employee stock or benefit plans consistent with the terms of those plans, and payments made pursuant to this Settlement Agreement shall not be

"matched" or otherwise taken into account with respect to any such plans. Per Treasury Department Circular 230, this Settlement Agreement is not intended to provide tax advice, and any tax advice contained in this Settlement Agreement or any notice summarizing this Settlement Agreement is not intended to be used, and cannot be used, for purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing, or recommending to another party any transaction or matter addressed herein.

10.    No Admission of Liability or Appropriateness of Collective Treatment. By entering into this Settlement Agreement, TFM does not admit any liability of any kind, and it expressly denies any liability or wrongdoing.   The Parties agree that this Settlement Agreement does not constitute a determination or admission of liability or wrongdoing, or an admission by TFM that any group of similarly situated employees exists to maintain a collective action against TFM under the FLSA, and in the event that this Settlement Agreement or a subsequent settlement in the Lawsuit by the Parties is not approved by the Court, the Parties agree that they will return to the status quo ante and that TFM has not waived its argument that collective treatment is not proper under the FLSA. This Settlement Agreement shall not be admissible in any court or other proceeding except as necessary in connection with a claim of breach of the Settlement Agreement, in an effort to enforce this Settlement Agreement, or for resolution of tax or other legal issues arising from a payment under this Settlement Agreement.

11.    Confidentiality and Limits On Publicity. This Agreement is not confidential and will be filed with the Court.  The Parties agree to the following limitation on publicizing this settlement: Plaintiff's Counsel will not initiate (or cause to be initiated by any other person) any press release or initiate any contact with the media, nor shall they respond to inquiries from the media with respect to this Settlement Agreement or the Lawsuit other than to state to the media, if contacted, that "the case has been resolved."   Plaintiff's Counsel agree not to disclose the terms of this Settlement Agreement to

17

anyone except (a) as required by law; (b) to their tax or financial advisors, who they will instruct to keep such information confidential; (c) to comply with any ethical duty; (d) to advise clients or settlement notice recipients in this case; or (d) to their malpractice carriers in connection with any malpractice claim or threatened malpractice claims against them. Plaintiff's Counsel agree to immediately notify TFM's counsel, Lori Alexander, at the contact information listed in the docket for the Lawsuit, if they receive a subpoena or other order or legal process requiring them to disclose information related to Agreement, in order to permit TFM to object to any such request. Plaintiff's Counsel agrees not to initiate any social media efforts that are intended to solicit or encourage current or former TFM Department Managers to prosecute the same claims as those settled and released by Group 1 and Group 2 Plaintiffs in this Agreement for a period of three years from April 15, 2016. After the participation period concludes, Plaintiff's Counsel will remove from their firms' Facebook pages and any firm Websites, blogs, or other social media sources controlled by Plaintiff's Counsel, including The Hayber Law Firm, LLC and The Head Law Firm, LLC, references to the Lawsuit or settlement of the Lawsuit. This obligation is effective for a period of three years after April 15, 2016. In the event that TFM believes that Plaintiff's Counsel have violated this paragraph, it will, prior to the commencement of any such proceedings, send a letter to Plaintiff's Counsel advising them of the alleged breach containing sufficient detail to engage in good faith consideration. Upon receipt, Plaintiff's counsel will have ten (10) days to cure the alleged breach, and if cured by an objectively reasonable person standard, no action may be taken to enforce this paragraph. If TFM prevails in any lawsuit or other action for violation of this paragraph, it shall be entitled to recoup its attorneys' fees and costs incurred in pursuing such litigation or action.

12.    Continuing Jurisdiction. The U.S. District Court for the District of Connecticut shall retain continuing and exclusive jurisdiction over the Parties to this Settlement Agreement for the

purpose of administering and enforcing this Settlement Agreement.

13.     Choice of Law.   The enforcement of this Settlement Agreement shall be governed and interpreted by and under the laws of the State of Connecticut whether or not any party is, or may hereafter be, a resident of another state.

14.     Extension of Time.  The Parties may, by mutual agreement, agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court, subject to Court approval if required.

15.     Return of Confidential Information.   Plaintiff's Counsel will continue to maintain as confidential all information and documents designated as confidential and obtained in this litigation and will continue to store such information in a secure place within their office.  Immediately following the expiration of the statute of limitations on any potential malpractice claim by Participating Plaintiffs against Plaintiff's Counsel, Plaintiff's Counsel will destroy or return all documents exchanged during the course of the litigation that were subject to a protective order and/or designated as "Confidential" in this action.  If Plaintiff's Counsel elect to destroy the documents at that time, they will certify under penalty of perjury that the documents have been destroyed.

16.     Transfer of Claims.  The Participating Plaintiffs will not transfer or assign to any person, firm, corporation, association, or entity any released claim.  The Participating Plaintiffs will indemnify and hold TFM harmless against all demands, claims, debts, obligations, liabilities, causes of action, judgments, attorneys' fees, and expenses based on or arising out of any such assignment or transfer.

17.     No Waivers, Modifications, or Amendments. No waiver, modification or amendment of this Settlement Agreement, whether made before or after the Court's approval of it, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by

19

any Party to insist upon the strict performance by the other Party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the other provisions of this Settlement Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of all of the provisions of this Settlement Agreement.

20.    <u>Severability.</u> This Settlement Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of any of the other provisions.

21.    <u>Sole and Entire Agreement.</u> This Settlement Agreement and the separate Settlement Agreement and General Release with Jeffrey Ouellette, the Consents to Join, and the Release Agreement to be signed by all Group 2 Plaintiffs constitute the entire agreement of TFM and the Participating Plaintiffs concerning the subjects contained herein, and all prior and contemporaneous negotiations and understandings between those Parties shall be deemed superseded by these documents.

22.    <u>Counterparts.</u> This Settlement Agreement shall become effective upon its execution, subject to Court approval. The Parties may execute this Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Named Plaintiff and TFM had signed the same instrument. Any signature made and transmitted by facsimile or email to execute this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall bind the signing party.

23.    <u>Corporate Signatories.</u> Each person executing this Settlement Agreement on behalf of any Party hereto warrants that such person has the authority to do so, subject to applicable Court approval. Any person executing this Settlement Agreement on behalf of a corporate signatory hereby warrants and promises for the benefit of all Parties hereto that such person is duly authorized by such corporation to execute this Settlement Agreement.

24.   Captions. The captions or headings of the paragraphs in this Settlement Agreement are inserted for convenience or reference only and shall have no effect upon the construction of interpretation of any part of this Settlement Agreement.

25.   Acknowledgement.   The Named Plaintiff, on behalf of himself and the Participating Plaintiffs, acknowledges that they assume the risk for any mistake of fact known or unknown.   In addition, he acknowledges, on behalf of the Participating Plaintiffs, that they are releasing only claims that arose before this Settlement Agreement is signed by the Parties.  He further acknowledges that the provisions of this Settlement Agreement are the joint effort of the Parties through negotiations and thus any ambiguity, uncertainty, or vagueness in construction of the waiver and release and the other provisions of this agreement will not be attributed to any Party and the theory of construction that a document should be construed against the drafting party is waived and will not be applied in construing this Settlement Agreement.  Finally, the Named Plaintiff agrees, on behalf of the Participating Plaintiffs, that the settlement amounts to be received pursuant to this Settlement Agreement are sufficient for the claims released under this Agreement.

26.   Voluntary and Knowing Release.  The Named Plaintiff acknowledges, on behalf of the Participating Plaintiffs, that he has read this Settlement Agreement, discussed it with his counsel and counsel for the Participating Plaintiffs, and understands its terms.   He acknowledges that he is voluntarily and knowingly entering into the Agreement.

21

THE FOREGOING SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
Jeffrey Ouellette

Dated this __17__ day of __April_____, 2016.

THE FOREGOING SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENTAPPROVED AS TO FORM BY:

The Hayber Law Firm, LLC

Date: __4-17-2016____        By: _____

                            Printed Name: _____Richard E Hayber_____

                            Title: _Managing member_____

THE FOREGOING SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.APPROVED AS TO FORM BY:

The Head Law Firm, LLC

Date: _____        By: _____

                            Printed Name: _____

                            Title: _____

22

THE FOREGOING SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____

Jeffrey Ouellette

Dated this ___ day of _____, 2016.

THE FOREGOING SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENTAPPROVED AS TO FORM BY:

The Hayber Law Firm, LLC

Date: _____        By: _____

                                   Printed Name: _____

                                   Title: _____

THE FOREGOING SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.APPROVED AS TO FORM BY:

Head Law Firm, LLC

Date: 4/17/16        By: _____

                     Printed Name: C. ANDREW HEAD

                     Title: OWNER

22

THE FOREGOING SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

The Fresh Market, Inc.

Date: 4-18-2016

By: _____

Printed Name: Scott F. Duggan

Title: SVP- General Counsel

23

# EXHIBIT A:

## SETTLEMENT AGREEMENT, GENERAL RELEASE,

## AND CONFIDENTIALITY AGREEMENT

## BETWEEN JEFFREY OUELLETTE AND THE FRESH MARKET

### SETTLEMENT AGREEMENT, GENERAL RELEASE, AND CONFIDENTIALITY AGREEMENT BETWEEN JEFFREY OUELLETTE AND THE FRESH MARKET, INC.

This is an agreement ("Agreement") by and between Jeffrey Ouellette of 166 Catherine Street, Hartford, CT 06106, Connecticut ("Ouellette") and The Fresh Market, Inc. ("TFM").

WHEREAS, Ouellette was formerly employed by TFM; and

WHEREAS, on or about July 17, 2013, Ouellette filed a Complaint in the United States District Court for the District of Connecticut individually and on behalf of all others similarly situated, in which he claims that he and others similarly situated who worked for TFM were improperly paid overtime using the fluctuating workweek method during the periods of time when they worked as Department Managers.

WHEREAS, Ouellette's employment with TFM was terminated on or about December 12, 2014; and

WHEREAS, Ouellette and TFM, in order amicably to resolve any and all matters in controversy, disputes, causes of action, claims, contentions and differences between them up through the date Ouellette signs this agreement, have reached a full and final compromise and settlement of any and all such matters, and as a condition to TFM's performing its obligations as provided for herein, Ouellette has agreed to execute and comply fully with the terms of this Agreement.

NOW THEREFORE, for the promises and releases contained in this Agreement, and provided that Ouellette properly executes the Agreement and does not revoke it as set forth below, TFM and Ouellette agree as follows:

1.      By entering into this Agreement, TFM and the Releasees (as defined in Paragraph 3 below) do not admit any liability, wrongdoing or violation of any law, statute, regulation, agreement, benefit plan, or policy, and expressly deny the same. It is understood and agreed that

2

this Agreement is being entered into solely for the purpose of amicably resolving the matters in controversy between Ouellette on the one hand, and TFM and any of the Releasees on the other hand.

2.      Ouellette and TFM agree, as full and complete settlement and final satisfaction of any and all claims that Ouellette had, has, or may have against Releasees (as defined in Paragraph 3 below), that TFM will pay Ouellette the gross amount of **$25,000.00** (Twenty-Five Thousand Dollars and No Cents), minus all applicable state, federal, and local withholding taxes. TFM shall make the payment within thirty (30) days after the "Settlement Payment Date" in the separate Settlement Agreement and Limited Release of Claims, (of which this Agreement is Exhibit A), as long as all of the following conditions precedent have been met: (i) Ouellette has properly executed this Agreement and it has become effective; (ii) counsel for TFM has received a duly executed IRS Form W-4 from Ouellette and certification that he is not subject to back-up withholding; (iii) the separate Settlement Agreement and Limited Release of Claims and the parties' joint motion to approve the settlement have been signed by the parties and approved by the Court in the case of *Ouellette v. The Fresh Market, Inc.*; and (iv) the revocation period described below has passed and Ouellette has not revoked this Agreement.

The payment to be made pursuant to this paragraph shall be in the form of one check payable to Jeffrey Ouellette and mailed to him in care of his attorney, Richard Hayber, at The Hayber Law Firm, LLC, 221 Main Street, Suite 502, Hartford, CT 06106.

3.      For and in consideration of the promises made by TFM as set forth above and other good and valuable consideration, Ouellette hereby releases and forever discharges TFM, Apollo Global Management, and their past, present and former parents, affiliates, business units, subsidiaries, successors and assigns, as well as their past, present and future officers, directors, employees, agents, representatives, shareholders, counsel, and their heirs, administrators, and executors (cumulatively, the "Releasees") of and from all actions, causes of action, suits, debts,

3

dues, sums of money, damages, judgments, executions, grievances, claims and demands whatsoever, in law or in equity, whether known or unknown, foreseen or unforeseen, which he ever had, now has, or which his heirs, executors, administrators, successors and assigns (cumulatively with Ouellette, the "Releasors") hereafter shall, can or may have, which arise out of or are related to any act or omission that occurred from the beginning of the world to the date of Ouellette's execution of this Agreement. This release by Ouellette and the Releasors includes, but is not limited to, any and all claims under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq.; the Older Workers Benefit Protection Act; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq.; 42 U.S.C. § 1981 et seq.; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.; the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq. (except for claims to vested benefits under ERISA); Conn. Gen. Stat. § 31-290a (applying to claims for retaliation under the Workers' Compensation Act); the Connecticut Fair Employment Practices Act; Conn. Gen. Stat. § 46a-51 et seq.; any of the Connecticut General Statutes; and/or any and all claims arising under any other federal, state or local statute, law, rule, regulation, or decision, or any claim related to any benefit plan of any of the Releasees, and any and all claims for breach of contract, intentional and negligent infliction of emotional distress, misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, defamation and slander, and any and all other common law claims, as well as any and all claims for attorneys' fees and costs.

Nothing in this Agreement, however, is intended to waive Ouellette's entitlement to vested benefits under any pension or 401(k) plan or other benefit plan provided by TFM. Finally, the above release does not waive claims that Ouellette could make, if available, for Unemployment Compensation benefits, medically related Workers' Compensation benefits, or any other claim which cannot be released by private agreement. However, by his execution of

4

this Agreement, Ouellette acknowledges and agrees that (a) he has not suffered any on-the-job injury for which he has not already filed a claim, and (b) he has been properly provided any leaves of absence to which he might ever have been entitled because of his own or a family member's health condition or military service.

This Agreement does not prevent Ouellette from filing any timely charge of discrimination with the Equal Employment Opportunity Commission, the National Labor Relations Board or other similar state or local agency, although Ouellette waives his right to recover any damages or other relief in any claim or suit brought by or through any federal, state or local agency on behalf of Ouellette. Ouellette agrees to release and discharge TFM not only from any and all claims which he could make on his own behalf, but he also specifically waives any right to become, and promises not to become, a member of any class in any proceeding or case in which a claim or claims against TFM may arise, in whole or in part, from any event which occurred prior to the date of this Agreement. Ouellette agrees to pay for any legal fees or costs incurred by TFM as a result of any breach of his promises in this Section 3.

4.      Ouellette acknowledges that (1) he may subsequently discover facts in addition to or different from those that he now knows or believes to be true, and (b) he may have sustained or may yet sustain damages, costs, or expenses that are presently unknown and that relate to his claims. Ouellette acknowledges, however, that he has negotiated, agreed upon, and entered into this Agreement with full knowledge of that situation. Ouellette waives any and all rights that he may have under any state or federal statute or common law principle that would otherwise limit the effect of this Agreement to claims known or suspected at the date on which the Agreement is executed.

5.      Ouellette recognizes and acknowledges TFM's interest in preserving the confidentiality of this Agreement, and he agrees that he will keep the fact and the terms of this Agreement and the negotiations leading to this Agreement completely confidential.

Ouellette promises and agrees not to disclose, either directly or indirectly, in any manner whatsoever, any information of any kind regarding either (i) the substance or the existence of any belief he or any other person may have that TFM engaged in any unlawful conduct, or (ii) the terms of this Agreement and/or the amount of any payment or other consideration contained herein, to any person or organization, including but not limited to representatives of local, state or federal agencies, members of the press and media, present and former officers, employees, and agents of TFM, and other members of the public. However, this Section 5 of the Agreement will not (i) prohibit Ouellette from disclosing the fact and terms hereof to his spouse, legal counsel, and tax advisor to the extent necessary to report income to appropriate taxing authorities, (ii) prohibit Ouellette from providing information, including information about this Agreement, to any federal or state agency, including but not limited to, the Equal Employment Opportunity Commission or National Labor Relations Board or, (iii) prohibit Ouellette from responding to an order of a court or government agency of competent jurisdiction specifically requiring such disclosure, provided, however, that notice of receipt of any order, subpoena, deposition notice, or other discovery request that could potentially involve disclosure of such information or that could involve the circumstances surrounding Ouellette's employment or separation from employment with TFM shall be immediately communicated to the attorney for TFM telephonically and in writing (Lori Alexander, Littler Mendelson, P.C., 265 Church Street, New Haven, Connecticut 06510, tel. (203) 710-0122) so that TFM shall have an opportunity to intervene and assert what rights it has to nondisclosure prior to Ouellette's response to such order, subpoena, deposition notice, or other discovery request.

6

Ouellette agrees that he will not give any qualitative or quantitative descriptions of this settlement of the case. This agreement of confidentiality shall be kept by Ouellette in perpetuity. Any disclosure by Ouellette that violates this confidentiality provision shall be considered a material breach of this Agreement and upon such breach Ouellette shall be required to pay to TFM its actual damages for the violation and reimburse TFM for its attorneys' fees incurred in bringing any successful action for breach of the promises of confidentiality contained in this Section 5. Notwithstanding the confidentiality provisions of this Agreement, Ouellette may provide truthful statements to any federal or state agency, including but not limited to, the Equal Employment Opportunity Commission or National Labor Relations Board.

Ouellette agrees to hold those persons to whom the fact and terms of this Agreement are disclosed to the same terms of confidentiality as apply to him.

6.      Ouellette further agrees that in consideration of the foregoing, he will not disparage TFM or any of the Releasees in any communications, whether oral or written, to any person, company, or any other entity whatsoever, including current or former employees or agents of the Releasees. For the purposes of this provision, "disparage" means to "express a negative opinion or; speak of in a slighting way; belittle."

7.      In further consideration for the payments set forth in this Agreement, Ouellette agrees not to apply for employment or attempt to enter into a contractual relationship to perform work or other services of any kind in the future for TFM or any of the Releases, and further agrees not to seek damages or any other remedy or relief for the failure or refusal of TFM or any of the Releasees to employ him in any capacity at any time after the effective date of this Agreement. Ouellette acknowledges that the promises in this Agreement are adequate consideration for TFM or any of the Releasees to reject any such application for employment.

7

8.      Ouellette agrees that in consideration of the foregoing, he will forthwith withdraw with prejudice any complaints, demands and/or claims he has made, or others have made or asserted on his behalf, against TFM or any of the Releasees filed in court, in any arbitration proceeding, or with an administrative agency or other entity, and will further promptly file any and all other necessary paperwork to effectuate the dismissal of said cases or claims with prejudice.

9.      Ouellette warrants that he is not a Medicare beneficiary as of the date of this Agreement and therefore no conditional payments have been made by Medicare.  Ouellette agrees to indemnify and hold Releasees harmless from any and all claims, demands, liens, subrogated interests, and causes of action of any nature or character that have been or may in the future be asserted by Medicare and/or persons or entities acting on behalf of Medicare, or any other person or entity, arising from or related to this Agreement, the payments set forth in Paragraph 2, any conditional payments made by Medicare, or any medical expenses or payments arising from or related to any released matter that is subject to this Agreement or the release set forth herein, including but not limited to: (a) all claims and demands for reimbursement of conditional payments or for damages or double damages based upon any failure to reimburse Medicare for conditional payments; (b) all claims and demands for penalties based upon any failure to report, late reporting, or other noncompliance with or violation of Section 111 of the Medicare, Medicaid and SCHIP Extension Act ("MMSEA") that is based in whole or in part upon late, inaccurate, or inadequate information provided to Releasees by Ouellette or his agents or upon any failure of Ouellette or his agents to provide information; and (c) all Medicaid liens. This indemnification obligation includes all damages, double damages, fines, penalties, attorney's fees, costs, interest, expenses, and judgments incurred by or on behalf of Releasees in connection with such claims, demands, subrogated interests, or causes of action, as a result of Ouellette's own actions or omissions.

10.     Ouellette acknowledges and agrees that none of the Releasees has made any representation to him regarding the tax consequences of the payment to be received by him pursuant to this Agreement and that he has received advice of his own advisers concerning taxation of the amount payable in this settlement.   Ouellette further agrees that the tax consequences to him of this Agreement shall have no effect whatsoever on the enforceability of the Agreement.

11.     Ouellette understands and agrees that any of Releasees would be obligated to respond truthfully to any inquiry or request for further information by the Internal Revenue Service ("IRS") or the state Department of Revenue Services ("DRS") or to any lawfully issued subpoena concerning the payment to be made under this Agreement.   Ouellette further understands and agrees that the determination of the tax treatment, if any, of the payment made pursuant to this Agreement will be exclusively within the province of the IRS, DRS and any appropriate judicial authority, pursuant to law.  The parties further agree that Ouellette will have no action or claim whatsoever against any of Releasees for information provided to the IRS or DRS or in response to a subpoena for documents or information.

12.     Ouellette represents and acknowledges that no representation, statement, promise, inducement, threat, or suggestion has been made by Releasees or any agent or representative of Releasees to influence him to sign this Agreement, except such statements as are expressly set forth herein.

13.     Ouellette and TFM agree that this Agreement constitutes the full and complete understanding between them.  The complete release and waiver of claims set forth in Section 3 of this Agreement is an essential and material part of this Agreement.  If any portion of this Agreement is held to be void and unenforceable by a court of competent jurisdiction, the release set forth in Section 3 of this Agreement shall nevertheless be binding upon the parties and remain in full force and effect.

9

14.     This Agreement may not be changed except by an instrument in writing signed by the parties.

15.     This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Connecticut applicable to contracts made and to be performed therein, without giving effect to the principles thereof relating to conflict of laws.

16.     Pursuant to the federal Older Workers Benefit Protection Act of 1990, Ouellette acknowledges that:

a.     he has been advised to consult with an attorney of his choice before signing this Agreement and he has in fact done so;

b.     he understands that he does not waive rights or claims that may arise after the date this Agreement is executed;

c.     he has been given twenty-one (21) days to consider this Agreement, and he has requested that the Agreement be executed on this date;

d.     he may revoke this Agreement within seven (7) days of signing it by sending written notice of revocation by first-class and certified mail to Lori Alexander, Esquire, Littler Mendelson, P.C., 265 Church Street, New Haven, CT 06510, and the Agreement will not be effective until that revocation period has expired.

17.     This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns, heirs, and legal representatives, but this Agreement shall not be assignable by Ouellette without the consent of TFM.

18.     This Agreement may be executed in counterparts, and the parties agree that facsimile copies are valid and enforceable just as the original document.

**Ouellette acknowledges that he is executing this Agreement voluntarily and knowingly. Further, Ouellette represents that he fully understands that by executing this Agreement he waives all claims against Releasees, whether such claims are known or unknown, asserted or unasserted, suspected or unsuspected, arising from any acts or omissions occurring prior to or on the date of execution of this Agreement.**

10

IN WITNESS WHEREOF, the parties have set their hands to this Agreement as of the dates set forth below.

Date: 4/17/2016

_Jeffrey Ouellette_
Jeffrey Ouellette

On behalf of The Fresh Market, Inc.

Date: 4/19/2016

By Scott Duffin
Its SVP- General Counsel

11

# EXHIBIT B:

# NOTICE OF SETTLEMENT,

# CONSENT TO JOIN, AND RELEASE AGREEMENT

*Jeffrey Ouellette v. The Fresh Market,* Case No. 3:13-cv-01027(AWT)
United States District Court for the District of Connecticut

## NOTICE OF SETTLEMENT, CONSENT TO JOIN, AND RELEASE AGREEMENT

### NOTICE OF SETTLEMENT

You are receiving this notice because you are an individual who has been identified as eligible to participate in the settlement reached in the case of *Jeffrey Ouellette v. The Fresh Market* (the "Lawsuit"), alleging that Department Managers of The Fresh Market were improperly paid overtime based on the fluctuating workweek method of calculating overtime during the period from July 17, 2010 through May 1, 2015. Specifically, the Named Plaintiff, Jeffrey Ouellette, has alleged on behalf of himself and others similarly situated that The Fresh Market did not comply with the provisions of 29 C.F.R. § 778.114, that it impermissibly paid incentive compensation to Department Managers in addition to utilizing the fluctuating workweek method to calculate overtime, that it allegedly took certain deductions from the compensation of Department Managers, and/or that it did not properly include certain incentive compensation in the calculation of overtime compensation for such Department Managers. The Fresh Market denies the Named Plaintiff's claims and contends that it properly compensated Department Managers but it has agreed to settle this Lawsuit to avoid the burden and expense of continued litigation.

### Notice of Settlement

On _____, the United States District Court for the District of Connecticut approved a settlement of the above Lawsuit. If you choose to join the Lawsuit to participate in the settlement, you will be bound by the Settlement Agreement and Limited Release of Claims entered into by the Named Plaintiff on behalf of all similarly situated Department Managers in the Lawsuit, as stated in the separate Release Agreement provided to you with this notice. If you do not wish to participate in the settlement, do not sign or return any of the enclosed forms, and you will not be paid by or bound by any release of claims from the settlement reached in the case.

If you choose to participate in the settlement, you will receive a settlement payment in the gross amount of approximately $_____,[1] broken down as follows:

One Half Designated as Back Pay: _____ (this amount will be subject to standard payroll deductions, garnishments, liens, support or withholding orders, and you will receive an IRS Form W-2 reflecting this payment for settlement of wage claims)

---

[1]  This amount may be increased depending on the number of individuals who participate in the settlement in accordance with the terms of the separately executed Settlement Agreement and Limited Release of Claims.

One Half Designated as Liquidated Damages: _____ (this amount is not wages and will not be subject to standard payroll deductions, but you may owe taxes on this non-wage amount as regular income and will receive an IRS 1099 misc. form for this payment).

Counsel in the Lawsuit have pursued the litigation on a contingency fee basis. If you submit the required forms and participate in the settlement, you will not be individually charged any attorneys' fees by Plaintiff's Counsel. As part of the settlement, Plaintiff's Counsel have applied for (and the Court has approved) a payment of $_____ to Plaintiff's Counsel of fees, costs, and expenses as part of the settlement. In addition, the Named Plaintiff who was named in the complaint in the action and who expended time and effort on your behalf in the litigation and settlement has sought (and received) Court approval for an additional service payment of $_____ for his role in the action.

**To Participate in the Settlement**

To participate in and receive a payment under the Settlement, you must fully complete the Consent to Join and attached Release Agreement. After you complete and sign these documents, please mail, overnight deliver, fax or email them so that they are postmarked (if by mail) or received by the Claims Administrator (if by overnight delivery, fax or email) at the address below on or before [60 days after initial mailing]. A stamped return envelope is enclosed for your convenience. Forms not received by the 60-day deadline will not be accepted.

If you do not sign and return the form described above, you will receive nothing from the settlement. You also will not waive and release the claims described in the Release Agreement, but you will not receive any money based on this settlement.

**Settlement Administrator**

The following Settlement Administrator has been assigned to manage the settlement of this case: Class Action Administration, LLC.

3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Jeffrey Ouellette, *individually and on*      :
*behalf of other similarly situated*      :
*individuals,*      :
     :      **Civil Action No.:  3:13-cv-1027-AWT**
           Plaintiff,      :
     :
       v.      :
     :
**The Fresh Market, Inc.,**      :
     :
           Defendant.      :

## CONSENT TO JOIN AND AUTHORIZATION TO REPRESENT

I hereby consent to join this action pursuant to Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") for the purposes of participating in the settlement reached in the action, I authorize the law firms of Hayber Law Firm, LLC and Head Law Firm, LLC ("Plaintiff's Counsel") to represent me, and I agree to the terms of the Release Agreement being signed by me concurrently with this Consent to Join in which I release and waive any and all wage and hour claims against The Fresh Market, Inc. ("The Fresh Market") for the period specified in the Release Agreement.

I acknowledge that I will be bound by the settlement reached between the Named Plaintiff and The Fresh Market. I understand that I will be entitled to share in the settlement that has been reached in the litigation.

I agree to allow the Court-approved Settlement Administrator, including its employees, access to any and all confidential and personal information supplied on this Claim Form. I understand that the Settlement Administrator will check the accuracy of certain facts represented in my claim documents with information provided by The Fresh Market. I understand that I must keep the Settlement Administrator informed of my current address and of any change in my mailing address. If I do not do so, I understand that I may not receive any settlement payment that I might otherwise be eligible to receive.

Signature: _____ Date: _____

Printed Name: _____

4

**Your Contact Information (THIS PAGE WILL NOT BE FILED WITH THE COURT OR PROVIDED TO ANYONE OTHER THAN THE SETTLEMENT ADMINISTRATOR)**

[Pre-populated name and address]

This name and address is correct: ___ yes ____ no

If any of the above information is incorrect, please print or type the correct information below. Please also provide your telephone contact information, email information, and as needed to distinguish between duplicate names, the last 4 digits of your Social Security Number.


_____        _____
Name (First, Middle, Last)        Former Names (if any)


_____
Printed Name


_____
Mailing Address (if incorrect)


_____
City                    State            Zip Code


_____        _____
Last 4 digits of                Email Address
Social Security Number
(the last four digits of your SSN will be kept confidential)


_____(Home)_____(Cell)
Telephone Numbers



_____
Signature

In order to participate in the settlement and receive a settlement payment, you must timely sign and return the Consent to Join to the Claims Administrator so that it is received by [60 calendar days from the date of initial notice]. If you wish to confirm that the Claims Administrator received your documents, you may contact the Claims Administrator by calling XXX or by sending an email to xxx@xxx.

5

## RELEASE AGREEMENT

In exchange for the payment to be made to me in the case of *Ouellette v. The Fresh Market, Inc.*, Civ. Doc. No. 3:13cv01027(AWT) (the "Lawsuit"), as described in the Notice of Settlement Offer provided to me with this Release Agreement, I hereby fully release TFM and Apollo Global Management, their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Lawsuit (collectively, the "Releasees") from any and all past and present matters, claims, demands, causes of action, and appeals of any kind, whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, of any kind whatsoever, that relate to the payment of overtime, calculation of overtime or the "regular rate of pay," use of the fluctuating work week method of calculating overtime, non-payment or under-payment of wages or other compensation, or any and all other violations of wage payment laws, whether federal, state, or local, including without limitation any and all common laws concerning the payment of wages, to the extent such claims relate to any time I worked as a Department Manager for The Fresh Market during the period from July 17, 2010 through May 1, 2015 ("Released Claims").

The Released Claims include, but are not limited to, any and all claims that are allowed by law for the causes of action brought in the Lawsuit, and/or any other claims under federal, state, or local law, that could have been brought that arose from or relate to the alleged failure to pay overtime or other wages for work performed as a Department Manager at any time from July 17, 2010 through May 1, 2015. Such claims also include without limitation all claims asserted in the Lawsuit and any other claims that could have been brought in the Lawsuit that arise from or relate to the alleged failure to pay overtime or the alleged underpayment of overtime or other wages or compensation, including, without limitation, claims under the Fair Labor Standards Act, the Connecticut Minimum Wage Act, and the statutes, laws, and regulations of all states, in any pay periods when I worked as a Department Manager from July 17, 2010 through May 1, 2015.

In addition, I irrevocably and unconditionally release, acquit, and forever discharge any claim that I may have against the Released Parties for attorneys' fees, costs, or expenses arising out of any of the potential claims or causes of action described above.


_____            _____
Signature                                   Date


_____
Printed Name

EXHIBIT C:

REMINDER CARD

**Important Reminder to Members of the Putative Collective**
**in *Ouellette v. The Fresh Market*, Civ. No. 3:13-cv-01027**
**U.S. District Court for the District of Connecticut**

You should have received approximately 45 days ago a notice explaining that you have an opportunity to participate in a settlement of a lawsuit against The Fresh Market (the "Lawsuit"). The lawsuit contended that alleging that Department Managers of The Fresh Market were improperly paid overtime based on the fluctuating workweek method of calculating overtime during the period from July 17, 2010 through May 1, 2015. Specifically, the Named Plaintiff, Jeffrey Ouellette, alleged on behalf of himself and others similarly situated that The Fresh Market did not comply with the provisions of 29 C.F.R. § 778.114, that it impermissibly paid incentive compensation to Department Managers in addition to utilizing the fluctuating workweek method to calculate overtime, that it allegedly took certain deductions from the compensation of Department Managers, and/or that it did not properly include certain incentive compensation in the calculation of overtime compensation for such Department Managers. The Fresh Market has denied the Named Plaintiff's claims and contends that it properly compensated Department Managers but it has agreed to settle this Lawsuit to avoid the burden and expense of continued litigation.

In order to participate in the settlement that has been reached in the Lawsuit, you must submit a duly completed and signed Consent to Join form and a Release Agreement **to the Settlement Administrator, at _____ (tel. _____ ), and these documents must be postmarked no later than [INSERT DATE].** Our records indicate that we have not yet received these completed documents from you.

The Fresh Market will not tolerate any retaliation or discrimination against any person based on his/her participation in the settlement. Please do make a timely decision as to whether or not you wish to participate in the settlement.

The Settlement Administrator—not The Fresh Market—will be issuing settlement checks and tax forms to participating employees. If you need a new Consent to Join or Release Agreement, or if you have questions about the settlement process, you can contact the Settlement Administrator at the above address and telephone number.

EXHIBIT D:


GROUP 1 PLAINTIFFS
(AS OF APRIL 17, 2016)

| Last Name | First Name |
|---|---|
| Alders | Jennifer |
| Alvarado | Rosemary |
| Ambrosini | Dominick |
| Amo | Jason |
| Anderson | Laura |
| Armentrout | David |
| Barley | Debra L. |
| Billings | Jason |
| Black | Ernest, III |
| Bound | Mark |
| Brown | Rory |
| Bunkley | Aaron |
| Cady | Scott |
| Carris | Justin |
| Catala | Kimberly |
| Corriolan | Jeffrey |
| Domo | Michael |
| Dykes | Kerry |
| Eads | Patricia |
| Ellison | Camilia |
| Elser | Lisa |

1

| | |
|---|---|
| Fernanders | Anthony |
| Garner | Wayne |
| Gilchrist | Joseph |
| Hoeksema | David |
| Howard | Jody |
| Hunter | Shannon |
| Iaconetti, Jr. | Frank |
| Jackson | Nikkita |
| James | Richard |
| Jenkins | Solomon |
| Johnson | Dorethia |
| Johnson | Michael L. |
| Johnson | Phillip S |
| Joseph | Brenda |
| Kelly | Daniel |
| Kemler | Justin |
| Klimek | Karl |
| Kruse | Melanie |
| Lambert | Jonathan |
| Largie | Taffie |
| Lash | Dale |

| | |
|---|---|
| Lemoine | Jennifer |
| Levine | Arnold I. |
| Martinez | Lira |
| McIntosh | James P. |
| Meijer | Dennis |
| Motter | Melissa |
| Neisler | Brandon |
| Nyenbrink | Gregory |
| O'Neil | Michele |
| Owens | Jeffrey |
| Perry | Caitlin |
| Peterson | Troy |
| Piatkowski | Daniel |
| Ramsey | Joseph |
| Reardon | Barbara |
| Reyes | Jeremy |
| Reyes | Batrice |
| Ridenhour | Wendy |
| Ringler | Richard |
| Ross | Anissa |
| Rothfuss | Brett |
| Rydingsward | Leah |

3

| | |
|---|---|
| Saddler | Timothy |
| Schmidtt | Diane |
| Schuler | Donald |
| Sedor | Dennis |
| Short | Michelle |
| Skowronek | Mark |
| Spain | Mark C. |
| Stach | Cheryl |
| Thompson | Julie C. |
| Thompson-Messam | Donna |
| Vitiello | Louis |
| Watson | Dianne |
| Wrinkle | James T. |
| Zurita | Fernando |

# EXHIBIT E:

# ORDER APPROVING SETTLEMENT AND DISMISSING ACTION WITH PREJUDICE

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **Jeffrey Ouellette,** *individually and on* | : |
| *behalf of other similarly situated* | : |
| *individuals,* | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     Civil Action No.: 3:13-cv-1027-AWT |
| | : |
| **The Fresh Market, Inc.,** | : |
| | : |
| Defendant. | : |

ORDER APPROVING SETTLEMENT AND
DISMISSING ACTION WITH PREJUDICE

Before the Court is the parties' Joint Motion for Order Approving Settlement. For good cause shown, and as more fully explained below, the Motion is GRANTED.

The Court finds that the settlement terms negotiated by the parties and described in their Settlement Agreement, a copy of which was attached to the Joint Motion, are a fair and reasonable resolution of a bona fide dispute between the Named Plaintiff, the Group 1 Plaintiffs, and those individual members of the putative FLSA Collective who may elect to consent to join this action for purposes of settlement (collectively the Participating Plaintiffs), and the Defendant, that the Attorney's Fees Payment requested by Plaintiff's Counsel is reasonable, that the Administrative Costs, Service Payment and Reserve Fund requested in the Joint Motion are reasonable, and that the settlement of the claims as to the Participating Plaintiffs as set forth in the Settlement Agreement is therefore approved. The Parties shall administer the settlement of the claims of the FLSA Class Members as set forth in the Settlement Agreement. Those individual members of

2

the putative FLSA Collective who may elect to consent to join this action for purposes of settlement (the "Group 2 Plaintiffs") shall have their written consents filed with the Court, at which time such individuals shall be deemed to be party plaintiffs whose FLSA claims in this action will have been settled and dismissed pursuant to the terms of the settlement agreement.

All Participating Plaintiffs (including the Named Plaintiff, all Group 1 Plaintiffs, and all remaining members of the putative FLSA Collective who become Group 2 Plaintiffs), on their own behalf and on behalf of their respective descendants, dependents, heirs, executors, administrators, successors, and assigns, shall, by operation of the Settlement Agreement (and, for Group 2 Plaintiffs, the Notice of Settlement, the Consents to Join, and the Release Agreements), and this order, forever and fully release Defendant and Apollo Global Management, their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Lawsuit (collectively, the "Releasees"), in their personal, individual, official and/or corporate capacities, from any and all past and present matters, claims, demands, causes of action, suits, debts, dues, sums of money, damages, and appeals of any kind, whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, of any kind whatsoever, for the payment of overtime, calculation of overtime or the "regular rate of pay," use of the

3

fluctuating work week method of calculating overtime, non-payment or under-payment of wages or other compensation, or any and all other violations of minimum wage, overtime and/or wage payment laws, whether federal, state, or local, and any and all common laws relating to the payment of wages, any time the Participating Plaintiff worked as a Department Manager for Defendant during the period from July 17, 2010 through May 1, 2015 ("Released Claims"). The Released Claims include any and all claims that are allowed by law for the causes of action brought in the Lawsuit, and/or any other claims under federal, state, or local law, that could have been brought that arose from or relate to the alleged failure to pay overtime or other wages for work performed as Department Managers at any time from July 17, 2010 through May 1, 2015.  The Released Claims include without limitation all claims asserted in the Lawsuit and any other claims that could have been brought in the Lawsuit that arise from or relate to the alleged failure to pay overtime or the alleged underpayment of overtime or other wages or compensation, including, without limitation, claims under the Fair Labor Standards Act, the Connecticut Minimum Wage Act, and the statutes, laws, and regulations of all states relating to the alleged failure to pay overtime and/or underpayment of overtime or other wages or compensation in any pay periods when the Participating Plaintiff worked as a Department Manager for Defendant at any time from July 17, 2010 through May 1, 2015.  In addition, each Participating Plaintiff irrevocably and unconditionally releases, acquits, and forever discharges any claim that he/she may have against Releasees for attorneys' fees, costs, or expenses arising out of his/her claims in the Lawsuit.

4

This action is DISMISSED WITH PREJUDICE pursuant to Rule 41 of the Federal Rules of Civil Procedure.

**So ordered.**

_____
**ALVIN W. THOMPSON**
**UNITED STATES DISTRICT JUDGE**