# EXHIBIT 2

Ⓐ  Neutral
As of: May 2, 2016 4:19 PM EDT

## *Caitflo, L.L.C. v. Sprint Communs. Co. L.P.*

United States District Court for the District of Connecticut

June 24, 2013, Decided; June 26, 2013, Filed

No. 3:11-cv-00497-WWE

**Reporter**
2013 U.S. Dist. LEXIS 90858; 2013 WL 3243114

CAITFLO, L.L.C. and CALABASH, L.L.C., for themselves and all others similarly situated, Plaintiffs, v. SPRINT COMMUNICATIONS COMPANY L.P. and WILTEL COMMUNICATIONS, LLC, Defendants.

**Prior History:** *Caitflo, L.L.C. v. Sprint Communs. Co. L.P., 2012 U.S. Dist. LEXIS 157397 (D. Conn., Nov. 2, 2012)*

## Core Terms

Settlement, attorneys', fees and expenses, fee-and-expense, notice, settlement agreement, escrow account, class member, right of way, fee award, right-of-way, provides, courts

**Counsel:** [**\*1**] For Caitflo, L.L.C., for themselves and all others similarly situated, Calabash, L.L.C., for themselves and all others similarly situated, Plaintiffs: Dan Millea, LEAD ATTORNEY, PRO HAC VICE, Zelle Hofman Voelbel & Mason-MN, Minneapolis, MN; Stephen M. Rogers, LEAD ATTORNEY, Zelle, Hofmann, Voelbel, Mason & Gette-MA, Waltham, MA.

For Sprint Communications Company, L.P., Defendant: David M.S. Shaiken, LEAD ATTORNEY, David Shaiken LLC, Storrs, CT; James Emmett Logan, LEAD ATTORNEY, PRO HAC VICE, Stinson Morrison Hecker-Kansas City-MO, Kansas City, MO.

For Wiltel Communications, LLC, Defendant: David M.S. Shaiken, LEAD ATTORNEY, David Shaiken LLC, Storrs, CT; Joseph E. Jones, LEAD ATTORNEY, PRO HAC VICE, Fraser, Stryker, PC LLO, Omaha, NE.

**Judges:** Honorable Warren W. Eginton, Senior United States District Judge.

**Opinion by:** Warren W. Eginton

## Opinion

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES TO SETTLEMENT CLASS COUNSEL

Under *Federal Rules of Civil Procedure 23(h)(1)* and *54(d)(2)*, Plaintiffs in this class action have moved for an award of attorneys' fees and expenses to Settlement Class Counsel. Under *Rule 23(h)(3)*, the Court must make findings of fact and state [**\*2**] its conclusions of law. The Court does so, as follows, in granting the motion:

#### Findings of Fact

1. This class-action settlement resolves a property-rights dispute, which arises out of the installation of fiber-optic cable on railroad rights of way by Sprint Communications Company L.P., WilTel Communications, Inc., WilTel Communications, LLC, and Williams Communications, LLC, f/k/a Williams Communications, Inc., f/k/a Vyvx, Inc. (the "Settling Defendants"). The claims resolved by the Settlement affect parcels of land in Connecticut covering approximately forty-eight miles of rights of way throughout the state.

2. On November 2, 2012, the Court entered an order preliminarily approving the Settlement, certifying the Settlement class, and approving the form and manner of notice. On March 1, 2013, the claims administrator mailed notices to 1,888 current and prior property owners along railroad rights of way in Connecticut containing telecommunications facilities installed by the Settling Defendants, and opened a Settlement call center and website. The notice, which was posted on the website, advised in pertinent part:

> The Court will decide how much Class Counsel and any other lawyers will be [**\*3**] paid. Class Counsel will ask the Court for attorneys' fees, costs and expenses of $217,000. . . . The Defendants will separately pay these

2013 U.S. Dist. LEXIS 90858, *3

fees and expenses and the payment will not reduce the benefits available for the Class.

Notice ¶ 24. The Notice further advised that the Court would hold a Fairness Hearing on June 24, 2013, at which time the Court would "consider how much to pay Class Counsel." *Id.* ¶ 27. On June 24, 2013, the Court held the final Fairness Hearing.

3. The Settlement Agreement provides in pertinent part: "Settlement Class Counsel may seek from the Court a cash award of fees and expenses from the Settling Defendants, in an amount not to exceed the Maximum Attorneys' Fee Award, to which the Settling Defendants will not object." Settlement Agreement § II.E.1. The Settlement Agreement defines the Maximum Attorneys' Fee Award as $217,000. Settlement Agreement Definitions. The Settlement Agreement further provides that "the Settling Defendants shall deposit any attorneys' fee award approved by the Court, which shall not exceed the Maximum Attorneys' Fee Award, into the interest-bearing escrow account established with U.S. Bank in New York, New York, no later than ten (10)  [*4] days after the date on which the Order and Judgment becomes Final." Settlement Agreement § II.E.2.

4. The escrow account established with U.S. Bank is a Qualified Settlement Fund within the meaning of *Treasury Regulation § 1.468B*. The escrow account is maintained by U.S. Bank in New York, New York, with the Garretson Firm Resolution Group, Inc. ("GFRG") serving as the Fund Administrator. These arrangements are consistent with the terms of an Escrow Agreement entered into as of August 26, 2011 between certain Settlement Class Counsel, U.S. Bank, and GFRG.

5. Settlement Class Counsel estimate that approximately $513,000 in cash benefits are available for class members to claim. Administrative costs — to be paid separately by the Settling Defendants — in creating and updating a sophisticated database to notify class members, implement the Settlement, and process claims, are estimated at an additional $40,000. The agreed-to attorneys' fees and non-taxable costs of approximately $217,000 — which will not reduce benefits payable to class members — bring the total gross value of the Settlement to roughly $770,000.

**Conclusions of Law**

6. *Rule 23(h)* provides that, "[i]n a certified class action,  [*5] the court may award reasonable attorney's fees and nontaxable costs that are authorized by . . . the parties' agreement." The Rule further provides that "[a] claim for an award must be made by motion under *Rule 54(d)(2)*," notice of which must be "directed to class members in a reasonable manner" and that the Court "must find the facts and state its legal conclusions under *Rule 52(a)*." *Fed. R. Civ. P. 23(h)(1)* and *(3)*. In turn, *Rule 54(d)(2)* requires a claim for fees to be made by motion, and specifies its timing and content, including, in relevant part, "the grounds entitling the movant to the award" and "the amount sought." *Fed. R. Civ. P. 54(d)(2)(B)*. Notice of this fee-award motion was provided in the class notice and on the website.

7. The Second Circuit has held "that both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases." *Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 49 (2d Cir. 2000)*. Whichever "method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel;  [*6] (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Id*. (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Secs. Litig., 724 F. Supp. 160, 163 (S.D.N.Y. 1989)* (summarizing *Grinnell* factors)). "The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005)* (internal quotation marks and citations omitted).

8. Under the percentage-of-the-fund method, it is appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class by the Settling Defendants' separate payment of attorney's fees and expenses, and the expenses of administration. *See Boeing Co. v. Van Gemert, 444 U.S. 472, 479, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980)* ("Although the full value of the benefit to each absentee member cannot be determined until he presents his claim,  [*7] a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery.") (citation omitted); *Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436-37 (2d Cir. 2007)* ("In this case, the District Court calculated the percentage of the Fund on the basis of the claims made against the Fund, rather than on the entire Fund created by the efforts of counsel. We hold that this was error.").

9. The Court adopts the percentage-of-the-fund approach, and finds that, under it, the agreed-to fee-and-expense

2013 U.S. Dist. LEXIS 90858, *7

request is reasonable as a matter of law. Here, Settlement Class Counsel estimate that, based on the miles of rights of way covered by the Settlement, if each class member were to claim the available cash benefits, approximately $513,000 would be paid to qualifying class members. When estimated administrative costs of $40,000 — to be borne by the Settling Defendants — and the agreed-to attorneys' fees and expenses of $217,000—also to be paid separately by the Settling Defendants — are factored in, the gross value of the Settlement is approximately $770,000. The $217,000 fee-and-expense   [*8]   award therefore represents approximately 28 percent of the fund as a whole.

10. At 28 percent of the value of the fund as a whole, the fee-and-expense award would be well within the range of reasonable percentage-fee awards in this Circuit. *See Goldberger, 209 F.3d at 51-52* (rejecting 25% "benchmark" but acknowledging that "district courts across the nation have apparently eased into the practice of 'systematically' awarding fees in the 25% range"); *In re Iomega Secs. Litig., Nos. B-86-257 (JAC), B-86-273 (JAC), 1987 U.S. Dist. LEXIS 13873, 1987 WL 43391, at *11 (D. Conn. Oct. 1, 1987)* ("Traditionally, courts in this circuit have awarded fees in the 20 percent to 50 percent range in class actions) (citation omitted); *see, e.g., Collins v. Olin Corp., No. 3:03-cv-945 (CFD), 2010 U.S. Dist. LEXIS 39862, 2010 WL 1677764, at *6 (D. Conn. Apr. 21, 2010)* ("A compensation of one third of the total fund is in line with the percentage fees awarded in similar class action suits.") (citations omitted); *In re Priceline.com, Inc. Secs. Litig., No. 3:00-CV -1884(AVC), 2007 U.S. Dist. LEXIS 52538, 2007 WL 2115592, at *5 (D. Conn. July 20, 2007)* ("The court, therefore, orders a fee award equal to 30% of the settlement amount plus accrued interest to the date of the award.").

11. The 28-percent   [*9]   fee-and-expense award is especially reasonable here, where, in reaching the Settlement, Settlement Class Counsel engaged in unusually lengthy and hard-fought litigation against the Settling Defendants to resolve the vexing legal issues arising out of the installation of fiber-optic cable on railroad rights of way that culminated in this and the 45 other state settlements. In the thirty-four fee-and-expense orders issued in similar right-of-way settlements that have received final approval, the federal district courts in Idaho, Illinois, Alabama, North Dakota, Montana, Michigan, Minnesota, Vermont, Kansas, Indiana, Virginia, New Jersey, New York, Florida, West Virginia, Oklahoma, Maryland, Nebraska, Iowa, North Carolina, Wisconsin, Arkansas, Wyoming, Georgia, Colorado, Mississippi, Missouri, South Dakota, Ohio, Washington, Pennsylvania, Nevada, and Rhode Island, and the Delaware state court, approved fee-and-expense awards to class

counsel ranging from approximately 17 to 30 percent of the then-estimated fund.

12. In terms of a lodestar crosscheck, the overlapping nature of fiber-optic-cable right-of-way discovery, motions practice, research, litigation, and settlement efforts across   [*10]   the country for more than a decade — which culminated in this and the other state settlement agreements — have prevented Settlement Class Counsel from segregating their fees and expenses into a "Connecticut-only" category or similar categories for other states. *See* Decl. of Settlement Class Counsel Dan Millea ¶ 16; Decl. of Settlement Class Counsel Irwin Levin ¶ 22. Nonetheless, it is apparent that the Connecticut fee-and-expense request is amply supported by a lodestar crosscheck based on the time and expense incurred, and fees available, in resolution of all the state-by-state settlements of the fiber-optic-cable right-of-way litigation.

13. The total attorneys' fees and expenses incurred by Settlement Class Counsel in the decade-plus of right-of-way litigation culminating in this Settlement, excluding local counsel fees and expenses, were just over $60,000,000 as of March 31, 2011; that number has since increased as Settlement Class Counsel have performed substantial work in seeking approval of the settlements in courts around the country, and it will continue to do so until the settlements are fully administered. *See* Millea Decl. ¶ 17; Levin Decl. ¶ 23. The Settling Defendants in   [*11]   the right-of-way litigation have agreed to pay a total of $41,500,000 in attorneys' fees and expenses in settlement of the forty-six state actions (and the District of Columbia) nationwide. Millea Decl. ¶ 17; Levin Decl. ¶ 23. Therefore, the incurred fees and expenses are subject to a *negative* multiplier — roughly .70 — on a nationwide basis and with a pro-rata Connecticut allocation.

**WHEREFORE** it is **ORDERED** that the motion for an award of attorneys' fees and expenses to Settlement Class Counsel is **GRANTED.**

It is further **ORDERED** that the Court approves a fee-and-expense award of $217,000 to Settlement Class Counsel,

It is further **ORDERED** that the Settling Defendants shall deposit the fee-and-expense award approved by the Court into the interest-bearing escrow account — established as a Qualified Settlement Fund within the meaning of *Treasury Regulation § 1.468B* and as a trust under state law — with U.S. Bank in New York, New York, no later than ten (10) days after the date on which the Order and Judgment

2013 U.S. Dist. LEXIS 90858, *11

becomes Final, that any alleged or actual civil liability against the Settling Defendants for attorneys' fees arising out of the tort claims resolved by the Connecticut Class Settlement **[*12]** Agreement approved by this Court is satisfied and extinguished through the Settling Defendants' payment of the fee-and-expense award, and that any interest earned on the escrow account shall be recognized as gross income of the Qualified Settlement Fund; and

It is further **ORDERED** that appointment of GFRG as the Fund Administrator for the escrow account is hereby

confirmed and that the escrow account shall be governed by the Escrow Agreement entered into as of August 26, 2011 between Settlement Class Counsel, U.S. Bank, and GFRG.

Date: June 24, 2013

/s/ Warren W. Eginton

Honorable Warren W. Eginton

Senior United States District Judge

✦ Positive

As of: May 2, 2016 4:00 PM EDT

# *Castagna v. Madison Square Garden, L.P.*

United States District Court for the Southern District of New York

June 7, 2011, Decided; June 7, 2011, Filed

Case No. 09-cv-10211 (LTS)(HP)

**Reporter**

2011 U.S. Dist. LEXIS 64218; 2011 WL 2208614

FREDRIC P. CASTAGNA, CARL LEE GRANT, LAWRENCE PODWILL, and CHRISTOPHER SAUNDERS, on behalf of themselves and other employees similarly situated, Plaintiffs, -against- MADISON SQUARE GARDEN, L.P., Defendant.

**Prior History:** *Castagna v. Madison Square Garden, L.P., 2011 U.S. Dist. LEXIS 24885 (S.D.N.Y., Feb. 8, 2011)*

## Core Terms

settlement, class member, weighs, overtime, Notice, risks, negotiations, awards, settlement amount, class action, mediation, settlement agreement, parties, final approval, discovery, costs, records, attorney's fees, requirements, liquidated damages, settlement fund, expenses, damages, factors, named plaintiff, set forth, compensate, Courts, opt, terms of the settlement

## Case Summary

### Overview

A court approved a settlement of a class action by security officers for overtime pay because the settlement was fair, reasonable, adequate, and not a product of collusion. The Grinnell factors strongly favored settlement. The settlement committed a significant amount of money to compensate class members, and the benefits to the class were overwhelming--a conclusion that was confirmed by the absence of objectors and opt-outs. An award of 30% of the fund in attorney's fees was reasonable and consistent with a contingency fee in employment cases.

### Outcome

Settlement approved.

## LexisNexis® Headnotes

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Numerosity

***HN1*** Numerosity for purposes of *Fed. R. Civ. P. 23(a)(1)* for certification of a class action is presumed at a level of 40 members.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Commonality

***HN2*** *Fed. R. Civ. P. 23(a)(2)*'s commonality requirement is met when plaintiffs and class members share common issues of fact and law.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Typicality

***HN3*** *Fed. R. Civ. P. 23(a)(3)*'s typicality requirement is satisfied when plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the class members' claims.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Adequacy of Representation

***HN4*** *Fed. R. Civ. P. 23(a)(4)*'s adequacy requirement is satisfied when paintiffs' interests are not antagonistic or at odds with class members.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Commonality

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Predominance

***HN5*** *Fed. R. Civ. P. 23(b)(3)* is satisfied when common factual allegations and a common legal theory predominate over any factual or legal variations among class members and when class adjudication is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

2011 U.S. Dist. LEXIS 64218, *64218

*HN6* *Fed. R. Civ. P. 23(e)* requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

*HN7* The Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, mandates court approval of any class action settlement.

Civil Procedure > Settlements > Settlement Agreements > General Overview

*HN8* To determine procedural fairness, courts examine the negotiating process leading to a settlement. To determine substantive fairness, courts determine whether a settlement's terms are fair, adequate, and reasonable according to the factors set forth in City of Detroit v. Grinnell Corp.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

*HN9* Courts examine procedural and substantive fairness in light of the strong judicial policy favoring settlements of class action suits. Absent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

*HN10* In evaluating s settlement, a court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery. The court gives weight to the parties' judgment that the settlement is fair and reasonable.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

*HN11* Arm's-length negotiations involving counsel and a mediator raise a presumption that a settlement they achieved meets the requirements of due process.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

*HN12* The ″Grinnell factors″ for evaluating the substantive fairness of a settlement are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

*HN13* When relatively few opt-out or object to a settlement, the lack of opposition supports approval. The total absence of objections demonstrates class members' satisfaction with a settlement's terms.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

*HN14* Formal discovery is not required for a settlement to be adequate if the parties obtained sufficient information to understand the claims and negotiate settlement terms. In fact, informal discovery designed to develop a settlement's factual predicate is encouraged because it expedites the negotiation process and limits costs which could potentially reduce the value of the settlement.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

*HN15* In assessing a settlement, a court should balance the benefits afforded to members of the class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

*HN16* Litigation inherently involves risks. If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

*HN17* A defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

*HN18* A court determines whether a settlement is in the range of reasonableness, a range which recognizes the

2011 U.S. Dist. LEXIS 64218, *64218

uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in any litigation. There are risks in proving the best possible recovery. A settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road.

Civil Procedure > ... > Class Actions > Class Members > General Overview

*HN19* Service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff.

Civil Procedure > ... > Class Actions > Class Members > General Overview

*HN20* Service awards are particularly appropriate in the employment context where the plaintiff is often a former or current employee of the defendant, and thus, undertaken the risk of adverse actions by the employer or co-workers.

Civil Procedure > ... > Class Actions > Class Attorneys > Fees

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN21* In the Second Circuit, a district court may calculate reasonable attorney's fees in a class action settlement by either the percentage of fund method or the lodestar method. The trend in the Second Circuit is toward the percentage method.

Civil Procedure > ... > Class Actions > Class Attorneys > Fees

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN22* The factors set forth in Goldberger v. Integrated Res. Inc., are applicable to determining reasonableness of attorney's fees under both percentage-of-fund and lodestar methods.

Civil Procedure > ... > Costs & Attorney Fees > Costs > General Overview

*HN23* Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients.

**Counsel:**  [*1] For Fredric P. Castagna, on behalf of himself, Fredric P. Castagna, on behalf of other employees similarly

situated, Carl Lee Grant, on behalf of himself, Carl Lee Grant, on behalf of other employees similarly situated, Lawrence Podwill, on behalf of himself, Lawrence Podwill, on behalf of other employees similarly situated, Christopher Saunders, on behalf of himself, Christopher Saunders, on behalf of other employees similarly situated, Plaintiffs: , Robert Allen Meister, LEAD ATTORNEYS, Pedowitz & Meister LLP, New York, NY.

For Joseph Degennaro, Alexis Martinchuk, Miguel Rivera, Raymond Barnes, Melvin Riley, Louis Green, John McKenzie, Jason Sampayo, Floyd Mitchell, Herbert Shedrick, Pasquale Speranza, Dowightee Newby, Frank Lettera, Jr., Jeffrey E. Turner, Lancelot E. Theobald, Sr., John Goodhope, Steven Helfand, Joseph Lewinger, Ronald Carballeira, Herbert Zaks, Beverly Witherspoon, Robert Chipman, Gabriel Deutsch, David M Miller, Sr., Hinton Ansley, Jr., Stanley Breuer, Joseph V Blossfeld, Carlos Dias, Richard Daniel Schlagel, Peter Calderon, Clinton McLaren, Scott Edmondson, Louis Villiarola, Edward Joseph Williams, Aubrey E Delerme, Vincent, Jr. Marchese, Douglas  [*2] Fillmore, Paul Martin Gessler, Albert, Jr. Bertone, Francis Bertone, Edward Jacoff, Howard Jacoff, Frank R Volpe, Richard T Wong, Plaintiffs: , Pedowitz & Meister LLP, New York, NY.

For Lee Connie Mims, Carlyle A Theobald, Joseph L Vorbeck, Michael J Collins, Jacqueline DeSimone, Edward Griffin, Jr., Charles Bradley, Gerald D. King, Sr., Edward Stanford, Errol Roberts, Vincent J Lattarulo, Gene Sinacore, Jr., Wayne Hepburn, Fernando Resto, Alan S Balaban, Alonda Williams, William L Thomas, Anthony B Smith, Lynette I Croney, Joseph A Rapino, Joseph George Mariano, Bruno Joseph Carvelli, Plaintiffs: , LEAD ATTORNEY, Pedowitz & Meister LLP, New York, NY.

For Anthony DeSimone, Estate of Robert L Peacock, Bobvy Peacock, Plaintiffs: Robert Allen Meister, LEAD ATTORNEY, Pedowitz & Meister LLP, New York, NY.

For Madison Square Garden, L.P., Defendant: Kenneth A. Margolis, LEAD ATTORNEY, Shelby Anne Silverman, Kauff McGuire & Margolis LLP, New York, NY.

**Judges:** Laura Taylor Swain, United States District Judge.

**Opinion by:** Laura Taylor Swain

# Opinion

**ORDER**

2011 U.S. Dist. LEXIS 64218, *2

The above-captioned matter came before the Court on Plaintiffs Motion for Final Approval of the Class Action Settlement, Named Plaintiffs' Service **[\*3]** Awards, and Class Counsel's Attorney's Fees and Expenses (the ″Motion for Final Approval″).

Plaintiffs brought this action to recover unpaid overtime for themselves and all persons MSG employed as Security Officers between December 16, 2003 and June 6, 2010. Plaintiffs alleged that MSG failed to properly pay security guards overtime compensation in compliance with the Fair Labor Standards Act, *29 U.S.C. § 201 et seq.* (″FLSA″), and *New York State Labor Law §§ 190 et seq. §§ 650 et seq.* and *12 NYCRR § 142-2.2* (″NYLL″). Plaintiffs sought, for themselves and similarly situated employees, unpaid overtime, FLSA liquidated damages, and attorney's fees, costs and expenses and prejudgment interest. They amended the complaint on April 20, 2010, following the decision of *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 559 U.S.    ,130 S. Ct. 1431, 176 L. Ed. 2d 311 (Mar. 31, 2010)*, to also seek NYLL liquidated damages. The amended complaint alleges that MSG knowingly failed to pay all required overtime for work exceeding forty hours a week.

After MSG appeared, the parties met and conferred about both the legal issues and the factual bases in an attempt to settle the claims without prolonged litigation. **[\*4]** Plaintiffs' counsel vigorously investigated the asserted claims and proffered defenses. MSG produced, and Plaintiffs' counsel studied, volumes of computerized payroll entry records listing every occasion each of the 738 security officers worked for MSG from December 16, 2003 through June 6, 2010, and documents demonstrating the number of the MSG shows at which they worked during 2007, 2008, and 2009 and the total number of such occasions they worked.

Plaintiffs' counsel reviewed and analyzed these data, created complex spreadsheets and formulae, and calculated the unpaid overtime owed to the class. Also, counsel obtained from Plaintiffs and other class members pay stubs, personal diaries, work logs, and time sheets, and other documents they maintained, showing the hours they worked, daily and weekly time and pay entries, W-2 forms, dates of hire and discharge, wage stubs, and other wage records. Plaintiffs' counsel analyzed these materials, data and payroll information as well, to cross-check MSG's records. No substantial discrepancies were found. Plaintiffs' counsel also interviewed the Plaintiffs and many class members about facts relevant to this action and proffered defenses.

Plaintiffs' **[\*5]** counsel met on multiple occasions with MSG's counsel, conducted and exchanged legal research, factual analyses and letter briefs and engaged in substantial negotiations. These exchanges facilitated productive settlement discussions, but did not conclude with an agreement.

After the parties did not reach agreement, they held a voluntary mediation (″Mediation″) before Vivian Berger, the Nash Professor of Law Emerita at Columbia University School of Law, who has spent most of her time since 1998 as a mediator, focusing on employment mediation. Each party submitted a confidential memorandum to the Mediator; Class Counsel's contained their legal and factual arguments supporting their position that Defendant violated the FLSA and NYLL, with spreadsheets containing calculating damages under different factual and legal conclusions.

The all-day mediation on September 28, 2010, attended by all Plaintiffs, an MSG representative, MSG's counsel and Class Counsel, did not end with an agreement. Later the mediator made an economic proposal, which was accepted by both sides on October 5, 2010. Thereafter, counsel drafted and negotiated the Settlement Agreement ultimately resolving other issues.

The Settlement **[\*6]** Agreement provides for a *Rule 23(b)* settlement class (″Settlement Class″) consisting of ″all individuals who were employed by MSG as security officers at any time between December 16, 2004 and June 6, 2010″ (the date of the last data MSG provided). MSG will pay $1,300,000 (″Total Settlement Amount″) and the employer portion of required payroll taxes on the share of the distribution to the class deemed wages.

The agreement provides that, upon Court approval:

• Settlement Class members, without having to file a proof of claim, will receive an award based on the amount of underpaid overtime hours he/she worked during the class period.

• Individual incentive payments aggregating $45,000 will be paid from the Total Settlement Amount to the four Class Representatives.

• Class Counsel will be paid from the Total Settlement Amount a fee of 30% of the Total Settlement Amount, or $390,000. This is less than the 33% contingency to which Plaintiffs and counsel agreed in their retainer agreements. (If the combined Percentage Allocation Numbers (as defined) of all Settlement Class members who opt out total more than 5% of all Percentage Allocation Numbers, counsel fees would be reduced to the lesser **[\*7]** of (i) $390,000 or (ii) $433,000

multiplied by the sum of the Percentage Allocation Numbers of those Settlement Class members who did not opt out, and divided by the sum of all Percentage Allocation Numbers.)

• Counsel will be reimbursed from the Total Settlement Amount for costs and expenses up to $20,000.

• After subtracting the amounts the Court allows for incentive payments, counsel fees and expenses, the Net Settlement Amount will be divided among the Settlement Class on a pro-rata basis proportionally to how much underpaid overtime each Settlement Class member worked during the Class Period. Each class member will receive an amount equal to the Net Settlement Amount multiplied by the percentage of the total underpaid overtime he/she worked of the total underpaid overtime of all Settlement Class members, which percentages are set forth in Exhibit B to the Agreement. Of these amounts, half is deemed wages, from which MSG will withhold relevant taxes, and the other half is deemed interest.

On February 8, 2011, the Court preliminarily approved the proposed settlement, conditionally certified the Settlement Class under *Rule 23(e)*, finding that the class met all of the requirements of   [*8]  *Fed.R.Civ.P. 23(a)* and *(b)(3)* and approved the Notice of Class Action Lawsuit, Settlement and Fairness Hearing, as modified, pursuant to *Fed.R.Civ.P. 23(c)(2)(B)*.

Pursuant to that Order, on February 11, 2011, Class Counsel, mailed the Notice. *See* Meister Decl. ¶ 26. Class members had 45 days to opt-out of the state claim class action and to object to the settlement. No one objected and just one individual opted out of the class.

Based upon an examination of the Settlement Agreement, the April 15, 2011 Declarations of Frederic P. Castagna, Carl Lee Grant, Lawrence Podwill, and Christopher Saunders, the April 20, 2011 Declaration of Robert A. Meister, the April 20, 2011 Declaration of Darnley D. Stewart, Esq., the February 11, 2011 Affidavit of Mailing of Notice of Class Action Lawsuit, Settlement and Fairness Hearing Form of Anna Shwedel filed February 11, 2011, the Notice Of Filing Of Opt-Out And Of No Objections filed April 1, 2011, and for the reasons set forth in the accompanying Memorandum of Law,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**:

**The Court's February 8, 2011 Order Conditionally Certified the Settlement Class**

1. Pursuant to its February 8, 2011 Order, the Court certified the   [*9]  proposed class under *Federal Rule of Civil Procedure 23(e)*, for settlement purposes ("Settlement Class"). The approved Class consists of:

> All individuals who were employed by Defendant Madison Square Garden, L.P. ("MSG"), as security officers at any time between December 16, 2003 and June 6, 2010 (the "Class" or "Class Members").

2. The Court conditionally certified the class based on the fact that Plaintiffs meet all of the requirements for class certification under *Fed.R.Civ.P.23(a)* and *(b)(3)*.

3. Plaintiffs satisfy *Fed.R.Civ.P. 23(a)(1)* because there are more than 700 Class Members and therefore joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.1995)* (**HN1** "[N]umerosity is presumed at a level of 40 members.")

4. Plaintiffs satisfy **HN2** *Fed.R.Civ.P. 23(a)(2)*, the commonality requirement, because Plaintiffs and the Class Members share common issues of fact and law, including whether Defendant failed to pay Plaintiffs and the Class Members for all of the overtime they worked. *See Prasker v. Asia Five Eight LLC, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *2 (S.D.N.Y. Jan. 6, 2010)*; *Reyes v. Buddha-Bar NYC, 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at * 2 (S.D.N.Y. May 28, 2009)*; *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *3 (S.D.N.Y. Mar. 31, 2009)*.

5.  [*10]  Plaintiffs satisfy **HN3** *Fed.R.Civ.P. 23(a)(3)*, the typicality requirement, because Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims. *See Prasker v. Asia Five Eight LLC, supra, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *2*; *Reyes v. Buddha-Bar NYC, supra, 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *2*; *Mohney, supra, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at*3*.

6. Plaintiffs satisfy **HN4** *Fed.R.Civ.P. 23(a)(4)*, the adequacy requirement, because Plaintiffs' interests are not antagonistic or at odds with class members. *See Diaz v. Eastern Locating Service, Inc., supra, 2010 U.S. Dist. LEXIS 74333, 2010 WL 2945556, at * 2 (S.D.N.Y. July 22, 2010)*; *Prasker v. Asia Five Eight EEC, supra, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *2*; *Toure v. Cent. Parking Sys., supra, 2007 U.S. Dist. LEXIS 74056, 2007 WL 2872455, at *4 (S.D.N.Y. Sept. 28, 2007)*.

7. Plaintiffs also satisfy *HN5* *Rule 23(b)(3)*. Common factual allegations-that Defendant failed to pay Class Members for all overtime they worked - and a common legal theory - that Defendant violated the FLSA and NYLL - predominate over any factual or legal variations among class members. *See* *Diaz, supra, 2010 U.S. Dist. LEXIS 74333, 2010 WL 2945556, at *2*; *Prakser v. Asia Five Eight LLC, supra, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *2*; *Reyes v. Buddha-Bar NYC, supra, 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *3*; [*11] *Mohney, supra, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *4*. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the resources to bring their claims individually. *See* *Diaz, supra, 2010 U.S. Dist. LEXIS 74333, 2010 WL 2945556, at *2*.

## I. **Final Approval of the Class Action Settlement**

8. The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement and in this Order under *Rule 23* and the FLSA. The Settlement is fair, reasonable, adequate, and not a product of collusion. *See* *Fed.R.Civ.P. 23(c)*, *Frank v. Eastman Kodak Co., 228 F.R.D. 174, 184 (W.D.N.Y. 2005)* (*quoting* *Joel A. v. Giuliani, 218 F.3d 132, 138-39 (2d Cir. 2000)*.

9. *HN6* *Rule 23(e)* requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. *Fed.R.Civ.P. 23(e)*. *HN7* The FLSA also mandates court approval of any settlement. *See* *Latacela v. Cohen, No. 10 Civ. 4653(RJH), 2010 U.S. Dist. LEXIS 107209, 2010 WL 3911463 at*1 (S.D.N.Y. Oct. 5, 2010)*.

10. *HN8* To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005)*; [*12] *D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)*. To determine substantive fairness, Courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974)*.

11. *HN9* Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Torres v. Gristede's Operating Corp., 08-CV-8531 (PAC), 2010 U.S. Dist. LEXIS 139144, 2010 WL 5507892 at *3 (S.D.N.Y. Dec. 21, 2010)* citing *Wal-Mart Stores, 396 F.3d at 116*. "Absent fraud or collusion, [courts]

should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)*. *HN10* "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *McMahon v. Olivier Cheng Catering and Events, LLC, No. 08 Civ. 8713(PGG), 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328 at *3 (S.D.N.Y. Mar. 3, 2010)* [*13] (citation omitted). The Court gives weight to the parties' judgment that the settlement is fair and reasonable. *See* *Reyes v. Buddha-Bar NYC, 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at * 3 (S.D.N.Y. May 28, 2009)*; *Mohney v. Shelly's Prime Steak Stone Crab & Oyster Bar, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *4 (S.D.N.Y. Mar. 31, 2009)*.

*Procedural Fairness*

12. Here, the Class is represented by experienced counsel. Robert A. Meister and David Harrison of Pedowitz & Meister LLP are competent litigators experienced in class and employment actions as well as other complex multi-party litigation. *See* Meister Decl. ¶¶ 46-51.

13. The settlement was reached only after Plaintiffs' counsel had conducted a thorough investigation and evaluation of the claims, and after legal memoranda were exchanged and extensive negotiations between the parties had taken place. Plaintiffs' counsel undertook a detailed analysis of Defendant's payroll information including developing complex charts and formulae to calculate the amount of overtime worked under different scenarios.

14. To help resolve the case, the parties enlisted the services of experienced mediator, Vivien Berger, the Nash Professor of Law Emerita at Columbia University School of Law, who has [*14] spent most of her time since 1998 as a mediator, focusing on employment mediation. *HN11* Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process. *See* *Prakser v. Asia Five Eight LLC, No. 08 Civ. 5811, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009 at *4 (S.D.N.Y. Jan. 6, 2010)*; *See also* *Wal-Mart Stores, 396 F.3d at 116*.

*Substantive Fairness*

15. The settlement is substantively fair. All of the factors set forth in *City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d*

*Cir. 1974)*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

16. *HN12* The "Grinnell" factors" are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [*15] and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell, 495 F.2d at 463*.

17. Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

18. The class's reaction to the settlement was positive. Each Notice included an explanation of the settlement and an estimate of the Class Member's award. The Notices also informed Class Members that they could object to or exclude themselves from the settlement, and explained how to do so. Of the 738 notices mailed out, no Class Member objected to the Settlement and only one Class Member requested exclusion. *HN13* When relatively few opt-out or object to the settlement, the lack of opposition supports approval. *See In re Sony SXRD Rear Proj. Tele. Class Action Litig., No. 06 Civ. 5173(RPP), 2008 U.S. Dist. LEXIS 36093, 2008 WL 1956267 at *6 (S.D.N.Y. May 1, 2008)*("The small number of opt-outs and relative to the size of the class in this case supports approval of the Settlement.") The total absence of objections demonstrates Class Members' satisfaction with the Settlement's terms. *See Ross v. A.H. Robins Co., Inc.*, 700 F.Supp 682, 684 (S.D.N.Y. 1988)(noting [*16] that "[t]he absence of objectants may itself be taken as evidencing the fairness of the settlement" (citation omitted)). This factor weighs heavily in favor of approving the proposed settlement.

19. The parties have completed enough investigation to agree on a reasonable settlement. Although they did not engage in *HN14* formal discovery, such is not required for a settlement to be adequate, if the parties obtained sufficient information to understand the claims and negotiate settlement terms. *See D'Amato v. Deutsche Bank, 236 F.3d 78, 87 (2d Cir. 2001)*(this weighs in favor of approval because "although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other

information"); *In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 458 (S.D.N.Y. 2004)* ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."); *Willix v. Health-first, Inc., No. 07-CW-1143(ENV)(RER), 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862 at *4 (E.D.N.Y. Feb. 18, 2011)*. ("The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'") In fact, informal discovery designed to develop [*17] a settlement's factual predicate is encouraged because it expedites the negotiation process and limits costs which could potentially reduce the value of the settlement. *See Jones v. Amalgamated Warbasse Houses, Inc., 97 F.R.D. 355, 360 (S.D.N.Y. 1982)* ("Although little formal discovery has occurred, the parties freely exchanged data during settlement talks. In view of the way this speeds the negotiation process, informal 'discovery' is to be encouraged"). The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *5* (citation omitted). The stage of these proceedings — where the parties have conducted thorough informal discovery to fully understand the claims and settle without incurring undue costs - weighs in favor of approval.

20. The fourth *Grinnell* factor, the risks of establishing liability, also weighs in favor of final approval. *HN15* "In assessing the Settlement, the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Global Techs. Corp., 186 F.Supp.2d 358, 364 (S.D.N.Y. 2002)*. [*18] MSG challenges liability on two main theories. First, it contended that meal and break periods do not count as working time under the FLSA and NYLL. If this case were to be tried, Plaintiffs would need to rely on testimony of Class Members and supervisors about the length of meal and break periods and the amount of work during breaks. *See In re Sony, 2008 U.S. Dist. LEXIS 36093, 2008 WL 1956267 at *8* (noting that in pursuing litigation "Plaintiffs face the more practical risks of uncertain witness testimony"). Second, MSG urged that FLSA *§ 207(b)* exempted the class from *§ 207(a)* overtime even though MSG had not paid the overtime required by *§ 207(b)*. Although a weak argument in light of precedent, *HN16* "[l]itigation inherently involves risks." *Torres v. Gristede 's Operating Corp., No. 04-CV-3316 (PAC), 2010 U.S. Dist. LEXIS 139144, 2010 WL 5507892 at *5 (S.D.N.Y. Dec. 21, 2010)*(citation omitted). "If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re PaineWeb-ber Ltd. P'ships. Litig., 171 F.R.D. 104, 126 (S.D.N.Y.*

1997). These risks, which could result in a smaller per-plaintiff recovery, weigh in favor of settlement.

21. The risk of establishing damages further weighs in favor [*19] of final approval. Even if Plaintiffs establish liability, they still face the "substantial risks in proving [its] damages at trial." *In re Painewebber Ltd. P'ships. Litig., 171 F.R.D. at 128*. One purpose of a settlement "is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co., 304 F.Supp. 917, 934 (S.D.N.Y. 1969)*. Here, the fact-intensive nature of Plaintiffs' claims and Defendant's affirmative defenses presents risk. The settlement eliminates this uncertainty. The fifth *Grinnell* factor weighs in favor of final approval.

22. The risk of maintaining class status throughout trial also weighs in favor of final approval. A contested class certification motion would likely require extensive discovery and briefing. If the Court granted a contested class certification motion, Defendants could seek to file an appeal and/or move to decertify, which would require additional rounds of briefing and extensive delay. *See Glover v. Crestwood Lake Section 1 Holding Corp., No. 89 Civ. 5386 (MLJ), 1991 U.S. Dist. LEXIS 4995, 1991 WL 64172 at *6 (S.D.N.Y. Apr. 10, 1991)*. *See also D.S. v. New York City Dep't of Educ, 255 F.R.D. 59, 78 (E.D.N.Y 2008)*("the risk that the class or subclass [*20] maybe decertified generally weighs in favor of settlement"). Settlement eliminates the risk, expense, and delay inherent in this process. The sixth *Grinnell* factor weighs in favor of final approval.

23. While Plaintiffs believe MSG could pay the maximum potential recovery, *HN17* a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005)* quoting *In re Austrian & German Bank Holocaust Litig., 80 F.Supp.2d 164, 178 n.9 (S.D.N.Y. 2000)*.

24. The amount of the settlement weighs strongly in favor of final approval. *HN18* The court determines whether the settlement is in the "range of reasonableness," *id.*, "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in . . . any litigation." *Wal-Mart Stores, Inc., 396 F.3d at 96* (quoting *Newman v. Stein, 464 F.2d 689, 693 (2d Cir.1972))*. There are risks in proving the best possible recovery. The "settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount [*21] years down the road.'" *Gilliam v. Addicts Rehab. Ctr. Fund., No. 05-Civ.-3452 (RLE), 2008*

*U.S. Dist. LEXIS 23016, 2008 WL 782596 at *5 (S.D.N.Y. Mar. 24, 2008)*.

25. Additionally, the following analyses weight in favor of settlement.

The settlement amount is:

a. 62.5% of the proposed settlement class members' recoverable damages under a "best possible case" analysis assuming, *inter alia*, (1) the *Rule 23* class was certified; (2) the collective action was and remained certified; (3) the Court would find that the one-hour lunch break during shifts and the 20-30 minute break in each show an early dismissals were all compensable work time, and (4) that the Court would rule that the settlement class is entitled to NY Labor Law liquidated damages and New York State 9% prejudgment interest during the 3-year period that the settlement class is also entitled to FLSA liquidated damages.

b. 70% of the "best possible case" recovery without NYLL liquidated damages or prejudgment interest, which is consistent with this Court's decision in *Rios v. Neighborhood Constr. Corp., No. 07 Civ. 8701 (LTS), 2009 U.S. Dist. LEXIS 95629, 2009 WL 3335354 (S.D.N.Y. Oct. 14, 2009)* (where Judge Swain held the NYLL claim was subsumed in the FLSA claim and that plaintiffs could [*22] not recover NYLL liquidated damages for the two or three year FLSA period); and

c. 119% of the Settlement Class' recoverable damages under a "worst possible case" analysis, assuming the Court were to rule that the lunch and show breaks during shifts were not compensable work time and that NYLL liquidated damages and prejudgment interest are not available during the FLSA period.

26. Thus the *Grinnell* factors strongly favor Settlement. Although Plaintiffs might recover more at trial, there are significant risks. The Settlement commits a significant amount of money to compensate Class members for their damages. When this monetary relief is weighed against the potential obstacles, substantial costs, and significant delay of further litigation, the benefits to the Class of settlement are overwhelming. This conclusion is confirmed by the absence of objectors and opt-outs.

## II. Dissemination of Notice Met Notice and Due Process Requirements

27. Pursuant to the February 8, 2011 Preliminary Approval Order, the Notices were sent by first-class mail to each

identified Class Member at his or her last known address. This Court finds that the Notices fairly and adequately advised Class Members of the [*23] terms of the settlement, as well as the right of Class Members to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted on May 6, 2011. Class Members were provided the best notice practicable under the circumstances.

28. The Court further finds that the Notices and distribution of such Notices comported with all constitutional requirements, including those of due process.

### III. Named Plaintiffs' Service Awards

29. The Court finds service awards of $10,000 each to Carl Lee Grant, Lawrence Podwill, and Christopher Saunders and $15,000 to Frederic P. Castagna are reasonable and awards them. MSG shall pay these amounts from the Settlement Fund.

30. Such *HN19* service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff. *See Torres v. Gristede's Operating Corp., 08-CV-8531 (PAC) 2010 U.S. Dist. LEXIS 139144, 2010 WL 5507892 at *7 (S.D.N.Y. Dec. 21, 2010)*(awarding an incentive award of $15,000 to each named plaintiff in the settlement of their FLSA overtime claim); *Mentor v. Imperial Parking Sys., Inc., No. 05-CIV. 7993 (WHP), 2010 U.S. Dist. LEXIS 132831, 2010 WL 5129068 at * 1-2 (S.D.N.Y. Dec. 15, 2010)* [*24] (upholding a $15,000 incentive award in a class settlement of $690,000 for a plaintiff who reviewed documents, spoke to current and former employees, and traveled to New York during the pendency of the class FLSA claim); *See also Willix v. Healthfirst, Inc, No. 07-Civ.-l 143 (ENV)(RER), 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862 at *7 (E.D.N.Y. Feb. 18, 2011)*(approving incentive awards $30,000, $15,000, and $7,500 in FLSA claim to recover unpaid overtime wages); *Khait v. Whirlpool Corp., No. 06-6381(ALC), 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010)*; (awarding $15,000 service awards each to five named plaintiffs and $10,000 awards each to 10 other plaintiffs in FLSA overtime class action).

31. In this case, the four Plaintiffs expended considerable time and effort with Class Counsel and were actively involved in the prosecution of this case. Further, *HN20* service awards are "particularly appropriate in the employment context. . . [where] the plaintiff is often a former or current employee of the defendant, and thus, undertaken the risk of adverse actions by the employer or co-workers." *Frank, 228 F.R.D. at 187*. [*25] [O>These awards are justified because all four individuals wore potentially, and arguably were subjected to adverse actions because of the lawsuit.<O]

### IV. Award of Fees to Class Counsel

32. In its February 8, 2011 Order, the Court appointed Pedowitz & Meister LLP as Class Counsel. The Court determined that Counsel met all of the requirements of *Federal Rule of Civil Procedure 23(g)*. *See Damassia v. Duane Reade Inc., 250 F.R.D. 152, 165 (S.D.N.Y. 2008)* (*Rule 23(g)* requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, ... counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, ... counsel's knowledge of the applicable law, and ... the resources counsel will commit to representing the class" (internal quotation marks omitted)).

33. *HN21* In the Second Circuit, a district court may calculate reasonable attorney's fees in a class action settlement by either the percentage of fund method or the lodestar method. *See McDaniel v. County of Schenectady, 595 F.3d 411, 417-18 (2d. Cir. 2010)*. "[T]he trend in [the Second] Circuit is toward the percentage method." *McDaniel, 595 F.3d at 417*.

34. [*26] Here, Plaintiffs' counsel requests $390,000 which is 30% of the settlement fund. A percentage-of-recovery fee award of 30% is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. County of Albany*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. *493 F.3d 110, 111-12 (2d Cir.2007)*. In their retainer agreement, named Plaintiffs agreed that Class Counsel would be entitled to 33% of any recovery, which based on the $1.3 million settlement would lead to a fee of $429,000. During settlement negotiations, however, Class Counsel agreed to accept a fee of 30%. Thus Class Counsel's requested fee of $390,000 is $39,000 less than what named Plaintiffs agreed to pay. Further, an award of thirty (30%) percent of the fund is consistent with what reasonable, paying clients pay in contingency employment cases. *See Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 249 (2d Cir. 2007)* (affirming award of fees and costs equal to 30% of the settlement fund ($42.5 million)); *Clark v. Ecolab, Inc., Nos. 07 Civ. 8623(PAC) et. al, 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198 at *9*

*(S.D.N.Y. May 11, 2010)*(fees  [*27] of one-third of the settlement fund ($2 million) in FLSA overtime case); *Reyes v. Buddha-Bar NYC, No. 08 Civ. 02494(DF), 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009)* (fee of 33% of $710,000 fund in FLSA and NYLL tip misappropriation case); *Mohney v. Shelly's Prime Steak Stone Crab & Oyster Bar, No. 06 Civ. 4270(PAC), 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009)*(33% of $3,265,000 fund in FLSA and NYLL case); *Maley v. Del Global Techs. Corp., 186 F.Supp.2d 358, 371 (S.D.N.Y. 2002)* (33 1/3% fee of $11.5 million fund in securities class action); *Cohen v. Apache Corp., No. 89 Civ. 0076, 1993 U.S. Dist. LEXIS 5211, 1993 WL 126560 (S.D.N.Y. Apr. 21, 1993)* (33 1/3% of $6.75 million fund in securities class action); *Khait v. Whirlpool Corp., No. 06-6381(ALC), 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106 at *8 (E.D.N.Y. Jan. 20, 2010)* (33% of settlement or $3,052,500 in FLSA and NYLL case); *Stefaniak v. HSBC Bank USA, N.A., No. 05 Civ. 720, 2008 U.S. Dist. LEXIS 53872, 2008 WL 7630102 at *3 (W.D.N.Y. June 28, 2008)* (33% of $2.9 million fund in FLSA and NYLL case). The fact that Counsel's fee entitlement was entirely contingent upon success weighs in favor of reasonableness.

| Name | Position | Year of Admission | Rate | Hours |
|------|----------|-------------------|------|-------|
| Robert A. Meister | Partner | 1963 | $600 | 207.20 |
| David Harrison | Associate | 2004 | $325 | 534.95 |
| Marisa Warren | Associate | 2010 | $250 | 130.00 |
| Marisa Warren | Law Clerk | — | $200 | .75 |
| Karen Kranson | Associate | 2009 | $250 | .6 |
| Various | Paralegal | — | $150 | 216.64 |

*Counsel's Requested Attorney's*  [*29] *Fees are Reasonable under the* Goldberger *Factors*

38. Counsel's fees are also reasonable under **HN22** the factors set forth in *Goldberger v. Integrated Res. Inc., 209 F.3d 43, 51 (2d Cir. 2000)*. These factors are applicable to determining reasonableness under both percentage-of-fund and lodestar methods. *See McDaniel, 595 F.3d at 423*. Courts consider: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) quality of representation; (5) the requested fee in relation to the settlement and (6) public policy considerations. *See Goldberger, 209 F.3d at 50*. Counsel's requested fee is reasonable under both methods.

39. The first *Goldberger* factor weighs in favor of award Counsel's requested attorney's fees. Counsel litigated this entire case from its investigatory stage through settlement and this motion. This work comprised interviewing the Plaintiffs and numerous class members; reviewing and analyzing an extensive collection of wage and payroll

*McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328 at *8*.

35. Counsel's fees are also reasonable under a lodestar analysis. The  [*28] attorney's fees amount to a lodestar multiplier of 1.07, which is a relatively low multiplier for settlement of a class action, measured by the range more recently awarded in the district and others. *See In re Telik, 576 F.Supp.2d 570, 590 (S.D.N.Y. 2008)* (″In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.″).

36. This is based on hourly rates of $600 for Robert A. Meister, $325 for David Harrison, $250 for Marisa Warren, $200 for Law Clerks, $150 for paralegals, which the Court finds reasonable in light the fees charged in this District and Class Counsel's experience.

37. Counsel, has spent a total of 1,090 hours up until this motion. Plaintiffs' counsel have submitted their time records for review by the Court (Meister Decl. Exhibit A), and, the Court finds these records to be sufficiently detailed and reasonable in light of the time and effort put into this case.

records, including but not limited to daily time sheets, pay stubs, work logs, and journals as well as the computerized data MSG produced; drafting and then amending the complaint days  [*30] after the Supreme Court decided *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. ___, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (Mar. 31, 2010)*; preparing a potential motion to preliminarily certify the class; negotiating extensions of deadlines to amend unnecessary time of the Court and counsel and to preserve the Class's rights; speaking with numerous Class Members; analyzing volumes of records produced by MSG; researching and analyzing extensive legal and factual issues; engaging in detailed conversations and researching and preparing memoranda of law exchanged with MSG Counsel about the substance and value of the case; creating comprehensive damage calculations based on these records; applying different possible conclusions and testing a proffered affirmative defense of exemption. Counsel also prepared a detailed mediation statement assessing the strength of their claims, participated in a full-day mediation and ultimately

negotiated an excellent settlement early in the litigation thus saving hundreds of hours of legal time that would have increased their fees. After a tentative agreement was reached, Class Counsel engaged in extensive negotiations to draft a settlement agreement that [*31] was agreeable to both sides, including the Class Notice. Following the settlement, Class Counsel drafted motion papers and briefs to the Court advocating for the preliminary approval of the class and settlement and this motion, distributed notices of the action and settlement to the class, investigated to ascertain the correct current address of class members whose notice was returned, and responded to various questions and requests from numerous class members. Meister Decl. ¶ 36.

40. Throughout the litigation, counsel had numerous telephone calls, meetings and email discussions with Plaintiffs regarding the facts underlying the case and the status of negotiations, and responded to frequent calls regarding the case. Named Plaintiffs had and used Robert Meister's personal cellular phone for after-hours access. Through constant contact, counsel kept the Plaintiffs, and other class members with whom they spoke, informed and involved in the action. *Id*. Additionally, the fact that counsel's fee award "will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request." [*32] *Diaz v. Eastern Locating Service Inc., 2010 U.S. Dist. LEXIS 139136, 2010 WL 5507912 at *7 (S.D.N.Y. Nov. 29, 2010)*.

41. The "magnitude and complexity" of this case supports Counsel's fee request. With 738 members, the Settlement Class is large for a wage and hour class action. *See e.g. McMahon v. Olivier Cheng Catering and Events, LLC, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328 at *2 (S.D.N.Y. Mar. 3, 2010)* (341 Class members); *Diaz v. Eastern Locating Service Inc., 2010 U.S. Dist. LEXIS 139136, 2010 WL 2945556 (S.D.N.Y. July 22, 2010) at *1* (185 Class members). Further, seeing as the Class Members worked during different times over a 6 year period and under different supervisors, two different collective bargaining agreements and worked different combination of shifts, shows and both shifts and shows, required counsel to do a broad investigation of the underlying facts.

42. Due to the contingent nature of the case, Counsel risked substantial time and effort with no ultimate guarantee of compensation. Counsel took this case pursuant to a retainer agreement with the named Plaintiffs that provided for a fee *only* if Plaintiffs obtained a recovery. Therefore the risks of this litigation weigh in favor of granting Counsel's fee award.

43. Counsel used their experience to obtain [*33] an excellent result for the class. Additionally, Counsel's quality is confirmed by its enormously positive response of the class where no class member objected to the settlement and only one class member opted out. This factor weighs in favor of granting the requested fee.

44. The fee "is consistent with the norms of the class litigation in this circuit." *See Gilliam, 2008 U.S. Dist. LEXIS 23016, 2008 WL 782596 at *5*. In this Circuit, the "percentage-of-recovery" method is the "trend." *McDaniel, 595 F.3d at 417; 1*. Class Counsel's request for 30% of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." *See Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 249 (2d Cir. 2007)* (affirming award of fees and costs equal to 30% of the settlement fund ($42.5 million)). Thus this factor weighs in favor of Court approval.

45. Public policy considerations weigh in favor of awarding Counsel's requested fee as "[p]rivate attorneys should be encouraged to take risks required to represent those who would not otherwise be protected from socially undesirable activities. . ." *Maley, 186 F.Supp. 2d at 374*.

46. Accordingly, the Court [*34] hereby grants Plaintiffs' Motion for Attorney's Fees, finds counsel fees of $390,000 are reasonable and awards them to Pedowitz & Meister LLP. MSG shall pay them from the Total Settlement Amount as specified in the Settlement Agreement.

## V. **Award of Costs to Class Counsel**

47. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $2,159.50, which the Court finds to be reasonable. **HN23** "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients." *Toure v. Cent. Parking Sys., No. 05 Civ. 5237(WHP), 2010 U.S. Dist. LEXIS 33246, 2010 WL 1572589, at *3 (S.D.N.Y. Mar. 26, 2010)*(citation omitted). Here counsel has provided detailed records documenting all costs. *See* Meister Decl. ¶ 57. They include court filing fees, telephone charges, postage, transportation, photocopies, electronic research and the investigator's fee for locating Class Members whose addresses were not current. They are all reasonable, incidental and necessary to the representation of the Class, and we are far less than the $20,000 maximum set in the Settlement Agreement, which difference will increase Class Members' recovery. Further, Class Counsel saved the [*35] Class substantial costs by insisting that MSG pay all

the mediator's fees if an agreement was reached and the expense of payment with the tax withholding and by self-administering the class notice rather than using an outside service firm. *See McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328 at *8*. MSG shall pay the $2,159.50 to Pedowitz & Meister LLP from the Total Settlement Amount, as specified in the Settlement Agreement.

## **CONCLUSION**

48. Defendant shall pay the Total Settlement Amount in accordance with the terms of the Settlement Agreement.

49. The Defendant shall also pay to Class Counsel attorney's fees of $390,000 and costs of $2,159.50 from the Total Settlement Amount in accordance with the terms of the Settlement Agreement.

50. The Defendant shall also pay $10,000 to Carl Lee Grant, Lawrence Podwill, and Christopher Saunders and $15,000 to Frederic Castagna as service awards from the Total Settlement Amount in accordance with the terms of the Settlement Agreement.

51. Defendant shall pay the balance of the Total Settlement Amount to Class Members as specified in the Settlement Agreement, based on Exhibit B thereto, which amounts shall be agreed to by Class Counsel, and shall distribute the Settlement  **[*36]** Checks as described in the Settlement Agreement.

52. The Defendant shall satisfy its employer obligations to pay all applicable employer tax contributions associated with the wage payments in the Settlement Checks.

53. Defendant shall further perform the additional duties outlined in the Settlement Agreement. Plaintiffs' counsel shall provide defendant with all updated mailing addresses for Class Members and all W-4 forms that were sent in from Class Members.

54. In accordance with terms and definitions contained in the Settlement Agreement, all Released Claims are hereby dismissed with prejudice as to all Class Members through December 13, 2010. Settlement Class Members will retain any other claims, except the Class Representatives, who seek service awards, release all employment claims through December 13, 2010. All Class Members who have not timely opted out of the Settlement Class are permanently enjoined from pursuing and/or seeking to reopen claims that have been released by the Settlement Agreement.

55. The Court retains jurisdiction over this action as may be necessary to administer the settlement. The parties shall abide by all terms of the Settlement Agreement and this Order.

56. **[*37]** The Clerk of the Court is directed to enter a final judgment consistent with this Order and close the file. This order resolves ducker entry No. 104

New York, New York

June 7, 2011

/s/ Laura Taylor Swain

United states District Judge

◆  Positive

As of: May 2, 2016 4:18 PM EDT

## *Collins v. Olin Corp.*

United States District Court for the District of Connecticut

April 21, 2010, Decided; April 21, 2010, Filed

Civil Action No. 3:03-cv-945 (CFD)

**Reporter**

2010 U.S. Dist. LEXIS 39862; 2010 WL 1677764

CLARENCE R. COLLINS, JR., et al., Plaintiffs, v. OLIN CORPORATION, et al., Defendants.

**Prior History:** *Collins v. Olin Corp., 2009 U.S. Dist. LEXIS 5444 (D. Conn., Jan. 12, 2009)*

## Core Terms

proposed settlement, settlement, Plaintiffs', Subclass, remediation, attorneys', class member, negotiations, summary judgment, Contaminated, Properties, factors, dispositive motion, damages, environmental, consultants, witnesses, approve, fees and expenses, settlement fund, certification, Securities, expenses, objected, arm's, costs, risks

**Counsel:** **[*1]** For Clarence R. Collins, Jr., o/b/o themselves & a class of similarly situated prop owners, Jennifer Dontfraid, o/b/o themselves & a class of similarly situated prop owners, Patrick Dontfraid, o/b/o themselves & a class of similarly situated prop owners, Donna Lee Johnson, o/b/o themselves & a class of similarly situated prop owners, Leonardo Melendez, o/b/o themselves & a class of similarly situated prop owners, Sonia Powell, o/b/o themselves & a class of similarly situated prop owners, Dorothy Williams, o/b/o themselves & a class of similarly situated prop owners, Valerie Lassiter, o/b/o themselves & a class of similarly situated prop owners, Matthew Abraham, o/b/o themselves & a class of similarly situated prop owner, Phyllis Abraham, o/b/o themselves & a class of similarly situated prop owners, Henry L. Blue, o/b/o themselves & a class of similarly situated prop owners, Janie Clemons, o/b/o themselves & a class of similarly situated prop owners, Louis Craig, o/b/o themselves & a class of similarly situated prop owners, Ruth B. Eaton, o/b/o themselves & a class of similarly situated prop owners, Maxine Jones, o/b/o themselves & a class of similarly situated prop owners, Collin Rouse, **[*2]** o/b/o themselves & a class of similarly situated prop owners, Clifford Senior, o/b/o themselves & a class of similarly situated prop owners, Adrienne Rouse-Senior, o/b/o themselves & a class of similarly situated prop owners, Raymond Sims, Sr., o/b/o themselves & a class of similarly situated prop owners, Ellecia R. Sims, o/b/o themselves & a class of similarly situated prop owners, Marc Perry, o/b/o themselves & a class of similarly situated prop owners, William C. Walker, o/b/o themselves & a class of similarly situated prop owners, Venus D. Walker, o/b/o themselves & a class of similarly situated prop owners, Morris Draughn, o/b/o themselves & a class of similarly situated prop owners, Mary Draughn, o/b/o themselves & a class of similarly situated prop owners, Carolyn Smith, o/b/o themselves & a class of similarly situated prop owners, Elizabeth Hayes, o/b/o themselves & a class of similarly situated prop owners, Murline Wellesley, o/b/o themselves & a class of similarly situated prop owners, Eugalyn Wilson, o/b/o themselves & a class of similarly situated prop owners, Charlene P. Webb, o/b/o themselves & a class of similarly situated prop owners, Elias Rochester, o/b/o themselves **[*3]** & a class of similarly situated prop owners, Marus Walters, o/b/o themselves & a class of similarly situated prop owners, Herman Bershtein, Exec Ext Josephine Neal, Plaintiffs: Alison Kaplan Clark, LEAD ATTORNEY, Cohen & Wolf- Bpt, Bridgeport, CT; Austin D. Kim, LEAD ATTORNEY, Cohen & Wolf P.C., Bridgeport, CT; Brad J. Mitchell, Michael A. Lesser, LEAD ATTORNEYS, Thornton, Early & Naumes, Boston, MA; Christian F. Uehlein, LEAD ATTORNEY, PRO HAC VICE, Thornton & Naumes, Boston, MA; David C. Strouss, LEAD ATTORNEY, Thornton & Naumes LLP, Boston, MA; David B. Zabel, LEAD ATTORNEY, Cohen and Wolf, P.C., Bridgeport, CT; , LEAD ATTORNEY, PRO HAC VICE, McRoberts & Roberts, LLP, Boston, MA; Jennifer A. Currie, LEAD ATTORNEY, McRoberts, Roberts & Rainer, LLP, Boston, MA; Mark W. Roberts, LEAD ATTORNEY, McRoberts & Roberts, LLP, Boston, MA; Monte E. Frank, LEAD ATTORNEY, Cohen & Wolf, Danbury, CT; Neil T. Leifer, LEAD ATTORNEY, Thornton & Naumes, Boston, MA.

For Gwendolyn L. Coppage, o/b/o themselves & a class of similarly situated prop owners, Plaintiff: Alison Kaplan

2010 U.S. Dist. LEXIS 39862, *4

Clark, LEAD ATTORNEY, Cohen & Wolf- Bpt, Bridgeport, CT; Andrew A. Rainer, LEAD ATTORNEY, McRoberts, [*4] Roberts & Rainer, LLP, Boston, MA; Brad J. Mitchell, Michael A. Lesser, LEAD ATTORNEYS, Thornton, Early & Naumes, Boston, MA; David C. Strouss, LEAD ATTORNEY, Thornton & Naumes LLP, Boston, MA; David B. Zabel, LEAD ATTORNEY, Cohen and Wolf, P.C., Bridgeport, CT; Mark W. Roberts, LEAD ATTORNEY, McRoberts & Roberts, LLP, Boston, MA; Monte E. Frank, LEAD ATTORNEY, Cohen & Wolf, Danbury, CT; Neil T. Leifer, LEAD ATTORNEY, Thornton & Naumes, Boston, MA.

For William Jones, o/b/o themselves & a class of similarly situated prop owners, Josephine Neal, o/b/o themselves & a class of similarly situated prop owners, Plaintiffs: Alison Kaplan Clark, LEAD ATTORNEY, Cohen & Wolf- Bpt, Bridgeport, CT; Andrew A. Rainer, LEAD ATTORNEY, McRoberts, Roberts & Rainer, LLP, Boston, MA; Brad J. Mitchell, Michael A. Lesser, LEAD ATTORNEYS, Thornton, Early & Naumes, Boston, MA; David C. Strouss, LEAD ATTORNEY, Thornton & Naumes LLP, Boston, MA; David B. Zabel, LEAD ATTORNEY, Cohen and Wolf, P.C., Bridgeport, CT; Jennifer A. Currie, LEAD ATTORNEY, McRoberts, Roberts & Rainer, LLP, Boston, MA; Mark W. Roberts, LEAD ATTORNEY, McRoberts & Roberts, LLP, Boston, MA; Monte E. Frank, LEAD ATTORNEY, Cohen & Wolf, Danbury, [*5] CT; Neil T. Leifer, LEAD ATTORNEY, Thornton & Naumes, Boston, MA.

For Abdul Hamid, o/b/o themselves & a class of similarly situated prop owners, Plaintiff: Alison Kaplan Clark, LEAD ATTORNEY, Cohen & Wolf-Bpt, Bridgeport, CT; Andrew A. Rainer, LEAD ATTORNEY, McRoberts, Roberts & Rainer, LLP, Boston, MA; Austin D. Kim, LEAD ATTORNEY, Cohen & Wolf P.C., Bridgeport, CT; Brad J. Mitchell, Michael A. Lesser, LEAD ATTORNEYS, Thornton, Early & Naumes, Boston, MA; Christian F. Uehlein, LEAD ATTORNEY, PRO HAC VICE, Thornton & Naumes, Boston, MA; David C. Strouss, LEAD ATTORNEY, Thornton & Naumes LLP, Boston, MA; David B. Zabel, LEAD ATTORNEY, Cohen and Wolf, P.C., Bridgeport, CT; , LEAD ATTORNEY, PRO HAC VICE, McRoberts & Roberts, LLP, Boston, MA; Mark W. Roberts, LEAD ATTORNEY, McRoberts & Roberts, LLP, Boston, MA; Monte E. Frank, LEAD ATTORNEY, Cohen & Wolf, Danbury, CT; Neil T. Leifer, LEAD ATTORNEY, Thornton & Naumes, Boston, MA; Jennifer A. Currie, McRoberts, Roberts & Rainer, LLP, Boston, MA.

For Olin Corp, Defendant: Joel B. Samson, Omri E. Praiss, LEAD ATTORNEYS, Husch & Eppenberger -St Louis MO,

St. Louis, MO; Mark S. Baldwin, LEAD ATTORNEY, Brown Rudnick LLP, [*6] Hartford, CT; Michael H. Wetmore, LEAD ATTORNEY, Husch Blackwell Sanders LLP, St. Louis, MI.

For Town of Hamden, Defendant: Ann Marie Catino, Brian D. Rich, LEAD ATTORNEYS, Halloran & Sage, Hartford, CT; Joseph G. Fortner, Jr., LEAD ATTORNEY, Halloran & Sage LLP, Hartford, CT; Thomas C. Blatchley, LEAD ATTORNEY, Halloran & Sage - Hartford, Hartford, CT.

**Judges:** CHRISTOPHER F. DRONEY, UNITED STATES DISTRICT JUDGE.

**Opinion by:** CHRISTOPHER F. DRONEY

# Opinion

## RULING ON MOTION FOR PROPOSED SETTLEMENT AND ATTORNEYS' FEES AND EXPENSES

This case arises out of a class action suit brought by the plaintiffs, homeowners in the Newhall section of Hamden, Connecticut, against several defendants, including Olin Corporation ("Olin"). The plaintiffs alleged that the soil and groundwater on their properties was contaminated as a result of the defendant's conduct. For the following reasons, this Court finds that the proposed settlement is procedurally and substantively fair, the distribution of settlement proceeds is reasonable and adequate, and grants the motion for settlement. The motion for attorneys' fees and expenses is also granted.

## I. Factual Background and Procedural History

In May of 2003, the plaintiffs brought this action against [*7] Olin and the Town of Hamden. They alleged that industrial wastes produced by the Winchester plant in New Haven were deposited in their neighborhood in Hamden (the Newhall neighborhood) and have contaminated their properties. The plaintiffs sought relief for negligence; recklessness; violation of the Connecticut Environmental Protection Act of 1971, *Conn. Gen. Stat. § 22a-15 et seq.*; engaging in abnormally dangerous activity; intentional infliction of emotional distress; and recovery of response costs under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), *42 U.S.C. § 9607*. The Court has certified a class comprised of all persons who owned property on May 2, 2003 in the Newhall neighborhood, and three subclasses: (1) the Contaminated

2010 U.S. Dist. LEXIS 39862, *7

Properties Subclass, (2) the Stigma Subclass, and (3) the Response Costs Subclass.

Counsel for the parties eventually agreed on a proposed settlement agreement. The terms of this proposal include a settlement fund in the amount of $ 1,391,500 to be distributed among the plaintiffs. A Remedial Action Plan approved by the Connecticut Department of Environmental Protection, although not part of this proposed settlement, has  [*8] been initiated, and is separately funded in the amount of $ 40,000,000.

## II. Legal Standards and Discussion

Under the Federal Rules of Civil Procedure, a proposed settlement which binds class members may be approved only "after a hearing and on finding that it is fair, reasonable, and adequate." _Fed. R. Civ. P. 23(e)(2)_. In addition, a fair settlement may not have been the product of collusion. See _Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000)_.

To determine the fairness of a proposed settlement, a Court must examine both its procedural and substantive fairness. See _D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)_ (noting that "[t]he District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"). Procedural fairness looks to "the negotiating process by which the settlement was reached." _Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982)_. A procedurally fair settlement must be "the result of arm's-length negotiations" wherein plaintiffs' counsel "possessed the experience and ability, and . . . engaged in the discovery, necessary to effective representation of the class's  [*9] interests." _Id._, citing _City of Detroit v. Grinnell Corp., 495 F.2d 448, 463-66 (2d Cir. 1974)_. To decide if the substantive terms of the proposed settlement are fair, the Court must consider the nine Grinnell factors:

> "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

_Grinnell, 495 F.2d at 463_ (internal quotations omitted).

Moreover, a presumption of fairness, adequacy, and reasonableness may attach if the Court finds that arm's length negotiations took place between experienced counsel after a period of meaningful discovery. See _Wal-MartStores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005)_, citing Manual for  [*10] Complex Litigation, Third, § 30.42 (1995). Federal courts have adopted a "strong judicial policy in favor of settlements, particularly in the class action context." _In re Painewebber Limited Partnerships Litigation, 147 F.3d 132, 138 (2d Cir. 1998)_, citing _In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995)_ and _In re Pacific Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995)_.

### A. Procedural Fairness

Since the plaintiffs in this case were adequately represented and, as a result, the proposed settlement was the product of "arm's length negotiations," see _Weinberger, 698 F.2d at 74_, the proposed settlement is procedurally fair. This case was originally filed in May 2003. See, e.g. Notice of Removal, Civil Action No. 03-cv-945 (CFD), Dkt. # 1. Since that time, counsel for the plaintiffs consulted experts, conducted many depositions, interviewed fact witnesses, and requested production of numerous documents. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 10. As a result, counsel developed a sufficient level of familiarity with the case so as to seek and obtain certification of the class, brief and argue  [*11] dispositive motions, and engage Olin's counsel in settlement negotiations. See id.

During those negotiations, counsel for the parties functioned as adversaries. Magistrate Judge Thomas P. Smith held a settlement conference involving counsel for both sides on June 18, 2009 in Hartford. See Notice of Settlement Conference, Civil Action No. 03-cv-945 (CFD), Dkt. # 287. When these negotiations did not lead to a resolution, counsel for both parties again convened in Boston for a full-day mediation before retired Judge William Cahill of the San Francisco County Superior Court. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 11. The compensation structure set forth in the proposed settlement agreement comports with Judge Cahill's recommendation. See id. This proposal would create a settlement fund that is three times as large as Olin's final offer during the settlement conference before Judge Smith. See id.

After more than six years of litigation and several formal mediation sessions, counsel for both sides agreed to a proposed settlement funded by Olin to an extent that far exceeds its initial offers. This record suggests that the

Erick Diaz

2010 U.S. Dist. LEXIS 39862, *11

plaintiffs received adequate [*12] legal representation and that the settlement agreement is the product of ″arm's length negotiations.″ See Weinberger, 698 F.2d at 74. Without any evidence of collusion, the procedural element of this proposed settlement is ″fair, reasonable, and adequate.″ Fed. R. Civ. P. 23(e)(2). Adequate notice was also provided to all class members.

**B. Substantive Fairness**

*1. Complexity, Expense, and Likely Duration of Litigation*

Under Grinnell, the Court must examine a variety of factors in determining the substantive fairness of a proposed settlement. See 495 F.2d at 463. In this case, the ″complexity, expense and likely duration of the litigation,″ see id., counsels in favor of finding this proposed settlement to be fair. Should this case continue, counsel for the plaintiffs face complex issues of environmental law. In order to try to prove their case, the plaintiffs would have to identify and retain a variety of expert witnesses. Counsel for the plaintiffs set forth seven specific categories which would require expert testimony at trial, including toxicology, waste disposal practices, environmental contamination, ammunition, diminution of property values, and emotional distress. See Plaintiffs' [*13] Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 13. In addition to the complex issues of proof, securing expert testimony in these areas would be expensive for the plaintiffs. Furthermore, rejecting this proposed settlement would force this case to continue into its seventh year of litigation, with much time still ahead. As a result, this factor counsels in favor of approving the proposed settlement.

*2. Reaction of Class Members*

Another important aspect of evaluating the fairness of the proposed settlement is the reaction of the class members. See Grinnell, 495 F.2d at 463. During the notice period, none of the Contaminated Properties Subclass decided to opt out of the proposed settlement and just six of the 452 members of the Stigma Subclass elected to do so. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, pp. 14-15. Afterwards, Elizabeth Hayes, President of the Newhall Coalition, submitted a letter protesting the settlement which was signed by other class members. [1] See Letter from Elizabeth Hayes, Civil Action No. 03-cv-945 (CFD), Dkt. # 315 (hereinafter ″Hayes Letter″). This letter articulated several objections to the proposed settlement, [*14] primarily that they preferred full remediation (instead of a clean-up that extended four feet below the surface) and that their claims justify more favorable compensation. See id., pp. 3-4. At the fairness hearing, Ms. Hayes and other class members spoke to the Court and voiced the reasons behind their opposition to the proposed settlement.

The Court understands that the class members who spoke at the settlement hearing, like all the other plaintiffs, have suffered a terrible ordeal. Although not part of this settlement, under the current plan, Olin and the State of Connecticut will each contribute half of the $ 40 million required to fund the proposed remediation process. See Plaintiffs' [*15] Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 7. As to this settlement, homes in the Contaminated Properties Subclass will be remediated up to four feet below the surface. The class members whose homes are not fully remediated by this clean-up will receive $ 23,000, while class members whose homes are fully remediated will receive $ 7,600. See id. at pp. 22-23. Members of the Stigma Subclass will receive $ 750 per property and all members will retain several claims, including the ability to seek damages for manifest physical injuries. See id. at pp. 4, 23. [2] Going forward, the class members have no assurances that their claims would survive further dispositive motions or that they would ultimately prevail at trial. Furthermore, the Court recognizes the substantial sums allocated by both Olin and the State of Connecticut toward the current remediation plan set forth in the proposed settlement. Continued litigation would risk that fewer financial resources would be available to fund remediation at a later date.

The Court may approve a proposed settlement even where substantial portions [*16] of the class have objected. See, e.g. TBK Partners, Ltd. v. Western Union Corp., 675 F.2d 456, 462 (2d Cir. 1987) (affirming approval of settlement where between fifty-four and fifty-eight percent of classmembers objected); County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1325 (2d Cir. 1990) (affirming approval of settlement where ″a majority″ of classmembers objected); Grant v. Bethlehem Steel Corp., 823 F.2d 20, 23

---

[1]  Plaintiffs' counsel contends that the letter contains signatures from individuals who are not members of the class. Of the eighty-five signatures, twenty-seven were not members of the class. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, pp. 6-7. Of the fifty-eight signatures, seven were members of the Contaminated Properties Subclass and fifty-one were members of the Stigma Subclass. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, pp. 6-7.

[2]  These amounts are before court-approved deduction of attorneys' fees and expenses.

2010 U.S. Dist. LEXIS 39862, *16

*(2d Cir. 1987)* (affirming approval of settlement where as many as forty-eight percent of class may have objected). Even if the Court accepts each of the signatories to the Hayes Letter as objectors, less than twelve percent of the classmembers will have objected to the proposed settlement. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 16. On the other hand, nearly thirty percent of the Stigma Subclass has submitted Settlement Forms, along with a majority of the Contaminated Properties Subclass members. See id. Accordingly, this Court may approve the proposed settlement, so long as it is procedurally and substantively fair, despite the objections set forth by the signatories to the Hayes Letter.

### 3. Stage of Proceedings and **[\*17]** Amount of Discovery Completed

Several dispositive motions and settlement conferences have taken place throughout the pendency of this case. As previously discussed, counsel for both parties attended full-day mediation sessions before Magistrate Judge Smith of this Court and retired Judge Cahill of the San Francisco County Superior Court. In addition, a variety of dispositive motions have been briefed, argued, and decided. Most recently, Olin moved for summary judgment on statute-of-limitations grounds, see Defendant's Motion for Summary Judgment, Civil Action No. 03-cv-945 (CFD), Dkt. # 208, which was denied. See Ruling on Defendant's Partial Motion for Summary Judgment, Civil Action No. 03-cv-945 (CFD), Dkt. # 281. Previously, Olin successfully moved for partial summary judgment, which lead to the dismissal of those claims which were based on actions taken prior to 1932 by Olin's predecessor company. See Olin Corporation's Motion for Summary Judgment, Civil Action No. 03-cv-945 (CFD), Dkt. # 111; Ruling on Defendant's Partial Motion for Summary Judgment, Civil Action No. 03-cv-945 (CFD), Dkt. # 178. In addition, counsel for the plaintiffs sought and obtained class certification. See **[\*18]** Ruling on Plaintiffs' Third Amended Motion for Class Certification, Civil Action No. 03-cv-945 (CFD), Dkt. # 232. To file and argue these various motions, counsel for the plaintiffs would have reviewed documents, interviewed witnesses, taken depositions, and otherwise fully investigated the plaintiffs' claims. Based on the number of dispositive motions filed and argued in this case, as well as the substantial efforts undertaken during settlement conferences, this Court finds that the maturity of the litigation counsels in favor of approving the proposed settlement.

### 4. Risk of Establishing Liability and Damages

This factor requires the Court to balance the benefits of immediate recovery promised by the the proposed settlement agreement against the risks attendant to further litigation. See *Grinnell, 495 F.2d at 463*. As discussed above, the proposed settlement guarantees the plaintiffs financial compensation and remediation of their properties up to four feet below the surface. Meanwhile, if litigation were to continue, the plaintiffs would face serious challenges in establishing their claims against Olin. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. **[\*19]** 18. As discussed in this Court's prior ruling on the issue of successor liability, see Ruling on Defendant's Partial Motion for Summary Judgment, Civil Action No. 03-cv-945 (CFD), Dkt. # 178, the plaintiffs would not be able to recover for any of the damages they sustained as a result of actions taken prior to 1931. Should litigation continue, Olin stated an intent to move for summary judgment in an effort to preclude any recovery by the Stigma Subclass. See Dkt. # 314. In all, several significant issues complicate the plaintiffs' ability to prove Olin liable during further litigation.

Many of the same factors which complicate the ability of the plaintiffs to prove that Olin is liable would also hinder their attempts to prove damages. Counsel for the plaintiffs acknowledged that the process of establishing damages would have rested on an unpredictable "battle of the experts." Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 19. Since the proposed settlement promises plaintiffs more than $ 1 million in recovery and also funds a significant remediation process, the plaintiffs would face a serious risk of a lower recovery if the litigation continued.

### 5. Risk **[\*20]** of Maintaining the Class Action and Olin's Ability to Withstand Greater Judgment

The risks associated with maintaining class certification and the defendant's ability to pay a larger sum in settlement are neutral factors which "weigh neither for nor against approval" of a proposed settlement. *In re Luxottica Group S.p.A. Securities Litigation, 233 F.R.D. 306, 314 (E.D.N.Y. 2006)*. While this Court has certified the class of plaintiffs in this case, see Ruling on Plaintiffs' Third Amended Motion for Class Certification, Civil Action No. 03-cv-945 (CFD), Dkt. # 232, Olin could still seek decertification of the class before trial, after a verdict, or on appeal. Though Olin has not stated an intent to do so, the ever-present risk of class decertification counsels in favor of approving the proposed settlement. See generally *McLaughlin v. American Tobacco Co., 522 F.3d 215 (2d Cir. 2008)* (decertifying class on appeal).

Even if Olin could withstand a larger judgment, "fairness does not require that the [defendant] empty its coffers

2010 U.S. Dist. LEXIS 39862, *20

before this Court will approve a settlement." *McBean v. City of New York, 233 F.R.D. 377, 388 (S.D.N.Y. 2006)*. In addition to payments in excess of $ 1 million that [*21] will be made to the individual plaintiffs, Olin is also contributing $ 20 million to help fund the remediation efforts. Therefore, the defendant will pay a significant amount to the plaintiffs, both directly and indirectly, under the proposed settlement. As a result, if this Court determines that the proposed settlement is substantively fair, based on the other *Grinnell* factors, Olin's ability to withstand a higher judgment would not preclude approval of the proposed settlement. See *D'Amato, 236 F.3d at 85* (noting that "this factor, standing alone, does not suggest that the settlement is unfair"). See also *In re Paine Webber Ltd. Partnership Lit., 171 F.R.D. 104, 129 (S.D.N.Y. 1997)* (same); *In re Austrian and German Bank Holocaust Litig., 80 F. Supp. 2d 164, 178 n. 9 (S.D.N.Y. 2000)* (same).

*6. Reasonableness in Light of Plaintiffs' Strengths and Weaknesses*

The Court's inquiry into whether the proposed settlement falls within the range of reasonableness "is not susceptible of a mathematical equation yielding a particularized sum," *In re Michael Milken and Associates Sec. Lit., 150 F.R.D. 57, 66 (S.D.N.Y. 1993)*, but rather "must be judged in light of the strengths and weaknesses of the plaintiff[s'] [*22] case." *In re Austrian and German Bank Holocaust Litigation, 80 F. Supp. 2d at 178* (internal quotation marks omitted). As discussed above, the plaintiffs face several significant obstacles in proving Olin's liability, the necessary damages, and surviving any further dispositive motions. Given these difficulties as well as the other factors discussed above, the proposed settlement is within a range that is reasonable in the view of this Court.

**C. Attorneys' Fees and Expenses**

In this case, counsel for the plaintiffs seeks $ 463,833.33 in attorneys' fees, which accounts for one third (33.33%) of the total fund. The Second Circuit has expressed a preference for the percentage method of calculating attorneys' fees, noting that such an approach "aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005)*, quoting *In re Lloyd's Am. Trust Fund Litig., 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *25 (S.D.N.Y. 2002)* (internal quotations omitted). To determine whether that percentage is reasonable, the Court must analyze several factors: "(1) the time and [*23] labor expended by counsel; (2) the magnitude and complexities of

the litigation; (3) the risk of the litigation …; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)*, quoting *In re Union Carbide Corp. Consumer Products Business Securities Litig., 724 F.Supp. 160, 163 (S.D.N.Y. 1989)*.

In this case, the *Goldberger* factors support an award of fees sought by plaintiffs' counsel. Since the beginning of this case more than six years ago, counsel has worked a combined 8,468.6 hours. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 25. At a normal billing rate, they submit that nearly $ 2,000,000 in fees would have been reasonably charged. See id. As discussed throughout this ruling, this case was extremely complex. Counsel faced a challenging environmental tort case, which required expert consultation and numerous evidentiary challenges. Several dispositive motions were filed and argued. Furthermore, plaintiffs' counsel is experienced in the field of environmental law and, in this case, litigated against similarly [*24] competent and qualified counsel for the defense. A compensation of one third of the total fund is in line with the percentage fees awarded in similar class action suits. See, e.g. *Silverberg v. People's Bank, 23 Fed.Appx. 46, 48 (2d Cir. 2001)* (affirming award to plaintiffs' counsel of "nearly" one third of the settlement fund in attorneys' fees); *Dullard v. Berkeley Associates Co., 606 F.2d 890, 895, fn. 5 (2d Cir. 1979)* (observing that awarding one third of recovery, after costs, is "presumptively permissible" in personal injury cases). Finally, public policy considerations justify this award of attorneys' fees. In environmental tort cases, issues of proof and causation are often difficult. Contingent-fee arrangements will encourage other attorneys to accept and prosecute cases on behalf of individuals who have sustained injuries similar to those of the plaintiffs in this case.

Plaintiffs' counsel also requests $ 183,294.84 in expenses which were incurred during this suit. Generally, courts may award reimbursement to counsel for "expenses that are 'incidental and necessary' to the representation, provided they are 'reasonable.'" *Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987)*, [*25] quoting *Northcross v. Board of Education, 611 F.2d 624, 639 (6th Cir.1979)*. These costs were originally generated in connection with consulting and securing experts and consultants, deposing witnesses, traveling, and other incidental expenses. See Plaintiffs' Proposed Ruling, Civil Action No. 03-cv-945 (CFD), Dkt. # 317, p. 29. Generally, "investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and

review-are the type for which the paying, arms' length market reimburses attorneys." *In re Global Crossing Securities and ERISA Litig., 225 F.R.D. 436, 468 (S.D.N.Y. 2004)* (internal quotation marks omitted). As discussed above, expert input is especially important in the prosecution of an environmental tort case. Therefore, consulting with experts and consultants in the field was "incidental and necessary" to representing the interests of the plaintiff class. See *Reichman, 818 F.2d at 283*. Likewise, deposing witnesses and the related travel and incidental expenses are also necessary to representing the class. See *In re Global Crossing, 225 F.R.D. at 468*. Since the amount of costs requested is also reasonable, plaintiffs' counsel **[\*26]** is entitled to the requested fees.

### III. Conclusion

For the foregoing reasons, the Motion for Settlement [Dkt. # 308] and the Motion for Attorneys' Fees and Expenses [Dkt. # 310] are GRANTED.

So ordered this 21st day of April, 2010 at Hartford, Connecticut.

/s/ Christopher F. Droney

**CHRISTOPHER F. DRONEY**

**UNITED STATES DISTRICT JUDGE**

Ⓐ  Neutral

As of: May 2, 2016 4:25 PM EDT

# *Daniels v. Michiana Metronet, Inc.*

United States District Court for the Northern District of Indiana, Fort Wayne Division

May 3, 2010, Decided; May 3, 2010, Filed

CIVIL NO. 1:09cv121

**Reporter**

2010 U.S. Dist. LEXIS 43686

RAYMOND F. DANIELS, III, Plaintiff, v. MICHIANA METRONET, INC. d/b/a CENTENNIAL WIRELESS and CENTENNIAL COMMUNICATIONS, Defendant.

**Subsequent History:** Costs and fees proceeding at, Request granted, in part, Request denied by, in part, Objection granted by, in part, Objection denied by, in part *Daniels v. Michiana Metronet, Inc., 2010 U.S. Dist. LEXIS 65856 (N.D. Ind., July 1, 2010)*

## Core Terms

salary, overtime, Sales, calculated, employees, forty hour, summary judgment, fluctuating, number of hours, training, non-moving, workweek, genuine issue, material fact, weekly salary, hourly rate, acknowledgement, premium pay, parties, Inside, hourly, moving party, overtime pay, paid holiday, requires, annual, docked, summary judgment motion, mutual understanding, overtime work

**Counsel:**  **[*1]** For Raymond F Daniels, III, Plaintiff: Brian M Simpson, John S Bloom, LEAD ATTORNEYS, Shambaugh Kast Beck & Williams LLP, Fort Wayne, IN.

For Michiana Metronet Inc, doing business as Centennial Wireless, doing business as Centennial Communications, Defendant: Jeffrey B Halbert, Suzanne S Newcomb, LEAD ATTORNEYS, Stewart & Irwin PC, Indianapolis, IN.

**Judges:** William C. Lee, United States District Judge.

**Opinion by:** William C. Lee

## Opinion

### OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendant Michiana Metronet, Inc. d/b/a Centennial Wireless and Centennial Communications

("Centennial"), on February 1, 2010. The plaintiff, Raymond F. Daniels, III ("Daniels"), filed his response on March 1, 2010, to which Centennial replied on March 17, 2010.

For the following reasons, the motion will be granted.

Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. However, *Rule 56(c)* is not a requirement that the **[*2]** moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990)*. *Rule 56(c)* mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. The standard for granting summary judgment mirrors the directed verdict standard under *Rule 50(a)*, which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." Id. *In* Re Matter of Wildman, *859 F.2d 553, 557 (7th Cir. 1988)*; *Klein v. Ryan, 847 F.2d 368, 374 (7th Cir. 1988)*; *Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986 (7th Cir. 1986)*. No genuine issue for trial exists "where the record as a whole could **[*3]** not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322 (7th Cir. 1992)*(quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986))*.

2010 U.S. Dist. LEXIS 43686, *4

Initially, _Rule 56_ requires the moving party to inform the court of the basis for the motion, and to identify those portions of the ″pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, _Celotex, 477 U.S. at 323_. The non-moving party may oppose the motion with any of the evidentiary materials listed in _Rule 56(c)_, but reliance on the pleadings alone is not sufficient to withstand summary judgment. _Goka v. Bobbitt, 862 F.2d 646, 649 (7th Cir. 1988)_; _Guenin v. Sendra Corp., 700 F. Supp. 973, 974 (N.D. Ind. 1988)_; _Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.)_, cert. denied, _464 U.S. 960, 104 S. Ct. 392, 78 L. Ed. 2d 336 (1983)_.

So that the district court may readily determine whether genuine issues of material fact exist, under _Local Rule 56.1_, the moving party is obligated to file with the court a ″Statement of Material Facts″ supported by appropriate  **[*4]** citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a ″Statement of Genuine Issues″ supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. See, _Waldridge v. American Hoechst Corp. et al., 24 F.3d 918 (7th Cir. 1994)_. In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. _Anderson, 477 U.S. at 249-251, 106 S.Ct. at 2511_. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the ″Statement of Genuine Issues″ filed in opposition to the motion. _L.R. 56.1_

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. _Anderson, 477 U.S. at 248_. Irrelevant or unnecessary  **[*5]** facts do not preclude summary judgment even when they are in dispute. Id. The issue of fact must be

genuine. _Fed. R. Civ. P. 56(c)_, _(e)_. To establish a genuine issue of fact, the non-moving party ″must do more than simply show that there is some metaphysical doubt as to the material facts.″ _Matsushita, 475 U.S. at 586_; _First National Bank of Cicero v. Lewco Securities Corp., 860 F.2d 1407, 1411 (7th Cir. 1988)_. The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. Id. A summary judgment determination is essentially an inquiry as to ″whether the evidence presents a sufficient disagree-ment to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.″ _Anderson, 477 U.S. at 251-252_. Finally, the court notes that, ″[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained″ and in such cases summary judgment is appropriate. _Mason v. Continental Illinois Nat'l Bank, 704 F.2d 361, 367 (7th Cir. 1983)_.

Discussion

Centennial claims that the following background facts are undisputed. During the time period  **[*6]** relevant to his Complaint, Daniels applied for employment with Centennial because it was a local business and he had heard from friends that it was a fair company and a good place to work. [1] Before he had even received a formal offer, one of those friends, Michael Loveless, explained to Daniels that he would receive base pay plus commission and that he would be paid ″halftime″ for overtime work. [2] Daniels and Loveless worked together previously at Chase Bank. [3] At the time of this discussion, Loveless managed Centennial's Decatur store. [4] Loveless explained that Daniels' starting base pay would be $ 18,000 annually and that it would increase incrementally thereafter. [5] Loveless told Daniels he might be called upon to work mandatory overtime during the holiday season and that it was company policy to pay ″halftime″ not time and a half for overtime work. [6] Loveless suggested Daniels look for further explanation of

---

[1]   Daniels Dep., pp. 6-11, 14, 19, 23.

[2]   Daniels Dep., pp. 19, 34-38.

[3]   Daniels Dep., p. 31.

[4]   Daniels Dep., p. 32.

[5]   Daniels Dep., p. 36-37.

[6]   Daniels Dep., p. 38.

2010 U.S. Dist. LEXIS 43686, *6

Centennial's pay structure during his formal training course. [7] Daniels did not seek further clarification. [8]

By letter dated May 20, 2008, Centennial formally offered Daniels the position of Inside Sales Representative Trainee Level I. [9] The offer letter spelled out the basic pay structure, stating in relevant part:

> **Training Requirements**: New hires begin employment by attending three weeks of Sales Training at Centennial University in Fort Wayne, IN ….
>
> ****
>
> **Employment at Will**: As a condition of employment, you will be asked to sign and read our Associate Handbook, which explains "at will" employment, and to sign the Sales Compensation Plan, which describes how you will be paid, includes a non-disclosure agreement and confidentiality agreement.
>
> **Compensation**: You will receive a salary of $ 692.30 per pay period, which annualizes to $ 18,000. You are paid 26 times per year on a bi-weekly basis. In addition you will be paid a monthly commission, which is based on achieving the monthly quota.

The offer letter goes on to explain the details of and prerequisites for future, incremental salary increases. [10] Daniels read and accepted the offer by signing the letter on May 22, 2008. [11]

Daniels began [*8] employment with Centennial on June 2, 2008. [12] He worked as a "shadow" his first week then attended three weeks of training. [13] Training Manager Mike Filson led Daniels' training class. [14] Filson told the class they would be paid "halftime" for overtime work. [15] The Centennial Associate Handbook, which was given to Daniels in hardcopy and formed the basis of his understanding of how he was paid, states: "Certain nonexempt positions (i.e. inside sales representatives) are paid overtime on a sliding scale." [16] Daniels understood the "sliding scale" reference to mean he was paid "halftime" for overtime work. [17] The Associate Handbook further directs employees to consult their "compensation agreement or manager for more details." [18]

Centennial's Sales Compensation Plan was electronically presented to Daniels and the others in his training class. [19] Employees are given as much time as is necessary to read the document and ask any questions they might have, and then they must acknowledge [*9] having read and understood the plan. [20] Had Daniels not acknowledged having read and understood the plan, Centennial's commission department would not have issued him any commission checks. [21] Daniels did in fact receive commission checks from Centennial. [22]

The Centennial Wireless Sales Compensation Plan states in relevant part:

---

[7]   Daniels Dep., [*7] p. 39.

[8]   Daniels Dep., p. 39.

[9]   Daniels Dep., p. 33, Ex. 2.2.

[10]   Daniels Dep. Ex. 2.

[11]   Daniels Dep., pp. 33, 44.

[12]   Daniels Dep., p. 45.

[13]   Daniels Dep., p. 47-48; Filson Dep., p. 9.

[14]   Filson Dep., p. 4.

[15]   Daniels Dep., p. 50.

[16]   Daniels Dep., p. 51, 58-59; Ex. 4, p. 18.

[17]   Daniels Dep., p. 59.

[18]   Daniels Dep., p. 60, Ex. 4, p. 18.

[19]   Filson Dep., p. 7; Daniels Dep., p. 74-79, Ex. 5.

[20]   Filson Dep., p. 8-10.

[21]   Filson Dep., p. 10-11.

[22]   Defendant's Ex. 14, p. 115, 118, 121, 124, 128.

2010 U.S. Dist. LEXIS 43686, *9

Inside Sales Rep Overtime Program

Our Inside Sales Reps are salaried, non-exempt associates. This means two things. First, an ISR receives a full weekly salary regardless of the number of hours worked. For example, if an ISR missed two hours of scheduled work time due to an auto accident, the rep's salary is not reduced by the two missed hours. We believe this is the professional way to treat our Inside Sales Reps.

Second, the amount paid for any overtime is based on a calculated amount, not one and one-half times as an hourly associate would be paid. This is also the professional way to treat salaried, non-exempt associates.

The following are the guidelines for calculating ISR overtime pay.

1) A workweek is defined **[*10]** as Sunday at 12:00 am through Saturday at 11:59 pm.

2) ISR overtime is calculated based on workweek.

3) An ISR's annual salary is divided into 52 weeks to obtain a weekly salary, ($ 24,000 divided by 52 is $ 461.54)

4) The weekly salary is divided by the number of actual, total hours worked during the workweek to calculate the individual ISR's hourly rate.

5) The amount paid for overtime hours is one-half the calculated hourly rate.

6) The number of hours worked over forty (40) during the workweek is multiplied by the calculated hourly rate to determine the total amount paid.

The following example shows how to calculate the overtime paid to an ISR.

. Fifty (50) hours worked during the workweek.

. Weekly salary is $ 451.54 ($ 24,000 divided by 52 weeks).

. Hourly rate is $ 9.23 ($ 451.54 divided by 50 hours).

. Calculated hourly rate is $ 4.61 (one-half the $ 9.23 hourly rate).

. Ten (10) hours worked beyond forty (40) hours.

. Amount paid for overtime is $ 46.10.

. Overtime is paid in arrears twice monthly.

Defendant's Ex. 5, p. 4-5.

Daniels signed Centennial's Sales Compensation Plan electronically on June 25, 2008. [23] The signature page of the plan states: "I have read and understand the . . . **[*11]** Centennial Wireless Sales Compensation Plan. I agree to be bound by the terms, conditions, and policies contained in the Plan." [24] Defendant's Exhibit 6 is a time stamped confirmation of Daniels' electronic signature and acceptance of Centennial's Sales Compensation Plan during the course of his training. [25]

Employees are free to access or print the Sales Compensation Plan at anytime via the Company's intranet, "CentWire." [26] Daniels accessed Centennial's intranet regularly for a variety of customer related issues. [27] He used the intranet to access pricing information, as well as specials, promotions and credits for his own sales. [28] There were several different areas on Centennial's intranet and it is equipped with a search function. [29] However, Daniels never searched Centennial's intranet for information relating to overtime pay. [30]

Mike Loveless never told Daniels what would happen to his pay if he worked less than forty hours in a given week. [31] There was no discussion during the **[*12]** training session

---

[23]   Daniels Dep., p. 78-79; Ex. 6.

[24]   Defendant's Ex. 5, p. 15.

[25]   Daniels Dep., 74-75, 77; Ex. 6.

[26]   Filson Dep., 11.

[27]   Daniels Dep., p. 70-71.

[28]   Daniels Dep., p. 71.

[29]   Daniels Dep., p. 71.

[30]   Daniels Dep., p. 71.

[31]   Daniels Dep., p. 43.

2010 U.S. Dist. LEXIS 43686, *12

about what would happen if Daniels worked less than forty hours in a given week. [32] Aside from his own final pay check, Daniels is not aware of any situation in which he or any other Inside Sales Representative had his or her pay docked for working less than forty hours in a week. [33] In fact, Centennial paid Daniels his full salary on at least two occasions when he worked fewer than forty hours. Daniels' time cards and payroll records indicate:

. Daniels worked 39.75 hours the week of August 17 - 23, 2008 but received his full salary. (D. Ex. 7, p. 101, D. Ex. 14, p. 125.)

. Daniels worked 38.75 hours the week of December 28, 2008 - January 3, 2009, but received his full salary. (D. Ex. 7, p. 91; D. Ex. 14, p. 111.)

Moreover, Centennial paid Daniels overtime premium pay on several occasions when he actually worked less than forty hours, but logged more than forty by taking paid holiday time.

. Daniels actually worked thirty-nine hours the week of November 23-29, 2008 and took two paid holidays totaling sixteen hours. Though he actually worked less than forty hours that **[*13]** week, Centennial paid him fifteen hours of overtime premium pay. (D. Ex. 14, p. 114.)

. Daniels actually worked only 32.75 hours the week of December 21-27, 2008 and took a paid holiday totaling eight hours. (D. Ex. 7, p. 92.) Nevertheless, Centennial paid him .75 hour of overtime premium pay. (D. Ex. 14, p. 112.)

. Daniels actually worked only 34.75 hours the week of January 4-10, 2009 and took a floating paid holiday totaling eight hours. Centennial paid him an additional

2.75 hours of overtime premium pay. (D. Ex. 7, p. 91, D. Ex. 14, p. 91.)

. Daniels actually worked 37.5 hours the week of February 15-21, 2009, took eight hours of paid holiday time and yet received 5.5 hours of premium pay. (D. Ex. 7, p. 88, D. Ex. 14, p. 108.)

Daniels felt comfortable asking questions and raising complaints with his managers Mike Loveless and Joe Ammerman, as well as their boss, District Manager Trent Schott and company trainer Michael Filson, but he never asked any of them to further clarify Centennial's overtime pay scheme. [34]

The number of hours Daniels actually worked varied from week to week. [35] He was rarely scheduled to work more than **[*14]** forty hours per week but he was expected to stay past the end of his scheduled shift if he was with a customer. [36] Daniels' timecards show his hours fluctuated from week to week. The hours Daniels actually worked ranged from a low of 32.25 hours (exclusive of paid holiday and sick time) the week of November 30 - December 6, 2008 to a high of 51.75 hours the week of July 13-19, 2008. [37] The most Daniels ever worked in one week was 51.75 hours the week of July 13-19, 2008. [38] Even that week, his hourly rate exceeded minimum wage. Daniels was earning a base salary of $ 18,000 annually or $ 346.15 per week at the time. [39] Dividing his weekly base of $ 346.15 by 51.75 hours equals $ 6.69 per hour. At the time, the minimum wage was $ 5.85 per hour. *29 U.S.C. § 206 (a)(1)(A).*

Daniels worked Sunday through Wednesday, February 22-25, 2009 and was terminated at the end of his shift on Wednesday, February 25, 2009. [40] This was the final day of the sales month. [41] Centennial's sales or "commission month starts on the 26th of one month and ends on the 25th

---

[32] Daniels Dep., p. 59.

[33] Daniels Dep., p. 62, 102; Exs. 7 and 14.

[34] Daniels Dep., pp. 31, 50, 55, 59-60, 87, 93-94, 118, 119.

[35] Daniels Dep., pp. 100-103.

[36] Daniels Dep., pp. 102-105.

[37] D. Ex. 7, p. 93 & 103.

[38] D. Ex. 7, p. 103.

[39] D. Ex. 2; D. Ex. 14, p. 127.

[40] Daniels Dep., 141-143, Ex. 7, p. 87.

[41] Daniels Dep., 145-146; Ex. 5, p. 15.

of the following [*15] month." [42] Centennial paid Daniels for the 31.5 hours he actually worked, plus eight hours of holiday pay for a total of 39.5 hours his last week of employment. [43] Centennial also paid Daniels for forty-eight hours of unused vacation time. [44]

After his termination Daniels believed that he was not paid according to federal law, and thus he instituted the present action pursuant to the Fair Labor Standards Act "(FLSA)" [45]. The FLSA mandates employers pay non-exempt employees one and one-half times their regular rate for hours worked in excess of a forty per week. *29 U.S.C. § 207(a)*. In drafting the FLSA however, Congress did not define "regular rate" or explain how an employee's "regular rate" is to be computed. *29 U.S.C. § 201 et seq.*, *Condo v. Sysco Corporation, 1 F.3d 599, 604, fn 6 (7th Cir 1993)*. Nor did Congress address the notion of fluctuating work weeks. *Condo, 1 F.3d at 604*. Instead, Congress charged the Secretary of Labor with filling in the gaps by formulating policy and making rules. *Id. at 604-605*, *29 U.S.C. § 204*. The Secretary [*16] did exactly that in promulgating *29 C.F.R. § 778.114*.

*Section 778.114* of the FLSA allows an employer to pay a salaried employee whose hours of work fluctuate from week to week a fixed amount as straight-time pay for whatever hours the employee is called upon to work in a given workweek, whether few or many. *29 C.F.R. § 778.114(a)*; *Condo, 1 F.3d at 601-602*. *Section 778.114* further authorizes the employer to pay that employee fifty percent of his calculated regular hourly pay rate for that week as premium pay for each hour of work he actually performed over forty that week. Id. The employee's "regular" hourly pay rate is calculated each week by dividing the employee's weekly salary by the total number of hours that he actually worked that week. Id. As the Seventh Circuit explained, "[t]he fixed salary compensates the employee for all his hours, the [*17] overtime ones included. He therefore received 100 percent of his regular rate for each hour that he worked. As such he is entitled only to an additional fifty percent of his regular rate for the hours that he worked in excess of forty." *Id. at 605*; see also *Heder v. City of Two Rivers, 295 F.3d 777, 779 (7th Cir. 2002)* (If an employee works a "fluctuating work week" then the "standard compensation covers any

number of hours, so that the only statutorily required payment is the 50% premium for overtime.").

Though *§ 778.114* ordinarily requires the employer to pay the full weekly salary even if the employee works less than forty hours, there are exceptions. For example, an employer is not always obligated to pay an employee his full weekly salary during his first and last weeks of employment. *29 C.F.R. § 541.602*. Instead, the employer may choose to pay the salary nonexempt employee hourly at a rate that is proportional to his salary during his initial and/or terminal weeks of employment. *29 C.F.R. § 541.602(b)(6)*. Likewise, an employer may legally dock an employee's salary if the employee is willfully absent or tardy. *Samson et al. v. Apollo Resources, Inc., 242 F.3d 629, 639 (5th Cir 2001)*.

This [*18] so called "fluctuating work week" structure is appropriate so long as: (1) the employee's hours fluctuate from week to week; (2) the employee receives a fixed salary that remains the same from week to week regardless of the number of hours worked; (3) the fixed salary is sufficient to provide compensation at a rate at or above the minimum hourly wage; (4) overtime premium pay for each hour worked above forty is at least one-half the employee's calculated hourly rate for that week; and (5) the parties have a clear mutual understanding that the fixed salary is intended to provide straight time compensation to the employee for how ever many hours he was called upon to work that week. *Condo, 1 F.3d at 601-602*; *Lance v. The Scotts Company, 2005 U.S. Dist. LEXIS 14949, *10-11 (N.D.Ill. 2005)*. The parties agree that items (1) through (4) have been met in this case. However, Daniels disputes item (5), and claims that he did not have a clear understanding that he would be paid a full weekly rate of pay regardless of the number of hours worked.

As a preliminary issue, "pursuant to *section 778.114(c)* an employer must establish that a clear mutual understanding exists between the parties as to this [*19] type of pay plan. Since this method is an exception to the normal requirements of the FLSA, the employer bears the burden of establishing that it has complied with the regulations." *Local 359 Gary Firefighters, AFL-CIO-CLC v. City of Gary, Indiana, 1995 U.S. Dist. LEXIS 21729 (N.D.Ind.1995)*.

---

[42]   D. Ex. 5, p. 15.

[43]   D. Ex. 7, p. 87; Ex. 14, p. 107.

[44]   D. Ex. 14, p. 107.

[45]   In his response brief, Daniels claims that this is a "contract dispute" and discusses various theories of contract construction. However, as Centennial points out Daniels was an employee at will, and did not assert a contract-based claim in his Complaint. Accordingly, Daniels' contract construction issues will not be addressed in this order.

2010 U.S. Dist. LEXIS 43686, *19

Daniels has submitted his affidavit in which he states that: "I believed I was being paid on an hourly basis and that my pay would be reduced if I worked fewer than 40 hours in a given week." [46] Daniels relies on *Evans v. Lowe's Home Centers, Inc., 2006 U.S. Dist. LEXIS 32104, 2006 WL 1371073 (M.D. Pa.)*, for the proposition that "a sworn denial of a clear understanding by the employee was sufficient to establish a genuine issue of fact in the absence of other evidence that tends to show he did understand the plan." (Response Brief at 13). In *Evans*, the court held:

> Lowe's has not met its burden of proving that any of the Plaintiffs understood the Plan. Lowe's offers only that it had a policy of communicating and explaining the Plan to employees at various times including orientation, store meetings, employee promotion, and upon a change in pay. While Lowe's states that the policy included giving the employees a copy of the Plan, **[*20]** the company offered no evidence that this policy was executed or performed in the case of these Plaintiffs.

> On the other hand, the Plaintiffs to a one said that they did not understand the Plan. None were ever told about the Plan or had it explained to them, and no one was ever provided with a copy of the Plan. Plaintiffs Evans, Eidhl, Butler, and McClellan asked their supervisors about their pay was calculated, and their supervisors could not do so. In addition, Each Plaintiff said that a work week of 48 hours was not only noted as the requirement, but it was stressed as a minimum. Each said they did not understand that they would receive overtime for hours over 40 or that they could work less than 40 hours and still receive their salary.

> The signed acknowledgments in the case of Plaintiffs Evans and Anselmi present a more difficult question. No court has held that a signed acknowledgment form is conclusive evidence of a clear mutual understanding as a matter of law. Moreover, even <u>Griffin</u> said that an executed acknowledgment form is probative of a clear understanding. <u>Id</u>. (citing *Highlander v. K.F.C. Nat'l Mgmt Co., 805 F.2d 644, 648 (6th Cir. 1986))*. Here both Evans and Anselmi **[*21]** submitted sworn statements that they did not understand the plan, that it was never explained to them, and that the acknowledgment form was never explained to them as setting forth any kind of a FWW or Salaried Plus Overtime Eligible Compensation Plan. Unlike the

plaintiff in <u>Highlander</u>, Evans and Anselmi swear to their lack of understanding of the Plan, and there is no other evidence that tends to show they understood the Plan. At this stage of the case, there is a genuine issue of material fact as to whether Evans and Anselmi understood the Plan.

*2006 U.S. Dist. LEXIS 32104, [WL] at *11-13*.

Centennial argues that Daniels has misinterpreted <u>Evans</u>. Centennial points out that all of the <u>Evans</u> Plaintiffs claimed they were never informed of the Defendant's "Salaried Plus Overtime Eligible Compensation Plan." *2006 U.S. Dist. LEXIS 32104, [WL] at 8*. Each Plaintiff stated that "Lowe's never met with employees to have the employees review the Plan, never explained it, and never provided employees with a copy of the Plan." *2006 U.S. Dist. LEXIS 32104, [WL] at *9*. Plaintiff Evans testified that she signed an acknowledgment of the plan, she "never read the form, never received a copy of the form, nor was the plan ever explained to her." *2006 U.S. Dist. LEXIS 32104, [WL] at *6*. Evans' co-Plaintiffs, **[*22]** Anselmi and Berry, testified they were not given time to read the form before signing it. *2006 U.S. Dist. LEXIS 32104, [WL] at *7*. A fifth Plaintiff never signed the acknowledgment. *2006 U.S. Dist. LEXIS 32104, [WL] at *8*. All the <u>Evans</u> Plaintiffs claimed they did not understand how their pay was calculated. <u>Id</u>.

By contrast, Daniels admits he read and electronically signed off on the Centennial's Sales Compensation Plan which not only states that he "will receive his full weekly salary regardless of the number of hours worked" but goes on to provide examples and a detailed explanation of how his overtime pay would be calculated. [47] While *§ 778.114* does not require employers to obtain signed acknowledgments, "securing such acknowledgments is certainly probative of the employee's clear understanding of the fluctuating workweek plan." *Griffin v. Wake County, 142 F.3d 712, 716 (4th Cir. 1998)* citing *Highlander v. K.F.C. Nat'l Management Co., 805 F.2d 644, 648 (6th Cir. 1986)*.

Unlike the case in <u>Evans</u>, it is undisputed that Centennial presented its Sales Compensation Plan to Daniels electronically during his training class. [48] Also unlike <u>Evans</u>, it is undisputed that Centennial gives its employees **[*23]** as much time as is necessary to read the document and ask any questions they might have, before they must

---

[46]   Daniels Aff. at P 4.

[47]   Daniels Dep., pp. 78-79, D. Ex. 5, p. 4-5, 15, D. Ex. 6.

[48]   Filson Dep., p. 7; Daniels Dep., pp. 74-79; D. Ex. 5.

2010 U.S. Dist. LEXIS 43686, *23

acknowledge having read and understood the plan. [49] As noted, if Daniels had not acknowledged having read and understood the plan, Centennial's commission department would not have issued him any commission checks [50] and Daniels did in fact receive commission checks from Centennial. [51]

Centennial further points out that, unlike the Plaintiffs in Evans, Daniels clearly understood Centennial's pay plan. Daniels testified that even before he was hired, he knew his starting salary would be $ 18,000 per year and that he would receive "halftime" pay for overtime work. [52] Daniels' offer letter, which he admits he read and signed, spells out, "You will receive a salary of $ 692.30 per pay period, which annualizes to $ 18,000. [53]

Centennial urges this court to infer a clear mutual understanding from the fact that Daniels' base salary never varied despite variations in the number [*24] of hours he actually worked. *Mayhew v. Wells, 125 F.3d 216, 219 (4th Cir. 1997)*. The existence of a "clear mutual understanding" may be "based on the implied terms of one's employment agreement if it is clear from the employee's actions that he or she understood the payment plan in spite of after-the-fact verbal contentions otherwise." Id., quoting *Monahan v. County of Chesterfield, Va., 95 F.3d 1263, 1281 (4th Cir. 1996)*. Though his work hours fluctuated, Daniels received his base salary of $ 692.31 every two weeks from pay date June 20, 2008 (pay period June 1 - 14, 2008) through pay date October 24, 2008 (pay period October 5 - 18, 2008). [54] Centennial promoted Daniels to Inside Sales Representative Trainee II effective October 26, 2008 and increased his annual salary to $ 21,000. [55] Thereafter, although his actual hours continued to fluctuate, Daniels was paid a base salary of $ 807.697 every two weeks. [56]

Centennial argues that Daniels' "after-the-fact" affidavit contention that: "I believed I was being paid on an hourly basis" is directly contradicted and overridden by the fact [*25] that his weekly base pay remained constant regardless of the number of hours he worked in any given week. *Mayhew, 125 F.3d at 219*. Moreover, Daniels received a "regular lesson - in the form of [his] paychecks - about how the fluctuating workweek plan operates." *Griffin, 142 F.3d at 716-717*. Like the Plaintiffs in Monahan and Griffin, Daniels lived with the fluctuating workweek plan for a significant period of time before challenging it in Court - in Daniels' case he lived with the plan throughout his tenure with Centennial and did not sue until after he was terminated for failing to meet sales goals - "thus, it is clear from [his] actions that 'he understood the payment plan in spite of after-the-fact verbal contentions otherwise." *Griffin 142 F.3d at 717*, quoting *Monahan, 95 F.3d at 1281 n. 21*.

Centennial next argues that even though Daniels claims in his affidavit that he believed he would be docked pay if he worked less than forty hours in a given week, this claimed lack of understanding does not defeat § 778.114 classification. Centennial points out that nowhere does Daniels dispute that he understood his salary would remain the same regardless of the number of hours above forty [*26] he worked in a given week. Centennial argues that this understanding is all the regulation requires. *Lance, 2005 U.S. Dist. Lexis 14949, *21*, and thus Daniels' statement that he believed his pay would be docked had he worked less than forty hours in a week, is not sufficient to defeat summary judgment. As set forth above, Centennial could legally dock Daniels' pay for intentional absences. *Lance, 2005 U.S. Dist. Lexis 14949, *17*. Moreover, as the Fourth Circuit noted, "the regulation does not require an employer to make all employees personnel specialists. Further, we do not find that the FLSA places the burden on the employer to hold an employee's hand and specifically tell him or her precisely how the payroll system works." *Id. at *25* quoting *Griffin, 142 F.3d at 717* (internal quotations omitted), quoting *Monahan, 95 F.3d at 1275*. Nor does the law require Centennial to ensure Daniels understood how his overtime pay was calculated. *Bailey v. County of Georgetown, 94 F.3d 152, 156 (4th Cir. 1996)* ("Neither the regulation nor the FLSA in any way indicates that an employee must also

[49] Filson Dep., pp. 8-10.

[50] Filson Dep., pp. 10-11.

[51] D. Ex. 14, pp. 115, 118, 121, 124, 128.

[52] Daniels Dep., pp. 19, 34-37.

[53] Daniels Dep., pp. 33, 44; D. Ex. 2.

[54] D. Ex. 14 pp. 119, 120, 122, 123, 125-127, 129-131.

[55] D. Ex. 15.

[56] D. Ex. 14, pp. 108-114, 116-117.

understand the manner in which his or her overtime pay is calculated."); *Valerio v. Putnam Associates, Inc., 173 F.3d 35, 40 (1st Cir. 1999).* **[\*27]** "It is enough if, as here, the employer provided its employees with a reasonably clear and accurate explanation of their compensation,' and paid its employees according to that system of compensation." *Griffin, 142 F.3d at 717*, quoting *Roy v. County of Lexington, 928 F. Supp. 1406, 1419*, vacated in part on other grounds, *948 F. Supp. 529 (D.S.C. 1996)* aff'd, *141 F.3d 533 (4th Cir. 1998).*

Clearly, even accepting as true Daniels' affidavit testimony that he believed his pay would be docked if he worked less than forty hours in a week - a proposition that is directly contradicted by his own actual experiences on those occasions when he did in fact work less than forty hours a week - this testimony is not sufficient to raise genuine issues of material fact or defeat summary judgment. Accordingly, Centennial's motion for summary judgment will be granted.

Conclusion

On the basis of the foregoing, Centennial's motion for summary judgment [DE 27] is hereby GRANTED.

Entered: May 3, 2010.

/s/ William C. Lee

William C. Lee, Judge

United States District Court



**User Name:**  Erick Diaz
**Date and Time:**  02 May 2016    3:52 p.m. EDT
**Job Number:**  32043335

## Documents(6)

1. *Dixon v. Zabka, 2013 U.S. Dist. LEXIS 77715*

   **Client/Matter:**  ouellette v fresh market
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

2. *Hanifin v. Accurate Inventory & Calculating Serv., 2014 U.S. Dist. LEXIS 115710*

   **Client/Matter:**  ouellette v fresh market
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

3. *Kiefer v. Moran Foods, LLC, 2014 U.S. Dist. LEXIS 106924*

   **Client/Matter:**  ouellette v fresh market
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

4. *Maced. Church v. Lancaster Hotel, LP, 2011 U.S. Dist. LEXIS 62063*

   **Client/Matter:**  ouellette v fresh market
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

5. *Bozak v. FedEx Ground Package Sys., 2014 U.S. Dist. LEXIS 106042*

   **Client/Matter:**  ouellette v fresh market
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

6. *Aros v. United Rentals, Inc., 2012 U.S. Dist. LEXIS 104429*

   **Client/Matter:**  ouellette v fresh market
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

🄰 Neutral

As of: May 2, 2016 3:52 PM EDT

## *Dixon v. Zabka*

United States District Court for the District of Connecticut

May 23, 2013, Decided; May 23, 2013, Filed

No. 3:11-cv-982 (MPS)

**Reporter**

2013 U.S. Dist. LEXIS 77715; 2013 WL 2391473

RUTH DIXON, ISHEA ANDERSON-RODRIGUEZ, ANDRE SMITH, MAHAGANY BIVENS, SHANTEEMA PALLET, KENNY FORD, SAM HIRTH, NICHOLE GAMBACCINI, and EARL GLENN, on behalf of themselves and all others similarly situated, Plaintiffs, -against- SCOTT ZABKA, Individually, S.Z. ENTERPRISES, INC., and THE SCOTT FETZER COMPANIES d/b/a KIRBY, Defendants.

**Subsequent History:** Summary judgment granted, in part, summary judgment denied, in part by *Dixon* v. Zabka, 2014 U.S. Dist. LEXIS 159692 (D. Conn., Nov. 13, 2014)

## Core Terms

settlement, notice, costs, days

**Counsel:** [*1] For Ruth Dixon, Andre Smith, Mahagany Bivens, Shanteema Pallet, Kenny Ford, Ishea Anderson-Rodriguez, Plaintiffs: Adam T. Klein, Cyrus E. Dugger, Molly A Brooks, Rachel Bien, Sally J Abrahamson, LEAD ATTORNEYS, PRO HAC VICE, Outten & Golden-NY, New York, NY; James Bhandary-Alexander, LEAD ATTORNEY, New Haven Legal Assistance Assoc. Inc., New Haven, CT; Shelley A. White, LEAD ATTORNEY, New Haven Legal Assistance, New Haven, CT; Susan Nofi-Bendici, LEAD ATTORNEY, State of Connecticut, Employment Security Appeals Division, Waterbury, CT.

For Sam Hirth, Plaintiff: Cyrus E. Dugger, Rachel Bien, LEAD ATTORNEYS, Outten & Golden-NY, New York, NY; James Bhandary-Alexander, LEAD ATTORNEY, New Haven Legal Assistance Assoc. Inc., New Haven, CT; Sally J Abrahamson, LEAD ATTORNEY, PRO HAC VICE, Outten & Golden-NY, New York, NY.

For Nichole Gambaccini, Earl Glenn, Plaintiffs: Cyrus E. Dugger, Rachel Bien, LEAD ATTORNEYS, Outten & Golden-NY, New York, NY; James Bhandary-Alexander, LEAD ATTORNEY, New Haven Legal Assistance Assoc. Inc., New Haven, CT; Molly A Brooks, Sally J Abrahamson, LEAD ATTORNEYS, PRO HAC VICE, Outten & Golden-NY, New York, NY.

For Scott Zabka, Individually, S.Z. Enterprises, Inc., [*2] Defendants: Patricia E. Reilly, LEAD ATTORNEY, Littler Mendelson, P.C.- NH, CT, New Haven, CT; Richard E Herthneck, LEAD ATTORNEY, PRO HAC VICE, Richard E. Herthneck Co., L.P.A., Rocky River, OH; Stephen W. Aronson, LEAD ATTORNEY, Robinson & Cole, Hartford, CT.

For Scott Fetzer Companies, doing business as Kirby, Defendant: Christopher M McLaughlin, LEAD ATTORNEY, PRO HAC VICE, Jones Day-OH, Cleveland, OH; Matthew W Lampe, LEAD ATTORNEY, Jones Day - NY, New York, NY; Patricia E. Reilly, LEAD ATTORNEY, Littler Mendelson, P.C.- NH, CT, New Haven, CT.

**Judges:** Honorable Michael P. Shea, United States District Judge.

**Opinion by:** Michael P. Shea

## Opinion

### ORDER GRANTING MOTION FOR APPROVAL OF FAIR LABOR STANDARDS ACT SETTLEMENT

On June 20, 2011, Plaintiffs Ruth Dixon, Ishea Anderson-Rodriguez, Andre Smith, Mahagany Bivens, Shanteema Pallet, Kenny Ford, Patreena Charles, and Leslie Gomez filed a Class Action Complaint against Defendants Scott Zabka ("Zabka"), S.Z. Enterprises, Inc. ("SZE"), and The Scott Fetzer Companies d/b/a Kirby ("Kirby"), which they amended twice. *See* ECF Nos. 50, 152. [1] Zabka owned

---

[1] Plaintiffs Patreena Charles [*3] and Leslie Gomez voluntarily dismissed their claims.

2013 U.S. Dist. LEXIS 77715, *2

SZE, a Kirby distributorship located in Orange, Connecticut, at which the Plaintiffs worked.

The Second Amended Complaint ("Complaint"), which the Court granted Plaintiffs leave to file on November 7, 2012, ECF No. 147, alleged that Defendants violated the Fair Labor Standards Act ("FLSA") and/or Connecticut Wage Payment Laws by: (1) misclassifying "Independent Dealers," who perform in-home demonstrations of Kirby vacuum cleaners to potential customers, as independent contractors who are excluded from the protections of the wage and hour laws; (2) failing to pay Independent Dealers for the time they spend in training learning how to demonstrate Kirby products at the beginning of their employment; and (3) failing to pay SZE Telemarketers, who scheduled in-home demonstrations of Kirby products, for all hours worked, including time spent in required meetings. *See* ECF No. 152 (Complaint) ¶¶ 2-3, 35. In addition to these claims, which Plaintiffs brought on a class and collective basis, Plaintiffs Dixon, Anderson-Rodriguez, Ford, and Smith brought individual claims for fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment under Connecticut law. *See id.* ¶¶ 105-116.

On March 29, 2012, the Court granted Plaintiffs' **[*4]** motion for conditional certification pursuant to *29* U.S.C. § 216(b), and authorized notice to be sent to all Independent Dealers and Telemarketers who worked for Defendants at SZE between June 20, 2008 and the present. ECF No. 99. On April 20, 2012, a third party claims administrator mailed a Court-authorized notice to 1,794 potential collective members, and subsequently to an additional 150 individuals who were inadvertently left off the class list provided by Defendants. ECF No. 133-4 ¶ 3. A total of 214 individuals joined the case by filing consent to join forms with the Court ("Opt-Ins"). *Id.* 4. ¶ [2]

On October 23, 2012, Plaintiffs and Defendants Zabka and SZE reached agreement on the material terms of a settlement, after engaging in a mediation facilitated by the Honorable William Garfinkel. ECF No. 144. The settlement provides for a settlement fund of $49,000, of which $15,000 would be allocated to Plaintiffs' counsel as attorneys' fees and costs. **[*5]** Decl. of Rachel Bien in Supp. of Fair Labor Standards Act Settlement ("Bien Decl.") Ex. A ¶ 3.1-3.2. The settlement does not extinguish the claims against Kirby, which will continue to be litigated.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**APPROVAL OF THE FLSA SETTLEMENT**

1. The Court has determined that the settlement satisfies the requirements for settlement approval under federal law.

2. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores,* Inc. v. United States, *679 F.2d 1350, 1353-54 (11th Cir. 1982)*; Aros v. United Rentals, Inc., *No. 10 Civ 73 et al.,* 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *2 (D. Conn. July 26, 2012). Courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *See Lynn's Food Stores, 679 F.2d at 1353-54*; United Rentals, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *2. If the proposed settlement reflects a reasonable compromise over contested issues, it should be approved. *See Lynn's Food Stores, 679 F.2d at 1354*; United Rentals, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *2.

3. The FLSA settlement in this case was the result of contested litigation involving **[*6]** substantial discovery, motion practice, and arm's-length negotiations conducted by experienced counsel and facilitated by a United States Magistrate Judge. Bien Decl. ¶¶ 8-14. Because the settlement resolves a dispute under circumstances supporting a finding of fair and reasonable arm's-length settlement, settlement approval is appropriate. *See Lynn's Food Stores, 679 F.2d at 1354*; United Rentals, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *2.

4. The Court also approves the proposed Settlement Notice and Release. The Settlement Notice provides sufficient information regarding the terms of the settlement, including the allocation formula, the exclusion process, and the settlement process. *See Alli* v. Boston Mkt. Corp., *No. 10 Civ. 04,* 2011 U.S. Dist. LEXIS 143303, 2011 WL 6156938, at *4-5 (D. Conn. Dec. 9, 2011).

5. The Court approves Settlement Services, Inc. ("SSI") as the claims administrator. *See McMahon* v. Olivier Cheng Catering & Events, LLC, *No. 08 Civ. 8713, 2010* U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010) (approving use of SSI's services in wage and hour settlement).

**AWARD OF FEES AND COSTS TO PLAINTIFFS' COUNSEL**

---

[2]   On February 28, 2013, the Court approved a second notice to be sent to an expanded collective of Independent Dealers. *See* ECF No. 168. This settlement does not cover the individuals who join the case in response to the second notice.

Erick Diaz

6. The Court awards Plaintiffs' counsel, New Haven Legal Assistance Association and Outten & Golden LLP, $15,000 in attorneys' [*7] fees and costs from the settlement fund.

7. Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand* v. Greenberg, *No. 08 Civ. 7840, 2010* U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010); United Rentals, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *4. Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA. *See* *Braunstein* v. E. Photo Labs., Inc., *600 F.2d 335, 336 (2d Cir. 1978)*, *cert. denied*, *441* U.S. 944, 99 S. Ct. 2162, 60 L. Ed. 2d 1046 (1979); United Rentals, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *6.

8. The requested fee is reasonable. The work that Plaintiffs' counsel has performed to date, including document discovery, depositions, and obtaining conditional certification, was significant and contributed to the successful resolution of the claims. *See* United Rentals, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *7. In addition, the requested fee represents a small portion of the actual fees and costs that Plaintiffs' counsel incurred litigating and settling the case. *See* Bien Decl. ¶¶ 18-21. *See* United Rentals, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *7. It is also less than the typical fee award [*8] of one-third that courts in this Circuit routinely award in wage and hour settlements. *See, e.g.,* United Rentals, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *7; *Willix* v. Healthfirst Inc., *No. 07 Civ. 1143,* 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (a fee of one-third of the fund is reasonable and "consistent with the norms of class litigation in this circuit") (internal quotation marks omitted).

**SETTLEMENT PROCEDURE**

9. Within 5 days of this Order or as soon as practicable, SSI will mail the Settlement Notice and Release to Plaintiffs and Opt-Ins. Plaintiffs and Opt-Ins will have 60 days to mail their signed Releases to Plaintiffs' counsel.

10. Within 10 days of the deadline for all Releases or as soon as practicable, SSI will issue checks to Plaintiffs and Opt-Ins who have returned their Releases.

11. Plaintiffs and Opt-Ins will have 90 days to cash their settlement checks. After the 90-day period expires, any uncashed amounts will be distributed to a *cypres* beneficiary designated by Plaintiffs' counsel.

12. On or before November 1, 2013, SZE and Zabka will make one or more final settlement payments of $15,000 into the Qualified Settlement Fund administered by SSI. Within 5 days of the final payment, SSI [*9] will transmit $15,000 to Plaintiffs' counsel as their attorneys' fees and costs.

13. The Court retains jurisdiction over this action for the purpose of enforcing the settlement and overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

14. On the Effective Date, as defined in the Settlement Agreement, or November 1, 2013, whichever is later, the claims against Zabka and SZE shall be dismissed with prejudice.

It is so ORDERED this 23 day of May, 2013.

/s/ MICHAEL P. SHEA

Honorable Michael P. Shea

United States District Judge

No *Shepard's* Signal™
As of: May 2, 2016 3:52 PM EDT

# *Hanifin v*. Accurate Inventory & Calculating Serv.

United States District Court for the Northern District of New York

August 20, 2014, Decided; August 20, 2014, Filed

11 Civ. 1510 (MAD) (ATB)

**Reporter**
2014 U.S. Dist. LEXIS 115710

KERRY HANIFIN, on behalf of himself, and all others similarly situated, Plaintiff, v. ACCURATE INVENTORY AND CALCULATING SERVICE, INC. d/b/a QUANTUM SERVICES, Defendant.

## Core Terms

settlement, class member, final approval, multiplier, awarding, class action, attorneys, courts, expenses, Parties, negotiations, Notices, approving, risks, Reimbursement, certification, compensate, mediation, weighs, opted, internal quotation marks, settlement fund, hour class, discovery, lodestar, damages, requirements, resources, objected, cases

**Counsel:** **[*1]** For Kerry Hanifin, on behalf of himself and all others similarly situated, Plaintiff: Joshua G. Konecky, Lisa M. Bowman, Todd M. Schneider, LEAD ATTORNEYS, PRO HAC VICE, Schneider, Wallace Law Firm, San Francisco, CA; Michael J. Scimone, LEAD ATTORNEY, Adam Klein, Outten, Golden Law Firm - NY Office, New York, NY; Molly A. Brooks, Reena Arora, PRO HAC VICE, Outten, Golden Law Firm - NY Office, New York, NY.

For Accurate Inventory and Calculating Service, Inc., doing business as Quantum Services, Defendant: Trent M. Sutton, LEAD ATTORNEY, Littler, Mendelson Law Firm - Rochester Office, Rochester, NY; Michael T. Short, Tracy S. Pyles, PRO HAC VICE, Littler, Mendelson Law Firm - Columbus Office, Columbus, OH.

**Judges:** Mae A. D'Agostino, U.S. District Judge.

**Opinion by:** Mae A. D'Agostino

## Opinion

### ORDER GRANTING PLAINTIFF'S MOTIONS FOR (1) CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT; (2) APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; (3) APPROVAL OF SERVICE AWARDS

Plaintiff Kerry Hanifin is a former employee of Defendant Accurate Inventory and Calculating Service, Inc. d/b/a/ Quantum Services ("Quantum"). On December 22, 2011, Plaintiff **[*2]** filed a Class Action Complaint ("Complaint") on behalf of former and current Auditors and Audit Supervisors (collectively, "Class Members") employed by Quantum in the United States, alleging that Defendant violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by (1) failing to pay Class Members for all hours worked; (2) failing to pay Class Members for time spent traveling to and from designated meet-up sites; (3) failing to reimburse Class Members for business expenses. ECF No. 1, Compl. ¶¶ 1-2.

After engaging in formal discovery and extensive settlement discussions, the Parties reached a settlement totaling $650,000.00. Decl. of Adam T. Klein in Supp. of Pls.' Mot. for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Klein Decl.") ¶¶ 11-29, 33. The Parties reached this settlement after private mediation with mediator Bob Kaiser, a settlement conference before Magistrate Judge Andrew T. Baxter, and further settlement negotiations between counsel. *Id.* ¶ 20-27.

On May 14, 2014, this Court entered an Order preliminarily approving the settlement on behalf of the class set forth therein, **[*3]** conditionally certifying the settlement class, appointing Outten & Golden LLP ("O&G") and Schneider Wallace Cottrell Konecky LLP ("SWCK") as Class Counsel, and authorizing notice to all Class Members. ECF No. 110.

On June 13, 2014, a claims administrator sent Court-approved notices to all Class Members informing them of their rights under the settlement, including the right to opt out or object to the settlement. Decl. of Terry Sutor ("Sutor Decl.") ¶ 7. No Class Member objected to the

2014 U.S. Dist. LEXIS 115710, *4

settlement, and no Class Member opted out of the settlement. *Id*. ¶¶ 9-10.

On August 4, 2014, Plaintiff filed a Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval"). That same day, Plaintiff also filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Service Awards ("Motion for Service Awards"). Defendant took no position with respect to any of these motions and did not object to the requests for attorneys' fees, costs, or service payments.

The Court held a fairness hearing on August 18, 2014. No Class Member objected to the settlement at [**4**] the hearing.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees and Reimbursement of Expenses, the Motion for Service Awards, and the supporting declarations, the oral argument presented at the August 18, 2014 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the August 18, 2014 fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED: CERTIFICATION OF THE SETTLEMENT CLASS**

1. The Court certifies the following Class under *Federal Rule of Civil Procedure 23(e)*, for settlement purposes (the "Rule 23 Class Members"): all current and former Auditors and Audit Supervisors employed by Defendant in New York State at any time between December 22, 2005 and August 5, 2013.

2. Plaintiff meets all of the requirements for class certification under *Federal Rule of Civil Procedure 23(a)* and *(b)(3)*.

3. Plaintiff satisfies *Federal Rule of Civil Procedure 23(a)(1)* because there are approximately 97 Rule 23 Class Members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)* ("[N]umerosity is presumed at a level of 40 members. . . .").

4. This case involves several common factual and legal issues, including whether Defendant: (1) required workers to work off the clock; (2) was obligated to pay Class Members for time spent [**5**] traveling to and from audit sites and meet-up sites; (3) took unlawful deductions from employees' wages by requiring them to pay Defendant's

business expenses. These alleged wage and hour violations - involving common operative facts stemming from corporate policies that affected Class Members in the same way - are sufficient to meet *Rule 23(a)*'s commonality factor. *See Capsolas v. Pasta Res. Inc., No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 144651, 2012 WL 4760910, at *2 (S.D.N.Y. Oct. 5, 2012)* (finding commonality where defendants "allegedly us[ed] the equivalent of 4-5% of each shift's wine sales to pay sommeliers' salaries and [failed] to pay spread-of-hours pay."); *Campos v. Goode, No. 10 Civ. 0224, 2010 U.S. Dist. LEXIS 139131, 2010 WL 5508100, at *1-2 (S.D.N.Y. Nov. 29, 2010)* (commonality satisfied where restaurant workers raised overtime, tip misappropriation, spread of hours, and uniform claims); *de Munecas v. Bold Food, LLC, No. 09 Civ. 00440, 2010 U.S. Dist. LEXIS 38229, 2010 WL 2399345, at *1 (S.D.N.Y. Apr. 19, 2010)* (commonality satisfied where restaurant workers *inter alia* raised tip misappropriation, spread of hours, and uniform claims).

5. Plaintiff satisfies *Federal Rule of Civil Procedure 23(a)(3)*, typicality, because Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims. *See Hernandez v. Merrill Lynch & Co., Inc., No. 11 Civ. 8472, 2013 U.S. Dist. LEXIS 42681, 2013 WL 1209563, at *3 (S.D.N.Y. Mar. 21, 2013)* (typicality satisfied where "[p]laintiffs' [overtime claims] claims arose from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris, 859 F. Supp. 2d at 616* (same).

6. Plaintiff satisfies *Federal Rule of Civil Procedure 23(a)(4)* because [**6**] there is no evidence that the Plaintiff's and Class Members' interests are at odds. *See Beckman, 293 F.R.D. at 473* (finding adequacy requirement met where there was no evidence that plaintiffs' and class members' interests were at odds); *accord Diaz v. E. Locating Serv. Inc., No. 10 Civ. 4082, 2010 U.S. Dist. LEXIS 139136, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010)*.

7. In addition, Plaintiff's Counsel also meet the adequacy requirement of *Rule 23(a)(4)*. Outten & Golden attorneys have "substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and class action law." *Beckman, 293 F.R.D. at 473* (internal quotation marks and citation omitted). Likewise, SWCK is "well-qualified to represent Plaintiffs' interests in this action" due to their "extensive experience with class actions." *Wren v. RGIS Inventory Specialists, No. 06 Civ. 5778, 2011 U.S. Dist. LEXIS 38667, 2011 WL 1230826, at *9-10 (N.D. Cal. Apr. 1, 2011)*.

8. Plaintiff also satisfies _Rule 23(b)(3)_. Plaintiff's and Class Members' common factual allegations and legal theory - that Defendant violated federal and state wage and hour laws by failing to pay them for all compensable time and failing to properly reimburse them for expenses - predominate over any factual or legal variations among Class Members. _See Asare_ v. Change Grp. of N.Y., Inc., _No. 12 Civ. 3371, 2013_ U.S. Dist. LEXIS 165935, 2013 WL 6144764, at *7 (S.D.N.Y. Nov. 18, 2013) (predominance satisfied where workers brought claims for off-the-clock work and unlawful deductions); _Morris, 859 F. Supp. 2d at 615, 617_ (predominance satisfied in case alleging that defendant **[*7]** did not pay workers for time spent working off the clock).

9. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. _See Beckman, 293 F.R.D. at 473_; _Morris, 859 F. Supp. 2d at 617_. Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction.

### APPROVAL OF THE SETTLEMENT AGREEMENT

10. The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement.

11. _Rule 23(e)_ requires court approval for a class action settlement to insure that it is procedurally and substantively "fair, reasonable and adequate." _Fed. R. Civ. P. 23(e)_. To determine procedural fairness, courts examine the "negotiating process leading to the settlement." _Wal-Mart Stores,_ Inc. v. Visa U.S.A. Inc., _396 F.3d 96, 116 (2d Cir. 2005)_; _D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)_. To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in _City of Detroit_ v. Grinnell Corp., _495 F.2d 448 (2d Cir. 1974)_, _abrogated on other grounds by Goldberger_ v. Integrated Res., Inc., _209 F.3d 43 (2d Cir. 2000)_.

12. Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. _Wal-Mart Stores, 396 F.3d at 116_ (internal **[*8]** quotation marks omitted); _see also Spann_ v. AOL Time Warner, Inc., _No. 02 Civ. 8238, 2005_ U.S. Dist. LEXIS 10848, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.").

13. A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." _Wal-Mart Stores, 396 F.3d at 116_ (internal quotation marks and citation omitted); _see also_ _D'Amato, 236 F.3d at 85_. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." _In re EVCI Career Colls. Holding Corp. Sec. Litig., No. 05 Civ. 10240, 2007_ U.S. Dist. LEXIS 57918, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### _Procedural Fairness_

14. The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. _See Toure_ v. Amerigroup Corp., _No. 10 Civ. 5391,_ 2012 U.S. Dist. LEXIS 110300, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation . . . [and] enlisted the services of an experienced employment [law] mediator"); _Diaz, 2010_ U.S. Dist. LEXIS 139136, 2010 WL 5507912, at *4.

15. Class Counsel conducted thorough investigations and evaluated the claims and defenses, engaged in discovery, and reached a settlement after private mediation between **[*9]** the Parties and a settlement conference before Magistrate Judge Andrew T. Baxter. Klein Decl. ¶¶ 11-27.

16. On August 21, 2013, the Parties attended private mediation in Columbus, Ohio. _Id._ ¶ 24. Although the parties did not reach a resolution at this time, these arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, "rais[ing] a presumption that the settlement they achieved meets the requirements of due process." _See Wal-Mart Stores, 396 F.3d at 116_; _McMahon_ v. Olivier Cheng Catering & Events, LLC, _No. 08 Civ. 8713, 2010_ U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *4 (S.D.N.Y. Mar. 3, 2010).

17. On July 12, 2013, the parties attended a settlement conference before Magistrate Judge Andrew T. Baxter. Klein Decl. ¶ 26. The involvement of a magistrate judge also supports a finding that the settlement was procedurally fair. _See Elliot_ v. Leatherstocking Corp., _No. 10 Civ. 934,_ 2012 U.S. Dist. LEXIS 171443, 2012 WL 6024572, at *3 (N.D.N.Y. Dec. 4, 2012).

18. In addition, "courts encourage early settlement of class actions, when warranted, because early settlement allows

2014 U.S. Dist. LEXIS 115710, *9

class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Yuzary, 2013* U.S. Dist. LEXIS 144327, 2013 WL 5492998, at *5; *see also Hernandez, 2013* U.S. Dist. LEXIS 42681, 2013 WL 1209563, at *1 (endorsing early settlement of wage and hour class action); *Castagna* v. Madison Square Garden, L.P., *No. 09 Civ. 10211,* 2011 U.S. Dist. LEXIS 64218, 2011 WL 2208614, at *10 (S.D.N.Y. Jun. 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement). The Parties here acted responsibly [*10] in reaching an early settlement. See *In re Interpublic Sec. Litig., No. 02 Civ. 6527, 2004* U.S. Dist. LEXIS 21429, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004).

***Substantive Fairness***

19. The settlement is substantively fair. All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

20. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *495 F.2d at 463*.

21. Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

22. The class's reaction to the settlement was positive. The Notices sent to Class Members included an explanation of the allocation formula [*11] and an estimate of each Class Member's award. The Rule 23 Notice also informed Rule 23 Class Members of their right to object to or exclude themselves from the Settlement and explained how to do so. No Class Member objected to the settlement, and no Class Member opted out. This favorable response demonstrates that the class approves of the settlement, which further supports final approval. *See Willix* v. Healthfirst, Inc., *No. 07 Civ. 1143,* 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 class members objected and two requested exclusion); *Bellifemine* v. Sanofi-Aventis U.S. LLC, *No. 07 Civ. 2207, 2010* U.S. Dist. LEXIS 79679, 2010

WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010) (granting final approval where there were no objections but 28 of 5,262 opted out, noting that "[a] small number of objections is convincing evidence of strong support by class members"); *Khait* v. Whirlpool Corp., *No. 06 Civ. 6381, 2010* U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (approving settlement where no class members objected and two opted out).

23. The Parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004)*. Defendant deposed Plaintiff Kerry Hanifin and responded to Plaintiff's document requests by producing hundreds of pages of corporate policy documents. Klein Decl. ¶¶ 16, 18. Defendant further provided relevant class member data relevant to damages, including dates [*12] of employment, hours of work, hours spent driving between audit sites, hours reported under specific administrative reporting codes, and miles traveled to, from, and between audit sites, as well as data showing how often each Class Member worked as a supervisor or rode as a passenger in another Class Member's car. *Id.* ¶ 20. Plaintiff's Counsel analyzed this information and created formulas to calculate the damages Defendant owed Plaintiff and the Class Members for each claim. *Id.* ¶ 22. In addition to reviewing these documents and those provided by Plaintiff, Plaintiff's Counsel also conducted legal research on the underlying merits of Plaintiff's and Class Members' claims and the damages to which they were entitled. *Id.* ¶ 12, 23. Plaintiff's Counsel met and conferred with Defendant's counsel multiple times regarding the data available for damages calculations. *Id.* ¶ 21.

24. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997)*. Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co., 304 F. Supp. 917, 934 (S.D.N.Y. 1969)*; *see also Velez* v. Majik Cleaning Serv., Inc., *No. 03 Civ. 8698, 2007* U.S. Dist. LEXIS 46223, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, Plaintiff faced risks as to both liability [*13] and damages. For example, Plaintiff would have to overcome Quantum's defense that Class Members accurately reported all their time worked using Defendant's timekeeping system, prove that the time Class Members spent traveling to and from meeting sites was compensable, and overcome Quantum's good faith defense. Litigation of these issues would be inherently uncertain in

terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of approval.

25. The risk of obtaining collective and class certification and maintaining both through trial is also present. A contested class certification motion would likely require extensive discovery and briefing. Defendant would likely seek to decertify the FLSA collective after the close of discovery. If the Court were to grant class certification, Defendant might seek to file an appeal under *Federal Rule of Civil Procedure 23(f)*, the resolution of which would require an additional round of briefing. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The sixth *Grinnell* factor weighs in favor of final approval.

26. Even if Defendant could withstand a greater judgment, its ability to do so, [*14] "standing alone, does not suggest that the settlement is unfair." *Frank, 228 F.R.D. at 186* (quoting *In re Austrian, 80 F. Supp. 2d at 178 n.9*). Here, Quantum informed Plaintiff's counsel during mediation that it would have difficulty sustaining a greater judgment, and offered to disclose financial information in support of that claim. Klein Decl. ¶ 29. Therefore, the seventh *Grinnell* factor supports final approval.

27. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank, 228 F.R.D. at 186* (quoting *In re Austrian, 80 F. Supp. 2d at 178*). "Instead, 'there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972))*. The eighth and ninth *Grinnell* factors weigh in favor of final approval.

## APPROVAL OF THE FLSA SETTLEMENT

28. The Court hereby approves the FLSA settlement.

29. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not [*15] implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp., 747 F.2d 1211, 1213 (8th Cir. 1984)*, abrogated on other grounds by *Hoffmann-LaRoche Inc. v. Sperling, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*; *see also McMahon, 2010*

*U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6*. Accordingly, the high standard for approval of a class action under *Rule 23* does not apply to an FLSA settlement.

30. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores,* Inc. v. United States, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)*; *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6*. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food, 679 F.2d at 1353-54*. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id. at 1354*; *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6*.

31. In this case, the settlement was the result of arm's-length negotiation involving vigorous arm's-length settlement negotiations. Klein Decl. ¶ 28. During the entire process, Plaintiff and Defendant were represented by counsel experienced in wage and hour law. Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding that is fair and reasonable.

32. The parties have stipulated to designate the National Employment Law Project ("NELP") as the *cy pres* beneficiary for this settlement. Klein Decl. ¶ 47. NELP is an appropriate cy pres beneficiary [*16] because its advocacy work on behalf of workers is closely related to the purpose of this wage and hour lawsuit. *Id.* ¶ 48-49; *see Sewell v. Bovis Lend Lease, Inc., No. 09 Civ. 6548, 2013 U.S. Dist. LEXIS 47526, 2013 WL 1316015, at *2 (S.D.N.Y. Mar. 29, 2013)*; *Stefaniak v. HSBC Bank USA, N.A., No. 05 Civ. 720, 2011 U.S. Dist. LEXIS 144346, 2011 WL 7051093, at *2 (W.D.N.Y. Dec. 15, 2011)* (collecting cases); *Reyes v. Buddha-Bar NYC, No. 08 Civ. 2494, 2010 U.S. Dist. LEXIS 62591, 2010 WL 2545859, at *1 (S.D.N.Y. June 18, 2010)*.

## DISSEMINATION OF NOTICE

33. Pursuant to the Preliminary Approval Order, the *Rule 23* and FLSA Notices were sent by first-class mail to each respective Class Member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located). The Court finds that the *Rule 23* and FLSA Notices fairly and adequately advised Class Members of the terms of the settlement, as well as the right of Rule 23 Class Member to opt out of or to object to the settlement, and to appear at the fairness hearing conducted on August 18, 2014. Class Members were provided with the best notice practicable under the circumstances.

34. The Court further finds that the Notices and their distribution comported with all constitutional requirements, including those of due process.

35. The Court confirms Heffler Claims Group as the claims administrator.

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND AWARD OF SERVICE AWARDS TO PLAINTIFFS

36. On May 15, 2014, the Court appointed O&G and SWCK as Class Counsel **[*17]** because they met all of the requirements of *Federal Rule of Civil Procedure 23(g)*. *See Damassia* v. Duane Reade, Inc., *250 F.R.D. 152, 165 (S.D.N.Y. 2008)* (*Rule 23(g)* requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class.") (internal quotation marks omitted).

37. Class Counsel are experienced employment lawyers with good reputations among the employment law bar. *See Sewell* v. Bovis Lend Lease, Inc., *No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556, 2012 WL 1320124, at *12 (S.D.N.Y. Apr. 16, 2012)* (noting Outten & Golden LLP's reputation as a "respected labor and employment firm" and that attorneys had "prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Wren* v. RGIS Inventory Specialists, *No. 06 Civ. 5778, 2011 U.S. Dist. LEXIS 38667, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)* (approving settlement of claims by class represented by Schneider Wallace Cottrell Konecky LLP).

38. The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel have committed substantial resources to prosecuting this case.

39. The Court hereby grants Plaintiff's Motion for Attorneys' Fees and awards **[*18]** Class Counsel $200,000.00, which is approximately 30.8% of the settlement fund.

40. The trend in this Circuit is to use the percentage of the fund method in common fund cases like this one, *Wal-Mart Stores, 396 F.3d at 121*; *Yuzary, 2013 U.S. Dist. LEXIS 144327, 2013 WL 5492998, at *9*; *Diaz, 2010 U.S. Dist. LEXIS 139136, 2010 WL 5507912, at *7*.

41. Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, *McDaniel* v. County of Schenectady, *595 F.3d 411, 417 (2d Cir. 2010)*, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *Beckman, 293 F.R.D. 477*; *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7*. "Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Hernandez, 2013 U.S. Dist. LEXIS 42681, 2013 WL 1209563, at *8* (internal quotation marks and citation omitted). The FLSA and NYLL statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7*; *Sand, 2010 U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3*.

42. Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Beckman, 293 F.R.D. 477*; *see also Hernandez, 2013 U.S. Dist. LEXIS 42681, 2013 WL 1209563, at *8*. "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." **[*19]** *Id.*; *see Sand* v. Greenberg, *No. 08 Civ. 7840, 2010 U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)* ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

41. Class Counsel's request for 30.8% of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." *Yuzary, 2013 U.S. Dist. LEXIS 144327, 2013 WL 5492998, at *10* (internal quotation marks and citation omitted).

42. In addition, in Plaintiff's retainer agreements with Class Counsel, Plaintiff agreed that Class Counsel could apply to the Court for up to 33 1/3% of a class-wide recovery and that they would pay Class Counsel 33 1/3% of any individual recovery. Klein Decl. ¶ 43. This also provides support for Class Counsel's request for 30.8% of the fund.

43. No Class Member objected to Class Counsel's request for 30.8% of the fund, which also provides support for Class Counsel's fee request.

44. All of the factors in *Goldberger* v. Integrated Resources, Inc., *209 F.3d 43, 48-49 (2d Cir. 2000)* weigh in favor of the requested fee award.

2014 U.S. Dist. LEXIS 115710, *19

45. Applying the lodestar method as a "cross check," *see id. at 50*, the Court finds that the fee that Class Counsel seeks is reasonable. "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman, 293 F.R.D. 481* (citations omitted); *see also Vizcaino* v. Microsoft Corp., 290 F.3d 1043, 1052 *(9th Cir. 2002)* (listing nationwide class action **[*20]** settlements where multiplier ranged up to 19.6 times lodestar); *Sewell,* 2012 U.S. Dist. LEXIS 53556, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six." (citations omitted)); *In re Lloyd's Am. Trust Fund Litig., No. 96 Civ. 1262, 2002* U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002)* (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit" (citation omitted)); *see, e.g., Steiner* v. Am. Broad. Co., 248 F. App'x 780, 783 *(9th Cir. 2007)* (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed") (citations omitted); *Yuzary, 2013* U.S. Dist. LEXIS 144327, 2013 WL 5492998, at *11 (awarding multiplier of 7.6 in wage and hour misclassification class action); *Davis, 827 F. Supp. 2d at 185-86* (awarding multiplier of 5.3 in wage and hour class action); *Buccellato* v. AT&T Operations, Inc., No. 10 Civ. 463, 2011 U.S. Dist. LEXIS 85699, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011)* (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund* v. First Databank, Inc., No. 05 Civ. 11148, 2009 U.S. Dist. LEXIS 68419, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009)* (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig., 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008)* (awarding multiplier of 5.2); *In re Cardinal Health* Inc. Sec. Litigs., 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007)* (awarding multiplier of 6); *In re Rite Aid Corp. Secs. Litig., 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005)* (awarding multiplier of 6.96); *Maley* v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 371 (S.D.N.Y. Jan. 29, 2002)* ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *Cosgrove* v. Sullivan, 759 F. Supp. 166, 167 n. 1, 169 (S.D.N.Y. 1991)* (awarding multiplier of 8.74). The Court has considered the hourly rates and hours expended by Class Counsel in this matter and finds them reasonable. Based on such rates and hours, Class Counsel are seeking an award that is approximately **[*21]** 34.4% of their lodestar. This compares favorably with the range of multipliers that have been granted by courts in this Circuit and elsewhere.

46. The fee award Class Counsel seeks is also reasonable because it will compensate them for further time spent on this case in the future. In wage and hour cases, Class Counsel is often called upon to perform work after the final

approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with defendants about administering the settlement and distributing the fund. Klein Decl. ¶ 44. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request. *See Diaz, 2010* U.S. Dist. LEXIS 139136, 2010 WL 5507912, at *7.

47. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $37,367.24. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003).* Here, Class Counsel's unreimbursed expenses include court fees, postage and courier fees, transportation, photocopies, electronic **[*22]** research, document management fees, messenger and process server fees, and Plaintiff's share of the mediator's fees

48. The attorneys' fees and the amount in reimbursement of litigation costs and expenses shall be paid from the settlement fund.

49. The Court finds reasonable a service award for Plaintiff Kerry Hanifin in the amount of $10,000 in recognition of the services he rendered on behalf of the class. This amount shall be paid from the settlement fund.

50. Service awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *Yuzary, 2013* U.S. Dist. LEXIS 144327, 2013 WL 5492998, at *12 (quoting *McMahon, 2010* U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *9)* (internal quotation marks omitted). "Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Yuzary, 2013* U.S. Dist. LEXIS 144327, 2013 WL 5492998, at *12 (citing *Massiah* v. MetroPlus Health Plan, Inc., No. 11 Civ. 5669, 2012 U.S. Dist. LEXIS 166383, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012)).

51. The "Effective Date" of the settlement shall be the last of the following dates:

a. If there is no appeal of the Court's Order Granting Final Approval of the settlement, 30 days following the Court's Order Granting Final Approval; or

Erick Diaz

2014 U.S. Dist. LEXIS 115710, *22

b. If the Court's Order Granting Final Approval of [*23] the settlement is appealed, the date of the Court's entry of a final order and judgment following any resolution of all appeals in favor of final approval.

52. Within five days of the Effective Date, the claims administrator shall distribute the funds in the settlement account by making the following payments in the order below:

a. Paying Class Counsel 30.8% of the fund ($200,000.00);

b. Reimbursing Class Counsel $37,367.24 in litigation costs and expenses;

c. Paying a service award to Plaintiff Kerry Hanifin in the amount of $10,000 in recognition of the services he rendered on behalf of the class. This amount shall be paid from the settlement fund; and

d. Paying the remainder of the fund to Class Members in accordance with the allocation plan described in the Settlement Agreement.

53. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

54. Upon the Effective Date, this litigation shall be dismissed with prejudice, and all Rule 23 Class Members who have not excluded themselves from [*24] the settlement and all FLSA Class Members who have opted in to the lawsuit shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the settlement.

It is so ORDERED this 20th day of August, 2014.

/s/ Mae A. D'Agostino

Mae A. D'Agostino

U.S. District Judge

🛈 Cited
As of: May 2, 2016 3:52 PM EDT

# *Kiefer v.* Moran Foods, LLC

United States District Court for the District of Connecticut

July 31, 2014, Decided; August 5, 2014, Filed

No. 12-CV-756 (WGY)

**Reporter**
2014 U.S. Dist. LEXIS 106924; 2014 WL 3882504

ROBERT G. KIEFER, EDWARD B. ROACH, DAVID PAGANO, MARKITA P. ROBINSON, JASON TURNER, GARLAND OSBORN, STEPHEN MANOLAKIS, FRANK RAKOWSKI, DENNIS SANOSKE, ERIC EVERHART, TIMOTHY PORTER, BRIAN PEREIRA, DONNA OAKES, GREGG SIME, FRANK SEYMOUR, AND ALLEN ZAYAS, individually and on behalf of others similarly situated, Plaintiffs, v. MORAN FOODS, LLC and MORAN FOODS, INC., together d/b/a SAVE-A-LOT, LTD., Defendants.

## Core Terms

settlement, class member, final approval, attorneys', class action, parties, awards, overtime, negotiations, mediation, one-third, expenses, Notices, experienced, weighs, settlement fund, Plaintiffs', Courts, risks, named plaintiff, discovery, approve, Reimbursement, certification, requirements, resources, set forth, quotation, factors, opt

**Counsel:** [*1] For Robert G. Kiefer, individually and on behalf of all others similarly situated, Plaintiff: Anthony J. Pantuso, III, LEAD ATTORNEY, Quinn Law Firm, LLC, Milford, CT; Cyrus E. Dugger, Juno Turner, Justin M. Swartz, LEAD ATTORNEYS, PRO HAC VICE, Outten & Golden-NY, New York, NY; Erick Ignacio Diaz-Vazquez, Margaret B. Ferron, Richard Eugene Hayber, LEAD ATTORNEYS, Hayber Law Firm LLC, Hartford, CT; Peter D. Winebrake, LEAD ATTORNEY, PRO HAC VICE, Winebrake & Santillo, LLC, Dresher, PA.

For Brian Andrikis, Edward Roach, Arthur W. Hatje, Jr., Justin Sturwold, Anthony Pepin, Tom V. Vizzo, Jr., Peter Zaniewski, Jonathan Peralta, Stephen Olexa, Michael Batista, John Dzurilla, Christopher W. Ford, Dawn L. Palmisano, William Patrick Henry, Cathy A. Dozier, John M. Meister, Emad M. Adiyeh, Dennis Robinson, Plaintiff: Cyrus E. Dugger, Juno Turner, Justin M. Swartz, LEAD ATTORNEYS, PRO HAC VICE, Outten & Golden-NY, New York, NY; Richard Eugene Hayber, LEAD ATTORNEY, Hayber Law Firm LLC, Hartford, CT.

For Frances Brown, Brian Haythe, Sandra Escude, Donna Miranda, Susana Viveiros, Veronica Viveiros, Derek Blue, Plaintiffs: Cyrus E. Dugger, Juno Turner, LEAD ATTORNEYS, PRO HAC VICE, Outten & Golden-NY, [*2] New York, NY; Justin M. Swartz, LEAD ATTORNEY, Outten & Golden-NY, New York, NY; Richard Eugene Hayber, LEAD ATTORNEY, Hayber Law Firm LLC, Hartford, CT.

For Jodie Lallier, Patrick Stroup, Plaintiffs: Cyrus E. Dugger, Juno Turner, LEAD ATTORNEYS, PRO HAC VICE, Outten & Golden-NY, New York, NY; Richard Eugene Hayber, LEAD ATTORNEY, Hayber Law Firm LLC, Hartford, CT.

For Marie Linzy-Black, Clyde L. Sales, Shirley Battle, Paul Jason Reep, Terri Smith, Eric Everhart, Markita Robinson, Joseph Sanders, Garland Osborn, Michael D. Thompson, Rodney A. Schaaf, Plaintiffs: Juno Turner, LEAD ATTORNEY, PRO HAC VICE, Outten & Golden-NY, New York, NY; Richard Eugene Hayber, LEAD ATTORNEY, Hayber Law Firm LLC, Hartford, CT.

Donald David Frisbee, Plaintiff, Pro se.

For David Pagano, Sr., Plaintiff: Erick Ignacio Diaz-Vazquez, Richard Eugene Hayber, LEAD ATTORNEYS, Hayber Law Firm LLC, Hartford, CT; Juno Turner, Justin M. Swartz, LEAD ATTORNEYS, PRO HAC VICE, Outten & Golden-NY, New York, NY; Peter D. Winebrake, LEAD ATTORNEY, Winebrake & Santillo, LLC, Dresher, PA.

For John Smith, Plaintiff: Richard Eugene Hayber, LEAD ATTORNEY, Hayber Law Firm LLC, Hartford, CT.

Shakita Spalding, Plaintiff, [*3] Pro se.

Juan A. Rodriguez, Plaintiff, Pro se.

David Earl Swilley, Plaintiff, Pro se.

2014 U.S. Dist. LEXIS 106924, *3

Ruth Anne Jones, Plaintiff, Pro se.

Charles Lewis Howard, Plaintiff, Pro se.

Dwayne Charles Davis, Plaintiff, Pro se.

Michael James Drake, Plaintiff, Pro se.

David James Edwards, Plaintiff, Pro se.

Charles Edward McCoy, Plaintiff, Pro se.

Donna Oakes, Plaintiff, Pro se.

Michael N. Tran, Plaintiff, Pro se.

Rachael Walters, Plaintiff, Pro se.

Harold Diandrai Webb, Plaintiff, Pro se.

Michael T. Yurchak, Plaintiff, Pro se.

Barbara Arnold, Plaintiff, Pro se.

Paul Blaha, Plaintiff, Pro se.

Anthony Bonomo, Plaintiff, Pro se.

Dominique Camper, Plaintiff, Pro se.

Matthew Ciullo, Plaintiff, Pro se.

Donald Demette, Plaintiff, Pro se.

James Edwards III, Plaintiff, Pro se.

Michelle Elder, Plaintiff, Pro se.

Brian Jackson, Plaintiff, Pro se.

James Fairey, Plaintiff, Pro se.

Desiree Griffiths, Plaintiff, Pro se.

Raymond Hansell, Plaintiff, Pro se.

David Hugg, Plaintiff, Pro se.

Lanisha Johnson, Plaintiff, Pro se.

Allen Miller, Plaintiff, Pro se.

George Mocio, Plaintiff, Pro se.

Titus Newborn, Plaintiff, Pro se.

Steven Novatkoski, Plaintiff, Pro se.

Jarees Peeples, Plaintiff, Pro se.

Brian Pereira, Plaintiff, Pro se.

Dennis Sanoske, Plaintiff, Pro [*4] se.

Jason Schrader, Plaintiff, Pro se.

Keith Trayer, Plaintiff, Pro se.

Muriel Wallach, Plaintiff, Pro se.

Demetrius Walker, Plaintiff, Pro se.

Statchel Warner, Plaintiff, Pro se.

Chase Wilson, Plaintiff, Pro se.

John A. Acker, Plaintiff, Pro se.

Alora R. Baver, Plaintiff, Pro se.

Mark A. Becker, Plaintiff, Pro se.

Denis Beqo, Plaintiff, Pro se.

Francisco E. Carranza, Plaintiff, Pro se.

Kelley M. Colbert, Plaintiff, Pro se.

Kevin M. Collins, Plaintiff, Pro se.

Timothy G. Crawford, Plaintiff, Pro se.

Jayson K. David, Plaintiff, Pro se.

Dylan Deaton, Plaintiff, Pro se.

Robert K. DiGregorio, Plaintiff, Pro se.

Teddy L. Duboise, Plaintiff, Pro se.

Robert F. Duclos, Jr., Plaintiff, Pro se.

Matthew J. Dykes, Plaintiff, Pro se.

2014 U.S. Dist. LEXIS 106924, *4

Ronald Estrada, Plaintiff, Pro se.

Christopher J. Falco, Plaintiff, Pro se.

Nathaniel A. Frazier, Plaintiff, Pro se.

Polly A. (Stevens) Garrett, Plaintiff, Pro se.

Victoria S. Gibson, Plaintiff, Pro se.

David M. Goldberg, Plaintiff, Pro se.

Ronald J. Grawe, Plaintiff, Pro se.

Donald W. Gregory, Plaintiff, Pro se.

Abeni E. (Gregory) Johnson, Plaintiff, Pro se.

Larisa M. Hayle, Plaintiff, Pro se.

Angela M. Hannie, Plaintiff, Pro se.

Veronica Johnson, Plaintiff, Pro se.

Michael Kelley, Plaintiff, Pro  [*5] se.

Charles W. Knirk, Plaintiff, Pro se.

Mark A. Krechko, Plaintiff, Pro se.

David M. Lewis, Plaintiff, Pro se.

Charles F. Loesche, Plaintiff, Pro se.

Christophe J. Martin, Plaintiff, Pro se.

Gregory S. Modeski, Plaintiff, Pro se.

Sheila A. Moles, Plaintiff, Pro se.

Robert V. Morgan, Plaintiff, Pro se.

Kimberly A. Nicholson, Plaintiff, Pro se.

Larry W. Ohree, Jr., Plaintiff, Pro se.

Byron J. Ollie, Plaintiff, Pro se.

Sharon L. Ponder, Plaintiff, Pro se.

Michael G. Ponder, Plaintiff, Pro se.

Scott A. Riley, Plaintiff, Pro se.

Dennis W. Robinson, Plaintiff, Pro se.

Edna C. Rosales, Plaintiff, Pro se.

Michael M. Russo, Plaintiff, Pro se.

Edward A. Ruston, Plaintiff, Pro se.

James M. Schwarz, Plaintiff, Pro se.

Gary L. Shamblin, Jr., Plaintiff, Pro se.

Mark A. Simmons, Plaintiff, Pro se.

For John M. Smith, Clyde L. Sales, Michael D. Thompson, Plaintiffs: Juno Turner, LEAD ATTORNEY, PRO HAC VICE, Outten & Golden-NY, New York, NY.

Derek S. Speight, Plaintiff, Pro se.

Juanita Stokes, Plaintiff, Pro se.

Kathleen Story, Plaintiff, Pro se.

Paul Sumruld, Plaintiff, Pro se.

Steven J. Vadala, Plaintiff, Pro se.

Lamon G. Wade, Plaintiff, Pro se.

Robert E. Walsh, Plaintiff, Pro se.

Cleotha F. Whisenton, Jr., Plaintiff, Pro se.

Christopher  [*6] N. White, Jr., Plaintiff, Pro se.

Burrel B. Wiggins, Sr., Plaintiff, Pro se.

Charles M. Williams, Jr., Plaintiff, Pro se.

Kenneth W. Wright, Plaintiff, Pro se.

Wayne J. Young, Plaintiff, Pro se.

Allen F. Zayas, Plaintiff, Pro se.

David L. Blackwood, Plaintiff, Pro se.

Crystal K. Braxton, Plaintiff, Pro se.

2014 U.S. Dist. LEXIS 106924, *6

Jason S. Brooks, Plaintiff, Pro se.

Sharon E. Brooks, Plaintiff, Pro se.

Eddie E. Cantor, Plaintiff, Pro se.

Christopher Carey, Plaintiff, Pro se.

Michael S. Cavanaugh, Plaintiff, Pro se.

Rod Clark, Plaintiff, Pro se.

Nathaniel E. Claxton Wagner, Plaintiff, Pro se.

Emile Cooper, Plaintiff, Pro se.

Lucas C.J. Cowick, Plaintiff, Pro se.

Alex L. Davenport, Jr., Plaintiff, Pro se.

Danko Drasko, Plaintiff, Pro se.

Michael A. Edgette, Plaintiff, Pro se.

Michael S. Edwards, Plaintiff, Pro se.

Jason Ellis, Plaintiff, Pro se.

Jason Ellis, Plaintiff, Pro se.

Carl R. Engelhardt, Jr., Plaintiff, Pro se.

Chukwuka C. Ezeh, Plaintiff, Pro se.

Robert C. Flores, II, Plaintiff, Pro se.

Timothy S. Fogarty, Plaintiff, Pro se.

Craig E. Gaines, Plaintiff, Pro se.

Frederick T. Garrison, Plaintiff, Pro se.

David W. Gilmore, Plaintiff, Pro se.

Leo R. Gladu, Plaintiff, Pro se.

John L. Hart, Plaintiff, Pro se.

Youlunda D. Hatch, Plaintiff,  [*7] Pro se.

Corey H. Hawkins, Plaintiff, Pro se.

William G. Hilyer, Plaintiff, Pro se.

William Holmes, Jr., Plaintiff, Pro se.

Felisha Elizabeth Houston, Plaintiff, Pro se.

Robert W. Hullender, II, Plaintiff, Pro se.

Sondra M. Hunyady (Gorniak), Plaintiff, Pro se.

William H. Jewell, Jr., Plaintiff, Pro se.

Matthew M. Jones, Plaintiff, Pro se.

Shirley A. Kamenski, Plaintiff, Pro se.

Jeffrey A. Lawther, Plaintiff, Pro se.

Steve B. Lazarus, Plaintiff, Pro se.

Linda L. Little, Plaintiff, Pro se.

James Y. Littlejohn, Plaintiff, Pro se.

Reginald Locke, Plaintiff, Pro se.

Jorge Martinez, Plaintiff, Pro se.

Hector Medina, Jr., Plaintiff, Pro se.

Steven T. Meherg, Plaintiff, Pro se.

Norman W. Meidling, Jr., Plaintiff, Pro se.

Andrew C. Meyer, Plaintiff, Pro se.

Josiah Mhute, Plaintiff, Pro se.

Aaron Money, Plaintiff, Pro se.

Freddick L. Moore, Plaintiff, Pro se.

Ronald Murphy, Plaintiff, Pro se.

Douglas M. Nelson, Plaintiff, Pro se.

Ronald D. Nixon, Plaintiff, Pro se.

Mark R. O'Marra, Plaintiff, Pro se.

Donna Oakes, Plaintiff, Pro se.

2014 U.S. Dist. LEXIS 106924, *7

Marissa Ramos, Plaintiff, Pro se.

Robert L. Renick, II, Plaintiff, Pro se.

Vincent C. Robinson, Plaintiff, Pro se.

Latonya C. Roblejo, Plaintiff, Pro se.

Michael Ross, Plaintiff, Pro se.

Jonathan  [*8] S Rummel, Plaintiff, Pro se.

Kathryn H. Sager, Plaintiff, Pro se.

Awanda Salters, Plaintiff, Pro se.

Scott A. Swaw, Plaintiff, Pro se.

Marquia Taylor, Plaintiff, Pro se.

Jerome E. Tillman, Plaintiff, Pro se.

James E. Treadwell, Jr., Plaintiff, Pro se.

Scott M. Whitbeck, Plaintiff, Pro se.

Rondale Wilkins, Plaintiff, Pro se.

Ernest S. Willis, Jr., Plaintiff, Pro se.

Sheree C. Wilson, Plaintiff, Pro se.

Shenise N. Witherspoon, Plaintiff, Pro se.

Anthony J. Wright, Plaintiff, Pro se.

Wayne E. Wright, Plaintiff, Pro se.

Steven J. Bolen, Plaintiff, Pro se.

Deric Bolin, Plaintiff, Pro se.

Kenny W. Byrd, Plaintiff, Pro se.

Sabrina J. Casady, Plaintiff, Pro se.

Orin Coley, Jr., Plaintiff, Pro se.

Tito Guillermo Cruz, Plaintiff, Pro se.

Alexander Dratch, Plaintiff, Pro se.

Robert Durant, Plaintiff, Pro se.

Martin G. Evans, Plaintiff, Pro se.

Martin G. Evans, Plaintiff, Pro se.

Eric Todd Everhart, Plaintiff, Pro se.

Michael T. Farmer, Plaintiff, Pro se.

Marcellus Gordon, Plaintiff, Pro se.

William P. Harned, Plaintiff, Pro se.

Ruth A. Horsey, Plaintiff, Pro se.

Tawanna O. Jackson, Plaintiff, Pro se.

Demile A. James, Plaintiff, Pro se.

Robert L. Jones, Plaintiff, Pro se.

Linard J. King, Plaintiff, Pro se.

Benjamin M. Kolaczkowski,  [*9] Plaintiff, Pro se.

Howard Krieger, Plaintiff, Pro se.

Thomas Neil LaFlur, Jr., Plaintiff, Pro se.

Russell J. Levins, Plaintiff, Pro se.

Russell J. Levins, Plaintiff, Pro se.

Kenneth J. Lowery, Plaintiff, Pro se.

Stephen Manolakis, Plaintiff, Pro se.

Lekeisha M. Martin (Jones), Plaintiff, Pro se.

William E. Mavigliano, Plaintiff, Pro se.

Merrily S. McDowall, Plaintiff, Pro se.

Vernal L. McMinn, Plaintiff, Pro se.

Michael E. Morgan, Plaintiff, Pro se.

Jolyon Clark Murray, Plaintiff, Pro se.

Michael L. Myers, Plaintiff, Pro se.

Erick Diaz

2014 U.S. Dist. LEXIS 106924, *9

Thomas W. Newman, Plaintiff, Pro se.

Michael J. O'Hara, Plaintiff, Pro se.

Daniel E. O'Leary, Plaintiff, Pro se.

Daniel E. O'Leary, Plaintiff, Pro se.

Carlos A. Ortiz, Plaintiff, Pro se.

Rasool J. Phillips, Plaintiff, Pro se.

Trent A. Pike, Plaintiff, Pro se.

Denielle Poe, Plaintiff, Pro se.

Jeffry H. Roberts, Plaintiff, Pro se.

Angel A. Rodriguez, Plaintiff, Pro se.

Kevin A. Ruder, Plaintiff, Pro se.

James R. Shelton, Plaintiff, Pro se.

Newton Silverman, Plaintiff, Pro se.

Evan J. Summers, Plaintiff, Pro se.

Delmar Thomas, Plaintiff, Pro se.

Edward L. Tresch, Jr., Plaintiff, Pro se.

Tyrone Waters, Plaintiff, Pro se.

Frederick J. Weaver, II, Plaintiff, Pro se.

Lee A. White, Plaintiff, Pro se.

Tonia  [*10] S. Whitlow, Plaintiff, Pro se.

Larry Lee Williams, Jr., Plaintiff, Pro se.

Gwendolyn Windless, Plaintiff, Pro se.

Charles Andrew Wood, Plaintiff, Pro se.

Tyrona Billingsley, Plaintiff, Pro se.

Dwayne C. Davis, Plaintiff, Pro se.

Theresa M. Doyle, Plaintiff, Pro se.

Michael J. Drake, Plaintiff, Pro se.

David J. Edwards, Plaintiff, Pro se.

Shahram Faili, Plaintiff, Pro se.

Frederick T. Garrison, Plaintiff, Pro se.

Rosie M. Goode, Plaintiff, Pro se.

Walter M. Gordone, Plaintiff, Pro se.

Shannon R. Green, Plaintiff, Pro se.

Mary K. Haddad, Plaintiff, Pro se.

Osvaldo Hernandez, Plaintiff, Pro se.

Aaron T. Kaiser, Plaintiff, Pro se.

Richard X. Andrade, Plaintiff, Pro se.

Rebecca M. Arevalo, Plaintiff, Pro se.

Barbara L. Arrington, Plaintiff, Pro se.

Misty M. Barrientes, Plaintiff, Pro se.

Jacquline D. Bell, Plaintiff, Pro se.

Michael R. Lloyd, Plaintiff, Pro se.

James A. McKennie, Plaintiff, Pro se.

Charles E. Mccoy, Plaintiff, Pro se.

Royce G. Moseley Jr., Plaintiff, Pro se.

Donna Oakes, Plaintiff, Pro se.

Nelson Robertson, Plaintiff, Pro se.

Charles W. Roush III, Plaintiff, Pro se.

Andrew P. Silver, Plaintiff, Pro se.

Richard W. Smith, Plaintiff, Pro se.

David R. Smith Jr., Plaintiff, Pro se.

Michael N. Tran, Plaintiff,  [*11] Pro se.

Erick Diaz

Rachael R. Walters, Plaintiff, Pro se.

Harold D. Webb, Plaintiff, Pro se.

Brinton F. Williams, Plaintiff, Pro se.

James L. Yale, Plaintiff, Pro se.

Michael T. Yurchak, Plaintiff, Pro se.

Shannon T. Bromell, Plaintiff, Pro se.

Marc E. Charn, Plaintiff, Pro se.

Bobby Corona, Plaintiff, Pro se.

Diego Javier Fietz-Bogota, Plaintiff, Pro se.

Tommy Le, Plaintiff, Pro se.

Craig A. Rennix, Plaintiff, Pro se.

Rosemaria Rivera, Plaintiff, Pro se.

Silvio D. Rodriguez, Plaintiff, Pro se.

Jamila Sanda, Plaintiff, Pro se.

Frank L. Seymour, Plaintiff, Pro se.

Mark J. Soppi, Jr., Plaintiff, Pro se.

Joanne M. Tatro, Plaintiff, Pro se.

Mark D. Warren, Plaintiff, Pro se.

Jeffery Bender, Plaintiff, Pro se.

Alfred Bishop, III, Plaintiff, Pro se.

Rashard T. Butler, Plaintiff, Pro se.

Robert E. Chambers, Plaintiff, Pro se.

Glenn T. Cochrane, Plaintiff, Pro se.

Kelly M. Desmarais, Plaintiff, Pro se.

James E. Drosdick, Plaintiff, Pro se.

William Espinosa, Jr., Plaintiff, Pro se.

William R. Forbis, Plaintiff, Pro se.

Robert S. Herrod, Plaintiff, Pro se.

Jerry D. Hitt, Plaintiff, Pro se.

Brenda Lucero, Plaintiff, Pro se.

Angel A. Martinez-Navarro, Plaintiff, Pro se.

Steven L. Palmer, Plaintiff, Pro se.

Robert D. Poole, Plaintiff, Pro  [*12] se.

Miroslav Rajsky, Plaintiff, Pro se.

Michael E. Seckinger, Plaintiff, Pro se.

Ronald E. Six, Jr., Plaintiff, Pro se.

Jacquelyne Stasonis, Plaintiff, Pro se.

Peter R. Stofiel, Plaintiff, Pro se.

Aaron D. Thomas, Plaintiff, Pro se.

Clayton L. Thompson, Plaintiff, Pro se.

Christopher M. Wall, Plaintiff, Pro se.

Vanessa T. Williams, Plaintiff, Pro se.

David L. Bright, Plaintiff, Pro se.

Jason A. Cherney, Plaintiff, Pro se.

Michael K. Cooper, Plaintiff, Pro se.

Saumill J. Dalal, Plaintiff, Pro se.

Scott N. Davis, Plaintiff, Pro se.

Gene Gregory, Plaintiff, Pro se.

Roy D. Hemphill, Plaintiff, Pro se.

Marcellas R. Howard, Plaintiff, Pro se.

Erik J. Isenberg, Plaintiff, Pro se.

Jerry J. Jarvis, Plaintiff, Pro se.

2014 U.S. Dist. LEXIS 106924, *12

Diana Kipple-Holton, Plaintiff, Pro se.

Robert A. Mickewich, Plaintiff, Pro se.

Tarsha S. Morton, Plaintiff, Pro se.

Susan E. Parker, Plaintiff, Pro se.

Terry W. Richey, Plaintiff, Pro se.

Ronald Rivage, Plaintiff, Pro se.

Adebowale Saibu, Plaintiff, Pro se.

Thenkham S. Sengphanlaya, Plaintiff, Pro se.

Kevin J. Shea, Plaintiff, Pro se.

Timothy E. Tucker, Plaintiff, Pro se.

Alfonso C. Walker, Plaintiff, Pro se.

Jonathan W. Walker, Plaintiff, Pro se.

Darick B. Winfrey, Plaintiff, Pro se.

Penny F. Wright, Plaintiff,  [*13] Pro se.

Joel A. Beebe, Plaintiff, Pro se.

Kenneth Betlej, Plaintiff, Pro se.

Willie Bibbs, Plaintiff, Pro se.

Dez L. Blake, Plaintiff, Pro se.

Holly J. Bona, Plaintiff, Pro se.

Calixte A. Brouard, Jr., Plaintiff, Pro se.

Roderick A. Brown, Plaintiff, Pro se.

Domingo Casillas, Jr., Plaintiff, Pro se.

Todd L. Clifford, Plaintiff, Pro se.

Paul E. Colvell, Plaintiff, Pro se.

Jason K. Counts, Plaintiff, Pro se.

Aaron N. Dobbins, Plaintiff, Pro se.

Craig Dunbar, Plaintiff, Pro se.

Kevin Finch, Plaintiff, Pro se.

Steven L. Gardner, Plaintiff, Pro se.

Ashok Garg, Plaintiff, Pro se.

Kendra L. Golden, Plaintiff, Pro se.

Djuan C. Green, Plaintiff, Pro se.

Thomas D. Groves, Plaintiff, Pro se.

Christopher M. Haase, Plaintiff, Pro se.

Karl D. Harmon, Sr., Plaintiff, Pro se.

Dione Hernandez, Plaintiff, Pro se.

Willie C. Hill, Jr., Plaintiff, Pro se.

Sandra K. Kittles, Plaintiff, Pro se.

Carl M. Kizer, Plaintiff, Pro se.

Wende L. LaPierre, Plaintiff, Pro se.

Nicholas J. Madrigale, Plaintiff, Pro se.

Gregory A. Moore, Plaintiff, Pro se.

Lisa A. Nelson, Plaintiff, Pro se.

Timothy J. Novak, Plaintiff, Pro se.

Ralph B. O'Neal, Plaintiff, Pro se.

Thomas H. Ogiba, Plaintiff, Pro se.

Kenneth S. Pate, Plaintiff, Pro se.

James J. Ridenbaugh,  [*14] Plaintiff, Pro se.

Donald K. Rinehart, Plaintiff, Pro se.

Juan P. Rosales, Plaintiff, Pro se.

Darlene Ross, Plaintiff, Pro se.

Richard Shaver, Plaintiff, Pro se.

Windell Simeon, Plaintiff, Pro se.

Keri I. Stevens, Plaintiff, Pro se.

Kerry W. Sutton, Plaintiff, Pro se.

Marie A. Tate, Plaintiff, Pro se.

Shantelle Thomas, Plaintiff, Pro se.

Jason A. Tolman, Plaintiff, Pro se.

Kristopher K. Van Prevost, Plaintiff, Pro se.

Derrick A. White, Plaintiff, Pro se.

Susan E. Williams, Plaintiff, Pro se.

Leonard Galbicsek, Plaintiff, Pro se.

Willie H. James, Plaintiff, Pro se.

Ricardo Rodriguez, Plaintiff, Pro se.

Alphonso Walker, Plaintiff, Pro se.

Richard A. Bendig, Plaintiff, Pro se.

Erin A. Butler, Plaintiff, Pro se.

Veronica L. Foster, Plaintiff, Pro se.

Ricky Hoelting, Plaintiff, Pro se.

Maurice T. Jennings, Plaintiff, Pro se.

Kira B. Lamb, Plaintiff, Pro se.

Jefferson W. Lomick, Plaintiff, Pro se.

Jeffrey G. Mayfield, Plaintiff, Pro se.

David Melms, Plaintiff, Pro se.

Saturnino N. Miranda, Plaintiff, Pro se.

Jack Ortiz, Plaintiff, Pro se.

Rosa M. Pagan, Plaintiff, Pro se.

Lon Pham, Plaintiff, Pro se.

Frank C. Rakowski, Plaintiff, Pro se.

Michael W. Schlund, Plaintiff, Pro se.

Mitchell Simmons, Plaintiff, Pro se.

Rachel A.  [*15] Tennyson, Plaintiff, Pro se.

Anthony Brockington, Sr., Plaintiff, Pro se.

Christopher D. Collins, Plaintiff, Pro se.

Brian Hartshorn, Plaintiff, Pro se.

Douglas A. Vidmar, Plaintiff, Pro se.

Nicholas J. Wiltzius, Plaintiff, Pro se.

Brittany K. Bonner, Plaintiff, Pro se.

Glenn J. Bragg, Plaintiff, Pro se.

Pamela M. Brunson, Plaintiff, Pro se.

Matthew W. Day, Plaintiff, Pro se.

Laura E. Farr, Plaintiff, Pro se.

Ron F. Gadson, Plaintiff, Pro se.

Shanie L. Gardner, Plaintiff, Pro se.

Luis E. Hernandez, Plaintiff, Pro se.

Charles G. Highsmith, Plaintiff, Pro se.

Albert W. Keller, Jr., Plaintiff, Pro se.

Bennie B. Leverett, Plaintiff, Pro se.

Angela Manuel, Plaintiff, Pro se.

Antoine U. Myers, Plaintiff, Pro se.

Shane R. Neel, Plaintiff, Pro se.

Javier R. Padro, Plaintiff, Pro se.

Jeffrey K. Pate, Plaintiff, Pro se.

Fitzroy H. Pinnock, Plaintiff, Pro se.

Case 3:13-cv-01027-AWT   Document 236-3   Filed 05/10/16   Page 55 of 207

Page 10 of 25
2014 U.S. Dist. LEXIS 106924, *15

Luis A. Quinones, Plaintiff, Pro se.

Gregg S. Sime, Plaintiff, Pro se.

Dan P. Stefanopoulos, Plaintiff, Pro se.

Bruce D. Stiff, Plaintiff, Pro se.

Nigel S. Telfer, Plaintiff, Pro se.

Christopher D. Devine, Plaintiff, Pro se.

Bency P. Moise, Plaintiff, Pro se.

Farhan A. Nasir, Plaintiff, Pro se.

Thomas M. Novick, Plaintiff, Pro se.

Rene C. Perez, Plaintiff, Pro se.

Nathan  [*16] S. Towns, Plaintiff, Pro se.

George J. Gabor, Jr., Plaintiff, Pro se.

Carol J. Hardy, Plaintiff, Pro se.

Matthew J. Long, Plaintiff, Pro se.

Melissa S. Benvenuti, Plaintiff, Pro se.

Paul J. Bertoncini, Plaintiff, Pro se.

Terrence T. Boswell, Plaintiff, Pro se.

Jerry Brown, Jr., Plaintiff, Pro se.

John E. Coker, Plaintiff, Pro se.

Raymond A. Macinanti, Jr., Plaintiff, Pro se.

Daniel Marron, Plaintiff, Pro se.

Ana H. Rodriguez, Plaintiff, Pro se.

Dorothy Tangradi, Plaintiff, Pro se.

Danniel F. Unaji, Plaintiff, Pro se.

Scott M. White, Plaintiff, Pro se.

Donald R. Ciccone, Plaintiff, Pro se.

Robert Hreha, Jr., Plaintiff, Pro se.

Gary Hunter, Plaintiff, Pro se.

Willie J. Knight, Jr., Plaintiff, Pro se.

Colleen J. Milliron, Plaintiff, Pro se.

Phillip L. Songy, Plaintiff, Pro se.

Seandhi R. Vincent, Plaintiff, Pro se.

Christopher W. Brown, Plaintiff, Pro se.

Raymond Byrd, Plaintiff, Pro se.

Lawrence E. Elsensohn, Jr., Plaintiff, Pro se.

Scott A. Fee, Plaintiff, Pro se.

Brandon L. Flowers, Plaintiff, Pro se.

James W. Gardiner, Plaintiff, Pro se.

Rodney W. Grape, Plaintiff, Pro se.

Robert J. Healy, Jr., Plaintiff, Pro se.

Timothy Hyre, Plaintiff, Pro se.

Mary J. Laster, Plaintiff, Pro se.

Robert O. Molldene, Plaintiff, Pro  [*17] se.

Mark A. Petitfils, Plaintiff, Pro se.

Ricardo M. Rodriguez, Plaintiff, Pro se.

Robert L. Rosa, Plaintiff, Pro se.

Rebecca G. Roseland, Plaintiff, Pro se.

Joseph D. Saccoccio, Plaintiff, Pro se.

Diane G. Shaffer, Plaintiff, Pro se.

Robert Crawley, Jr., Plaintiff, Pro se.

Tara L. Jones, Plaintiff, Pro se.

Alan J. McCausland, Jr., Plaintiff, Pro se.

Felix A. Nieves, Plaintiff, Pro se.

Mary E. Robertson, Plaintiff, Pro se.

Steven W. Robertson, Plaintiff, Pro se.

Pedro Rodrigues, Jr., Plaintiff, Pro se.

Lenard L. Brooks, Plaintiff, Pro se.

Tina R. Bruno, Plaintiff, Pro se.

Detrice R. Dean, Plaintiff, Pro se.

Scott W. Kimple, Plaintiff, Pro se.

Jeffrey Place, Plaintiff, Pro se.

Kelli S. Seiler, Plaintiff, Pro se.

Gregory K. Smith, Plaintiff, Pro se.

Howard E. Trachtenberg, Plaintiff, Pro se.

Steven J. Brandner, Plaintiff, Pro se.

Scott A. Bunner, Plaintiff, Pro se.

James E. Daniels, Plaintiff, Pro se.

Carmen D. Irizarry, Plaintiff, Pro se.

Marcus W. Maples, Plaintiff, Pro se.

Tiffany Bernard, Plaintiff, Pro se.

Diana M. Crawford, Plaintiff, Pro se.

Mark E. Druschel, Plaintiff, Pro se.

Jeremy C. Harrell, Plaintiff, Pro se.

Kenneth R. Jenkins, Plaintiff, Pro se.

Malika S. Lewis-Dixon, Plaintiff, Pro se.

Shelly R. Mason,  [*18] Plaintiff, Pro se.

Adam M. Melvin, Plaintiff, Pro se.

Carlos A. Poscher, Plaintiff, Pro se.

Michael J. Ready, Plaintiff, Pro se.

Kenneth L. Reed, Jr., Plaintiff, Pro se.

Richard C. Roberts, Plaintiff, Pro se.

Ronald W. Ross, Plaintiff, Pro se.

Cynthia R. Skinner, Plaintiff, Pro se.

Michael B. Deatley, Plaintiff, Pro se.

Jerry R. Houston, Plaintiff, Pro se.

Teresa Walker, Plaintiff, Pro se.

Diana Washington, Plaintiff, Pro se.

Cornelius B. Yancy, Plaintiff, Pro se.

Christopher R. Booker, Plaintiff, Pro se.

James P. Hurley, Plaintiff, Pro se.

Carol A. Ray, Plaintiff, Pro se.

Craig E. Scott, Plaintiff, Pro se.

David P. Brann, Plaintiff, Pro se.

Thomas Bujakowski, Plaintiff, Pro se.

Juanita Cohran, Plaintiff, Pro se.

Christopher J. Deakin, Plaintiff, Pro se.

Joseph L. Fievet, Plaintiff, Pro se.

Lawrence W. Wallace, Plaintiff, Pro se.

James West, Plaintiff, Pro se.

Shauna Beard, Plaintiff, Pro se.

Bruce Kevin Bradley, Plaintiff, Pro se.

Shannon U. Clark, Plaintiff, Pro se.

Michelle Elizabeth Dandridge, Plaintiff, Pro se.

Joshua Bryan Thomas, Plaintiff, Pro se.

2014 U.S. Dist. LEXIS 106924, *18

Arese W. Bowen, Plaintiff, Pro se.

Quinnon T. Roberts, Plaintiff, Pro se.

Robin L. Aldea, Plaintiff, Pro se.

Michael W. Wynn, Plaintiff, Pro se.

Donald J. Arelt, Plaintiff, Pro se.

David M. Avans, Jr., Plaintiff, Pro se.

Roxane L. Carroll, Plaintiff, Pro se.

James E. Brock, III, Plaintiff, Pro se.

Sasha K. Cathey, [*19] Plaintiff, Pro se.

Andres G. Chen, Plaintiff, Pro se.

Jeffrey R. Cernava, Plaintiff, Pro se.

William Forrest, Plaintiff, Pro se.

Curtis M. Ekl, Plaintiff, Pro se.

Jason R. Griggs, Plaintiff, Pro se.

Michael Fraser, Plaintiff, Pro se.

Robert L. Heaton, Plaintiff, Pro se.

Keith Hall, Plaintiff, Pro se.

David M. Johns, Plaintiff, Pro se.

Craig R. Lornson, Plaintiff, Pro se.

Timothy Naim, Plaintiff, Pro se.

Kamal Marji, Plaintiff, Pro se.

Sheila Ray-Brown, Plaintiff, Pro se.

Alan E. Miller, Plaintiff, Pro se.

Ulysses J. Stanton, Plaintiff, Pro se.

Jordan R. Moore, Plaintiff, Pro se.

Miriam [*20] Concepcion, Plaintiff, Pro se.

Shannett L. Murphy, Plaintiff, Pro se.

Roberta J. Dwyer, Plaintiff, Pro se.

Henry B. Reed, Plaintiff, Pro se.

Clifton N. Heggins, Plaintiff, Pro se.

William Rodriguez, Plaintiff, Pro se.

Diane Hernandez, Plaintiff, Pro se.

Keisha M. Sanders, Plaintiff, Pro se.

Jason Holliman, Plaintiff, Pro se.

David P. Siracusa, Plaintiff, Pro se.

Herbert H. Horton, Plaintiff, Pro se.

Chandra Y. Thornton, Plaintiff, Pro se.

Grant Keller, Plaintiff, Pro se.

Stephen M. Wegling, Plaintiff, Pro se.

James J. Kost, Plaintiff, Pro se.

Renee M. Odom, Plaintiff, Pro se.

Richard B. Lee, Plaintiff, Pro se.

Lee A. Winston, Jr., Plaintiff, Pro se.

Thomas G. Little, III, Plaintiff, Pro se.

Tito J. Dale, Plaintiff, Pro se.

Luis Martinez, Plaintiff, Pro se.

Lynette L. Dozier, Plaintiff, Pro se.

Dorian Nelson, Plaintiff, Pro se.

Jose G. Gutierrez, Plaintiff, Pro se.

Marlinda J. Newmyer, Plaintiff, Pro se.

Phillip C. Nolan, Plaintiff, Pro se.

Brian R. Parrott, Plaintiff, Pro se.

2014 U.S. Dist. LEXIS 106924, *20

Demetrois Paschal, Plaintiff, Pro se.

Bobby D. Pope, Plaintiff, Pro se.

William J. Redfern, Plaintiff, Pro se.

Daniel W. Teddick, Jr., Plaintiff, Pro se.

David E. Tryon, Plaintiff, Pro se.

Roy L. Williams, Jr., Plaintiff, Pro se.

Leo W. Young, Plaintiff, Pro se.

Troy Malone, Plaintiff, Pro se.

Michael T. Stokes, Plaintiff, Pro se.

Kevin White, Plaintiff, Pro se.

Michael Brown, Plaintiff, Pro se.

Bruce S. Nicely, Jr., Plaintiff, Pro se.

Harry Shavers, Plaintiff, Pro se.

Joe N. Hill, Plaintiff, Pro se.

Rebecka Jackson, Plaintiff, Pro se.

Christopher J. Knarr, Plaintiff, Pro se.

Darrell G. May, Plaintiff, Pro se.

Andrew J. McDonnell, Plaintiff, Pro se.

Donald E. Willard, Plaintiff, Pro se.

Charles M. Ballard, Plaintiff, Pro  [*21] se.

Joshua E. Burrows, Plaintiff, Pro se.

Bruce V. Claridge, Plaintiff, Pro se.

James Coles, Plaintiff, Pro se.

Bernadine Gendron, Plaintiff, Pro se.

William C. Hagen, Plaintiff, Pro se.

Carlos Jones, Plaintiff, Pro se.

Michael Moore, Plaintiff, Pro se.

Uk'Lisha Scott, Plaintiff, Pro se.

Terry R. Stout, Plaintiff, Pro se.

Jasonlee F. Tucker, Plaintiff, Pro se.

Crystal L. Wilson, Plaintiff, Pro se.

Demetrius Wilson, Plaintiff, Pro se.

Brian J. Yon, Plaintiff, Pro se.

Jose I. Guerrero, Plaintiff, Pro se.

Rodney Helms, Plaintiff, Pro se.

Phyllisia B. Hills, Plaintiff, Pro se.

Michael Medrano, Plaintiff, Pro se.

Elise C. Weedmark, Plaintiff, Pro se.

Jerome Chambers, Plaintiff, Pro se.

Rico M. Harley, Plaintiff, Pro se.

Ruth I. Johnson, Plaintiff, Pro se.

James Kinthiseng, Plaintiff, Pro se.

Frantisek Sustr, Plaintiff, Pro se.

Alfred O. Barker, Plaintiff, Pro se.

Wallace J. Bell, Plaintiff, Pro se.

Shawn M. Bennett, Plaintiff, Pro se.

Steven R. Hatch, Plaintiff, Pro se.

Loretta A. Holmes, Plaintiff, Pro se.

Joyce A. Ricks, Plaintiff, Pro se.

Alisha L. Silvestre, Plaintiff, Pro se.

Duane C. Stehling, Plaintiff, Pro se.

Tanya M. Yee, Plaintiff, Pro se.

Erick Diaz

2014 U.S. Dist. LEXIS 106924, *21

Rocky F. Biggs, Sr., Plaintiff, Pro se.

Jonathan R. Earps, Plaintiff, Pro se.

Lorraine R. Brooker, Plaintiff, [*22] Pro se.

James M. Hampton, Plaintiff, Pro se.

La'Kita Q. Chisloman, Plaintiff, Pro se.

Raymond W. Savidge, Plaintiff, Pro se.

Royce L. Clark, Jr., Plaintiff, Pro se.

David M. Sugerik, Plaintiff, Pro se.

Cody L. Cutrer, Plaintiff, Pro se.

Vicki L. Berry, Plaintiff, Pro se.

Bradley R. Ehmen, Plaintiff, Pro se.

Angela D. Brumfield, Plaintiff, Pro se.

Robert M. Gendron, Jr., Plaintiff, Pro se.

Anthony Brunson, Plaintiff, Pro se.

Angela T. Hernandez, Plaintiff, Pro se.

Robert J. Butler, Plaintiff, Pro se.

Jeri L. Hollis, Plaintiff, Pro se.

Tera F. Bynes, Plaintiff, Pro se.

Dominique Jenkins, Plaintiff, Pro se.

Shelita [*23] N. Dyer, Plaintiff, Pro se.

Rocco Lagana, Plaintiff, Pro se.

Ross J. Gateretse, Plaintiff, Pro se.

Lucas Merkel, Plaintiff, Pro se.

Derek D. Johnson, Plaintiff, Pro se.

Richard E. Vinson, Plaintiff, Pro se.

Jeffrey D. Motley, Plaintiff, Pro se.

David C. Bastian, Plaintiff, Pro se.

William S. Powell, Plaintiff, Pro se.

Americo Foschini, Plaintiff, Pro se.

Eusebio Sanchez, Jr., Plaintiff, Pro se.

Virginia A. Kennedy, Plaintiff, Pro se.

Richard Singer, Plaintiff, Pro se.

Julia M. Magnan, Plaintiff, Pro se.

Debbie L. Van Meter, Plaintiff, Pro se.

Edward J. Maher, Jr., Plaintiff, Pro se.

Wilbur C. Wagner, Plaintiff, Pro se.

John P. Ryan, Plaintiff, Pro se.

Amos Wallace, Plaintiff, Pro se.

Rodney A. Bentley, Plaintiff, Pro se.

Jeirico Howard, Plaintiff, Pro se.

Shawn T. Ferguson, Plaintiff, Pro se.

Dean L. Purnell, Plaintiff, Pro se.

Shelby B. Forrest, Plaintiff, Pro se.

Ruben K. Singh, Plaintiff, Pro se.

Khalid Kabbadj, Plaintiff, Pro se.

Douglas M. Dunlop, Plaintiff, Pro se.

Carlos Ortiz, Plaintiff, Pro se.

Thomas C. Kloeppel, Plaintiff, Pro se.

Hector Salazar, Plaintiff, Pro se.

Ryan Reed, Plaintiff, Pro se.

Cornelius G. Davis, Plaintiff, Pro se.

Jeffrey S. Smith, Plaintiff, Pro se.

2014 U.S. Dist. LEXIS 106924, *23

Zachary D. Freeman, Plaintiff, Pro se.

Gary S. Hunter, Jr., Plaintiff, Pro se.

Myron L. Mitchell, Sr., Plaintiff, Pro se.

Anthony Plumley, Plaintiff, Pro se.

George M. Vorob, Plaintiff, Pro se.

Michelle Boardman, Plaintiff, Pro se.

Dennis L. Bolden, Plaintiff, Pro se.

Eric H. Campbell, Plaintiff, Pro se.

Peter G. Finney, Plaintiff, Pro se.

Natasha R. Fuller, Plaintiff, Pro se.

Elmar Garcia, Plaintiff, Pro se.

Richard L. Granger, Plaintiff, Pro se.

Roger A. Mayid, Plaintiff, Pro se.

Paula D. Middlebrooks, Plaintiff, Pro se.

Tommy A. Roberts, Plaintiff, Pro se.

Tina C. Smith, Plaintiff, Pro se.

David P. Kosman, Plaintiff,  [*24] Pro se.

Peggy S. Sperber, Plaintiff, Pro se.

Shameca R. Stevens, Plaintiff, Pro se.

Beverly J. Clark, Plaintiff, Pro se.

Mitchell A. Dennison, Plaintiff, Pro se.

David R. Kaszycki, Plaintiff, Pro se.

Maurice N. Clark, Plaintiff, Pro se.

Larrell M. Johnson, Plaintiff, Pro se.

Lynn A. Kus, Plaintiff, Pro se.

Donald E. Peters Jr., Plaintiff, Pro se.

Quentin F. Weston, Plaintiff, Pro se.

Kenneth K, Arthur, Plaintiff, Pro se.

Kenneth K. Arthur, Plaintiff, Pro se.

Edward R. Boyd, Plaintiff, Pro se.

Gregg M. Desorcy, Plaintiff, Pro se.

Rodney L. Hamilton, Plaintiff, Pro se.

Keith Harris, Plaintiff, Pro se.

Donald G. Shifflett, Plaintiff, Pro se.

Nathan Bernard, Plaintiff, Pro se.

Leilani G. Bradshaw, Plaintiff, Pro se.

Robert E. Brown, Plaintiff, Pro se.

Frank Cacciavillani, Plaintiff, Pro se.

Christine L. Cardinale, Plaintiff, Pro se.

Derrick J. Davault, Plaintiff, Pro se.

Thomas E. Hill, Jr., Plaintiff, Pro se.

Robert J. Impson, Plaintiff, Pro se.

Ferlicia Jenrette, Plaintiff, Pro se.

Jeanine C. Kiefer, Plaintiff, Pro se.

Peter Lawton, Plaintiff, Pro se.

Anthony M. LoSchiavo, Plaintiff, Pro se.

Frank M. Martin, Plaintiff, Pro se.

Daniel R. Partridge, Plaintiff, Pro se.

Stanley M. Redden, II, Plaintiff, Pro se.

Raymond  [*25] Rivera, Jr., Plaintiff, Pro se.

Richard Santos, Plaintiff, Pro se.

Robert L. Taylor, Plaintiff, Pro se.

2014 U.S. Dist. LEXIS 106924, *25

LJ Taylor, Jr., Plaintiff, Pro se.

Antwon E. Thomas, Plaintiff, Pro se.

Nicholas C. Verderese, Plaintiff, Pro se.

Timothy P. Weckbacher, Plaintiff, Pro se.

Akeen Bryan, Plaintiff, Pro se.

Vito M. Cappiello, Jr., Plaintiff, Pro se.

Mario Castro, Plaintiff, Pro se.

Victoria M. Chase, Plaintiff, Pro se.

Jacquelin M. Crafton, Plaintiff, Pro se.

Thomas W. Dillard, Plaintiff, Pro se.

David S. Duncan, Plaintiff, Pro se.

Jeffrey D. Greer, Plaintiff, Pro se.

George F. Jeffers, Plaintiff, Pro se.

Bruce L. Joseph, Plaintiff, Pro se.

Kristopher J. Klecka, Plaintiff, Pro se.

Abraham A. Mathew, Plaintiff, Pro se.

Paul A. McNair, Plaintiff, Pro se.

Kathy L. Pairier, Plaintiff, Pro se.

Barbara A. Powell, Plaintiff, Pro se.

Twan D. Pullen, Plaintiff, Pro se.

Mark Quan, Plaintiff, Pro se.

Jaime Sanchez, Plaintiff, Pro se.

George R. Schoonmaker, Plaintiff, Pro se.

Sidney A. Shannon, Plaintiff, Pro se.

Weston F. Sheneman, Plaintiff, Pro se.

David C. Shrader, Jr., Plaintiff, Pro se.

Elvira Silva, Plaintiff, Pro se.

John E. Walker, Plaintiff, Pro se.

William H. Watson, Plaintiff, Pro se.

James Blackburn, Plaintiff, Pro se.

Charles L.  [*26] Carroll, Jr., Plaintiff, Pro se.

Daniel J. Crotti, Plaintiff, Pro se.

Michael J. Del Negro, Plaintiff, Pro se.

Kendrick D. Evans, Plaintiff, Pro se.

Wudson Fenelon, Plaintiff, Pro se.

Marlon Hinton, Plaintiff, Pro se.

James H. Holloman, Plaintiff, Pro se.

Karen Loia, Plaintiff, Pro se.

Patrick E. McCree, Plaintiff, Pro se.

Lynel H. McKnight, Jr., Plaintiff, Pro se.

Dwight Miller, Plaintiff, Pro se.

Glenn R. Moore, Jr., Plaintiff, Pro se.

Paul A. Rothenberger, Plaintiff, Pro se.

Manny J. Sapien, Plaintiff, Pro se.

William J. Tilford, Jr., Plaintiff, Pro se.

David A. Tisdale, Plaintiff, Pro se.

Jacqueline Woody, Plaintiff, Pro se.

Daniel Baker, Plaintiff, Pro se.

Christina K. Borgnis, Plaintiff, Pro se.

Syndi K. Cobb, Plaintiff, Pro se.

George A. Collins, Plaintiff, Pro se.

Bryan Crosswant, Plaintiff, Pro se.

2014 U.S. Dist. LEXIS 106924, *26

Daleen Culver-Siegert, Plaintiff, Pro se.

Jennifer L. Suntala, Plaintiff, Pro se.

Juan J. DeJesus, Plaintiff, Pro se.

Richard E. Swegheimer, Jr., Plaintiff, Pro se.

Karl D. Edmondson, Plaintiff, Pro se.

Kevin W. Thomas, Plaintiff, Pro se.

Edward F. Ensly, Plaintiff, Pro se.

Gary Vanstrom, Plaintiff, Pro se.

Paula E. Ford, Plaintiff, Pro se.

David Villafuerte, Plaintiff, Pro se.

Adrian Garza, Plaintiff, Pro se.

Brian C. Wells, Plaintiff, Pro se.

Timothy S. Graham, II, Plaintiff, Pro se.

Sherman M. Williams, Plaintiff, Pro se.

Lawrence A. Hall, Plaintiff, Pro se.

Eric S. Wood, Plaintiff, Pro se.

Bryan L. Hoffman, Plaintiff, Pro se.

Randy E. Barber, Plaintiff, Pro se.

Brittney Howard, Plaintiff, Pro se.

Jeremy P. Bright, Plaintiff, Pro se.

Lamar J. Jones, Plaintiff, Pro se.

Michael R. Culver, Plaintiff, Pro se.

Nathan P.  [*27] Jones, Plaintiff, Pro se.

Coey L. Engelhardt, Plaintiff, Pro se.

Michael B. Keels, Plaintiff, Pro se.

Jason E. Thomas, Plaintiff, Pro se.

Zayne Larsen, Plaintiff, Pro se.

Gordon S. Williams, Plaintiff, Pro se.

Jon A. Leaphart, Jr., Plaintiff, Pro se.

Mark C. Woolard, Plaintiff, Pro se.

Philip A. Maiorano, Jr., Plaintiff, Pro se.

Robin L. Young, Plaintiff, Pro se.

Otis Melvin, Plaintiff, Pro se.

Gerard P. Collins, Plaintiff, Pro se.

Laura-Lee A. Michel, Plaintiff, Pro se.

Kelvis D. Jeffreys, Plaintiff, Pro se.

Barry E. Nedelman, Plaintiff, Pro se.

Dennis  [*28] Peaton, Jr., Plaintiff, Pro se.

Johari Powell, Plaintiff, Pro se.

Peter M. Zawiewski, Plaintiff, Pro se.

Robert H. Ridge, Plaintiff, Pro se.

Steven L. Waitt, Plaintiff, Pro se.

Stephen D. Rives, Plaintiff, Pro se.

James A. Ceasar, Plaintiff, Pro se.

Paul C. Schmidt, Plaintiff, Pro se.

Antoine Perry, Plaintiff, Pro se.

Terry L. Seymour, Sr., Plaintiff, Pro se.

Adam A. Malinowski, Plaintiff, Pro se.

David S. Shadler, Plaintiff, Pro se.

Rebecca Hubbard, Plaintiff, Pro se.

Roderick J. Stephens, Plaintiff, Pro se.

Laura C. King, Plaintiff, Pro se.

Larry B. Brinson, Sr., Plaintiff, Pro se.

David K. Cole, Plaintiff, Pro se.

Charles E. Fowler, Plaintiff, Pro se.

For David Pagano, Consol Plaintiff: Erick Ignacio Diaz-Vazquez, LEAD ATTORNEY, Hayber Law Firm LLC, Hartford, CT; Justin M. Swartz, LEAD ATTORNEY, PRO HAC VICE, Outten & Golden-NY, New York, NY; Peter D. Winebrake, LEAD ATTORNEY, PRO HAC VICE, Winebrake & Santillo, LLC, Dresher, PA.

For Moran Foods, Inc., doing business as, Save A Lot Ltd., Defendant: Benjamin M. Wattenmaker, John M. Wolfson, LEAD ATTORNEYS, Feiner Wolfson, Hartford, CT; Eric Ruden, Evangelos Michailidis, Eve I. Klein, LEAD ATTORNEYS, PRO HAC VICE, Duane Morris-NY(Broadway), New York, NY.

For Moran Foods, LLC, doing business as, Save A Lot Ltd., Defendant: Caroline Austin, LEAD ATTORNEY, Duane Morris LLP-Phil-PA, Philadelphia, PA; Eve I. Klein, LEAD ATTORNEY, Duane Morris-NY(Broadway), New York, NY.

**Judges:** Honorable William G. Young, United States [*29] Magistrate Judge.

**Opinion by:** William G. Young

# Opinion

## ORDER GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, AND APPROVAL OF ATTORNEYS'

## FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

Plaintiffs Robert G. Kiefer, Edward B. Roach, David Pagano, Markita P. Robinson, Jason Turner, Garland Osborn, Stephen Manolakis, Frank Rakowski, Dennis Sanoske, Eric Everhart, Timothy Porter, Brian Pereira, Donna Oakes, Gregg Sime, Frank Seymour, and Allen Zayas (together, "Plaintiffs") are individuals who worked as Assistant Store Managers ("ASMs") for Defendant Moran Foods, LLC, and Moran Foods, Inc., together d/b/a Save-a-Lot, Ltd. ("SAL" or "Defendant"). On February 4, 2013, Plaintiff Robert G. Kiefer commenced this action as a putative class action under *Federal Rule of Civil Procedure 23* and as a collective action under *29* U.S.C. § 216(b), claiming that SAL failed to pay ASMs one and a half times their regular rate for all hours worked over 40 hours per week, in violation of the wage and hour laws of Connecticut and the Fair Labor Standards Act ("FLSA"). ECF No. 1. Plaintiffs sought unpaid overtime wages, attorneys' [*30] fees and costs, interest, liquidated damages, and injunctive and declaratory relief.[1] *Id.*

The parties engaged in significant discovery and motion practice. The parties exchanged a substantial number of documents, Plaintiffs took several *Fed. R. Civ. P. 30(b)(6)* depositions, and Defendants deposed several Plaintiffs and opt-in Plaintiffs. Decl. of Justin M. Swartz in Supp. of Pls.' Mot. For Final Approval of the Settlement Classes, Final Approval of the Class Action Settlement, Approval of the FLSA Settlement, Approval of Att'ys' Fees and Reimbursement of Expenses and Mot. for Approval of Serv. Awards ("Swartz Decl.") ¶ 20. Plaintiffs moved to conditionally certify a collective action under the FLSA, which the Court granted on March 12, 2013. ECF No. 183. SAL moved for summary judgment, which the Court denied on May 2, 2013. ECF No. 225.

On August 19 and 20, 2013, the Parties participated in two all-day mediation sessions in New York, conducted by an

---

[1]  Previously, on March 9, 2011, Plaintiff Edward B. Roach filed a class action in the Superior Court of the State of Connecticut, asserting class claims on behalf of current and former Connecticut ASMs that Defendants' method of calculating the overtime premium pay owed to them violated the Connecticut Minimum Wage Act ("CMWA"). The action was then was transferred to the Complex Litigation Docket in the Judicial District of Hartford, No. HHD-CV-11-6023386S (X04) and captioned *Roach* v. Moran Foods Inc. ("*Roach*").

On March 25, 2013, David Pagano filed a class action lawsuit in the Philadelphia County Court of Common Pleas, No. 130303582, captioned *Pagano* v. Supervalu Inc. ("*Pagano*") (together with *Roach* and *Kiefer*, the "Litigation"), asserting class claims on behalf of current and former ASMs in the State of Pennsylvania, in which he claimed that Defendants' method of calculating the overtime premium pay owed to them violated the Pennsylvania Minimum Wage Act ("PMWA"). *See* Swartz Decl. ¶ 13.

On March 11, 2014, this Court granted Plaintiffs' motion to consolidate *Pagano* with this action, to amend the [*31] complaint, and for preliminary approval of the global settlement. *See* ECF No. 311. Plaintiffs filed their Second Amended Complaint, consolidating the claims pled in *Kiefer, Roach,* and *Pagano,* on July 18, 2014. ECF No. 316.

2014 U.S. Dist. LEXIS 106924, *30

experienced class action mediator, Hunter Hughes of Rogers & Hardin LLP. *See* Swartz Decl. ¶ 24. At the mediation, [*32] the parties came to an agreement in principle, and signed a term sheet memorializing their agreements, which included the settlement amount. Over the next several months, the parties continued to negotiate additional terms of the settlement, and finalized the Settlement Agreement on November 26, 2013. *See* Swartz Decl. ¶ 26.

On March 11, 2014, this Court entered an Order preliminarily approving the settlement on behalf of the class set forth therein (the ″Class″ or the ″Class Members″), conditionally certifying the settlement class, appointing Outten & Golden LLP, The Hayber Law Firm, LLP, and Winebrake & Santillo, LLP as Class Counsel, and authorizing notice to all Class Members. ECF No. 311.

On April 18, 2014, a claims administrator sent Court-approved notices to all Class Members informing them of their rights under the settlement, including the right to opt out or object to the settlement for Class Members in the 11 states where *Rule 23* claims were brought, and of Class Counsel's intention to seek up to one-third of the settlement fund for attorneys' fees, and their out-of-pocket expenses. Swartz Decl., Ex. B (Decl. of M. Patton) ¶ 4, Ex. C. No Class Member has objected to or opted [*33] out of the settlement. *Id.* ¶¶ 8-10.

On July 21, 2014, Plaintiffs filed a Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement (″Motion for Final Approval″). That same day, Plaintiffs also filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses (″Motion for Attorneys' Fees″) and for Service Awards (″Motion for Service Awards″). Defendant took no position with respect to any of these motions and did not object to the requests for attorneys' fees, costs, or service payments.

The Court held a fairness hearing on July 30, 2014. No Class Member appeared or objected to the settlement at the fairness hearing.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees and Reimbursement of Expenses, the Motion for Service Awards, and the supporting declarations, the oral argument presented at the July 30, 2014 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the July 30, 2014 fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED: CERTIFICATION OF THE SETTLEMENT [*34] CLASS**

1. The Court certifies the following classes under *Federal Rule of Civil Procedure 23(e)* (″Settlement Classes″): all current and former employees of Defendants who have worked as ASMs from June 17, 2010 through June 30, 2012, in Illinois, Maryland, Massachusetts, and Rhode Island; from June 17, 2007 through June 30, 2012 in New York; from August 20, 2010 through June 30, 2012 in Missouri, New Jersey, Ohio, and North Carolina; from March 9, 2009, through June 30, 2012 in Connecticut, and from March 25, 2010, through June 30, 2012, in Pennsylvania.

2. Plaintiffs meet all of the requirements for class certification under *Federal Rule of Civil Procedure 23(a)* and *(b)(3)*.

3. Plaintiffs satisfy *Federal Rule of Civil Procedure 23(a)(1)* because there are approximately 40 or more Class Members in each of the *Rule 23* Classes and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)* (″[N]umerosity is presumed at a level of 40 members. . . .″).

4. Plaintiffs satisfy *Federal Rule of Civil Procedure 23(a)(2)* because they share common issues of fact and law with other class members, including whether Defendants' method of calculating the overtime [*35] premium pay owed to them violated federal and state wage and hour laws, and whether Defendants failed to keep accurate records of the hours ASMs worked. *See Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012)* (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay); *Alli v. Boston Market Corp., No. 10 Civ. 0004, 2011 U.S. Dist. LEXIS 143303, 2011 WL 6156938, at *2 (D. Conn. Dec. 9, 2011)* (common questions included whether ″class members were properly classified as exempt from overtime requirements″); *Clark v. Ecolab Inc., Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010)* (common issues that help to satisfy *Rule 23* commonality requirement include ″whether [Defendant] failed to pay Plaintiffs and the state settlement Class Members overtime premium pay for all hours they worked over 40 in a workweek; and . . . whether [Defendant] maintained accurate time records of the hours Plaintiffs and the state settlement Class Members worked″).

5. Plaintiffs satisfy *Federal Rule of Civil Procedure 23(a)(3)* because their claims for overtime pay arise from the same [*36] factual and legal circumstances that form the bases of the Class Members' claims. *See Hernandez v. Merrill Lynch & Co., No. 11 Civ. 8472, 2012 U.S. Dist. LEXIS 165771, 2012 WL 5862749, at *3 (S.D.N.Y. Nov. 15, 2012)* (typically

satisfied where "[p]laintiffs' claims for overtime pay [arose] from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris, 859 F. Supp. 2d at 616* (same); *Alli, 2011 U.S. Dist. LEXIS 143303, 2011 WL 6156938, at *2* (typicality satisfied where "each State Law Class representative raises the same claims as the class members of the particular State Law Class that he or she seeks to represent").

6. Plaintiffs satisfy *Federal Rule of Civil Procedure 23(a)(4)* because there is no evidence that the named Plaintiffs' and Class Members' interests are at odds. *See Morris, 859 F. Supp. 2d at 616* (no evidence that named plaintiffs' and class members' interests were at odds); *Alli, 2011 U.S. Dist. LEXIS 143303, 2011 WL 6156938, at *2* (no evidence of any named plaintiff interests antagonistic to those of class members).

7. In addition, Plaintiffs' Counsel, Outten & Golden LLP ("O&G"), The Hayber Law Firm, LLC ("HLF"), and Winebrake & Santillo, LLC ("W&S") are all experienced employment law practitioners and **[*37]** meet *Rule 23(a)(4)*'s adequacy requirement. *Aros v. United Rentals, Inc., No. 10 Civ. 73, et al., 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *6 (D. Conn. July 26, 2012)* (finding O&G and HLF to be "experienced employment lawyers with good reputations among the employment law bar"); *Young v. Tri County Sec. Agency, Inc., No. 13 Civ. 5971, 2014 U.S. Dist. LEXIS 62931, 2014 WL 1806881, at *4 (E.D. Pa. May 7, 2014)* (noting that W&S "has particular experience with wage and overtime rights litigation" and that attorneys Peter Winebrake and Andrew Santillo "have significant experience and have enjoyed great success in the field").

8. Plaintiffs also satisfy *Rule 23(b)(3)*. Common factual allegations and a common legal theory predominate over any factual or legal variations among class members. *See Hernandez, 2012 U.S. Dist. LEXIS 165771, 2012 WL 5862749, at *4* (common factual allegations and legal theory predominated over variations in wage and hour misclassification case); *Alli, 2011 U.S. Dist. LEXIS 143303, 2011 WL 6156938, at *2* (same); *Torres v. Grist-ede's Operating Corp., No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006)* (plaintiff "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual **[*38]** calculations of overtime wages"). Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See*

*Morris, 859 F. Supp. 2d at 617*; *Alli, 2011 U.S. Dist. LEXIS 143303, 2011 WL 6156938, at *2*.

9. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Beckman, 293 F.R.*D. *at 473*; *Morris, 859 F. Supp. 2d at 617*. Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction.

## APPROVAL OF THE SETTLEMENT AGREEMENT

10. The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement.

11. *Rule 23(e)* requires court approval for a class action settlement to insure that it is procedurally and substantively "fair, reasonable and adequate." *Fed. R. Civ. P. 23(e)*. To determine procedural fairness, courts examine the "negotiating process leading **[*39]** to the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005)*; *D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)*. To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974)*, *abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000)*.

12. Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores, 396 F.3d at 116* (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc., No. 02 Civ. 8238, 2005 U.S. Dist. LEXIS 10848, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005)* ("[P]ublic policy favors settlement, especially in the case of class actions.").

13. A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, 396 F.3d at 116* (internal quotation marks and citation omitted); *see also D'Amato, 236 F.3d at 85*. "Absent fraud or collusion, **[*40]** [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig., No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)*.

2014 U.S. Dist. LEXIS 106924, *40

*Procedural Fairness*

14. The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Alli,* 2012 U.S. Dist. LEXIS 54695, 2012 WL 1356478, at *2 (finding settlement to be "fair, reasonable, and adequate in all respects" and "the result of arms-length negotiations between experienced counsel representing the interests of the Plaintiffs and Defendant, after thorough factual and legal investigation"); *see also Toure* v. Amerigroup Corp., *No. 10 Civ. 5391,* 2012 U.S. Dist. LEXIS 110300, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation . . . [and] enlisted the services of an experienced employment [law] mediator"); *Diaz* v. Eastern Locating Serv., Inc., *No. 10. Civ. 4082, 2010* U.S. Dist. LEXIS 139136, 2010 WL 5507912, at *4 (S.D.N.Y. Nov. 29, 2010).

15. Class Counsel conducted **[*41]** thorough investigations and evaluated the claims and defenses, engaged in substantial discovery and motion practice, and reached a settlement after a two-day-long mediation between the Parties. Swartz Decl. ¶¶ 15-17, 24-26.

16. On August 19 and 20, 2013, the Parties participated in two all-day mediation sessions in New York, conducted by an experienced class action mediator, Hunter Hughes of Rogers & Hardin LLP. At the mediation, the parties came to an agreement in principle, and over the next several months, the parties negotiated the remaining terms of the Settlement Agreement. Swartz Decl. ¶ 26. These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, "rais[ing] a presumption that the settlement they achieved meets the requirements of due process." *See Wal-Mart Stores, 396 F.3d at 116*; *McMahon* v. Olivier Cheng Catering & Events, LLC, *No. 08 Civ. 8713, 2010* U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *4 (S.D.N.Y. Mar. 3, 2010).

*Substantive Fairness*

17. The settlement is substantively fair. All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

18. **[*42]** The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount

of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *495 F.2d at 463*.

19. Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

20. The class's reaction to the settlement was positive. The Notices sent to Class Members included an explanation of the allocation formula and an estimate of each Class Member's award. The Rule 23 Notice also informed Rule 23 Class Members of their right to object to or exclude themselves from the Settlement and explained how to do so. No Class Member objected to or opted out of the Settlement. This favorable **[*43]** response demonstrates that the class approves of the settlement, which further supports final approval. *See In re Sturm, Ruger, & Co., Sec. Litig., No. 03 Civ. 1293,* 2012 U.S. Dist. LEXIS 116930, 2012 WL 3589610, at *5 (D. Conn. Aug. 20, 2012) ("[T]he absence of objectants may itself be taken as evidencing the fairness of a settlement.") (quoting *Ross* v. A.H. Robins, 700 F. Supp. 682, 684 (S.D.N.Y. 1988)).

21. The Parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004)*. The Parties completed extensive discovery. The Parties exchanged substantial quantities of documents, Defendant deposed the Named Plaintiffs, and Plaintiffs deposed Defendant's 30(b)(6) corporate representatives. Swartz Decl. ¶ 20. The third Grinnell factor weighs in favor of final approval.

22. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997)*. Indeed, "[i]f settlement has any purpose at all, it is to **[*44]** avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co., 304 F. Supp. 917, 934 (S.D.N.Y. 1969)*; *see also Velez* v. Majik Cleaning Serv., Inc., *No. 03 Civ. 8698, 2007* U.S. Dist. LEXIS 46223, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, Plaintiffs faced numerous risks as to both liability and damages, including overcoming Defendants' defense that they appropriately paid ASMs

overtime pursuant to the fluctuating workweek method set forth in *29 C.F.R. 778.114(a)*, and the corresponding provisions under applicable state laws, and proving willfulness in order to obtain a third year of liability and damages. The proposed settlement eliminates this uncertainty. The fourth and fifth factors therefore weigh in favor of final approval.

23. The risk of obtaining class certification and maintaining the class and the certified collective through trial is also present. A contested class certification motion would likely require extensive discovery and briefing. Defendant would also likely seek decertification of the collective after the close of discovery. If the Court were to grant class certification, Defendant might seek to file an appeal under *Federal Rule of Civil Procedure 23(f)*, **[\*45]** the resolution of which would require an additional round of briefing. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The sixth *Grinnell* factor weighs in favor of final approval.

24. Even if Save-a-Lot could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank, 228 F.R.D. at 186* (quoting *In re Austrian, 80 F. Supp. 2d at 178 n.9*). Other companies in Defendants' industry, the grocery store industry, have filed for bankruptcy, *see In re Great Atl. & Pac. Tea Co., 472 B.R. 666, 668-69 (S.D.N.Y. 2012)*, or threatened bankruptcy, *see Torres v. Gristede's Operating Corp., No. 04 Civ. 3316, 2011 U.S. Dist. LEXIS 114209, 2011 WL 4571792, at \*1 (S.D.N.Y. Sept. 9, 2011)*, in recent years. Therefore, the seventh *Grinnell* factor is neutral and does not preclude the Court from granting final approval.

25. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank, 228 F.R.D. at 186* (quoting *In re Austrian, 80 F. Supp. 2d at 178*). "Instead, 'there is **[\*46]** a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972))*. The eighth and ninth *Grinnell* factors weigh in favor of final approval.

**APPROVAL OF THE FLSA SETTLEMENT**

26. The Court hereby approves the FLSA settlement.

27. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as *Rule 23* actions. *McKenna v. Champion Intern. Corp., 747 F.2d 1211, 1213 (8th Cir. 1984)*, abrogated on other grounds by *Hoffmann-LaRoche Inc. v. Sperling, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*; *see also McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at \*6*. Accordingly, the high standard for approval of a class action under *Rule 23* does not apply to an FLSA settlement.

28. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)*; **[\*47]** *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at \*6*. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores, 679 F.2d at 1353-54*. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id. at 1354*; *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at \*6*.

29. In this case, the settlement was the result of a formal mediation involving vigorous arm's-length settlement negotiations. Swartz Decl. ¶ 26. During the entire process, Plaintiffs and Defendant were represented by counsel experienced in wage and hour law. Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding that is fair and reasonable.

**DISSEMINATION OF NOTICE**

30. Pursuant to the Preliminary Approval Order, the *Rule 23*, Group A, and Group D Notices (together, the "Notices") were sent by first-class mail and email to each respective Class Member at his or her last known address and email address, where available (with re-mailing of returned Notices for which new addresses could be located). The Court finds that the Notices fairly and adequately advised **[\*48]** Class Members of the terms of the settlement, as well as the right of *Rule 23* Class Members to opt out of or to object to the settlement, and to appear at the fairness hearing conducted on July 30, 2014. Class Members were provided with the best notice practicable under the circumstances.

31. The Court further finds that the Notices and their distribution comported with all constitutional requirements, including those of due process.

32. The Court confirms SSI, Inc. as the claims administrator.

Erick Diaz

2014 U.S. Dist. LEXIS 106924, *48

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND AWARD OF SERVICE AWARDS TO PLAINTIFFS

33. On March 11, 2014, the Court appointed Outten & Golden LLP, The Hayber Law Firm, and Winebrake & Santillio, LLP as Class Counsel because they met all of the requirements of *Federal Rule of Civil Procedure 23(g)*. *See Damassia* v. Duane Reade, Inc., 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (*Rule 23(g)* requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources **[*49]** counsel will commit to representing the class.") (internal quotation marks omitted).

34. The Court finds that Outten & Golden LLP, The Hayber Law Firm LLP, and Winebrake & Santillio, LLP, are experienced class action employment lawyers with good reputations among the employment law bar. *See* Aros, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *6; *Young* v. Tri Cnty. Sec. Agency, Inc., No. 13 Civ. 5971, 2014 U.S. Dist. LEXIS 62931, 2014 WL 1806881, at *4 (E.D. Pa. May 7, 2014).

35. The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests. Class Counsel have committed substantial resources to prosecuting this case.

36. The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $1,500,000.00, which is one-third of the settlement fund.

37. The trend in this Circuit is to use the percentage of the fund method in common fund cases like this one, *Wal-Mart Stores, 396 F.3d at 121*; *Yuzary* v. HSBC Bank USA, N.A., No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 144327, 2013 WL 5492998, at *9 (S.D.N.Y. Oct. 2, 2013); *Diaz, 2010 U.S. Dist. LEXIS 139136, 2010 WL 5507912, at *7*.

38. Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery **[*50]** method, *McDaniel* v. County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010), in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *Beckman, 293 F.R.D. 477*; *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7*. Fee awards in wage and hour cases are

meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." Aros, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *5 (internal quotation and citation omitted). The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7*; *Sand* v. Greenberg, No. 08 Civ. 7840, 2010 U.S. Dist. LEXIS 1120 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010).

39. Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Beckman, 293 F.R.D. at 477*; *see also* Aros, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *4. "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the **[*51]** risk." *Beckman, 293 F.R.D. at 477*; *see* *Sand, 2010 U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3* ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

41. Class Counsel's request for one-third of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." Aros, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *6.

42. In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants. *See Boeing Co.* v. Van Gemert, et al., 444 U.S. 472, 480-81, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980); *Masters* v. Wilhelmina Model Agency, Inc., 473 F.3d 423 (2d Cir. 2007); *Waters* v. International Precious Metals Corp., 190 F.3d 1291, 1296-97 (11th Cir. 1999); *Williams* v. MGM-Pathe Communs. Co., 129 F.3d 1026 (9th Cir. 1997) (reversing district court award of 33 percent of the claimed fund and awarding attorneys' fees of 33 percent of the available fund); *see also* Aros, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *5.

43. In *Masters*, the Second Circuit **[*52]** recognized that "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available

2014 U.S. Dist. LEXIS 106924, *52

whether claimed or not." *Id. at 437*; *Aros, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *5*; *see also, e.g., Dahingo* v. *Royal Caribbean Cruises, Ltd., 312 F. Supp. 2d 440 (S.D.N.Y. 2004)* (noting that attorneys' fees equivalent to one-third of common fund had been approved notwithstanding the fact that a significant portion of fund was unclaimed and reverted to defendants).

44. Although *Arbor Hill Concerned Citizens Neighborhood Association* v. *County of Albany* does not address a common fund fee petition, it supports Class Counsel's request for one-third of the fund because "'reasonable, paying client[s]' . . . typically pay one-third of their recoveries under private retainer agreements." *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *8* (internal citation and quotations omitted).

45. In addition, in Plaintiffs' retainer agreements with Class Counsel, Plaintiffs agreed that Class Counsel could apply to the Court for one-third of a class-wide recovery and that they would pay **[*53]** Class Counsel one-third of any individual recovery. Swartz Decl. ¶ 51 & Ex. F. This also provides support for Class Counsel's request for one-third of the fund.

46. No Class Member objected to Class Counsel's request for one-third of the fund, which also provides support for Class Counsel's fee request.

47. All of the factors in *Goldberger* v. *Integrated Resources, Inc., 209 F.3d 43, 48-49 (2d Cir. 2000)* weigh in favor of the requested fee award.

48. Applying the lodestar method as a "cross check," *see id. at 50*, the Court finds that the fee that Class Counsel seeks is reasonable. It is typical for Courts in the Second Circuit to approve fee awards where the lodestar multiplier is eight or more. *See Beckman, 293 F.R.D. 481* (citations omitted). Here, the requested fee is much less than eight times Class Counsel's actual lodestar amount.

49. Class Counsel's requested fee is also reasonable because Class Counsel will continue to perform work on this matter after final approval is granted. *Parker* v. *Jekyll & Hyde Entm't Holdings, LLC, No. 08 Civ. 7670, 2010 U.S. Dist. LEXIS 12762, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010)* ("[A]s class counsel is likely to expend significant effort in the future implementing the complex **[*54]** procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time"). Where "class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Beckman, 293 F.R.D. at 482* (internal quotation marks and citations omitted). In wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including, answering class member questions, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with Defendants about administering the settlement and distributing the fund. *See* Swartz Decl. ¶ 50. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request. *See Aros, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *7*.

50. In addition, this settlement consolidates and resolves multiple **[*55]** actions, which is encouraged in order to promote judicial economy, and weighs in favor of approving Class Counsel's requested fee.

51. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $67,150.62. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See Aros, 2012 U.S. Dist. LEXIS 104429, 2012 WL 3060470, at *7*. Here, Class Counsel's unreimbursed expenses, including court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's fees, are reasonable and were incidental and necessary to the representation of the class.

52. The attorneys' fees and the amount in reimbursement of litigation costs and expenses shall be paid from the settlement fund.

53. The Court finds reasonable service awards for Named Plaintiff Edward B. Roach in the amount of $30,000; for Named Plaintiffs Robert G. Kiefer and David Pagano in the amount of $10,000 each; and for Named Plaintiffs Markita P. Robinson, Jason Turner, Garland Osborn, Stephen Manolakis, Frank Rakowski, Dennis Sanoske, Eric Everhart, Timothy Porter, Brian Pereira, Donna Oakes, Gregg Sime, Frank **[*56]** Seymour, and Allen Zayas in the amount of $2,000 each. These amounts shall be paid from the settlement fund.

54. Service awards are common in class action cases and "are important to compensate plaintiffs for the time and

2014 U.S. Dist. LEXIS 106924, *56

effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *O'Connor* v. AR Res., Inc., No. 08 Civ. 1703, 2012 U.S. Dist. LEXIS 861, 2012 WL 12743, at *9 (D. Conn. Jan. 4, 2012) (quoting *Castagna* v. Madison Square Garden, L.P., No. 09 Civ. 10211, 2011 U.S. Dist. LEXIS 64218, 2011 WL 2208614, at *8 (S.D.N.Y. June 7, 2011)). "Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Yuzary, 2013 U.S. Dist. LEXIS 144327, 2013 WL 5492998, at *12* (citing *Massiah* v. MetroPlus Health Plan, Inc., No. 11 Civ. 5669, 2012 U.S. Dist. LEXIS 166383, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012)).

55. The "Effective Date" of the settlement shall be 31 days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved in favor of final approval. This Order shall constitute a judgment for purposes **[*57]** of *Rule 58 of the Federal Rules of Civil Procedure*.

56. Within 10 days after the Effective Date, the claims administrator shall distribute the funds in the settlement account by making the following payments in the order below:

a. Paying Class Counsel one-third of the fund ($1,500,000);

b. Reimbursing Class Counsel for $67,150.62 in litigation costs and expenses;

c. Paying service awards to Named Plaintiff Edward B. Roach in the amount of $30,000; for Named Plaintiffs

Robert G. Kiefer and David Pagano in the amount of $10,000 each; and for Named Plaintiffs Markita P. Robinson, Jason Turner, Garland Osborn, Stephen Manolakis, Frank Rakowski, Dennis Sanoske, Eric Everhart, Timothy Porter, Brian Pereira, Donna Oakes, Gregg Sime, Frank Seymour, and Allen Zayas in the amount of $2,000 each; and

d. Paying the remainder of the fund to Class Members in accordance with the allocation plan described in the Settlement Agreement.

57. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

58. **[*58]** Upon the Effective Date, this litigation shall be dismissed with prejudice, and all *Rule 23* Class Members who have not excluded themselves from the settlement and all FLSA Class Members who have opted in to the lawsuit shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the settlement.

It is so ORDERED this 31st day of July, 2014.

/s/ William G. Young

Honorable William G. Young

United States Magistrate Judge

Ⓐ Neutral

As of: May 2, 2016 3:52 PM EDT

## *Maced. Church v. Lancaster Hotel, LP*

United States District Court for the District of Connecticut

June 9, 2011, Decided; June 9, 2011, Filed

Case No. 05-0153 (TLM)

**Reporter**

2011 U.S. Dist. LEXIS 62063; 2011 WL 2360138

Macedonia Church, et al., Plaintiffs, v. Lancaster Hotel, LP, Masspa Realty Corp., and Fine Hotels Corp., Defendants,

**Prior History:** *Macedonia* Church v. Lancaster Hotel, L.P., 270 F.R.D. 107, 2010 U.S. Dist. LEXIS 103496 (D. Conn., 2010)

## Core Terms

Settlement, class member, Church, Parties, Notice, settlement agreement, class action, rooms, attorneys', hotel, reservations, proposed settlement, final approval, telephone, preliminary approval, settlement fund, negotiated, costs, accommodations, Plaintiffs', assigned, risks, conclusions of law, arms, final judgment, individuals, discovery, trip, terms of the settlement, final settlement

**Counsel:** [*1] For Macedonia Church, Ind and o/b/o a Class of Plaintiffs Similarly Situated, Dewitt Stevens, Jr., Reverend, Ind and o/b/o a Class of Plaintiffs Similarly Situated, Merle Rumble, Ind and o/b/o a Class of Plaintiffs Similarly Situated, Albert Ray Dancy, Reverend, Ind and o/b/o a Class of Plaintiffs Similarly Situated, Cynthia Welfare, Ind and o/b/o a Class of Plaintiffs Similarly Situated, Sandra Hart, Ind and o/b/o a Class of Plaintiffs Similarly Situated, Plaintiffs: David M. Cohen, Eric M. Higgins, Mary-Kate Smith-, LEAD ATTORNEYS, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, CT.

For Lancaster Hotel LP, Masspa Realty Corp, Fine Hotels Corp, Defendants: Gerald L. Maatman, Jr., LEAD ATTORNEY, Seyfarth Shaw LLP - S Dearborn Chicago, Chicago, IL; Katherine E. Perrelli, LEAD ATTORNEY, Seyfarth Shaw - Boston MA, Boston, MA; Michael A. Cox, LEAD ATTORNEY, Seyfarth, Shaw - IL, Chicago, IL.

**Judges:** Tucker L. Melançon, United States District Judge.

**Opinion by:** Tucker L. Melançon

## Opinion

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

On February 14, 2011, the Court entered an Order preliminarily approving the parties' settlement agreement and directing notice of the preliminarily approved settlement to all Class Members [Rec. Doc. [*2] 262]. That Order that granted preliminary approval of the proposed Settlement Agreement in this class action specified the manner in which the Plaintiffs and their counsel were to provide notice to persons who are members of the class that was certified on September 30, 2010 (the "Class" or "Class Members") [Rec. Doc. 226].

Following the dissemination of the notice to the Class that was approved in the preliminary approval Order, Class Members were given an opportunity to (a) request exclusion from the Settlement, or (b) object to the Settlement Agreement, including a request for attorneys' fees and expenses for counsel for the Plaintiffs and the Plaintiff Class ("Class Counsel") and for service payments to certain designated Named Plaintiffs.

After briefing by the attorneys for the parties as ordered by the Court [Rec. Doc. 265], a Fairness Hearing was conducted on June 9, 2011, at which time all interested persons were given a full opportunity to state any objections to the Settlement Agreement. There were no objections to the settlement by any class member. The Fairness Hearing was held more than ninety (90) days after Defendants provided notice of the proposed Settlement to federal [*3] and state-level attorneys general as required by 28 U.S.C. § 1715(b), thus complying with 28 U.S.C. § 1715(d).

The Court has considered the submissions and arguments of Class Counsel and counsel for Defendants Lancaster Hotel Limited Partnership, MASSPA Realty Corporation, and Fine Hotels Corp. (the "Defendants' Counsel") regarding the fairness, reasonableness, and adequacy of the proposed Settlement, which is intended to effect a full and final

settlement of the certified class claims, including all individual claims subsumed therein that were asserted or could now or hereafter be asserted by Plaintiffs on behalf of themselves and the Class Members with respect to the July 9-10, 2004 trip to Lancaster, Pennsylvania sponsored by Macedonia Church.

The Court makes the following findings of fact. In some instances a finding of fact may also be a mixed conclusion of law and in other instances a conclusion of law may include findings of fact.

## I.FINDINGS OF FACT

1. Macedonia Church is an independent Pentecostal congregation located in South Norwalk, Connecticut. In 2004, Plaintiff Rev. DeWitt Stevens, Jr. served as pastor and spiritual leader of Macedonia Church.

2. Five ordained ministers, including **[\*4]** Rev. Albert Ray Dancy and Rev. Michael Rumble, comprised the Board of Elders, a spiritual arm of Macedonia Church, and eleven individuals, including Rev. Stevens, Addie Stevens, Rev. Dancy, and Rev. Rumble, comprised the Board of Directors, the operational arm of the church.

3. In 2004, Macedonia Church decided to host a summer trip to Lancaster, Pennsylvania for its membership to attend a religious-themed production at the Sight & Sound Millennium Theater, as well as to visit an amusement park in nearby Hershey, Pennsylvania.

4. Macedonia Church assigned Merle Rumble responsibility for organizing the 2004 summer outing.

5. Ms. Rumble visited the Lancaster Host Resort and Conference Center ("LHR"), a hotel near Lancaster, in February of 2003 to investigate lodging options for the trip. LHR was built in the early 1960s as a full service resort located in the heart of what was then Amish country. At the time, LHR consisted of three stories/six levels and housed about 330 hotel guest rooms.

6. During her February, 2003 visit, Ms. Rumble asked an attendant at the front desk to summon a salesperson who could explain the accommodations available at the hotel. Bonnie Skagen, a sales representative **[\*5]** for LHR, responded and met Ms. Rumble in the lobby.

7. Ms. Rumble advised Ms. Skagen that she was interested in scheduling a group outing and they discussed information about LHR in the lobby for approximately fifteen minutes. Ms. Skagen gave Ms. Rumble her business card and a

brochure about the hotel. Ms. Rumble found Ms. Skagen to be "pleasant" during this meeting.

8. On April 20, 2004, Merle Rumble, along with her husband Rev. Rumble, and Addie and Rev. Stevens, visited LHR. Ms. Skagen talked with the Macedonia Church representatives about the accommodations at LHR and gave them a guided tour of the facilities.

9. After the tour, Ms. Rumble told Ms. Skagen that she wanted to reserve forty rooms for both July 8 and 9, 2004. Ms. Skagen explained to Ms. Rumble the procedures for reserving group lodging accommodations at LHR, and Ms. Rumble dealt exclusively with her in attempting to make group room reservations at LHR.

10. Ms. Skagen told Ms. Rumble she would send her an introductory letter or proposal letter. Ms. Skagen advised Ms. Rumble that she would need to sign a contract and submit a security deposit to confirm the reservations.

11. Ms. Rumble described Ms. Skagen's demeanor during **[\*6]** this visit as "pleasant and cordial" and seemingly "willing to work" with her on the reservations process. She testified that she did not observe Ms. Skagen acting "odd" toward her or her fellow church members.

12. A few days after this visit to LHR, Ms. Rumble received an introductory letter dated April 21 2004 from Ms. Skagen. In the letter, Ms. Skagen stated: "It was a pleasure meeting your group. I enjoyed showing off our property and hope your group will stay with us from Thursday, July 8 to Saturday, July 10, 2004." The arrival and departure dates listed in the proposal letter accurately reflected the information Ms. Rumble imparted to Ms. Skagen during their in-person meeting, but the number of rooms requested was omitted.

13. Ms. Rumble next spoke with Ms. Skagen about making reservations at LHR on May 10, 2004. She had already made reservations for the religious-themed theater performance near LHR for July 10, 2004. During this telephone call, Ms. Rumble instructed Ms. Skagen to change the group's arrival date from Thursday, July 8, 2004 to Friday, July 9, 2004 and add Sunday, July 11, 2004 to her reservations and reminded Ms. Skagen that the group requested at least 40 rooms **[\*7]** per night. A few days after their conversation, Ms. Rumble received a proposal letter dated May 10, 2004 from Ms. Skagen offering only 20 rooms for each night for July 8-9, 2002 instead of 40 rooms for July 9-10, 2004.

14. This proposal letter describes reservations of twenty rooms for both July 8 and 9, 2004 and states: "Due to the

tentative status of your function, we are presently not holding space for your group. However, if this proposal meets with your approval, we will be happy to reserve the appropriate space and send you an agreement."

15. On May 17, 2004, Ms. Rumble contacted Ms. Skagen by telephone, advising her that the reservation dates and number of rooms listed in the second proposal letter were incorrect. During this telephone call, Ms. Rumble told Ms. Skagen to send her a tentative contract for reservations of forty rooms for both July 9 and 10, 2004.

16. Ms. Rumble testified that Ms. Skagen used a "pleasant" tone of voice during this conversation. But Ms. Rumble never received a contract from Ms. Skagen despite Ms. Skagen's responsibility to send one. On May 26, 2004, Ms. Skagen left a voicemail message for Ms. Rumble, seeking to speak with her about her proposed reservations.  [*8] Ms. Rumble returned Ms. Skagen's telephone call on June 1, 2004, but Ms. Skagen was unavailable at that time. Ms. Rumble called Ms. Skagen on June 1 and June 2, 2004 but could not reach her and left messages with each telephone call. Ms. Skagen did not respond until June 3, 2004. The two finally spoke by telephone later that day on June 3, 2004.

17. During this telephone conversation, Ms. Skagen stated that LHR did not have rooms available for Macedonia Church group for both July 9 and 10, 2004. Ms. Skagen apologized to Ms. Rumble about the lack of room availability to accommodate her request, stated she did not understand how it could have happened, and offered to help find replacement lodging, suggesting that the group could stay out of town in Reading or Hershey.

18. Ms. Skagen acknowledged that she neither prepared a contract nor directed her assistant to do so, because if she had done so, there would be evidence in the account recap document, but there was none.

19. Nothing in the Booking Recap document supplied by Defendants supports the claim that Lancaster Host was overbooked for the dates Macedonia Church wished to stay there, as Mr. Rice, Ms. Skagen's supervisor, admitted. The  [*9] Booking Recap document produced by Defendants indicated that the blocked status of the rooms was not changed or removed until June 4, 2004.

20. On June 8, 2004, Ms. Rumble visited LHR and asked Ms. Skagen to meet with her in the hotel lobby. Ms. Skagen again told Ms. Rumble that LHR did not have enough rooms available for her group. Ms. Rumble did not complain to anyone at Fine Hotels at this time regarding her perception that race discrimination explained her inability to secure group reservations at LHR.

21. Plaintiffs base their claim of race discrimination against Defendants, in part, based on the fact that thirty-five hotel rooms at LHR were available for a fictitious religious group on June 11, 2004, three days after Ms. Rumble's last request. Rev. Stevens and Judith Addington, a Caucasian woman, who was a friend of Macedonia Church members, developed a strategy to try and reserve rooms at LHR. Rev. Stevens selected Judith Addington because her voice is distinctively that of a Caucasian woman.

22. They decided to call Ms. Skagen to solicit rooms from her. Rev. Stevens and Ms. Addington decided beforehand to contact LHR on two instances, staggering the number of reservations rather  [*10] than request all their rooms at once.

23. Ms. Addington first contacted LHR by telephone on or around June 11, 2004, asking Ms. Skagen to reserve thirty-five rooms. Ms. Skagen stated that LHR had that number of rooms available, and faxed her a tentative contract.

24. On June 21, 2005, Ms. Addington contacted Ms. Skagen to increase the fictitious group's reservations by an additional fifteen rooms. When Ms. Skagen stated that there were additional rooms available, Ms. Addington directed Ms. Skagen to send the final contract to Christophe Nonirit's address, claiming that Mr. Nonirit was a member of her organization and the coordinator for their outing.

25. A short time later, Mr. Nonirit spoke with Ms. Skagen on behalf of the fictitious group regarding room reservations. Mr. Nonirit described Ms. Skagen's behavior toward him during the June 2004 conversation as "entirely pleasant" and seemingly "interested in accommodating" the fictitious group that he represented. Mr. Nonirit advised Ms. Skagen over the telephone that the group was no longer interested in reserving hotel rooms.

26. Neither Mr. Nonirit or Ms. Addington ever disclosed their racial background to Ms. Skagen during any of their  [*11] telephone conversations with her.

27. Ms. Rumble found a different hotel for the Macedonia Church's trip to Lancaster. The group stayed at the Ramada Brunswick Hotel Conference Center in downtown Lancaster (the "Ramada") instead. The group, however, found the Ramada to be inferior to LHR. The Ramada did not have a

golf course or walking trails, which LHR had. The church members who were deposed testified that the Ramada was in an undesirable location and that they witnessed disorderly and criminal conduct, along with police activity, during their stay.

28. After these events, Ms. Skagen identified a "Macedonia Church" as a target group that she wanted to solicit for the third quarter of 2004, as she received her incentive pay for meeting such targets, but she never communicated with Ms. Rumble or anyone from Macedonia Church.

29. On July 9, 2004, the day Macedonia Church had hoped to begin its stay at LHR, groups from the Enon Tabernacle Baptist Church and the Mercy Seat Baptist Church stayed in seventy-five of the rooms at LHR, nearly one-fourth of its capacity. Bonnie Skagen telephoned Ms. Addington on at least two occasions expressing regret that the group would not be able to visit  [*12]  LHR and that the group was welcome at LHR in the future. No such solicitations were made to Macedonia Church.

30. This Settlement was reached after more than five years of litigation.

31. Plaintiffs filed suit against Lancaster Hotel Limited Partnership, MASSPA Realty Corporation, and Fine Hotels Corp. (the "Defendants") on January 27, 2005, alleging that Defendants intentionally denied them accommodations at the Lancaster Host on the basis of race in violation of _42_ U.S.C. § 1981 and other federal statutes, and seeking compensatory damages, punitive damages, and attorneys' fees and costs. [1] Defendants denied these allegations.

32. Plaintiffs brought suit on behalf of a proposed class that consisted of 114 members of Macedonia Church, or relatives or friends of Macedonia Church members, who participated in the Church trip to Lancaster, Pennsylvania on July 9-10,  [*13]  2004. The proposed class included approximately five persons who are not African-American and twenty-six individuals who were minors during the relevant time period.

33. During the litigation, the Parties undertook substantial discovery. Class Counsel analyzed and reviewed more than 1,700 pages of documents produced by Defendants bearing on the race discrimination allegations, and between them, the Parties took 11 depositions. In addition, Class Counsel assembled voluminous information from the Named Plaintiffs and Class Members.

34. On March 24, 2005, Plaintiffs filed a Motion for an Order Determining that Action Proceed as Class Action. Defendants filed an Opposition, and Plaintiffs filed a Reply. On July 20, 2007, the Honorable Alvin W. Thompson, Chief Judge of the United States District Court for the District of Connecticut issued a Ruling on Plaintiffs' Motion, denying the motion without prejudice.

35. On April 6, 2006, Plaintiffs filed an Amended Complaint. On April 18, 2006, Defendants filed a Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Subject Matter Jurisdiction. Plaintiffs' filed an Opposition, and Chief Judge Thompson ruled on the Motion to Dismiss, denying  [*14] it.

36. On April 17, 2006, Defendants filed five Motions for Summary Judgment as to the claims of Plaintiffs Sandra Hart, Merle Rumble, Albert Ray Dancy, Cynthia Welfare, and DeWitt Stevens, Jr. Plaintiffs filed a Consolidated Memorandum of Law in Opposition, and on July 20, 2007, Chief Judge Thompson issued a Ruling on Defendants' Motions for Summary Judgment, denying all five motions.

37. The Parties engaged in Court-sponsored mediation with ParaJudicial Officer James Hawkins on September 10, 2007, without reaching a compromise.

38. On October 4, 2007, Defendants filed a Renewed Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Subject Matter Jurisdiction. After Plaintiffs opposed the motion, Chief Judge Thompson issued an Order denying Defendants' renewed motion to dismiss.

39. On December 20, 2007, the Parties engaged in a private mediation session with civil rights attorney Joseph Garrison in Connecticut, which again did not resolve the Litigation.

40. On June 27, 2008, Plaintiffs filed a Second Amended Complaint, which Defendants timely answered.

41. On July 10, 2008, Plaintiffs filed a Renewed Motion for Class Certification. Defendants filed a Response Brief, and Plaintiffs [*15] filed a Reply Brief. On September 30, 2010, Chief Judge Thompson certified the issues of liability and compensatory damages as a _Rule 23(b)(3)_ class action. Plaintiffs' counsel had earlier been appointed Class Counsel by Chief Judge Thompson.

---

[1]   Plaintiffs initially also asserted a violation of 42 U.S.C. § 2000a(b)(1) and sought injunctive relief. The Parties stipulated and agreed, on or about April 29, 2008, to the dismissal, without prejudice, of that claim as moot based on Defendants' representations that, _inter alia_, Fine Hotels sold its hotel assets in November 2007.

2011 U.S. Dist. LEXIS 62063, *15

42. The Court certified a class defined as follows:

Macedonia Church and those members of Macedonia Church, and those relatives or friends of Macedonia Church members, who participated in a church trip to Lancaster Pennsylvania on July 9-10, 2004, and were denied accommodations at the Lancaster Host (the ″Class″).

43. On October 7, 2010, this case was transferred to the undersigned, Visiting Senior United States District Judge. On October 14, 2010, Defendants filed an application for leave to appeal the Court's class certification order under *Rule 23(f) of the Federal Rules of Civil Procedure* with the United States Court of Appeals for the Second Circuit. Defendants moved to stay proceedings in this Court pending appellate resolution of their Petition and, if granted, their appeal. The Court denied Defendants' motion to stay pending appeal on October 21, 2010. The Parties thereafter briefed the *Rule 23(f)* Petition with the Court of Appeals.

44. On  [*16] January 20, 2011, Class Counsel and Defendants' counsel participated in a day-long Court-ordered settlement conference with the assistance of the Court. Lead counsel for the class — David Cohen of Wofsey, Rosen, Kweskin & Kuriansky, LLP — and lead counsel for Defendants — Gerald L. Maatman, Jr. of Seyfarth Shaw LLP — met with the Court for over 7 hours [Rec. Doc. 250]; Mr. Cohen and Mr. Maatman are experienced, highly capable counsel, who are well-versed in class action litigation. Confidential written submissions regarding possible settlement were considered and discussed, and the Parties engaged in vigorous arms-length negotiations in the presence of the Court. Although the Parties did not reach agreement on January 20, 2011, they continued their arms-length discussions over the following days and, on January 27, 2011, the Parties notified the Court that they had reached an agreement in principle on terms for a settlement.

45. The Parties intend for the Settlement to resolve all of the claims of the Class Members and all aspects of the Litigation (including any award of attorneys' fees) for a cash payment of $675,000.00.

46. On January 31, 2011, the Parties filed a Joint Motion to  [*17] Stay Pending Final Settlement Approval [Rec. Doc. 253]. On February 1, 2011, the Court granted the Joint Motion to Stay in part, staying further discovery pending approval of the Class Action Settlement [Rec. Doc. 254].

47. On February 11, 2011, Class Counsel filed their Unopposed Motion for Preliminary Approval of Class Action Settlement as well as a number of related documents, including the Parties' Settlement Agreement, which contained a proposed Notice to Class Members informing them of the terms of the Settlement and instructing them on how to exclude themselves, object, or file a claim for a share of the Settlement proceeds (the ″Class Notice″) [Rec. Doc. 255].

48. On February 14, 2011, the Court granted Plaintiffs' Unopposed Motion for Preliminary Approval, finding that the proposed Settlement was negotiated in good faith at arms length over time by competent and experienced counsel for the parties and with the assistance of a private mediator, a court-appointed ParaJudicial Officer, and the undersigned [Rec. Doc. 262].

49. The Court also found that the proposed Settlement appeared to be fair, reasonable, and adequate under *Federal Rule of Civil Procedure 23*, and that the Class  [*18] Notice was sufficient and designed to provide notice to as many Class Members and other interested individuals as possible at reasonable cost. As such, the Court granted preliminary approval of the Settlement Agreement [Rec. Doc. 262].

50. The preliminary approval of the Settlement Agreement was expressly subject to final approval of the Settlement Agreement after providing notice, reviewing comments and/or objections, if any, and conducting a fairness hearing.

51. Upon entry of the Court's Order preliminarily approving the Settlement and directing the dissemination of the Class Notice, the Parties jointly moved to stay consideration of the *Rule 23(f)* application pending before the Court of Appeals, in light of the Parties' agreement to reach an amicable resolution. The Court of Appeals granted the application for a stay on March 9, 2011.

52. On February 17 and 18, 2011, the Class Notice approved by the Court was sent by United States mail and/or electronic mail by Class Counsel to Class Members at current or last known addresses and email addresses. The Claim Form attached to the Class Notice, as approved by the Court, was sent by Class Counsel to all persons who receive the Class Notice.  [*19] Seventy-nine class members returned their claim forms to Class Counsel.

53. On February 25, 2011, Class Counsel filed a written declaration that the Class Notice to the Settlement Class was disseminated in accordance with the Court's February 14, 2011 Order [Rec. Doc. 264].

54. In order to opt-out of the proposed Settlement Agreement, Class Members were required to mail their letters requesting

2011 U.S. Dist. LEXIS 62063, *19

exclusion to Class Counsel postmarked no later than March 25, 2011, in the manner specified in the Class Notice, and pursuant to Paragraph 3.5 of the Parties' Settlement Agreement. Class Members who wished to object to all or part of the proposed Settlement Agreement (as provided in the Settlement Agreement) were required to mail their appearances and letters stating their objections, as described in the Settlement Agreement, to the Clerk of the Court postmarked no later than March 25, 2011, and in the manner, specified in the Class Notice.

55. No Class Members requested exclusion from the Class, and the Court received no written objections from Class Members by the deadline for objecting that was established in the preliminary approval Order and communicated to Class Members in the Class Notice.

56. **[*20]** No Class Members opted out of the Settlement within the time specified by the Court or subsequently. Accordingly, all members of the Class are bound by this Order granting final approval to the Class Action Settlement, the Settlement Agreement, and the releases contained within the Settlement Agreement. Class Members do not have a further opportunity to opt out of this action.

57. On June 9, 2011, the Court held a fairness hearing, at which time it considered the submissions of the Parties and heard from counsel. No objectors to the Settlement appeared at the fairness hearing.

58. Pursuant to the Settlement, Defendants have agreed to pay a settlement amount of $675,000.00.

59. On the date set forth in the Parties' Settlement Agreement, Defendants have agreed to pay Class Counsel the total sum of $675,000.00 to be distributed as follows: Rev. Stevens, Addie Stevens, Rev. Rumble and Merle Rumble, a sum of $50,000.00 each; Macedonia Church, a sum of $125,000.00; each remaining member of the Settlement Class, the sum of $1,000.00 each; and Class Counsel, attorneys' fees of no more than one-third of the Settlement Fund (which Class Counsel has calculated at $225,000.00 plus costs). [2] Class **[*21]** Counsel's award of attorneys' fees and costs is addressed below. Class Counsel has agreed to pay any unused surplus costs to Macedonia Church.

60. The Settlement also provides that any portion of the net fund that is not timely claimed by a Class Member under the

claim procedure specified in the Settlement shall be paid to Macedonia Church. In distributing payments to the Class, Class Counsel agreed to honor any written assignments or instructions directing payment to Macedonia Church. One hundred and six class members have assigned their payments to Macedonia Church.

61. Pursuant to the Settlement, Defendants have agreed to pay $50,000.00 to Rev. Stevens, Addie Stevens, Rev. Rumble, and Merle Rumble as their share of the Settlement proceeds and for their services on behalf of the Settlement Class. These plaintiffs are among the 106 class members who have assigned their entire shares of the **[*22]** Settlement proceeds directly to Macedonia Church and will receive no Settlement funds personally.

62. The Court finds that these four individuals are entitled to service payments because they were instrumental to the pursuit of this action. They are the only Class Members who had contact with Defendants regarding the Church group's potential stay at LHR, and they primarily were responsible for prosecuting this action and provided Class Counsel with invaluable assistance with the investigation and development of this case.

63. These four individuals also devoted a considerable amount of time assisting with discovery and sitting for depositions. The Class Members have benefited from the actions of these individuals.

64. Class Counsel has applied to the Court for an award of attorneys' fees and costs, including costs anticipated in connection with administration of the Settlement [Rec. Doc. 266]. The Settlement Agreement provides that Class Counsel has agreed that any potential recovery for attorneys' fees shall not exceed one third of the Common Fund.

65. At least 106 of the plaintiffs have signed contingency fee agreements authorizing, as a matter of contract, a one-third contingency fee **[*23]** to Class Counsel plus costs.

66. In the Settlement Agreement, Defendants have agreed not to oppose Class Counsel's application of record insofar as the request does not exceed more than one-third of the total settlement amount of $675,000.00. Pursuant to the Settlement Agreement, in the event the Court awards a lesser amount of fees or costs to Class Counsel than one-third of the Common Fund, the Settlement Agreement

---

[2]   Under Plaintiffs' motion for attorneys' fees and costs, the amount of nontaxable costs to be incorporated in the judgment, subject to court approval, is $8,301.50 with an additional $1,698.50 as a reserve for future costs, provided that any unexpended reserve shall be refunded to Macedonia Church.

shall remain in full force and effect, and the amount of any reduction will be paid to the Church. Class Counsel has moved for an award of attorneys' fees and costs in total amount of $235,000.00, representing attorneys' fees of $225,000, costs to date of $8,301.50, and a reserve for future costs of $1,698.50. The award of fees and costs is supported by an affidavit of counsel and a supporting memorandum, falls within the guidelines established by the Settlement Agreement, and has not been opposed by any objection from the defendants or from any of the Class Members, the overwhelming majority of whom signed written agreements establishing fees in this amount.

67. Some of the Class Members are minors. At the time the action was commenced and in pursuing investigation in furtherance [*24] of the Litigation, Class Counsel learned the identities of the parents, next friends and/or legal guardians of the minor Class Members.

68. Class Counsel has ensured that the parents, next friends and/or legal guardians of minor Class Members received the Class Notice, completed and properly signed the Claim Form in accordance with the requirements set forth in the Class Notice, executed properly the Class Member release agreement pursuant to the terms the Settlement Agreement, and will receive payments from the Settlement Fund, unless their share of the settlement has previously been assigned to Macedonia Church, if they submitted to Class Counsel a timely, complete, and valid Claim Form.

## II. CONCLUSIONS OF LAW

1. Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Wal-Mart Stores,* Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy" favoring settlement, "particularly in the class action context"); *Weinberger* v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982) [*25] ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation."); *see also* 4 William B. Rubenstein, et al., *Newberg on Class Actions* § 11.41 (4th ed. 2010) (collecting cases).

2. The *Manual for Complex Litigation*, prepared by the Federal Judicial Center, describes a three-step procedure for approval of class action settlements:

A. Preliminary approval of the proposed settlement at an informal hearing;

B. Dissemination of mailed and/or published notice of the settlement to all affected class members; and

C. A "formal *Rule 23(e)* fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Litigation* (Fourth) § 21.632-34 (2004).

3. This procedure, used by courts in this Circuit and endorsed by class action commentator Professor Herbert Newberg, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* 4 *Newberg on Class Actions* § 11.24, *et seq.*

[*26] A presumption of fairness, adequacy, and reasonableness attaches to a class settlement "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, 396 F.3d at 116*; *see also Thompson* v. Metro. Life Ins. Co., 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("[A] strong presumption of fairness attaches to proposed settlements that have been negotiated at arm's length.").

4. On February 14, 2011, the Court determined preliminarily that the Settlement is fair, reasonable and constitutes a beneficial resolution to this litigation [Rec. Doc. 262].

5. Pursuant to *Rule 23(a) of the Federal Rules of Civil Procedure*, a court may give final approval to a class action settlement only upon finding that it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores,* Inc., 396 F.3d at 116. This requires an assessment of both procedural and substantive fairness. *D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)* ("The District Court determines a [class action] settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." (citing *Malchman v. Davis, 706 F.2d 426, 433 (2d Cir. 1983)))*.

6. [*27] To decide whether a class action settlement is procedurally fair, a Court "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel . . . possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *D'Amato, 236 F.3d at 85* (citation and internal quotation marks omitted).

7. The Court concludes from the record and based on the Court's direct involvement in the case that the proposed

2011 U.S. Dist. LEXIS 62063, *27

Settlement was negotiated in good faith at arms length over time by highly competent and experienced counsel for the Parties and with the assistance of a private mediator, a court-appointed ParaJudicial Officer, and the undersigned. Mr. Cohen, as counsel for the class, and Mr. Maatman, as counsel for Defendants, are familiar with the legal and factual issues of this case in particular and with class action litigation in general and they vigorously pursued their clients' respective positions and negotiated at arms length and in good faith in resolving this class action. Accordingly, the proposed Settlement is procedurally fair.

8. In evaluating **[*28]** substantive fairness, it is well settled that the District Court must consider the nine *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

*City of Detroit* v. Grinnell Corp., *495 F.2d 448, 463 (2d Cir. 1974)* (internal citations omitted), *abrogated on other grounds by Goldberger* v. Integrated Res., Inc., *209 F.3d 43 (2d Cir. 2000)*; *see also Wal-Mart Stores,* Inc., *396 F.3d at 117*.

9. In accordance with these factors and the terms of the Settlement Agreement, this Court finds that the proposed Settlement is fair, reasonable and adequate under *Federal Rule of Civil Procedure 23(e)*.

10. First, the proposed Settlement **[*29]** would resolve the *42* U.S.C. § 1981 claims certified by the Court in the Order dated September 30, 2010. The class defined in the proposed Settlement Agreement is the same as that defined in that Order.

11. Second, the complexity, expense, and duration of the litigation — along with the risks attendant to further litigation — support final approval. *Grinnell, 495 F.2d at 462-63*. In deciding to settle rather than continue with further litigation, both sides have weighed the relative risks and rewards of continuing to litigate this case to final

judgment, followed by the inevitable appeals initiated by one or both sides. They have concluded that trial on the merits and any resulting recovery for Class Members would involve significant uncertainty, expense, and delay, all of which show the Settlement is a fair method of alleviating these risks and providing reasonable relief to the Class Members. Serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation. *See* D'Amato, 236 F.3d at 86 (citing *In Re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 179 (S.D.N.Y. 2000))*.

12. **[*30]** Third, the Court gives weight to the Parties' judgment that the settlement is fair and reasonable, as well as to the Class's favorable reaction to the settlement. *Wal-Mart Stores, 396 F.3d at 118* ("the class appears to be overwhelmingly in favor of the Settlement. . . . 'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'" (quoting 4 Newberg on Class Actions § 11.41, at 108)). In this case, no objections by the Class Members were submitted to the Court in response to the notice of the Settlement.

13. Fourth, the history of this litigation demonstrates that it is at a stage where approval of the Settlement is appropriate. Substantial discovery and motion practice — including motions to dismiss, summary judgment, and class certification — has been undertaken by both sides. The fact that the Parties have litigated summary judgment and have participated in mediation means that the stage of the proceedings is sufficiently ripe for final settlement approval. *Wal-Mart Stores, 396 F.3d at 118*.

14. Fifth, the risks associated with maintaining class certification and the ability of the Defendants to withstand a greater judgment **[*31]** favor final approval. *Wal-Mart Stores, 396 F.3d at 119 n.24* ("decertification is always possible as a case progresses and additional facts are developed"). Defendants' counsel and Class Counsel alike believe that the amount of money to be paid by Defendants into the Settlement is fair and reasonable. *Wal-Mart Stores, 396 F.3d at 117*; *Newman* v. Stein, *464 F.2d 689, 693 (2d Cir. 1972)*. Even if a verdict were returned against Defendants for a higher sum and they were able to pay it, that would not make the Settlement unfair. Rather, a consideration of all of the factors here justifies approving the Settlement. *D'Amato, 236 F.3d at 86*.

15. Sixth, this Court finds that the Notice to Class Members provided the best notice as practicable under the

circumstances, as it was sent individually to all Class Members who were identified by the reasonable efforts of Class Counsel. The Notice therefore meets the requirements of *Federal Rule of Civil Procedure 23(c)* and due process.

16. The Class Notice was disseminated to those persons who fit the class definition in the class certification order of September 30, 2010, and the Court finds those persons to be Class Members.

17. The Class Notice stated **[*32]** clearly and concisely in easily understood language the nature of the class action, the definition of the certified Class, the issues and defenses asserted by the Parties, that Class Members may enter an appearance in the action through an attorney if so desired, that the Court will exclude from the Class any Class Member who submits a timely request for exclusion, and the binding effect of a class judgment on Class Members under *Federal Rule of Civil Procedure 23(c)(3)*.

18. Pursuant to this Court's Preliminary Approval Order, the Notice was sent by first class mail to each identified class member at his or her last known address (with a remailing of returned Notices).

19. The Class Notice, therefore, fairly and adequately advised the members of Class of the terms of the Settlement and the claims process for the members of the Class to obtain the benefits available the claims process, as well as the right of members of the Class to opt out of the class, to object to the settlement, and to appear at the fairness hearing. Class Members were provided the best notice practicable under the circumstances. The Notice and distribution of such Notice comported with all constitutional requirements, **[*33]** including those of due process.

20. Seventh, no Class Members objected to the proposed Settlement. It is well established that a settlement can be fair notwithstanding a large number of objectors. *See, e.g., TBK Partners, Ltd. v. Western Union Corp., 675 F.2d 456, 462 (2d Cir. 1982)* (approving settlement despite objections of approximately 56% of class); *Reed v. General Motors Corp., 703 F.2d 170, 174-75 (5th Cir. 1983)* (approving settlement despite opposition of 40% of class); *Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977)* (approving settlement despite objections of counsel purporting to represent almost 50% of class). Even so, none of the Class Members here filed an objection to the proposed Settlement.

21. Eighth, service compensation awards "are not uncommon in class action cases and are within the discretion of the court." *Velez v. Majik Cleaning Serv., Inc., 03 Civ. 8698*

*(SAS)(KNF), 2007 U.S. Dist. LEXIS 46223, at *22 (S.D.N.Y. June 22, 2007)*. In reviewing service compensation, courts consider:

> The existence of special circumstances including the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant, the time and effort expended **[*34]** by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery.

*Id.* (quoting *Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005)).

22. The amount of the service compensation for Class Representatives "is related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Mentor v. Imperial Parking Sys., 05 Civ. 7993 (WHP), 2010 U.S. Dist. LEXIS 132831, at *6 (S.D.N.Y. Dec. 15, 2010)* (citation and internal quotation marks omitted). *See also Roberts v. Texaco, Inc., 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997); Gilliam v. Addicts Rehabilitation Ctr. Fund, 05 Civ. 3452 (RLE), 2008 U.S. Dist. LEXIS 23016, at *14-15 (S.D.N.Y. Mar. 24, 2008)* (compensation to six named plaintiffs for services to class "reasonable" and "appropriate use of the overall settlement").

23. Payments of $50,000.00 are reasonable and adequate for the following plaintiffs: Rev. Stevens, Addie Stevens, Rev. Rumble, and Merle Rumble **[*35]** (together the "Representative Plaintiffs"). Accordingly, the Court finds those payments shall be made to the Representative Plaintiffs.

24. Ninth, the amount of fees requested by Class Counsel is fair and reasonable using the percentage-of-recovery method, which is consistent with the "trend in this Circuit." *Wal-Mart Stores, Inc., 396 F.3d at 121; see Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003)* (collecting cases); *In Re NASDAQ Market-Makers Antitrust Litigation, 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998)* (collecting cases).

25. Class Counsel's request for 33-1/3% of the Settlement Fund is typical in class action settlements in the Second Circuit. *See, e.g., Gilliam, 2008 U.S. Dist. LEXIS 23016, at *8; Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar, 06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 27899, at*

*16 (S.D.N.Y. Mar. 31, 2009) (noting that a request for one-third of the Settlement Fund "is typical in class action settlements in the Second Circuit" and collecting cases); *Strougo, 258 F. Supp. 2d at 262* (33 1/3% of settlement fund approved for attorneys' fees); In *Re Blech Sec. Litig., No. 94 Civ. 7696 (RWS), 2002* U.S. Dist. LEXIS 23170, at *5 (S.D.N.Y. Dec. 4, 2002) [*36] (33 1/3% of settlement fund approved for attorneys' fees); *Adair* v. Bristol Technology Sys.*, No. 97 Civ. 5874, 1999* U.S. Dist. LEXIS 17627, at *8-9 (S.D.N.Y. Nov. 16, 1999) (33% of settlement fund approved for attorneys' fees, plus costs); *Cohen* v. Apache Corp.*, No. 89 Civ. 0076 (PNL), 1993* U.S. Dist. LEXIS 5211, at *1 (S.D.N.Y. Apr. 21, 1993) (33 1/3% of settlement fund approved for attorneys' fees).

26. The amount of fees requested is fair and reasonable. Class Counsel have committed substantial resources to prosecuting this case. Class Counsel completed substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims. The work that Class Counsel have performed both in litigating and settling this case demonstrates their commitment to the class and to representing the class' interests. The attorneys' fees were entirely contingent upon success. Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. At least 106 of the plaintiffs have signed contingency fee agreements authorizing a one-third contingency fee to Class Counsel plus costs.

27. The amount of fees and costs [*37] claimed, upon all of the evidence, is fair, just and reasonable and is hereby established as $235,000.00.

Having read and fully considered the terms of the Settlement Agreement, and all submissions made in connection therewith, the Court finds that the Settlement Agreement should be finally approved and the Litigation dismissed with prejudice as to all Class Members.

Signed at Bridgeport, Connecticut this 9th day of June, 2011.

/s/ Tucker L. Melançon

Tucker L. Melançon

United States District Judge

**FINAL JUDGMENT**

Before the Court is the Parties' May 31, 2011 Joint Motion for Final Settlement Approval [Rec. Doc. 272] and Class Counsel David Cohen's May 11, 2011 Motion for Attorney's Fees [Rec. Doc. 266]. Based on the record of this proceeding, including but not limited to the Findings of Fact and Conclusions of Law that the Court has made and that have been filed [Rec. Doc. 278], as well as for oral reasons assigned this date, it is

**ORDERED** that all of the terms and provisions of the Settlement Agreement, which the Court previously gave preliminary approval and found to be fair, reasonable, and adequate as it applies to the Class [Rec. Doc. 262], are given final approval for purposes of *Rule 23(e)*. [*38] The Court orders consummation of all of the terms and provisions of the Settlement Agreement. The Parties' Joint Motion for Final Settlement Approval [Rec. Doc. 272] is GRANTED.

**IT IS FURTHER ORDERED** that in addition to the payments to Settlement Class Members provided for in the Settlement Agreement, the Court awards payments in the amount of $125,000.00 to Macedonia Church and $50,000.00 each to DeWitt Stevens, Jr., Addie Stevens, Michael Rumble, and Merle Rumble and directs Defendants to pay such amounts through Class Counsel. The Court has been advised that Class Counsel will honor the assignments in favor of Macedonia Church previously made by Pastor and Mrs. Stevens, Pastor and Mrs. Rumble, and most of the members of the Settlement Class.

**IT IS FURTHER ORDERED** that Class Counsel David Cohen's Motion for Attorney's Fees [Rec. Doc. 266] is GRANTED.

**IT IS FURTHER ORDERED** that the Settlement Agreement shall be binding on all Defendants and all Plaintiffs, including all members of the Class who have not been excluded pursuant to the Settlement Agreement.

**IT IS FURTHER ORDERED** that the Court hereby dismisses on the merits and with prejudice the Second Amended Complaint filed in this Court, [*39] styled *Macedonia* Church, et al. v. Lancaster Hotel Limited Partnership, et al., Case No.: 05-CV-153 (TLM). In addition, the Court also dismisses all claims which any Class Members alleged or could have alleged in any way relating to or arising out of Defendants' alleged denial of accommodations on the basis of race, alleged race discrimination, or alleged violations of law. Upon the Effective Date of Final Approval as defined in the Settlement Agreement, the Named Plaintiffs and each Class Member shall be deemed to have, and by operation of the Final Judgment based on the Court's Findings of Fact and Conclusions of Law shall have, released, waived and discharged Lancaster Hotel Limited Partnership, MASSPA Realty Corporation, and Fine Hotels,

2011 U.S. Dist. LEXIS 62063, *39

Corp., including all of their past, present, and future direct and indirect parents, affiliates, subsidiaries, divisions, predecessors, successors, partners, joint venturers, affiliated organizations, insurers, assigns, and each of their past, present, and future officers, directors, members, trustees, agents, employees, attorneys, contractors, representatives, and any other persons or entities acting on their behalf (the "Released Parties") from [*40] any and all claims, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorneys' fees, damages, actions, or causes of action of every type and description, of whatever kind or nature, whether known or unknown, that were alleged or could have been alleged in the Litigation or that in any manner arise out of or relate to Defendants' alleged denial of accommodations on the basis of race, alleged race discrimination, or alleged violations of law, that have asserted or could have been asserted against the Released Parties at any time up to and including the Effective Date of Final Approval.

**IT IS FURTHER ORDERED** that if (a) the Effective Date of Final Approval does not occur for any reason whatsoever, or (b) the Settlement Agreement becomes null and void pursuant to the terms of the Settlement Agreement, the Court's Findings of Fact and Conclusions of Law and Final Judgment shall be deemed vacated and shall have no force or effect whatsoever.

**IT IS FURTHER ORDERED** that without affecting the finality of the Findings of Fact and Conclusions of Law and Final Judgment, the Court reserves continuing and exclusive jurisdiction over the parties, including all members [*41] of the Class as defined above, and the execution, consummation, administration, and enforcement of the terms of the Settlement Agreement.

**IT IS FURTHER ORDERED** that the Clerk of this Court is directed to enter this Final Judgment forthwith.

Signed at Bridgeport, Connecticut this 9th day of June, 2011.

/s/ Tucker L. Melançon

Tucker L. Melançon

United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION FOR INJUNCTIVE RELIEF PURSUANT TO 28** U.S.C. § 1651(a)

On this date, the Court entered an Order granting Final Approval to the Parties' Class Action Settlement [Rec. Doc. 279]. The Settlement Agreement negotiated and entered into by the Parties and approved by the Court is conditioned on the Court entering an Order barring subsequent lawsuits by Settlement Class Members arising from the alleged facts that gave rise to the instant action. After having considered the submissions required by Court order, and the record of this proceeding as well as the arguments of counsel for Defendants Lancaster Hotel Limited Partnership, MASSPA Realty Corporation, and Fine Hotels Corp., for oral reasons assigned at the June 9, 2011 hearing, it is

**ORDERED** that pursuant to 28 U.S.C. § 1651(a), all Class Members who did not duly request exclusion from the Class in the time and manner provided in the Class Notice, and all other persons having actual knowledge of this Order and the Court's June 9, 2011 Final Judgment granting final approval to the Parties' class action Settlement [Rec. Doc. 279] are hereby enjoined and restrained from commencing any action or proceeding of any kind against any Defendant (or against any of their respective related parties or affiliates) in any court of law which purports to be in the name of, on behalf of, or derivative of the rights of any Plaintiff or purported Class Member, or which action or proceeding may in any way affect the rights of any Plaintiff or purported Class Member, or which action or proceeding seeks money damages arising out of Plaintiff Macedonia Church's trip to Lancaster, Pennsylvania in July 2004, or which action or proceeding seeks any declaratory relief with respect to any of the foregoing.

Signed at Bridgeport, Connecticut this 9th day of June, 2011.

Tucker L. Melançon

United States District Judge

ℹ️ Cited

As of: May 2, 2016 3:52 PM EDT

# *Bozak v.* FedEx Ground Package Sys.

United States District Court for the District of Connecticut

July 31, 2014, Decided; July 31, 2014, Filed

CIVIL ACTION NO: 3:11-cv-00738-RNC

**Reporter**

2014 U.S. Dist. LEXIS 106042; 2014 WL 3778211

MICHAEL BOZAK and WILLIAM LAWSON, individually, and on behalf of others similarly situated, Plaintiffs, v. FEDEX GROUND PACKAGE SYSTEM, INC., Defendant.

## Core Terms

settlement, attorneys', awards, notice, collection action, multiplier, named plaintiff, parties, settlement agreement, approving, lawsuit, Courts, mail, class member, negotiations, lodestar, costs, one-third, settlement fund, fees and costs, Participating, mediation, rights, class representative, settlement check, law firm, prosecuting, discovery, class action, retaliation

**Counsel:** [*1] For Michael Bozak, Individually and on behalf of others similarly situated, Plaintiff: Anthony J. Pantuso , III, LEAD ATTORNEY, Quinn Law Firm, LLC, Milford, CT; Erick Ignacio Diaz-Vazquez, Margaret B. Ferron, Richard Eugene Hayber, LEAD ATTORNEYS, Hayber Law Firm LLC, Hartford, CT; Justin M. Swartz, Melissa E. Pierre-Louis, Ossai Miazad, LEAD ATTORNEYS, PRO HAC VICE, Outten & Golden-NY, New York, NY.

For William Lawson, Plaintiff: Justin M. Swartz, Outten & Golden-NY, New York, NY.

For FedEx Ground Package System Inc, Defendant: Carol A Field, LEAD ATTORNEY, PRO HAC VICE, Morgan, Lewis & Bockius LLP, Miami, FL; Christina Kepplinger Johansen, Paula J. Allan, LEAD ATTORNEYS, PRO HAC VICE, FedEx Ground Package System, Inc., Moon Township, PA; Christopher A. Parlo, LEAD ATTORNEY, Morgan, Lewis & Bockius, New York, NY; Joseph W. McQuade, Miguel A. Escalera , Jr., Sheldon D. Myers, LEAD ATTORNEYS, Kainen, Escalera & McHale, PC, Hartford, CT; Sharon A. Lisitzky, LEAD ATTORNEY, PRO HAC VICE, Morgan, Lewis & Bockius - FL, Miami, FL.

**Judges:** Honorable Robert N. Chatigny, United States District Judge.

**Opinion by:** Robert N. Chatigny

## Opinion

**ORDER AND JUDGMENT APPROVING SETTLEMENT, SERVICE PAYMENTS, AND ATTORNEYS' FEES AND COSTS**

The [*2] Plaintiffs are Linehaul Service Managers ("LHSVMs") employed by FedEx Ground Package System, Inc. ("Defendant" or "FedEx Ground"). Plaintiffs were classified by Defendant as exempt from federal and state statutory overtime protections.

On May 5, 2011, Plaintiff Michael Bozak ("Plaintiff Bozak") filed a collective action complaint in the United States District Court for the District of Connecticut, alleging: (1) on behalf of himself and all other similarly situated employees, pursuant to 29 U.S.C. § 216(b), that Defendant misclassified LHSVMs as exempt and failed to pay them overtime when they worked more than 40 hours in a workweek, in violation of the Fair Labor Standards Act ("FLSA"); and (2) on behalf of himself individually that this misclassification violated the Connecticut Minimum Wage Act. On February 4, 2014, the Court granted permission to amend the Complaint to join William Lawson ("Plaintiff Lawson") as a Named Plaintiff.

On January 6, 2012, Plaintiff Bozak filed his motion for conditional certification and court-authorized notice. ECF No. 54. FedEx Ground simultaneously filed a motion to strike the class allegations. ECF No. 49. The Court denied Defendant's motion to strike [*3] the class allegations. ECF No. 90. The Court denied Plaintiff's motion for conditional certification without prejudice to re-filing after further discovery. ECF No. 90. Following the Court's ruling, the parties agreed to request a stay of the litigation and engage in settlement discussions.

On July 18, 2012, the parties attended a full-day private mediation with Michael Young of JAMS. Declaration of

2014 U.S. Dist. LEXIS 106042, *4

Justin M. Swartz ("Swartz Decl.") ¶ 22. At the mediation, the parties narrowed the issues in dispute and agreed on many material points, but did not reach agreement on all settlement terms. Swartz Decl. ¶ 23. Although Plaintiff Bozak had authorized counsel to negotiate the class-wide settlement, he decided not to sign a settlement agreement that released his individual wage claims and his individual retaliation claims. Swartz Decl. ¶ 24. Upon informing the Court of Plaintiff Bozak's position with regard to the settlement, the Court requested supplemental briefing regarding the Court's authority to authorize settlement notice and ultimately approve a settlement that the named plaintiff might not join. ECF No. 114.

On October 2, 2013, Defendant filed a request to compel Plaintiff Bozak to appear [*4] before the Court in person. ECF No. 127. The Court granted this request the following day. On October 3, 2013, Plaintiff filed a motion to lift the stay on discovery, for issuance of a case management plan, and for reconsideration of the Court's order compelling Plaintiff Bozak to attend an in-person conference. ECF No. 129. The Court ordered that all parties attend an in-person conference on October 11, 2013.

Plaintiff's counsel attended the conference, but Bozak did not. The Court dismissed the collective action allegations in the Complaint and indicated that it would also dismiss Plaintiff's individual claims unless he explained his failure to appear. ECF No. 133. The Court ordered Plaintiff to show cause why his individual claims should not be dismissed by November 11, 2013. Id. Meanwhile, William Lawson, who worked as an LHSVM in a FedEx Ground facility in Reno, Nevada, retained Plaintiff's counsel and agreed to serve as an additional named plaintiff.

On November 11, 2013, Plaintiff filed a motion for reconsideration of the Court's order to dismiss the collective action, to lift the stay on discovery, to compel production of documents to support Plaintiff's motion for conditional [*5] certification and for equitable tolling. ECF No. 135. Plaintiff also filed a motion to amend the Complaint to add Lawson as a named plaintiff ECF No. 137. On February 4, 2014, the Court ordered that Lawson be permitted to join the action as a named plaintiff and the parties agreed to re-engage in settlement negotiations. ECF No. 157.

On March 21, 2014, the parties attended a full-day settlement conference with mediator and former Magistrate Judge Hon. Theodore Katz (Ret.) of JAMS. Swartz Decl. ¶ 25. As a result of this mediation, the parties reached a $2,060,000.00 settlement. Ex. A (Settlement Agreement) ¶ 4.1. The terms of the settlement have been set out in a formal written

Settlement and Release ("Settlement Agreement"). Id. ¶ 33. Plaintiff Lawson now seeks approval of the settlement, service payment, and payment for attorneys' fees and costs.

Having considered Plaintiffs' Unopposed Motion for Approval of the Settlement, Service Payment, and Attorneys' Fees and Costs, the supporting declarations and exhibits thereto, and the complete record in this matter, for the reasons set forth below and for good cause shown, **NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

*APPROVAL* [*6] *OF THE SETTLEMENT*

1. The Court approves and incorporates by reference all of the definitions contained in the Settlement Agreement. The Court has jurisdiction over the subject matter of the Litigation, the Eligible Settlement Class Members and Defendant.

2. The Court hereby approves the settlement on behalf of all Participating Plaintiffs.

3. Collective actions under *Section 216(b) of the FLSA* require workers to affirmatively opt-in to the litigation, unlike in a *Federal Rule of Civil Procedure 23* class action. *See* Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) ("[t]here is no opt-in requirement, analogous to the procedure authorized by the FLSA, under the [NYLL]").

4. Thus, because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated by* Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989), FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *See* Clark v. Ecolab Inc., Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *7 (S.D.N.Y. May 11, 2010) [*7] ("The standard for approval of a FLSA settlement is lower than for a Rule 23 settlement because a FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement."); McMahon v. Olivier Cheng Catering & Events, LLC, No. 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010). Accordingly, the exacting standards for approval of a class action settlement under *Rule 23* do not apply to an FLSA settlement under the collective action provisions of 29 U.S.C. § 216(b).

5. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide*

disputes. *See Lynn's Food Stores,* Inc. v. United States, 679 F.2d 1350, 1353-54 (11th Cir. 1982); *Clark, 2010* U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *7; *McMahon, 2010* U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. Aros v. United Rentals, Inc., 2012 U.S. Dist. LEXIS 104429 at *6-8 (D. Conn. July 26, 2012) (Hall, J.); *Dixon* v. Zabka, *2013* U.S. Dist. LEXIS 77715 at *5-6 (D. Conn. May 23, 2013) (Shea, J.); *Lynn's Food Stores, 679 F.2d at 1353-54.* If the proposed settlement reflects a reasonable compromise [*8] over contested issues, the court should approve the settlement. *Lynn's Food Stores; 679 F.2d at 1354; Clark, 2010* U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *7; *McMahon, 2010* U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6.

6. The FLSA settlement in this case meets the standard for approval. The settlement was the result of vigorously contested litigation with substantial formal and informal discovery, motion practice, and arm's-length negotiation and mediation, conducted over several years. Aros, 2012 U.S. Dist. LEXIS 104429 at *7. Plaintiffs conducted a thorough investigation, including interviews with putative collective action members and production and review of paper discovery. In addition, Defendant took the deposition of Plaintiff Bozak and conducted its own paper discovery. Swartz Decl. ¶ 15-16.

7. Recognizing the uncertain legal and factual issues involved, the parties reached the settlement pending before the Court after two settlement conferences before experienced JAMS mediators, as well as in negotiations conducted by telephone and electronic mail through counsel. *Id.* ¶¶ 14-20. At all times during the settlement negotiation process, negotiations were conducted at arm's-length. *Id.* ¶ 22. Accordingly, the Settlement Agreement resolves a clear [*9] and actual dispute under circumstances supporting a finding of fair and reasonable arm's-length settlement, and is therefore approved, including the release of claims and all other terms, as fair, just, reasonable and adequate as to the settling Parties.

## APPROVAL OF FORM OF NOTICE AND NOTICE PROCESS

8. The moving parties have also presented to the Court, for its review, a proposed Notice and a plan to provide notice to the Eligible Settlement Class Members of the terms of the Settlement and the options facing the Settlement Class. The form of the notice attached to the Settlement Agreement is approved as the notice to be sent in this action (the "Notice"). After the signing of this Order, Plaintiffs shall make any necessary corrections to the dates in the Notice.

9. The Court also finds that the plan for sending the Notice as proposed by the moving parties is the best practical plan under the circumstances.

10. Notice of the proposed Settlement shall be given by mailing the "Notice of Settlement" by first class mail, postage prepaid, to all Eligible Settlement Class Members pursuant to the applicable provisions in the Settlement Agreement, at their Last Known Addresses, within fourteen [*10] (14) days after entry of this Order. Defendant shall provide the Settlement Administrator with the information necessary to conduct this mailing as set forth in the Settlement Agreement.

11. Settlement Class Members shall have a period of sixty (60) days from the mailing of the Notice within which to submit to the Settlement Administrator a Consent/Claim Form to participate in the settlement.

## RELEASE OF CLAIMS

12. In the event that the Effective Date occurs, Plaintiff Lawson and all Participating Plaintiffs will be deemed to have forever released and discharged the Released Federal Law Claims and Released State Law Claims as provided in the Settlement Agreement. In the event that the Effective Date does not occur for any reason whatsoever, this Order and the Settlement Agreement shall be deemed null and void and shall have no effect whatsoever in this Litigation or in any other litigation or proceeding.

13. In the event that the Effective Date occurs, all of the Released Federal Law Claims and Released State Law Claims are dismissed with prejudice as to every Participating Plaintiff who returns a Consent/Claim Form or timely negotiates a settlement check, permanently barring each such [*11] Participating Plaintiff from filing, commencing, prosecuting, or pursuing any Released Claims, whether or not on a class or collective action basis, or participating in any class or collective action or any other proceeding (including arbitration) involving such claims.

## AWARD OF SERVICE PAYMENT TO PLAINTIFF LAWSON

14. The Court finds reasonable a service award of $10,000 for the Plaintiff Lawson. The amount shall be paid from the Gross Settlement Amount.

15. Courts acknowledge that named plaintiffs in class and collective actions play a crucial role in representing others.

*See, e.g,* Aros, 2012 U.S. Dist. LEXIS 104429 at *8-12; *Parker* v. Jekyll & Hyde Entm 't Holdings, L.L.C., *No. 08 Civ. 7670, 2010* U.S. Dist. LEXIS 12762, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010), at *1 ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez* v. Majik Cleaning Serv., *No. 03 Civ. 8698, 2007* U.S. Dist. LEXIS 46223, 2007 WL 7232783, at *7 (S.D.N.Y. June 22, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the  [*12] class as a whole, undertaken the risk of adverse actions by the employer or co-workers"); *Clark, 2010* U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *9); *McMahon, 2010* U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *8-9 (recognizing burdens sustained by a plaintiff in lending himself or herself to the prosecution of claims) *See also* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions,* 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) (discussing the importance of aggregation of claims in the prosecution of civil and wage and hour rights).

16. "Incentive awards . . . are within the discretion of the court." *Frank* v. Eastman Kodak Co., *228 F.R.*D. 174, 187 (W.D.N.Y. 2005) (discussing service awards in a Rule 23 class action settlement). In examining the reasonableness of service awards, courts consider; (1) the personal risk incurred by the named plaintiffs; (2) time and effort expended by the named plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights. *See id.* Here, the Plaintiff Lawson satisfies all three factors.

17. First, in this settlement on behalf of a FLSA § 216(b) collective, just as in  [*13] the Rule 23 class action settlements cited above, the Plaintiff Lawson agreed to appear in this action as a lead plaintiff and to testify if there was a trial. Swartz Decl. ¶ 35. In so doing, he assumed the risk of retaliation. *Id. See* Frank, *228 F.R.*D. at 187 (Incentive awards are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). *See also Velez, 2007* U.S. Dist. LEXIS 46223, 2007 WL 7232783, at *7 (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers"); *Silberblatt* v. Morgan Stanley, *524 F. Supp. 2d 425, 435 (S*.D.N.Y. 2007) ("A class

representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded.").

18. Even where, as here, there is no evidence or indication of any retaliation by Defendant, class representatives merit  [*14] recognition for assuming the risk of retaliation for the sake of absent class members. *See* Frank, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

19. Second, the Plaintiff Lawson should be awarded a service payment for the work he undertook on behalf of the Eligible Settlement Class Members. He expended time and effort to assist in the preparation of the amended complaint, provided Plaintiffs' Counsel with relevant information, and assisted counsel in the investigation of Plaintiffs' claims and the finalization of this settlement. Swartz Decl. ¶ 35. Courts recognize the important factual knowledge that named plaintiffs bring to employment class and collective actions, including information about employer policies and practices that affect compensation. *See* Frank, 228 F.R.D. at 187-88 (recognizing the important role that class representatives play as the "primary source of information concerning the claims[,]" including by responding to counsel's questions  [*15] and reviewing documents).

20. Last, the amount of the requested service award is consistent and reasonable with awards given in class and collective actions. *See, e.g.,* Toure v. Amerigroup Corp., *No. 10 Civ. 5391, 2012* U.S. Dist. LEXIS 110300, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (approving awards of $10,000 for each class representative); *Lovaglio* v. W & E Hospitality, Inc., *No. 10 Civ. 7351,* 2012 U.S. Dist. LEXIS 94077, 2012 WL 2775019, at *4 (S.D.N.Y. July 6, 2012) (approving service awards of $10,000 for each named plaintiff); *Alli* v. Boston Mkt. Corp., *No. 10 Civ. 00004,* 2012 U.S. Dist. LEXIS 54695, 2012 WL 1356478, at *3 (D. Conn. Apr. 17, 2012) (approving service awards of $12,000 for named plaintiffs); *Sewell* v. Bovis Lend Lease LMB, Inc., *No. 09 Civ. 6548,* 2012 U.S. Dist. LEXIS 53556, 2012 WL 1320124, at *14-15 (S.D.N.Y. Apr. 16, 2012) (approving service payments of $10,000 and $15,000); *Willix* v. Health-first, Inc., *No. 07 Civ. 1143,* 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving awards of $30,000, $15,000, and $7,500 to class representatives and opt-ins); *Reyes* v. Altamarea Grp., LLC, *No. 10 Civ. 6451,* 2011 U.S. Dist. LEXIS 115984, 2011 WL

2014 U.S. Dist. LEXIS 106042, *15

4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 and $5,000); _Khait_ v. Whirlpool Corp., _No. 06 Civ. 6381, 2010_ U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) [*16] (approving awards of $15,000 and $10,000 to named plaintiffs). Accordingly, a $10,000 service payment to Plaintiff Lawson is approved.

### AWARD OF FEES AND COSTS TO PLAINTIFFS' COUNSEL

21. The Court awards Plaintiffs' Counsel a total of $686,666.00 in attorneys' fees and $30,557.00 in actual costs and expenses from the Gross Settlement Amount.

22. The Court awards Plaintiffs' Counsel $686,666.66 in attorneys' fees, which is one-third of the Gross Settlement Amount.

23. This amount is reasonable. Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." _Sand_ v. Greenberg, _No. 08 Civ. 7840, 2010_ U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010).

24. Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA. _See Braunstein_ v. E. Photo Labs., Inc., _600 F.2d 335, 336 (2d Cir. 1975)_, cert. denied, _441_ U.S. 944, 99 S. Ct. 2162, 60 L. Ed. 2d 1046 (1979); _Aros, 2012 U.S. Dist. LEXIS 104429 at * 12-21_; _Willix_ v. Healthfirst, Inc., _No. 07 Civ. 1143,_ 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011) (citing cases); [*17] _Vazquez_ v. Ranieri Cheese Corp., _No, 07 Civ. 464,_ 2011 U.S. Dist. LEXIS 11503, 2011 WL 554695, at *4 (E.D.N.Y. Feb. 7, 2011) ("[T]he fee provisions contained in the FLSA and New York Labor Law were designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements") (internal quotation marks and citation omitted). _See also McMahon, 2010_ U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7.

25. In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants. _See_

_Boeing Co._ v. Van Gemert, et al., _444_ U.S. 472, 480-81, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980); _Masters_ v. Wilhelmina Model Agency, Inc., _473 F.3d 423 (2d Cir. 2007)_; _Waters_ v. International Precious Metals Corp., _190 F.3d 1291, 1296-97 (11th Cir. 1999)_; _Williams_ v. MGM-Pathe Commns. Co., _129 F.3d 1026 (_9th Cir. 1997) (reversing district court award of 33 percent of the claimed fund and awarding attorneys' fees of 33 [*18] percent of the available fund).

26. In _Masters_, the Second Circuit recognized that "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available whether claimed or not." _Id. at 437_; _see also, e.g.,_ _Dahingo_ v. Royal Caribbean Cruises, Ltd., _312 F.Supp.2d 440 (S._D.N.Y. 2004) (Francis, J.) (noting that attorneys' fees equivalent to one-third of common fund had been approved notwithstanding the fact that a significant portion of fund was unclaimed and reverted to defendants).

27. In class and collective action wage and hour lawsuits, public policy favors a common fund attorneys' fee award. _Aros, 2012 U.S. Dist. LEXIS 104429 at *16_; _Reyes_ v. Altamarea Grp., LLC, _No. 10 Civ. 6451,_ 2011 U.S. Dist. LEXIS 115984, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. _Johnson_ v. Brennan, _No. 10 Civ. 4712,_ 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *13 (S.D.N.Y. Sept. 16, 2011); [*19] _deMunecas_ v. Bold Food, LLC, _No. 09 Civ. 440, 2010_ U.S. Dist. LEXIS 87644, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010); _Sand, 2010_ U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3 (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel"). If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. _Willix,_ 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *6; _McMahon, 2010_ U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7; _Sand, 2010_ U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected").

28. The one-third amount that Plaintiffs request is typical of fee awards in this Circuit. _See, e.g.,_ _Capsolas_ v. Pasta Resources Inc., _Case No. 10 Civ. 5595,_ 2012 U.S. Dist. LEXIS 144651, 2012 WL 4760910, at *8 (S.D.N.Y. Oct. 5,

2012) (fee request of one-third is "consistent with the norms of class litigation in this circuit") (internal quotation marks omitted); *Willix* v. Healthfirst Inc., *No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011)* (same).

29. Plaintiffs' counsel's efforts to date have been without compensation, and their entitlement to **[*20]** be paid has been wholly contingent upon achieving a good result. *Id.* ¶ 43. The fee Plaintiffs' counsel request is also reasonable because they will continue to perform work on behalf of the collective in implementing the settlement, but will not make a supplemental fee application. Swartz Decl. ¶ 43. Plaintiffs' Counsel has a continuing obligation to represent the collective during the settlement approval process and the disbursement phase.

30. In this case, Plaintiffs' Counsel did substantial work identifying, investigating, prosecuting, and settling these claims. Since the filing of the original complaint in May 2011, Outten & Golden LLP has spent more than 1,404 attorney, paralegal, and support staff hours prosecuting this case. Swartz Decl. ¶ 38. The Hayber Law Firm and Quinn Law Firm combined spent more than 258 attorney, paralegal, and support staff hours on the case. Declaration of Richard Hayber ¶ 14; Declaration of Anthony J. Pantuso, III ¶ 15. Multiplied by each attorney's, paralegal's, and staff member's hourly rate, this results in a total lodestar amount of approximately $650,394. *Id.* ¶ 41 & **[*21]** Ex. D, E (Summary of Attorney and Staff Time and Litigation Costs and Expenses).

31. The work that Plaintiffs' Counsel has performed in litigating and settling this case demonstrates their commitment to the FLSA collective and to representing the collective's interests. Plaintiffs' Counsel has committed substantial resources for over three years to prosecuting this case.

32. The Court awards Plaintiffs' Counsel $30,557.00 in attorneys' costs.

33. Plaintiffs' Counsel has incurred over $30,557.00 in out of pocket costs prosecuting this case, including costs for electronic research, court fees, court reporters, deposition transcripts, postage and courier fees, working meals, photocopies, telephone calls, travel and Plaintiffs' portion of the mediator's fees. Swartz Decl. ¶ 42. Adding these out of pocket expenditures to the $686,666.66 request for attorneys' fees, Plaintiffs' Counsel seeks attorneys' fees and costs from the Settlement Fund in the amount of $717,223.66. While their lodestar through April 21, 2014 is

approximately $650,394, the requested one-third payment will in all likelihood be less than their loadstar after the completion of the settlement process and less than what Courts **[*22]** have awarded in similar cases. Swartz Decl. ¶¶ 39-40. In fact, "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman, 293 F.R.D. 467, 2013 WL 1803736, at *13*; *see also Vizcaino* v. Microsoft Corp., *290 F.3d 1043, 1052-54 (9th Cir. 2002)* (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *Sewell,* 2012 U.S. Dist. LEXIS 53556, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six."); *In re Lloyd's Am. Trust Fund Litig., No. 96 Civ. 1262, 2002* U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002)* (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *see, e.g., Steiner* v. Am. Broad. Co., *248 Fed. Appx. 780, 783 (9th Cir. 2007)* (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Ramirez* v. Lovin' Oven Catering Suffolk, Inc., *No. 11 Civ. 520,* 2012 U.S. Dist. LEXIS 25060, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012)* (granting attorneys' fees equal to 6.8 times lodestar); *Davis, 827 F. Supp. 2d at 184-86* (awarding multiplier of 5.3 in wage and hour class action); *Buccellato* v. AT&T Operations, Inc., *No. 10 Civ. 463,* 2011 U.S. Dist. LEXIS 85699, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011)* **[*23]** (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund* v. First Databank, Inc., *No. 05 Civ. 11148,* 2009 U.S. Dist. LEXIS 68419, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009)* (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig., 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008)* (awarding multiplier of 5.2); *In re Cardinal Health* Inc. Sec. Litigs, *528 F. Supp. 2d 752, 768 (S.D. Ohio 2007)* (awarding multiplier of six times); *In re Rite Aid Corp. Secs. Litig., 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005)* (awarding multiplier of seven times); *Maley* v. Del Global Techs. Corp., *186 F. Supp. 2d 358, 371 (S.D.N.Y. Jan. 29, 2002)* ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *In re RJR Nabisco,* Inc. Sec. Litig., *No. 88 Civ. 7905, 1992* U.S. Dist. LEXIS 12702, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992)* (awarding multiplier of 6); *Cosgrove* v. Sullivan, *759 F. Supp. 166, 167 n. 1 (S.D.N.Y.1991)* (awarding multiplier of 8.74). Here, Plaintiffs' Counsel do not seek a lodestar multiplier, but rather will almost certainly recover less than their actual lodestar.

Plaintiffs' Counsel anticipates that they will be required to spend substantial additional time **[*24]** administering the settlement in the future, including answering questions from

Participating Plaintiffs about the case and working with the Claims Administrator. Here, Plaintiffs' Counsel does not seek a lodestar multiplier, but rather will almost certainly recover less than their actual lodestar. *Id.* ¶ 42. Accordingly, the parties' agreement that Plaintiffs' Counsel recover attorneys' fees in the amount of one-third of the Gross Settlement Amount, or $686,666.66, and $30,557.00 in attorneys' costs, is reasonable.

34. The attorneys' fees and costs awarded shall be paid from the Gross Settlement Amount.

35. If no appeal of this Approval Order has been filed, within thirty (30) days after the Notice Response Deadline (and if an appeal has been filed regarding this Approval Order and/or Judgment within thirty (30) days after the Effective Date) the Settlement Administrator will simultaneously distribute the funds in the settlement account, by mail or by wire, by making the following payments:

   a. Paying Plaintiffs' Counsel one-third of the Gross Settlement Amount ($686,666.66) as attorneys' fees;

   b. Paying Plaintiffs' Counsel $30,557.00 as attorneys' costs;

   c. Paying a service award of $10,000  [*25] to Plaintiff Lawson;

   d. Paying the Settlement Checks to Participating Plaintiffs in accordance with the allocation plan described in the Settlement Agreement and less applicable taxes and withholdings;

36. Any unclaimed portion from the Gross Settlement Amount shall be paid in accordance with the terms of the Settlement Agreement.

37. The Settling Parties are to bear their own costs and attorneys' fees, except as otherwise provided in the Settlement Agreement.

### CONTINUING JURISDICTION TO ENFORCE SETTLEMENT

38. The Court retains jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, administration and interpretation of the Settlement Agreement and this Judgment, including for overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

39. This Document shall constitute a judgment for purposes of *Federal Rule of Civil Procedure, Rule 58*.

It is so ORDERED this 31 day of July, 2014

Honorable Robert N. Chatigny

United States District Judge

### Exhibit 2

### NOTICE OF PROPOSED SETTLEMENT OF COLLECTIVE ACTION LAWSUIT

[NAME]

[ADDRESS]

[CITY, STATE ZIP]

**If you  [*26] were a Linehaul Service Manager I, II, or III employed by FedEx Ground Package System,** Inc. you may be entitled to a payment from a proposed settlement in a collective action lawsuit.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

   • This notice pertains to any individual who was employed as a Linehaul Service Manager I, II, or III by FedEx Ground Package System. Inc. ("FedEx Ground") between August 1, 2010 and March 31, 2013 ("LHSVMs").

   • Two former LHSVMs have sued FedEx Ground, alleging that FedEx Ground failed to properly pay them and other similarly situated LHSVMs for all of the hours they worked. They filed the lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"). FedEx denies these allegations, and maintains that its LHSVMs were fairly and properly compensated and that it has complied with the law at all times.

   • To avoid the burden, expense, inconvenience, and uncertainty of continued litigation, FedEx Ground has agreed to pay up to $2,060,000.00 into a fund that will be used to pay current and former LHSVMs who qualify for a settlement payment, as well as to pay attorneys' fees, service awards, litigation costs, and the  [*27] expenses of administering the settlement.

   • Under the allocation formula contained in the settlement, you are entitled to receive approximately $ _____, half of which is subject to deductions for applicable taxes and withholdings, like any other paycheck. This amount is based on the number of weeks you worked for FedEx Ground as a LHSVM. As

described more fully below in Paragraphs 3 and 9 of this Notice, to participate in the settlement and receive a settlement payment you must mail a properly completed Consent Form to the Claims Administrator, postmarked no later than _____.

• Neither Plaintiff's Counsel nor FedEx Ground makes any representations concerning tax consequences of this settlement or your participation in it, and you are advised to seek your own personal tax advice prior to acting in response to this Notice.

• Your legal rights may be affected. You have a choice to make:

### YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT:

| | |
|---|---|
| **RETURN THE CONSENT FORM** | By returning a properly completed Consent Form, you will signal your agreement to participate in the settlement and will receive a settlement payment after the final judgment date. |
| **DO NOT RETURN THE CONSENT FORM** | If you do not wish to participate in, or be bound by, the settlement, you should not return the Consent Form, If you do not mail a properly completed Consent Form postmarked by ____, you will not receive a settlement payment. |

• [*28] These rights and options are explained in this notice.

• The Court in charge of this case has approved the settlement. Payments will be made after the final judgment date which means after any appeals, if any, are resolved.

#### BASIC INFORMATION

#### 1. Why did I get this notice?

FedEx Ground's records state that you worked as a LHSVM, as defined above, between August 1, 2010 and March 31, 2013. The Court ordered that you be sent this notice because you have a right to know about a settlement of a collective action lawsuit, and about all of your options under the settlement. After any appeals are heard, payments will be mailed to settlement class members who send in their Consent Form.

This notice explains the lawsuit, the settlement, your legal rights, and what benefits are available.

The Court overseeing this case is the United States District Court for the District of Connecticut. This lawsuit is known as *Bozak* v. FedEx Ground Package System, Inc., No. 11-cv-00738-RNC.

#### 2. What is this lawsuit about?

This lawsuit claims that FedEx Ground improperly classified LHSVMs as exempt employees who are not entitled to receive overtime pay under state and federal wage and hour laws. Because they were allegedly [*29] misclassified as exempt, the lawsuit claims that FedEx Ground failed to pay the LHSVMs overtime pay for the time they worked in excess of 40 hours a week. FedEx Ground believes that LHSVMs were properly classified and that it has complied with the law at all times.

#### 3. What is a collective action?

In a "Collective Action," one or more people called "Named Plaintiffs" sue on behalf of people who are believed to have similar claims. However, other LHSVMs who have similar claims do not become part of the Collective Action until they opt into the Collective Action. You may opt into this Collective Action lawsuit and become a "Collective Action Member" to participate in the settlement by signing and returning the enclosed Consent Form. A settlement check will be mailed to you once the final judgment date has occurred.

#### 4. Why is there a settlement offer?

The Court did not decide in favor of Plaintiff or Defendant. Instead, the parties engaged in settlement negotiations as a result of which FedEx Ground made a settlement offer that Plaintiff's Counsel believes is fair and reasonable and will avoid the cost of further litigation and a trial, and allow the people affected to get compensation.

#### WHO [*30] CAN PARTICIPATE IN THE SETTLEMENT

#### 5. How do I know if I will be included in the settlement?

After the final judgment date you will receive a settlement check if you worked for FedEx Ground as a LHSVM, as defined above, between August 1, 2010 and March 31, 2013, **and** you have signed and returned the enclosed Consent Form.

#### 6. I am not sure if I should be included.

If you are not sure whether you should be included, you can ask for free help. You can contact the Settlement Claims Administrator or Plaintiff's Counsel as follows:

2014 U.S. Dist. LEXIS 106042, *30

Outten & Golden LLP

3 Park Avenue, 29th Floor

New York, NY 10016

(212) 245-1000 or toll-free at (877) 468-8836

om@outtengolden.com

The Hayber Law Firm, LLC

221 Main Street, Suite 502

Hartford, CT 06106

(860) 522-8888

rhayber@hayberlawfirm.com

[SETTLEMENT ADMIN INFO]

### The Settlement Benefits — What You Get

#### 7. What does the settlement provide?

FedEx Ground has agreed to pay up to $2,060,000.00 into a fund to be divided among current and former LHSVMs as defined above. The settlement fund covers payments to Plaintiff's Counsel for attorneys' fees and costs, a payment to the individual who represented the LHSVMs in the case and this settlement and the costs of administrating the settlement. **[*31]** The remaining amount, after attorneys' fees and costs and administrative fees have been deducted, shall be divided among Class Members based on the number of full work weeks they worked for FedEx Ground.

#### 8. How much will my payment be?

Based on the formula in the settlement you will be entitled to receive approximately $ _____, half of which is subject to deductions for applicable taxes and withholdings like any other paycheck. The allocation formula takes into account the number of full work weeks you worked.

### How You Get a Payment

9. How can I get my payment?

To get your payment, you must return a properly completed Consent Form to the Claims Administrator postmarked no later than _____. If you return a properly completed Consent Form to the Claims Administrator by the deadline, you will be sent a settlement check after all appeals, if any, have been exhausted.

#### 10. What am I giving up to join the Collective Action and get a payment?

If you send in your Consent Form to become part of the Collective Action and/or you cash your settlement check, you cannot sue, continue to sue, or be a party in any other lawsuit against FedEx Ground about the legal issues in this case. It also **[*32]** means that all of the Court's orders will apply to you and legally bind you.

### The Lawyers Representing You

#### 11. Do I have a lawyer in this case?

Yes. The law firms of The Hayber Law Firm, LLC, 221 Main Street, Suite 502 Hartford, Connecticut 06106 and Outten & Golden LLP, 3 Park Avenue, 29th Floor New York, New York 10016, represent you and the other LHSVMs who join the case. You will not be charged separately for these lawyers. Their fees are being paid from the total settlement fund. If you want to be represented by your own lawyer, you may hire one at your own expense.

#### 12. How will the lawyers be paid?

Plaintiff's Counsel asked and the Court approved payment of one-third of the settlement fund for attorneys' fees and $30,557.00 for costs and expenses. These fees compensate Plaintiff's Counsel for investigating the facts, litigating the case, and negotiating the settlement. The cost of the settlement administrator will also come from the settlement fund.

### Getting More Information

#### 13. Are there more details about the settlement?

This notice summarizes the settlement. More details are in the Settlement Agreement presented to the Court. You can get a copy of the Settlement Agreement by sending **[*33]** a request, in writing, to:

**[INSERT Details re Administrator]**

#### 14. How do I get more information?

If you have other questions about the settlement, you can contact the Settlement Claims Administrator, or Plaintiff's Counsel at the addresses and/or telephone numbers below.

Outten & Golden LLP

3 Park Avenue, 29th Floor

New York, NY 10016

**(212) 245-1000 or toll-free at (877) 468-8836**

2014 U.S. Dist. LEXIS 106042, *33

ojq@outtengolden.com

The Hayber Law Firm, LLC

221 Main Street, Suite 502

Hartford, CT 06106

**(860) 522-8888**

rhayber@hayberlawfirm.com

[INSERT Settlement Admin Info]

**PLEASE DO <u>NOT</u> CONTACT THE COURT ABOUT THIS NOTICE, THE CASE OR THE SETTLEMENT.**

DATED: [<u>Insert Date of Mailing</u>], 2014

◆ Positive
As of: May 2, 2016 3:52 PM EDT

# *Aros v. United Rentals, Inc.*

United States District Court for the District of Connecticut

July 26, 2012, Decided; July 26, 2012, Filed

CIVIL ACTION NO. 3:10-CV-73 (JCH); CIVIL ACTION NO. 3:11-CV-1281 (JCH); CIVIL ACTION NO. 3:11-CV-1282 (JCH); CIVIL ACTION NO. 3:11-CV-1283 (JCH); CIVIL ACTION NO. 3:11-CV-1284 (JCH); CIVIL ACTION NO. 3:11-CV-1285 (JCH)

**Reporter**
2012 U.S. Dist. LEXIS 104429; 2012 WL 3060470

ANDREAS AROS ET AL., Plaintiffs, v. UNITED RENTALS, INC., ET AL., Defendants. CHAD CHRISTOPHER, Plaintiff, v. UNITED RENTALS, INC., ET AL., Defendants. ANNA THOMAS-PAQUIN, Plaintiff, v. UNITED RENTALS, INC., ET AL., Defendants. LAURA HUGHES, Plaintiff, v. UNITED RENTALS, INC., ET AL., Defendants. NEIL HAMMER, Plaintiff, v. UNITED RENTALS, INC., ET AL., Defendants. LISA LANG, Plaintiff, v. UNITED RENTALS, INC., ET AL., Defendants.

**Prior History:** Aros v. United Rentals, Inc., 2011 U.S. Dist. LEXIS 125870 (D. Conn., Oct. 31, 2011)

## Core Terms

settlement, Plaintiffs', attorneys', awards, named plaintiff, collection action, settlement fund, Opt-in, class action, Rentals, Courts, prosecuting, class representative, expenses, COSTS, parties

## Case Summary

### Overview

Plaintiffs filed a collective action under *29* U.S.C.S. § 216(b) alleging that they were misclassified as exempt from the overtime provisions under the FLSA. Plaintiffs moved for approval of the parties' settlement agreement. The court held that the FLSA settlement met the standard for approval. The settlement was the result of vigorously contested litigation with substantial discovery, motion practice, and arm's-length negotiation conducted over much of that time. The settlement agreement resolved a clear and actual dispute under circumstances supporting a finding of fair settlement.

### Outcome

Motion for approval granted.

## LexisNexis® Headnotes

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

*HN1* Fair Labor Standards Act settlements generally require judicial approval to be effective, because private settlements will not effectuate a valid release.

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

*HN2* Courts approve Fair Labor Standards Act (FLSA) settlements when they are reached as a result of contested litigation to resolve bona fide disputes. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

*HN3* Named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

*HN4* Incentive awards are within the discretion of the court. In examining the reasonableness of service awards, courts consider: (1) the personal risk incurred by the named plaintiffs; (2) time and effort expended by the named plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

*HN5* Incentive awards are particularly appropriate in the employment context where the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

*HN6* Courts recognize the important factual knowledge that named plaintiffs bring to employment class and collective actions, including information about employer policies and practices that affect compensation.

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

Labor & Employment Law > Wage & Hour Laws > Remedies > Costs & Attorney Fees

*HN7* The Fair Labor Standards Act provides for "reasonable" attorneys' fees. *29* U.S.C.S. § 216(b).

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

Labor & Employment Law > Wage & Hour Laws > Remedies > Costs & Attorney Fees

*HN8* Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

Labor & Employment Law > Wage & Hour Laws > Remedies > Costs & Attorney Fees

*HN9* Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the Fair Labor Standards Act.

Civil Procedure > ... > Class Actions > Class Attorneys > Fees

*HN10* In applying the common fund method, the U.S. Supreme Court, the U.S. Court of Appeals for the Second

Circuit, and other Circuit Courts, have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the defendants.

Civil Procedure > ... > Class Actions > Class Attorneys > Fees

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

Labor & Employment Law > Wage & Hour Laws > Remedies > Costs & Attorney Fees

*HN11* In class and collective action wage and hour lawsuits, public policy favors a common fund attorneys' fee award. Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts.

Civil Procedure > ... > Class Actions > Class Attorneys > General Overview

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

Labor & Employment Law > Wage & Hour Laws > Remedies > Costs & Attorney Fees

*HN12* In Fair Labor Standards Act collective actions, as in *Fed. R. Civ. P. 23* class actions, courts typically allow counsel to recover their reasonable out-of-pocket expenses.

**Counsel:**   **[*1]** For Andreas Aros, Ind & o/b/o other similarly situated individuals (3:10-cv-00073), Plaintiff: Gary Edward Phelan, LEAD ATTORNEY, Cohen & Wolf-Wspt, Westport, CT; Justin M. Swartz, PRO HAC VICE, Melissa E. Pierre-Louis, PRO HAC VICE, Molly A Brooks, LEAD ATTORNEYS, Outten & Golden-NY, New York, NY; Margaret B. Ferron, Richard Eugene Hayber, LEAD ATTORNEYS, Hayber Law Firm LLC, Hartford, CT.

For Charles Plomteaux, Ind & o/b/o other similarly situated individuals (3:10-cv-00073), Plaintiff: Justin M. Swartz, PRO HAC VICE, Melissa E. Pierre-Louis, PRO HAC VICE, LEAD ATTORNEYS, Outten & Golden-NY, New York, NY; Margaret B. Ferron, LEAD ATTORNEY, Hayber Law Firm LLC, Hartford, CT.

For United Rentals Inc, United Rentals (NA) Inc (3:10-cv-00073), Defendants: Alison Jacobs Wice, LEAD ATTORNEY, Stamford, CT; Cary G. Palmer, LEAD

2012 U.S. Dist. LEXIS 104429, *1

ATTORNEY, PRO HAC VICE, Jackson Lewis LLP - CA, Sacramento, CA; David R. Golder, Edward M. Richters, William Joseph Anthony, LEAD ATTORNEYS, Jackson Lewis - Htfd, CT, Hartford, CT; Nathan W. Austin, LEAD ATTORNEY, PRO HAC VICE, Jackson Lewis, LLP - Sacramento,CA, Sacramento, CA.

For Chad Christopher (3:11-cv-01281), Plaintiff: Justin M. Swartz, LEAD ATTORNEY, PRO HAC VICE, [*2] Outten & Golden-NY, New York, NY; Richard Eugene Hayber, LEAD ATTORNEY, Hayber Law Firm LLC, Hartford, CT.

For United Rentals, Inc., United Rentals (North America), Inc. (3:11-cv-01281), Defendants: David R. Golder, William Joseph Anthony, LEAD ATTORNEYS, Jackson Lewis - Htfd, CT, Hartford, CT.

For Kathy Thomas-Paquin (3:11-cv-01282), Plaintiff: Justin M. Swartz, LEAD ATTORNEY, PRO HAC VICE, Outten & Golden-NY, New York, NY; Richard Eugene Hayber, LEAD ATTORNEY, Hayber Law Firm LLC, Hartford, CT.

For United Rentals, Inc., United Rentals (North America), Inc. (3:11-cv-01282), Defendants: David R. Golder, William Joseph Anthony, LEAD ATTORNEYS, Jackson Lewis - Htfd, CT, Hartford, CT.

For Laura Hughes (3:11-cv-01283), Plaintiff: Justin M. Swartz, LEAD ATTORNEY, PRO HAC VICE, Outten & Golden-NY, New York, NY; Richard Eugene Hayber, LEAD ATTORNEY, Hayber Law Firm LLC, Hartford, CT.

For United Rentals, Inc., United Rentals (North America), Inc. (3:11-cv-01283), Defendants: David R. Golder, William Joseph Anthony, LEAD ATTORNEYS, Jackson Lewis - Htfd, CT., Hartford, CT.

For Neil Hammer (3:11-cv-01284), Plaintiff: Justin M. Swartz, LEAD ATTORNEY, PRO HAC VICE, Outten & Golden-NY, New York, NY; Richard [*3] Eugene Hayber, LEAD ATTORNEY, Hayber Law Firm LLC, Hartford, CT.

For United Rentals, Inc., United Rentals (North America), Inc. (3:11-cv-01284), Defendants: David R. Golder, William Joseph Anthony, LEAD ATTORNEYS, Jackson Lewis - Htfd, CT, Hartford, CT.

For Lisa Lang (3:11-cv-01285), Plaintiff: Justin M. Swartz, LEAD ATTORNEY, PRO HAC VICE, Outten & Golden-NY, New York, NY; Richard Eugene Hayber, LEAD ATTORNEY, Hayber Law Firm LLC, Hartford, CT.

For United Rentals, Inc., United Rentals (North America), Inc. (3:11-cv-01285), Defendants: David R. Golder, William Joseph Anthony, LEAD ATTORNEYS, Jackson Lewis - Htfd, CT, Hartford, CT.

**Judges:** Honorable Janet C. Hall, United States District Judge.

**Opinion by:** Janet C. Hall

# Opinion

### ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE SETTLEMENT, SERVICE PAYMENTS, AND ATTORNEYS' FEES AND COSTS

The Plaintiffs are former Operations Managers employed by United Rentals, Inc. and United Rentals (North America), Inc., ("United Rentals") an equipment rental company with approximately 485 branch locations throughout the United States.

On January 15, 2010, Plaintiff Andreas Aros commenced this action by filing a collective action complaint against United Rentals, alleging [*4] on behalf of himself and all other similarly situated employees that Defendants misclassified Operations Managers ("OMs") as exempt and failed to pay them overtime when they worked more than 40 hours in a workweek, in violation of the Fair Labor Standards Act ("FLSA"). (Declaration of Justin M. Swartz in Support of Plaintiffs' Unopposed Motion for Approval of the Settlement, Service Payments, and Attorneys' Fees and Costs ("Swartz Decl.") ¶¶ 5-6.)

On January 15, 2010, Plaintiff Andreas Aros filed a collective action complaint, alleging on behalf of himself and all other similarly situated employees that Defendants misclassified OMs as exempt and failed to pay them overtime when they worked more than 40 hours in a workweek, in violation of the Fair Labor Standards Act ("FLSA"). (Swartz Decl. ¶ 6.)

On September 23, 2010, the Court granted Plaintiff's motion for conditional certification, and on November 17, 2010, notice was mailed to all OMs within the class period. (Swartz Decl. ¶ 8.) 73 OMs opted into the case. (Id.) On February 18, 2011, Plaintiff moved to amend his complaint to add a new named plaintiff, Charles Plomteaux, and claims under California law. (Swartz Decl. ¶ 9.) On April [*5] 25, 2011, the Court granted Plaintiff's motion to amend, and on the same day, Plaintiff filed his first amended class and collective action complaint. (Id. ¶¶ 10-11.)

2012 U.S. Dist. LEXIS 104429, *5

On June 9, 2011, United Rentals moved to strike the consent to join forms of ten opt-in plaintiffs who had previously signed severance agreements that United Rentals claimed precluded them from participating in class or collective actions. (Swartz Decl. ¶ 12.) On July 14, 2011, the parties agreed to a stipulation that tolled the statute of limitations for the opt-in plaintiffs who were the subject of United Rentals' motion and allowed these opt-ins to re-file their claims as individual lawsuits. (*Id.* ¶ 13.) Five of them (the "Individual Plaintiffs") did so. (*Id.* ¶ 14.) Each of the Individual Plaintiffs' lawsuits was assigned to this Court. On September 15, 2011, Defendants filed motions to transfer each of these cases to district courts all over the country. (*Id.* ¶ 15.)

The parties reached this $875,000 settlement (the "Settlement Fund") on behalf of the Opt-In Plaintiffs in the FLSA *§ 216(b)* collective after engaging in discovery and extensive formal and informal settlement discussions. (*Id.* ¶¶ 15-25.) The terms of the **[*6]** settlement have been set out in a formal written Settlement and Release ("Settlement Agreement"). (*Id.* ¶ 26; Ex. B (Settlement Agreement).) Plaintiffs now seek approval of the settlement, service payments to the named Plaintiffs, and attorneys' fees and costs.

Having considered Plaintiffs' Unopposed Motion of the Settlement, Service Payments, and Attorneys' Fees and Costs, the supporting declarations and exhibits thereto, and the complete record in this matter, for the reasons set forth below and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**APPROVAL OF THE FLSA SETTLEMENT**

1. The Court hereby approves the FLSA settlement on behalf of the Opt-In Plaintiffs.

2. *HN1* FLSA settlements generally require judicial approval to be effective, because private settlements will not effectuate a valid release. *See Brooklyn Savings Bank* v. O'Neil, *324 U.S. 697, 703-04, 65 S. Ct. 895, 89 L. Ed. 1296 (1945).*

3. *HN2* Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores,* Inc. v. United States, *679 F.2d 1350, 1353-54 (11th Cir. 1982); Clark* v. Ecolab Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2010* U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *7 (S.D.N.Y. May 11, 2010);* **[*7]** *McMahon* v.

*Olivier Cheng Catering & Events, LLC, No. 08 Civ. 8713 (PGG), 2010* U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010).* Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores, 679 F.2d at 1353-54.* If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id. at 1354; Clark, 2010* U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *7; McMahon, 2010* U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6.*

4. The FLSA settlement in this case meets the standard for approval. The settlement was the result of vigorously contested litigation with substantial formal and informal discovery, motion practice, and arm's-length negotiation conducted over much of that time. (Swartz Decl. ¶¶ 31.) Plaintiffs conducted a thorough investigation, including thorough interviews with approximately 35 Opt-In Plaintiffs, production and review of paper discovery, and a deposition of Defendants' corporate representative. In addition, Defendants took the depositions of the named Plaintiffs and six additional Opt-In Plaintiffs. (Swartz Decl. ¶¶ 15-19.) Recognizing the uncertain legal and factual issues involved, the parties **[*8]** reached the settlement pending before the Court after a day-long settlement conference before Magistrate Judge Fitzsimmons and engaging in settlement discussions, as well as in negotiations conducted by telephone and electronic mail through counsel. (*Id.* ¶¶ 20-25.) At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis. (*Id.* ¶ 30.) Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding of fair and reasonable arm's-length settlement, and is therefore appropriate for approval.

**AWARD OF SERVICE PAYMENTS TO NAMED PLAINTIFFS**

5. The Court finds reasonable service awards of $7,500 each for named Plaintiffs Andreas Aros and Charles Plomteaux. These amounts shall be paid from the Settlement Fund.

6. *HN3* Named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g. Parker* v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, at *1 (BSJ)(JCF), 2010* U.S. Dist. LEXIS 12762, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)* ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred **[*9]** by named plaintiffs and compensating them for their additional efforts."); *Velez* v.

2012 U.S. Dist. LEXIS 104429, *9

Majik Cleaning Serv., No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, 2007 WL 7232783, at *7 (S.D.N.Y. June 22, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.") (internal quotation marks and citation omitted); Clark, 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *9; McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *8-9; see also Nantiya Ruan, Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) (discussing the importance of aggregation of claims in the prosecution of civil and wage and hour rights).

7. HN4 "Incentive awards . . . are within the discretion of the court." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (discussing service awards in a Rule 23 class action settlement). In examining the reasonableness of service awards, courts consider: (1) the personal risk incurred by the named plaintiffs; (2) time and [*10] effort expended by the named plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights. See id. Here, the named Plaintiffs satisfy all three factors.

8. First, in this settlement on behalf of a FLSA § 216(b) collective, just as in the Rule 23 class action settlements cited above, the named Plaintiffs agreed to bring the action in their name and to testify if there was a trial. (Swartz Decl. ¶ 46.) In so doing, they assumed the risk of retaliation. (Id.); see also Frank, 228 F.R.D. at 187 (noting that HN5 incentive awards are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers") see also Velez, 2007 U.S. Dist. LEXIS 46223, 2007 WL 7232783, at *7 (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers"); Silberblatt v. Morgan Stanley, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has [*11] been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded.").

9. Even where there is not a record of actual retaliation, class representatives merit recognition for assuming the risk

of retaliation for the sake of absent class members. See Frank, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

10. Second, the named Plaintiffs should be awarded service payments for the significant work they undertook on behalf of the Opt-in Plaintiffs. They expended time and effort to assist in the preparation of the complaints, provide Plaintiffs' Counsel with relevant documents, submitted declarations in support of Plaintiffs' claims, and assist counsel in the investigation of Plaintiffs' claims. (Swartz Decl. ¶ 46.) In addition, the named Plaintiffs were deposed by Defendants and prepared extensively with Plaintiffs' counsel in advance of their depositions. [*12] (Swartz Decl. ¶ 47.) HN6 Courts recognize the important factual knowledge that named plaintiffs bring to employment class and collective actions, including information about employer policies and practices that affect compensation. See Frank, 228 F.R.D. at 187-88 (recognizing the important role that class representatives play as the "primary source of information concerning the claims[,]" including by responding to counsel's questions and reviewing documents).

11. Last, the amount of the requested service awards is consistent and reasonable with awards given in class and collective actions. See, e.g., McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *8-9 (awarding $5,000 service payments to two class representatives from $400,000 fund); Parker, 2010 U.S. Dist. LEXIS 12762, 2010 WL 532960, at *1-2 (awarding service payments of $5,000 to $15,000 to twelve class representatives from $745,000 fund). Accordingly, service payments are rewarded.

## AWARD OF FEES AND COSTS TO PLAINTIFFS' COUNSEL

12. The Court awards Plaintiffs' Counsel $291,666.67 in attorneys' fees, which is one-third of the Settlement Fund.

13. HN7 The FLSA provides for "reasonable" attorneys' fees. 29 U.S.C. § 216(b) ("The court in [an action to recover under FLSA] shall, in addition [*13] to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

14. HN8 Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to

2012 U.S. Dist. LEXIS 104429, *13

justify the retention of able, legal counsel." *Sand* v. Green-berg, *No. 08 Civ. 7840 (PAC), 2010* U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010).

15. **HN9** Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA. *See Braunstein* v. E. Photo Labs., Inc., *600 F.2d 335, 336 (2d Cir. 1975)*, *cert. denied, 441* U.S. 944, 99 S. Ct. 2162, 60 L. Ed. 2d 1046 (1979) (observing that "broad remedial purpose" of the FLSA should be given a "liberal construction"); *Willix* v. Healthfirst, Inc., *No. 07 Civ. 1143 (ENV)(RER), 2011* U.S. Dist. LEXIS 21102, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011) (citing cases); *Vazquez* v. Ranieri Cheese Corp., *No. 07-CV-464 (ENV-)(VVP), 2011* U.S. Dist. LEXIS 11503, 2011 WL 554695, at *4 (E.D.N.Y. 2011) ("[T]he fee provisions contained in the FLSA and New York Labor Law were designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to **[*14]** create a financial incentive for qualified counsel to take such cases under conventional fee arrangements.") (internal quotation marks and citation omitted)*; see also McMahon, 2010* U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7; *Khait* v. Whirlpool Corp., *No. 06-6381 (ALC), 2010* U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010); *Prasker* v. Asia Five Eight LLC, *No. 08 CIV. 5811 (MGC), 2010* U.S. Dist. LEXIS 1445, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010); *Sand, 2010* U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3.

16. **HN10** In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts, have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants. *See Boeing Co.* v. Van Gemert, et al., *444* U.S. 472, 480-81, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980); *Masters* v. Wilhelmina Model Agency, Inc., *473 F.3d 423 (2d Cir. 2007)*; *Waters* v. International Precious Metals Corp., *190 F.3d 1291, 1296-97 (11th Cir. 1999)*; *Williams* v. MGM-Pathe Communs. Co., *129 F.3d 1026* (9th Cir. 1997) (reversing district court award of 33% of the claimed fund and awarding attorneys' fees of 33% of the available fund).

17. In *Masters*, the Second Circuit **[*15]** recognized that "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available whether claimed or not." *Masters, 473 F.3d at 437*; *see also,*

*e.g., Dahingo* v. Royal Caribbean Cruises, Ltd., *312 F. Supp. 2d 440 (S.*D.N.Y. 2004) (Francis, J.) (noting that attorneys' fees equivalent to one-third of common fund had been approved notwithstanding the fact that a significant portion of fund was unclaimed and reverted to defendants).

18. Courts have occasionally declined to award a percentage of the entire settlement fund in settlements providing for a reversion for reasons not applicable here. For example, in *Parker* v. DeBrauwere, the court did not follow *Masters* because no fund or fixed amount of money had been established, and it was "clear from the outset that a small number of claims would be filed." *631 F. Supp. 2d 242, 266 (E.*D.N.Y. 2009). Moreover, the *Parker* court relied on a case that predated Masters - *In re Arakis Energy Corp., No. 95 CV 3431(ARR), 2001* U.S. Dist. LEXIS 19868, 2001 WL 1590512 (E.D.N.Y. Oct. 31, 2001) - where plaintiffs' **[*16]** counsel sought an award that would have been more than 100% of the amount actually paid to class members. Even there, the Court awarded plaintiffs' counsel 25% of the entire available fund, which resulted in a multiplier of 1.2 times plaintiffs' counsel's lodestar. Here, Class Counsel seeks an award that is considerably less than the amount actually paid to the Class and is much less than their actual lodestar.

19. **HN11** In class and collective action wage and hour lawsuits, public policy favors a common fund attorneys' fee award. *Reyes* v. Altamarea Grp., LLC, *No. 10 Civ. 6451, 2011* U.S. Dist. LEXIS 115984, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Johnson* v. Brennan, *No. 10 Civ. 4712, 2011* U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *13 (S.D.N.Y. Sept. 16, 2011); *deMunecas* v. Bold Food, LLC, *No. 09 Civ. 440, 2010* U.S. Dist. LEXIS 87644, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010); *Sand, 2010* U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3 (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise **[*17]** be too small to justify the retention of able, legal counsel"). If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Willix, 2011* U.S. Dist. LEXIS 21102, 2011 WL 754862, at *6; *McMahon, 2010* U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7; *Sand, 2010* U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

20. The fee Class Counsel requests is also reasonable because they will continue to perform work on behalf of the

Case 3:13-cv-01027-AWT   Document 236-3   Filed 05/10/16   Page 98 of 207

Page 7 of 8
2012 U.S. Dist. LEXIS 104429, *17

Class but will not make a supplemental fee application. Class Counsel has a continuing obligation to represent the Class during the settlement approval process and the disbursement phase. In fact, Class Counsel has already incurred additional attorneys' fees, for which they will not seek reimbursement, in preparing this approval motion. *See deMunecas, 2010 U.S. Dist. LEXIS 87644, 2010 WL 3322580, at * 10* (discussing relevance of continuing obligation to class in assessment of fee request and approving attorneys' fee award of 33% of $800,000 settlement of FLSA and NYLL collective and class claims after completion of informal discovery process and mediation).

21. In this case, Plaintiffs' Counsel did substantial **[*18]** work identifying, investigating, prosecuting, and settling Plaintiffs' and Opt-in Plaintiffs' claims. Since the filing of the original complaint in January 2010, Outten & Golden LLP has spent more than 2,035 attorney, paralegal, and support staff hours prosecuting this case. (Swartz. Decl. ¶ 38.) The Hayber Law Firm has spent more than 127 attorney hours on the case. (*Id.* ¶ 39; Ex. D (Summary of Attorney and Staff Time and Litigation Costs and Expenses).)

22. Their efforts to date have been without compensation, and their entitlement to be paid has been wholly contingent upon achieving a good result. (*Id.* ¶ 50.) The requested award is consistent with the norms of class and collective litigation in this circuit. *See Gilliam v. Addicts Rehab. Ctr. Fund, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, 2008 WL782596, at *5 (S.D.N.Y. Mar. 24, 2008) see also Parker, 2010 U.S. Dist. LEXIS 12762, 2010 WL 532960, at *2* (awarding class counsel 33% of $745,000 fund in FLSA and NYLL class and collective action); *McMahon, 2010 U.S. Dist. LEXIS 189132010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7* (awarding class counsel 33% of $400,000 settlement fund in FLSA and NYLL class and collective action); *Prasker, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *6* (awarding class counsel fees of $346,500 out of $1,050,000 settlement fund in **[*19]** FLSA and NYLL class and collective action); *Reyes v. Buddha-Bar NYC, No. 08 Civ. 2494 (DF), 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *4* (awarding 33% of $710,000 fund in FLSA and NYLL class and collective action).

23. Plaintiffs' Counsel, Outten & Golden LLP and The Hayber Law Firm, LLC, are experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions. *See, e.g., Willix, 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *6* (Outten & Golden has "substantial experience prosecuting and settling . . . wage

and hour class actions, and are well-versed in wage and hour law and in class action law"); *Clark, 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *8; McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6; Prasker, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *6; Damassia v. Duane Reade, Inc., No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 U.S. Dist. LEXIS 77489, 2009 WL 5841128, at *3 (S.D.N.Y. July 27, 2009)* (noting that Outten & Golden "has substantial experience prosecuting and settling employment class actions, including wage and hour class actions and are well-versed in wage and hour law and in class action law"); *Reyes, 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *4; Westerfield v. Washington Mut. Bank, No. 06 Civ. 2817, No. 08 Civ. 287, 2009 U.S. Dist. LEXIS 94544, 2009 WL 5841129, at *4 (E.D.N.Y. Oct. 8, 2009)* **[*20]** .

24. The work that Plaintiffs' Counsel has performed in litigating and settling this case demonstrates their commitment to the FLSA collective and to representing the collective's interests. Plaintiffs' Counsel has committed substantial resources for over two years to prosecuting this case.

25. The requested award is also significantly below Plaintiffs' Counsel's total lodestar. (Swartz Decl. ¶ 54.) Plaintiffs' Counsel anticipates that they will be required to spend substantial additional time administering the settlement in the future, including answering questions from Opt-in Plaintiffs about the case and working with the Claims Administrator. (*Id.* ¶ 58.) Accordingly, the parties' agreement that Plaintiffs' Counsel recover attorneys' fees in the amount of one-third of the Settlement Fund, or $291,666.67, is reasonable and should be approved.

26. The Court also awards Plaintiffs' Counsel reimbursement of their litigation expenses in the amount of $19,426.10. *HN12* In FLSA collective actions, as in *Rule 23* class actions, courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003).* **[*21]** Here, Class Counsel's un-reimbursed expenses are reasonable and were incidental and necessary to the representation of the FLSA collective.

27. The attorneys' fees awarded and the amount in reimbursement of litigation costs and expenses shall be paid from the Settlement Fund.

## CONCLUSION

28. At the conclusion of the opt-out period described in the Settlement Agreement or, if a party appeals this Order, after

all requests for rehearing, reconsideration, or appellate review have been exhausted, the Claims Administrator retained by Defendants shall distribute the funds in the settlement account by making the following payments in the order below :

a. Paying Plaintiffs' Counsel one-third percent of the Settlement Fund ($291,666.67);

b. Reimbursing Plaintiffs' Counsel for $19,426.10 in litigation costs and expenses;

c. Paying service awards of $7,500 each to named Plaintiffs Andreas Aros and Charles Plomteaux;

d. Paying the remainder of the funds currently in the settlement account to Opt-in Plaintiffs in accordance with the allocation plan described in the Settlement Agreement.

53. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing  [*22] the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this 26th day of July, 2012.

/s/ Janet C. Hall

Honorable Janet C. Hall

United States District Judge

◆ Positive

As of: May 2, 2016 4:06 PM EDT

## *Duchene v. Michael Cetta, Inc.*

United States District Court for the Southern District of New York

September 10, 2009, Decided; September 10, 2009, Filed

06 Civ. 4576 (PAC) (GWG)

**Reporter**

2009 U.S. Dist. LEXIS 85955; 2009 WL 5841175

GERALD DUCHENE, et al., Plaintiffs, -against- MICHAEL CETTA, INC. d/b/a SPARKS STEAK HOUSE, and MICHAEL CETTA, Defendants.

**Prior History:** *Duchene v. Michael L. Cetta, Inc., 244 F.R.D. 202, 2007 U.S. Dist. LEXIS 44984 (S.D.N.Y., 2007)*

## Core Terms

settlement, final approval, attorneys', tip, damages, settlement fund, waiters, Lawsuit, parties

**Counsel:** [*1] For Gerald Duchene, aon behalf of himself and all others similarly situated, Scot Berenson, Marian Bocris, Husein Bracic, Gaby Cucu, Jose Dafraga, Pjetrovic Damir, Daniel Durdek, Omar Ebied, Nari Ferreira, Salah Helal, Sead Hot, Ali Kasmi, Ladislav Kulisek, Marin Mesic, Jose Monge, Edelmiro Moreno, Sammy Musovic, Laurence O'Neill, Ivan Pavicic, Sucko Pjetrovic, Fikret Radoncic, Fahrudin Redzepagic, Alaettin Sangu, Victor Simoes, Daniel Suarez, Blaise Yaksick, on behalf of themselves and all others similarly situated, Plaintiffs: Louis Pechman, LEAD ATTORNEY, Laurie Berke-Weiss, Berke-Weiss & Pechman LLP, New York, NY.

For Fadil Kurmemovic, Plaintiff: Laurie Berke-Weiss, Berke-Weiss & Pechman LLP, New York, NY.

For Sani Hadzibrahimovic, Carlos Prado, Ian COLLINS, Leo Blokar, Diego Suarez, Ahmed T. Ibrahim, Ibrahim Wakim, Constantin Arama, Carlos Anibal Ponce, Kevin Mason, Gerry Finnegan, Armindo Barata, Carlos A. Zufriategui, Alaettin Sungu, Mirzet Purisic, Bogdan Stanciu, Ioan Mircica, Jorge Horacio Alvarez, Georgian Cibu, Gerardo Alarcon, Fadil Kurmemovic, Saied G. Salem, Kelmend Vutmi, Elsayed Ali, Christopher Rourke, Akbal Makhoul, Stanley Zuk, Marek Krakowiak, Kamal Brahimi, Mohamed [*2] Elbeyali, Rachid Lamniji, Giuseppe Vetro, Eduard Bulku, Suleyman Kucur, Sadik Preljvukaj, Almir Selimovic, Jeton Gjidija, Jonatan Aksal, Paul Belibrov,

Silvio Lustica, Paul Neagu, Plaintiffs: Louis Pechman, LEAD ATTORNEY, Berke-Weiss & Pechman LLP, New York, NY.

For Michael Cetta, Inc., doing business as Sparks Steak House, Defendant: Philip K Davidoff, LEAD ATTORNEY, Jeffrey Alan Goldstein, Ford & Harrison LLP, New York, NY.

For Michael Cetta, Defendant: Philip K Davidoff, Jeffrey Alan Goldstein, LEAD ATTORNEYS, Ford & Harrison LLP, New York, NY.

For Costel Dumitra, ADR Provider: Louis Pechman, Berke-Weiss & Pechman LLP, New York, NY.

**Judges:** Honorable Paul A. Crotty, United States District Judge.

**Opinion by:** Paul A. Crotty

## Opinion

### FINAL ORDER AND JUDGMENT GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, ATTTORNEYS' FEES AND SERVICE PAYMENTS

The above-captioned matter came before the Court on plaintiffs' Motion for Final Approval of Settlement, Attorneys' Fees, and Service Payments (the "Motion for Final Approval"). (Docket No. __).

On June 14, 2006, Gerald Duchene filed a Complaint (the "Lawsuit") alleging that defendants Michael Cetta, Inc. d/b/a Sparks Steak House and Michael Cetta (collectively, "Sparks" [*3] or "defendants") violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). The Lawsuit alleged that Sparks unlawfully deducted and distributed the tips of waiters to individuals at

2009 U.S. Dist. LEXIS 85955, *4

Sparks who were not "tipped employees" (*e.g.*, the Banquet Manager, Kitchen Manager, Wine Steward, appetizer expediters or kitchen "waiters," and the dessert "waiter"). The plaintiffs sought recovery of, *inter alia*, misappropriated tips, unpaid wages, the value of the "tip credit" improperly taken by Sparks, liquidated damages, and attorneys' fees and costs.

The Lawsuit was certified to proceed as a collective action under *Section 216(b) of the FLSA* on August 24, 2006 on behalf of waiters who were employed by Sparks at any time between June 14, 2003 and the date of final judgment (the "Collective"). On June 18, 2007, the Court granted plaintiffs' motion under *Rule 23* to certify a class (the "Rule 23 Class") consisting of all persons who have worked as waiters at Sparks between June 14, 2000 and the date of final judgment in the proceeding.

In the three years since the Complaint was filed, the parties engaged in extensive discovery and litigation in this action, including exchanging [*4] thousands of documents, deposing several plaintiffs, defendants, and defendants' agents, and briefing and presenting oral argument on the class certification motion.

The parties engaged in extensive settlement negotiations, and jointly retained Norman Bromberg, former District Director of the U.S. Department of Labor's Wage and Hour Division, New York District Office, to provide an objective expert analysis of the claims. The parties also participated in a settlement conference under the supervision of Magistrate Judge Gabriel Gorenstein. In April of this year, the parties entered into a settlement agreement (the "Settlement Agreement"), which provided a fund of $ 3,150,000 in order to resolve the claims in this matter.

According to the Settlement Agreement, the FLSA Collective Members and the Rule 23 Class Members will be paid from the Settlement Fund, which shall be allocated between (1) damages under the NYLL for the Rule 23 Class consisting of disgorgement of money which plaintiffs contend was unlawfully diverted from the tip pool, and (2) damages under the FLSA for the FLSA opt-in plaintiffs who filed valid Consent to Sue forms, consisting of payment of the tip credit that was taken [*5] by Sparks, along with liquidated damages. The Settlement Fund will be allocated pursuant to a formula that takes into account the number of hours worked by each waiter during the FLSA and NYLL statute of limitations periods and the measures of damages available.

On July 8, 2009, the Court entered an Order preliminarily approving the Settlement and authorizing dissemination of notice (the "Notice") to the Rule 23 Class. The Notice informed Class members of their preliminary settlement amount, described the manner in which this award was computed, stated Class Counsel's intent to seek the payment of Service Payments to two named plaintiffs, and to seek attorneys' fees amounting to one third of the Settlement less the amount of any approved Service Payments, and informed the Class Members of their right to object to the Settlement.

Six individuals filed timely objections to the Settlement, three of which were withdrawn prior to the Fairness Hearing. All of the Objectors were named in the Complaint as people who should not have been included in Sparks' tip pool.

Pursuant to the Preliminary Approval Order, plaintiffs filed their Motion for Final Approval. Defendants did not oppose any portion [*6] of this motion.

The Court held a final fairness hearing on September 10, 2009 (the "Fairness Hearing").

Having considered the Motion for Final Approval, the supporting memorandum of law, the Declaration of Louis Pechman, the Affidavit of Norman Bromberg, the Affidavit of Rami Maher, the Affidavit of Carlos Ponce, the oral arguments presented at the Fairness Hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the Fairness Hearing and for good cause shown,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement and in this Order under *Rule 23* and the FLSA. The settlement is fair, reasonable, adequate, and not a product of collusion. *See Fed. R. Civ. P. 23(e)*; *Frank v. Eastman Kodak Co., 228 F.R.D. 174, 184 (W.D.N.Y. 2005)* (quoting *Joel A. v. Giuliani, 218 F.3d 132, 138-39 (2d Cir. 2000))*.

2. The $ 3,150,000 settlement amount is substantial and includes meaningful payments to Class Members. In reaching this conclusion, the Court is satisfied that the settlement was fairly and honestly negotiated. It was the result [*7] of vigorous arms-length negotiations, which were undertaken in good faith by counsel with extensive experience in litigating wage and hour class actions, and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation. *See D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)*.

3. The parties' judgment that the settlement is fair and reasonable, as well as the Class's favorable response to the settlement, weigh in favor of final approval of the settlement.

4. The objections of Mohamed Elbeyali, Jeton Karahoda, and Fatlum Spahija are overruled as they do not provide a sufficient basis for finding that the Settlement is not fair, adequate, and reasonable. Moreover, Elbeyali and Karahoda are not members of the Class and thus lack standing to object to the settlement.

5. The Settlement shall be effective fifteen days after entry of this Order if no appeal is taken of this Order. If an appeal is taken in this matter, the effective date shall be fifteen days after the appeal is withdrawn or after an appellate decision affirming this final approval decision becomes final.

6. Upon **[*8]** the effective date of the settlement, each Class Member shall have released all NYLL claims asserted in this lawsuit through December 31, 2008, including all NYLL claims for misappropriated tips, unpaid wages, interest, liquidated damages, and attorneys' fees and costs related to such claims.

7. All plaintiffs who opted into the FLSA Collective forever and fully release defendants from all FLSA claims asserted in this lawsuit through December 31, 2008, including all FLSA claims for unpaid minimum wages, liquidated damages, and attorneys' fees and costs related to such claims.

8. The Court also approves the FLSA settlement and finds that it is a fair and reasonable resolution of a *bona fide* dispute reached as a result of contested litigation. *See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982)*.

9. The Court hereby grants Class Counsel's request for attorneys' fees in the amount of $ 1,015,000, or 32.2% of the $ 3,150,000 settlement fund. This amount is to be paid from the settlement fund.

10. The Court finds that the amount of fees requested is fair and reasonable using the "percentage of recovery" method,

which is consistent with the trend in the Second **[*9]** Circuit. *See, e.g. Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar, 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009)*; *Hicks v. Morgan Stanley & Co., 2005 U.S. Dist. LEXIS 24890, at *22 (S.D.N.Y. Oct. 24, 2005)* ("The trend in the Second Circuit recently has been to use the percentage method.").

11. Gass Counsel's request for one-third of the settlement fund, less the amount of Service Payments approved by the Court, is also consistent with the trend in the Circuit. *Mohney, 2009 U.S. Dist. LEXIS 27899 at *16* (citations omitted).

12. The attorneys' fees requested were entirely contingent upon success in this litigation. Class Counsel expended significant time and effort and advanced costs and expenses without any guarantee of compensation.

13. The Court finds that an award of $ 25,000 to plaintiff Gerald Duchene and $ 10,000 to plaintiff Ibrahim Wakim is reasonable in light of the efforts they have expended in furthering the interests of the Class. This amount is to be paid from the settlement fund.

14. Within fifteen days of the effective date, defendants shall forward to Class Counsel settlerrlent checks to each Class Member and plaintiff in amounts to **[*10]** be provided by Class Counsel, Class Counsel's attorneys' fees, and the Service Payments to Duchene and Wakim.

15. Upon the effective date of this settlement, this action shall be dismissed with prejudice.

16. The Clerk of the Court is directed to close this case without further order of this Court fifteen days after entry of this Order.

It is so ORDERED this 10th day of September 2009.

/s/ Paul A. Crotty

Honorable Paul A. Crotty

United States District Judge

⬥ Positive
As of: May 2, 2016 4:01 PM EDT

## *Hegab v. Family Dollar Stores, Inc.*

United States District Court for the District of New Jersey

March 9, 2015, Decided; March 9, 2015, Filed

Civil Action No.: 11-1206 (CCC)

**Reporter**
2015 U.S. Dist. LEXIS 28570

AMBRO HEGAB, individually and on behalf of other persons similarly situated, Plaintiff, v. FAMILY DOLLAR STORES, INC., Defendant.

**Notice:** NOT FOR PUBLICATION

## Core Terms

settlement, class member, notice, class action, parties, weighs, risks, attorneys', expenses, settlement agreement, lodestar, factors, discovery, store manager, requirements, enhancement, negotiated, approving, cases, multiplier, class representative, attorney's fees, litigating, terms, internal quotation marks, named plaintiff, district court, approval of the settlement, class certification, final approval

**Counsel:** [*1] For AMRO HEGAB, Individually and on Behalf of All Other Persons Similarly Situated, Plaintiff: JOSEPH J. DEPALMA, MAYRA VELEZ TARANTINO, LEAD ATTORNEYS, LITE, DEPALMA, GREENBERG, LLC, NEWARK, NJ; MICHAEL JOHN PALITZ, LEAD ATTORNEY, SETH R. LESSER, KLAFTER OLSEN & LESSER LLP, RYE BROOK, NY.

For FAMILY DOLLAR STORES, INC., Defendant: JACQUELINE K. HALL, WILLIAM P. MCLANE, LEAD ATTORNEYS, KEITH J. ROSENBLATT, LITTLER MENDELSON, P.C., NEWARK, NJ.

**Judges:** HON. CLAIRE C. CECCHI, United States District Judge.

**Opinion by:** CLAIRE C. CECCHI

## Opinion

**OPINION**

**CECCHI**, District Judge.

This matter comes before the Court upon Plaintiff Ambro Hegab ("Plaintiff") and Defendant Family Dollar Stores, Inc.'s ("Defendant") Joint Motion for Final Approval of a Class Action Settlement Agreement [ECF No. 53] and Plaintiffs Unopposed Motion for Attorneys' Fees, Costs, and Class Representative Enhancement [ECF No. 52]. The Court conducted a fairness hearing on February 5, 2015. Having considered the arguments by all the parties to this matter, the Court sets forth its findings below.[1]

### I. BACKGROUND

#### A. Litigation History

In March 2011, Plaintiff filed a class action complaint that follows on the heels of two similar cases filed in other district courts. See Youngblood, et al. v. Family Dollar Stores. Inc., et al., No. 09-cv-3176 and Rancharan v. Family Dollar Stores. Inc., et al. No. 10-cv-7580. The complaint alleged that Defendant violated the New Jersey Wage and Hour Law by misclassifying its store managers in New Jersey as exempt from state overtime requirements. Plaintiff sought overtime pay for all hours worked in excess of 40 per week.

On October 3, 2014, the Court issued an order conditionally certifying a settlement class of current and former store managers in New Jersey, approving the form and manner of notice proposed by the parties, appointing settlement class counsel, appointing Plaintiff Hegab as settlement class representative, and appointing Rust Consulting, Inc. ("Rust")

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes [*2] a waiver of the argument.").

as settlement administrator. On January 29, 2014, the parties submitted a joint motion for final approval of a settlement agreement and Plaintiff filed an unopposed motion for attorneys' fees.

**B. Settlement Agreement**

**1. Terms**

The Settlement Class consists of [*3] 557 potential class members that worked as store managers in New Jersey Family Dollar stores between March 3, 2009 and October 3, 2014, Defendant agrees to pay $1.15 million to resolve the instant action.[2] In exchange for payment of this sum, Defendant will receive a waiver and release of all claims that were or could have been asserted based on the alleged facts in the complaint.

**2. Notice Plan**

Rust was responsible for administering the court-approved notice plan. Rust established a PO Box to receive communications regarding the settlement (**Lefebvre** Dec. at ¶ 10) as well as a toll-free phone number for class members to call with questions regarding the settlement and a website with relevant settlement information. (Id. at ¶¶ 5-6.)

On November 7, 2014, Rust mailed the Notice of Proposed Settlement and Right to Opt-out along with a Claim Form (together, "Class [*4] Notice") to all 557 class members via First Class mail.[3] (Id. at ¶ 10.) The Class Notice advised class members that they could request exclusion from the class or object to the settlement on or before December 22, 2014, or submit a claim form on or before January 6, 2015. (Id.) In total, 265 settlement class members filed Claim Forms,[4] resulting in a participation rate of 46.68%. [ECF No. 55.] There were no objections to the settlement and no requests for exclusion. (Lefebvre Dec. at ¶ ¶ 15-16.)

**3. Attorney Fees, Expenses, and Incentive Awards**

Plaintiff requests: (1) attorneys' fees totaling $345,000, (2) reimbursement of litigation costs and expenses in the amount of $4,462.80, and (3) an "enhancement service award" to Plaintiff Hegab of $7,500. (Pl.'s Mot. at 1.) The $345,000 in attorneys' fees is [*5] 30% of the $1.15 million settlement amount. Defendant does not oppose this motion.

**II. CLASS CERTIFICATION**

*Rule 23 of the Federal Rules of Civil Procedure* requires the Court to engage in a two-step analysis to determine whether to certify a class action for settlement purposes. First, the Court must determine if Plaintiffs have satisfied the prerequisites for maintaining a class action as set forth in *Rule 23(a)*. If Plaintiffs can satisfy these prerequisites, the Court must then determine whether the requirements of *Rule 23(b)* are met. See *Fed. R. Civ. P. 23(a)* advisory committee's note. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see *Fed. R. Civ. Proc. 23(b)(3)(D)*, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)*. *Rule 23(a)* provides that Class Members may maintain a class action as representatives of a class if they show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (d) the representative parties will fairly and adequately protect the interests of the class. *Fed. R. Civ. P. 23(a)*.

**A.** *Rule 23(a)* **Factors**

**1. Numerosity [*6]**

Courts will ordinarily discharge the prerequisite of numerosity if "the class is so numerous that joinder of all members is impracticable." *Fed. R. Civ. P. 23(a)(1)*; see also *Hanlon v. Chrysler., 150 F.3d 1011, 1019 (9th Cir. 1998)*. Plaintiffs "need not precisely enumerate the potential size of the proposed class, nor [are] plaintiff[s] required to demonstrate that joinder would be impossible." *Cannon v. Cherry Hill Toyota, Inc., 184 F.R.D. 540, 543 (D.N.J. 1999)* (citation omitted). "[G]enerally if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40,

---

[2]  All payments under the settlement would be made from this gross amount, including: distributions to individuals who filed proper claims, attorneys' fees and litigation costs, an enhancement for Plaintiff Hegab, the cost of administering the settlement, and all payroll and withholding taxes (if approved by the Court). (Joint Mot. at 5.)

[3]  After diligent efforts by Rust—including address traces-32 Class Notices remained undeliverable. (Id., at ¶ 11.)

[4]  Although the Joint Motion notes a participation percentage of 45.96% because nine class members that filed untimely Claim Forms were initially excluded, Defendant has agreed not to challenge these late claimants, thus increasing the participation percentage to 46.68%. [ECF No. 55.]

Erick Diaz

2015 U.S. Dist. LEXIS 28570, *6

the first prong of *Rule 23(a)* has been met." *Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)* (citation omitted).

Numerosity is easily satisfied here because there were 557 potential class members and Rust mailed Claim Forms to all of them. (Lefebvre Dec. at ¶ 10.)

## B. Commonality

Plaintiffs must demonstrate that there are questions of fact or law common to the class to satisfy the commonality requirement. *Fed. R. Civ. P. 23(a)(2)*. The Supreme Court recently clarified the standard, emphasizing that a plaintiff must show that Class Members "have suffered the same injury," not merely a violation of the same law: *Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)* (quoting *Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 157, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982))*. Furthermore, the Court noted that commonality is satisfied where common questions "generate common answers apt to drive the resolution of the litigation." *Id at 2551* (citation omitted) (emphasis in original); see also *Sullivan v.* DB Invs., Inc*., 667 F.3d 273, 299 (3d Cir. 2011)*. The claims of Class Members **[*7]** "must depend upon a common contention[,] .... [which] must be of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart, 131 S. Ct. at 2551*. Still, "commonality does not require an identity of claims or facts among Class Members[;]" rather, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183 (3d Cir. 2001)* (citation omitted).

The key issue in this case is whether Defendant misclassified its store managers under New Jersey law. This question is common to all class members. Indeed, the only variation among class members is the *amount* of overtime pay to which each class member is entitled—a problem that is remedied through the Claims Notice process. (See Lefebvre Dec. at ¶ 14.) Thus, commonality is satisfied.

## C. Typicality

*Rule 23(a)(3)* requires that a representative plaintiffs claims be "typical of the claims . . . of the class. The typicality requirement is designed to align the interests of the class and the class representatives **[*8]** so that the latter will work to benefit the entire class through the pursuit of their own

goals." *Barnes v. Am. Tobacco Co., 161 F.3d 127, 141 (3d Cir. 1998)* (citation omitted). As with numerosity, the Third Circuit has "set a low threshold for satisfying" typicality, stating that "[i]f the claims of the named plaintiffs and putative Class Members involve the same conduct by the defendant, typicality is established ...." *Newton, 259 F.3d at 183-84*; see also *Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir. 1994)*. The typicality requirement "does not mandate that all putative Class Members share identical claims." *259 F.3d at 184* (citation omitted); see also *Hassine v. Jeffes, 846 F.2d 169, 176-77 (3d Cir. 1988)*.

Here, the claims made by named Plaintiff Hegab and those made on behalf of the other class members arise out of the same alleged conduct by Defendant—namely, the misclassification of store managers under New Jersey law. Consequently, the named Plaintiffs claims are typical of those brought by the class members at large. See, e.g., *In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 342 (3d Cir. 2010)* (affirming the District Court's certification of the settlement class where "the claims of the class representatives [were] aligned with those of the Class Members since the claims of the representatives ar[o]se out of the same conduct and core facts"); *Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d 123, 130 (3d Cir. 1987)* (holding that the District Court did not abuse its discretion in finding the typicality requirement met because **[*9]** the claims brought by the named plaintiffs and those brought on behalf of the class "stem from a single course of conduct"). Thus, typicality is also satisfied.

## D. Adequacy of Representation

Finally, the Court must consider adequacy of representation both as to the named Plaintiff and the Class Counsel under *Rules 23(a)* and *(g)*. The class representatives should "fairly and adequately protect the interests of the class." *Georgine v. Amchem Prods., Inc., 83 F.3d 610, 630 (3d Cir. 1996)*. Such class representatives must not have interests antagonistic to those of the class. Id. In order to find an "antagonism between [the named] plaintiff[s'] objectives and the objectives of the [class]," there would need to be a "legally cognizable conflict of interest" between the two groups. *Jordan v. Commonwealth Fin. Sys., Inc., 237 F.R.D. 132, 139 (E.D. Pa. 2006)*. In fact, courts have found that a conflict will not be sufficient to defeat a class action "unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." *In re Flat Glass Antitrust Litig., 191 F.R.D. 472, 482 (W.D. Pa. 1999)* (quoting *In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 514 (S.D.N.Y. 1996))*.

Here, there is no indication that Plaintiff Hegab's interests are antagonistic to those of the class. Plaintiff Hegab has

2015 U.S. Dist. LEXIS 28570, *9

also actively participated in the case, most notably by being deposed. (Lesser Dec. at ¶ 7.) Consequently, the adequacy requirement has been met.

Class Counsel and their respective [*10] law firms have extensive experience litigating complex class actions and obtaining class action settlements. (Lesser Dec. at ¶ ¶ 23-25.) Thus, the Court finds that Class Counsel has the qualifications, experience, and ability to conduct the litigation.

With this last requirement satisfied, it is clear that the Settlement Class in this case has demonstrated compliance with the elements of *Rules 23(a)* and *(g)*.

**E.** *Rule 23(b)(3)* Factors

The Court must next address the question of whether the class comports with the requirements of *Rule 23(b)*. Under *23(b)(3)*, the Court must find both that "the questions of law or fact common to Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Fed. R. Civ. P. 23(b)(3)*. As explained below, the class action in this case readily meets these requirements of predominance and superiority.

**1. Questions of Law and Fact Common to the Class Predominate**

To satisfy the predominance requirement, parties must do more than merely demonstrate a "common interest in a fair compromise;" instead, they must provide evidence that the proposed class is "sufficiently cohesive to warrant adjudication [*11] by representation." *Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)*; see also *Sullivan v. DB Invs., Inc., 667 F.3d 273, 297 (3d Cir. 2011)* (noting that the predominance requirement is "more stringent" than the *Rule 23(a)* commonality requirement). The Third Circuit has repeatedly held that predominance exists where proof of liability depends on the conduct of the defendant. See *Sullivan, 667 F.3d at 298-301* (reaffirming the Third Circuit precedent supporting this holding). "[V]ariations in state law do not necessarily defeat predominance[] and ... concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class." *Id. at 297*.

Here, the class consists of individuals who served as Family Dollar store managers. As such, the class members share

common questions of law and fact—*i.e.*, whether Defendant misclassified its store managers under New Jersey law. Evidence in the record supports the conclusion that common questions predominate over individual questions particular to any putative class member. Consequently, the predominance requirement is satisfied.

**2. A Class Action is Superior to Other Available Methods**

To demonstrate that a class action is "superior to other available methods" for bringing suit in a given case, the Court must "balance, in terms of fairness and efficiency, the merits [*12] of a class action against those of 'alternative available methods' of adjudication." *Georgine v. Amchem Prods., Inc., 83 F.3d 610, 632 (3d Cir. 1996)* (citing *Katz v. Carte Blanche Corp., 496 F.2d 747, 757 (3d Cir. 1974)* (en banc)). One consideration is the economic burden Class Members would bear in bringing suits on a case-by-case basis. Class actions have been held to be especially appropriate where "it would be economically infeasible for [individual Class Members] to proceed individually." *Stephenson v. Bell Atl. Corp., 177 F.R.D. 279, 289 (D.N.J. 1997)*. Another consideration is judicial economy. In a situation where individual cases would each "require[] weeks or months" to litigate, would result in "needless duplication of effort" by all parties and the Court, and would raise the very real "possibility of conflicting outcomes," the balance may weigh "heavily in favor of the class action." *In re Corrugated Container Antitrust Litig., 80 F.R.D. 244, 252-53 (S.D. Tex. 1978)*; see also *Klay v. Humana, Inc., 382 F.3d 1241, 1270 (11th Cir. 2004)* (finding a class action to be the superior method because it would be costly and inefficient to "forc[e] individual plaintiffs to repeatedly prove the same facts and make the same legal arguments before different courts"), abrogated on other grounds by *Bridge v. Phoenix Bond & Indem, Co., 553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008)*; *Sollenbarger v. Mountain States Tel. & Tel. Co., 121 F.R.D. 417, 436 (D.N.M. 1988)* (finding that, in contrast to the multiple lawsuits that members of a class would have to file individually, "[t]he efficacy of resolving all plaintiffs' claims in a single proceeding is beyond [*13] discussion").

To litigate the individual claims of even a fraction of the potential class members would place a heavy burden on the judicial system and require unnecessary duplication of effort by all parties. It would not be economically feasible for the class members to seek individual redress. The litigation of all claims in one action is far more desirable than numerous, separate actions and therefore the superiority requirement is met.

**III. FAIRNESS OF THE CLASS ACTION SETTLEMENT**

Under *Federal Rule of Civil Procedure 23(e)*, approval of a class settlement is warranted only if the settlement is "fair, reasonable, and adequate." *Fed. R. Civ. P. 23(e)(2)*. Acting as a fiduciary responsible for protecting the rights of absent class members, the Court is required to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *In re Cendant Corp. Litig., 264 F.3d 201, 231 (3d Cir. 2001)* (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995))*. This determination rests within the sound discretion of the Court. *Girsh v. Jepson. 521 F.2d 153, 156 (3d Cir. 1975)*. In *Girsh*, the Third Circuit identified nine factors to be utilized in the approval determination. *Id. at 157*. These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the [*14] class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability ; (5) the risks of establishing damages ; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) and the range of reasonableness of the settlement fond to a possible recovery in light of all the attendant risks of litigation.

*Id.* (internal quotation marks, alterations, and citation omitted).

Additionally, a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters, and there are few objectors. *In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004)*. Finally, settlement of litigation is especially favored by courts in the class action setting. "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors, 55 F.3d at 784*; see also *in re Warfarin Sodium Antitrust Litig., 391 F.3d at 535* (explaining that "there is an overriding public interest in settling class action litigation, and it [*15] should therefore be encouraged").

Turning to each of the <u>Girsh</u> factors, the Court finds as follows:

## A. **Complexity, Expense, and Likely Duration of the Litigation**

The first factor, the complexity, expense, and likely duration of the litigation, is considered to evaluate "the probable costs, in both time and money, of continued litigation." *In re Cendant Corp., 264 F.3d at 233* (quoting *In re Gen. Motors, 55 F.3d at 812*).

The instant litigation was commenced in 2011 and the duration of this action would only be further delayed absent approval of the settlement. Indeed, significant time, effort, and expense would be incurred to resolve discovery disputes, brief dispositive motions and a motion to certify the class, prepare for and complete trial, submit post-trial submissions, and pursue likely appeals. By reaching a settlement, the parties have avoided the significant expenses connected with these steps. Lastly, the settlement provides immediate and substantial benefits for the settlement class.

As a result, this factor weighs in favor of approval of the Settlement. See *In re Warfarin Sodium Antitrust Litig., 391 F.3d at 535-36* (finding that the first <u>Girsh</u> factor weighed in favor of settlement because "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing [*16] complex factual and legal questions, and ultimately a complicated, lengthy trial").

## B. **Reaction of the Class to the Settlement**

This second factor "attempts to gauge whether members of the class support the settlement." *In re Lucent Techs., Inc., Sec. Litig., 307 F. Supp. 2d 633, 643 (D.N.J. 2004)* (internal quotation marks and citation omitted). The Third Circuit has found that "[t]he vast disparity between the number of potential Class Members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement." *In re Cendant Corp., 264 F.3d at 235*.

On November 7, 2014, notice was sent directly to the 557 potential class members. As of the date of the Fairness Hearing, there were no objections to the settlement and no requests for exclusion. (Lefebvre Dec. at ¶ ¶ 15-16.); see *In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005)* ("such a low level of objection is a 'rare phenomenon'") (citation omitted). The paucity of negative feedback in the face of an extensive notice plan leads the Court to conclude that the settlement class generally and overwhelmingly approves of the settlement. See *Varacallo v. Mass. Mutual Life Ins. Co., 226 F.R.D. 207, 237-38 (D.N.J. 2005)* (finding exclusion and objection requests of .06% and .003%, respectively, "extremely low" and indicative of class approval of the settlement). Therefore, this factor weighs in favor of approval [*17] of the Settlement.

2015 U.S. Dist. LEXIS 28570, *17

## C. The Stage of the Proceedings and the Amount of Discovery Completed

The Court should consider the stage of the proceedings and the amount of discovery completed in order to evaluate the degree of case development that Class Counsel have accomplished prior to settlement. "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp., 264 F.3d at 235* (quoting *in re Gen. Motors, 55 F.3d at 813*), "Generally, post-discovery settlements are viewed as more likely to reflect the true value of a claim as discovery allows both sides to gain an appreciation of the potential liability and the likelihood of success," *In re Auto. Refinishing Paint Antitrust Litig., 617 F. Supp. 2d 336, 342 (E.D. Pa. 2007)* (citing *Bell Atl. Corp. v. Bolger. 2 F.3d 1304, 1314 (3d Cir. 1993)).*

The Court notes that this case has been litigated for years. Certainly, a fair amount of discovery has occurred here; Defendant took the deposition of Plaintiff, both parties served and responded to written discovery requests, and thousands of pages of materials were exchanged. (Lesser Dec. at ¶ 7.) The parties also had access to the substantial discovery produced in nearly identical cases—Youngblood and Rancharan—regarding the same dispute at issue in this case (albeit, under different state laws). (See Lesser Dec. at ¶ 6.) In addition, **[*18]** the Settlement was reached after extensive arm's length negotiations and mediation sessions. "Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent." *In re Elec. Carbon Prods. Antitrust Litig., 447 F. Supp. 2d 389, 400 (D.N.J. 2006)* (citation omitted). Based on the extensive discovery and negotiations, the Court concludes that class counsel had a thorough appreciation of the merits of the case prior to settlement. Accordingly, this factor weighs in favor of approval.

## D. Risks of Establishing Liability

The risks of establishing liability should be considered to "examine what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *In re Cendant Corp., 264 F.3d at 237* (quoting *In re Gen. Motors, 55 F.3d at 814*). "The inquiry requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" *In re Safety Components Int'l, Inc. Sec. Litig., 166 F. Supp. 2d 72, 89 (D.N.J. 2001)* (quoting *in re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions. 148 F.3d 283, 319 (3d Cir. 1998)).*

Class Counsel have outlined several risks to establishing liability, as exemplified by the fact that Defendant has prevailed on summary judgment against Plaintiff Hegab in a potential class action in Pennsylvania alleging store manager misclassification, see *Itterly v. Family Dollar Stores, Inc., No. 5:08-cv-01266-LS, 2014 U.S. Dist. LEXIS 12340, Order (E.D. Pa. Jan. 30, 2014)* **[*19]** (ECF No. 40), and obtained more than 60 similar summary judgments in a MDL proceeding in North Carolina, see *In re Family Dollar FLSA Litig., 637 F.3d 508 (4th Cir. 2011).* On the Defendant's side, Family Dollar acknowledges that its defense also carries inherent risks.

In contrast, the settlement provides immediate and certain recovery for the class members. All class members who filed a claim form by the deadline (and even those who filed after the deadline) will receive a benefit in the form of payment for overtime hours worked. In light of the uncertainty of success for both sides in this litigation and the certain, immediate benefit provided by the settlement, the Court concludes that this factor weighs in favor of approval.

## E. Risks of Establishing Damages

This factor, like the factor before it, "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant Corp., 264 F.3d at 238* (quoting *In re Gen. Motors. 55 F.3d at 816*). Here, even if Plaintiff could establish liability, the proper measure of damages is unclear. Defendant would argue that the half time overtime method is proper for misclassification claims. See *Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351 (4th Cir. 2011)*; *Urnikis-Negro v. Am. Family Prosperity Servs., 616 F.3d 665 (7th Cir. 2010)*; *Clements v. Serco, Inc., 530 F.3d 1224 (10th Cir. 2008)*; *Valerio v. Putnam Assocs., Inc., 173 F.3d 35 (1st Cir. 1999)*. Some district courts, however, have questioned **[*20]** the applicability of the half-time method to damage calculations. See *Seymour v. PPG Indus., Inc., 891 F. Supp. 2d 721, 737 (W.D. Pa. 2012)*. Accordingly, the Court agrees that significant risks exist in establishing both liability and damages and concludes that this factor weighs strongly in favor of approval.

## F. Risks of Maintaining Class Action Status Through Trial

The Court also finds that the sixth factor, the risk of maintaining class action status through trial, weighs in favor of approval of the Settlement. "Because the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action, this

2015 U.S. Dist. LEXIS 28570, *20

factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537* (internal quotation marks and citation omitted). If the litigation proceeded, Defendant would have argued that certification was inappropriate. As shown by other state law Family Dollar store manager misclassification actions, class certification is far from certain. Compare *Cook v. Family Dollar Stores of Conn., Inc., 2013 Conn. Super. LEXIS 598, 2013 WL 1406821 (Conn. Super. Ct. Mar. 18, 2013)* (denying class certification) with *Youngblood v. Family Dollar Stores. Inc., 2011 U.S. Dist. LEXIS 115389, 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011)* (granting class certification), and Farley v. Family Dollar Stores. Inc., No. 12-cv-00325, Order (D. Colo. Mar. 21, 2013) (ECF No. 48) (granting class action certification). **[*21]** Thus, because there are significant risks in obtaining and maintaining class certification, this factor weighs in favor of approval.

### G. The Settling Defendant's Ability to Withstand a Greater Judgment

In Cendant, the Third Circuit interpreted the seventh factor as concerning "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *264 F.3d at 240*. The parties correctly argue that "even if defendant could afford a greater amount, this provides no basis for rejecting an otherwise reasonable settlement." (Joint Mot. at 22.) Thus, the Court is satisfied that the settlement is fair, reasonable, and adequate, despite the possibility that Defendant could pay a greater sum. See, e.g., *In re Auto. Refinishing Paint Antitrust Litig., 617 F. Supp. 2d at 344* (finding the settlement figure fair, reasonable, and adequate despite defendants' ability to withstand greater judgment in light of the substantial benefits provided to Class Members); *In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 235, 262-63 (D.N.J. 2000)*, aff'd *In re Cendant Corp., 264 F.3d 201* (approving settlement despite lack of evidence of defendant's ability to withstand greater judgment); *Weiss v. Mercedes-Benz of N. Am., Inc., 899 F. Supp. 1297, 1302-03 (D.N.J. 1995)* (concluding the settlement was fair, adequate, and reasonable despite finding defendant could withstand greater judgment).

Class members will receive substantial benefits from the settlement, **[*22]** and any ability of Defendant to withstand a greater judgment is outweighed by the risk that Plaintiff would not be able to achieve a greater recovery at trial. In addition, as discussed above, there are significant risks to establishing liability and damages. See *Yong Soon Oh v. AT&T Corp., 225 F.R.D. 142, 150-51 (D.N.J. 2004)* (finding that the difficulties plaintiffs would have in certifying the

class and proving damages at trial "diminish[es] the importance of this factor").

In light of these considerations, the Court concludes that this factor weighs in favor of approval.

### H. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The eighth and ninth factors, concerning the range of reasonableness of the settlement fond in light of the best possible recovery and the attendant risks of litigation, weigh in favor of settlement.

> The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself mean that the proposed settlement is grossly inadequate and should be disapproved. The percentage recovery, rather must represent a material percentage recovery to plaintiff in light of all the risks considered under Gush.

*In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 235, 263 (D.N.J. 2000)* (internal quotation marks **[*23]** and citation omitted).

The parties argue that, given the size of the settlement class, the potential benefits available to class members, and the risks in proving liability and damages and in obtaining class certification, the settlement is, fair, adequate and reasonable. (Joint Mot. at 1 - 2.) The Court agrees with the parties and finds that these factors weigh in favor of approval.

### I. Summary of Girsh Factors

In conclusion, the Court holds that the nine Girsh factors overwhelmingly weigh in favor of approval. The settlement agreement was reached after arm's-length negotiations between experienced counsel and after completion of, and access to, a significant amount of discovery. Therefore, the Court concludes that the settlement represents a fair, reasonable, and adequate result for the settlement class considering the substantial risks Plaintiff faces and the immediate benefits provided by the settlement. See *Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 255-56(E.D. Pa. 2011)*.

### IV. **NOTICE**

"In the class action context, the district court obtains personal jurisdiction over the absentee Class Members by

providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves **[*24]** from the class." *In re Prudential 143 F.3d at 306* (citation omitted). Under *Federal Rule of Civil Procedure 23(c)*, notice must be disseminated by "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Fed. R. Civ. P. 23(c)(2)(B)*; See also *Eisen v. Carlisle & Jacquelin. 417 U.S. 156, 175-76, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)* (finding that *Rule 23(c)* includes an "unambiguous requirement" that "individual notice must be provided to those Class Members who are identifiable through reasonable effort").

Additionally, in this case, where a settlement class has been provisionally certified under *Rule 23(b)(3)* and a proposed settlement preliminarily approved, proper notice must meet the requirements of *Federal Rules of Civil Procedure 23(c)(2)(B)* and *23(e)*. *Larson v. Sprint Nextel Corp., No. 07-5325(JLL), 2009 U.S. Dist. LEXIS 39298, 2009 WL 1228443, at *2 (D.N.J. Apr. 30, 2009)*. *23(c)(2)(B)* compliant notice must inform Class Members of: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) the Class Members' right to retain an attorney; (5) the Class Members' right to exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on Class Members under *Rule 23(c)(3)*, *Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii)*. *Rule 23(e)* notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Prudential Ins. Co. of Am. Sales Practices Litig., 177 F.R.D. 216, 231 (D.N.J. 1997)* (citation **[*25]** omitted).

As explained above, Rust—the settlement administrator—mailed the Court-approved Class Notice to all 557 class members via First Class mail. (Lefebvre Dec. at ¶ 10). Notifications that were returned as undeliverable were re-sent if another address could be traced. (Id. at ¶ 11.) In total, 265 settlement class members filed Claim Forms, resulting in a participation rate of 46.68%.[5] [ECF No. 55.] There were no objections to the settlement and no requests for exclusion. (Lefebvre Dec. at ¶ ¶ 15-16.)

The Court finds that the parties complied with the requirements set forth by *Rules 23(c)(2)(B)* and *23(e)*. The

notice plan was thorough and included all of the essential elements necessary to properly apprise absent settlement class members of their rights. The written notice included: (1) an explanation of the nature of the pending litigation, (2) information regarding the pending settlement, how their payments **[*26]** were calculated, and the material settlement terms (including relevant deadlines and what they give up by participating in the settlement), (3) notification to class members of the number of qualifying workweeks he or she worked during the relevant period (thus allowing class members to calculate the approximate amount they will receive under the settlement), (4) procedures regarding how class members can obtain a copy of the complete settlement agreement, and (5) an explanation of class members' rights to file objections and appear at the final fairness hearing. Rust also established a PO Box to receive communications regarding the settlement (Lefebvre Dec. at ¶ 10) as well as a toll-free phone number for class members to call with questions regarding the settlement and a website with relevant settlement information. (Id. at ¶ ¶ 5-6.)

In conclusion, the Court finds that the notice fully complied with the requirements of *Rules 23(c)(2)(B)* and *23(e)*.

## V. ATTORNEY FEES, EXPENSES, AND INCENTIVE AWARDS

Class counsel filed an unopposed motion for an award of attorney fees and expenses in the amount of $345,000.00 and for an enhancement award of $7,500.00 to Plaintiff Hegab. The Court has considered the parties' **[*27]** written submissions and the oral arguments made during the fairness hearing. For the reasons that follow, the Court will grant the requested attorney fees, reimbursement of expenses, and enhancement award payment.

### A. Standard for Judicial Approval of Fees

*Fed. R. Civ. P. 23(h)* provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The awarding of fees is within the discretion of the Court, so long as the Court employs the proper legal standards, follows the proper procedures, and makes findings of fact that are not clearly erroneous. *In re Cendant Corp. Prides Litig., 243 F.3d 722, 727 (3d Cir. 2001)*.

Notwithstanding this deferential standard, a district court is required to clearly articulate the reasons that support its fee

---

[5]   As noted, *supra*, nine class members filed untimely Claim Forms and were therefore excluded from the participation percentage stated in the Joint Motion (45.96%). However, Defendant has agreed not to challenge these late claimants, thus increasing the participation percentage to 46.68%. [ECF No. 55.]

determination. *Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 259 (E.D. Pa. 2011)*; *In re Rite Aid, 396 F.3d at 301*. "In a class action settlement, the court must thoroughly analyze an application for attorneys' fees, even where the parties have consented to the fee award." *Varacallo v. Mass. Mutual Life Ins. Co., 226 F.R.D. 207, 248 (D.N.J. 2005)*.

"Relevant law evidences two basic methods for evaluating the reasonableness of a particular attorneys* fee request — the lodestar approach and the percentage-of-recovery approach." Id. (internal quotation marks and citation omitted). The lodestar method is [*28] generally applied in statutory fee shifting eases and "is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *In re Cendant Corp., 243 F.3d at 732* (internal quotation marks and citation omitted). The lodestar is also preferable where "the nature of the settlement evades the precise evaluation needed for the percentage of recovery method." *In re Gen. Motors. 55 F.3d at 821*; see also *In re Rite Aid. 396 F.3d at 300*. The percentage-of-recovery method is preferred in common fund cases, as courts have determined "that Class Members would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund." *Varacallo. 226 F.R.D. at 249* (internal quotation marks and citation omitted). The Court has discretion to decide which method to employ. *Charles v. Goodyear Tire & Rubber Co., 976 F. Supp. 321, 324 (D.N.J. 1997)*. "While either the lodestar or percentage-of-recovery method should ordinarily serve as the primary basis for determining the fee, the Third Circuit has instructed that it is sensible to use the alternative method to double check the reasonableness of the fee." *Varacallo, 226 F.R.D. at 249* (internal quotation marks and citation omitted).

Plaintiff argues, and the Court agrees, [*29] that the percentage-of-recovery method is appropriate in this case due to the creation of a common fund.

### B. Percentage-of-Recovery Method

The Third Circuit has identified a non-exhaustive list of factors that a district court should consider in its percentage of recovery analysis:

(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4)

the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*In re Rite Aid, 396 F.3d at 301* (quoting *Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.l (3d Cir. 2000)*). The district court need not apply these Gunter fee award factors in a formulaic way. Certain factors may be afforded more weight than others. *Id. at 301*. The district court should engage in a robust assessment of these factors. *Id.at 302*; see also *Gunter. 223 F.3d at 196* (vacating district court's ruling because the fee-award issue was resolved in a "cursory and conclusory" fashion).

The Court finds that the totality of the Gunter factors weighs strongly in favor of approval [*30] of the fee award. Given the similarity and overlap of the Gunter and Girsh factors, the Court incorporates by reference the reasons given for approval of the settlement agreement. The Court will now discuss additional reasons that support approval of attorney fees in this matter.

### 1. The Size of the Fund Created and the Number of Persons Benefitted

With regard to the size and nature of the Settlement Fund and the number of persons benefitted by the Settlement Agreement, Class Counsel obtained a settlement that creates a common fund of $1.15 million. Of the 557 class members, 265 filed Claims Forms, resulting in a participation rate of almost 47%. Accordingly, the gross amount per person (over $2000) parallels other employee misclassification cases. See Alli v. Boston Market Corp., No. 10-cv-0004 (D. Conn.) (final approval of $3 million settlement for 1,921 class members—$1,561 per person); Jenkins v. Sports Authority. No. 09-cv-224 (E.D.N.Y.) (final approval of $990,000 settlement for class of 559 co-managers—$1,771 per person); and Caissie v. BJ's Wholesale Club. No. 08-cv-30220 (D. Mass. June 24,2010) (final approval of $9.15 million settlement for class of 2,803 "mid-managers"—$3,264 [*31] per person). Given the total settlement value, as well as the number of class members entitled to benefits and the gross amount per person, this factor weighs in favor of approval.

### *2*. Presence or Absence of Substantial Objections by Members of the Class to Settlement Terms and/or Fees Requested by Counsel

The absence of objections by settlement class members to the fees requested by class counsel strongly supports

approval. As noted above, notice was sent directly to the 557 potential class members and there were no objections to the settlement and no requests for exclusion (Lefebvre Dec. at ¶ ¶ 15-16.); see *In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005)* ("such a low level of objection is a 'rare phenomenon'") (citation omitted). The lack of *any* negative feedback in the face of an extensive notice plan leads the Court to conclude that the settlement class generally and overwhelmingly approves of the settlement. See *Varacallo v. Mass. Mutual Life Ins. Co., 226 F.R.D. 207, 237-38 (D.N.J. 2005)* (finding exclusion and objection requests of .06% and .003%, respectively, "extremely low" and indicative of class approval of the settlement). As such, this factor weighs in favor of approval. See *In re Lucent Techs., Inc., Sec. Litig., 327 F. Supp. 2d 426, 435 (D.N.J. 2004)* (finding that this factor weighed in favor of approval where only nine of nearly three million potential Class Members **[*32]** objected to the fee application).

### 3. Skill and Efficiency of Attorneys

As discussed in the section on class certification, class counsel are experienced in litigating and settling consumer class actions. Class counsel obtained substantial benefits for the class members—despite vigorous defense by Defendant's counsel—a consideration that further evidences class counsels' competence. Thus, this factor also weighs in favor of approval of the fee award.

### 4. The Complexity and Duration of the Litigation

As explained in the discussion of the Girsh factors, this case has been litigated for over three years and involves uncertain legal issues. The parties reached the settlement after access to extensive discovery and arm's length settlement negotiations. Thus, this factor weighs in favor of approval.

### 5. The Risk of Non-Payment

Class counsel undertook this action on a contingent fee basis, assuming a substantial risk that they might not be compensated for their efforts. (Pl.'s Mot. at 7.) Courts recognize the risk of non-payment as a major factor in considering an award of attorney fees. See *In re Prudential -Bache Energy Income P'ships Sec. Litig., 1994 U.S. Dist. LEXIS 6621, at *16 (E.D. La. May 18, 1994)* ("Counsel's contingent fee risk is an important factor in determining the fee **[*33]** award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable."). Class counsel invested substantial effort and resources to obtain this favorable settlement. Accordingly, this factor weighs in favor of approval.

### 6. The Amount of Time Devoted to the Litigation

Class counsel reports over 1,000 hours of contingent work on this case for the past three years. (Pl.'s Mot. at 7.) Based on the amount of time expended on this matter, this factor weighs in favor of approval.

### 7. Awards in Similar Cases

The Court must also take into consideration amounts awarded in similar actions when approving attorney fees. Specifically, the Court must: (1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market. See, e.g., *In re Remeron Direct Purchaser Antitrust Litis., 2005 U.S. Dist LEXIS 27013, *42-46 (D.N.J. Nov. 9, 2005).* While there is no specific benchmark for fee awards in the Third Circuit, there has been a "range of 19 percent to 45 percent of the settlement fund approved in other litigations." *In re Schering-Plough Corp. Secs. Litig., 2009 U.S. Dist. LEXIS 121173 at *14* (approving 23% fee in $165 million securities settlement); see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., *55 F.3d 768 (3d Cir. 1995),* at 822 (noting **[*34]** a range of nineteen to forty-five percent); see also *In re Ikon Office Solutions v. Stuart.* 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent").

With respect to awards in comparable settlements, a 30% fee is in line with other wage and hour settlements—including misclassification cases—within the Third Circuit. See, e.g., *In re Janney Montgomery Scott LLC Financial Consultant Litigation. 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009)* (30% fee approved in $2,880,000 wage and hour case); *Lenahan v. Sears. 2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006)* (30% fee approved in $15,000,000 wage and hour case); *Herring v. Hewitt. No. 3:06-cv-00267-GB, 2009 U.S. Dist. LEXIS 67283 (D.N.J. 2009)* (30% fee approved in $4,900,000 misclassification case); *In re Staples Inc. Wage & Hour Employment Practices Litig., No. 08-5746 (MDL-2025), 2011 U.S. Dist. LEXIS 128601 (D.N.J. 2011)* (28.5% fee approved in $42,000,000 retail misclassification case); *Craig v. Rite Aid Corp., 2013 U.S. Dist. LEXIS 2658 (M.D. Pa. 2013)* (32% fee approved in $20,900,000 retail misclassification settlement). Given these cases, class counsel's request of $345,000 is reasonable and commensurate with awards in comparable cases.

The second part of this analysis addresses whether the requested fee is consistent with a privately negotiated

contingent fee in the marketplace. "The percentage-of-the-fund method of awarding attorneys' fees in class actions should approximate the fee [that] would be **[\*35]** negotiated if the lawyer were offering his or her services in the private marketplace," *In re Remeron Direct Purchaser Antitrust Litig., 2005 U.S. Dist. LEXIS 27013, \*44-45*. "The object... is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible." *In re Cont'l Ill.. Sec.* Litig*., 962 F.2d 566, 572 (7th Cir. 1992)*; see also *In re Synthroid Mktg. Litig., 264 F.3d 712, 718 (7th Cir. 2001)* ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."). To determine the market price for an attorney's services, the Court should look to evidence of negotiated fee arrangements in comparable litigation. *In re Cont'l Ill.* Sec. Litig*., 962 F.2d at 573* (stating that the judge must try to simulate the market "by obtaining evidence about the terms of retention in similar suits, suits that only differ because, since they are not class actions, the market fixes the terms"). As explained more fully below, class counsel used standard hourly rates to calculate the lodestar amount. (See Lesser Deck, Ex. E-F.) These hourly billable rates are consistent with hourly rates routinely approved by this Court in complex class action litigation. See *In re Merck & Co., 2010 U.S. Dist. LEXIS 12344 at \*45*; *McGee. 2009 U.S. Dist. LEXIS 17199 at \*50*.

In **[\*36]** sum, for all the reasons stated above, the Court concludes that the requested fee by class counsel is fair and reasonable under the percentage-of-recovery method. The Court will approve class counsel's application for attorney fees in the amount of $345,000.

## C. Lodestar Cross-Check

Although the Court has determined that class counsel's requested fees are reasonable under the percentage-of-recovery method, the Court will employ the lodestar method as an appropriate cross-check. *Varacallo, 226 F.R.D. at 249* ("While either the lodestar or percentage-of-recovery method should ordinarily serve as the primary basis for determining the fee, the Third Circuit has instructed that it is sensible to use the alternative method to double check the reasonableness of the fee." (internal quotation marks and citation omitted)).

The lodestar analysis is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid, 396 F.3d at 305*: see also *In re Diet Drugs Prod. Liab. Litig., 582 F.3d 524, 540 (3d Cir. 2009)*. When performing this analysis, the Court "should apply blended billing rates that approximate the fee structure of all the **[\*37]** attorneys who worked on the matter." *In re Rite Aid. 396 F.3d at 306*. The lodestar figure is presumptively reasonable when it is calculated using a reasonable hourly rate and a reasonable number of hours. *Planned Parenthood of Cent. N.J. v. Att'y Gen, of N.J., 297 F.3d 253, 265 n.5 (3d Cir. 2002)* (citations omitted).

After calculating the lodestar amount, the Court may increase or decrease the amount using the lodestar multiplier. The multiplier is calculated by dividing the requested fee by the lodestar figure. "The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *In re Rite Aid. 396 F.3d at 305-06* (footnote omitted). The multiplier "need not fall within any pre-defined range, provided that the District Court's analysis justifies the award." *Id. at 307* (footnote omitted). Further, the Court is not required to engage in this analysis with mathematical precision or "bean-counting." *Id. at 306*. Instead, the Court may rely on summaries submitted by the attorneys; the Court is not required to scrutinize every billing record. *Id. at 306-07*.

Based upon their hourly rates, class counsel calculated a combined lodestar figure of $608,392.67. (PL Mot. at 16.) In support of their fee application, class counsel provided detailed exhibits explaining the billing rates for each **[\*38]** attorney that worked on the case. (See Lesser Decl., Ex. E-F.) Class counsel calculated the lodestar figure taking all of these billing rates into account. An examination of the hours expended by class counsel reveals that appropriate work was performed by class counsel in light of the size and complexity of this case. Accordingly, the Court finds the billing rates to be appropriate and the billable time to have been reasonably expended. (See Lesser Decl, Ex. E-F.) The lodestar is thus presumptively reasonable. Therefore, the Court sees no reason to find the lodestar figure of $345,000 unreasonable.

Here, the lodestar multiplier is approximately 0.57. (PL Mot. at 16.) Indeed, because the lodestar is $608,392.67 and the requested fees are $345,000, the result is a *negative* lodestar multiplier. (Id.) This multiplier is *below* the range found to be acceptable by the Third Circuit and this Court. See *In re Cendant Corp. PRIDES Litig., 243 F.3d at 734, 742* (approving a suggested multiplier of three and stating

that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied"); *In re Schering-Plough Corp., 2012 U.S. Dist. LEXIS 75213, at *22* (noting that a 1.6 multiple "is an amount commonly approved by courts of this Circuit," and approving it as reasonable); **[*39]** *McCoy v. Health Net. Inc., 569 F. Supp. 2d 448, 479 (D.N.J. 2008)* (finding a multiplier of almost 2.3 to be reasonable). Thus, this Court considers the lodestar multiplier to be reasonable.

### D. Expenses

Class Counsel also seek reimbursement of $4,462.80 in litigation expenses to be paid from the $1.15 million award. (Pl.'s Mot. at 2.) "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components Int'l. Inc., 166 F. Supp. 2d at 108* (citing *Abrams v. Lightolier Inc., 50 F.3d 1204, 1225 (3d Cir. 1995))*. Class counsel contends that these expenses reflect costs expended for the purposes of litigating this action, including costs associated with court fees, travel expenses, photocopying, mailing, telephone usage, and PACER/Lexis costs. (See Lesser Decl. ¶ 28.) The Court finds that the expenses were adequately documented and reasonably and appropriately incurred in the litigation of the case. See *In re Datatec Sys. Sec. Litig., 2007 U.S. Dist. LEXIS 87428, at *27 (D.N.J. Nov. 28, 2007)*.

### E. Enhancement Award

Finally, class counsel also request that the Court approve the payment of a $7,500 enhancement award to Plaintiff Hegab. (Pl.'s Mot. at 11.) "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." **[*40]** *Dewey v. Volkswagen of Am., 728 F. Supp. 2d 546, 577 (D.N.J. 2010)* (internal quotation marks and citation omitted). Class counsel explains that Plaintiff Hegab provided valuable information about his experiences working for Family Dollar, made himself available as needed, answered discovery, was deposed and stayed in touch with class counsel throughout the litigation. (Pl.'s Mot. at 11.) Modest enhancement/incentive awards are routinely approved. See, e.g., *In re Insurance Brokerage Antitrust Litig., 2007 U.S. Dist. LEXIS 74711, 2007 WL 2916472 at *8 (D.N.J. Oct 5, 2007)* ($10,000 incentive award to each plaintiff, resulting in total payment of $250,000); *Lazy Oil Co. v. Witco Corp., 95 F. Supp. 2d 290, 324-25, 345* (incentive awards of $5,000 to $20,000 awarded); *Godshall v. Franklin Mint Co., 2004 U.S. Dist. LEXIS 23976, 2004 WL 2745890 at *4 (E.D. Pa. Dec. 1,*

*2004)* ($20,000 to each named plaintiff). Given the duration of the litigation and the extent of personal involvement, the Court finds that Plaintiff Hegab is entitled to the requested

### F. Summary of Attorney Fees, Expenses, and Enhancement Award Analysis

For the foregoing reasons, the Court grants the application of class counsel for an award of attorney fees, reimbursement of expenses, and an enhancement award payment.

### VI. CONCLUSION

Because the named Plaintiff has satisfied all of the requirements of *Fed. R. Civ. P. 23*, this Court certifies the class for purposes of this Settlement and approves the Settlement Agreement. The Court also grants the application of Class Counsel for attorney **[*41]** fees, reimbursement of expenses, and class representative enhancement. An appropriate Order accompanies this Opinion

Date: March 9, 2015

/s/ Claire C. CecchiClaire C. CecchiClaire C. Cecchi

**HON. CLAIRE C. CECCHI**

**United States District Judge**

ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

A hearing in this action was held on February 5, 2015 before the Honorable Claire C. Cecchi, U.S.D.J., in order for the Court to decide whether the proposed Settlement Agreement between the parties is far, reasonable, and to adequate, and to decide Class Counsel's application for an award of attorneys' fees and costs.

The Court, having reviewed and considered the parties' joint motion for final approval of their settlement and all the related papers including the Memorandum in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement, the Memorandum in Support of Plaintiff's Unopposed Motion for an Award of Fees and Costs and Class Representative Enhancement, the declarations submitted in support of the motion, the oral arguments of counsel presented to the Court, and other papers filed and proceedings herein, and good cause appearing, now makes the following: **[*42]**

FINDINGS OF FACT

1. This action was filed in March 2011 by plaintiff Amro Hegab alleging that Family Dollar violated the New Jersey Wage and Hour Law by misclassifying its store managers in New Jersey as exempt from state overtime requirements and seeking overtime compensation for all hours worked by store managers in excess of 40 in a work week.

2. On October 3, 2014, the Court preliminarily proved a Settlement Agreement and conditionally certify a settlement class of current and former Family Dollar store managers who worked in New Jersey.

3. As part of the Order Preliminarily Approving Settlement, the Court approved the sending of direct mail notice of the proposed settlement to members of the settlement Class. The notice also provided a toll-free telephone number and a settlement website upon which the class notice was posted. The notice provided an opportunity for the settlement class members to file objections and to opt-out of the settlement. The settlement class as set forth in the notice included all persons employed at any time by Family Dollar Stores as started store mergers in New Jersey from March 3, 2009 through October 3, 2014 (the "settlement class").

4. The parties have **[*43]** filed with the Court a declaration from the claims administrator, Rust Consulting, Inc. (the "Claims Administrator") describing the work performed by the Claims Administrator in sending notice of preliminary approval of the proposed settlement to the settlement class and the result of the claims process set forth in the Settlement Agreement.

5. The Court finds that notice provided to the settlement class members in accordance with the Settlement Agreement and the Court's preliminary approval order satisfies the requirements for notice under applicable law.

6. Settlement class members who wished to be excluded from this action were provided an opportunity to "opt-out" of the settlement. No members of the class requested to be excluded.

7. The members of the settlement class are bound by the settlement, Settlement Agreement, the releases contained within the Settlement Agreement and the Final Order and Judgment.

8. Settlement class members who wished to object to any part of the settlement were provided an opportunity to do so pursuant to the notice, but no objections were filed during the filling period. Given the size of this settlement, and the notice procedure utilized, the Court finds **[*44]** the lack of

any objections to be indicative of the fairness, reasonableness, and adequacy of the settlement. Thus, all members of the settlement class are deemed to have waived any such objection by appeal, collateral attack, or otherwise.

9. Based on the terms of the Settlement Agreement, the related filings, and statements made by counsel during the February 5, 2015 hearing, the Court is of the opinion that the settlement is a fair, reasonable and adequate compromise of the claims against defendant in this action pursuant to _Fed. R. Civ. P.23_.

10. Notice was provided to settlement class members of Class Counsel's proposed application for reasonable attorneys' fees and expenses consistent with the terms of the Settlement Agreement and the Court's preliminary approval order. The Court has considered and grants the fee request, as set forth in further detail below.

11. Notice was provided to settlement class members of (he proposed application for an enhancement payment to the Class Representative consistent with the terms of the Settlement Agreement and the Court's preliminary approval order. The Court has considered and grants the application in the amount set forth in paragraph 13, below.

NOW, THEREFORE, **[*45]** ON THE BASIS OF THE FOREGOING FINDINGS OF FACT THE COURT HEREBY MAKES THE FOLLOWING CONCLUSIONS OF LAW:

12. Pursuant to _Fed. R. Civ. P.23_, the settlement class is certified and is defined as follows: all current and former Family Dollar salaried store managers employed at any time in New Jersey between March 3, 2009 to October 3, 2014. The settlement class is certified for settlement purpose only.

13. The Court finds that find approval of a service payment in the amount of $7,500.00 to the Class Representative is reasonable and equitable.

14. Class Counsel are qualified and experienced and have litigated this action successfully, thereby demonstrating their adequacy as counsel. The Court finds that final approval of attorneys' fees in the amount of $345,000.00 and expenses in the amount of $4,462.80 to Class Counsel is warranted. The Court finds these amounts are justified by the work performed, risks taken, and the results achieved by Class Counsel.

15. The Court finds that the request for payment of the costs incurred and anticipated by the Claims Administrator, Rust

Consulting, Inc., in the amount of $38,150.00 is reasonable and is approved.

16. The Court finds that find approval of the Settlement Agreement **[*46]** as being fair, reasonable and adequate under _Rule 23_ is warranted and that all class members who have made valid and timely claims are entitled to receive their pro rata of the settlement fund, as provided in the Settlement Agreement.

NOW, THEREFORE, ON THE BASIS OF THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS PURSUANT TO _FEDERAL RULES OF CIVIL PROCEDURE 23(g)_ and _54(d)_:

1. The joint motion for find approval of the settlement is granted. The settlement, as set forth in the Settlement Agreement, dated May 1, 2014, is hereby approved, and all of the Settlement Agreement's terms, conditions, and obligations are incorporated herein by reference.

2. The Class Representative is entitled to and is hereby awarded payment in the amount set out in paragraph 13, above such amount to be paid by the Claims Administrator, as set forth in the Settlement Agreement.

3. The application by Class Counsel for attorneys' fees and expenses is granted in the amount set out in paragraph 14, above and the Claims Administrator is ordered to pay such amounts to Seth Lesser of Klafter Olsen & Lesser LLR in accordance with the terms of the Settlement Agreement, and Class Counsel will allocate such fees **[*47]** and expenses among all Class Counsel in a manner that, in Class

Counsel's good-faith judgment, reflects each counsel's or firm's contribution to the institution, prosecution, or resolution of the litigation.

4. The Claims Administrator will effectuate distribution of the settlement funds to the eligible settlement class members in accordance with the terms of the Settlement Agreement.

5. All members of the settlement class by all of the terms, conditions, and obligations of the Settlement Agreement, and by all the orders that were entered by the Court regarding this action.

6. Neither the settlement, nor any of its terms of provisions, nor any of the negotiations or proceedings connected with it, will be considered an admission or a concession by any party of the truth of any allegation in the action or liability, fault, or wrongdoing of any kind.

7. Final judgment is hereby entered in this action, consistent with the terms of the Settlement Agreement.

8. This action and all claims against the defendant are hereby dismissed with prejudice, however, the Court will retain exclusive and continuing jurisdiction of this action, all parties, and the settlement class members, to interpret and **[*48]** enforce the terms, conditions, and obligations of the Settlement Agreement.

IT IS SO ORDERED.

Dated: March 9, 2015

/s/ Claire C. CecchiClaire C. CecchiClaire C. Cecchi

Claire C. CecchiClaire C. CecchiClaire C. Cecchi, U.S.D.J,

◆ Positive

As of: May 2, 2016 4:25 PM EDT

## *In re Priceline.com, Inc.*

United States District Court for the District of Connecticut

July 19, 2007, Decided; July 20, 2007, Filed

MASTER FILE NO. 3:00-CV-1884(AVC)

**Reporter**

2007 U.S. Dist. LEXIS 52538; 68 Fed. R. Serv. 3d (Callaghan) 273; Fed. Sec. L. Rep. (CCH) P94,433

IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION; This document relates to: ALL ACTIONS

**Subsequent History:** Motion denied by, Motion granted by *In re Priceline.Com, Inc. Sec. Litig, 2007 U.S. Dist. LEXIS 97445 (D. Conn., Nov. 29, 2007)*

**Prior History:** *In re Priceline.com, Inc., Sec. Litig., 2007 U.S. Dist. LEXIS 5962 (D. Conn., Jan. 26, 2007)*

## Core Terms

settlement, notice, proposed settlement, class member, attorneys', plaintiffs', securities, parties, risks, com, expenses, damages, issues, settlement fund, class action, loadstar, approve, negotiations, defendants', adequacy, cases, requested fee, circumstances, reimbursement, multiplier, discovery, motions

**Counsel:** For Jay S. Walker, Defendant: Shawna Ballard, LEAD ATTORNEY, Bruce Bennett, LEAD ATTORNEY, Jeanne E. Irving, LEAD ATTORNEY, Hennigan, Bennett & Dorman LLP, Los Angeles, CA; Thomas D. Goldberg, LEAD ATTORNEY, Day Pitney LLP-Stmfd-CT, Stamford, CT.

For Howard Gunty Profit Sharing Plan, Consol Plaintiff: Aaron Brody, LEAD ATTORNEY, Jules Brody, LEAD ATTORNEY, Stull, Stull, & Brody, New York, NY.

For Priceline.Com Inc, Daniel H. Schulman, Richard S. Braddock, Consol Defendants, Defendants, N.J. Nichols, Defendant:Evan R. Chesler, LEAD ATTORNEY, Cravath, Swaine & Moore, New York, NY.

For Priceline.com, Inc, Daniel H. Schulman, Jay S. Walker, Richard S. Braddock, Defendants, Consol Defendants, N.J. Nichols, priceline.com Inc.; N.J. Nicholas; Daniel H. Schulman; and Richard S. Braddock, Defendants: Joseph L. Clasen, LEAD ATTORNEY, Robinson & Cole, Stamford, CT.

For Leisinger Pension Fund, Joseph Wilenkin, Lliana Llieva, Marilyn D. Egel, Mark Weiss, Lead Plaintiffs, Plaintiffs, John S. Anderson, Lance B. Orr, R. Warren Ross, Sharon Tsai, Movants: Erin Green Comite, LEAD ATTORNEY, Scott & Scott, Colchester, CT.

For Hyacinth S. Anish, Consol Plaintiff: Michael D. Donovan, LEAD ATTORNEY, Donovan Searles, Philadelphia, PA.

For Joseph Wilenkin, Lliana Llieva, Marilyn D. Egel, Mark Weiss, Lead Plaintiffs, Plaintiffs: Eben F. Duval, LEAD ATTORNEY, Johnson & Perkinson, South Burlington, VT.

For Deloitte & Touche, Defendant: Thomas J. Finn, LEAD ATTORNEY, Eric Watt Wiechmann, LEAD ATTORNEY, McCarter & English-Htfd, Hartford, CT; William R. Maguire, LEAD ATTORNEY, Hughes, Hubbard & Reed, New York, NY.

For Jay S. Walker, Defendant, Consol Defendant, Walker Digital LLC, Movant: Terence J. Gallagher, III., LEAD ATTORNEY, Day Pitney LLP-Stmfd-CT, Stamford, CT.

For Muhammed Zia, Consol Plaintiff: Eliot B. Gersten, LEAD ATTORNEY, Gersten & Clifford, Hartford, CT.

For Monica R. Mazzo, Consol Plaintiff: Deborah R. Gross, LEAD ATTORNEY, Law Offices of Bernard M. Gross, PC, Philadelphia, PA.

For Deloitte & Touche, N.J. Nichols, Priceline.com, Inc, Daniel H. Schulman, Jay S. Walker, Richard S. Braddock, Defendants: James G. Hein, Jr., LEAD ATTORNEY, Cravath, Swaine & Moore, New York, NY.

For Jay S. Walker , Defendant, Consol Defendant: J. Michael Hennigan, LEAD ATTORNEY, Hennigan, Bennett & Dorman LLP, Los Angeles, CA.

Erick Diaz

2007 U.S. Dist. LEXIS 52538, *52538

For Leisinger Pension Fund, Joseph Wilenkin, Lliana Llieva, Marilyn D. Egel, Mark Weiss, Lead Plaintiffs, Plaintiffs: Mark V. Jackowski, LEAD ATTORNEY, Scott & Scott-CT, Colchester, CT; Geoffrey M. Johnson, LEAD ATTORNEY, Scott & Scott, LLC-OH, Chagrin Falls, OH; Beth A. Kaswan, LEAD ATTORNEY, Scott & Scott-NY, New York, NY.

For Randall Twardy, Plaintiff: Dennis J. Johnson, LEAD ATTORNEY, Jacob B. Perkinson, LEAD ATTORNEY, Johnson & Perkinson, South Burlington, VT.

For Priceline.com, Inc, Daniel H. Schulman, Richard S. Braddock, N.J. Nichols, Defendants, Priceline.Com Inc, Consol Defendant: Kevin J. Kehoe, Jr., LEAD ATTORNEY, Cravath, Swaine & Moore, New York, NY.

For Deloitte & Touche, priceline.com Inc.; N.J. Nicholas; Daniel H. Schulman; and Richard S. Braddock, Defendants, N.J. Nichols, Priceline.com, Inc, Daniel H. Schulman, Jay S. Walker, Richard S. Braddock, Defendants, Consol Defendants: William J. Kelleher, III., LEAD ATTORNEY, Robinson & Cole - Stmfd, CT, Stamford, CT.

For Howard Gunty Profit Sharing Plan, Hyancinth S. Anish, Jack A. Caswell, Jerry Krim, Monica R. Mazzo, Scott Lyon, Thomas Atkin, Consol Plaintiffs, Leisinger Pension Fund, Joseph Wilenkin, Lliana Llieva, Marilyn D. Egel, Mark Weiss, Plaintiffs: Nancy A. Kulesa, Schatz Nobel Izard PC-Htfd, Hartford, CT.

For Leisinger Pension Fund, Joseph Wilenkin, Lliana Llieva, Marilyn D. Egel, Mark Weiss, Amerindo Investment Advisors, Inc, Plaintiffs, Jim M. Ayach, Michael Cerelli, Sarah Sontag, Consol Plaintiffs: James E. Miller, LEAD ATTORNEY, Sheperd Finkelman Miller & Shah-Chester, Chester, CT.

For Leisinger Pension Fund, Joseph Wilenkin, Lliana Llieva, Mark Weiss, Amerindo Investment Advisors, Inc, Marilyn D. Egel, Plaintiffs: Jeffrey S. Nobel, LEAD ATTORNEY, Andrew M. Schatz, LEAD ATTORNEY, Schatz Nobel Izard PC-Htfd, Hartford, CT.

For N.J. Nichols, Priceline.com, Inc, Daniel H. Schulman, Jay S. Walker, Richard S. Braddock, Defendants: John F.X. Peloso, Jr., LEAD ATTORNEY, Robinson & Cole, Stamford, CT.

For N.J. Nichols, Priceline.Com Inc, Daniel H. Schulman, Richard S. Braddock, Defendants: Alexander D. Pencu, LEAD ATTORNEY, Robinson & Cole - Stmfd, CT,

Stamford, CT; Robert K. Simonds, LEAD ATTORNEY, Cravath, Swaine & Moore, New York, NY.

For Randall Twardy, Plaintiff, Anthony Mazzo, Bryan Koster, Jay Jaskolski, Jeremy Licht, Mark Fialkov, Mathis Weingarten, Michael Karas, Natalie Berdakina, Peter Makhlouf, Rajiv Bazag, Ramin Farzam, Samuel Mayer, Sherman Breier, Todd Haskell, Monica R. Mazzo, Consol Plaintiffs: J. Daniel Sagarin, LEAD ATTORNEY, Hurwitz Sagarin Slossberg & Knuff LLC, Milford, CT.

For Leisinger Pension Fund, Joseph Wilenkin, Lliana Llieva, Marilyn D. Egel, Mark Weiss, Amerindo Investment Advisors, Inc, Lead Plaintiffs, Plaintiffs, John S. Anderson, Lance B. Orr, R. Warren Ross, Sharon Tsai, Movants: David Randell Scott, LEAD ATTORNEY, Scott & Scott-CT, Colchester, CT.

For Priceline.Com Inc, Daniel H. Schulman, Richard S. Braddock, Consol Defendants, Priceline.com, Inc, Daniel H. Schulman, Richard S. Braddock, N.J. Nichols, Defendants: Daniel Slifkin, LEAD ATTORNEY, Cravath, Swaine & Moore, New York, NY.

For Jeremy Licht, Consol Plaintiff, Randall Twardy, Plaintiff: David A. Slossberg, LEAD ATTORNEY, Hurwitz Sagarin Slossberg & Knuff LLC, Milford, CT.

For N.J. Nichols, Priceline.com, Inc, Daniel H. Schulman, Jay S. Walker, Richard S. Braddock, Defendants: Melissa Sullivan, LEAD ATTORNEY, Robinson & Cole, Stamford, CT.

For Johnny Kwan, Consol Plaintiff: Joseph H. Weiss, LEAD ATTORNEY, Weiss & Yourman, New York, NY.

**Judges:** [*1] Alfred V. Covello, United States District Judge.

**Opinion by:** Alfred V. Covello

# Opinion

## RULING ON MOTIONS FOR APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES AND EXPENSES

This is an action for damages brought on behalf of a class of all persons and entities who purchased or acquired Priceline.com securities during the class period of January 27, 2000 through October 4, 2000, and were damaged

2007 U.S. Dist. LEXIS 52538, *1

thereby. [1] It is brought pursuant to sections 10(b), *15 U.S.C. § 78j(b)*, and 20(a), *15 U.S.C. § 78t*, of the Securities and Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *15 U.S.C. §§ 78a-78nn*, and *Rule 10b-5*, *17 C.F.R. § 240.10b-5*. The complaint alleges that the defendants made certain misleading statements with respect to the profitability of Priceline.com and WebHouse Club, causing the plaintiff class to suffer losses on their investments in Priceline.com securities. On May 4, 2007, the plaintiffs reached a settlement with the defendants Priceline.com, Jay Walker, Dan Schulman, Richard Braddock and N.J. Nichols. On July 2, 2007, the court held a hearing to address the fairness of the proposed settlement in accordance with *Federal Rule of Civil Procedure 23(e)*. [*2] [2] For the following reasons, the court hereby approves the parties proposed settlement and the plaintiffs' requested attorneys' fees and expenses.

**FACTS**

Examination of the complaint and the papers filed in connection with the parties' proposed settlement and the arguments made during the July 2, 2007, hearing reveal the following facts:

On October 2, 2000, the plaintiffs filed the complaint in this case, alleging that the defendants made certain misleading statements with respect to   [*3] the profitability of Priceline.com and WebHouse Club, causing the plaintiff class to suffer losses on their investments in Priceline.com securities. On November 29, 2000, the court consolidated nine of the within cases. On September 12, 2001, the court consolidated the remaining 21 cases under the above-titled case number. On September 12, 2001, the court appointed lead plaintiff for the putative class.

On October 29, 2001, the plaintiff filed a consolidated amended complaint. On February 28, 2002, the defendant, Deloitte and Touche ("Deloitte"), and the defendants Priceline, Walker, Schulman, Braddock and Nichols ("Priceline Defendants"), filed motions to dismiss the consolidated amended complaint. On October 7, 2004, the court, the honorable Dominic J. Squatrito, granted in part and denied in part the defendants motions to dismiss and dismissed a portion of the allegations against the Priceline

defendants and all of the allegations against Deloitte. On January 7, 2005, the plaintiffs filed a motion to certify the class. On April 4, 2006, the court certified the plaintiff class to include all persons and entities who purchased or acquired Priceline.com securities during the class period  [*4] of January 27, 2000 through October 4, 2000, and were damaged thereby. During the pendency of this case, the parties filed numerous discovery motions and have produced and reviewed 5.29 million pages of WebHouse and Priceline documents.

On May 4, 2007, the plaintiffs reached agreement with defendants Priceline.com, Walker, Schulman, Braddock and Nichols for a cash settlement of $80 million. On July 2, 2007, the court held a hearing to address the fairness of the proposed settlement in accordance with *Federal Rule of Civil Procedure 23(e)*.

**STANDARD**

*Federal Rule of Civil Procedure 23(e)* provides as follows:

(A) The court must approve any settlement . . . of the claims, issues, or defenses of a certified class.

(B) The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

(C) The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate.

*Fed.R.Civ.P. 23(e)(1)*. The second circuit has recognized that "[t]he standard for the adequacy of a settlement notice in a class action under either the *Due Process Clause* [*5] or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. V. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005)*. The court further stated that "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or *rule 23(e)* requirements: the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id. at 114* (citing *Weinberger v. Kendrick,*

---

[1]   Excluded from the class are the following: (1) the settling defendants; (2) the officers and directors of Priceline.com, at all relevant times; (3) members of the settling defendants' immediate families and their legal representatives, heirs, successors or assigns; (4) any entity in which the settling defendants have or at any time had a controlling interest; and (5) Deloitte & Touche LLP, or any of Deloitte's partners, officers and directors.

[2]   *Federal Rule of Civil Procedure 23(e)* provides, in relevant part, that "the court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." *Fed.R.Civ.P. 23(e)(1)(C)*.

*698 F.2d 61, 70 (2d Cir. 1982)* (internal quotation marks and brackets omitted)).

The second circuit has further recognized that ″[a] court may approve a class action settlement if it is fair, reasonable and adequate and not a product of collusion.″ *Wal-Mart Stores, Inc. V. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005).* ″A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement.″ *Id.* (citing *D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)).* Further, the court has recognized a strong policy in favor of class action settlements and also that a ″'presumption of fairness, [*6] adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'″ *Id. at 116-17* (quoting *Manual for Complex Litigation, Third,* § 30.42 (1995)).

**DISCUSSION**

**I. Adequacy of Notice to the Class**

*Federal Rule of Civil Procedure 23(e)(1)(B)* requires that the court ″direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.″ *Fed. R. Civ. P. 23(e)(1)(B).* In addition, *Federal Rule of Civil Procedure 23(c)(2)(B)* requires that the court ″direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language:

    * the nature of the action

    * the definition of the class certified,

    * the class claims, issues, or defenses,

    * that a class member may enter an appearance through counsel if the member so desires,

    * that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and

    * the binding [*7] effect of a class judgment on class members under *Rule 23(c)(3).*″

*Fed. R. Civ. P. 23(c)(2).*

In this case, the claims administrator, Strategic Claims Services (″Strategic Claims″), mailed individual notices, by first-class mail, to all class members at their last known-addresses. Strategic Claims mailed a total of 88,893 packets of individual notice materials. In addition, the notice of this settlement was published in the *Wall Street Journal* and *USA Today*. Further, a press release announced the settlement over the PR newswire for national distribution and the notice of settlement and settlement agreement are currently posted on the claims administrator's website. Finally, Priceline described the settlement in its 2007 first quarter Form 10-Q, which it filed on May 10, 2007.

The court concludes that notice to the class in this case was adequate in form and content to satisfy the requirements of the federal rules and due process. The notice was sufficient for class members to understand the proposed settlement and their options.

**II. Fairness of the Settlement**

The federal rules next require the court to determine whether ″the settlement . . . is fair, reasonable, and adequate.″ *Fed.R.Civ.P. 23(e)(1)(C).* [*8] The second circuit has stated that courts should consider the following factors when determining whether a particular settlement is fair: ″(1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . .; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through the trial . . .; (7) the ability of the defendants to withstand a greater judgment . . .; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .″ *City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).* Further, the second circuit has recognized that a ″'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'″ *Wal-Mart Stores, Inc. V. Visa U.S.A., Inc., 396 F.3d 96, 116-17 (2d Cir. 2005)* [*9] (quoting *Manual for Complex Litigation, Third,* § 30.42 (1995)).

In this case, the parties met in four mediation sessions before reaching agreement. The honorable Nicholas H. Politan, retired U.S. district judge, and Robert A. Meyer, esq., conducted the negotiations between the parties. The settlement in this case was ably negotiated at arms' length with the impartial participation of Judge Politan and attorney Meyer and is, therefore, entitled to a presumption of fairness and adequacy. Further, the above-referenced factors militate

2007 U.S. Dist. LEXIS 52538, *9

in favor of approving the parties' proposed settlement. This is a complex case involving many complex accounting issues and violations of the securities laws. While two entities have raised issues with respect to the amount of class counsels' fee, the reaction of the class to the terms of the proposed settlement could not be more favorable. Not one member of the class has objected to the settlement. With respect to the stage of the proceedings, the parties have been litigating this case for almost seven years. During that time, they have completed review of several millions of pages of documents and assembled and utilized teams of investigators and experts **[*10]** to analyze and quantify their claims. Consequently, the parties are certainly in a position to understand and gauge the strengths and weaknesses of their case and to determine an adequate settlement. See *In re AOL Time Warner, Inc. Sec. & ERISA Litig., 2006 U.S. Dist. LEXIS 17588, 2006 WL 903236 *10 (S.D.N.Y. April 6, 2006)*. With respect to the risks of establishing liability, absent the within settlement, the plaintiffs would face motions for summary judgment and complex and fact-intensive analysis of accounting and fraud issues. The plaintiffs would also face significant obstacles in proving damages in this case with respect to differences between the stock's purchase price and the stock's "true" value. The determination of damages would depend upon the jury's reaction to and interpretation of conflicting expert opinions on the issue. Such a determination would be difficult to predict with any certainty. With respect to the risks of maintaining the class action through trial, although the court has certified the class in this case, the prospects of decertification certainly exist in light of the defendants' vigorous opposition to the plaintiffs' motions for certification and the defendants' defeat of one of the plaintiffs' **[*11]** motions for appointment of a lead plaintiff as a class representative. With respect to the defendants' ability to withstand a greater judgment, the plaintiffs' memorandum states that class counsel relied on this factor in deciding to settle this case. On its 2007 Form 10-Q, Priceline reported that $ 30 million of the $ 80 million dollar settlement amount is being funded through its insurance policies. In addition, the form states that Priceline's current liabilities exceed its current assets and that it reported an operating loss of $ 31.7 million for its most recent quarter. Finally, the range of reasonableness of the settlement in light of the best possible recovery and litigation risks weighs in favor of approving the parties settlement. Given the procedural history of this case, the previously discussed risks of proceeding to trial and the defendants' financial circumstances, the court concludes that the settlement here represents a fair, adequate and reasonable result for the class.

As part of the fairness determination, the court must determine whether the settlement's proposed allocation of the proceeds is fair and reasonable. "[T]he adequacy of an allocation plan turns on whether **[*12]** counsel has properly apprised itself of the merits of all claims, and whether the proposed settlement is fair and reasonable in light of that information." *In re Paine Webber Partnerships Litigation, 171 F.R.D. 104, 133 (S.D.N.Y. 1997)*, aff'd, *117 F.3d 721 (2d Cir. 1997)*. In this case, the settlement provides for distribution of the net settlement funds on a pro rata basis and involves a formula based upon liability and damages. The settlement agreement seeks to reimburse class members for the excess amount they paid for Priceline stock because of the artificial inflation of the stock by reason of the defendants' misrepresentations. The court notes that not one class member has objected to the proposed plan of allocation. Upon careful review of the settlement agreement's allocation of the settlement fund, the court concludes that it is fair and has a "reasonable rational basis" in light of the circumstances of this case. See *Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)*.

## III. Attorneys' Fees

Lead plaintiffs' counsel have also filed a motion for an award of attorneys fees in the amount of 30% of the $80 million dollar settlement and for reimbursement of litigation **[*13]** expenses. For the foregoing reasons, the motion is granted.

The plaintiffs argue that 30% of the settlement fund is a fair and reasonable fee in this case. The New York State Teachers' Retirement System ("NYSTRS") has filed an opposition to the requested fee and argues that the facts of this case do not support a fee award in that amount. In addition, the Pennsylvania Public Schools Employees' Retirement System ("PPSERS") has filed an objection to the proposed attorneys' fee request.

The second circuit has recognized that "where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class. . . . the attorneys whose efforts created the fund are entitled to a reasonable fee-set by the court-to be taken from the fund. *Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000)* (citations omitted). The second circuit has recognized two methods for calculating a reasonable fee. "The first is the loadstar, under which the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate. Once that initial **[*14]** computation has been made, the district court may, in

its discretion, increase the loadstar by a multiplier based on 'other less objective factors,' such as the risk of litigation and the performance of the attorneys." Id. (Citation omitted) (internal quotation marks omitted in original). Under the second method, "the court sets some percentage of the recovery as a fee." Id. The second circuit has recognized that regardless of the method used, "the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." Id. The second circuit has stated that whether using the loadstar or percentage methods, "the district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" Id. at 50 (quoting In re Union Carbide Corp. Consumer Products Business Securities, 724 F. Supp 160, 163 (S.D.N.Y. 1989)).

In this case, counsel have expended 31,768 hours [*15] at rates of between $ 50 and $ 770 per hour for a total of 12.1 million in fees. Counsel in this case state that they have investigated publicly available materials, reviewed millions of pages of documents, consulted with experts, conducted ongoing research and drafted court documents for an extensive motions practice, formulated litigation strategy, prepared for and participated in multiple mediation sessions, and negotiated and administered the within settlement. The magnitude and complexity of this case are apparent from the more than six years of contentious discovery, intricate issues regarding proof of liability and loss and complex accounting issues. With respect to the risk of litigation, the plaintiffs developed their own theory of liability and damages, as there was not a government prosecution in this case. Proving the elements of this case would be a necessary and formidable task. Further, litigation brought issues of collectibility against these defendants, a risk that the class would not be certified, and risks associated with taking a case on a contingent fee basis. The quality of representation here is demonstrated, in part, by the result achieved for the class. Further, [*16] it has been this court's experience, throughout the ongoing litigation of this matter, that counsel have conducted themselves with the utmost professionalism and respect for the court and the judicial process. The relation of the requested fee to the settlement weighs in favor of the requested 30% fee award. The effort by counsel in this case, the result obtained and similar awards in comparable cases in this circuit, all weigh in favor of the requested fee. See e.g., Gwozdzinnsky v. Sandler Assocs., 159 F.3d 1346 (2d Cir. 1998) (summary order) (affirming district court's award of 25% of the common fund); Strougo

ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (granting attorneys fees in amount of 33 and 1/3% of the settlement fund); Maley v. Del Global Technologies Corp., 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (granting attorneys' fees in amount of 33 and 1/3% of the settlement fund); In re RJR Nabisco Sec. Litig., No. 88 Civ. 7905, 1992 U.S. Dist. LEXIS 12702, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) (recognizing that the courts increasingly use the percentage of the fund method over the loadstar method in attorneys' fee award).

Finally, public policy considerations also support the [*17] requested fee. The award of the percentage requested here will encourage enforcement of the securities laws and support attorneys' decisions to take these types of cases on a contingent fee basis. The fee fairly compensates competent counsel in a complex securities case and helps to perpetuate the availability of skilled counsel for future cases of this nature.

A cross check of the loadstar in this case also demonstrates the reasonableness of the requested percentage. The percentage requested equals a 1.98 multiplier of the $ 12.1 million dollar loadstar amount. Taking into consideration all of the aforementioned factors, the risks associated with contingent fee litigation, and the quality of representation here and the results obtained, this multiplier is reasonable in light of the circumstances of this case. See In re Lloyd's Am. Trust Fund Litig., 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577 *26-28 (S.D.N.Y. 26, 2002) (recognizing that courts typically apply a multiplier to the loadstar amount to recognize the risks of litigation and a contingent fee). The court, therefore, orders a fee award equal to 30% of the settlement amount plus accrued interest to the date of the award. The amount of the fee [*18] award shall be allocated among the plaintiffs' counsel in a fashion which fairly compensates counsel for their respective contributions in litigating this case.

Class plaintiffs' counsel also request an award for reimbursement of their litigation expenses advanced to prosecute this case, in the amount of $ 1,394,422.57. Counsel have submitted thorough records of their requested expenses. Absent any objection thereto and after careful review of the expenses at issue, the court grants the plaintiffs' request. The plaintiffs' counsel shall be reimbursed for the full amount of the expenses they have advanced in this matter.

## IV. Opt Out Provision

The notice to the class of the proposed settlement gave class members the option to opt out of the settlement. On June 4,

2007, class member Barbara A. Res filed a request to opt out of the settlement in accordance with the procedures set forth in the notice of settlement. Her request is granted and she will not be part of the within settlement. In addition, Arnold J. Hoffman filed a request to opt out with respect to several trusts. That request is addressed in a separate order filed simultaneously herewith.

**CONCLUSION**

For the foregoing reasons, the **[\*19]** plaintiffs' motion for final approval of the proposed class action settlement (document no. 462) and the motion for award of attorneys' fees and reimbursement of expenses (document no. 463) are **GRANTED**.

It is so ordered this 19th day of July, 2007, at Hartford, Connecticut.

/s/

Alfred V. Covello,

United States District Judge

◆ Positive

As of: May 2, 2016 4:28 PM EDT

# *In re Priceline.com, Inc.*

United States District Court for the District of Connecticut

July 19, 2007, Decided; July 20, 2007, Filed

MASTER FILE NO. 3:00-CV-1884(AVC)

**Reporter**

2007 U.S. Dist. LEXIS 52538; 68 Fed. R. Serv. 3d (Callaghan) 273; Fed. Sec. L. Rep. (CCH) P94,433

IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION; This document relates to: ALL ACTIONS

**Subsequent History:** Motion denied by, Motion granted by *In re Priceline.Com, Inc. Sec. Litig, 2007 U.S. Dist. LEXIS 97445 (D. Conn., Nov. 29, 2007)*

**Prior History:** *In re Priceline.com, Inc., Sec. Litig., 2007 U.S. Dist. LEXIS 5962 (D. Conn., Jan. 26, 2007)*

## Core Terms

settlement, notice, proposed settlement, class member, attorneys', plaintiffs', securities, parties, risks, com, expenses, damages, issues, settlement fund, class action, loadstar, approve, negotiations, defendants', adequacy, cases, requested fee, circumstances, reimbursement, multiplier, discovery, motions

**Counsel:** For Jay S. Walker, Defendant: Shawna Ballard, LEAD ATTORNEY, Bruce Bennett, LEAD ATTORNEY, Jeanne E. Irving, LEAD ATTORNEY, Hennigan, Bennett & Dorman LLP, Los Angeles, CA; Thomas D. Goldberg, LEAD ATTORNEY, Day Pitney LLP-Stmfd-CT, Stamford, CT.

For Howard Gunty Profit Sharing Plan, Consol Plaintiff: Aaron Brody, LEAD ATTORNEY, Jules Brody, LEAD ATTORNEY, Stull, Stull, & Brody, New York, NY.

For Priceline.Com Inc, Daniel H. Schulman, Richard S. Braddock, Consol Defendants, Defendants, N.J. Nichols, Defendant:Evan R. Chesler, LEAD ATTORNEY, Cravath, Swaine & Moore, New York, NY.

For Priceline.com, Inc, Daniel H. Schulman, Jay S. Walker, Richard S. Braddock, Defendants, Consol Defendants, N.J. Nichols, priceline.com Inc.; N.J. Nicholas; Daniel H. Schulman; and Richard S. Braddock, Defendants: Joseph L. Clasen, LEAD ATTORNEY, Robinson & Cole, Stamford, CT.

For Leisinger Pension Fund, Joseph Wilenkin, Lliana Llieva, Marilyn D. Egel, Mark Weiss, Lead Plaintiffs, Plaintiffs, John S. Anderson, Lance B. Orr, R. Warren Ross, Sharon Tsai, Movants: Erin Green Comite, LEAD ATTORNEY, Scott & Scott, Colchester, CT.

For Hyacinth S. Anish, Consol Plaintiff: Michael D. Donovan, LEAD ATTORNEY, Donovan Searles, Philadelphia, PA.

For Joseph Wilenkin, Lliana Llieva, Marilyn D. Egel, Mark Weiss, Lead Plaintiffs, Plaintiffs: Eben F. Duval, LEAD ATTORNEY, Johnson & Perkinson, South Burlington, VT.

For Deloitte & Touche, Defendant: Thomas J. Finn, LEAD ATTORNEY, Eric Watt Wiechmann, LEAD ATTORNEY, McCarter & English-Htfd, Hartford, CT; William R. Maguire, LEAD ATTORNEY, Hughes, Hubbard & Reed, New York, NY.

For Jay S. Walker, Defendant, Consol Defendant, Walker Digital LLC, Movant: Terence J. Gallagher, III., LEAD ATTORNEY, Day Pitney LLP-Stmfd-CT, Stamford, CT.

For Muhammed Zia, Consol Plaintiff: Eliot B. Gersten, LEAD ATTORNEY, Gersten & Clifford, Hartford, CT.

For Monica R. Mazzo, Consol Plaintiff: Deborah R. Gross, LEAD ATTORNEY, Law Offices of Bernard M. Gross, PC, Philadelphia, PA.

For Deloitte & Touche, N.J. Nichols, Priceline.com, Inc, Daniel H. Schulman, Jay S. Walker, Richard S. Braddock, Defendants: James G. Hein, Jr., LEAD ATTORNEY, Cravath, Swaine & Moore, New York, NY.

For Jay S. Walker , Defendant, Consol Defendant: J. Michael Hennigan, LEAD ATTORNEY, Hennigan, Bennett & Dorman LLP, Los Angeles, CA.

2007 U.S. Dist. LEXIS 52538, *52538

For Leisinger Pension Fund, Joseph Wilenkin, Lliana Llieva, Marilyn D. Egel, Mark Weiss, Lead Plaintiffs, Plaintiffs: Mark V. Jackowski, LEAD ATTORNEY, Scott & Scott-CT, Colchester, CT; Geoffrey M. Johnson, LEAD ATTORNEY, Scott & Scott, LLC-OH, Chagrin Falls, OH; Beth A. Kaswan, LEAD ATTORNEY, Scott & Scott-NY, New York, NY.

For Randall Twardy, Plaintiff: Dennis J. Johnson, LEAD ATTORNEY, Jacob B. Perkinson, LEAD ATTORNEY, Johnson & Perkinson, South Burlington, VT.

For Priceline.com, Inc, Daniel H. Schulman, Richard S. Braddock, N.J. Nichols, Defendants, Priceline.Com Inc, Consol Defendant: Kevin J. Kehoe, Jr., LEAD ATTORNEY, Cravath, Swaine & Moore, New York, NY.

For Deloitte & Touche, priceline.com Inc.; N.J. Nicholas; Daniel H. Schulman; and Richard S. Braddock, Defendants, N.J. Nichols, Priceline.com, Inc, Daniel H. Schulman, Jay S. Walker, Richard S. Braddock, Defendants, Consol Defendants: William J. Kelleher, III., LEAD ATTORNEY, Robinson & Cole - Stmfd, CT, Stamford, CT.

For Howard Gunty Profit Sharing Plan, Hyancinth S. Anish, Jack A. Caswell, Jerry Krim, Monica R. Mazzo, Scott Lyon, Thomas Atkin, Consol Plaintiffs, Leisinger Pension Fund, Joseph Wilenkin, Lliana Llieva, Marilyn D. Egel, Mark Weiss, Plaintiffs: Nancy A. Kulesa, Schatz Nobel Izard PC-Htfd, Hartford, CT.

For Leisinger Pension Fund, Joseph Wilenkin, Lliana Llieva, Marilyn D. Egel, Mark Weiss, Amerindo Investment Advisors, Inc, Plaintiffs, Jim M. Ayach, Michael Cerelli, Sarah Sontag, Consol Plaintiffs: James E. Miller, LEAD ATTORNEY, Sheperd Finkelman Miller & Shah-Chester, Chester, CT.

For Leisinger Pension Fund, Joseph Wilenkin, Lliana Llieva, Mark Weiss, Amerindo Investment Advisors, Inc, Marilyn D. Egel, Plaintiffs: Jeffrey S. Nobel, LEAD ATTORNEY, Andrew M. Schatz, LEAD ATTORNEY, Schatz Nobel Izard PC-Htfd, Hartford, CT.

For N.J. Nichols, Priceline.com, Inc, Daniel H. Schulman, Jay S. Walker, Richard S. Braddock, Defendants: John F.X. Peloso, Jr., LEAD ATTORNEY, Robinson & Cole, Stamford, CT.

For N.J. Nichols, Priceline.Com Inc, Daniel H. Schulman, Richard S. Braddock, Defendants: Alexander D. Pencu, LEAD ATTORNEY, Robinson & Cole - Stmfd, CT,

Stamford, CT; Robert K. Simonds, LEAD ATTORNEY, Cravath, Swaine & Moore, New York, NY.

For Randall Twardy, Plaintiff, Anthony Mazzo, Bryan Koster, Jay Jaskolski, Jeremy Licht, Mark Fialkov, Mathis Weingarten, Michael Karas, Natalie Berdakina, Peter Makhlouf, Rajiv Bazag, Ramin Farzam, Samuel Mayer, Sherman Breier, Todd Haskell, Monica R. Mazzo, Consol Plaintiffs: J. Daniel Sagarin, LEAD ATTORNEY, Hurwitz Sagarin Slossberg & Knuff LLC, Milford, CT.

For Leisinger Pension Fund, Joseph Wilenkin, Lliana Llieva, Marilyn D. Egel, Mark Weiss, Amerindo Investment Advisors, Inc, Lead Plaintiffs, Plaintiffs, John S. Anderson, Lance B. Orr, R. Warren Ross, Sharon Tsai, Movants: David Randell Scott, LEAD ATTORNEY, Scott & Scott-CT, Colchester, CT.

For Priceline.Com Inc, Daniel H. Schulman, Richard S. Braddock, Consol Defendants, Priceline.com, Inc, Daniel H. Schulman, Richard S. Braddock, N.J. Nichols, Defendants: Daniel Slifkin, LEAD ATTORNEY, Cravath, Swaine & Moore, New York, NY.

For Jeremy Licht, Consol Plaintiff, Randall Twardy, Plaintiff: David A. Slossberg, LEAD ATTORNEY, Hurwitz Sagarin Slossberg & Knuff LLC, Milford, CT.

For N.J. Nichols, Priceline.com, Inc, Daniel H. Schulman, Jay S. Walker, Richard S. Braddock, Defendants: Melissa Sullivan, LEAD ATTORNEY, Robinson & Cole, Stamford, CT.

For Johnny Kwan, Consol Plaintiff: Joseph H. Weiss, LEAD ATTORNEY, Weiss & Yourman, New York, NY.

**Judges:** [*1] Alfred V. Covello, United States District Judge.

**Opinion by:** Alfred V. Covello

# Opinion

RULING ON MOTIONS FOR APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES AND EXPENSES

This is an action for damages brought on behalf of a class of all persons and entities who purchased or acquired Priceline.com securities during the class period of January 27, 2000 through October 4, 2000, and were damaged

thereby. [1] It is brought pursuant to sections 10(b), *15 U.S.C. § 78j(b)*, and 20(a), *15 U.S.C. § 78t*, of the Securities and Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *15 U.S.C. §§ 78a-78nm*, and *Rule 10b-5*, *17 C.F.R. § 240.10b-5*. The complaint alleges that the defendants made certain misleading statements with respect to the profitability of Priceline.com and WebHouse Club, causing the plaintiff class to suffer losses on their investments in Priceline.com securities. On May 4, 2007, the plaintiffs reached a settlement with the defendants Priceline.com, Jay Walker, Dan Schulman, Richard Braddock and N.J. Nichols. On July 2, 2007, the court held a hearing to address the fairness of the proposed settlement in accordance with *Federal Rule of Civil Procedure 23(e)*. [*2] [2] For the following reasons, the court hereby approves the parties proposed settlement and the plaintiffs' requested attorneys' fees and expenses.

**FACTS**

Examination of the complaint and the papers filed in connection with the parties' proposed settlement and the arguments made during the July 2, 2007, hearing reveal the following facts:

On October 2, 2000, the plaintiffs filed the complaint in this case, alleging that the defendants made certain misleading statements with respect to  [*3] the profitability of Priceline.com and WebHouse Club, causing the plaintiff class to suffer losses on their investments in Priceline.com securities. On November 29, 2000, the court consolidated nine of the within cases. On September 12, 2001, the court consolidated the remaining 21 cases under the above-titled case number. On September 12, 2001, the court appointed lead plaintiff for the putative class.

On October 29, 2001, the plaintiff filed a consolidated amended complaint. On February 28, 2002, the defendant, Deloitte and Touche ("Deloitte"), and the defendants Priceline, Walker, Schulman, Braddock and Nichols ("Priceline Defendants"), filed motions to dismiss the consolidated amended complaint. On October 7, 2004, the court, the honorable Dominic J. Squatrito, granted in part and denied in part the defendants motions to dismiss and dismissed a portion of the allegations against the Priceline

defendants and all of the allegations against Deloitte. On January 7, 2005, the plaintiffs filed a motion to certify the class. On April 4, 2006, the court certified the plaintiff class to include all persons and entities who purchased or acquired Priceline.com securities during the class period  [*4] of January 27, 2000 through October 4, 2000, and were damaged thereby. During the pendency of this case, the parties filed numerous discovery motions and have produced and reviewed 5.29 million pages of WebHouse and Priceline documents.

On May 4, 2007, the plaintiffs reached agreement with defendants Priceline.com, Walker, Schulman, Braddock and Nichols for a cash settlement of $80 million. On July 2, 2007, the court held a hearing to address the fairness of the proposed settlement in accordance with *Federal Rule of Civil Procedure 23(e)*.

**STANDARD**

*Federal Rule of Civil Procedure 23(e)* provides as follows:

> (A) The court must approve any settlement . . . of the claims, issues, or defenses of a certified class.

> (B) The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

> (C) The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate.

*Fed.R.Civ.P. 23(e)(1)*. The second circuit has recognized that "[t]he standard for the adequacy of a settlement notice in a class action under either the *Due Process Clause* [*5] or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. V. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005)*. The court further stated that "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or *rule 23(e)* requirements: the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id. at 114* (citing *Weinberger v. Kendrick,*

---

[1]  Excluded from the class are the following: (1) the settling defendants; (2) the officers and directors of Priceline.com, at all relevant times; (3) members of the settling defendants' immediate families and their legal representatives, heirs, successors or assigns; (4) any entity in which the settling defendants have or at any time had a controlling interest; and (5) Deloitte & Touche LLP, or any of Deloitte's partners, officers and directors.

[2]  *Federal Rule of Civil Procedure 23(e)* provides, in relevant part, that "the court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." *Fed.R.Civ.P. 23(e)(1)(C)*.

*698 F.2d 61, 70 (2d Cir. 1982)* (internal quotation marks and brackets omitted)).

The second circuit has further recognized that ″[a] court may approve a class action settlement if it is fair, reasonable and adequate and not a product of collusion.″ *Wal-Mart Stores, Inc. V. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005).* ″A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement.″ Id. (citing *D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)).* Further, the court has recognized a strong policy in favor of class action settlements and also that a ″'presumption of fairness, [*6] adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'″ *Id. at 116-17* (quoting *Manual for Complex Litigation, Third,* § 30.42 (1995)).

**DISCUSSION**

**I. Adequacy of Notice to the Class**

*Federal Rule of Civil Procedure 23(e)(1)(B)* requires that the court ″direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.″ *Fed. R. Civ. P. 23(e)(1)(B).* In addition, *Federal Rule of Civil Procedure 23(c)(2)(B)* requires that the court ″direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language:

* the nature of the action

* the definition of the class certified,

* the class claims, issues, or defenses,

* that a class member may enter an appearance through counsel if the member so desires,

* that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and

* the binding [*7] effect of a class judgment on class members under *Rule 23(c)(3).*″

*Fed. R. Civ. P. 23(c)(2).*

In this case, the claims administrator, Strategic Claims Services (″Strategic Claims″), mailed individual notices, by first-class mail, to all class members at their last known-addresses. Strategic Claims mailed a total of 88,893 packets of individual notice materials. In addition, the notice of this settlement was published in the *Wall Street Journal* and *USA Today.* Further, a press release announced the settlement over the PR newswire for national distribution and the notice of settlement and settlement agreement are currently posted on the claims administrator's website. Finally, Priceline described the settlement in its 2007 first quarter Form 10-Q, which it filed on May 10, 2007.

The court concludes that notice to the class in this case was adequate in form and content to satisfy the requirements of the federal rules and due process. The notice was sufficient for class members to understand the proposed settlement and their options.

**II. Fairness of the Settlement**

The federal rules next require the court to determine whether ″the settlement . . . is fair, reasonable, and adequate.″ *Fed.R.Civ.P. 23(e)(1)(C).* [*8] The second circuit has stated that courts should consider the following factors when determining whether a particular settlement is fair: ″(1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . .; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through the trial . . .; (7) the ability of the defendants to withstand a greater judgment . . .; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .″ *City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).* Further, the second circuit has recognized that a ″'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'″ *Wal-Mart Stores, Inc. V. Visa U.S.A., Inc., 396 F.3d 96, 116-17 (2d Cir. 2005)* [*9] (quoting *Manual for Complex Litigation, Third,* § 30.42 (1995)).

In this case, the parties met in four mediation sessions before reaching agreement. The honorable Nicholas H. Politan, retired U.S. district judge, and Robert A. Meyer, esq., conducted the negotiations between the parties. The settlement in this case was ably negotiated at arms' length with the impartial participation of Judge Politan and attorney Meyer and is, therefore, entitled to a presumption of fairness and adequacy. Further, the above-referenced factors militate

2007 U.S. Dist. LEXIS 52538, *9

in favor of approving the parties' proposed settlement. This is a complex case involving many complex accounting issues and violations of the securities laws. While two entities have raised issues with respect to the amount of class counsels' fee, the reaction of the class to the terms of the proposed settlement could not be more favorable. Not one member of the class has objected to the settlement. With respect to the stage of the proceedings, the parties have been litigating this case for almost seven years. During that time, they have completed review of several millions of pages of documents and assembled and utilized teams of investigators and experts **[*10]** to analyze and quantify their claims. Consequently, the parties are certainly in a position to understand and gauge the strengths and weaknesses of their case and to determine an adequate settlement. See *In re AOL Time Warner, Inc. Sec. & ERISA Litig., 2006 U.S. Dist. LEXIS 17588, 2006 WL 903236 *10 (S.D.N.Y. April 6, 2006)*. With respect to the risks of establishing liability, absent the within settlement, the plaintiffs would face motions for summary judgment and complex and fact-intensive analysis of accounting and fraud issues. The plaintiffs would also face significant obstacles in proving damages in this case with respect to differences between the stock's purchase price and the stock's "true" value. The determination of damages would depend upon the jury's reaction to and interpretation of conflicting expert opinions on the issue. Such a determination would be difficult to predict with any certainty. With respect to the risks of maintaining the class action through trial, although the court has certified the class in this case, the prospects of decertification certainly exist in light of the defendants' vigorous opposition to the plaintiffs' motions for certification and the defendants' defeat of one of the plaintiffs' **[*11]** motions for appointment of a lead plaintiff as a class representative. With respect to the defendants' ability to withstand a greater judgment, the plaintiffs' memorandum states that class counsel relied on this factor in deciding to settle this case. On its 2007 Form 10-Q, Priceline reported that $ 30 million of the $ 80 million dollar settlement amount is being funded through its insurance policies. In addition, the form states that Priceline's current liabilities exceed its current assets and that it reported an operating loss of $ 31.7 million for its most recent quarter. Finally, the range of reasonableness of the settlement in light of the best possible recovery and litigation risks weighs in favor of approving the parties settlement. Given the procedural history of this case, the previously discussed risks of proceeding to trial and the defendants' financial circumstances, the court concludes that the settlement here represents a fair, adequate and reasonable result for the class.

As part of the fairness determination, the court must determine whether the settlement's proposed allocation of the proceeds is fair and reasonable. "[T]he adequacy of an allocation plan turns on whether **[*12]** counsel has properly apprised itself of the merits of all claims, and whether the proposed settlement is fair and reasonable in light of that information." *In re Paine Webber Partnerships Litigation, 171 F.R.D. 104, 133 (S.D.N.Y. 1997)*, aff'd, *117 F.3d 721 (2d Cir. 1997)*. In this case, the settlement provides for distribution of the net settlement funds on a pro rata basis and involves a formula based upon liability and damages. The settlement agreement seeks to reimburse class members for the excess amount they paid for Priceline stock because of the artificial inflation of the stock by reason of the defendants' misrepresentations. The court notes that not one class member has objected to the proposed plan of allocation. Upon careful review of the settlement agreement's allocation of the settlement fund, the court concludes that it is fair and has a "reasonable rational basis" in light of the circumstances of this case. See *Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)*.

## III. Attorneys' Fees

Lead plaintiffs' counsel have also filed a motion for an award of attorneys fees in the amount of 30% of the $80 million dollar settlement and for reimbursement of litigation **[*13]** expenses. For the foregoing reasons, the motion is granted.

The plaintiffs argue that 30% of the settlement fund is a fair and reasonable fee in this case. The New York State Teachers' Retirement System ("NYSTRS") has filed an opposition to the requested fee and argues that the facts of this case do not support a fee award in that amount. In addition, the Pennsylvania Public Schools Employees' Retirement System ("PPSERS") has filed an objection to the proposed attorneys' fee request.

The second circuit has recognized that "where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class. . . . the attorneys whose efforts created the fund are entitled to a reasonable fee-set by the court-to be taken from the fund." *Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000)* (citations omitted). The second circuit has recognized two methods for calculating a reasonable fee. "The first is the loadstar, under which the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate. Once that initial **[*14]** computation has been made, the district court may, in

2007 U.S. Dist. LEXIS 52538, *14

its discretion, increase the loadstar by a multiplier based on 'other less objective factors,' such as the risk of litigation and the performance of the attorneys." Id. (Citation omitted) (internal quotation marks omitted in original). Under the second method, "the court sets some percentage of the recovery as a fee." Id. The second circuit has recognized that regardless of the method used, "the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." Id. The second circuit has stated that whether using the loadstar or percentage methods, "the district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" Id. at 50 (quoting In re Union Carbide Corp. Consumer Products Business Securities, 724 F. Supp 160, 163 (S.D.N.Y. 1989)).

In this case, counsel have expended 31,768 hours [*15] at rates of between $ 50 and $ 770 per hour for a total of 12.1 million in fees. Counsel in this case state that they have investigated publicly available materials, reviewed millions of pages of documents, consulted with experts, conducted ongoing research and drafted court documents for an extensive motions practice, formulated litigation strategy, prepared for and participated in multiple mediation sessions, and negotiated and administered the within settlement. The magnitude and complexity of this case are apparent from the more than six years of contentious discovery, intricate issues regarding proof of liability and loss and complex accounting issues. With respect to the risk of litigation, the plaintiffs developed their own theory of liability and damages, as there was not a government prosecution in this case. Proving the elements of this case would be a necessary and formidable task. Further, litigation brought issues of collectibility against these defendants, a risk that the class would not be certified, and risks associated with taking a case on a contingent fee basis. The quality of representation here is demonstrated, in part, by the result achieved for the class. Further, [*16] it has been this court's experience, throughout the ongoing litigation of this matter, that counsel have conducted themselves with the utmost professionalism and respect for the court and the judicial process. The relation of the requested fee to the settlement weighs in favor of the requested 30% fee award. The effort by counsel in this case, the result obtained and similar awards in comparable cases in this circuit, all weigh in favor of the requested fee. See e.g., Gwozdzinnsky v. Sandler Assocs., 159 F.3d 1346 (2d Cir. 1998) (summary order) (affirming district court's award of 25% of the common fund); Strougo

ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (granting attorneys fees in amount of 33 and 1/3% of the settlement fund); Maley v. Del Global Technologies Corp., 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (granting attorneys' fees in amount of 33 and 1/3% of the settlement fund); In re RJR Nabisco Sec. Litig., No. 88 Civ. 7905, 1992 U.S. Dist. LEXIS 12702, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) (recognizing that the courts increasingly use the percentage of the fund method over the loadstar method in attorneys' fee award).

Finally, public policy considerations also support the [*17] requested fee. The award of the percentage requested here will encourage enforcement of the securities laws and support attorneys' decisions to take these types of cases on a contingent fee basis. The fee fairly compensates competent counsel in a complex securities case and helps to perpetuate the availability of skilled counsel for future cases of this nature.

A cross check of the loadstar in this case also demonstrates the reasonableness of the requested percentage. The percentage requested equals a 1.98 multiplier of the $ 12.1 million dollar loadstar amount. Taking into consideration all of the aforementioned factors, the risks associated with contingent fee litigation, and the quality of representation here and the results obtained, this multiplier is reasonable in light of the circumstances of this case. See In re Lloyd's Am. Trust Fund Litig., 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577 *26-28 (S.D.N.Y. 26, 2002) (recognizing that courts typically apply a multiplier to the loadstar amount to recognize the risks of litigation and a contingent fee). The court, therefore, orders a fee award equal to 30% of the settlement amount plus accrued interest to the date of the award. The amount of the fee [*18] award shall be allocated among the plaintiffs' counsel in a fashion which fairly compensates counsel for their respective contributions in litigating this case.

Class plaintiffs' counsel also request an award for reimbursement of their litigation expenses advanced to prosecute this case, in the amount of $ 1,394,422.57. Counsel have submitted thorough records of their requested expenses. Absent any objection thereto and after careful review of the expenses at issue, the court grants the plaintiffs' request. The plaintiffs' counsel shall be reimbursed for the full amount of the expenses they have advanced in this matter.

## IV. Opt Out Provision

The notice to the class of the proposed settlement gave class members the option to opt out of the settlement. On June 4,

2007 U.S. Dist. LEXIS 52538, *18

2007, class member Barbara A. Res filed a request to opt out of the settlement in accordance with the procedures set forth in the notice of settlement. Her request is granted and she will not be part of the within settlement. In addition, Arnold J. Hoffman filed a request to opt out with respect to several trusts. That request is addressed in a separate order filed simultaneously herewith.

**CONCLUSION**

For the foregoing reasons, the **[*19]** plaintiffs' motion for final approval of the proposed class action settlement (document no. 462) and the motion for award of attorneys' fees and reimbursement of expenses (document no. 463) are **GRANTED**.

It is so ordered this 19th day of July, 2007, at Hartford, Connecticut.

/s/

Alfred V. Covello,

United States District Judge

ⓘ Cited
As of: May 2, 2016 3:59 PM EDT

# *Rivera v. Dixson*

United States District Court for the District of Maryland, Southern Division

January 29, 2015, Decided; January 30, 2015, Filed

Civil Action No. TDC-14-2901

**Reporter**
2015 U.S. Dist. LEXIS 11248

JULIO E. CISNEROS RIVERA, Plaintiff, v. ANGELA DIXSON and EXTRA CLEAN, INC., Defendants.

## Core Terms

settlement, parties, overtime, potential recovery, attorney's fees, fair and reasonable, costs, factors, wages

**Counsel:** **[*1]** For Julio E. Cisneros Rivera, Plaintiff: Justin Zelikovitz, Law Office of Justin Zelikovitz, PLLC, Washington, DC.

For Angela Dixson, also known as Angela Gitelson, Extra Clean, Inc., Defendants: Howard Benjamin Hoffman, Howard B Hoffman Attorney at Law, Rockville, MD.

**Judges:** THEODORE D. CHUANG, United States District Judge.

**Opinion by:** THEODORE D. CHUANG

## Opinion

### MEMORANDUM OPINION

Pending before the Court is the parties' Joint Motion for Approval of FLSA Settlement. ECF No. 20. The parties assert that the Court should approve their agreed-upon settlement, consisting of back wages and attorney's fees, resolving the allegations in the Complaint arising under the Fair Labor Standards Act ("FLSA"), *29 U.S.C. §§ 201 et seq. (2012)*. The Court has reviewed the Motion and held a hearing by telephone on January 28, 2015. *See* ECF No. 37. For the reasons set forth below, the Motion is GRANTED and the settlement is APPROVED.

### BACKGROUND

On September 12, 2014, Plaintiff Julio E. Cisneros Rivera ("Cisneros Rivera") filed a Complaint against Defendants Angela Dixson ("Dixson") and Extra Clean, Inc., a cleaning company of which Dixson is the president and owner, alleging that he had not received certain wages and overtime pay (one and one-half times **[*2]** his hourly rate) for hours worked in excess of 40 hours per week, in violation of FLSA. Compl. ¶¶ 2, 8-9, ECF No. 1. In general, Cisneros Rivera alleged that he was not paid regular wages or overtime for time periods during which he was driving a company van to pick up co-workers and transport them to work, and that he was not paid overtime for certain other periods of work. Compl. ¶¶ 27-28, 33. Cisneros Rivera alleged that he was owed approximately $21,447.50 in unpaid regular and overtime hours, *Id.* ¶ 36.

Following an Initial Status Conference on November 20, 2014, discovery commenced. On January 12, 2015, the parties filed a Joint Motion for Approval of FLSA Settlement in which they reported that the parties had reached an agreement that in exchange for a complete dismissal of the case:

> 1. Defendants will pay Cisneros Rivera $6,000; and
>
> 2. Defendants will pay $9,000 to Plaintiff's counsel for attorney's fees and costs.

Joint Mot. Approval Settlement, Ex. 2, ECF No. 20-2.

### DISCUSSION

### I. Legal Standard

Congress enacted the FLSA to protect workers from substandard wages and oppressive working hours. *Barrentine v. Ark-Best Freight Sys., 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981)*. Because of the significant inequalities in bargaining power between employers and employees, **[*3]** the statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706, 65 S. Ct. 895, 89 L. Ed.*

Erick Diaz

*1296 (1945)*. A court-approved stipulated judgment or settlement is an exception to that rule. *See D. A. Schulte, Inc. v. Gangi, 328 U.S. 108, 113 n.8, 66 S. Ct. 925, 90 L. Ed. 1114 (1946); Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982)*. Such a settlement may be approved provided that it reflects a "reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores, 679 F.2d at 1354; accord Saman v. LBDP, Inc., No. DKC-12-1083, 2013 U.S. Dist. LEXIS 83414, 2013 WL 2949047, at *2 (D. Md. June 13, 2013)*.

Although the United States Court of Appeals for the Fourth Circuit has not specifically identified the factors to be considered in approving FLSA settlements, district courts in this circuit typically employ the considerations set forth by the United States Court of Appeals for the Eleventh Circuit in *Lynn's Food Stores*. *See, e.g., Lopez v. NTI, LLC, 748 F. Supp. 2d 471, 478 (D. Md. 2010); see also Saman, 2013 U.S. Dist. LEXIS 83414, 2013 WL 2949047, at *3; Hoffman v. First Student, Inc., No. WDQ-06-1882, 2010 U.S. Dist. LEXIS 27329, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010)*. An FLSA settlement generally should be approved if it reflects "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food Stores, 679 F.2d at 1355*. The analysis includes consideration of (1) whether there are FLSA issues actually in dispute; (2) the fairness and reasonableness of the settlement; and (3) the reasonableness of the attorney's fees, if included in the agreement. *Saman, 2013 U.S. Dist. LEXIS 83414, 2013 WL 2949047, at *3*. These factors are most likely to be [*4] satisfied where there is an "assurance of an adversarial context" and the employees are "represented by an attorney who can protect their rights under the statute." *Lynn's Food Stores, 679 F.2d at 1354*.

## II. FLSA Settlement

### A. *Bona Fide* Dispute

The first step in analyzing the settlement agreement is determining whether there are FLSA issues that are "actually in dispute." *Saman, 2013 U.S. Dist. LEXIS 83414, 2013 WL 2949047 at *3*. In the Joint Motion for Approval of FLSA Settlement, the parties state that "[b]oth parties disagree, as a matter of fact, over the amount of time actually involved in driving, and both parties differ over whether the driving (travel) is legally compensable." Joint Mot. at 7 (parentheses in original). Specifically, Defendants take the position that this case is governed by the Portal-to-Portal Act, *29 U.S.C. §§ 251-262*, which provides that employers are not liable for overtime under the FLSA for "walking, riding, or traveling

to and from the actual place of performance" of the employee's work, and that "the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities." *Id. § 254(a)*. Cisneros Rivera takes the position that as [*5] a supervisor, it was part of his duties to transport his work crew, such that the Portal-to-Portal Act does not apply.

Moreover, the parties report that there are no exact records on the time Cisneros Rivera spent driving co-workers, so the amount of overtime compensation at issue is a matter of dispute. Joint Mot. at 4. The parties also disagree on whether any violation was willful, which would need to be established in order to allow for recovery of back overtime pay arising more than two years before the date of the Complaint, because there is a three-year statute of limitations on willful violations of FLSA and only a two-year statute of limitations on other violations of FLSA. *See 29 U.S.C. § 255(a)*.

Thus, there are genuine disputes that support the concept of a negotiated settlement of this FLSA claim.

### B. Fairness and Reasonableness

In assessing the fairness and reasonableness of the settlement agreement, the following factors should be considered: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have [*6] represented the plaintiffs; (5) the opinions of counsel; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. *Saman, 2013 U.S. Dist. LEXIS 83414, 2013 WL 2949047, at *3* (quoting *Lomascolo v. Parsons Brinckerhoff, Inc., No. 1:08cv1310 (AJT/JFA), 2009 U.S. Dist. LEXIS 89136, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)*); *see also Poulin v. Gen. Dynamics Shared Res., Inc., No. 3:09-cv-00058, 2010 U.S. Dist. LEXIS 47511, 2010 WL 1813497, at *1 n.1 (W.D. Va. May 5, 2010)*. Upon consideration of the settlement agreement and the underlying facts, the Court finds that this agreement is fair and reasonable.

The primary factor supporting this conclusion is the probability of Plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. Under the proposed settlement, Cisneros Rivera would receive $6,000. According to Plaintiff's counsel, although

2015 U.S. Dist. LEXIS 11248, *6

he initially took an aggressive posture in the Complaint, seeking $21,447.50, after consideration of all information now available to him, and applying assumptions that could reasonably be accepted in this case, he calculates the amount of unpaid overtime owed to Cisneros Rivera as $4,567.44. Joint Mot. at 10; Hearing on Joint Mot. Approve Settlement, *Cisneros Rivera v. Dixson*, No. 14-cv-2901-TDC, at 03:05:36 p.m. (D. Md. Jan. 28, 2015). Under FLSA, liquidated damages consist of 100 percent of back pay, *29 U.S.C. § 216(b)* (stating that liability for unpaid overtime compensation includes [*7] "an additional equal amount as liquidated damages"), so Cisneros Rivera's potential recovery would be $9,134.88. Moreover, because Cisneros Rivera alleged a violation of the Maryland Wage Payment and Collection Law ("MWPCL"), *Md. Code Ann., Lab. & Empl. §§ 3-501 to 509* (West 2014), he potentially could receive treble damages. *See id.* *§ 3-507.2(b)*. Thus, his overall potential recovery would be approximately $13,702.32. Accordingly, the settlement provides Cisneros Rivera with 66 percent of his potential recovery under FLSA, and 44 percent of his potential recovery under MWPCL.[1] Given the bona fide disputes at issue in this case, *see supra* Part II.A., the Court finds that this settlement for a substantial percentage of the potential recovery is fair and reasonable.

The other five factors also support a finding of a fair and reasonable settlement. The settlement was negotiated after discovery, which included the provision of company records and Cisneros Rivera's deposition, which provided sufficient information to allow for consideration of factual and [*8] legal issues relevant to a possible settlement. Joint Mot. at 8-9; Affidavit of Justin Zelikovitz ("Aff.") ¶ 3, ECF No. 20-1. With the potential for dispositive motions and trial, settlement at this time is reasonable to avoid additional litigation costs. Joint Mot. at 9. The agreement was negotiated by experienced counsel and included consideration of the information and documents exchanged among counsel. Joint Mot. at 9.10; Aff. ¶ 3. Counsel for both parties have recommended this settlement to their clients. Joint Mot. at 10. Finally, there is no evidence of fraud or collusion in the settlement. *See Lomascolo v. Parsons Brinckerhoff, Inc., No. 1:08cv1310 (AJT/JFA), 2009 U.S. Dist. LEXIS 89136, 2009 WL 3094955, at *12 (E.D. Va. Sept. 28, 2009)* ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."). Thus, the Court finds the settlement to be fair and reasonable.

## C. Attorney's Fees

If the proposed settlement includes a provision for payment of attorney's fees, the reasonableness of the award must also "be independently assessed, regardless of whether there is any suggestion that a conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Saman, 2013 U.S. Dist. LEXIS 83414, 2013 WL 2949047, at *3* (quoting *Lane v. Ko—Me, LLC, No. 10-2261, 2011 U.S. Dist. LEXIS 97870, 2011 WL 3880427, at *3 (D. Md. Aug. 31, 2011)*). In this case, the parties negotiated attorney's fees separately [*9] from the amount to be paid to Plaintiff's and agreed on an amount of $9,000. Joint Mot., Ex. 2. To assess this amount, the Court applies the traditional lodestar methodology factors, beginning with a lodestar calculation defined as the number of hours "reasonably expended" by counsel multiplied by a "reasonable hourly rate." *Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009)*; *Saman, 2013 U.S. Dist. LEXIS 83414, 2013 WL 2949047, at *6*. An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson, 465 U.S. 886, 890 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)*. In *Appendix B to the Local Rules of the United States District Court for the District of Maryland*,[2] this Court has established rates that are presumptively reasonable for lodestar calculations. *See, e.g., Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 509 (D. Md. 2000)*.

Plaintiff's counsel represents that he expended approximately 34.6 hours on this case, had paralegal assistance comprising 23.2 hours, and incurred $603.78 in costs. The Court has reviewed the summary of billed work and costs and finds it to be reasonable. Plaintiff's counsel further represents that his billing rate is $225 per hour and his paralegal's billing rate is $125 per hour, which are within the ranges set by this Court for an attorney of his experience, consisting of six years as a member of the Court of Appeals of Maryland, and a paralegal. Aff. ¶ [*10] 5; *see Local Rules, App. B* (D. Md. 2014) (setting a range of $165-300 per hour for attorneys with 5-8 years of experience and range of $95-150 per hour for paralegal work). Thus, Plaintiff's counsel's total fees and costs would be $11,288.78. Based on these calculations, the proposed settlement figure of $9,000 for attorney's fees and costs is deemed to be fair and reasonable.

## CONCLUSION

---

[1]   In the absence of a finding of willfulness, the statute of limitations would bar recovery of any unpaid overtime wages dating from more than two years before the filing of the Complaint. *See* 29 U.S.C. § 255(a).

[2]   *Available at* http://www.mdd.uscounts.gov/localrules/LocalRules.pdf.

For the foregoing reasons, the Joint Motion for Approval of Settlement, ECF No. 20, is GRANTED. A separate Order follows.

Date: January 29, 2015

/s/ Theodore D. Chuang

THEODORE D. CHUANGTHEODORE D. CHUANG

United States District Judge

**ORDER**

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED that the Joint Motion for Approval of FLSA Settlement, ECF No. 20, is GRANTED and the settlement is APPROVED. The Clerk shall close this case.

Date: January 29, 2015

/s/ THEODORE D. CHUANGTHEODORE D. CHUANG

United States District Judge

⚠ Caution
As of: May 2, 2016 4:09 PM EDT

# *Sand v. Greenberg*

United States District Court for the Southern District of New York

January 7, 2010, Decided; January 7, 2010, Filed

08 Civ. 7840 (PAC)

**Reporter**
2010 U.S. Dist. LEXIS 1120; 2010 WL 69359

JESKA SAND, et al., on behalf of themselves and all others similarly situated, Plaintiffs, -against- STEVEN GREENBERG, et al., Defendants.

**Subsequent History:** Class certification granted by, Motion granted by *Sand v. Greenberg, 2011 U.S. Dist. LEXIS 36266 (S.D.N.Y., Mar. 22, 2011)*

**Prior History:** *Sand v. Greenberg, 2009 U.S. Dist. LEXIS 64739 (S.D.N.Y., July 23, 2009)*

## Core Terms

attorneys', damages, inclusive, costs and expenses, liquidated damages, Dictionary, parties, Notice, settlement, proposed judgment, commas

**Counsel:** [*1] For Jeska Sand, Christopher Schiffer, Patrizza Jimenez, Carolina Korth, On behalf of themselves and all others similarly situated, Plaintiffs: Adam T Klein, Justin Mitchell Swartz, Juno Emmeline Turner, Lauren Elyse Schwartzreich, Lewis M. Steel, Melissa E. Pierre-Louis, Outten & Golden, LLP (NYC), New York, NY.

For Jessica Llonch, Plaintiff: Daniel Maimon Kirschenbaum, Joseph and Herzfeld, NY, NY; Juno Emmeline Turner, Lauren Elyse Schwartzreich, Lewis M. Steel, Melissa E. Pierre-Louis, Outten & Golden,LLP (NYC), New York, NY.

For Julianne Giragosian, Sandi Christa Griffith, Plaintiffs: Daniel Maimon Kirschenbaum, Outten & Golden,LLP (NYC), New York, NY.

For Sarah Sanders, individually, Plaintiff: Adam T Klein, Juno Emmeline Turner, Justin Mitchell Swartz, Lauren Elyse Schwartzreich, Lewis M. Steel, Melissa E. Pierre-Louis, Outten & Golden,LLP (NYC), New York, NY.

For Steven Greenberg, Defendant: Eli Zev Freedberg, LEAD ATTORNEY, Carolyn Diane Richmond, Fox Rothschild, LLP (NYC), New York, NY; Jay Samuel Berke, Skadden, Arps, Slate, Meagher & Flom LLP (NYC), New York, NY.

For 230FA L.L.C., doing business as 230 Fifth Avenue, doing business as 230 Fifth Avenue Rooftop Garden, [*2] 230 Fifth Avenue Rooftop Garden, Defendants: Eli Zev Freedberg, LEAD ATTORNEY, Carolyn Diane Richmond, Fox Rothschild, LLP (NYC), New York, NY; Ernest Edward Badway, Saiber, Schlesinger Satz & Goldstein, LLC, Newark, NJ; Jay Samuel Berke, Skadden, Arps, Slate, Meagher & Flom LLP (NYC), New York, NY.

**Judges:** HONORABLE PAUL A. CROTTY, United States District Judge.

**Opinion by:** PAUL A. CROTTY

## Opinion

ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

The parties are in a dispute concerning the correct interpretation of Defendants' Offer of Judgment, pursuant to *Rule 68* ("Offer"), dated November 12, 2009, which reads in pertinent part:

> Pursuant to *Rule 68* (Defendants) offer to allow judgment to be taken against it with respect to the action filed by (Plaintiffs) in the amount of $ 525,000, on a class wide basis, inclusive of all damages, liquidated damages and/or interest plus reasonable attorneys' fees, costs and expenses actually incurred, to which plaintiffs may be entitled to by law, to be determined by the Court.

Four days later, on November 16, 2009, Plaintiffs' counsel served a Notice of Acceptance of Defendants' Offer of

2010 U.S. Dist. LEXIS 1120, *3

Judgment Pursuant to *Rule 68* ("Notice of Acceptance"), which stated:

> PLEASE TAKE NOTICE **[*3]** that, pursuant to *Rule 68 of the Federal Rules of Civil Procedure*, Plaintiffs accept Defendants' Offer of Judgment Pursuant to *Rule 68*. Defendants' Offer of Judgment Pursuant to *Rule 68* is attached hereto as Exhibit A.

Attached as Exhibit A was a true copy of Defendants' November 12, 2009 *Rule 68* Offer of Judgment. Plaintiffs filed the Offer and Notice of Acceptance (Docket 160). Since Plaintiffs served a "written notice accepting the offer" (*Fed. R. Civ. P. 68(a)*), Plaintiffs sought to file a Proposed Final Judgment ("Proposed Judgment"), also dated November 16, 2009, which recited:

> Defendants . . . in the above captioned action having offered on November 12, 2009 pursuant to *Rule 68 of the Federal Rules of Civil Procedure*, Plaintiffs to take judgment against it in the amount of FIVE HUNDRED, TWENTY-FIVE THOUSAND DOLLARS ($ 525,000) plus reasonable attorneys' fees, costs and expenses actually incurred, to which Plaintiffs may be entitled by law, to be determined by the Court (See Ex. A) [1] and Plaintiffs having accepted this offer of judgment on November 16, 2009 (See Ex. B), [2] it is hereby
>
> ORDERED, ADJUDGED AND DECREED that:
>
> Final judgment is entered in favor of Plaintiffs against Defendants **[*4]** . . . and
>
> Defendants . . . are to pay Plaintiffs the amount of FIVE HUNDRED, TWENTY-FIVE THOUSAND DOLLARS ($ 525,000) plus reasonable attorneys' fees, costs and expenses actually incurred to which Plaintiffs may be entitled by law, to be determined by the Court.

Immediately thereafter, Defendants' counsel wrote to the Court protesting that the *Rule 68* Offer of $ 525,000 was all inclusive and that attorneys' fees were part of, not in addition to, the *Rule 68* Offer. Defendants' counsel did not refer to Plaintiffs' Notice of Acceptance, which appears to be appropriate as to form. Instead, counsel argued that Plaintiffs' Proposed Final Judgment was defective in that it did not mirror "the language of Defendants' Offer of Judgment." The precise defect was the Proposed Order failed to indicate that the $ 525,000 judgment is inclusive of attorneys' fees, costs and expenses. (Defendants' counsel's letter of 11/16/2009).

The Court invited the parties to a conference held on November 17, 2009, to discuss an amicable resolution. That did not occur, however, **[*5]** and the Court asked the parties to brief the issue. Briefing was completed on December 16, 2009, and the Court heard argument on December 17, 2009.

Defendants' first argue that the Plaintiffs' Proposed Judgment is not a valid acceptance of Defendants' Offer of Judgment because it does not mirror the terms of the Offer. The Proposed Judgment is said to be defective in three ways:

> (1) it does not reflect that the monetary offer was "inclusive" of all damages;
>
> (2) it did not state that neither the offer, nor any judgment resulting from the offer, may be construed as an admission of liability; and finally
>
> (3) it did not state that none of the Plaintiffs had really been harmed or suffered any damages.

(Defendants' Memorandum, pg. 7, 8.)

Defendants describe these omissions as "blatant" and "brazen." In fact, they are not transgressions at all; rather, the Defendants' argument is irrelevant. The dispute here is not about how the proposed judgment should or should not be written. Indeed, while denials of liability and injury, or harm to one party, are appropriate for settlement documents and releases, it is dubious whether they are necessary or proper in a judgment. Whatever may be said about Plaintiffs' **[*6]** proposed judgment, it does not complete the contract. The contract was completed when Defendants' *Rule 68* Offer of November 12, 2009 was accepted by the Plaintiffs on November 16, 2009. *Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc., 962 F.2d 268, 272 (2d Cir. 1992)* (*Rule 68* offers are to be interpreted in accordance with contract rules of interpretation). Indeed, Defendants agree with this proposition. They argue that this Court should "issue an order that Plaintiffs have in fact, accepted the Defendants' Offer as is stated on the face of it." (Def. Memo. Of Law, pg. 6.)

The Court holds that Plaintiffs properly accepted Defendants' validly tendered *Rule 68* Offer. The Court turns to the correct interpretation of the offer and acceptance.

Defendants' argue that the *Rule 68* Offer was unambiguous and was for a total amount of $ 525,000, inclusive of

---

[1]   Ex. A attached was a copy of Defendants' November 12, 2009 Rule 68 Offer.

[2]   Ex. B attached was a copy of Plaintiffs' November 16, 2009 acceptance.

2010 U.S. Dist. LEXIS 1120, *6

attorneys' fees. They rely on the bargaining history concerning settlement; the "rules of grammar;" the Merriam Webster Dictionary definition of the word "plus;" and the affidavit of an expert who teaches legal writing at a law school in Philadelphia, and who is a member of the Massachusetts Bar.

The language at issue is that judgment **[*7]** be taken "in the amount of $ 525,000, on a class wide basis, inclusive of all damages, liquidated damages and/or interest plus reasonable attorneys' fees, costs and expenses actually incurred, to which Plaintiffs may be entitled to by law, to be determined by the Court."

The Court does not need the assistance of the expert to interpret this sentence. Nor is there any need to consider either parol evidence, or the parties' bargaining history concerning a possible settlement. It is clear the parties are in dispute concerning the appropriate interpretation, but that does not mean there is ambiguity in the language Defendants wrote in their _Rule 68_ Offer. _RJE Corp. v. Northville Industries Corp., 329 F.3d 310, 314 (2d Cir. 2003)_. The Court can resolve the issue by looking at the language of the _Rule 68_ Offer, recognizing that "if there is any occasion in civil litigation which calls for caution and care by counsel, it is the drafting of a _Rule 68_ Offer," _Laskowski v. Buhay, 192 F.R.D. 480, 482 (M.D. Pa., 2000)_ (quoting _Taylor v. General Motors Div., No. 97-2988 1998 U.S. Dist. LEXIS 9386 at *5 (E.D. Pa., June 24, 1998)_.

Defendants' first argument is that the words "inclusive of" include **[*8]** all that comes after it. That might be so if Defendants had written: "inclusive of all damages, liquidated damages, interest, attorneys' fees, costs, expenses actually incurred . . . ." Defendants did not do so. Instead, they wrote as they did adding "and/or," "plus" and "and." By writing as they did, they limited the scope of the word "inclusive" to what immediately followed "damages, liquidated damages and/or interest." The word "plus" starts a new phrase and a new train of thought.

Next, Defendants' argue that the rules of grammar compel the conclusion that "inclusive" includes everything, including attorneys' fees. Here, the argument is based on the use of commas: "items in a series are normally separated by commas." Under Defendants' common law of commas, its offer consists of three parts:

(1) damages;

(2) liquidated damages and/or interest plus attorneys' fees; and

(3) costs and expenses actually incurred.

This, of course, makes no sense. Logically, damages, liquidated damages and interest belong together because they reflect what plaintiffs receive for violations of the Fair Labor Standards Act and the New York Labor Law. FLSA and New York Labor Law awards certainly includes damages, **[*9]** and in appropriate circumstances, liquidated damages, together with pre and/or post judgment interest. Attorneys' fees spring from an entirely different source. They are not meant to compensate plaintiffs, but rather to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel. But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.

The absence of a comma after the word "interest" is of no moment. The word "plus" clearly separates damages -- which are included in the offer of $ 525,000 -- from attorneys' fees, costs and expenses, which are not. There is no basis for Defendants' comma theory and the Court rejects it.

Next, the Defendants argue that considering the language of the entire _Rule 68_ Offer, it is clear that the $ 525,000 was intended to include attorneys' fees. Why else, Defendants ask, would the Offer include a provision that it was not admitting liability and stating that Plaintiffs were not harmed or damaged? These later two conditions are claimed to be a barrier to recovery of attorneys' fees **[*10]** because they demonstrate that Plaintiffs cannot be prevailing parties.

The short answer to this argument is that it ignores the fact that judgment was offered to be allowed against Defendants and by accepting the Offer, a judgment will be entered in Plaintiffs' favor, as it must be, in order to give effect to Defendants' _Rule 68_ Offer to pay Plaintiffs a sum of $ 525,000. Furthermore, Defendants' view of what constitutes a "prevailing party" is far too limited. Defendants did not offer a gift; they offered a judgment. As the Second Circuit recently held, "plaintiffs are . . . eligible' for attorneys' fees if they 'achieve some material alteration of the legal relationship' between them and their adversaries, _and_ that change bears a 'judicial imprimatur.'" _Perez v. Westchester County Dep't of Corr., 587 F.3d 143, 149 (2d Cir. 2009)_ (quoting _Roberson v. Giuliani, 346 F.3d 75, 79-80 (2d Cir. 2003))_.

Defendants also argue that the Merriam Webster Dictionary supports their interpretation. Their expert recites in her

Erick Diaz

2010 U.S. Dist. LEXIS 1120, *10

affidavit and Defendants' memo of law quotes the dictionary as follows:

"the word 'plus' has long been used with a meaning equivalent to *and* and people have come to use *plus* as [*11] a conjunction much like and."

Based on this definition, Defendants submit that "plus" means "and;" and because if Defendants had used "and" instead of "plus" there would be no argument about attorneys fees, Defendants conclude that they must prevail.

Defendants must concede that they did not use the word "and"; they chose to use the word "plus." Further, in quoting from the online version of the Merriam-Webster Dictionary, they fail to quote the entire entry for their selected definition of plus. *See* http://www.merriam-webster.com/dictionary/plus%5B

5D. Defendants also fail to note that the online version of Merriam-Webster contains a number of alternative definitions for the word -- definitions which contradict their interpretation of the *Rule 68* Offer. Had Defendants gone to the books, they would have discovered that the definition of "plus" analogous to their selection from the online dictionary provides, in its entirety:

Plus *conj* (1968): AND -- chiefly in oral use <<if you want to make a super investment, [Tilde] you don't happen to be rich - <ITALICS>radio advt> *Usage* The preposition *plus* has long been used with a meaning equivalent to and (as in "two plus two"); it is not, therefore, [*12] very surprising that in time people have begun to use it as a conjunction like *and*. It occurs mainly in spoken English and is likely to attract unfavorable notice in serious writing.

Webster's Ninth New Collegiate Dictionary 906 (9th ed. 1985) (emphasis supplied to last sentence). And Webster's has four other definitions of the word which precede Defendants' selection. The first entry for the definition of plus, according to Webster's, is (1) "algebraically positive," (2) "having receiving or being in addition to what is anticipated," (3) . . . (b) "greater than specified." The second entry for plus is "an added quantity." The third definition for plus is "increased by," as in principal plus interest.

Selective quotation from the dictionary, and an attempt to use the meaning of the word "plus" which is based on popular spoken English rather than correct usage, is not adequate support for Plaintiffs' argument that "plus" should be interpreted as "and."

The *Rule 68* Offer of November 12, 2009 cannot be reinterpreted, really revised, as Defendants wish, to substitute the word "and" for "plus" or add the word "all" to inclusive. The language must be interpreted as it is written. As written, [*13] "plus" means "in addition to;" "greater than specified;" "an added quantity;" or "increased by." Applying that definition, the contested sentence is interpreted to mean that the $ 525,000 includes the damages, liquidated damages and/or interest which Plaintiffs' claim on account of alleged violations of the Federal Fair Labor Standards Act and the New York State Labor Law. In addition to that amount, "plus" in other words, reasonable attorneys' fees, costs and expenses actually incurred which will be determined by the Court, unless the parties can come to an agreement.

This use of the "plus" recognizes that there are two distinct series of items -- one for those who claim injury which is included in the $ 525,000; and the other for those who provided legal services and incurred costs and expenses. These items are not included in the $ 525,000, and will be determined by the Court.

The Court recognizes that Defendants are claiming that they meant something different from what they wrote. But due care must be taken by counsel in drafting a *Rule 68* Offer. *Laskowski v. Buhay, 192 F.R.D. 480, 482 (M.D. Pa., 2000).* Further, it must be assumed sophisticated lawyers can use words appropriately [*14] so that they express precisely what is intended. See *International Fidelity Insurance Co. v. County of Rockland, 98 F. Supp. 2d 400, 412 (S.D.N.Y. 2000).* And to the extent there is any ambiguity in the Defendants' chosen language, "under the principle of *contra proferentum*, courts are to construe ambiguous contract terms against the drafter." *Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 663 (2d Cir. 1996).* In *Harrell v. Van Der Plas, 08 Civ. 8252 (GEL) 2009 U.S. Dist. LEXIS 104828 at *25 (S.D.N.Y. November 4, 2009),* the plaintiff accepted an *Rule 68* Offer of $ 7,500, but the offer was silent on attorney's fees, which plaintiff's attorney separately sought. Defendant argued that the offer was intended to be all inclusive. Judge Lynch rejected the argument. The same logic is applicable here. Defendants' language means what it says; "plus" does not mean "and", even though that is what Defendants now contend.

Until final judgment, no judgment need be entered. Before doing so, the Court must determine whether the settlement of $ 525,000 is appropriate for those in the collective action and the members of the proposed class. See *Lazzarini v. Reinwald Brothers Bakery Corp., 08-cv-2264, 2009 U.S. Dist. LEXIS 56423, 2009 WL 1941215, at * 1 (E.D.N.Y. June 29, 2009)*; [*15]  (approval of FLSA collective action

2010 U.S. Dist. LEXIS 1120, *15

settlement); *D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)* (approval of Rule 23 class action settlement). The Court must also hear and determine the reasonableness of attorneys' fees, as well as the costs and expenses of maintaining this action. The parties may be able to stipulate to these amounts; but otherwise the Court will set a hearing date and issue its determination thereafter.

The *Rule 68* Offer has been accepted by the Plaintiffs. The $ 525,000 Offer cover the Plaintiff's damages, liquidated damages and/or interest. All other matters, including attorney's fees, costs and expenses will be determined by the Court.

Dated: New York, New York

January 7, 2010

SO ORDERED

/s/ Paul A. Crotty

PAUL A. CROTTY

United States District Judge

 Positive

As of: May 2, 2016 4:07 PM EDT

# *Sewell v. Bovis Lend Lease LMB, Inc.*

United States District Court for the Southern District of New York

April 16, 2012, Decided; April 20, 2012, Filed

09 Civ. 6548 (RLE)

**Reporter**

2012 U.S. Dist. LEXIS 53556; 2012 WL 1320124

RENEE SEWELL, et al., Plaintiffs, - against - BOVIS LEND LEASE, INC. and BOVIS LEND LEASE LMB, INC., Defendants.

**Subsequent History:** As Corrected April 25, 2012.
Later proceeding at *Sewell v. Bovis Lend Lease, Inc., 2013 U.S. Dist. LEXIS 47526 (S.D.N.Y., Mar. 29, 2013)*

**Prior History:** *Sewell v. Bovis Lend Lease, 2012 U.S. Dist. LEXIS 24942 (S.D.N.Y., Feb. 24, 2012)*

## Core Terms

settlement, class member, class action, Parties, notice, awards, Courts, discovery, expenses, lodestar, settlement agreement, damages, certification, attorney's fees, settlement fund, Plaintiffs', documents, employees, risks, class representative, opted, court finds, records, attorneys, citations, one-third, requires, issues, cases, prosecuting

**Counsel:** [*1] For Renee Sewell, individually, Plaintiff: Adam T Klein, Juno Emmeline Turner, Molly Anne Brooks, LEAD ATTORNEYS, Jack A. Raisner, Justin Mitchell Swartz, Rachel Megan Bien, Outten & Golden, LLP (NYC), New York, NY.

For Renee Sewell, on behalf of all other persons similarly situated, Emily Diangson, on behalf of all others similarly situated, Plaintiffs: Adam T Klein, Jack A. Raisner, Juno Emmeline Turner, Justin Mitchell Swartz, Rachel Megan Bien, LEAD ATTORNEYS, Outten & Golden, LLP (NYC), New York, NY.

For Emily Diangson, individually, Plaintiff: Juno Emmeline Turner, LEAD ATTORNEY, Adam T Klein, Jack A. Raisner, Justin Mitchell Swartz, Rachel Megan Bien, Outten & Golden, LLP (NYC), New York, NY.

For Bovis Lend Lease, Inc., Bovis Lend Lease LMB, Inc., Defendants: Jason Steven Aschenbrand, LEAD ATTORNEY,

Winston & Strawn LLP (NY), New York, NY; Shane W. Blackstone, LEAD ATTORNEY, Kevin M. Cloutier, PRO HAC VICE, Winston & Strawn LLP (IL), Chicago, IL; Gregory Jacob, PRO HAC VICE, Winston & Strawn LLP, Washington, DC; Jennifer Rappoport, PRO HAC VICE, Winston & Strawn LLP (CA), Los Angeles, CA; Joan B. Tucker Fife, PRO HAC VICE, Winston & Strawn, L.L.P., Newark, NJ.

**Judges:** The Honorable Ronald [*2] L. Ellis, United States Magistrate Judge.

**Opinion by:** Ronald L. Ellis

## Opinion

**OPINION & ORDER**

**RONALD L. ELLIS, United States Magistrate Judge:**

### I. INTRODUCTION

This action was commenced as a putative class action under *Federal Rule of Civil Procedure 23* by Plaintiff Renee Sewell on behalf of herself and others similarly situated as current and former employees of Defendant Bovis Lend Lease, Inc. and Bovis Lend Lease LMB, Inc. ("Bovis"). Sewell and class members, including class representative Emily Diangson, worked as assistant project managers, project managers, project engineers and other salaried employees below a project manager, who performed similar work to Sewell though under a different title. Amended Compl. ¶¶ 5, 36 ("Compl."). Sewell and [*3] class members alleged violations of the Fair Labor Standards Act (FLSA), New York Labor Law (NYLL) and NJSWHL (New Jersey State Wage and Hour Law). Sewell and Diangson now seek certification of the settlement class, approval of the class action settlement and approval of the FLSA settlement. In addition, Plaintiffs seek approval for attorney's fees and expenses associated with litigating this case as well as a

service award for both Sewell and Diangson as class representatives.

## II. BACKGROUND

Sewell, a project engineer, and Diangson, an assistant project engineer, were employed by Defendants in New York and New Jersey. Mot. for Cert. of Settlement Class ("Mot. for Settlement"), Exh. A, at 1. On July 23, 2009, Plaintiffs commenced this action as a putative class action alleging violations of FLSA, NYLL and NJSWHL on behalf of themselves and others similarly situated. Sewell filed a First Amended Complaint on August 17, 2009, adding Diangson as a plaintiff in the action. She alleged that Bovis 1) failed and/or refused to pay Plaintiffs overtime for hours worked in excess of forty hours per week, 2) failed to maintain accurate records documenting the time Plaintiffs worked, and 3) mistakenly **[*4]** classified workers as exempt to avoid the obligation of overtime pay. Compl. ¶¶ 41, 48. Sewell alleged that she worked in excess of forty hours most weeks and sometimes worked more than fifty hours, but never received overtime compensation, and Bovis failed to keep accurate records of her performance. Compl. ¶¶ 54-57. Diangson made similar allegations. *Id.* at ¶¶ 58-62.

Class members in the present action number 603 persons (Swartz Decl. ¶ 39) and include any and all persons who have been employed by Bovis as a project engineer, assistant project manager, assistant superintendent, field engineer, senior field engineer, contract administrator, field administrative manager, project control representative, senior contract administrator, and/or senior inspector in New York at any point between July 23, 2003, and December 31, 2010, with the exception of persons on Bovis's payroll for fewer than three pay periods. Not. of Mot. for Cert. of Settlement Class 2. The Settlement Agreement proposes to distribute monies from the settlement to two classes of employees: the "NY Class" will consist of those employed between July 23, 2003, and December 31, 2010, while the "FLSA Class" will consist of **[*5]** those employed between March 4, 2007, and December 31, 2010. Swartz Decl. ¶¶ 23-27.

In January 2010, the Parties agreed to submit themselves to non-binding mediation in an attempt to resolve the dispute. Mot. for Cert. of the Settlement Class, Final Approval of Class Action Settlement and Approval of FLSA Settlement 2 ("Mot, for Settlement"). In preparation for mediation, they exchanged discovery that would allow for damages calculations, including data provided by Defendants on the number of workers "in each of the Class Positions, average number of workweeks, and average compensation." *Id.*

Defendants also produced sample time records for project engineers and assistant project managers. The exchange of discovery did not initially prove successful, but in early 2011 the Parties arrived at the settlement reflected in the Joint Stipulation of Settlement and Release ("Settlement Agreement"). *Id.* at 3-4.

The Settlement Agreement created a fund of $2,530,000 for the wage and hour and collection action, inclusive of attorney's fees and any service awards. Mot. for Settlement 5. Notice of the settlement was sent to all class members on June 9, 2011, by the Claims Administrator, Settlement **[*6]** Services, Inc. ("SSI"). Swartz Decl. ¶¶ 36, 41. Additionally, Defendants sent notice per the Class Action Fairness Act ("CAFA") to the appropriate state and federal officials. The 90-day notice period required by CAFA expired on January 18, 2012, and no government officials have objected to the settlement. *See* Mot. for Settlement 4.

On September 7, 2011, the Court granted preliminary approval of the class action settlement, conditional certification of the settlement class, appointment of class counsel and approval of Plaintiffs' notice of settlement. Order Granting Pls' Prelim. Approval of Class Action Settlement, ECF No. 58. As a result, notice has been mailed to class members of the preliminary settlement and only four members have opted out, with one class member objecting to the settlement, as of the date of this Order. Scwhartz Decl., Exh. B ¶ 14; Notice of Filing of Opt Out by the Settlement Administrator, Doc. No. 69. For the reasons which follow, certification of the class is **GRANTED** and the final class settlement and FLSA settlement are **APPROVED**.

## III. DISCUSSION

## A.   CERTIFICATION OF THE CLASS IS APPROPRIATE AS THE REQUIREMENTS OF *RULE 23* ARE SATISFIED.

## 1. The Class Satisfies the **[*7]** Prerequisites of *Rule 23(a)*.

Before assessing whether a class action settlement can be approved, the Court must first ascertain whether the class itself can be certified, even if preliminary certification has been granted, as in the instant case. Class action certification requests must satisfy both *Rule 23(a)* and Rule (*23(b) of the Federal Rules of Civil Procedure*. *Rule 23(a)* states that certification may be appropriate if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact

common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Fed. R. Civ. P. 23(a)*.

**a. Numerosity**

Numerosity is easily satisfied here as it is presumed to be satisfied in this Circuit with at least forty members, *Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)*, and there are 603 former and current employees in this class.

**b. Commonality**

The commonality requirement under *Rule 23(a)(2)* refers to claims among members that are "common to the class as a whole." *Califano v. Yamasaki, 442 U.S. 682, 701, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979)*. **[*8]** "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997)*. For purposes of judicial economy and convenience for all parties, class certification may be granted where "class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Shakhnes ex rel. Shakhnes v. Eggleston, 740 F. Supp 2d 602, 625 (S.D.N.Y. 2010)*.

The claims raised by class members in the instant action are identical in that they commonly allege failure by Bovis to abide by state and federal labor laws. The NYLL class assert "identical claims that Defendants failed to pay them overtime in violation of the NYLL," Mot. for Settlement 10. Although there are two separate classifications of members - the NYLL group and the FLSA group - who may not share exact experiences in terms of uncompensated or improperly compensated hours worked, the claims are based on similar allegations, which give rise to the same or similar legal arguments. *See Califano, 442 U.S. 682, 701, 99 S. Ct. 2545, 61 L. Ed. 2d 176; Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L., 504 F.3d 229, 245 (2d Cir. 2007)* **[*9]** (citing *Robinson v. Metro-N. Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001); Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)* (noting commonality requires that class members suffer the same injury.) The common allegations to the whole class include

"(a) whether [Defendants] misclassified Plaintiffs and NY Class Members as exempt; (b) whether Defendants maintained true and accurate time records for all hours worked by Plaintiffs and NY Class Members; (c) what proof of hours worked is sufficient where an employer fails in its duty to maintain time records; and (d) whether Defendants acted wilfully or in reckless disregard of the NYLL."

Mot. for Settlement 10-11. In *Wal-Mart*, the Supreme Court stated that what is critical is not necessarily that all members raise "common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc., 131 S.Ct. at 2551* (quoting Nagareda, *Class Certification in the Age of Aggregate Proof 84 N.Y.U.L.Rev. 97, 131-32 (2009)*) (emphasis in original). Settlement here provides an answer to the common issues raised by all class members, **[*10]** regardless of specific type of injury suffered by the alleged violations of state and federal wage and hour laws.

**c. Typicality**

Separate from commonality, typicality requires that the claims of the class representatives be typical of those of the class, and "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A., 126 F.3d at 376; Fed. R. Civ. P. 23(a)(3)*. However, the Supreme Court has noted that the elements of commonality and typicality tend to merge. *General Telephone Co, of Southwest v. Falcon, 457 U.S. 147, 157 n. 13, 102 S. Ct. 2364, 72 L. Ed. 2d 740*. Typicality does not require that the "'factual predicate of each claim be identical to that of all class members'; rather, it 'requires that the disputed issue of law or fact'" be considered equally central in both the named class representative's claim as it is in claims of the class members. *Attenborough v. Const. and General Bldg. Laborers' Local 79, 238 F.R.D. 82, 94 (S.D.N.Y. 2006)* (citing *Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999))*.

Plaintiffs' claims arise from the same factual and legal circumstances that **[*11]** give rise to all class members' claims. Allegations of failure to pay overtime would apply to all New York class members since they were classified as exempt and performed the same or similar duties. "The unique circumstances of each (plaintiff) do not compromise the common question of whether . . . defendants have injured all class members by failing to meet their federal and state law obligations." *Marisol A., 126 F.3d at 377*. Typicality is met in this case.

**d. Adequacy**

Lastly, the court must assess whether the class representative will "fairly and adequately protect the interests of the class." *Fed. R. Civ. P. 23(a)(4)*. An adequacy determination must consist of assessing the credibility of the plaintiff(s) and whether there are any potential conflicts of interest between the proposed plaintiff(s) and class members. *See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 549, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949)* (noting class interests are dependent upon the class representative's credibility and knowledge); *see also Epifano v. Boardroom Business Products, Inc.*, 130 F.R.D. 295, 300 (S.D.N.Y. 1990) (noting that contribution claims against class representatives may create conflicts of interest with the class, compromising [*12] their credibility). The Court can find no facts demonstrating Plaintiffs' lack of knowledge about the salient aspects of this case or any potential conflicts of interests they may have with class members, nor has Bovis pointed to any.

## 2. The Class Satisfies the Certification Requirements under *Rule 23(b)(3)*.

In addition to satisfying the four components describing the class and claims under *Rule 23(a)*, Plaintiffs must also satisfy *Rule 23(b)*. Plaintiffs argue that the case satisfies *Rule 23(b)(3)*, which requires that

> [t]he court find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing [*13] a class action.

*Fed. R. Civ. P. 23(b)(3)*. As long as there are common issues of fact or law applicable to the class that predominate over individual claims, *Rule 23(b)(3)* is satisfied despite individualized damages that particular members may sustain.

*See Shahriar v. Smith & Wollensky Restaurant Group, Inc., 659 F.3d 234, 253 (2d Cir. 2011)*; *Seijas v. Republic of Argentina, 606 F.3d 53, 58 (2d Cir. 2010)* ("it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification.") That common questions of fact or law predominate, i.e., the predominance requirement, "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)*. A common nexus of fact or law, particularly in FLSA cases, can include the fact that all plaintiffs were subject to the same company-wide policy that violated federal labor laws. *Shahriar, 659 F. 3d at 253*. Here, the allegations are that Defendants misclassified all members of the class and failed to compensate them adequately based on their proper non-exempt status, resulting in violations [*14] of the same state and federal labor laws for all class members. That damages may vary and differ by person is irrelevant to certifying a class under *Rule 23(b)(3)*.

In addition to the issue of predominance, Plaintiffs must establish that a class action is a superior mechanism to all other alternative means and forums. The rule itself contemplates a number of factors for the Court to consider. A class can only be certified if it "achieve[s] economies of time, effort, and expense, and promote[s] uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Myers v. Hertz, Corp., 624 F.3d 537, 547 (2d Cir. 2010)* (internal citations omitted). Plaintiffs argue that it would be financially improbable for all class members to litigate their claims individually, as well as a burden on the court. The Court finds that class action suits are appropriate where judicial economy can preserve scarce judicial resources and common issues and claims can be consolidated. It is equally appropriate for the Court to consider the financial capacity of class members in considering whether the means exists to enforce their rights [*15] outside of the class action. *See McBean v. City of New York, 228 F.R.D. 487, 503 (S.D.N.Y. 2005)* (citing *Labbate -D'Alauro v. GC Services Ltd. P'ship, 168 F.R.D. 451, 458 (E.D.N.Y. 1996)*) ("It is appropriate for the court [in examining *Rule 23(b)(3)* superiority] to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually.) Based on these considerations, the Court finds that the elements of *Rule 23* have been satisfied.

## B. FINAL APPROVAL OF THE SETTLEMENT IS MERITED AS THE SETTLEMENT IS FOUND TO BE PROCEDURALLY AND SUBSTANTIVELY FAIR.

Case 3:13-cv-01027-AWT   Document 236-3   Filed 05/10/16   Page 144 of 207

Page 5 of 11
2012 U.S. Dist. LEXIS 53556, *15

Plaintiffs ask this Court to approve the Parties' joint Settlement Agreement creating a Fund of $2,350,000 that would cover class members' awards, attorney's fees and costs, and any service awards to named Plaintiffs. Although the Parties jointly arrived at this amount, it is at least in part based on Plaintiffs' assessment of various documents produced in discovery, including "job descriptions, pay records, time sheets, personnel documents and corporate documents." Mot. for Settlement at 3. In addition, Plaintiffs' counsel conducted **[*16]** interviews to get information related to the hours worked and wages paid to each Plaintiff. Swartz Decl. ¶ 10. The Parties agreed to the proposed amount in the Settlement Agreement and that none of the Fund will revert back to Defendants. Mot. for Settlement 5; Swartz Decl. ¶ 23; Ex. A (Settlement Agreement ¶ 3.1(A) and (E)).

Disbursement of the award will be based on the length of employment of each class member at Bovis as determined by a point system whereby members are assigned a point for each pay period worked, with an additional three points assigned for each pay period worked by the FLSA Class between March 4, 2007, and December 31, 2010 (resulting in four points for pay periods falling in this time frame). Mot. for Settlement 6. The additional points are in "recognition of the risks these class members incurred by joining the lawsuit . . . [in protecting] their FLSA rights." *Id*. This would include their right to 100% liquidated damages under FLSA in addition to their unpaid wages claims. *Id*.

Under *Rule 23(e)(1)-(3)*, settlements of class actions claims, issues or defenses must have court approval and include the following procedures:

> (1) The court must direct notice in a reasonable **[*17]** manner to all class members who would be bound by the proposal.

> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

*Fed. R. Civ. P. 23(e)*. The court's approval is necessary to ensure that any settlement reached is procedurally and substantively fair, as well as reasonable and adequate. Procedural fairness is ascertained by examining the process that led to the settlement (*Wal-Mart Stores, Inc. v. Visa U.S.A., 396 F.3d 96 (2d Cir. 2005)*), while substantive fairness considers the actual terms and whether those terms

are reasonable and adequate per the *Grinnell* factors. *City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974)* (*abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000)*).

## 1. Procedural Fairness

In considering the process leading to settlement, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." **[*18]** *In re Sony Corp. SXRD, 448 Fed. Appx. 85, 86, 2011 WL 4425361, at *1 (2d Cir. 2011)* (citing *Wal-Mart Stores, 396 F.3d at 116*) (internal citations omitted). Settlement in a class action context is highly encouraged by the courts as sound public policy while promoting judicial economy. *Id*. The Parties here arrived at settlement after some discovery, a session with an experienced employment mediator and months-long settlement talks. Mot. for Settlement 3. There is evidence that Plaintiffs engaged in extensive discovery that included reviewing voluminous documents of both Plaintiffs and Defendants and conducting interviews of class members. The Court finds that the settlement is procedurally fair and reasonable based on the Parties' adequate negotiations at arm's length and independent investigations.

## 2. Substantive Fairness

In evaluating the substantive fairness of the settlement, the courts must "independently [examine] whether the interests of all class members were adequately represented." *In re Literary Works in Electronic Databases Copyright Litigation, 654 F.3d 242, 254 (2d Cir. 2011)*. Courts apply the *Grinnell* factors to determine substantive fairness, which include, "(1) the complexity, expense and likely **[*19]** duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell, 495 2d. at 463*.

### a. Complexity, Expense and Likely Duration of Litigation

Litigating the claims of hundreds of putative class members would undoubtedly yield expensive litigation costs that can

be curbed by settling the action. *See In re Nasdaq Market-Makers Antitrust Lit., 187 F.R.D. 465, 477 (S.D.N.Y. 1998)* ("[C]lass actions 'have a well deserved reputation as being most complex.'") (internal citations omitted). Additional discovery would include the depositions of a number of individuals and would be fact-intensive given the number of class members involved. Preparation for trial would involve potentially **[*20]** hundreds of class members and would seriously prolong the outcome of this suit in addition to consuming tremendous amounts of time, expenses and judicial resources. Mot. for Settlement 18. The Court finds this factor supports a finding of substantive fairness of the settlement.

**b. Reaction of the Class**

"If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement," *Wal-Mart, 396 F.3d at 118* (citing 4 Newberg § 11.41, at 108); *In re Austrian and German Bank Holocaust Litigation, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000)*; *see also Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d Cir. 1990)* (finding settlement favored despite 29 objections out of 281 class members). Here, only three class members out of 603 have opted out of the settlement, and there was one objection. Plaintiffs assert that adequate notice was provided, and this Court has no reason to believe otherwise as that assertion has not been challenged. A settlement notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982). **[*21]** It must also be "understood by the average class member." *Wal-Mart, 396 F. 3d at 114* (internal citations omitted). Moreover, "a district court's decision regarding the form and content of notices sent to class members is reviewed only for an abuse of discretion." *Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 438 (2d Cir. 2007)*. The notice sent out explained in detail to class members their rights to opt out of the class and an estimate of each class member's potential award. The fact that the overwhelming majority of class members have neither objected nor opted out weighs in favor of settlement approval,

**c. Stage of Proceedings**

While discovery is not complete, enough discovery has been completed for the Parties to ascertain an adequate settlement on behalf of the class. "The Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient

investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement." *In re Austrian, 80 F. Supp. 2d at 176* (internal citations omitted). The Parties have exchanged thousands of pages of documents and Plaintiffs' counsel has **[*22]** interviewed numerous class members. Mot. for Settlement 18, 20. *See D'Amato v. Deutsche Bank, 236 F.3d 78,87 (2d Cir. 2001)* (stating that "although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information" which weighed in favor of settlement approval.) The purpose of this factor is to ensure there is no collusion between the parties. Here, there are no facts to suggest any collaboration. The Parties engaged in months of litigation and negotiation and even endured a failed mediation session before arriving at settlement. After substantial document review and interviews of class members, the Parties seem to be in a position to evaluate a fair and reasonable settlement.

**d. Risks to Establishing Liability and Damages**

In assessing the Plaintiffs' exposure to real weaknesses in their case regarding allegations of liability, the Court does not need to reach the merits of Plaintiffs' arguments. *See Carson v. American Brands, Inc., 450 U.S. 79, 88 n. 14, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981)*. The Court must only "weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Marisol A. ex rel. Forbes v. Giuliani, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)*. **[*23]** Plaintiffs admit that their ease is "not without risk." Mot. for Settlement 20. In addition, risks are inherent in litigation and Plaintiffs would have to secure favorable outcomes at trial and after a likely appeal to establish liability. Defendants assert that class members were classified as "exempt," meaning they were ineligible to qualify for overtime pay. Plaintiffs would have to undergo much more factual discovery to disprove this defense and it's unknown exactly what costs and resources that would require. Because settlement eliminates the uncertainty naturally involved in litigation, *see Matheson v. T-Bone Restaurant, LLC, 2011 U.S. Dist. LEXIS 143773, 2011 WL 6268216, at *5, (S.D.N.Y. Dec. 13, 2011)*, the Court finds this factor weighs in favor of settlement.

Additionally, even if Plaintiffs were to prevail on liability, there is no guarantee a jury would award them damages in the amount they seek, or even nominal damages. *See Wal-Mart, 396 F. 3d at 118*. Thus, "even assuming that plaintiffs had a strong chance of success at trial with respect to liability, the relief granted by the Settlement Agreements is sufficiently favorable to weigh in favor of approval of the Settlement Agreements." *Marisol A., 185 F.R.D. at 164*.

**e.  [\*24] Maintaining the Action Throughout Trial and Withstanding Greater Judgment**

While the Court is granting Plaintiffs' application for certification of the class under *Rule 23*, the possibility of decertification as discovery progresses is always possible. *See Wal-Mart, 396 F. 3d at 119 fn 124*. A contested class would inevitably require additional briefing, discovery, and litigation expenses by Plaintiffs. The settlement ensures that Plaintiffs are granted damages that are deemed fair and adequate while alleviating the need to enforce a judgment or seek collection. While there is no evidence the Defendants could not undergo further greater judgment, the contrary is unproven as well. The Court finds this factor neutral and not determinative of whether the settlement should be approved.

**f. Possible Recovery and Attendant Risks of Litigation**

Inevitably, there will be class members who believe that they would have gotten a larger award for damages had they proceeded to trial, and while that may be true, it also does not take into account the increased litigation expenses or Defendants' ability to pay. *See In re Austrian, 80 F. Supp. 2d at 178*. Class counsel is responsible for ensuring a fair settlement  [\*25] to the class as a whole, and for distributing it in the manner that is most fair to all members based on their individual damage assessments. Class members here will each receive a payment under the settlement based on their length of employment with Defendants and whether he or she consented to join the FLSA class. Ultimately, the Settlement here "represents a compromise between the strengths of Plaintiffs' case and the possible success of [Defendants'] defenses." *Cronas v. Willis Group Holdings, LLC, 2011 U.S. Dist. LEXIS 147171, 2011 WL 6778490, at \*4 (S.D.N.Y. Dec. 19, 2011)* (citing *Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005))*. This Court finds the proposed settlement to be procedurally and substantively fair and **GRANTS FINAL APPROVAL** of the settlement.

**C. ADEQUATE NOTICE WAS PROVIDED TO THE CLASS**

Notice of the class as approved by the Court was mailed by the Claims Administrator, SSI, to all class members on June 9, 2011. Mot. for Settlement 7. The mailings were made in accordance with a list provided by Bovis. SSI found new addresses for members who had moved and re-mailed notices to 49 members. *Id*. A total of 110 op-in forms were returned to SSI, ten of which were untimely but accepted  [\*26] and one of which was untimely and denied. Notice of the preliminary settlement was mailed on October 13, 2011, to eligible class members, including 109 FLSA members

and 365 NYLL members. The notice included the estimated award each class member would receive based on length of employment, SSI again found new addresses for relocated members and re-mailed notices to 54 class members. *Id*. at 7-8. SSI received 37 notices for NYLL members that were returned as undeliverable as of November 10, 2011, but was able to obtain new addresses for 30 of the 37 and re-mailed notices to them. The final postmark date for those to op-out was December 14, 2011, and only four class members have opted out of the settlement — Dawn Ramos, Thomas Drumm, Mark Patton and Peter McKee (Swartz Decl. ¶ 46, Exh. B (Patton Decl. ¶ 14), Letter From Peter McKee Opting Out (Rec. Dec. 12, 2011); Notice of Filing of Opt Out by the Settlement Administrator, Doc. No, 69) — with one member, Alec Ross, filing an objection with the Claims Administrator. Let. to Claims Admin, (Rec. Dec, 5, 2011). Mr. Ross's objection concerns his individual share and do not contend that the settlement is unfair to the class as a whole. *Id*.  [\*27] The Court notes his concern, but "objection[] raised to this settlement do[es] not alter the conclusion that the amount of the class action settlement and its terms are entitled to approval," *In re Interpublic Securities Corp., 2004 U.S. Dist. LEXIS 21429, 2004 WL 2397190, at \*8 (S.D.N.Y. Oct. 24, 2004)*. The class members who did not opt-out will effectively release Defendants from all wage and hour claims under the NYLL that were asserted, or could have been asserted, in the Complaint. Mot. for Settlement 5; Swartz Decl., Exh. A (Settlement Agreement ¶ 2.5).

**D. APPROVAL OF THE FAIR LABOR STANDARDS ACT (FLSA) CLASS**

Plaintiffs ask this Court to also grant final approval to the FLSA class, which requires a less rigorous standard than *Rule 23 of the Federal Rules of Civil Procedure* given that due process concerns are not implicated in the same fashion. In a FLSA settlement, class members must affirmatively opt-in to the collective action, but a failure to opt-in does not cause a class member to forfeit the right to bring suit at a later date, *Matheson v. T-Bone Restaurant, LLC, 2011 U.S. Dist. LEXIS 143773, 2011 WL 6268216, at \*6 (S.D.N.Y. Dec. 13, 2011)*. Courts approve FLSA settlements so long as they are the result of contested litigation  [\*28] where adversarial parties reach an agreement on disputed issues. *Id.; See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n. 8 (11th Cir. 1982)*. Plaintiffs here were represented by class counsel throughout the settlement process and the settlement was reached as a result of arms-length negotiations. *See Johnson v. Brennan, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at \* 12 (S.D.N.Y. Sept. 16, 2011)*. Therefore, the FLSA settlement is **APPROVED**.

**E. APPROVAL OF ATTORNEY'S FEES AND COSTS**

In calculating an award for reasonable attorney's fees, courts often utilize the lodestar method which computes the number of hours counsel may work on a particular case by a reasonable fee per each hour. The resulting number may be increased by a multiplier depending on the type of case and work performed or courts may award a percentage of the overall recovery instead. In class action settlements, a common fund is usually created from which damages are awarded and from which attorney's fees may be paid. "Under the common fund doctrine, attorneys who create a fund for the benefit of a class of plaintiffs are entitled to reasonable compensation from that fund." *Victor v. Argent Classic Convertible Arbitrage Fund L.P., 623 F.3d 82, 84 (2d Cir. 2010)* **[*29]** (noting that "[c]lass action lawsuits are the prototypical example of instances where the common fund doctrine can apply.") Commenting on the use of lodestar, the Second Circuit has said that "the lodestar approach is an accepted but not exclusive methodology in common fund cases" and it remains useful in such cases, even where the percentage method is ultimately chosen, *Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)*. However, the trend in this Circuit in class action cases is to apply the percentage method because it "'provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart, 396 F. 3d at 121* (internal citations omitted), This method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded. *See Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, 522 F.3d 182, 191 (2d Cir. 2008)*.

Class counsel seek no more than one-third of the total settlement payment of $2,350,000, or $843,340, in addition to reimbursement for their "actual reasonable litigation costs and expenses . . . which shall not exceed $20,000," **[*30]** Swartz Decl. ¶ 23; Ex. A (Settlement Agreement ¶ 3.2(A)). Class counsel have been operating on a contingency fee basis and they, along with support staff, have expended 747 hours prosecuting this case, which results in a lodestar of $288,000. Mot. for App. of Att'y's Fees and Reimbursement of Expenses ("Mot. for Atty's Fees") 1. The proposed award equals the lodestar amount increased by a multiplier of 2.93. There have been no objections by class members to the proposed award for attorney's fees. While the lack of objections does not relieve the Court of it's obligation to conduct an independent investigation into the reasonableness of the fee, it does lend support for approval of the award. *See Davis v. J.P. Morgan Chase & Co., 827 F. Supp. 2d 172, 2011 U.S. Dist. LEXIS 117082, 2011 WL 4793835, at *9 (W.D.N.Y. Oct. 11, 2011)*.

To determine whether $843,340 is a reasonable award of attorney's fees to Class counsel, this Court is guided by the *Goldberger* factors, including (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. **[*31]** *Goldberger, 209 F.3d at 50*. The most important factor to consider in evaluating an award is moderation. *Id. at 52-53*.

**1. Time and Labor Expended by Counsel**

It is apparent that class counsel has worked diligently in prosecuting this case on behalf of the class. They have reviewed hundreds of pages of documents related to 603 class members, including "job descriptions, pay records, time sheets, personnel documents and corporate documents." Mot. for Att'y's Fees 6. They conducted interviews and participated in a formal mediation session, albeit unsuccessful. They have also spent months participating in settlement discussions and prepared the settlement agreement for this Court's preliminary approval. The Court recognizes the amount of work put into this case and notes class counsel's efforts to utilize the attorney or paralegal with the lowest hourly rate to perform the work as effectively and competently as possible. *Id*. at 7.

The 747 hours expended are reasonable in a case such as this where records are incomplete and therefore a more comprehensive review of the available records is needed to ensure a proper estimation of damages to the class. Class counsel appropriately divided litigation **[*32]** tasks based upon complexity and cost. The proposed percentage fee also includes future expenses in administering the settlement after litigation has ceased. Mot. for Att'y's Fees 7. In an almost exactly similar scenario, the Court in *Johnson* recognized the acts of class counsel in litigating, negotiating, and settling the case, as well as handling post-settlement administration of the fund. *Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at * 15-16*. The requested one-third of the fund is a reasonable amount given the time and labor of counsel.

**2. Magnitude and Complexities of Litigation**

"Courts have recognized that wage and hour cases involve complex legal issues." *Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at * 17*. As in other cases before this Court, this case involves factual, and thus legal, disputes regarding the exempt status of certain employees and what, if any, additional compensation they may be

owed. It is a "hybrid" case of State wage and hour claims where class members must "opt out" of the action if they do not wish to be a part of the class and a federal claim under FLSA that requires members to "opt in" if they do wish to be part of the class. An award of thirty-three percent, or one-third, of the settlement [*33] fund is appropriate given the disputes and is in accordance with this Court's precedent. See _Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *17_; _deMunecas v. Bold Food, LLC, 2010 U.S. Dist. LEXIS 87644, 2010 WL 3322580, at *7-8 (S.D.N.Y. Aug. 23, 2010)_.

### 3. Risk of the Litigation

A contingency fee arrangement presents a financial risk to class counsel who are asked to front the costs of the litigation with a chance of not receiving any award in return. Mot. for Att'y's Fees 9. "Lawyers undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources." _Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *17_. The claim of misclassification placed the burden on plaintiffs to prove that a significant number of people were misclassified and deprived of overtime wages. The disputed facts present issues of credibility and triable issues of fact for a jury to determine. The significant risks presented by litigating the case weigh in favor of approval of the award.

### 4. Quality of Representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." [*34] _Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *17_ (citing _Taft v. Ackermans, 2007 U.S. Dist. LEXIS 9144, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007)_). Recovery of $2,350,000 is a sizeable award that ensures all 603 class members will receive a payment corresponding to their length of employment with Defendants. When considering the risk of litigation with the settlement fund, the settlement is reasonable. Additionally, class counsel are members of the respected labor and employment firm Outten & Golden. They are experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions." _deMunecas, 2010 U.S. Dist. LEXIS 87644, 2010 WL 3322580, at *7_; _see_ _McMahon v. Olivier Cheng Catering and Events, LLC, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6_ (recognizing Outten and Golden as a respected labor and employment firm). In the

_deMunecas_ case, the court recognized the work put forth by class counsel and approved an attorney's award of thirty-three percent of the common fund. _Id._ Similarly this Court finds class counsel zealously represented the interests of their clients and provided a high quality of representation.

### 5. [*35] Requested Fee in Relation to Settlement

Courts consider the size of the settlement when considering the reasonableness of the award being requested. "Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable." _Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at * 18_. Courts in this Circuit have found that an award of one-third of the settlement fund is considered reasonable where the fund amount was similar to the amount being considered here. _See, e.g.,_ _Prasker v. Asia Five Eight LLC, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010)_ (awarding $1,050,000), _Khait v. Whirlpool Corp., 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010)_ (granting an award for fees of $3,052,000), and _Mohney v. Shelly's Prime Steak, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009)_ (awarding $3,265,000). In particular, courts in this Circuit have routinely granted attorney's fees awards in the amount of one-third of the settlement in state and FLSA wage and hour class action settlements that involve amounts far larger than the settlement award contemplated here. _See_ _Willix v. Healthfirst, Inc., 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011)_ ($7,675,000 settlement [*36] fund); _Clark v. Ecolab, Inc., 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010)_ ($6,000,000); _Khait v. Whirlpool Corp., 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010)_ ($9,250,000); _see also_ _Westerfield v. Wash. Mut. Bank, 2009 U.S. Dist. LEXIS 94544, 2009 WL 5841129, at *4-5 (E.D.N.Y. Oct. 8, 2009)_ (30% of $38 million fund). A fee of one-third, or thirty-three percent, of the settlement fund is consistent with this Circuit's established law. _Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *19_. Ultimately, "[d]istrict courts in the Second Circuit routinely award attorney's fees that are 30 percent or greater." _Velez v. Novartis Pharmaceutical Corp., 2010 U.S. Dist. LEXIS 125945, 2010 WL 4877582, at *21 (S.D.N.Y. Nov. 30, 2010)_.

### 6. Public Policy Considerations

Were this action not settled via the class action format, hundreds of individual claims would be brought before this Court, consisting of an inefficient use of judicial resources.

″Where relatively small claims can only be prosecuted through aggregate litigation, ʼprivate attorneys general' play an important role.″ *Khait, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *8* (citing *Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 338-39, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980))*. Private attorneys prosecuting wage and hour claims must be adequately compensated for their [*37] time and labor. ″If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.″ *Prasker v. Asia Five Eight LLC, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010)*. Attorneys who protect labor rights must be adequately compensated and such compensation ″furthers the remedial purposes of the FLSA and the NYLL.″ *Id*. This factor also favors approval of the settlement.

## F. THE LODESTAR CROSS CHECK SUPPORTS APPROVAL OF THE AWARD

When applying the percentage method to an award for attorney's fees, courts in this Circuit follow the trend of applying the lodestar method as a ″cross-check″ to ensure the reasonableness of the award. *Goldberger, 209 F.3d at 50*. ″[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case.″ *Davis, 827 F. Supp. 2d 172, 2011 U.S. Dist. LEXIS 117082, 2011 WL 4793835, at *10* (citing *Goldberger, 209 F.3d at 50*). The lodestar is assessed by ″multiplying the hours reasonably expended on the case by a reasonable hourly rate.″ Courts then consider factors such as: ″(1) the contingent [*38] nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved.″ *Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *20* (internal citations omitted).

Courts commonly award lodestar multipliers between two and six. *See id*. (discussing cases where lodestar multipliers between 2.09 and six were awarded). Additionally, where ″class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower″ because the award includes not only time spent prior to the award, but after in enforcing the settlement *Bellifemine v. Sanofi, 2010 U.S. Dist. LEXIS 79679, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010)*. Class counsel's 747 hours spent litigating this case generates a lodestar of $288,000. A lodestar multiplier of three falls well within the range granted by our Courts and equals the

one-third percentage being sought. For the reasons discussed above, the award for attorney's fees of one-third share of the overall settlement fund is **GRANTED**.

## G. APPROVAL OF EXPENSES UNDER SETTLEMENT [*39] AGREEMENT

″Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were ʼincidental and necessary to the representation' of those clients.″ *Miltland Raleigh-Durham v. Myers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)* (internal citations omitted). Where a common fund has been created, ″[i]t is well-established that counsel who create [it]... are entitled to the reimbursement of [all reasonable] litigation costs and expenses . . . .″ *In re Marsh ERISA Litig., 265 F.R.D. 128, 150 (S.D.N.Y. 2010)*. Expenses and costs in class action settlements total approximately 2.8 percent of total recovery nationwide, which in the instant case would be $65,800. *Velez, 2010 U.S. Dist. LEXIS 125945, 2010 WL 4877582, at *24*.

The Settlement Agreement allows for class counsel to seek reimbursement of expenses and costs up to $20,000, well below the national average. Class counsel seeks reimbursement of that amount despite their actual expenses totaling $28,000. Mot. for Att'y's Fees 15. The costs include Plaintiff's share of mediator's fees, expert fees, telephone charges, fees charged by the claims administrator, postage, transportation and meals during working sessions, [*40] copies and electronic research. *Id*. An award of $20,000 in costs and expenses is hereby **GRANTED**.

## H. APPROVAL OF THE SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

Plaintiffs Sewell and Diangson are seeking a service award in the amount of $15,000 and $10,000, respectively, for their vigor in pursuing this case on behalf of the class. Class awards in the amount being requested here have been granted before to zealous class representatives in the prosecution of a class action suit, *see Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *21*; *Reyes v. Altamarea Grp., LLC., 2011 U.S. Dist. LEXIS 115984, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011)* (granting an award of $15,000 to three class representatives); *Duchene v. Michael Cetta, Inc., 2009 U.S. Dist. LEXIS 85955, 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009)* (approving an award of $25,000), while much larger awards have also been granted where merited. *See Roberts v. Texaco, Inc., 979 F. Supp. 185, 205 (S.D.N.Y. 1997)* (approving awards of $50,000 and $85,000 to two of the named plaintiffs in a racial

discrimination employment class action); *Wright v. Stern, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008)* (awarding $50,000 to each of eleven named plaintiffs in employment discrimination action where total settlement fund was **[\*41]** $11,869,856,25); *Velez, 2010 U.S. Dist. LEXIS 125945, 2010 WL 4877582, at \*26* (granting awards of $175,000-$425,000 for class members who testified at trial out of a settlement fund of $175 million). In *Khait*, service awards in the amounts being requested here—$10,000 and $15,000—were granted to named plaintiffs. *Khait, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at \*9* (granting service awards in the amount of $15,000 to five class members and $10,000 to ten members out of a settlement fund of $9,250,000).

Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer. *See Velez v. Majik Cleaning Serv., 2007 U.S. Dist. LEXIS 46223, 2007 WL 7232783, at \*7 (S.D.N.Y. June 25, 2007)* (noting that by prosecuting their case, plaintiffs expose themselves to potential adverse actions by their employer in order that the full class may benefit from the litigation.) "In discrimination-based litigation, the plaintiff is frequently a present or past employee whose present position or employer credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril." *Roberts*, 979 F. Supp. at 201. While **[\*42]** this suit is not based on claims of discrimination, Sewell and Diangson risked potential exposure of jeopardizing future employment by joining this suit. *See Parker v. Jekyll & Hyde Entm't Holdings, L.L.C., 2010 U.S. Dist. LEXIS 12762, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)* (awarding class representatives up to $15,000 out of a settlement fund of $745,000) ("as employees suing their current or former employer, the plaintiffs face the risk of retaliation. The current employees risk termination or some other adverse employment action, while former

employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). While Plaintiffs were not employed by Defendants at the time this suit was brought, as former employees they face potential risks of being blacklisted as "problem" employees. *See Roberts*, 979 F. Supp. at 201. Plaintiff Sewell, in particular, has been the public face of this litigation and has been the subject of several news stories, including one in the New York Daily News, Swartz Decl. in Support of Mot. for Svc Award ¶ 54.

Plaintiffs argue they have served class members by "providing counsel with relevant documents in their possession, assisting counsel **[\*43]** to prepare for the mediation, participating in litigation strategy, and reviewing and commenting on the terms of the settlement." Swartz Decl. ¶¶ 32-33. Class counsel asserts that the class representatives provided detailed factual information to class counsel for the prosecution of their claims and made themselves available regularly for any necessary communications with counsel. Mot. for Approval of Class Rep. Svc Awards ("Mot. for Svc Award") 1; Swartz Decl. in Support of Mot. for Svc Award ¶ 55. No class members have filed any objections to the proposed service awards established under the Settlement Agreement. The service awards in the proposed amounts of $10,000 for Plaintiff Sewell and $15,000 for Plaintiff Diangson are therefore **GRANTED**.

**DATED: April 16, 2012**

**New York, New York**

/s/ Ronald L. Ellis

**The Honorable Ronald L. Ellis**

**United States Magistrate Judge**

 Positive

As of: May 2, 2016 4:24 PM EDT

## *Sewell v. Bovis Lend Lease LMB, Inc.*

United States District Court for the Southern District of New York

April 16, 2012, Decided; April 20, 2012, Filed

09 Civ. 6548 (RLE)

**Reporter**

2012 U.S. Dist. LEXIS 53556; 2012 WL 1320124

RENEE SEWELL, et al., Plaintiffs, - against - BOVIS LEND LEASE, INC. and BOVIS LEND LEASE LMB, INC., Defendants.

**Subsequent History:** As Corrected April 25, 2012.

Later proceeding at *Sewell v. Bovis Lend Lease, Inc., 2013 U.S. Dist. LEXIS 47526 (S.D.N.Y., Mar. 29, 2013)*

**Prior History:** *Sewell v. Bovis Lend Lease, 2012 U.S. Dist. LEXIS 24942 (S.D.N.Y., Feb. 24, 2012)*

## Core Terms

settlement, class member, class action, Parties, notice, awards, Courts, discovery, expenses, lodestar, settlement agreement, damages, certification, attorney's fees, settlement fund, Plaintiffs', documents, employees, risks, class representative, opted, court finds, records, attorneys, citations, one-third, requires, issues, cases, prosecuting

**Counsel:** **[*1]** For Renee Sewell, individually, Plaintiff: Adam T Klein, Juno Emmeline Turner, Molly Anne Brooks, LEAD ATTORNEYS, Jack A. Raisner, Justin Mitchell Swartz, Rachel Megan Bien, Outten & Golden, LLP (NYC), New York, NY.

For Renee Sewell, on behalf of all other persons similarly situated, Emily Diangson, on behalf of all others similarly situated, Plaintiffs: Adam T Klein, Jack A. Raisner, Juno Emmeline Turner, Justin Mitchell Swartz, Rachel Megan Bien, LEAD ATTORNEYS, Outten & Golden, LLP (NYC), New York, NY.

For Emily Diangson, individually, Plaintiff: Juno Emmeline Turner, LEAD ATTORNEY, Adam T Klein, Jack A. Raisner, Justin Mitchell Swartz, Rachel Megan Bien, Outten & Golden, LLP (NYC), New York, NY.

For Bovis Lend Lease, Inc., Bovis Lend Lease LMB, Inc., Defendants: Jason Steven Aschenbrand, LEAD ATTORNEY,

Winston & Strawn LLP (NY), New York, NY; Shane W. Blackstone, LEAD ATTORNEY, Kevin M. Cloutier, PRO HAC VICE, Winston & Strawn LLP (IL), Chicago, IL; Gregory Jacob, PRO HAC VICE, Winston & Strawn LLP, Washington, DC; Jennifer Rappoport, PRO HAC VICE, Winston & Strawn LLP (CA), Los Angeles, CA; Joan B. Tucker Fife, PRO HAC VICE, Winston & Strawn, L.L.P., Newark, NJ.

**Judges:** The Honorable Ronald **[*2]** L. Ellis, United States Magistrate Judge.

**Opinion by:** Ronald L. Ellis

## Opinion

### OPINION & ORDER

**RONALD L. ELLIS, United States Magistrate Judge:**

### I. INTRODUCTION

This action was commenced as a putative class action under *Federal Rule of Civil Procedure 23* by Plaintiff Renee Sewell on behalf of herself and others similarly situated as current and former employees of Defendant Bovis Lend Lease, Inc. and Bovis Lend Lease LMB, Inc. ("Bovis"). Sewell and class members, including class representative Emily Diangson, worked as assistant project managers, project managers, project engineers and other salaried employees below a project manager, who performed similar work to Sewell though under a different title. Amended Compl. ¶¶ 5, 36 ("Compl."). Sewell and **[*3]** class members alleged violations of the Fair Labor Standards Act (FLSA), New York Labor Law (NYLL) and NJSWHL (New Jersey State Wage and Hour Law). Sewell and Diangson now seek certification of the settlement class, approval of the class action settlement and approval of the FLSA settlement. In addition, Plaintiffs seek approval for attorney's fees and expenses associated with litigating this case as well as a

2012 U.S. Dist. LEXIS 53556, *4

service award for both Sewell and Diangson as class representatives.

## II. BACKGROUND

Sewell, a project engineer, and Diangson, an assistant project engineer, were employed by Defendants in New York and New Jersey. Mot. for Cert. of Settlement Class ("Mot. for Settlement"), Exh. A, at 1. On July 23, 2009, Plaintiffs commenced this action as a putative class action alleging violations of FLSA, NYLL and NJSWHL on behalf of themselves and others similarly situated. Sewell filed a First Amended Complaint on August 17, 2009, adding Diangson as a plaintiff in the action. She alleged that Bovis 1) failed and/or refused to pay Plaintiffs overtime for hours worked in excess of forty hours per week, 2) failed to maintain accurate records documenting the time Plaintiffs worked, and 3) mistakenly **[*4]** classified workers as exempt to avoid the obligation of overtime pay. Compl. ¶¶ 41, 48. Sewell alleged that she worked in excess of forty hours most weeks and sometimes worked more than fifty hours, but never received overtime compensation, and Bovis failed to keep accurate records of her performance. Compl. ¶¶ 54-57. Diangson made similar allegations. *Id.* at ¶¶ 58-62.

Class members in the present action number 603 persons (Swartz Decl. ¶ 39) and include any and all persons who have been employed by Bovis as a project engineer, assistant project manager, assistant superintendent, field engineer, senior field engineer, contract administrator, field administrative manager, project control representative, senior contract administrator, and/or senior inspector in New York at any point between July 23, 2003, and December 31, 2010, with the exception of persons on Bovis's payroll for fewer than three pay periods. Not. of Mot. for Cert. of Settlement Class 2. The Settlement Agreement proposes to distribute monies from the settlement to two classes of employees: the "NY Class" will consist of those employed between July 23, 2003, and December 31, 2010, while the "FLSA Class" will consist of **[*5]** those employed between March 4, 2007, and December 31, 2010. Swartz Decl. ¶¶ 23-27.

In January 2010, the Parties agreed to submit themselves to non-binding mediation in an attempt to resolve the dispute. Mot. for Cert. of the Settlement Class, Final Approval of Class Action Settlement and Approval of FLSA Settlement 2 ("Mot, for Settlement"). In preparation for mediation, they exchanged discovery that would allow for damages calculations, including data provided by Defendants on the number of workers "in each of the Class Positions, average number of workweeks, and average compensation." *Id.*

Defendants also produced sample time records for project engineers and assistant project managers. The exchange of discovery did not initially prove successful, but in early 2011 the Parties arrived at the settlement reflected in the Joint Stipulation of Settlement and Release ("Settlement Agreement"). *Id.* at 3-4.

The Settlement Agreement created a fund of $2,530,000 for the wage and hour and collection action, inclusive of attorney's fees and any service awards. Mot. for Settlement 5. Notice of the settlement was sent to all class members on June 9, 2011, by the Claims Administrator, Settlement **[*6]** Services, Inc. ("SSI"). Swartz Decl. ¶¶ 36, 41. Additionally, Defendants sent notice per the Class Action Fairness Act ("CAFA") to the appropriate state and federal officials. The 90-day notice period required by CAFA expired on January 18, 2012, and no government officials have objected to the settlement. *See* Mot. for Settlement 4.

On September 7, 2011, the Court granted preliminary approval of the class action settlement, conditional certification of the settlement class, appointment of class counsel and approval of Plaintiffs' notice of settlement. Order Granting Pls' Prelim. Approval of Class Action Settlement, ECF No. 58. As a result, notice has been mailed to class members of the preliminary settlement and only four members have opted out, with one class member objecting to the settlement, as of the date of this Order. Scwhartz Decl., Exh. B ¶ 14; Notice of Filing of Opt Out by the Settlement Administrator, Doc. No. 69. For the reasons which follow, certification of the class is **GRANTED** and the final class settlement and FLSA settlement are **APPROVED**.

## III. DISCUSSION

## A.   CERTIFICATION OF THE CLASS IS APPROPRIATE AS THE REQUIREMENTS OF *RULE 23* ARE SATISFIED.

### 1. The Class Satisfies the **[*7]** Prerequisites of *Rule 23(a)*.

Before assessing whether a class action settlement can be approved, the Court must first ascertain whether the class itself can be certified, even if preliminary certification has been granted, as in the instant case. Class action certification requests must satisfy both *Rule 23(a)* and Rule (*23(b) of the Federal Rules of Civil Procedure*. *Rule 23(a)* states that certification may be appropriate if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact

common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

_Fed. R. Civ. P. 23(a)._

**a. Numerosity**

Numerosity is easily satisfied here as it is presumed to be satisfied in this Circuit with at least forty members, _Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)_, and there are 603 former and current employees in this class.

**b. Commonality**

The commonality requirement under _Rule 23(a)(2)_ refers to claims among members that are "common to the class as a whole." _Califano v. Yamasaki, 442 U.S. 682, 701, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979)_.   **[*8]** "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." _Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997)_. For purposes of judicial economy and convenience for all parties, class certification may be granted where "class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." _Shakhnes ex rel. Shakhnes v. Eggleston, 740 F. Supp 2d 602, 625 (S.D.N.Y. 2010)_.

The claims raised by class members in the instant action are identical in that they commonly allege failure by Bovis to abide by state and federal labor laws. The NYLL class assert "identical claims that Defendants failed to pay them overtime in violation of the NYLL," Mot. for Settlement 10. Although there are two separate classifications of members - the NYLL group and the FLSA group - who may not share exact experiences in terms of uncompensated or improperly compensated hours worked, the claims are based on similar allegations, which give rise to the same or similar legal arguments. _See Califano, 442 U.S. 682, 701, 99 S. Ct. 2545, 61 L. Ed. 2d 176_; _Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L., 504 F.3d 229, 245 (2d Cir. 2007)_   **[*9]** (citing _Robinson v. Metro-N. Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001)_; _Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)_ (noting commonality requires that class members suffer the same injury.) The common allegations to the whole class include

"(a) whether [Defendants] misclassified Plaintiffs and NY Class Members as exempt; (b) whether Defendants

maintained true and accurate time records for all hours worked by Plaintiffs and NY Class Members; (c) what proof of hours worked is sufficient where an employer fails in its duty to maintain time records; and (d) whether Defendants acted wilfully or in reckless disregard of the NYLL."

Mot. for Settlement 10-11. In _Wal-Mart_, the Supreme Court stated that what is critical is not necessarily that all members raise "common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common _answers_ apt to drive the resolution of the litigation." _Wal-Mart Stores, Inc., 131 S.Ct. at 2551_ (quoting Nagareda, _Class Certification in the Age of Aggregate Proof 84 N.Y.U.L.Rev. 97, 131-32 (2009)_) (emphasis in original). Settlement here provides an answer to the common issues raised by all class members,   **[*10]** regardless of specific type of injury suffered by the alleged violations of state and federal wage and hour laws.

**c. Typicality**

Separate from commonality, typicality requires that the claims of the class representatives be typical of those of the class, and "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." _Marisol A., 126 F.3d at 376_; _Fed. R. Civ. P. 23(a)(3)_. However, the Supreme Court has noted that the elements of commonality and typicality tend to merge. _General Telephone Co, of Southwest v. Falcon, 457 U.S. 147, 157 n. 13, 102 S. Ct. 2364, 72 L. Ed. 2d 740_. Typicality does not require that the "'factual predicate of each claim be identical to that of all class members'; rather, it 'requires that the disputed issue of law or fact'" be considered equally central in both the named class representative's claim as it is in claims of the class members. _Attenborough v. Const. and General Bldg. Laborers' Local 79, 238 F.R.D. 82, 94 (S.D.N.Y. 2006)_ (citing _Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999))_.

Plaintiffs' claims arise from the same factual and legal circumstances that   **[*11]** give rise to all class members' claims. Allegations of failure to pay overtime would apply to all New York class members since they were classified as exempt and performed the same or similar duties. "The unique circumstances of each (plaintiff) do not compromise the common question of whether . . . defendants have injured all class members by failing to meet their federal and state law obligations." _Marisol A., 126 F.3d at 377_. Typicality is met in this case.

**d. Adequacy**

2012 U.S. Dist. LEXIS 53556, *11

Lastly, the court must assess whether the class representative will "fairly and adequately protect the interests of the class." *Fed. R. Civ. P. 23(a)(4)*. An adequacy determination must consist of assessing the credibility of the plaintiff(s) and whether there are any potential conflicts of interest between the proposed plaintiff(s) and class members. *See Cohen v. Beneficial Indus, Loan Corp., 337 U.S. 541, 549, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949)* (noting class interests are dependent upon the class representative's credibility and knowledge); *see also Epifano v. Boardroom Business Products, Inc*., 130 F.R.D, 295, 300 (S.D.N.Y. 1990) (noting that contribution claims against class representatives may create conflicts of interest with the class, compromising [*12] their credibility). The Court can find no facts demonstrating Plaintiffs' lack of knowledge about the salient aspects of this case or any potential conflicts of interests they may have with class members, nor has Bovis pointed to any.

## 2. The Class Satisfies the Certification Requirements under *Rule 23(b)(3)*.

In addition to satisfying the four components describing the class and claims under *Rule 23(a)*, Plaintiffs must also satisfy *Rule 23(b)*. Plaintiffs argue that the case satisfies *Rule 23(b)(3)*, which requires that

> [t]he court find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing [*13] a class action.

*Fed. R. Civ. P. 23(b)(3)*. As long as there are common issues of fact or law applicable to the class that predominate over individual claims, *Rule 23(b)(3)* is satisfied despite individualized damages that particular members may sustain.

*See Shahriar v. Smith & Wollensky Restaurant Group, Inc., 659 F.3d 234, 253 (2d Cir. 2011)*; *Seijas v. Republic of Argentina, 606 F.3d 53, 58 (2d Cir. 2010)* ("it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification.") That common questions of fact or law predominate, i.e., the predominance requirement, "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)*. A common nexus of fact or law, particularly in FLSA cases, can include the fact that all plaintiffs were subject to the same company-wide policy that violated federal labor laws. *Shahriar, 659 F. 3d at 253*. Here, the allegations are that Defendants misclassified all members of the class and failed to compensate them adequately based on their proper non-exempt status, resulting in violations [*14] of the same state and federal labor laws for all class members. That damages may vary and differ by person is irrelevant to certifying a class under *Rule 23(b)(3)*.

In addition to the issue of predominance, Plaintiffs must establish that a class action is a superior mechanism to all other alternative means and forums. The rule itself contemplates a number of factors for the Court to consider. A class can only be certified if it "achieve[s] economies of time, effort, and expense, and promote[s] uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Myers v. Hertz, Corp., 624 F.3d 537, 547 (2d Cir. 2010)* (internal citations omitted). Plaintiffs argue that it would be financially improbable for all class members to litigate their claims individually, as well as a burden on the court. The Court finds that class action suits are appropriate where judicial economy can preserve scarce judicial resources and common issues and claims can be consolidated. It is equally appropriate for the Court to consider the financial capacity of class members in considering whether the means exists to enforce their rights [*15] outside of the class action. *See McBean v. City of New York, 228 F.R.D. 487, 503 (S.D.N.Y. 2005)* (citing *Labbate -D'Alauro v. GC Services Ltd. P'ship, 168 F.R.D. 451, 458 (E.D.N.Y. 1996)*) ("It is appropriate for the court [in examining *Rule 23(b)(3)* superiority] to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually.) Based on these considerations, the Court finds that the elements of *Rule 23* have been satisfied.

## B. FINAL APPROVAL OF THE SETTLEMENT IS MERITED AS THE SETTLEMENT IS FOUND TO BE PROCEDURALLY AND SUBSTANTIVELY FAIR.

Erick Diaz

Plaintiffs ask this Court to approve the Parties' joint Settlement Agreement creating a Fund of $2,350,000 that would cover class members' awards, attorney's fees and costs, and any service awards to named Plaintiffs. Although the Parties jointly arrived at this amount, it is at least in part based on Plaintiffs' assessment of various documents produced in discovery, including "job descriptions, pay records, time sheets, personnel documents and corporate documents." Mot. for Settlement at 3. In addition, Plaintiffs' counsel conducted  [*16] interviews to get information related to the hours worked and wages paid to each Plaintiff. Swartz Decl. ¶ 10. The Parties agreed to the proposed amount in the Settlement Agreement and that none of the Fund will revert back to Defendants. Mot. for Settlement 5; Swartz Decl. ¶ 23; Ex. A (Settlement Agreement ¶ 3.1(A) and (E)).

Disbursement of the award will be based on the length of employment of each class member at Bovis as determined by a point system whereby members are assigned a point for each pay period worked, with an additional three points assigned for each pay period worked by the FLSA Class between March 4, 2007, and December 31, 2010 (resulting in four points for pay periods falling in this time frame). Mot. for Settlement 6. The additional points are in "recognition of the risks these class members incurred by joining the lawsuit . . . [in protecting] their FLSA rights." *Id.* This would include their right to 100% liquidated damages under FLSA in addition to their unpaid wages claims. *Id.*

Under *Rule 23(e)(1)-(3)*, settlements of class actions claims, issues or defenses must have court approval and include the following procedures:

(1) The court must direct notice in a reasonable  [*17] manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

*Fed. R. Civ. P. 23(e)*. The court's approval is necessary to ensure that any settlement reached is procedurally and substantively fair, as well as reasonable and adequate. Procedural fairness is ascertained by examining the process that led to the settlement (*Wal-Mart Stores, Inc. v. Visa U.S.A., 396 F.3d 96 (2d Cir. 2005)*), while substantive fairness considers the actual terms and whether those terms

are reasonable and adequate per the *Grinnell* factors. *City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974)* (*abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000)*).

## 1. Procedural Fairness

In considering the process leading to settlement, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." [*18] *In re Sony Corp. SXRD, 448 Fed. Appx. 85, 86, 2011 WL 4425361, at *1 (2d Cir. 2011)* (citing *Wal-Mart Stores, 396 F.3d at 116*) (internal citations omitted). Settlement in a class action context is highly encouraged by the courts as sound public policy while promoting judicial economy. *Id.* The Parties here arrived at settlement after some discovery, a session with an experienced employment mediator and months-long settlement talks. Mot. for Settlement 3. There is evidence that Plaintiffs engaged in extensive discovery that included reviewing voluminous documents of both Plaintiffs and Defendants and conducting interviews of class members. The Court finds that the settlement is procedurally fair and reasonable based on the Parties' adequate negotiations at arm's length and independent investigations.

## 2. Substantive Fairness

In evaluating the substantive fairness of the settlement, the courts must "independently [examine] whether the interests of all class members were adequately represented." *In re Literary Works in Electronic Databases Copyright Litigation, 654 F.3d 242, 254 (2d Cir. 2011)*. Courts apply the *Grinnell* factors to determine substantive fairness, which include, "(1) the complexity, expense and likely  [*19] duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell, 495 2d. at 463*.

### a. Complexity, Expense and Likely Duration of Litigation

Litigating the claims of hundreds of putative class members would undoubtedly yield expensive litigation costs that can

be curbed by settling the action. *See In re Nasdaq Market-Makers Antitrust Lit., 187 F.R.D. 465, 477 (S.D.N.Y. 1998)* ("[C]lass actions 'have a well deserved reputation as being most complex.'") (internal citations omitted). Additional discovery would include the depositions of a number of individuals and would be fact-intensive given the number of class members involved. Preparation for trial would involve potentially **[*20]** hundreds of class members and would seriously prolong the outcome of this suit in addition to consuming tremendous amounts of time, expenses and judicial resources. Mot. for Settlement 18. The Court finds this factor supports a finding of substantive fairness of the settlement.

**b. Reaction of the Class**

"If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement," *Wal-Mart, 396 F.3d at 118* (citing 4 Newberg § 11.41, at 108); *In re Austrian and German Bank Holocaust Litigation, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000); see also Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d Cir. 1990)* (finding settlement favored despite 29 objections out of 281 class members). Here, only three class members out of 603 have opted out of the settlement, and there was one objection. Plaintiffs assert that adequate notice was provided, and this Court has no reason to believe otherwise as that assertion has not been challenged. A settlement notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982). **[*21]** It must also be "understood by the average class member." *Wal-Mart, 396 F. 3d at 114* (internal citations omitted). Moreover, "a district court's decision regarding the form and content of notices sent to class members is reviewed only for an abuse of discretion." *Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 438 (2d Cir. 2007)*. The notice sent out explained in detail to class members their rights to opt out of the class and an estimate of each class member's potential award. The fact that the overwhelming majority of class members have neither objected nor opted out weighs in favor of settlement approval,

**c. Stage of Proceedings**

While discovery is not complete, enough discovery has been completed for the Parties to ascertain an adequate settlement on behalf of the class. "The Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient

investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement." *In re Austrian, 80 F. Supp. 2d at 176* (internal citations omitted). The Parties have exchanged thousands of pages of documents and Plaintiffs' counsel has **[*22]** interviewed numerous class members. Mot. for Settlement 18, 20. *See D'Amato v. Deutsche Bank, 236 F.3d 78,87 (2d Cir. 2001)* (stating that "although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information" which weighed in favor of settlement approval.) The purpose of this factor is to ensure there is no collusion between the parties. Here, there are no facts to suggest any collaboration. The Parties engaged in months of litigation and negotiation and even endured a failed mediation session before arriving at settlement. After substantial document review and interviews of class members, the Parties seem to be in a position to evaluate a fair and reasonable settlement.

**d. Risks to Establishing Liability and Damages**

In assessing the Plaintiffs' exposure to real weaknesses in their case regarding allegations of liability, the Court does not need to reach the merits of Plaintiffs' arguments. *See Carson v. American Brands, Inc., 450 U.S. 79, 88 n. 14, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981)*. The Court must only "weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Marisol A. ex rel. Forbes v. Giuliani, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)*. **[*23]** Plaintiffs admit that their ease is "not without risk." Mot. for Settlement 20. In addition, risks are inherent in litigation and Plaintiffs would have to secure favorable outcomes at trial and after a likely appeal to establish liability. Defendants assert that class members were classified as "exempt," meaning they were ineligible to qualify for overtime pay. Plaintiffs would have to undergo much more factual discovery to disprove this defense and it's unknown exactly what costs and resources that would require. Because settlement eliminates the uncertainty naturally involved in litigation, *see Matheson v. T-Bone Restaurant, LLC, 2011 U.S. Dist. LEXIS 143773, 2011 WL 6268216, at *5, (S.D.N.Y. Dec. 13, 2011)*, the Court finds this factor weighs in favor of settlement.

Additionally, even if Plaintiffs were to prevail on liability, there is no guarantee a jury would award them damages in the amount they seek, or even nominal damages. *See Wal-Mart, 396 F. 3d at 118*. Thus, "even assuming that plaintiffs had a strong chance of success at trial with respect to liability, the relief granted by the Settlement Agreements is sufficiently favorable to weigh in favor of approval of the Settlement Agreements." *Marisol A., 185 F.R.D. at 164*.

2012 U.S. Dist. LEXIS 53556, *23

**e.  [\*24] Maintaining the Action Throughout Trial and Withstanding Greater Judgment**

While the Court is granting Plaintiffs' application for certification of the class under *Rule 23*, the possibility of decertification as discovery progresses is always possible. *See Wal-Mart, 396 F. 3d at 119 fn 124*. A contested class would inevitably require additional briefing, discovery, and litigation expenses by Plaintiffs. The settlement ensures that Plaintiffs are granted damages that are deemed fair and adequate while alleviating the need to enforce a judgment or seek collection. While there is no evidence the Defendants could not undergo further greater judgment, the contrary is unproven as well. The Court finds this factor neutral and not determinative of whether the settlement should be approved.

**f. Possible Recovery and Attendant Risks of Litigation**

Inevitably, there will be class members who believe that they would have gotten a larger award for damages had they proceeded to trial, and while that may be true, it also does not take into account the increased litigation expenses or Defendants' ability to pay. *See In re Austrian, 80 F. Supp. 2d at 178*. Class counsel is responsible for ensuring a fair settlement  [\*25] to the class as a whole, and for distributing it in the manner that is most fair to all members based on their individual damage assessments. Class members here will each receive a payment under the settlement based on their length of employment with Defendants and whether he or she consented to join the FLSA class. Ultimately, the Settlement here "represents a compromise between the strengths of Plaintiffs' case and the possible success of [Defendants'] defenses." *Cronas v. Willis Group Holdings, LLC, 2011 U.S. Dist. LEXIS 147171, 2011 WL 6778490, at \*4 (S.D.N.Y. Dec. 19, 2011)* (citing *Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005))*. This Court finds the proposed settlement to be procedurally and substantively fair and **GRANTS FINAL APPROVAL** of the settlement.

**C. ADEQUATE NOTICE WAS PROVIDED TO THE CLASS**

Notice of the class as approved by the Court was mailed by the Claims Administrator, SSI, to all class members on June 9, 2011. Mot. for Settlement 7. The mailings were made in accordance with a list provided by Bovis. SSI found new addresses for members who had moved and re-mailed notices to 49 members. *Id*. A total of 110 op-in forms were returned to SSI, ten of which were untimely but accepted  [\*26] and one of which was untimely and denied. Notice of the preliminary settlement was mailed on October 13, 2011, to eligible class members, including 109 FLSA members

and 365 NYLL members. The notice included the estimated award each class member would receive based on length of employment, SSI again found new addresses for relocated members and re-mailed notices to 54 class members. *Id*. at 7-8. SSI received 37 notices for NYLL members that were returned as undeliverable as of November 10, 2011, but was able to obtain new addresses for 30 of the 37 and re-mailed notices to them. The final postmark date for those to op-out was December 14, 2011, and only four class members have opted out of the settlement — Dawn Ramos, Thomas Drumm, Mark Patton and Peter McKee (Swartz Decl. ¶ 46, Exh. B (Patton Decl. ¶ 14), Letter From Peter McKee Opting Out (Rec. Dec. 12, 2011); Notice of Filing of Opt Out by the Settlement Administrator, Doc. No, 69) — with one member, Alec Ross, filing an objection with the Claims Administrator. Let. to Claims Admin, (Rec. Dec, 5, 2011). Mr. Ross's objection concerns his individual share and do not contend that the settlement is unfair to the class as a whole. *Id*.  [\*27] The Court notes his concern, but "the objection[] raised to this settlement do[es] not alter the conclusion that the amount of the class action settlement and its terms are entitled to approval," *In re Interpublic Securities Corp., 2004 U.S. Dist. LEXIS 21429, 2004 WL 2397190, at \*8 (S.D.N.Y. Oct. 24, 2004)*. The class members who did not opt-out will effectively release Defendants from all wage and hour claims under the NYLL that were asserted, or could have been asserted, in the Complaint. Mot. for Settlement 5; Swartz Decl., Exh. A (Settlement Agreement ¶ 2.5).

**D. APPROVAL OF THE FAIR LABOR STANDARDS ACT (FLSA) CLASS**

Plaintiffs ask this Court to also grant final approval to the FLSA class, which requires a less rigorous standard than *Rule 23 of the Federal Rules of Civil Procedure* given that due process concerns are not implicated in the same fashion. In a FLSA settlement, class members must affirmatively opt-in to the collective action, but a failure to opt-in does not cause a class member to forfeit the right to bring suit at a later date, *Matheson v. T-Bone Restaurant, LLC, 2011 U.S. Dist. LEXIS 143773, 2011 WL 6268216, at \*6 (S.D.N.Y. Dec. 13, 2011)*. Courts approve FLSA settlements so long as they are the result of contested litigation  [\*28] where adversarial parties reach an agreement on disputed issues. *Id.; See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n. 8 (11th Cir. 1982)*. Plaintiffs here were represented by class counsel throughout the settlement process and the settlement was reached as a result of arms-length negotiations. *See Johnson v. Brennan, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at \* 12 (S.D.N.Y. Sept. 16, 2011)*. Therefore, the FLSA settlement is **APPROVED**.

2012 U.S. Dist. LEXIS 53556, *28

## E. APPROVAL OF ATTORNEY'S FEES AND COSTS

In calculating an award for reasonable attorney's fees, courts often utilize the lodestar method which computes the number of hours counsel may work on a particular case by a reasonable fee per each hour. The resulting number may be increased by a multiplier depending on the type of case and work performed or courts may award a percentage of the overall recovery instead. In class action settlements, a common fund is usually created from which damages are awarded and from which attorney's fees may be paid. "Under the common fund doctrine, attorneys who create a fund for the benefit of a class of plaintiffs are entitled to reasonable compensation from that fund." *Victor v. Argent Classic Convertible Arbitrage Fund L.P., 623 F.3d 82, 84 (2d Cir. 2010)* **[\*29]** (noting that "[c]lass action lawsuits are the prototypical example of instances where the common fund doctrine can apply.") Commenting on the use of lodestar, the Second Circuit has said that "the lodestar approach is an accepted but not exclusive methodology in common fund cases" and it remains useful in such cases, even where the percentage method is ultimately chosen, *Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)*. However, the trend in this Circuit in class action cases is to apply the percentage method because it "'provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart, 396 F. 3d at 121* (internal citations omitted), This method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded. *See Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, 522 F.3d 182, 191 (2d Cir. 2008)*.

Class counsel seek no more than one-third of the total settlement payment of $2,350,000, or $843,340, in addition to reimbursement for their "actual reasonable litigation costs and expenses . . . which shall not exceed $20,000," **[\*30]** Swartz Decl. ¶ 23; Ex. A (Settlement Agreement ¶ 3.2(A)). Class counsel have been operating on a contingency fee basis and they, along with support staff, have expended 747 hours prosecuting this case, which results in a lodestar of $288,000. Mot. for App. of Att'y's Fees and Reimbursement of Expenses ("Mot. for Atty's Fees") 1. The proposed award equals the lodestar amount increased by a multiplier of 2.93. There have been no objections by class members to the proposed award for attorney's fees. While the lack of objections does not relieve the Court of it's obligation to conduct an independent investigation into the reasonableness of the fee, it does lend support for approval of the award. *See Davis v. J.P. Morgan Chase & Co., 827 F. Supp. 2d 172, 2011 U.S. Dist. LEXIS 117082, 2011 WL 4793835, at \*9 (W.D.N.Y. Oct. 11, 2011)*.

To determine whether $843,340 is a reasonable award of attorney's fees to Class counsel, this Court is guided by the *Goldberger* factors, including (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. **[\*31]** *Goldberger, 209 F.3d at 50*. The most important factor to consider in evaluating an award is moderation. *Id. at 52-53*.

### 1. Time and Labor Expended by Counsel

It is apparent that class counsel has worked diligently in prosecuting this case on behalf of the class. They have reviewed hundreds of pages of documents related to 603 class members, including "job descriptions, pay records, time sheets, personnel documents and corporate documents." Mot. for Att'y's Fees 6. They conducted interviews and participated in a formal mediation session, albeit unsuccessful. They have also spent months participating in settlement discussions and prepared the settlement agreement for this Court's preliminary approval. The Court recognizes the amount of work put into this case and notes class counsel's efforts to utilize the attorney or paralegal with the lowest hourly rate to perform the work as effectively and competently as possible. *Id.* at 7.

The 747 hours expended are reasonable in a case such as this where records are incomplete and therefore a more comprehensive review of the available records is needed to ensure a proper estimation of damages to the class. Class counsel appropriately divided litigation **[\*32]** tasks based upon complexity and cost. The proposed percentage fee also includes future expenses in administering the settlement after litigation has ceased. Mot. for Att'y's Fees 7. In an almost exactly similar scenario, the Court in *Johnson* recognized the acts of class counsel in litigating, negotiating, and settling the case, as well as handling post-settlement administration of the fund. *Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at \* 15-16*. The requested one-third of the fund is a reasonable amount given the time and labor of counsel.

### 2. Magnitude and Complexities of Litigation

"Courts have recognized that wage and hour cases involve complex legal issues." *Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at \* 17*. As in other cases before this Court, this case involves factual, and thus legal, disputes regarding the exempt status of certain employees and what, if any, additional compensation they may be

owed. It is a "hybrid" case of State wage and hour claims where class members must "opt out" of the action if they do not wish to be a part of the class and a federal claim under FLSA that requires members to "opt in" if they do wish to be part of the class. An award of thirty-three percent, or one-third, of the settlement [*33] fund is appropriate given the disputes and is in accordance with this Court's precedent. See *Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *17*; *deMunecas v. Bold Food, LLC, 2010 U.S. Dist. LEXIS 87644, 2010 WL 3322580, at *7-8 (S.D.N.Y. Aug. 23, 2010)*.

### 3. Risk of the Litigation

A contingency fee arrangement presents a financial risk to class counsel who are asked to front the costs of the litigation with a chance of not receiving any award in return. Mot. for Att'y's Fees 9. "Lawyers undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources." *Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *17*. The claim of misclassification placed the burden on plaintiffs to prove that a significant number of people were misclassified and deprived of overtime wages. The disputed facts present issues of credibility and triable issues of fact for a jury to determine. The significant risks presented by litigating the case weigh in favor of approval of the award.

### 4. Quality of Representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." [*34] *Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *17* (citing *Taft v. Ackermans, 2007 U.S. Dist. LEXIS 9144, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007)*). Recovery of $2,350,000 is a sizeable award that ensures all 603 class members will receive a payment corresponding to their length of employment with Defendants. When considering the risk of litigation with the settlement fund, the settlement is reasonable. Additionally, class counsel are members of the respected labor and employment firm Outten & Golden. They are experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions." *deMunecas, 2010 U.S. Dist. LEXIS 87644, 2010 WL 3322580, at *7*; see *McMahon v. Olivier Cheng Catering and Events, LLC, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6* (recognizing Outten and Golden as a respected labor and employment firm). In the

*deMunecas* case, the court recognized the work put forth by class counsel and approved an attorney's award of thirty-three percent of the common fund. *Id.* Similarly this Court finds class counsel zealously represented the interests of their clients and provided a high quality of representation.

### 5. [*35] Requested Fee in Relation to Settlement

Courts consider the size of the settlement when considering the reasonableness of the award being requested. "Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable." *Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at * 18*. Courts in this Circuit have found that an award of one-third of the settlement fund is considered reasonable where the fund amount was similar to the amount being considered here. *See, e.g., Prasker v. Asia Five Eight LLC, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010)* (awarding $1,050,000), *Khait v. Whirlpool Corp., 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010)* (granting an award for fees of $3,052,000), and *Mohney v. Shelly's Prime Steak, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009)* (awarding $3,265,000). In particular, courts in this Circuit have routinely granted attorney's fees awards in the amount of one-third of the settlement in state and FLSA wage and hour class action settlements that involve amounts far larger than the settlement award contemplated here. *See Willix v. Healthfirst, Inc., 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011)* ($7,675,000 settlement [*36] fund); *Clark v. Ecolab, Inc., 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010)* ($6,000,000); *Khait v. Whirlpool Corp., 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010)* ($9,250,000); see also *Westerfield v. Wash. Mut. Bank, 2009 U.S. Dist. LEXIS 94544, 2009 WL 5841129, at *4-5 (E.D.N.Y. Oct. 8, 2009)* (30% of $38 million fund). A fee of one-third, or thirty-three percent, of the settlement fund is consistent with this Circuit's established law. *Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *19*. Ultimately, "[d]istrict courts in the Second Circuit routinely award attorney's fees that are 30 percent or greater." *Velez v. Novartis Pharmaceutical Corp., 2010 U.S. Dist. LEXIS 125945, 2010 WL 4877582, at *21 (S.D.N.Y. Nov. 30, 2010)*.

### 6. Public Policy Considerations

Were this action not settled via the class action format, hundreds of individual claims would be brought before this Court, consisting of an inefficient use of judicial resources.

″Where relatively small claims can only be prosecuted through aggregate litigation, ’private attorneys general’ play an important role.″ *Khait, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at \*8* (citing *Deposit Guar. Nat’l Bank v. Roper, 445 U.S. 326, 338-39, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980))*. Private attorneys prosecuting wage and hour claims must be adequately compensated for their **[\*37]** time and labor. ″If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.″ *Prasker v. Asia Five Eight LLC, 2010 U.S. Dist. LEXIS 1445, 2010 WL 476009, at \*6 (S.D.N.Y. Jan. 6, 2010)*. Attorneys who protect labor rights must be adequately compensated and such compensation ″furthers the remedial purposes of the FLSA and the NYLL.″ *Id*. This factor also favors approval of the settlement.

## F. THE LODESTAR CROSS CHECK SUPPORTS APPROVAL OF THE AWARD

When applying the percentage method to an award for attorney’s fees, courts in this Circuit follow the trend of applying the lodestar method as a ″cross-check″ to ensure the reasonableness of the award. *Goldberger, 209 F.3d at 50*. ″[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court’s familiarity with the case.″ *Davis, 827 F. Supp. 2d 172, 2011 U.S. Dist. LEXIS 117082, 2011 WL 4793835, at \*10* (citing *Goldberger, 209 F.3d at 50*). The lodestar is assessed by ″multiplying the hours reasonably expended on the case by a reasonable hourly rate.″ Courts then consider factors such as: ″(1) the contingent **[\*38]** nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved.″ *Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at \*20* (internal citations omitted).

Courts commonly award lodestar multipliers between two and six. *See id*. (discussing cases where lodestar multipliers between 2.09 and six were awarded). Additionally, where ″class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower″ because the award includes not only time spent prior to the award, but after in enforcing the settlement *Bellifemine v. Sanofi, 2010 U.S. Dist. LEXIS 79679, 2010 WL 3119374, at \*6 (S.D.N.Y. Aug. 6, 2010)*. Class counsel’s 747 hours spent litigating this case generates a lodestar of $288,000. A lodestar multiplier of three falls well within the range granted by our Courts and equals the

one-third percentage being sought. For the reasons discussed above, the award for attorney’s fees of one-third share of the overall settlement fund is **GRANTED**.

## G. APPROVAL OF EXPENSES UNDER SETTLEMENT **[\*39]** AGREEMENT

″Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were ’incidental and necessary to the representation’ of those clients.″ *Miltland Raleigh-Durham v. Myers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)* (internal citations omitted). Where a common fund has been created, ″[i]t is well-established that counsel who create [it]... are entitled to the reimbursement of [all reasonable] litigation costs and expenses . . . .″ *In re Marsh ERISA Litig., 265 F.R.D. 128, 150 (S.D.N.Y. 2010)*. Expenses and costs in class action settlements total approximately 2.8 percent of total recovery nationwide, which in the instant case would be $65,800. *Velez, 2010 U.S. Dist. LEXIS 125945, 2010 WL 4877582, at \*24*.

The Settlement Agreement allows for class counsel to seek reimbursement of expenses and costs up to $20,000, well below the national average. Class counsel seeks reimbursement of that amount despite their actual expenses totaling $28,000. Mot. for Att’y’s Fees 15. The costs include Plaintiff’s share of mediator’s fees, expert fees, telephone charges, fees charged by the claims administrator, postage, transportation and meals during working sessions, **[\*40]** copies and electronic research. *Id*. An award of $20,000 in costs and expenses is hereby **GRANTED**.

## H. APPROVAL OF THE SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

Plaintiffs Sewell and Diangson are seeking a service award in the amount of $15,000 and $10,000, respectively, for their vigor in pursuing this case on behalf of the class. Class awards in the amount being requested here have been granted before to zealous class representatives in the prosecution of a class action suit, *see Johnson, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at \*21*; *Reyes v. Altamarea Grp., LLC., 2011 U.S. Dist. LEXIS 115984, 2011 WL 4599822, at \*9 (S.D.N.Y. Aug. 16, 2011)* (granting an award of $15,000 to three class representatives); *Duchene v. Michael Cetta, Inc., 2009 U.S. Dist. LEXIS 85955, 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009)* (approving an award of $25,000), while much larger awards have also been granted where merited. *See Roberts v. Texaco, Inc., 979 F. Supp. 185, 205 (S.D.N.Y. 1997)* (approving awards of $50,000 and $85,000 to two of the named plaintiffs in a racial

2012 U.S. Dist. LEXIS 53556, *40

discrimination employment class action); *Wright v. Stern, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008)* (awarding $50,000 to each of eleven named plaintiffs in employment discrimination action where total settlement fund was **[\*41]** $11,869,856,25); *Velez, 2010 U.S. Dist. LEXIS 125945, 2010 WL 4877582, at \*26* (granting awards of $175,000-$425,000 for class members who testified at trial out of a settlement fund of $175 million). In *Khait*, service awards in the amounts being requested here—$10,000 and $15,000—were granted to named plaintiffs. *Khait, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at \*9* (granting service awards in the amount of $15,000 to five class members and $10,000 to ten members out of a settlement fund of $9,250,000).

Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer. *See Velez v. Majik Cleaning Serv., 2007 U.S. Dist. LEXIS 46223, 2007 WL 7232783, at \*7 (S.D.N.Y. June 25, 2007)* (noting that by prosecuting their case, plaintiffs expose themselves to potential adverse actions by their employer in order that the full class may benefit from the litigation.) "In discrimination-based litigation, the plaintiff is frequently a present or past employee whose present position or employer credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril." *Roberts*, 979 F. Supp. at 201. While **[\*42]** this suit is not based on claims of discrimination, Sewell and Diangson risked potential exposure of jeopardizing future employment by joining this suit. *See Parker v. Jekyll & Hyde Entm't Holdings, L.L.C., 2010 U.S. Dist. LEXIS 12762, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)* (awarding class representatives up to $15,000 out of a settlement fund of $745,000) ("as employees suing their current or former employer, the plaintiffs face the risk of retaliation. The current employees risk termination or some other adverse employment action, while former

employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). While Plaintiffs were not employed by Defendants at the time this suit was brought, as former employees they face potential risks of being blacklisted as "problem" employees. *See Roberts*, 979 F. Supp. at 201. Plaintiff Sewell, in particular, has been the public face of this litigation and has been the subject of several news stories, including one in the New York Daily News, Swartz Decl. in Support of Mot. for Svc Award ¶ 54.

Plaintiffs argue they have served class members by "providing counsel with relevant documents in their possession, assisting counsel **[\*43]** to prepare for the mediation, participating in litigation strategy, and reviewing and commenting on the terms of the settlement." Swartz Decl. ¶¶ 32-33. Class counsel asserts that the class representatives provided detailed factual information to class counsel for the prosecution of their claims and made themselves available regularly for any necessary communications with counsel. Mot. for Approval of Class Rep. Svc Awards ("Mot. for Svc Award") 1; Swartz Decl. in Support of Mot. for Svc Award ¶ 55. No class members have filed any objections to the proposed service awards established under the Settlement Agreement. The service awards in the proposed amounts of $10,000 for Plaintiff Sewell and $15,000 for Plaintiff Diangson are therefore **GRANTED**.

**DATED: April 16, 2012**

**New York, New York**

/s/ Ronald L. Ellis

**The Honorable Ronald L. Ellis**

**United States Magistrate Judge**

⚠ Caution

As of: May 2, 2016 4:05 PM EDT

## *Sheppard v. Consol. Edison Co. of N.Y., Inc.*

United States District Court for the Eastern District of New York

August 1, 2002, Decided

94-CV-0403 (JG)

**Reporter**

2002 U.S. Dist. LEXIS 16314; 2002 WL 2003206

DOROTHY SHEPPARD, ROBERT W. BERRY, IRMA J. MUSHATT, JAMES M. CARTER, HAROLD McKINZIE, LEONARD B. MIDDLETON, DERICK C. HEWITT, and JAMES W. AUSTIN, individually and on behalf of all others similarly situated, Plaintiffs, -against- CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Defendant.

**Notice:** **[*1]** FOR ELECTRONIC PUBLICATION ONLY

**Disposition:** Settlement Class was certified, the Settlement was approved, and all claims against Defendant were dismissed with prejudice as against those members of the Settlement Class who have not timely exercised their right to be excluded from the Settlement.

## Core Terms

Settlement, incentive awards, named plaintiff, class member, parties, negotiations, approving, awards, class action, costs, amounts, maximum, risks, attorneys', discovery, employees, promotion, proposed settlement, compensate, estimated, cases, absent class members, class certification, requirements, damages

## Case Summary

### Procedural Posture

Putative class plaintiffs, current or former minority management employees of defendant employer, alleged they were discriminated against on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e et seq.* The parties submitted a proposed settlement to the court under to *Fed. R. Civ. P. 23(e)*.

### Overview

The parties agreed upon a settlement fund to be distributed based on an expert witness' distribution study that analyzed the number of promotional shortfalls and the relative likelihood that each class member suffered discrimination

as a result. The primary concern raised by objectors to the initial proposed distribution of the $ 4.5 million settlement was the amount of the incentive awards proposed to compensate the named plaintiffs for their special roles in this litigation. The court agreed wit the objectors that the incentives (up to $ 150,000) were too high in relation to the individual shares of unnamed class members. Under the revised settlement, the highest incentive award was $ 29,167, and the highest class payment was $ 21,372, a more reasonable result. The court also accepted the proposed attorneys' fee award that represented a compromise between the parties.

### Outcome

The settlement was approved as renegotiated, and the claims dismissed with prejudice.

## LexisNexis® Headnotes

Civil Procedure > Special Proceedings > Class Actions > Certification of Classes

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

Governments > Legislation > Overbreadth

***HN1*** Settlement classes can be certified only if all of the requirements for class certification under *Fed. R. Civ. P. 23* are met. When considering the propriety of a settlement class, the fact of settlement is relevant to class certification and compels heightened attention to the requirements designed to protect absentees by blocking unwarranted or overbroad class definitions.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

***HN2*** See *Fed. R. Civ. P. 23(a)*.

2002 U.S. Dist. LEXIS 16314, *1

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Predominance

**HN3** Where plaintiffs allege that a class action suit is maintainable under *Fed. R. Civ. P. 23(b)(3)*, they must show that common questions predominate over any questions affecting only individual members and that a class action is superior to other available methods for fair and efficient adjudication of the controversy.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

Civil Procedure > Special Proceedings > Class Actions > Judicial Discretion

Civil Procedure > Special Proceedings > Class Actions > Voluntary Dismissals

**HN4** Pursuant to *Fed. R. Civ. P. 23(e)*, any settlement or dismissal of a class action requires court approval. In order to approve such a settlement, a court must determine that the settlement is fair, adequate, and reasonable, and not a product of collusion. In so doing, the court must eschew any rubber stamp approval yet simultaneously stop short of the detailed and thorough investigation that it would take it if were actually trying the case. Judicial discretion should be exercised in light of the general policy favoring settlement.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

Civil Procedure > Special Proceedings > Class Actions > Judicial Discretion

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

**HN5** Fairness in the settlement of a class action suit is evaluated by examining (1) the negotiations that led up to the settlement and (2) the substantive terms of the settlement. The negotiation process must be examined in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves. Factors that are relative to the substantive fairness of a proposed settlement include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the

class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

Civil Procedure > Special Proceedings > Class Actions > Judicial Discretion

**HN6** Courts in the Second Circuit generally make incentive awards based upon the existence of special circumstances including the personal risk, if any, incurred by a plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value, any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and the ultimate recovery.

Civil Procedure > Special Proceedings > Class Actions > General Overview

Governments > Fiduciaries

**HN7** In the context of employment discrimination cases, class representatives may find their employment credentials or recommendation at risk by reason of their having prosecuted the suit. The class representative lends his or her name and efforts to the prosecution of litigation at some personal peril. In awarding incentive payments as part of a settlement, a court must ensure that the named plaintiffs, as fiduciaries to the class, have not been tempted to receive high incentive awards in exchange for accepting suboptimal settlements for absent class members.

Civil Procedure > ... > Class Actions > Class Members > Named Members

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

Civil Procedure > Special Proceedings > Class Actions > Judicial Discretion

**HN8** A basis for separate awards to named plaintiffs in class action settlements is the need to reimburse them for specific expenses they have incurred, including out-of-pocket costs of asserting the litigation, the use of leave time in order to attend depositions and other such costs.

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > American Rule

Erick Diaz

2002 U.S. Dist. LEXIS 16314, *1

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN9* In awarding attorneys' fees, the United States Court of Appeals for the Second Circuit has held that both the "lodestar" method of computation (hours reasonably expended multiplied by a reasonable hourly rate, plus an enhancement if deemed appropriate) and the "percentage of the fund" method are available to district judges in calculating attorneys' fees in common fund cases.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN10* Traditional criteria in determining a reasonable common fund attorneys' fee include: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. The United States Court of Appeals for the Second Circuit recommends analyzing the documentation of the hours submitted by counsel as a cross check on the reasonableness of the requested percentage.

**Counsel:** Esmeralda Simmons, Joan P. Gibbs, Aama Nahuja, Center for Law and Social Justice, Brooklyn, New York, for Plaintiffs.

Alan L. Fuchsberg, The Jacob Fuchsberg Law Firm, Daniel Alterman, Alterman & Boop, P.C., New York, New York, for Plaintiffs.

Mary Schuette, Larry Carbone, Jeanmarie Schieler, Consolidated Edison Company of New York, Inc., New York, New York.

Kenneth Standard, Morgan, Lewis & Bockius LLP, New York, New York, for Consolidated Edison Company of New York, Inc.

**Judges:** JOHN GLEESON, United States District Judge.

**Opinion by:** JOHN GLEESON

# Opinion

*MEMORANDUM AND ORDER*

JOHN GLEESON, United States District Judge:

In this employment discrimination action, a putative class of approximately 2,406 African Americans currently or formerly employed by Consolidated Edison Company of New York, Inc. ("Con Ed"), alleges that Con Ed discriminated against them on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.* [1] This opinion concerns the parties' second attempt at settling the case. By Memorandum and Order [*2] dated December 21, 2000, familiarity with which is assumed, I rejected their first proposed settlement agreement ("First Proposal") on the ground that the incentive awards for the named plaintiffs were excessive, resulting in a settlement that was unfair to the absent class members. After renegotiating the incentive awards and other terms of the First Proposal, the parties have submitted a proposed Amended Stipulation of Settlement ("Settlement"). As described below, I approve the Settlement pursuant to *Rule 23(e) of the Federal Rules of Civil Procedure.* Incentive awards are allotted in amounts that, in my judgment, adequately compensate the named plaintiffs for their special roles in this litigation.

[*3]   BACKGROUND

A. *The First Proposal*

As detailed in my Memorandum and Order of December 21, 2000, the First Proposal provided for, *inter alia,* a fund of $ 4.5 million to be distributed among the Settlement Class based on the relative likelihood that each class member was discriminated against by Con Ed. Each class member was to receive a share of the $ 4.5 million based on a distribution study conducted by Dr. Bernard R. Siskin, the Senior Vice President of the Center for Forensic Studies. Dr. Siskin

---

[1]   The proposed class includes "present, as well as former, black and/ or African-American employees of CON ED, who are either high level union employees or lower to middle level management employees, qualified in terms of seniority and experience, who have received good performance reviews, and were denied promotion or transfer because of their race and/ or color." Complaint P 10. In late 1998, plaintiffs moved for class certification, which on September 9, 1999, Magistrate Judge Joan M. Azrack recommended that I grant. Since that time, and at the parties' request, I have held my decision on that motion in abeyance to afford the parties an opportunity to settle the case.

For reasons discussed below, I now certify a class for settlement purposes only ("Settlement Class") to include "black employees, numbering approximately 2,406, who were actively employed by CECONY [Con Ed Company of New York] in Upper-level Union or in Management Positions at any time during the period from January 2, 1984 to March 31, 1997."

2002 U.S. Dist. LEXIS 16314, *3

analyzed the number of promotional shortfalls at Con Ed and the relative likelihood that each class member suffered discrimination there. The class members' awards ranged from a low of $ 556 to a high of $ 3,564, with a mean of $ 1,833. The named plaintiffs were each to receive an additional $ 400,000 as incentive awards. Class counsel requested $ 1,797,500 in fees and $ 262,500 in costs. Moreover, various forms of non-monetary relief were provided.

B. *The Settlement*

The Settlement increases the class fund from $ 4.5 million to $ 6.745 million. *See* Settlement § X(A). Class members' awards range from a low of $ 556 to a high of $ 21,372, with a mean of $ 2,767. **[*4]** *See* Affidavit of Bernard R. Siskin dated February 19, 2002 ("Siskin Aff.") P 19.

Incentive awards under the Settlement are no longer fixed at an exorbitant level. Rather, their allocation is left in my discretion with the following amounts set as caps [2]: (1) James W. Austin, $ 175,000; (2) Robert W. Berry, $ 150,000; (3) James M. Carter, $ 115,000; (4) Harold McKinzie, $ 50,000; (5) Leonard B. Middleton, $ 150,000; and (6) Irma J. Mushatt, $ 75,000. [3] *See* Settlement § XII.

Like the First Proposal, the Settlement provides for significant injunctive relief, pursuant to which Con Ed will: (1) form a Human Resource Committee; (2) post most management job openings companywide; (3) adhere to EEO policies in management performance reviews; **[*5]** (4) provide career counseling services to employees who indicate that they are interested in promotions; (5) provide day-long conflict/ diversity training to all employees; and (6) notify employees of significant organization or personnel changes. *See* Settlement § XIV. Con Ed estimates that these changes will cost $ 5 million to implement. *See* Affidavit of Geraldine Eure dated Oct. 16, 2000 ("Eure Aff.") P 8.

Finally, class counsel requests $ 1,797,500 in fees and $ 295,637 in costs. *See* Settlement § XI, XII.

C. *The Procedural History of the New Proposed Settlement*

On October 16, 2001, I preliminarily approved the Settlement. Thereafter, each class member received notice summarizing the overall Settlement, informing the class

member of his or her award, and stating the maximum incentive awards that the named plaintiffs were eligible to receive. On February 26, 2002, I held a fairness hearing at which only four objectors appeared. [4]

[*6]  DISCUSSION

A. *The Settlement Class*

The use of a settlement class allows the parties to concede, for purposes of settlement negotiations, the propriety of a class action. It also allows the court to postpone formal certification of the class until after settlement negotiations have ended. The Supreme Court has expressly approved the use of this device. *See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 619, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997)* ("the 'settlement only' class has become a stock device").

***HN1*** Settlement classes can be certified only if all of the requirements for class certification under *Rule 23* are met. *See id.* When considering the propriety of a settlement class, the fact of settlement is "relevant to class certification" and compels "heightened" attention to the requirements "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Id. Rule 23(a)* specifies the following requirements for bringing a class action:

> ***HN2*** (1) the class [must be] so numerous that joinder of all members is impractical, (2) there [must be] questions of law or fact common to the class, (3) the claims or defenses of the **[*7]** representative parties [must be] typical of the claims or defenses of the class, and (4) the representative parties must fairly and adequately protect the interests of the class.

*Fed. R. Civ. P. 23(a)*. In addition, where, as here, ***HN3*** the plaintiffs allege that the class action is maintainable under *Rule 23(b)(3)* (*see* Settlement § VI), they must show that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fair and efficient adjudication of the controversy." *Fed. R. Civ. P. 23(b)(3)*.

The Settlement Class in this case is defined as follows: "black employees, numbering approximately 2,406, who were actively employed by CECONY [Con Ed Company of New York] in Upper-level Union or in Management Positions

---

[2]   Two of the named plaintiffs, Dorothy Sheppard and Derick C. Hewitt, have exercised their right to opt out under the Settlement.

[3]   Additionally, Robert W. Berry and Harold McKinzie will receive promotions with accompanying salary increases. *See* Settlement § XII.

[4]   The substance of each objection is discussed *infra*.

2002 U.S. Dist. LEXIS 16314, *7

at any time during the period from January 2, 1984 to March 31, 1997." Settlement § VI. I am satisfied that (i) this Settlement Class meets the four threshold requirements of *Rule 23(a)*; (ii) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (iii) a class action is superior to other available methods **[*8]** for the fair and efficient adjudication of the controversy. Therefore, I find that final certification of the Settlement Class is proper.

B. *Standard for Approving a Proposed Settlement*

**HN4** Pursuant to *Rule 23(e)*, any settlement or dismissal of a class action requires court approval. In order to approve such a settlement, the court must determine that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000)*. In so doing, the court must "eschew any rubber stamp approval" yet simultaneously "stop short of the detailed and thorough investigation that it would take it if were actually trying the case." *City of Detroit v. Grinnell Corp., 495 F.2d 448, 462 (2d Cir. 1974)*; *abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000)*. Judicial discretion should be exercised in light of the general policy favoring settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

**HN5** Fairness is evaluated by examining (1) the negotiations that led up to the settlement, and (2) the substantive terms of the **[*9]** settlement. *See In re Holocaust Victim Assets Litig., 105 F. Supp. 2d 139, 145 (E.D.N.Y. 2000)*. "The [negotiation] process must be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves.'" *Id. at 145-46* (quoting *Malchman v. Davis, 706 F.2d 426, 433 (2d Cir. 1983))*. Factors relevant to the substantive fairness of a proposed settlement include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell, 495 F.2d at 463*.

1. *Procedural* **[*10]** *Fairness*

I find that the Settlement is procedurally fair because (i) it was the product of arms-length negotiations, and (ii) class

counsel are skilled and fully informed by sufficient discovery. The process by which the parties negotiated the Settlement demonstrates its fairness to class members. To calculate the monetary relief for class members, the parties relied on the expertise of Dr. Siskin, a nationally recognized labor economist. Next, the parties negotiated the injunctive, non-monetary relief to be provided to the class. This process involved numerous meetings, some of which included discussions with Richard Cowie, then Vice President of Human Resources at Con Ed. Finally, the parties negotiated attorneys' fees. In total, prior to their submission of the First Proposal, the parties had more than seventy-five meetings and telephone conferences concerning their settlement negotiations.

After I declined to approve the First Proposal, the parties continued their negotiations, assisted on certain occasions by Magistrate Judge Joan M. Azrack and on other occasions by me. Ultimately, they agreed that I would make the final determination regarding incentive awards to the named **[*11]** plaintiffs, subject only to maximum awards specified in the Settlement.

The extensive discovery in the case adequately informed the parties of the merits of their cases. Discovery involved a voluminous document exchange, more than thirty depositions, the retention of expert witnesses, and the litigation of numerous discovery disputes. *See* Affidavit of Kenneth G. Standard dated Oct. 16, 2000 ("Standard Aff.") P 2-5. Considering the good-faith negotiation process and the sufficiency of discovery, I conclude that the Settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. Giuliani, 218 F.3d at 138*.

2. *Substantive Fairness*

a. *The complexity, expense and likely duration of the litigation*

Because this case involves complex factual and legal issues, a trial on the merits would consume considerable time and resources. Dueling experts and sophisticated statistical models would no doubt add to the complexity of the proof. A jury's verdict would likely be appealed, thereby extending the duration of the litigation.

b. *The reaction of the class to the settlement*

Out of a class of approximately 2,406 people, only twenty-eight **[*12]** (constituting approximately one percent

2002 U.S. Dist. LEXIS 16314, *12

of the class) opted out of the Settlement and only four class members objected to the Settlement. [5]

Quincy Mortimer complains that the "amounts (for named class members versus unnamed class members that) are uneven," do not "fairly compensate for the duration of the alleged discrimination," and result in "unfair awards for the unnamed class members." Objection to Proposed Settlement on Behalf of Quincy Mortimer by Scott Gale, Esq. at 2. Mortimer notes that named plaintiff Robert W. Berry could receive an incentive award of up to $ 150,000, a promotion and a 10% salary increase. [6] In comparison, Mortimer, who works in the same unit as Berry, and, like Berry, has been at Con Ed for 32 years, will receive little more than $ 3,000 as compensation.  [*13]  I agree that an incentive award to Berry in the amount of $ 150,000 would be unfair to unnamed class members, such as Mortimer. As described below, I have limited the incentive awards to amounts that I believe fairly compensate the named plaintiffs and are not disproportionate to the recovery of absent class members.

The remaining objections relate to the size of awards to the class members. [7] The small number of objections weighs in favor of my approving the Settlement. *See, e.g., Marisol v. Giuliani, 185 F.R.D. 152, 163 (S.D.N.Y. 1999)* ("The Court views the small number of comments from a plaintiff class of over 100,000 children as evidence of the Settlement Agreement's fairness reasonableness, and adequacy."); *In re Warner Communications Secs. Litig., 618 F. Supp. 735, 746 (S.D.N.Y. 1985)* (noting small number of objections and opt-outs in [*14] approving settlement); *see also Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d Cir. 1990)* (twenty-nine objections out of 281 class members "strongly favors settlement"). Moreover, in light of Dr. Siskin's well-analyzed distribution study, I am not persuaded by the substance of the objections.

c. *The stage of the proceedings and the amount of discovery completed*

Since the initiation of this litigation nearly ten years ago, the parties have engaged in mediation,  **[*15]**  extensive discovery, motion practice (including a motion for class certification), and two rounds of protracted settlement negotiations. Thus, by the time the Settlement was achieved, both sides were in a position to make informed judgments about the merits of the case and the Settlement.

d. *The risks of establishing liability and damages, as well as maintaining the class action through the trial*

A trial in this case would involve significant risks to the plaintiffs, including (1) their ability to prove a pattern or practice of discrimination based on statistical and anecdotal evidence; (2) their ability to overcome various defenses, including the statute of limitations; and (3) their ability to prove damages.

e. *The ability of the defendant to withstand a greater judgment*

Defendant concedes that it is able to withstand a greater judgment.

f. *The range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation*

Defendants have estimated the cost of implementing the Settlement's non-monetary reforms at $ 5 million, thereby bringing the total calculable costs to a maximum of approximately $ 13 million. Dr. Siskin [*16] concluded that "the proposed settlement of $ 6.745 million represents 120.8% of the expected back pay loss." Siskin Aff. P 16. Moreover, Dr. Siskin's analysis compensates class members for a significant period of time outside the applicable statute of limitations, thereby increasing the back pay by 83%.

I find that the range of reasonableness of the settlement in light of the best possible recovery and all attendant litigation risks weighs in favor of approving the Settlement.

In sum, I conclude that the Settlement is both procedurally and substantively fair.

3. *Monetary Recovery By the Named Plaintiffs*

---

[5]    In addition, class member Gloria Harduin, who was awarded $ 2,103, wrote a letter to the Court dated Dec. 18, 2001, inquiring "why the amounts are so different." Her inquiry did not constitute an actual objection to the Settlement.

[6]    Berry is also to receive $ 3,459 as his class share. *See* Affirmation of Larry Carbone dated Feb. 21, 2002 ("Carbone Aff.") P 4.

[7]    Renaldo Clark objects to the $ 6.745 million class payment because he believes that it does not include sufficient compensatory and punitive damages. He proposes $ 100 million as the appropriate class payment. Glen Williams complains about "the absence of punitive damages for long-term pain and suffering claims by Class Members." Fredrick L. Harris claims that the Settlement is "grossly undervalued." He focuses primarily on his individual claims of discrimination, which are outside of the time frame covered by the Settlement.

As I stated in my prior opinion, I acknowledge the appropriateness of incentive award payments to class representatives in employment discrimination cases. Such awards are not uncommon and can serve an important function in promoting class action settlements. *HN6* Courts in this circuit generally make these awards based upon

> the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation **[*17]** or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery.

*Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200 (S.D.N.Y. 1997). Specifically, *HN7* in the context of employment discrimination cases, class representatives may find their "employment credentials or recommendation … at risk by reason of [their] having prosecuted the suit." *Id.* (citations omitted). The class representative "lends his or her name

and efforts to the prosecution of litigation at some personal peril." *Id.* (citations omitted).

In awarding these payments as part of a settlement, a court must ensure that the named plaintiffs, as fiduciaries to the class, have not been tempted to receive high incentive awards in exchange for accepting suboptimal settlements for absent class members. A particularly suspect arrangement exists where the incentive payments are greatly disproportionate to the recovery set aside for absent class members, as they were under the First Proposal.

In response to those concerns, the parties have jettisoned the across-the-board **[*18]** $ 400,000 payments to the named plaintiffs, and increased the amount of payments to the class as a whole by nearly fifty percent, raising the total class award from $ 4.5 million to $ 6.745 million. They have further agreed to commit to my discretion the amounts of the incentive awards, subject to specified maximums. The following chart indicates the class payment and the proposed maximum incentive payment for each named plaintiff.

**Proposed Incentive Awards**

| Named Plaintiff | Class Payment | Maximum Incentive Award[8] |
|---|---|---|
| 1. James W. Austin | $ 2,365 | $ 175,000 |
| 2. Robert Berry | $ 3,459 | $ 150,000 |
| 3. James M. Carter | $ 2,234 | $ 115,000 |
| 4. Harold McKinzie | $ 4,413 | $ 50,000 |
| 5. Leonard Middleton | $ 10,927 | $ 150,000 |
| 6. Irma Mushatt | $ 2,669 | $ 75,000 |

[8] If they had not opted out, Derick Hewitt and Dorothy Sheppard would have been eligible for incentive awards up to $ 65,000 and $ 175,000, respectively.

Plaintiffs ask me to award the maximum possible incentive payments. In support of their position, they cite the substantial risks that they took in commencing and pursuing this litigation, as well as the time, effort, and invaluable consultative **[*19]** assistance they provided to class counsel.[9] Defendants agree that incentive awards should compensate the named plaintiffs for their willingness to come forward and allege individual and class claims, and for their special role in advancing the litigation.

Although these reasons support an award of incentive payments, I decline to award incentive payments in the

extraordinarily high amounts requested. Once again, I find that the amounts sought as incentive awards are grossly disproportionate to the compensation to be paid to the absent class members the plaintiffs **[*20]** seek to represent. In my view, appropriate incentive awards here are one-sixth of the proposed maximum amounts, as specified in the following chart.

**Actual Incentive Awards**

| Named Plaintiff | Maximum Incentive Award | Actual Incentive Award |
|---|---|---|

---

[9]  *HN8* A powerful basis for separate awards to named plaintiffs in class action settlements is the need to reimburse them for specific expenses they have incurred, including out-of-pocket costs of asserting the litigation, the use of leave time in order to attend depositions and other such costs. Although I invited plaintiffs' counsel to support the requested payments (at least in part) by providing such information, counsel has declined to provide any.

2002 U.S. Dist. LEXIS 16314, *20

| | | |
|---|---|---|
| 1. James W. Austin | $ 175,000 | $ 29,167 |
| 2. Robert Berry | $ 150,000 | $ 25,000 |
| 3. James M. Carter | $ 115,000 | $ 19,167 |
| 4. Harold McKinzie | $ 50,000 | $ 8,333 |
| 5. Leonard Middleton | $ 150,000 | $ 25,000 |
| 6. Irma Mushatt | $ 75,000 | $ 12,500 |

These awards are generally consistent with the incentive awards granted in plaintiffs' cited authority. [10] *See In re Lease Oil Antitrust Litig., 186 F.R.D. 403, 449 (S.D. Texas 1999)* (incentive awards ranged from $ 750 to $ 10,000); *Roberts v. Texaco,* 979 F. Supp. 185, 205 (S.D.N.Y. 1997) (recommending incentive awards of $ 2,500, $ 25,000, $ 50,000, and $ 85,000; describing the last award as "an upward departure fro August 1, 2002m cited precedent"); *In re Southern Ohio Corr. Facility, 175 F.R.D. 270, 277 (S.D. Ohio 1997)* (declining to approve proposed incentive award of $ 25,000; appointing Settlement Master/ Trustee to determine [*21] appropriate award); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 251 (S.D. Ohio 1991)* (in an estimated $ 56.65 million settlement, awarding $ 50,000 incentive awards); *In re Dun & Bradstreet Credit Serv. Customer Litig., 130 F.R.D. 366, 373-74 (S.D. Ohio 1990)* (in estimated $ 18 million settlement, incentive awards ranged from $ 35,000 to $ 55,000); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, 700 F. Supp. 208, 210 (S.D.N.Y. 1988)* (in estimated $ 4 million settlement, refusing request for $ 40,170 in incentive awards and granting $ 20,085 instead); *Green v. Battery Park City Auth., 1987 U.S. Dist. LEXIS 4147, 44 Fair Empl. Prac. Cas. (BNA) 623, 627 (S.D.N.Y. 1987)* (approving incentive award of $ 4,000); *Lo Re v. Chase Manhattan Corp., 1979 U.S. Dist. LEXIS 12210, 19 Fair Empl. Prac. Cas. (BNA) 1366, 1371 (S.D.N.Y. 1979)* (approving incentive awards of $ 22,900); *Women's Comm. for Equal Employment Opportunity v. National Broad. Co., 76 F.R.D. 173, 180 (S.D.N.Y. 1977)* (approving incentive awards ranging from $ 336 to $ 35,174, yet noting doubts as to [*22] their appropriateness). *But see Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N. D. Ga. 2001)* (approving incentive awards of $ 303,000, which were nearly eight times greater than the class payments).

I also note that the difference between the highest incentive award, $ 29,167, and the highest class payment, $ 21,372, is only $ 7,795, as opposed to the difference under the First Proposal, which was $ 396,436 ($ 400,000 incentive award minus highest class payment of [*23] $ 3,564).

In conclusion, I am satisfied that these incentive awards are appropriate and that they fairly and adequately compensate the named plaintiffs for their special role in this litigation.

### 4. Attorneys' Fees

The Amended Settlement requests $ 1,797,500 in attorneys' fees and $ 295,637 in costs. *See* Settlement § XI, XII. [11] *HN9* In awarding attorneys' fees, the Second Circuit has held that both the "lodestar" method of computation (*i.e.,* hours reasonably expended multiplied by a reasonable hourly rate, plus an enhancement if deemed appropriate) and the "percentage of the fund" method are available to district judges in calculating attorneys' fees in common fund cases. *See Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000).* As one court has noted, "the trend, however, in the Second Circuit appears to be the utilization of the percentage method." *Baffa v. Donaldson Lufkin & Jenrette Sec. Corp., 2002 U.S. Dist. LEXIS 10732, 96* Civ. 0583, *2002 WL 1315603,* at *1 (S.D.N.Y. June 17, 2002) (citing *In re American Bank Note, 127 F. Supp. 2d 418, 431 (S.D.N.Y. 2001)* ("Although the law in the Circuit has not been uniform, the trend of the [*24] district courts in this Circuit is to use the percentage of the fund approach to calculate attorneys' fees.").

*HN10* Traditional criteria in determining a reasonable common fund fee include: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *See Goldberger, 209 F.3d at 50.* Moreover, the Second Circuit recommends analyzing the documentation of the hours

---

[10]   According to one study that the plaintiffs cite, the average incentive award payment is between $ 1,000 and $ 5,000, which is considerably lower than the results in this case. *See* Sherrie R. Savett, et al., "Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Award Payments to Named Plaintiffs," 936 PLI/ Corp. 321 at 340 (1996) (citing fifty-two cases involving incentive awards payments and noting that the normal range of such awards is $ 1,000 to $ 5,000).

[11]   The attorneys' fees are the same as in the First Proposal, whereas the costs have increased primarily because of class counsels' consultations with Dr. Siskin.

2002 U.S. Dist. LEXIS 16314, *24

submitted by counsel as a "cross check" on the reasonableness of the requested percentage. *See id.*

The instant Settlement consists of $ 6.745 million in monetary relief to class members, an estimated $ 5 million in non-monetary, injunctive relief, $ 119,167 in incentive awards, and $ **[*25]** 295,637 in costs. Class counsel's request for $ 1,797,500 in fees, constitutes approximately 12.9% of the total settlement. These fees are proportionately within the sums allowed in other similar cases. *See, e.g., Ingram, 200 F.R.D. at 695* (allowing fees that constituted 20% of total cash settlement fund) (citing *Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768, 775 (11th Cir. 1991)*, which established a 25% recovery as an appropriate benchmark)); *In re Sumitomo Copper Litig., 74 F. Supp. 2d 393, 400 (S.D.N.Y. 1999)* (approving attorneys' fee award that constituted 27.5% of total settlement). Furthermore, I am inclined to accept the proposed fee award because it represents a compromise between the parties. *See id.* ("The Court should give substantial weight to a negotiated fee amount …").

I find the fairness and reasonableness of the fee award to be supported by the complexities of the case, the difficulty in proving promotional discrimination on a class-wide basis, the time devoted to the litigation, and the substantial class recovery. Based on the representations of class counsel as well as class counsels' ability to **[*26]** substantiate the fees and costs to my satisfaction, I approve of the requested fees and costs.

CONCLUSION

For the reasons stated above, the Settlement Class is certified, the Settlement is approved, and all claims against Con Ed are dismissed with prejudice as against those members of the Settlement Class who have not timely exercised their right to be excluded from the Settlement.

So Ordered.

JOHN GLEESON, U.S.D.J.

DATED: Brooklyn, New York

August 1, 2002

◆ Positive

As of: May 2, 2016 4:37 PM EDT

# *Varljen v. H.J. Meyers & Co.*

United States District Court for the Southern District of New York

November 6, 2000, Decided ; November 8, 2000, Filed

97 CIV. 6742 (DLC)

**Reporter**

2000 U.S. Dist. LEXIS 16205; 2000 WL 1683656

MARK VARLJEN, on behalf of himself and all others similarly situated, Plaintiffs, -v- H.J. MEYERS & CO., INC.; TOBIN J. SENEFELD; AMY M. BELL; WILLIAM F. MASUCCI; ROBERT J. SETTEDUCATI; MICHAEL BERGIN; JAMES A. VILLA; PALOMAR MEDICAL TECHNOLOGIES, INC.; STEVEN GEORGIEV; and JOSEPH CARUSO, Defendants.

**Disposition:**  [*1]  Class certified and Class Settlement as fair, adequate, and reasonable approved. Court awarded attorneys' fees in the amount of $ 800,000.00 cash and 89,000 shares of Palomar stock, Court awarded costs in the amount of $ 290,000.00.

## Core Terms

Settlement, attorneys', stock, plaintiffs', lodestar, class member, costs, Notice, proposed settlement, class action, citations, fees and costs, certification, parties, firms

## Case Summary

### Procedural Posture

The court considered the proposed settlement agreement between the parties in a class action suit with alleged violations of federal securities laws and state law, and lead plaintiffs' counsels' motions for attorney's fees.

### Overview

Lead plaintiff's brought a class action lawsuit, alleging violations of federal securities laws and state law by defendant firm and individuals. The court reasoned that plaintiffs' counsel had fairly and adequately protected the interests of the class. Lead plaintiffs were represented by counsel who were skilled in federal securities and class action litigation, and plaintiffs' counsel alleged that they know of no conflicts of interest among class members. The settlement was approved and attorneys' fees and costs are awarded. The court was satisfied that the settlement was fair, adequate, and reasonable, as it provided for recovery of approximately $ 5 million out of a generously estimated $ 29 million in total damages.

### Outcome

The class was certified and class settlement approved as fair, adequate, and reasonable. The court awarded attorneys' fees in the amount of $ 800,000.00 cash and 89,000 shares of stock, and awarded costs in the amount of $ 290,000.00 to the lead plaintiffs' counsel.

## LexisNexis® Headnotes

Civil Procedure > Special Proceedings > Class Actions > Certification of Classes

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Commonality

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Numerosity

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Typicality

*HN1* Pursuant to *Fed. R. Civ. P. 23(a)* plaintiffs must satisfy each of four prerequisites in order to secure class certification: numerosity, commonality, typicality, and adequacy of representation. In addition, plaintiffs must qualify under one of three criteria set forth in *Fed. R. Civ. P. 23(b)*.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Numerosity

*HN2* The class action requirement of numerosity is met if it is impracticable to join all class members.

Civil Procedure > ... > Class Actions > Class Members > Named Members

2000 U.S. Dist. LEXIS 16205, *1

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Commonality

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Typicality

*HN3* The class action commonality inquiry asks if the named plaintiffs' grievances share a common question of law or of fact with those of the proposed class. The focus of the typicality inquiry concerns whether each class member's claim arises from the same course of events, and whether each class member makes similar legal arguments to prove the defendant's liability.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

*HN4* A class is adequately represented when its counsel is qualified, experienced, and generally able to conduct the litigation.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

Civil Procedure > Special Proceedings > Class Actions > Judicial Discretion

Civil Procedure > Special Proceedings > Class Actions > Voluntary Dismissals

Civil Procedure > Settlements > Settlement Agreements > General Overview

*HN5* _Fed. R. Civ. P. 23(e)_ mandates court approval of any settlement or dismissal of a class action. The standard to be applied in determining whether to approve a class action settlement is well established: the district court must determine that it is fair, adequate, and reasonable, and not a product of collusion. In so doing, a court must eschew any rubber stamp approval, yet simultaneously stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case.

Civil Procedure > ... > Class Actions > Class Attorneys > General Overview

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

Civil Procedure > Special Proceedings > Class Actions > Judicial Discretion

Civil Procedure > Settlements > Settlement Agreements > General Overview

*HN6* In approving a settlement of a class action, district court must consider several factors, including the complexity of the litigation, comparison of the proposed settlement with the likely result of litigation, experience of class counsel, scope of discovery preceding settlement, and the ability of the defendant to satisfy a greater judgment. A court should also analyze the negotiating process in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves.

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

Civil Procedure > Settlements > Settlement Agreements > General Overview

*HN7* Public policy favors settlement, especially in the case of class actions. There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

*HN8* Where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to a reasonable fee set by the court to be taken from the fund.

Civil Procedure > ... > Class Actions > Class Attorneys > General Overview

Civil Procedure > ... > Class Actions > Class Attorneys > Fees

Civil Procedure > Special Proceedings > Class Actions > Judicial Discretion

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN9* Determination of reasonableness of attorney's fees is within the discretion of the district court. There are two methods by which the district court may calculate reasonable attorney's fees in class action cases, the lodestar or percentage method. Under either method, attention should be paid to the following factors: the time and labor expended by counsel, the magnitude and complexities of the litigation, the risk of the litigation, the quality of representation, the requested fee in relation to the settlement, and public policy considerations.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

Legal Ethics > Client Relations > Attorney Fees > Excessive Fees

2000 U.S. Dist. LEXIS 16205, *1

*HN10* Using the lodestar method to calculate attorney's fees, the court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate. The final step is to consider whether an enhancement of the lodestar is warranted, taking into account such factors as: (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN11* One method of determining attorney's fees is the much simpler percentage method, by which the fee award is simply some percentage of the fund created for the benefit of the class. This method has been found a solution to some problems raised by the lodestar method. The percentage method relieves the court of the cumbersome, enervating, and often surrealistic process of evaluation fee petitions. The percentage method decreases plaintiff lawyers' incentive to run up the number of billable hours for which they would be compensated by the lodestar method. The percentage method decreases the incentive to delay settlement because the fee for the plaintiffs' attorneys does not increase with delay.

**Counsel:** For Plaintiffs: Lee S. Shalov, Ralph M. Stone, Shalov Stone & Bonner, New York, NY.

For Palomar Medical Technologies and Joseph Caruso, Defendants: Gabrielle R. Wolohojian, Hale and Dorr LLP, Boston, MA.

Geoffrey S. Stewart, Jones, Day, Reavis & Pogue, Washington, DC.

For Steven Georgiev, Defendant: William H. Kettlewell, Dwyer & Collora, Boston, MA.

**Judges:** DENISE COTE, United States District Judge.

**Opinion by:** DENISE COTE

# Opinion

DENISE COTE, District Judge:

Plaintiffs petition for court approval of a proposed settlement and for an award of attorneys' fees and reimbursement of litigation costs and expenses. For the reasons discussed below, the settlement is approved and attorneys' fees and costs are awarded.

Plaintiffs filed this class action lawsuit on September 11, 1997, alleging violations of federal securities laws and state law. Defendant H.J. Meyers, Inc. (″HJM″) filed a motion to dismiss, which was denied on July 14, 1998. The parties **[*2]** began discovery, during which defendant HJM ceased doing business. A default against HJM was entered on January 8, 1999. On March 9, 1999, the Court granted plaintiffs permission to file a Second Amended Complaint naming Palomar Medical Technologies, Inc. (″Palomar″) and its officers Joseph Caruso and Steven Georgiev as defendants. The Court denied their motion to dismiss on August 6, 1999. Thereafter, discovery of the Palomar defendants began.

On July 5, 1999, the Court signed an order dismissing without prejudice defendant Amy M. Bell from this case. Individual settlements were reached between plaintiffs and Tobin J. Senefeld, William F. Masucci, Robert J. Setteducati, and Michael Bergin. The Court signs today a final judgment of dismissal for these four defendants. Defendants James A. Villa and HJM have filed for bankruptcy; the Court signs today a final judgment of dismissal for these two defendants.

On September 17, 1999, plaintiffs moved to certify the litigation as a class action pursuant to *Rule 23(b)(3), Fed. R. Civ. P.* It defined the class to include all persons or entities who purchased Palomar common stock from February 1, 1996 through and including March 26, 1997. The **[*3]** parties reached this proposed settlement with the remaining defendants -- Palomar, Caruso, and Georgiev -- before the motion for class certification was decided by the Court. According to their agreement, the Gross Settlement Fund was to be set at $ 5,040,750.00, representing a cash sum of $ 4,040,750.00 and Palomar stock valued at $ 1,000,000.00. As part of that Settlement, plaintiffs identified two separate periods for damages and broke the Class Period into two segments, one prior to and one subsequent to July 23, 1996. During the first segment, plaintiffs describe a substantial increase in the price of Palomar stock due to manipulation and unrelated to any news event. In contrast, the substantial decrease in the stock price on July 24, 1996, was apparently influenced by several publicized events occurring around that date, including a report issued by HJM lowering earnings projections for Palomar and HJM's agreement with the NASD to repay over $ 1 million in restitution for improper sales practices. Division of the class into two periods is corroborated by a corresponding decline in the volatility of Palomar stock around July 24, 1996. Plaintiffs

have attributed a $ 1.50 inflationary [*4] effect to the price of Palomar stock in the first period and a $ 0.30 inflationary effect on the price in the second period.

On May 18, 2000, the parties executed the Stipulation of Settlement. On June 19, 2000, the Court entered an Order which, among other things, certified a Class for the purposes of Settlement and scheduled a hearing for October 27, 2000 on the proposed Settlement and the application for attorneys' fees and costs.

Plaintiffs sent a detailed notice of the proposed Settlement to over 24,000 identified class members on or about June 28, 2000, and published a summary notice in the national edition of *The Wall Street Journal* on June 30, 2000. The Notice was also available on the internet.

The Notice also advised that plaintiffs' counsel intended to apply to the Court for expenses as well as for attorneys' fees not in excess of 33% of the Settlement Fund. The Notice instructed Class members how to opt-out of the Settlement and informed members that they could serve and file objections to the Settlement or to plaintiffs' counsel's fee application or both. As of October 27, 2000, no class members had opted-out or objected. I find that the notice provided by plaintiffs [*5]  was adequate pursuant to *Rule 23(c)(2), Fed. R. Civ. P.*

On October 27, 2000, this Court held a fairness hearing in order to discuss class certification, settlement approval, and attorneys' fees and costs. No class members appeared at the fairness hearing. This Court indicated that it would certify the class as defined [1] and approve the Settlement. It agreed to take further submissions on the issue of attorneys' fees and costs.

Subsequent to the fairness hearing, the parties agreed that the attorneys' fees would be paid out in both cash and Palomar stock. The parties further agreed that the Palomar stock component of the Gross Settlement Fund was the equivalent of 447,547 shares, based on the average closing price of Palomar stock on the ten trading days prior to the fairness hearing on October 27, 2000.

## [*6] I. STANDARD FOR CLASS CERTIFICATION

*HN1* Pursuant to *Rule 23(a), Fed. R. Civ. P.*, plaintiffs must satisfy each of four prerequisites in order to secure class certification: numerosity, commonality, typicality, and

adequacy of representation. *Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997); Blyden v. Mancusi, 186 F.3d 252, 269 (2d Cir. 1999).* In addition, plaintiffs "must qualify under one of three criteria set forth in *Rule 23(b).*" *Marisol v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997).* In this case, plaintiffs seek certification under *Rule 23(b)(3)*, based on the questions of law and fact common to the members of the class.

### A. *Numerosity*

*HN2* The requirement of numerosity is met if it is impracticable to join all class members. *Marisol, 126 F.3d at 376.* Notice was sent to 24,461 Class members as of October 12, 2000, indicating a class numbering in the thousands. I find that the class would be too numerous to make joinder practicable.

### B. *Commonality*

The plaintiffs allege several questions of law or fact common to the class: that the defendants engaged in an elaborate [*7] scheme to artificially inflate and manipulate the prices at which Palomar stock was sold to the investing public; that the defendants engaged in a course of conduct that inflated and maintained the price of Palomar stock at artificial levels; that the scheme included the widespread dissemination of materially false and misleading reports about the Company as well as numerous improper broker promotions; and that the scheme included payments to brokers at other firms to promote the Company's stock. These common questions satisfy *Rule 23(a)(2).*

### C. *Typicality*

The requirements of commonality and typicality "tend to merge into one another." *Marisol, 126 F.3d at 376.* While *HN3* the commonality inquiry asks if the named plaintiffs' "grievances share a common question of law or of fact" with those of the proposed class, *id.*, the focus of the typicality inquiry concerns whether "each class member's claim arises from the same course of events, and [whether] each class member makes similar legal arguments to prove the defendant's liability," *id.* (internal citations omitted).

The plaintiffs' claims stem from similar events and rely on similar legal arguments. Accordingly, [*8] *Rule 23(a)(3)* is satisfied.

### D. *Adequacy of Representation*

---

[1]   The Court addressed the issue of sub-classes during the fairness hearing and was satisfied that sub-classes were not necessary where, as in this case, the class was notified and no objections were made.

Erick Diaz

2000 U.S. Dist. LEXIS 16205, *8

*HN4* A class is adequately represented when its counsel "is qualified, experienced, and generally able to conduct the litigation." *Marisol, 126 F.3d at 378*. Plaintiffs must also show that there is no conflict of interest between the named plaintiffs and other members of the class.

The Court has confidence that plaintiffs' counsel has fairly and adequately protected the interests of the class. Plaintiffs are represented by counsel who are skilled in federal securities and class action litigation. In addition, plaintiffs' counsel allege that they know of no conflicts of interest among class members.

## II. STANDARD FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS UNDER *RULE 23(e)*

*HN5* *Rule 23(e), Fed. R. Civ. Pro.*, mandates court approval of any settlement or dismissal of a class action. The standard to be applied in determining whether to approve a class action settlement is well established: the district court must determine that it is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000)*. In so doing, the court must "eschew [*9] any rubber stamp approval" yet simultaneously "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp., 495 F.2d 448, 462 (2d Cir. 1974)*.

*HN6* The district court must consider several factors, including "the complexity of the litigation, comparison of the proposed settlement with the likely result of litigation, experience of class counsel, scope of discovery preceding settlement, and the ability of the defendant to satisfy a greater judgment." *In re the Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 292 (2d Cir. 1992)* (internal citations omitted). The court should also analyze the negotiating process in light of "the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *Malchman v. Davis, 706 F.2d 426, 433 (2d Cir. 1983)* (internal citations omitted).

Finally, *HN7* public policy favors settlement, especially in the case of class actions. "There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy [*10] favoring the settlement of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

Turning to the substantive terms of the proposed Settlement, which need not be restated in this Opinion, the Court is satisfied that the Settlement is fair, adequate, and reasonable. The Settlement provides for recovery of approximately $ 5 million out of a generously estimated $ 29 million in total damages. Plaintiffs originally filed this case against HJM. After HJM ceased to do business, plaintiffs filed a Second Amended Complaint which included the Palomar defendants. Genuine hurdles exist for plaintiffs in their suit against Palomar. Significantly, Palomar, a fledgling research and development company, may also enter bankruptcy if faced with a judgment significantly greater than is proposed here. Further, it will be more difficult to prove Palomar's liability than HJM's. Plaintiffs will have the burden of establishing Palomar's knowledge of and involvement in HJM's misconduct. Finally, the litigation is admittedly complex and will necessitate expensive expert testimony. There are also serious questions about the reliability of the damage calculation on which plaintiffs [*11] have relied. In particular, the plaintiffs would have had to address the defendants' evidence that Palomar's stock price was reacting during the relevant period to forces affecting its industry.

## III. ATTORNEYS' FEES AND COSTS

It is well established that *HN8* where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to "a reasonable fee -- set by the court -- to be taken from the fund." *Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000)* (citing *Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980))*. *HN9* Determination of "reasonableness" is within the discretion of the district court. *Id*. There are two methods by which the district court may calculate reasonable attorney's fees in class action cases, the lodestar or percentage method. Under either method, attention should be paid to the following factors: the time and labor expended by counsel, the magnitude and complexities of the litigation, the risk of the litigation, the quality of representation, the requested fee in relation to the settlement, [*12] and public policy considerations. *See 209 F.3d at 50* (internal citations omitted).

*HN10* Using the lodestar method, the court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Id. at 47* (internal citations omitted). The final step is to consider whether an enhancement of the lodestar is warranted, taking into account

such factors as: (i) the contingent nature of the expected compensation for services rendered; (ii) the consequent risk of non-payment viewed as of the time of filing the suit; (iii) the quality of representation; and (iv) the results achieved.

*In re Boesky, 888 F. Supp. 551, 562*; *see also Goldberger, 209 F.3d at 47*; *Savoie v. Merchants Bank, 166 F.3d 456, 460 (2d Cir. 1999)*(applying the lodestar steps).

*HN11* The second method is the much simpler percentage method, by which the fee award is simply some percentage of the fund created for the benefit of the class. *See Savoie, 166 F.3d at 460*. This method has been found a solution to some problems raised by the lodestar method. First, it "relieves [*13] the court of the cumbersome, enervating, and often surrealistic process of evaluation fee petitions." *Id. at 461 n.4* (internal citations and quotations omitted). Second, it decreases plaintiff lawyers' incentive to "run up the number of billable hours" for which they would be compensated by the lodestar method. *Id. at 460-61*. And finally, it decreases the incentive to delay settlement because the fee for the plaintiffs' attorneys does not increase with delay. *See id. at 461*.

Plaintiffs' counsel requests a 33% fee, resulting in an award of $ 1,663,447.50. It uses the lodestar method as a cross-check of its proposed fee, calculating a total of $ 1,029,298.25 from over 2500 hours worked at a variety of hourly rates from seven law firms. The lodestar figure for the firm representing the lead plaintiffs and their bankruptcy counsel, however, is $ 788,844.25. A lodestar multiplier of 1.6 is used to reach the 33% amount of $ 1,646,877.20 for the seven law firms. The corresponding figure for the lead plaintiffs and their bankruptcy counsel is $ 1,262,150.80.

Five law firms beyond lead counsel and their bankruptcy counsel sought attorneys' [*14] fees in the amount of $ 240,454.00. I have reviewed descriptions of their work and, to the extent that the work is non-duplicitous and merits reimbursement, I have valued the work as reasonably supporting an award of no more than $ 60,000.

Plaintiffs' counsel further requests $ 173,692.72 in costs incurred. Plaintiffs' counsel's costs include expert fees of $ 54,519.33, settlement administration fees of $ 64,355.00, as well as an array of mailing, photocopies, telecopier, telephone, computer research, and other like costs. The costs incurred by lead counsel and their bankruptcy counsel, however, are $ 150,811.47. It is estimated that an additional $ 138,362.00 will be needed for settlement administration. I

find that total costs not in excess of $ 290,000.00 are fair and reasonable. [2]

[*15]   Balancing the relevant factors enumerated in *Goldberger*, I award an attorneys' fee of approximately 20% of the cash sum and of the Palomar stock, or $ 800,000.00 in cash and 89,000 shares. This is a relatively generous percentage given the fact that there has been no trial and not even full discovery. This amount reflects an amount between an unexamined lodestar figure for principal counsel -- albeit one without any enhancement -- and the 33% fee requested and, I believe, adequately recognizes the efforts of counsel and the risks and complexities of this litigation while ensuring sufficient remaining funds for distribution to Class members. The attorneys' fee also recognizes the considerable public benefit from adding the pressure of this lawsuit to whatever other pressures drove H.J. Meyers & Co. from business.

I also award costs in the amount of $ 290,000.00, which includes the total costs for principal counsel and their bankruptcy counsel as well as the estimate of future settlement administration costs. I decline to award costs to the remaining five law firms.

## CONCLUSION

For the aforementioned reasons, I hereby certify the Class and approve the Class Settlement as [*16] fair, adequate, and reasonable. I award attorneys' fees in the amount of $ 800,000.00 cash and 89,000 shares of Palomar stock. I award costs in the amount of $ 290,000.00.

It is my judgment that plaintiffs' counsel have been diligent and responsible in this litigation and have served the class with vigor, dedication and professionalism.

SO ORDERED:

Dated: New York, New York

November 6, 2000

DENISE COTE

United States District Judge

---

[2]   Plaintiffs Mark Varljen and Simon Becker requested lost wages in the amounts of $ 880.00 and $ 1,800.00, respectively. Pursuant to 15 U.S.C. § 78u-4(a)(4), I have approved this award in principle as it encourages participation of plaintiffs in the active supervision of their counsel. Their claims have been considered in the award of costs.

 Positive

As of: May 2, 2016 4:04 PM EDT

# *Velez v. Majik Cleaning Serv.*

United States District Court for the Southern District of New York

June 22, 2007, Decided

03 Civ. 8698 (SAS)(KNF)

**Reporter**

2007 U.S. Dist. LEXIS 46223; 2007 WL 7232783

GLADYS VELEZ and NANCY MENDEZ LEAL, individually and on behalf of all other persons similarly situated who were employed by Majik Cleaning Service, Inc. and/or any other entities affiliated with or controlled by Majik Cleaning Service, Inc., Plaintiffs, -against- MAJIK CLEANING SERVICE, INC., JESSE TIEMAN, ANDREW FEINSTEIN, and MICHAEL STEINBERG, Defendants.

**Subsequent History:** Adopted by *Velez v. Majik Cleaning Serv., 2007 U.S. Dist. LEXIS 103091 (S.D.N.Y., Aug. 20, 2007)*

**Prior History:** *Velez v. Majik Cleaning Serv., 2005 U.S. Dist. LEXIS 709 (S.D.N.Y., Jan. 18, 2005)*

## Core Terms

parties, settlement, proposed settlement, class member, lead counsel, settlement fund, Cleaning, plaintiffs', compensate, risks, class action, negotiated, settlement proposal, Notice, attorney's fees, claimants, discovery, additional hour, approving, defendants', damages, time period, expended, factors, costs, terms, class representative, performing work, RECOMMENDATION, depositions

**Counsel:** **[*1]** For Gladys Velez, individually, Gladys Velez, on behalf of all other persons similarly situated who were employed by Majik Cleaning Service, Inc. and/or any other entities affiliated with or controlled by Majik Cleaning Service, Inc., Nancy Mendez Leal, individually, Nancy Mendez Leal, on behalf of all other persons similarly situated who were employed by Majik Cleaning Service, Inc. and/or any other entities affiliated with or controlled by Majik Cleaning Service, Inc., Plaintiffs: Dennis M. Cariello, LEAD ATTORNEY, Barnes Iaccarino Virginia et al., New York, NY; Lloyd Robert Ambinder, Scott Everett Aurnou, Baldinger & Levine, LLC, Mineola, NY.

Sekou Sangare, Plaintiff, Pro se.

Marie Valarezo, Plaintiff, Pro se.

Marvin Goode, Plaintiff, Pro se.

Ana Infante, Plaintiff, Pro se.

Etrice Douglas Haynes, Plaintiff, Pro se.

Ummu Braimah, Plaintiff, Pro se.

Kokou Doumassi, Plaintiff, Pro se.

Barry Abou Oumar, Plaintiff, Pro se.

Ramata LeLenta, Plaintiff, Pro se.

Amrani Saidi, Plaintiff, Pro se.

Kenia Benitez, Plaintiff, Pro se.

Ana Santana, Plaintiff, Pro se.

Herminia Rodriguez, Plaintiff, Pro se.

Ramatu Mohammed, Plaintiff, Pro se.

Sandatu Salifu, Plaintiff, Pro se.

Wander Sanchez, Plaintiff, Pro se.

Fatou **[*2]** Jobe, Plaintiff, Pro se.

Sainey Sabally, Plaintiff, Pro se.

For Mohamad L. Sillah, Abdul-Salam C. Ouboedeji, Ramatoulie Saho, Yuderky Abreu, Jisela De La Rosa, Luis Antonio Saquisela, Virgilia Lopez, Alicia Gonzalez, Maria Rivera, Maria E. Caracas, Gladys Mojica, Apolinar Sanchez, Elicia Solano, Maria Martinez, Rosa Vega, Ameyo Kmedehouto, Diakite Fatoumata, Safi T. Diarra, Saran Kaba, Haja Tunkara, Mamady Magassouba, Komla Gbolo, Aissatou Drame, Plaintiffs: Dennis M. Cariello, LEAD

2007 U.S. Dist. LEXIS 46223, *3

ATTORNEY, Barnes, Iaccarino, Virginia, Ambinder & Shepherd, P.L.L.C., New York, NY.

For Kande Bagigah, Coumbe Travepe, Assamatou Diarra, Abdou K. Kane, Plaintiffs: Dennis M. CarielloDennis M. Cariello Barnes, Iaccarino, Virginia, Ambinder & Shepherd, P.L.L.C., New York, NY.

For Majik Cleaning Service, Inc., Defendant: Gerald D. Silver, LEAD ATTORNEY, Winston & Strawn LLP (NY), New York, NY; Perry Stuart Heidecker, Milman & Heidecker, New Hyde Park, NY.

For Jessie Tieman, Defendant: Gerald D. Silver, LEAD ATTORNEY, Winston & Strawn LLP (NY), New York, NY.

For Wendy Espinal, Defendant: Dennis M. Cariello, LEAD ATTORNEY, Barnes Iaccarino Virginia Ambinder & Shepherd, P.L.L.C., New York, NY.

For Saidi Amrani, Marra Assanatani, Diarra **[\*3]** Safi, All Plaintiffs: Lloyd Robert Ambinder, Baldinger & Levine, LLC, Mineola, NY.

**Judges:** KEVIN NATHANIEL FOX, UNITED STATES MAGISTRATE JUDGE. HONORABLE SHIRA A. SCHEINDLIN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** KEVIN NATHANIEL FOX

# Opinion

## REPORT & RECOMMENDATION

KEVIN NATHANIEL FOX

UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE SHIRA A. SCHEINDLIN, UNITED STATES DISTRICT JUDGE.

## I. INTRODUCTION

Gladys Velez ("Velez") and Nancy Mendez Leal ("Leal"), individually and on behalf of all other persons similarly situated ( "plaintiffs"), brought this action against Majik

Cleaning Service, Inc. ("Majik Cleaning"), Jessie Tieman ("Tieman"), Andrew Feinstein ("Feinstein") and Michael Steinberg ("Steinberg") (collectively "defendants") to recover unpaid compensation owed to them. The plaintiffs, who are or were employed by Majik Cleaning as janitorial and cleaning workers, contend the defendants violated provisions of the Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYLL"), by failing to compensate them appropriately for all the hours they performed work for the defendants.

In January 2005, the court certified this action as a collective action, pursuant to *29 U.S.C. § 216(b)*, in connection with the **[\*4]** plaintiffs' FLSA claims, and as a class action, pursuant to *Fed. R. Civ. P. 23(a)* and *(b)(3)*, in connection with the plaintiffs' NYLL claims. As approved by the court, the class includes all "individuals including past [and] present employees of Majik Cleaning Service, Inc., who performed janitorial, office cleaning, residential cleaning, corporate apartment cleaning and/or other general cleaning work, and all non-administrative work incidental thereto performed" for Majik Cleaning from 1997 through 2003. See *Velez v. Majik Cleaning Serv., No. 03 Civ. 8698, 2005 U.S. Dist. LEXIS 709, 2005 WL 106895, at \*1 (S.D.N.Y. Jan. 19, 2005)*. The law firm of Barnes, Iaccarino, Virginia, Ambinder & Shepherd, PLLC was designated lead counsel ("Lead Counsel") by the court. Approximately one year later, the parties reached a settlement. Thereafter, Lead Counsel sought the court's approval of the settlement. The court approved the parties' settlement, preliminarily, and your Honor referred the action to the undersigned magistrate judge so that a hearing ("Fairness Hearing") could be held to determine whether final approval of the proposed settlement is warranted because it is fair, adequate and reasonable. [1]

## II. BACKGROUND

As noted above, the plaintiffs maintain the defendants failed to compensate them appropriately for the work they performed between 1997 and 2003. The defendants steadfastly deny the plaintiffs' allegation. However, the defendants have agreed to compensate the class members monetarily, and resolve the parties' dispute, to avoid the considerable expense and inconvenience that continuing to litigate this action will cause and to avoid the risk of having a judgment obtained at a trial that exceeds the amount of the proposed settlement fund. In consideration of the defendants'

---

[1]   "Review of a proposed **[\*5]** class action settlement generally involves a two-stage process: preliminary approval and a subsequent 'fairness hearing'….If the court preliminarily approves the settlement, it then must direct the preparation of notice informing class members of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *In re Initial Pub. Offering Sec. Litig., No. 01 Civ. 3020, 243 F.R.D. 79, 2007 U.S. Dist. LEXIS 19632, 2007 WL 656880, at \*4-5 (S.D.N.Y. Feb. 28, 2007).*

Erick Diaz

agreement to pay a monetary award to each class member, the plaintiffs have agreed to dismiss this action with prejudice.

The defendants **[\*6]** agreed, initially, to establish a $ 220,000 settlement fund. Of that amount, $ 195,000 was to be set aside to pay the FLSA collective action claimants, as well as attorney's fees and costs, while $ 25,000 was to be set aside to pay the NYLL claimants. [2] Under the terms of the parties' agreement to settle the action, each class member would have received compensation for five additional hours of work, per week, during the time period(s) relevant to this action. The additional hours of work were to be compensated at each employee's hourly rate of pay for up to forty hours of work performed, per week, and at one-and-one-half times the employee's hourly rate of pay for work performed in excess of forty hours per week. Velez and Leal were to be compensated for ten hours of work, per week, for the time period(s) relevant to this action. The additional five hours of compensation that Velez and Leal were slated to receive was negotiated for them by Lead Counsel to compensate Velez and Leal for the effort and time they expended representing the class. Under the terms of the settlement agreement, the defendants agreed to pay the plaintiffs' attorney's fees, in an amount not to exceed $ 75,000. **[\*7]** The defendants agreed further to compensate the plaintiffs for the costs they incurred in bringing the action, in an amount not to exceed $ 13,000.

On March 31, 2006, the court approved the parties' settlement proposal, preliminarily. Thereafter, a Notice of Settlement (the "Notice") was sent to all class members. In the Notice, class members were directed to file either a Proof of Claim Form or an objection to the settlement, on or before May 26, 2006. Class members were also notified that a Fairness Hearing would be conducted by the Court on June 16, 2006.

The Fairness Hearing commenced on June 16, 2006. During the hearing, the parties notified the Court that, in response to the Notice, more NYLL claims were made than the parties had anticipated when they negotiated the settlement. As a result of the volume of unanticipated claims, the amount set aside originally to fund the settlement was insufficient to compensate all the claimants. Therefore, the **[\*8]** parties requested additional time to: (a) review the Proof of Claims Forms that had been submitted by the class members; and (b) discuss the feasibility of having the defendants increase the size of the settlement fund. The Court granted the parties' request and adjourned the hearing, *sine die*.

On November 21, 2006, the parties submitted a revised Notice of Settlement for the Court's approval. Pursuant to the parties' revised settlement proposal, a settlement fund of $ 235,000 would be established by the defendants. The parties agreed that $ 195,000 of the settlement fund would be set aside for the plaintiffs' FLSA claims, attorney's fees and costs, while $ 40,000 would be set aside for the plaintiffs' NYLL claims. In addition to increasing the size of the settlement fund, the parties agreed to reduce the attorney's fees and costs sought to $ 74,771.77. Pursuant to the terms of the revised settlement proposal, the FLSA claimants will receive 100 percent of the value of their claims, based on the understanding that each employee would receive five additional hours of compensation for each week worked during the relevant time period. The NYLL claimants would receive 93 percent of the **[\*9]** value of their claims, based on the same understanding: that each employee would receive five additional hours of compensation for each week worked during the relevant time period.

On January 19, 2007, the Court approved the plaintiffs' second Notice. Class members had until March 12, 2007, either to opt-out of the action or to file objections to the revised settlement proposal. A Fairness Hearing was rescheduled for March 20, 2007.

On March 20, 2007, the Court resumed the Fairness Hearing. None of the class members attended the hearing. The Court was advised that no objections to the revised settlement proposal had been received by Lead Counsel prior to the hearing.

During the hearing, Lead Counsel explained that the parties determined that five additional hours of compensation for each week worked during the relevant time period(s) was a fair and reasonable estimate of the alleged damages incurred by the class members. Lead Counsel explained further that, due to its inability to determine the actual number of hours worked, for which each class member claimed to have been underpaid, an average number of hours for which the class members alleged to have been underpaid was used to achieve **[\*10]** the agreed upon payment by the defendants of the five additional hours of compensation discussed above. Lead Counsel noted that, although the parties had intended to compensate class members fully for their FLSA and NYLL claims, using the five-hours per week formula, as a result of the negotiations, the NYLL claimants will be compensated at a rate that is 93 percent of the value of their claims.

---

[2]   At the time the parties reached a settlement, in March 2006, 47 individuals had opted to participate in the FLSA collective action. The number of NYLL claimants was unknown, since notice had not yet been provided to the class members.

2007 U.S. Dist. LEXIS 46223, *10

Counsel for both parties urged the Court to recommend approval of the settlement proposal, despite the fact that the NYLL claimants would not be compensated fully for their claims. According to counsel to the parties, the difference between 100 percent compensation and 93 percent compensation is a "small compromise," which, under the circumstances, was reasonable in light of the efforts made by the defendants and Lead Counsel to achieve the maximum level of compensation for the NYLL claimants. These efforts included the defendants' agreement to increase the size of the settlement fund and Lead Counsel's agreement to reduce its fees.

Lead Counsel stated, at the Fairness Hearing, that Velez and Leal would receive five additional hours of compensation for each week worked, because of the effort [*11] and time they expended representing the class in this litigation. Lead Counsel emphasized the fact that Velez and Leal spent over four years working with Lead Counsel as the litigation progressed and, during that time, among other things, each underwent two lengthy depositions.

In discussing the benefits of settling the action under the terms of the parties' proposed settlement agreement, Lead Counsel explained that, if the case were to proceed to trial, it would be an extremely costly endeavor because of counsel's need to perform an extensive document review and the need of the plaintiffs to use expert witnesses at the trial. The defendants' counsel concurred and noted that the defendants would also have to employ expert witnesses at the trial to rebut the plaintiffs' proof.

Counsel for the defendants informed the Court that Majik Cleaning was facing financial hardship, as a result of the litigation, and that, although it had set aside funds to meet its financial obligations under the terms of the proposed settlement, it would not be able to withstand the obligation of paying a judgment that was greater than the amount of the settlement fund, if the plaintiffs were successful at a [*12] trial.

Lead Counsel maintained that, the amount of discovery involved in the action, including, *inter alia* the exchange of interrogatories; the review of documents; the re-creation of electronic data that had been destroyed, inadvertently; and the depositions that have been conducted of the parties, as well as the motion practice in which it had engaged, and the

lengthy negotiation sessions in which it participated with opposing counsel in attempting to reach a negotiated disposition, make the fees it is seeking, for legal services, reasonable.

## III. CONCLUSIONS OF LAW

*Fed. R. Civ. P. 23(e)* governs the settlement of class actions and requires court approval before a settlement is executed. [3] Moreover, adequate notice of any proposed settlement of a class action must be provided and the proposed settlement must be the subject of a hearing at which the fairness, adequacy and reasonableness of the proposed settlement is explored and determined by the court. See *Fed. R. Civ. P. 23(e)(1)*. "The reason that judicial approval of the settlement of such an action is required . . . is that the negotiator on the plaintiffs' side, that is, the lawyer for the class, is potentially an unreliable agent [*13] of his principals." *Parker v. Time Warner Entm't Co., L.P., 239 F.R.D. 318, 336 (E.D.N.Y. 2007)* (quoting *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co. of Chicago, 834 F.2d 677, 681 [7th Cir. 1987])*.

A court may approve a settlement that is binding on the class only if it determines that the settlement is "fair, adequate, and reasonable" and not a "product of collusion." *Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000)*. In doing so, the court must consider both the procedural and substantive fairness of the settlement. See *D'Amato v. Deutsche Bank, 236 F.3d 78, 85-86 (2d Cir. 2001)*.

*Procedural Fairness*

In evaluating [*14] procedural fairness, a court must consider both "the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005)*. "A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *D'Amato, 236 F.3d at 85* (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 74 [2d. Cir. 1982]).

In the instant case, several factors support a finding that the parties' settlement proposal is the product of a fair procedure. For example, counsel to both parties are experienced

---

[3] Similarly, "[b]efore the court may approve a settlement in a collective action brought under the FLSA, it must first determine whether the settlement involves the resolution of a bona fide dispute over an FLSA provision and then decide whether the settlement is fair and reasonable." *Camp v. Progressive Corp., No. Civ.A. 01-2680, Civ.A 03-2507, 2004 U.S. Dist. LEXIS 19172, 2004 WL 2149079, at *4 (E.D. La. Sept. 23, 2004)* (citing *Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-55 [11th Cir. 1982]*).

2007 U.S. Dist. LEXIS 46223, *14

litigators. Moreover, Lead Counsel has represented parties in numerous class actions successfully, and has considerable experience in labor-law cases similar to the case at bar. See *Velez, 2005 U.S. Dist. LEXIS 709, 2005 WL 106895, at *5*. In addition, the parties litigated aggressively for more than two years before reaching a settlement. Furthermore, the parties conducted depositions, exchanged document requests **[*15]** and interrogatories and engaged in motion practice. The parties also participated in extensive settlement discussions under the Court's supervision and independent of the Court, before crafting the instant settlement proposal. Moreover, nothing in the record before the Court indicates that the proposed settlement has been achieved through fraudulent or collusive conduct. All of these factors militate in favor of finding that the parties' proposed settlement agreement resulted from a fair procedure.

*Substantive Fairness*

The Second Circuit has identified nine factors to aid courts in evaluating the substantive fairness of a proposed class action settlement:

(1) the complexity; expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the **[*16]** settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974)* (citations omitted).

(1) *The Complexity, Expense and Likely Duration of the Litigation*

The claims in the instant case are not inherently complex. However, the Court is mindful of: (i) the particular difficulties the parties experienced litigating this case because of their inability to determine the precise numbers of hours for which the plaintiffs allege they were not compensated appropriately; and (ii) the extraordinary work that had to be performed during the pretrial discovery phase of the litigation, owing to the inadvertent destruction of data that was stored electronically. While the instant class action may be less complex than others, there are always risks in

proceeding to trial and these risks are compounded by virtue of the nature of class action litigation. See *Frank v. Eastman Kodak Co., 228 F.R.D. 174, 185 (W.D.N.Y. 2005)*.

During the Fairness Hearing, Lead Counsel advised the Court that if the action were to proceed to trial, the expense associated with that phase of the litigation would approach $ 40,000. Lead **[*17]** Counsel explained that this was so because of the document-intensive analysis that would have to be performed and the need of the parties to retain and elicit opinions from expert witnesses. Counsel to the defendants did not disagree with that assessment.

The disposition the parties have negotiated will provide an immediate award to the plaintiffs and obviate the need for the parties to incur additional legal expenses. Moreover, even if the plaintiffs were successful at a trial, the potential for an appeal from the judgment exists. Appellate litigation would inevitably result in additional delay and would cause the parties to incur additional expenses. Therefore, the Court finds that the expense to the parties and the likely delay additional litigation would engender, militate in favor of approving the parties' proposed settlement.

(2) *Reaction of the Class to Settlement*

Notice of the proposed settlement was provided to all class members. As of March 12, 2007, the deadline on which objections by class members were to be sent to Lead Counsel, no objections had been made. Furthermore, as noted earlier in this writing, none of the class members attended the Fairness Hearing to express **[*18]** his or her opposition to the settlement proposal. Since no adverse reaction to the proposed settlement has been expressed by any class member, the Court finds that this factor weighs in favor of approving the proposed settlement.

(3) *Stage of Proceedings and Amount of Discovery Completed*

"The stage of the proceedings and the amount of discovery the parties have conducted is 'relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness.'" *Monaco v. Carpinello, No. CV-98-3386, 2007 U.S. Dist. LEXIS 28990, 2007 WL 1174900, at *8 (E.D.N.Y. Apr. 19, 2007)* (quoting *In re Painewebber Ltd. Pshps. Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997)*). In the instant case, the parties have engaged in substantial pretrial discovery, including the production of documents, the oral examination of witnesses and the exchange of interrogatories. The parties have also

engaged in motion practice. The Court finds, based on the above, that the parties have gathered information of a sufficient quantity, during the pretrial discovery phase of the litigation to permit them to assess the strengths and weaknesses of the claims that [*19] have been asserted and their respective positions. Consequently, the Court finds further that the instant factors weigh in favor of the proposed settlement.

*(4) Risks of Establishing Liability and Risks Establishing Damages*

"Litigation inherently involves risks." *Banyai v. Mazur, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 22342, 2007 WL 927583, at *9 (S.D.N.Y. March 27, 2007)*. In the case at bar, the plaintiffs' ability to establish the defendants' liability and to prove their damages at a trial is not free from doubt. This is so, in part, because of the difficulty their counsel has encountered in determining the actual number of hours worked for which each class member claimed to have been underpaid. The proposed settlement benefits each plaintiff in that he or she will recover a monetary award immediately, without having to risk that an outcome unfavorable to the plaintiffs will emerge from a trial. Therefore, the Court finds that these factors weigh in favor of approving the settlement proposal.

*(5) Risks of Maintaining the Class Action Through Trial*

The plaintiffs' motion for class certification was not opposed by the defendants. Furthermore, during the Fairness Hearing, counsel to the defendants noted that the [*20] value of many of the plaintiffs' claims was so small that it would be inefficient to pursue those claims outside of a class action. Accordingly, in the context of this case, this factor is of little relevance, in determining whether the parties' final settlement proposal should be approved.

*(6) Ability of the Defendants to Withstand a Greater Judgment*

"Evidence that a defendant will not be able to pay a greater judgment at trial than the amount offered in settlement tends to weigh in favor of approval of settlement, since the 'prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone involved in the use of class action procedures.'" *Banyai, 2007 U.S. Dist. LEXIS 22342, 2007 WL 927583, at *11* (quoting *In re Warner Communs. Sec. Litig., 618 F. Supp. 735, 746 [S.D.N.Y. 1985]* [citation omitted]).

During the Fairness Hearing, the defendants' counsel proffered that Majik Cleaning is a "very small company"

that lacks "capital assets." Thus it was his understanding that a judgment in excess of the settlement amount would likely destroy the corporate entity and force the plaintiffs to seek recovery against the individually named defendants. The defendants' counsel explained that such an [*21] exercise "would be a protracted affair." Nothing in the record generated at the Fairness Hearing suggests that Majik Cleaning's circumstances are different from those proffered by its counsel. Therefore, the Court finds that this factor militates in favor of approving the proposed settlement.

*(7) Range of Reasonableness of the Settlement Fund In Light of the Best Possible Recovery and In Light of All the Attendant Risks of Litigation*

"Fundamental to analyzing a settlement's fairness is 'the need to compare the terms of the compromise with the likely rewards of litigation.'" *Banyai, 2007 U.S. Dist. LEXIS 22342, 2007 WL 927583, at *11* (quoting *Weinberger, 698 F.2d at 73*). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell Corp., 495 F.2d at 455*.

The proposed settlement compensates the plaintiffs for five additional hours of work performed for each week of the relevant time period(s). Although the plaintiffs might be able to obtain a greater award, based on their actual damages and liquidated damages, if they were to succeed at a trial, it is possible that [*22] several more years could elapse before the plaintiffs received any benefit from their litigation efforts. Moreover, the possibility exists that the plaintiffs would not be able either to establish the defendants' liability or to prove their damages at a trial. In contrast, the proposed settlement eliminates these risks and provides a substantial and immediate benefit to the class members. This reality supports approving the parties' proposed settlement.

*Incentive Payment to Class Representatives*

"Incentive awards are not uncommon in class action cases and are within the discretion of the court. In calculating incentive [payments], courts consider:

'the existence of special circumstances including the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens

2007 U.S. Dist. LEXIS 46223, *22

sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery.'"

*Frank, 228 F.R.D. at 187* (quoting *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200 [S.D.N.Y. 1997]). [**\*23**] Moreover, "[i]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Id.* at 187 (citation omitted).

Through their service as class representatives, Velez and Leal exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers because Velez and Leal determined to pursue this action on behalf of the class. As class representatives, Velez and Leal dedicated a significant amount of time, over several years, to working with and monitoring the work of Lead Counsel. In addition, they became active participants in the pretrial discovery activities by, among other things, undergoing lengthy depositions. The risks to which Velez and Leal allowed themselves to be exposed, as the class representatives, and the effort they expended on behalf of all class members, justifies their receipt of an incentive award. In this case, that means that Velez and Leal will receive twice the amount of the award that other class members will receive. [**\*24**] In the circumstance of the case at bar, providing for an incentive payment to be made to the class representatives is reasonable and appropriate.

*Attorney's Fees*

"Courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *Wal-Mart Stores, Inc., 396 F.3d at \*121* (citation omitted). "The lodestar method multiplies hours reasonably expended against a reasonable hourly rate." *Id.* "The trend in this Circuit is toward the percentage method, *Visa Check III, 297 F. Supp. 2d [503], 520 [E.D.N.Y. 2003],* which "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Id.* (quoting *In re Lloyd's Am. Trust Fund Litig., No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at \*25 [S.D.N.Y. Nov. 26, 2002]).*

Irrespective of which method is used, the following factors determine the reasonableness of attorney's fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public [**\*25**] policy considerations." *Id.* (alteration in original) (citing to *Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 [2d Cir. 2000]).*

The proposed settlement provides for an award of attorney's fees of $ 65,771.77 In addition, Lead Counsel seeks approximately $ 9,000, as reimbursement for costs and class administrative fees. Thus, the total amount requested by Lead Counsel is $ 74,771.77, 31 percent of the total settlement fund. The Court finds that the percentage of the settlement fund allocated for attorney's fees and costs, which is less than one-third of the total settlement fund, is reasonable based on: (1) Lead Counsel's experience representing plaintiffs in class actions; (2) the relatively small size of settlement fund in this action; and (3) the work performed by Lead Counsel in prosecuting this action. That work included reviewing many documents, researching legal issues and factual matters, conducting investigations, attending depositions, making multiple court appearances, negotiating settlement terms and conditions with opposing counsel, and engaging in motion practice. See *Frank, 228 F.R.D. at 189* (finding attorney's fees and costs award of 40% reasonable due to, *inter* [**\*26**] *alia,* the relatively small settlement involved); see also *In re Arakis Energy Corp. Sec. Litig., No. 95 Civ. 3431, 2001 U.S. Dist. LEXIS 19868, 2001 WL 1590512, at \*14 (E.D.N.Y. Oct. 31, 2001)* (finding attorney's fees award of 25% of the settlement fund reasonable). However, the Court notes it cannot perform a comparative analysis of the percentage award method and the lodestar method, because the record does not contain Lead Counsel's billings records or the hourly rate(s) it charged for the legal services it provided to the plaintiffs. See *Wal-Mart Stores, Inc., 396 F.3d at \*123.*

## IV. RECOMMENDATION

For the reasons set forth above, I recommend that the parties' request, that their proposed settlement be approved, be granted.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to *28 U.S.C. § 636(b)(1)* and *Rule 72(b) of the Federal Rules of Civil Procedure,* the parties have ten (10) days from service of the Report to file written objections. See also *Fed. R. Civ. P. 6.* Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Shira A. Scheindlin, United States District Judge,

2007 U.S. Dist. LEXIS 46223, *26

500 Pearl St., Room 1620, **[*27]** New York, New York 10007, and to the chambers of the undersigned, 40 Centre St., Room 540, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Scheindlin. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See _Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985)_; _IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993)_; _Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992)_; _Wesolek v. Canadair, Ltd., 838 F.2d 55, 57-59 (2d Cir._

_1998)_; _McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983)_.

Dated: New York, New York

June 22, 2007

Respectfully submitted,

KEVIN NATHANIEL FOX

UNITED STATES MAGISTRATE JUDGE

⚠ Caution

As of: May 2, 2016 4:06 PM EDT

# Willix v. Healthfirst, Inc.

United States District Court for the Eastern District of New York

February 18, 2011, Decided; February 18, 2011, Filed

No. 07 Civ. 1143 (ENV)(RER)

**Reporter**

2011 U.S. Dist. LEXIS 21102; 2011 WL 754862

GERTRUDE WILLIX, RAMESH SHAH, and VIKAS BHAT, individually and on behalf all others similarly situated, Plaintiffs, v. HEALTHFIRST, INC., d/b/a HEALTHFIRST; HF MANAGEMENT SERVICES, LLC, d/b/a HEALTHFIRST; and HEALTHFIRST PHSP, INC. d/b/a HEALTHFIRST, Defendants.

**Subsequent History:** Objection overruled by, Motion denied by *Willix v. Healthfirst, Inc., 2011 U.S. Dist. LEXIS 150346 (E.D.N.Y., May 20, 2011)*

**Prior History:** *Willix v. Healthfirst, Inc., 2010 U.S. Dist. LEXIS 139137 (E.D.N.Y., Nov. 12, 2010)*

## Core Terms

settlement, final approval, class member, awards, attorneys', Notice, class action, weighs, parties, risks, expenses, negotiations, discovery, Courts, settlement agreement, named plaintiff, settlement fund, reimbursement, prosecuting, approves, Paying, favors, costs

**Counsel:** [*1] For Gertrude Willix, individually and on behalf all others similarly situated, Francisco Rendon, Hayat Masudi, Antonio Huertas, Ramesh Shah, Safia Jilani, Vikas Bhat, Sanjaykumar Shah, Anwar Jilani, Ravi Sharma, Tariq Taqi, Claudia Marmolejo, Dane Sambola, Dilcia Gomez, Maritza Metral, Lee A. Vann, Francisca Olmedo, Edwin Castro, Yin Tung, Danny S. Fung, Marie Paule St. Fort, Monclova Corpa, Jehanzeb Mahmood, Davis Michael Emille, Sahirah Durrani, Karina Carrera, Angela Bowie, Aisha Durrani, Baby Obos, Barrett Parks, Plaintiffs: Adam T. Klein, Justin Mitchell Swartz, Melissa E Pierre-Louis, Michael Joseph Scimone, Rachel M. Bien, Outten & Golden LLP, New York, NY.

For Kuldeep Kaur, Plaintiff: Melissa E Pierre-Louis, LEAD ATTORNEY, Adam T. Klein, Justin Mitchell Swartz, Michael Joseph Scimone, Rachel M. Bien, Outten & Golden LLP, New York, NY.

For Gertrude Willix, Plaintiff: Justin Mitchell Swartz, Michael Joseph Scimone, Rachel M. Bien, Outten & Golden LLP, New York, NY.

For Andrea Taylor, Plaintiff: Justin Mitchell Swartz, Outten & Golden LLP, New York, NY.

For Healthfirst, Inc., HF Management Services, LLC, d/b/a HEALTHFIRST, Defendants: Daniel A. Kaplan, LEAD ATTORNEY, Foley & Lardner [*2] LLP, Madison, WI; Seth L. Levine, LEAD ATTORNEY, Foley & Lardner LLP, New York, NY.

For Healthfirst PHSP, Inc., Defendant: Daniel A. Kaplan, Foley & Lardner LLP, Madison, WI; Seth L. Levine, Foley & Lardner LLP, New York, NY.

**Judges:** Honorable Ramon E. Reyes, Jr., United States Magistrate Judge.

**Opinion by:** Ramon E. Reyes, Jr.

## Opinion

**ORDER GRANTING PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS**

Plaintiffs are former Marketing Representatives who worked for Healthfirst, Inc., HF Management Services, LLC, and Healthfirst PHSP (collectively "Healthfirst") throughout the New York City metropolitan area enrolling individuals in state-subsidized health insurance programs. On March 16, 2007, Plaintiff Gertrude Willix ("Willix") commenced this action as a putative class action under *Fed. R. Civ. P. 23* ("*Rule 23*") and collective action under *29 U.S.C. § 216(b)* ("*§ 216(b)*") seeking unpaid overtime compensation,

2011 U.S. Dist. LEXIS 21102, *3

liquidated damages, interest, back pay, front pay, compensatory and punitive damages, injunctive relief, and attorneys' fees and costs.

Willix alleged that Healthfirst [**3**] violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by improperly classifying Marketing Representatives as exempt from overtime premium pay. Willix also brought individual claims of sex discrimination and retaliation under the New York City Human Rights Law.

Over the course of the litigation, Plaintiff amended her Complaint four times, adding two new named plaintiffs and alleging a joint employment relationship between the various Healthfirst entities.

After substantial discovery, pursuant to the parties' stipulation, the Court granted class certification of Plaintiffs' NYLL claims under *Rule 23* and authorized notice to issue the FLSA collective under *§216(b)*. In addition to the named plaintiffs, 590 other Marketing Representatives have joined this case as opt-in plaintiffs.

During post-certification discovery, the parties reached this $7,675,000 settlement. (Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Swartz Decl.") ¶¶ 22, 23.) Several weeks later, the parties executed a formal written settlement agreement. [**4**] (Swartz Decl. Ex. A. ("Settlement Agreement").) On October 21, 2010, the matter was referred to this Court for all purposes.

On November 15, 2010, this Court entered an Order preliminarily approving the settlement and authorizing notice (Swartz Decl. Ex. C ("Notice")) to all class members. (Swartz Decl. Ex. B ("Preliminary Approval Order").)

On December 3, 2010, Rust Consulting, Inc., a third-party claims administrator, sent the Notice to all class members informing them of their right to opt out of or object to the settlement and of Class Counsel's intention to seek service awards of $7,500 to $30,000 for the named plaintiffs, 33% of the settlement fund for Class Counsel's attorneys' fees, and up to $125,000 for their out-of-pocket expenses.

Seven Class Members filed timely objections to the terms of the settlement. Three other Class Members filed untimely objections. No Class Member objected to the service awards or counsel's request for fees and costs. Three Class Members requested exclusion, although one subsequently rescinded his exclusion request.

On February 8, 2009, Plaintiffs filed their Motion for Final Approval of the Class Action Settlement and Approval of the FLSA Settlement [**5**] ("Motion for Final Approval"). The same day, Plaintiffs also filed their Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and their Motion for Class Representative Service Awards ("Motion for Service Awards"). Defendants did not oppose these motions.

The Court held a fairness hearing on February 18, 2011. Having considered the Motion for Final Approval, the Motion for Attorneys' Fees, the Motion for Service Awards, the supporting declarations, the objections Class Members, the arguments presented at the February 18, 2011 fairness hearing, and the complete record in this matter, for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

APPROVAL OF THE SETTLEMENT AGREEMENT

1. The Court hereby grants the Motion for Final Approval and approves the settlement as set forth in the Settlement Agreement and this Order under *Federal Rule of Civil Procedure 23*.

2. *Rule 23(e)* requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. *Fed. R. Civ. P. 23(e)*. To determine whether a settlement is procedurally fair, courts examine the negotiating process [**6**] leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005)*; *D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)*. To determine whether a settlement is substantively fair, Courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974)*.

3. Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores, 396 F.3d at 116*; *see also Spann v. AOL Time Warner, Inc., No. 02 Civ. 8238(DLC), 2005 U.S. Dist. LEXIS 10848, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005)* ("[P]ublic policy favors settlement, especially in the case of class actions."). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig., No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)*.

4. "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a [*7] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010)* (internal quotation marks and citation omitted). The Court gives weight to the parties' judgment that the settlement is fair and reasonable. *See Khait v. Whirlpool Corp., No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010)*; *Westerfield v. Washington Mut. Bank, No. 06 Civ. 2817(CBA), No. 08 Civ. 287(CBA)(JMA), 2009 U.S. Dist. LEXIS 94544, 2009 WL 5841129, at *3 (E.D.N.Y. Oct. 8, 2009)*.

### Procedural Fairness

5. The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See Fed. R. Civ. P. 23(e)*; *Frank, 228 F.R.D. at 184* (citing *Joel A. v. Giuliani, 218 F.3d 132, 138-39 (2d Cir. 2000))*. The settlement was reached after Plaintiffs had conducted a thorough investigation and evaluated the claims, and after extensive negotiations between the parties. Plaintiffs' counsel interviewed more than 100 Marketing Representatives to determine their job duties, how Healthfirst [*8] compensated them for their work, how much, if any, overtime work they performed, how they were trained, and other information relevant to their claims. From these interviews, Plaintiffs obtained supportive declarations from 44 Marketing Representatives. (Swartz Decl. ¶¶ 5, 6.)

6. Plaintiffs obtained and analyzed a large quantity of electronically-stored data from several different sources for all Marketing Representatives. This data included pay rates, dates of employment, and work locations. Plaintiffs hired statistical experts, EConsult Corporation, who tabulated and analyzed the time and payroll data. (Swartz Decl. ¶¶ 11.)

7. Plaintiffs also deposed seven officers of the Healthfirst entities, including the companies' former Executive Vice President, Senior Vice President and General Counsel, Corporate Controller, Vice President of Human Resources, Vice President of Sales, Director of Sales Operations, and Sales Training Manager. Defendants took depositions of the three named plaintiffs as well as two Class Members. (Swartz Decl. ¶¶ 13, 14.)

8. To help resolve the case, the parties enlisted the services of experienced employment mediator Carol Wittenberg of JAMS. (Swartz Decl. ¶¶ 19, [*9] 20.) Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process. *See Wal-Mart Stores, 396 F.3d at 116*; *Khait, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *5*.

### Substantive Fairness

9. The settlement is substantively fair. All of the factors set forth in *City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974)*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

10. The "Grinnell factors" are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell, 495 F.2d at 463*.

11. [*10] Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

12. The Class's reaction to the settlement was positive. The Notice included an explanation of the allocation formula and an estimate of each class member's award. The Notice also informed class members that they could object to or exclude themselves from the settlement, and explained how to do so. (Swartz Decl. ¶¶ 41.)

13. Only seven of the 2,025 Class Members submitted timely objections to the Settlement, and only two have requested exclusion. This favorable response recommends final approval. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008)* (approving settlement where 13 out of 3,500 class members objected and 3 opted out).

14. The Court finds that the seven timely objections are without merit and are therefore overruled. The Court also finds that the untimely objections are overruled both because they are untimely and because they are without merit.

Therefore, the second *Grinnell* [*11] factor weighs in favor of final approval.

15. The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537*. Here, over the course of three years, Plaintiffs obtained substantial discovery, including both documentary evidence and deposition testimony. (Swartz Decl. ¶¶ 11-14.) The third *Grinnell* factor weighs in favor of final approval.

16. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997)*. One purpose of a settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co., 304 F. Supp. 917, 934 (S.D.N.Y. 1969)*. Here, the fact-intensive nature of Plaintiffs' claims and Defendants' affirmative defenses presents risk. The settlement eliminates this uncertainty. The fourth *Grinnell* factor weighs in favor of final approval.

17. The risk of maintaining class status throughout trial also weighs in favor of final approval. A motion to decertify [*12] the class would likely require extensive discovery and briefing, possibly followed by an appeal, which would require additional rounds of briefing. Settlement eliminates the risk, expense, and delay inherent in this process. The fifth *Grinnell* factor weighs in favor of final approval.

18. The risk of collection weighs in favor of final approval. The settlement eliminated the risk of collection, as Defendants have already established the Fund and will fully fund it following this Order. Accordingly, the sixth *Grinnell* factor favors final approval.

19. The substantial amount of the settlement weighs strongly in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank, 228 F.R.D. at 186* (quoting *In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d at 178*). "Instead, 'there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972))*. [*13] The seventh *Grinnell* factor favors final approval.

APPROVAL OF THE FLSA SETTLEMENT

20. The Court hereby approves the FLSA settlement.

21. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *Clark v. Ecolab, 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *7*; *McKenna v. Champion Int'l Corp., 747 F.2d 1211, 1213 (8th Cir. 1984)*.

22. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *Clark v. Ecolab, 2010 U.S. Dist. LEXIS 47036, 2010 WL 1948198, at *7*; *Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)*. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id. at 1353-54*. If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved. *Id. at 1354*; *see Khait, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *7*; *Lynn's Food Stores, 679 F.2d at 1353 n.8*; *Manning v. N.Y. Univ., No. 98 Civ. 3300(NRB), 2001 U.S. Dist. LEXIS 12697, 2001 WL 963982, at *12 (S.D.N.Y. Aug. 22, 2001)* (recognizing that the Supreme Court has allowed an FLSA settlement [*14] for unpaid wages or overtime pursuant to a judicially-supervised stipulated settlement); *Sampaio v. Boulder Rock Creek Developers, Inc., No. 07-CV-153(ETB), 2007 U.S. Dist. LEXIS 66013, 2007 WL 5209390, at *1 (E.D.N.Y. Sept. 6, 2007)* (same).

23. The Court finds that the FLSA settlement was the result of contested litigation and arm's length negotiation.

DISSEMINATION OF NOTICE

24. Pursuant to the Preliminary Approval Order, the Notice was sent by first-class mail to each identified class member at his or her last known address (with re-mailing of returned Notices). (Ex. D to Swartz Decl. (Declaration of Stacy Roe) ¶¶ 10-13.) This Court finds that the Notice fairly and adequately advised class members of the terms of the settlement, as well as the right of members of the class to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted on February 18, 2011. Class Members were provided the best notice practicable under the circumstances. The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

AWARD OF FEES AND COSTS TO CLASS COUNSEL AND AWARD OF SERVICE PAYMENTS TO NAMED PLAINTIFFS

Erick Diaz

2011 U.S. Dist. LEXIS 21102, *14

25. [*15] On December 4, 2009, the Court appointed Outten & Golden LLP as Class Counsel because they met all of the requirements of *Federal Rule of Civil Procedure 23(g)*.

26. Class Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims.

27. Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law. *See, e.g., Khait v. Whirlpool, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *7* (O&G are "skilled and experienced employment class action lawyers . . . [and] have extensive experience prosecuting and settling nationwide wage and hour class and collective actions" (citations omitted); *Westerfield, 2009 U.S. Dist. LEXIS 94544, 2009 WL 5841129, at *4* (same).

28. The work that Class Counsel have performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel have committed substantial resources to prosecuting this case.

29. The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $2,558,333 in attorneys' fees or one third (33 1/3%) of the Fund [*16] (including any interest in the Fund).

30. The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in this Circuit." *See McDaniel v. Cty. Of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010); Khait, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *8* (following the "'trend'" and adopting the percentage-of-the-fund method); *Westerfield v. Washington Mut. Bank, Nos. 06-CV-2817(JMA), 08 Civ. 00287(CBA-)(JMA), 2009 U.S. Dist. LEXIS 94544, 2009 WL 5841129, at *4 (E.D.N.Y. Oct. 8, 2009)* (same); *Reyes v. Buddha-Bar NYC, No. 08 Civ. 2494(DF), 2009 U.S. Dist. LEXIS 45277, 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009)* (same); *Mohney v. Shelly's Prime Steak, 06 Civ. 4270(PAC), 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009)* (same); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003)* (collecting cases adopting the percentage-of-the-fund method); *In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998)* (same).

31. In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *See Frank, 228*

*F.R.D. at 189*. Where relatively small claims can only be prosecuted through aggregate litigation, [*17] "private attorneys general" play an important role. *Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 338-39, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980)*. Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Goldberger v. Integrated Res. Inc., 209 F.3d 43, 51 (2d Cir. 2000)* (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest"). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL. *See Braunstein v. E. Photo. Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1975)*, cert. denied, *441 U.S. 944, 99 S. Ct. 2162, 60 L. Ed. 2d 1046 (1979)* (FLSA); *Ramos v. Marksue Realty Corp., 586 F. Supp. 488, 492 (S.D.N.Y. 1984)* (NYLL); *Samiento v. World Yacht Inc., 10 N.Y.3d 70, 883 N.E.2d 990, 994, 854 N.Y.S.2d 83 (N.Y. 2008)* (NYLL).

32. Class Counsel's request for 33 1/3% of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Ctr. Fund, No. 05 Civ. 3452(RLE), 2008 U.S. Dist. LEXIS 23016, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)*; *see also Khait, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *1, 9*; [*18] *Duchene v. Michael Cetta, Inc., No. 06 Civ. 4576(PAC)(GWG), 2009 U.S. Dist. LEXIS 85955, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009)* (awarding class counsel 32.2% of $3,150,000 fund in FLSA and NYLL tip misappropriation case); *Mohney, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *5* (awarding 33% of $3,265,000 fund in FLSA and NYLL case); *Stefaniak v. HSBC Bank USA, N.A., No. 05 Civ. 720S, 2008 U.S. Dist. LEXIS 53872, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008)* (awarding 33% of $2.9 million fund in FLSA and NYLL case); *Maley, 186 F. Supp. 2d at 370* (awarding 33 1/3% fee on fund valued at $11.5 million); *Cohen v. Apache Corp., No. 89 Civ. 0076(PNL), 1993 U.S. Dist. LEXIS 5211, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993)* (awarding 33 1/3% of the $6.75 million fund).

33. Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. A percentage-of-recovery fee award of 33 1/3% is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. *493 F.3d 110, 111-12 (2d Cir. 2007)*. While *Arbor Hill* is not controlling here because it does not address a

common [*19] fund fee petition, it supports a 33 1/3% recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success.

34. All of the factors in *Goldberger v. Integrated Res. Inc., 209 F.3d 43, 51 (2d Cir. 2000)* weigh in favor of a fee award of 33 1/3% of the Fund.

35. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request. *Khait, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *9*.

36. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $90,000, which the Court deems to be reasonable. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003)* (citing *Miltland Raleigh-Durham v. Myers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993))*.

37. The attorneys' fees awarded and the amount in reimbursement of litigation costs and expenses shall be paid from the Settlement Fund.

38. The Court finds reasonable service awards of $30,000 to Gertrude Willix, $15,000 to Ramesh [*20] Shah and Vikas Bhat, and $7,500 to Yin Tung and Corpa Monclova. These amounts shall be paid from the Settlement Fund.

39. Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff. *See Khait, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *9*; *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a

litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.").

<u>CONCLUSION</u>

40. The "Effective Date" of the settlement shall be 30 days after the date of this Order if no party appeals this Order. If a party [*21] appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved.

41. Within 5 days of the Effective Date, the Claims Administrator will distribute the money in the settlement account by making the following payments in the order below:

  a. Paying Class Counsel fees of $2,558,333;

  b. Reimbursing Class Counsels' costs in the amount of $90,000, which the Court finds to be reasonable;

  c. Paying the settlement administrator's fees;

  d. Paying service awards of $30,000 to Gertrude Willix, $15,000 each to Ramesh Shah and Vikas Bhat, and $7,500 each to Yin Tung and Corpa Monclova;

  e. Paying the remainder of the money in the settlement account to class members in accordance with the allocation plan described in the Settlement Agreement.

42. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement. The parties shall abide by all terms of the Settlement Agreement and this Order.

It is so ORDERED this 18 day of February, 2011.

/s/ Ramon E. Reyes, Jr.

Honorable Ramon E. Reyes, Jr.

United States Magistrate Judge

⚠ Caution
As of: May 2, 2016 4:08 PM EDT

# *Yap v. Sumitomo Corp. of America*

United States District Court for the Southern District of New York

February 22, 1991, Decided

No. 88 Civ. 700 (LBS)

**Reporter**
1991 U.S. Dist. LEXIS 2124; 1991 WL 29112

ANTHONY R. YAP and VISHU SETHI, Plaintiffs, v. SUMITOMO CORPORATION OF AMERICA, Defendant

## Core Terms

decree, class member, consent decree, staff, settlement, employees, positions, terms, parties, named plaintiff, negotiations, programs, provides, training, plaintiffs', provisions, increases, practices, promotion, policies, rotating, lawsuit, titles, male, senior management, female employee, national origin, three year, non-Japanese, departure

## Case Summary

### Procedural Posture

Plaintiff male employees and defendant employer submitted a proposed consent decree in a class action for employment discrimination in violation of *42 U.S.C.S. § 1981*, Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e-5*, and the New York State Human Rights Law, *N.Y. Exec. Law § 290 et seq.*

### Overview

Female employees filed a class action against the employer for sex discrimination. The employer and the female employees settled the action and executed a consent decree. The decree expired. Male employees filed a class action for employment discrimination in violation of state and federal laws, claiming that the employer discriminated in favor of Japanese nationals in staffing management positions. The parties submitted a proposed consent decree. Upon review, the court approved the proposed decree. The court held that *Fed. R. Civ. P. 23(e)* required a consideration of: (1) the substantive terms of the settlement compared to the likely result of a trial; and (2) the negotiating process. The court determined that the proposed decree was fair and reasonable based upon the likelihood that the male employees would have prevailed at trial, the expense of maintaining the action throughout a trial, and other factors. The court ruled that the proposed decree did not conflict with the consent decree in

the prior action by the female employees. The court held that the proposed decree was designed to achieve the purposes of the anti-discrimination laws.

### Outcome

The court approved the proposed consent decree.

## LexisNexis® Headnotes

Civil Procedure > Special Proceedings > Class Actions > Compromise & Settlement

Civil Procedure > Special Proceedings > Class Actions > Judicial Discretion

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

Civil Procedure > Judgments > Entry of Judgments > Consent Decrees

*HN1* In evaluating the appropriateness of a proposed consent decree under *Fed. R. Civ. P. 23(e)*, a court should look to: (1) the substantive terms of the settlement compared to the likely result of a trial; and (2) the negotiating process, examined in light of the experience of counsel, the vigor with which the case has been prosecuted, and the coercion or collusion that may have marred the negotiations themselves. In making this assessment, the court is guided by the following criteria: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action throughout this trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation.

**Judges:** [*1] Michael H. Dolinger, United States Magistrate.

**Opinion by:** DOLINGER

# Opinion

*MEMORANDUM AND ORDER*

The parties in this class action suit have submitted a proposed consent decree for approval by the Court. For the reasons that follow, the decree is approved. [1]

A. *The Nature of the Case*

This lawsuit was filed on February 2, 1988 by two male management employees of defendant Sumitomo Corporation of America ("SCOA"). SCOA is the wholly-owned American subsidiary of a large Japanese trading company known as Sumitomo Shoji Kaisha, Ltd.

Invoking Title VII of the Civil Rights Act of 1964, *42 U.S.C. 2000e-5*, as well as *42 U.S.C. 1981* and the New York State Human Rights Law, *N.Y. Exec. Law 290 et seq.*, plaintiffs alleged that defendant discriminated in favor of Japanese nationals in staffing management positions. Their allegations, which were made on behalf of a class of all present or [*2] former non-Japanese male employees of SCOA, were premised on the conceded use by SCOA of a so-called rotating staff of Japanese nationals employed by the Japanese parent of SCOA. These Japanese nationals, all of whom are male, are rotated from the parent company into the more senior management positions at SCOA. In attacking this practice, the plaintiffs alleged that SCOA discriminated on the basis of national origin in hiring, promotion and compensation policies. The complaint sought both injunctive and monetary relief.

This lawsuit may be viewed as a companion to a previously filed class-action suit against SCOA brought on behalf of a class of then-present and former female employees of the company. That suit, entitled *Avagliano v. Sumitomo Shoji America,* 77 Civ. 5641 (CHT), [2] rested on essentially the same allegations, but plaintiffs there also alleged that SCOA discriminated against women in its employment practices. That suit was settled in 1987 by a consent decree that committed SCOA to a series of goals for hiring and promotion of women into management positions at the company, and also included provisions for back pay,

increased basic compensation and various training [*3] programs to facilitate the promotion of female employees. The consent decree in *Sumitomo* was, by its terms, to remain in effect for three years, and it expired in June 1990, well after the filing of the current litigation.

B. *Procedural History*

In response to the *Yap* complaint, defendant filed an answer that denied the essential allegations of discriminatory behavior and asserted an array of affirmative defenses. The most significant of these defenses were the assertions that SCOA's employment practices reflected *bona fide* occupational qualifications and that the class claims were either mooted or barred by the terms of the consent decree in *Avagliano*.

The parties in *Yap* proceeded to engage in both formal and informal discovery. This process encompassed [*4] substantial exchanges of documents, as well as depositions of the named plaintiffs and of three SCOA management employees, interrogatories concerning compensation of various categories of company employees, and interviews with present and former employees of the company.

On July 11, 1988 plaintiffs moved for class certification, and defendant thereafter cross-moved for summary judgment. Defendant's motion was premised on the asserted absence of genuine issues of material fact, the claimed inapplicability of the anti-discrimination statutes invoked by plaintiffs, a statute of limitations defense and the claim that this lawsuit was an impermissible collateral attack on the *Avagliano* consent decree.

On June 1, 1989, the District Court granted class certification and denied summary judgment. In doing so, however, the Court explicitly relied upon the representation of plaintiffs' counsel that "no relief will be sought herein which in any way conflicts with or is inconsistent with the consent decree in *Avagliano v. Sumitomo,* 77 Civ. 5641 and *Incherchera v. Sumitomo,* 82 Civ. 4930." (Endorsed Order dated June 1, 1989.)

Settlement discussions commenced as early as June 1988, and [*5] continued -- with one extended interruption -- until they culminated in April 1990 in a proposed consent decree. These negotiations yielded general agreement on the basis

---

[1]   The parties' joint motion is before me pursuant to their stipulation under *28 U.S.C. § 636(c)*. (*See* Stipulation and Order filed April 27, 1990.)

[2]   *Avagliano* action was supplemented by a parallel suit subsequently brought by a female employee of Sumitomo. That second suit, entitled *Incherchera v. Sumitomo Corp. of America,* 82 Civ. 4930 (CHT), was consolidated with *Avagliano*.

1991 U.S. Dist. LEXIS 2124, *5

for a settlement of the class claims, but the parties found it necessary to seek assistance from the Court in arriving at terms for settling the individual plaintiffs' claims, principally because SCOA insisted that these two individuals leave the employ of the company by the time that the class settlement was finalized. Ultimately, however, agreement was reached as well on the terms for the plaintiffs' departure from SCOA.

In view of the District Court's admonition that plaintiffs could not obtain any relief that conflicted with or was inconsistent with the *Avagliano* decree, the parties requested in May 1990 that the Court determine whether their proposed consent decree posed any conflict with the *Avagliano* decree. To accomplish this task, the Court invited counsel for the *Avagliano* class to participate in this proceeding, and he submitted briefing in support of his contention that the proposed decree conflicted in at least four respects with the *Avagliano* decree. By Memorandum and Order dated November **[*6]** 5, 1990 the Court concluded that the proposed decree was inconsistent with the *Avagliano* decree in only one respect, which involved the scope of an informal dispute resolution mechanism that was to be made available to the *Yap* class members. Based on further negotiations, the parties agreed to delete the informal dispute resolution provision from the proposed decree and thereafter submitted the revised decree to the Court for its approval.

Following notice to the class in accordance with court orders, the parties appeared for a fairness hearing on January 30, 1991. As of that time, no objections to the proposed decree had been received by either counsel or the Court. Both parties urged approval of the decree, and counsel for the *Avagliano* class stated that, based on representations received from SCOA concerning its intention to treat male and female employees equivalently, he saw no reason to object to the decree.

C. *The Terms of the Consent Decree*

The proposed consent decree provides significant remedial and compensatory relief for the approximately 130 class members, and appears designed to deal with the specific complaints asserted by plaintiffs in this action. **[*7]** Indeed, the proposed decree closely tracks the provisions of the *Avagliano* decree -- which this Court approved in 1987 -- except that its goals provisions are couched in gender-neutral terms.

As with the *Avagliano* decree, the proposed agreement in *Yap* is to last three years and provides for both prospective and retroactive relief. I address the principal terms *seriatim*.

1. *Job Titling and Job Descriptions*

In recognition of apparent anomalies in SCOA's official job structure and compensation system, the *Avagliano* decree required the company to proceed with a restructuring of its job titles, job descriptions and compensation system on the basis of a study undertaken for SCOA by the consulting firm of Towers, Perrin, Forster & Crosby. The purpose of this project was to revise SCOA's job titles and descriptions to reflect with greater accuracy the nature of the work performed, to reform the salary system to ensure appropriate compensation for the type of job performance required, and to establish an effective performance evaluation system for the company.

This plan was in fact implemented under the *Avagliano* decree. Now, in the proposed *Yap* decree, SCOA **[*8]** would commit itself to maintaining the revised system of job titles and job descriptions. (Proposed Consent Decree § IX(B).) Moreover, as under the *Avagliano* decree, class members would be given the opportunity to challenge their job classification or job description. In addition, this system would be expanded to cover positions currently held by the rotating staff. If any positions presently held by the rotating staff are filled by local staff, SCOA would establish a compensation scale in accordance with the methodology set by the *Avagliano* decree. (*Id.* § IX(A) at 13-14.)

2. *Goals*

Like the *Avagliano* decree, the agreement in *Yap* would define certain goals for SCOA during the term of the decree. Unlike the *Avagliano* decree, however, these goals are defined in terms of "a national origin allocation goal for local staff." (*Id.* at § X.) Since the term "local staff" is defined to encompass "all persons hired directly by SCOA" (*id.* § I at n.2), it is apparent that these goals are gender-neutral and thus encompass women as well as the *Yap* class of male employees. (*Id.* at § X(A) at 15.)

As for specific staffing goals under the proposed decree, SCOA **[*9]** is required to make make good-faith efforts "to increase to 27 the number of local staff in the senior management group, and to increase to 67 the number of local staff in the management group." (*Id.*) (footnotes omitted). These goals represent anticipated increases from the current levels of approximately 19 local staff in the senior management group and approximately 55 local staff in the management group. The proposed decree also parallels the *Avagliano* decree by stating in general terms SCOA's intention to make good-faith efforts to increase the use of the local staff, presumably beyond the numerical goals specified in the decree. (*See id.* at §§ X(A) at 16, (B) at 17.)

1991 U.S. Dist. LEXIS 2124, *9

To provide concrete assurance that SCOA will undertake the necessary steps to achieve these goals and that the local staff will be in a position to take advantage of such increased opportunities, the proposed decree commits SCOA to continue to finance a variety of career development programs first identified in the *Avagliano* decree. These programs include tuition refunds, on-the-job training, career counselling, a skills inventory system, performance appraisal procedures developed by Towers, Perrin, **[*10]** and a seminar program that encompasses both management and sales techniques and Japanese language training. *(Id.* § XI at 17-20.) In addition, SCOA is to conduct management training sessions and workshops concerning equal employment opportunity issues. *(Id.* at 20.)

Although the *Avagliano* decree required only that these programs be made available to *Avagliano* class members -- that is, to female employees -- SCOA apparently opened these programs to all local staff. Under the proposed decree, the programs would continue to be made available to all local staff, but SCOA would undertake to give the *Yap* class members official notice of these programs.

3. *Prospective Monetary Relief*

The proposed decree provides for specified increases in future compensation to class members. SCOA would be required to raise the base wages of those class members with at least three years of experience as of June 1, 1989, pursuant to a specified formula, by amounts not to exceed $ 8,000.00. [3] The formula is based on the employee's length of service, with the base wage increases ranging from five to fifteen percent. *(See id.* § VIII & Exh. C.)

**[*11]** Although not specified in the proposed decree, SCOA has represented that it will make equivalent adjustments to the base salaries of similarly situated female employees. (Affidavit of Susan Schenkel-Savitt, Esq., sworn to January 29, 1991 at para. 29.) It was based on this representation that the Court found the prospective pay provision in the proposed decree not to be inconsistent with the *Avagliano* decree.

4. *Retroactive Payments*

As for retroactive payments, SCOA would be required to make lump-sum payments to all class members who had two years of employment with the company by January 1, 1987 *(see* Proposed Consent Decree § VII) in accordance

with a formula specified in the decree. *(See id.* at Exh. B.) Under this formula, eligible non-exempt class members would be guaranteed a minimum payment of $ 1,500.00 up to a maximum payment of $ 6,000.00, and eligible exempt class members would receive from $ 3,000.00 to $ 12,000.00. For those exempt class members with more than fifteen years of service, the award would amount to $ 17,000.00. *(See id.* § VII at 11-12 & Exh. B.)

5. *Named Plaintiffs*

In addition to these payment provisions, the proposed decree provides **[*12]** for payment of $ 30,000.00 to each of the named plaintiffs, in addition to any monies to which they are otherwise entitled as class members. *(Id.* at § XII.) This provision is said to be designed to compensate plaintiffs for their active participation in the preparation of the case and in discovery and for the special risks that they bore as named plaintiffs. It also bears noting that those two individuals have been asked by SCOA to leave the company as of the time of the settlement, and in compensation for their departure plaintiffs are also receiving a separate severance package that was negotiated between their counsel and the company. The terms of that package are not specified in the consent decree but have been made known to the Court.

6. *General Injunctive Provisions*

Like the *Avagliano* decree, the proposed agreement in *Yap* contains a general anti-discrimination provision. It bars discrimination against any employee or class member based on national origin, race or color, as well as any retaliation against class members. *(Id.* § VI(B) at 9-10.)

7. *Enforcement of Decree*

Under the proposed decree, the Court is to retain jurisdiction of the action for the **[*13]** purpose of resolving disputes. During the effective period of the agreement, class counsel is authorized to monitor the performance of SCOA, and the company is required to provide him with documentation and other relevant information, as well as an annual report concerning its progress in meeting the goals specified by the proposed decree.

8. *Waiver*

In exchange for these concessions by SCOA, the class members would waive all claims against the company

---

[3]   If the formula yielded a higher amount, the surplus above $ 8,000.00 would be received as a single lump-sum payment rather than as an adjustment of the employee's base wage.

1991 U.S. Dist. LEXIS 2124, *13

arising out of alleged national origin, race or color discrimination that arose on or before January 30, 1991, the date of the fairness hearing. The class members also would waive any claim of gender discrimination arising up to 240 days prior to the fairness hearing. (*Id.* at § XIII, Exh. E.) [4]

 [*14]  9. *Attorney's Fees*

The issue of attorney's fees for this lawsuit is reserved for separate resolution either by negotiation or by court determination. Nonetheless, SCOA concedes the entitlement of counsel to an award, thus leaving for future decision only the amount of the fees.

D. *The Reaction of the Class*

By order of the Court, copies of the proposed decree were sent to the last known addresses of all class members, and notice was published twice in the *New York Times.* (*See* Affidavit of Rhonda J. Moll, Esq., sworn to January 16, 1991.) Based on the small number of mailings returned to the sender (*see* Affidavit of William J. Milani, Esq., sworn to January 16, 1991), it appears that the vast majority of class members received actual notice of the proposed settlement.

No objections have been filed with the Court, and counsel have received no such objections, oral or otherwise. To the extent that class counsel has had any communications concerning the terms of the settlement, they have involved simply inquiries about the decree or favorable comments. (Jan. 30, 1991 Tr. at 9-12.)

*ANALYSIS*

*HN1* In evaluating the appropriateness of a proposed consent decree under *Fed.*  [*15]  *R. Civ. P. 23(e)*, the Court should look to

(1) the substantive terms of the settlement compared to the likely result of a trial, . . . and (2) the negotiating process, examined in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves.

*Malchman v. Davis, 706 F.2d 426, 433 (2d Cir. 1983)* (citations omitted). In making this assessment, I am guided

by the criteria adopted by the Second Circuit in *City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974),* which include:

1. The complexity, expense and likely duration of the litigation;

2. the reaction of the class to the settlement;

3. the stage of the proceedings and the amount of discovery completed;

4. the risks of establishing liability;

5. the risks of establishing damages;

6. the risks of maintaining the class action throughout this trial;

7. the ability of the defendants to withstand a greater judgment;

8. the range of reasonableness of the settlement fund in light of the best possible recovery;

9. the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks [*16] of litigation.

*Id. at 463*. *Accord, e.g., Malchman v. Davis, 706 F.2d at 433-34; Robertson v. National Basketball Ass'n, 556 F.2d 682, 684 n.1 (2d Cir. 1977)*. Based on the evidence and analysis proffered by the parties, I conclude that the proposed consent decree is fair and reasonable, and should therefore be approved.

The class claims rest on defendant's conceded historic preference for Japanese nationals in more responsible company positions. The existence of such a preference is not in serious dispute, *see, e.g., Avagliano v. Sumitomo Shoji America, Inc., 103 F.R.D. 562, 581 (S.D.N.Y. 1988),* but there is a strongly contested issue concerning the business justification for that preference. The ultimate resolution of that question is in some doubt and that uncertainty, as well as the practical difficulties in bringing this case to trial, must be taken into account in assessing the terms of the settlement.

The agreement in question was not finalized until nearly three years after commencement of this lawsuit, and only

---

[4]  Any class member, apart from the named plaintiffs, who as of December 21, 1990 had filed a claim against SCOA in any court or administrative proceeding arising out of alleged national origin, race or color discrimination and such claim had not been withdrawn, settled or dismissed would be able to "elect out" of the benefits provided in the proposed decree by making such an election by January 23, 1991. No such elections were brought to the Court's attention at the fairness hearing.

Erick Diaz

1991 U.S. Dist. LEXIS 2124, *16

following substantial formal and informal discovery undertaken by plaintiffs' counsel, which was directed to the specifics of defendant's employment [*17] practices as well as its asserted justifications for its preference for Japanese nationals in more senior positions. The settlement -- and indeed the bulk of settlement negotiations

were also preceded by contested motion practice directed, *inter alia*, to both the appropriateness of class certification and the potential for conflict between this lawsuit and the *Avagliano* litigation.

The fruits of that discovery and the record in *Avagliano* provide substantial reason to suspect that defendant's employment practices have reflected a company-wide policy of denying equal opportunities for training, promotion and compensation to those of its employees who are not Japanese nationals. The evidence adduced further suggests that this discriminatory policy was explicitly applied by company management and was facilitated by a formal job structure that lacked either realistic designations of actual job responsibilities or adequate personnel records to evaluate whether job performance was a determining criterion for advancement in the company. From this evidence, it appears likely that, on the basis of nationality, significant numbers of non-Japanese employees were denied promotions [*18] for which they were otherwise qualified, were denied or discouraged from undertaking training that would qualify them for advancement within the company, and were denied compensation and job titles commensurate with their actual employment responsibilities and with the titles and pay of equivalent Japanese employees. (*See, e.g.,* Affidavit of Raymond D. Gregory, Esq., sworn to January 29, 1991 at paras. 3-26.)

Notwithstanding the strength of this evidence, there is at least some question as to whether and to what extent the plaintiff class would have prevailed on the merits if the case had gone to trial. First, the Supreme Court has concluded that, at a minimum, some of the positions in the company require "great familiarity with not only the language of Japan, but also the culture, customs, and business practices of that country." *Sumitomo Shoji America, Inc. v. Avagliano, 457 U.S. 176, 189 n.19 (1982).* It is not clear how broad a *bona fide* occupational qualification defense would have been recognized by the Court in this case, but it may be assumed that this defense would have limited the scope of any relief granted to some or all of the class members. Second, it is not [*19] at all certain how many of the class members could have demonstrated that they were adversely affected by the asserted company policy and thus entitled to monetary compensation. Third, the Supreme Court decision

in *Wards Cove Packing Co. v. Atorio, 109 S.Ct. 2115 (1989)*, substantially increased the ultimate burden of persuasion borne by the plaintiff class. *See id. at 2124-26.* Finally, to take this case to trial would have required a substantial further investment of time and money in the face of these uncertainties. This effort would have included the probable need for translation of substantial numbers of documents, depositions directed to practices in defendant's various offices around the country, and the necessity for presentation of evidence from class members located across the United States. (*See* Tr. at 5-6.)

*(i) Appropriateness of the Terms of the Decree*

In view of both the strengths and the weaknesses of the plaintiffs' case, the proposed settlement represents a substantial achievement and a vindication of the anti-discrimination policies underlying Title VII. As was noted with respect to the consent decree in *Avagliano* -- which the current proposed decree [*20] in effect extends for three more years on behalf of the male non-Japanese employees of SCOA -- the settlement agreement is well designed to address each of the problems posed by defendant's prior employment policies and to provide reasonable assurances that future conduct will be fully consistent with the requirements of Title VIII. Moreover, the proposed decree enhances the effectiveness of the *Avagliano* decree in eradicating whatever effects may have been felt by members of both the *Yap* and the *Avagliano* classes as a result of past discriminatory policies.

The adoption by the *Avagliano* decree of the Towers, Perrin plan for reorganizing the company's job structure and establishing a rational system of non-discriminatory performance evaluations provided the basic foundation for subsequent compliance with Title VIII. The defendant's further commitment in the proposed *Yap* decree to retain and expand that revised job structure and performance system gives further assurance that defendant will follow non-discriminatory employment policies.

The proposed decree also specifically provides for significant future benefits to defendant's non-Japanese work force. The required [*21] increases in the aggregate base pay for those class members with three years of seniority as of June 1, 1989 represents an immediate improvement in the lot of those experienced class members still working for defendant and presumably will encourage them to remain with the company. Furthermore, it bears noting that this provision will provide indirect benefits to other local staff, since all employees similarly situated to those *Yap* class members who receive base pay increases will receive equivalent pay increases.

Erick Diaz

Of even greater significance is the adoption of concrete goals for staffing defendant's management and senior management positions. If achieved, the goal for senior management would result in at least a forty-percent increase in the number of non-Japanese employees holding such positions, and the goal for the management group would represent at least a twenty-percent increase by the end of the term of the proposed decree. In short, a good- faith effort to achieve these goals is almost certain to make further inroads -- beyond those achieved under the Avagliano decree -- in diluting the previous Japanese domination of more responsible positions in the company. [5] Moreover, **[*22]** the likelihood that a good- faith effort by defendant will yield substantial results is enhanced both by its satisfactory performance under the *Avagliano* decree and by its commitment to continue the job training, tuition refund, career counseling and various other programs established under the prior decree to encourage and assist local employees to remain with the company and to acquire the skills necessary to qualify them for promotion opportunities.

The retrospective compensation **[*23]** provisions of the proposed decree are also defensible. As already suggested, the class has a significant prospect for success on its claim of past discrimination, but there is no assurance that most or all of the positions filled in the past by the rotating staff would be found not to come within a legitimate *bona fide* occupational qualifications defense. Moreover, to the extent that plaintiffs contend that some class members performed tasks for which the rotating staff was paid more money, they could face the defense that some or all of the differential represented overseas pay for the Japanese nationals temporarily assigned to SCOA. Both of these defenses could quite possibly substantially limit any retrospective relief awarded after a trial. In view of this concern, the back-pay compensation provided in the decree is plainly reasonable. Moreover, although the funds for back-pay and damage compensation are limited to employees who had worked for defendant for at least two years as of January 31, 1987, this limitation is justifiable. It is fair to assume that class members with less than two years experience as of that time are significantly less likely to have suffered the effects **[*24]** of defendant's discriminatory policies. *See, e.g., Women's Committee for Equal Employment Opportunity v. National Broadcasting Co., 76 F.R.D. 173, 178 (S.D.N.Y. 1977)*.

Finally, the additional compensation for the named plaintiffs is not unwarranted. Those plaintiffs have participated actively in the preparation of this case, and each was deposed for several days. By appearing as named plaintiffs, they have also undertaken the risk that they would be subject to retaliation by the employer or that their future with the company might be adversely affected by employer hostility, and indeed, as noted, SCOA has requested plaintiffs' departure as part of the settlement of the entire case. Although the plaintiffs are being adequately compensated, as a separate matter, for the economic consequences of their departure, the added stress to which they have presumably been subjected in facing this request for their departure provides further justification for the lump sum payments that they are to receive under the proposed consent decree. (Proposed Consent Decree at § 12.)

Under these circumstances, the relatively modest additional monetary relief for the named plaintiffs does not undermine **[*25]** the fairness of the proposed decree. *See, e.g., Johnson v. Montgomery County Sheriff's Dep't, 604 F. Supp. 1346, 1348 (M.D. Ala. 1985)*; *Kuck v. Berkey Photo, Inc., 87 F.R.D. 75, 77 (S.D.N.Y. 1980)*; *Women's Committee v. National Broadcasting Co., 76 F.R.D. at 180-81*.

### (ii) *Other Considerations*

Apart from the substantial benefits conferred on the class members, approval of the proposed decree is supported by a number of related considerations. Both sides are represented by experienced and able counsel, and they have both litigated and negotiated at arm's length and in obvious good faith. Moreover, the agreement was not entered into until sufficient information had been uncovered to permit both counsel and the Court to make reasonably informed estimates of the strengths and weaknesses of each side's case.

Finally, following proper notice to the class members of the proposed decree, those class members who have communicated with the class counsel have apparently indicated substantial approval of the proposed decree, and none has objected to its terms. Such seeming unanimity of approval by class members of what appears, on its face, to be a very satisfactory resolution of **[*26]** this controversy provides further support for the decree.

---

[5]   I note that the proposed decree applies to all positions in the company except for Chairman, President, Executive Vice-President, Division General Manager and Branch General Manager. (Proposed Decree at § VI(A). In view of the special needs of a company wholly owned by a Japanese parent corporation, and the explicit recognition of those needs by the Supreme Court, *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. at 189 n.16, these exempt positions are an appropriate limitation on the relief afforded the plaintiff class.

1991 U.S. Dist. LEXIS 2124, *26

*CONCLUSION*

For the reasons stated, the proposed consent decree is deemed to be fair and appropriate and accordingly is approved by the Court.

◆ Positive

As of: May 2, 2016 3:58 PM EDT

# *Yuzary v. HSBC Bank USA, N.A.*

United States District Court for the Southern District of New York

October 2, 2013, Decided; October 2, 2013, Filed

No. 12 Civ. 3693 (PGG)

**Reporter**

2013 U.S. Dist. LEXIS 144327; 2013 WL 5492998

SHARON YUZARY, JON RACOW, HENRY HU, MINA DIMETRY, TERON HAUGHTON, DANIEL HAUER, BILLY TZEWA MUI, CALVIN MAZLUMYAN, and KIM LEBLEU, on behalf of themselves and all others similarly situated, Plaintiffs, v. HSBC BANK USA, N.A.; HSBC USA, INC.; and HSBC NORTH AMERICA HOLDINGS, INC., Defendants.

**Prior History:** *Yuzary v. HSBC Bank USA, N.A, 2013 U.S. Dist. LEXIS 61643 (S.D.N.Y., Apr. 29, 2013)*

## Core Terms

settlement, class member, awarding, multiplier, attorneys, Notices, final approval, courts, parties, class action, Plaintiffs', negotiating, expenses, weighs, settlement fund, lodestar, risks, early settlement, mediation, opted, hour class, Reimbursement, certification, objected, damages, settlement agreement, wage and hour law, requirements, individuals, discovery

**Counsel:** [*1] For Sharon Yuzary, on behalf of herself and all others similarly situated, Teron Haughton, Mina Dimetry, Jon Racow, Henry Hu, Plaintiffs: Amber Christine Trzinski, Outten & Golden, LLP, New York, NY; Brian Scott Schaffer, Eric Joshua Gitig, Fitapelli & Schaffer, LLP, New York, NY; C.K. Lee, Lee Litigation Group, PLLC, New York, NY; Frank Joseph Mazzaferro, Fitapelli & Schaffer LLP, New York, NY; Gregg I. Shavitz, PRO HAC VICE, Shavitz Law Group, P.A, Boca Raton, FL; Jennifer Lin Liu, Justin Mitchell Swartz, Outten & Golden,LLP (NYC), New York, NY; Joseph A. Fitapelli, Fitapelli & Schaffer, New York, NY; Susan Hilary Stern, PRO HAC VICE, Shavitz Law Froup, Boca Raton, FL.

For Daniel Hauer, Billy Tzewa Mui, Plaintiffs: Amber Christine Trzinski, Outten & Golden, LLP, New York, NY; Brian Scott Schaffer, Eric Joshua Gitig, Fitapelli & Schaffer, LLP, New York, NY; C.K. Lee, Lee Litigation Group, PLLC, New York, NY; Gregg I. Shavitz, PRO HAC VICE,

Shavitz Law Group, P.A, Boca Raton, FL; Jennifer Lin Liu, Justin Mitchell Swartz, Outten & Golden,LLP (NYC), New York, NY; Joseph A. Fitapelli, Fitapelli & [*2] Schaffer, New York, NY; Susan Hilary Stern, PRO HAC VICE, Shavitz Law Froup, Boca Raton, FL.

For Christopher Amadeo, Joanne Mankiewich, Aaron W. King, David Schlager, Kirk Maraglia, Jordan Meinster, Michael Weinberg, Plaintiffs: Justin Mitchell Swartz, Outten & Golden, LLP (NYC), New York, NY.

For Frank Carpentiere, Marion Ege, Devon Kiernan, Marlusz Knap, Dalia Lipton, Plaintiffs: Brian Scott Schaffer, Fitapelli & Schaffer, LLP, New York, NY.

For Michael Grubstein, Tracey Markland, David Whitelaw, Plaintiffs: Frank Joseph Mazzaferro, Fitapelli & Schaffer LLP, New York, NY.

For HSBC Bank USA, N.A., HSBC USA, Inc., HSBC North America Holdings, Inc., Defendants: Allan S Bloom, Stephen Philip Sonnenberg, LEAD ATTORNEYS, Emily Ratte Pidot, Paul Hastings LLP (NY), New York, NY.

For Calvin Mazlumyan, Kim Lebleu, Defendants: Amber Christine Trzinski, Outten & Golden, LLP, New York, NY; Brian Scott Schaffer, Fitapelli & Schaffer, LLP, New York, NY; C.K. Lee, Lee Litigation Group, PLLC, New York, NY; Jennifer Lin Liu, Justin Mitchell Swartz, Outten & Golden,LLP (NYC), New York, NY; Joseph A. Fitapelli, Fitapelli & Schaffer, New York, NY.

For Yalyly Villani, ADR Provider: Justin Mitchell Swartz, Outten [*3] & Golden, LLP (NYC), New York, NY.

**Judges:** Honorable Paul G. Gardephe, United States District Judge.

**Opinion by:** Paul G. Gardephe

2013 U.S. Dist. LEXIS 144327, *3

## Opinion

**ORDER GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, AND APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**

Plaintiffs Sharon Yuzary, Jon Racow, Henry Hu, Mina Dimetry, Teron Haughton, Daniel Hauer, Billy Tzewa Mui, Calvin Mazlumyan, and Kim LeBleu ("Plaintiffs") are former Personal Bankers, Branch Relationship Bankers, Premier Relationship Managers, Small Business Specialists, and Business Banking Specialists (collectively, the "Covered Positions") who worked for Defendants HSBC Bank USA, N.A., HSBC USA, Inc., and HSBC North America Holdings, Inc. ("HSBC" or "Defendants"). On February 7, 2012, Plaintiff Mui filed a lawsuit in the United States District Court for the Southern District of New York, *Mui v. HSBC Bank USA, N.A., et al*., No. 12 Civ. 961 (BSJ) ("*Mui*"), bringing FLSA collective action and class claims under the NYLL. On May 9, 2012, Plaintiff Yuzary filed a class and collective action overtime lawsuit in the United States District Court [*4] for the Southern District of New York, *Yuzary v. HSBC Bank USA, N.A., et al*., No. 12 Civ. 3693 (PGG) ("*Yuzary*"). On June 8, 2012, Plaintiff Hauer filed a collective action overtime lawsuit in the United States District Court for the Southern District of Florida, *Hauer v. HSBC Bank USA, N.A., et al*., No. 12 Civ. 61155 (KMW) ("*Hauer*"). On July 23, 2012, this Court consolidated the *Mui, Yuzary*, and *Hauer* actions. ECF No. 25. In the consolidated amended complaint, Plaintiffs alleged that HSBC violated the Fair Labor Standards Act ("FLSA") and the wage and hour laws of New York, California, Connecticut, and New Jersey by improperly classifying them as exempt from federal and state overtime requirements and failing to pay them and other employees in Covered Positions overtime wages. ECF No. 48. Plaintiffs sought unpaid overtime wages, attorneys' fees and costs, interest, liquidated damages, and injunctive and declaratory relief. *Id*.

After exchanging informal discovery to enable Plaintiffs to calculate damages and undertaking extensive and vigorous negotiations, the parties reached a settlement totaling $15,625,000. Decl. of Justin M. Swartz in Supp. of Pls.' Mot. for Certification of the [*5] Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Swartz Decl.") ¶¶ 12-13, 18-20, 27.

The parties reached this settlement after a formal mediation under the supervision of an experienced employment law mediator, Michael Young. *Id*. ¶¶ 18-20. At the mediation, the parties reached agreement on the settlement amount and several other key terms. *Id*. ¶ 20. During the next three months, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal settlement agreement ("Settlement Agreement"). *Id*.

On April 29, 2013, this Court entered an Order preliminarily approving the settlement on behalf of the class set forth therein (the "Class" or the "Class Members"), conditionally certifying the settlement class, and appointing Outten & Golden LLP; Fitapelli & Schaffer, LLP; Lee Litigation Group, PLLC; and Shavitz Law Group, P.A. as Class Counsel, and authorizing notice to all Class Members. ECF No. 70.

On May 31, 2013, a claims administrator sent Court-approved notices to all Class Members informing them of their rights under the settlement, including the right to opt-out or object to the settlement for Class [*6] Members in the four states where *Rule 23* claims were brought, and of Class Counsel's intention to seek up to one-third of the settlement fund for attorneys' fees, and reimbursement of their out-of-pocket expenses. Swartz Decl., Ex. D (Cudworth Decl.) ¶ 8. After the initial Notices were mailed, Defendants discovered that 62 Class Members had inadvertently been omitted from the data initially provided to the claims administrator and that the data also omitted a number of workweeks for 93 Class Members who had received Notice. *Id*. ¶ 16. New Notices were subsequently mailed to those 62 Class Members who had received no Notice. No Class Members objected to the settlement, seven filed timely opt-out requests, and one filed a late opt-out request. *Id*. ¶¶ 14-15.

On July 16, 2013, Plaintiffs filed a Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval"). That same day, Plaintiffs also filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Service Awards ("Motion for Service Awards"). Defendants took no position with respect to [*7] any of these motions and did not object to the requests for attorneys' fees, costs, or service payments.

The Court held a fairness hearing on July 25, 2013. No Class Member objected to the settlement at the hearing.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees and Reimbursement of Expenses,

the Motion for Service Awards, and the supporting declarations, the oral argument presented at the July 25, 2013 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the July 25, 2013 fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED: CERTIFICATION OF THE SETTLEMENT CLASS**

I. The Court certifies the following sub-classes under _Federal Rule of Civil Procedure 23(e)_, for settlement purposes, which consist of individuals who worked in Covered Positions for at least fifteen (15) days in any state who fit within the definitions set forth in subparagraphs (A) through (D) below (the "State Sub-Classes") (the "_Rule 23_ Class Members"):

> A. all individuals who were employed in Covered Positions in the State of New York from February 7, 2006 through November 15, **[*8]** 2012, excluding individuals who signed releases of state law wage and hour claims as evidenced in releases provided by Defendants to Class Counsel on or before the date of the Court's Final Approval Order;

> B. all individuals who were employed in Covered Positions in the State of California from May 9, 2008 through November 15, 2012;

> C. all individuals who were employed in Covered Positions in the State of Connecticut from May 9, 2010 through November 15, 2012; and

> D. all individuals who were employed in Covered Positions in the State of New Jersey from May 9, 2010 through November 15, 2012.

2. Plaintiffs meet all of the requirements for class certification under _Federal Rule of Civil Procedure 23(a)_ and _(b)(3)_.

3. Plaintiffs satisfy _Federal Rule of Civil Procedure 23(a)(1)_ because there are approximately 2,203 _Rule 23_ Class Members and, thus, joinder is impracticable. _See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)_ ("[N]umerosity is presumed at a level of 40 members.").

4. The proposed class also satisfies _Federal Rule of Civil Procedure 23(a)(2)_, the commonality requirement. Plaintiffs and the Class Members share common issues of fact and law, including whether **[*9]** Defendants misclassified them

as exempt employees, failed to pay them overtime wages in violation of state wage and hour laws, and failed to keep accurate records of time worked. _See Beckman v. KeyBank, N.A., No. 12 Civ. 7836, 293 F.R.D. 467, 2013 U.S. Dist. LEXIS 60894, 2013 WL 1803736, at *2 (S.D.N.Y. Apr. 29, 2013)_ (common issues that help to satisfy _Rule 23_ commonality requirement include whether "Defendant misclassified them as exempt employees, failed to pay them overtime wages in violation of state wage and hour laws, and failed to keep accurate records of time worked"); _Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012)_ (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay).

5. Plaintiffs satisfy _Federal Rule of Civil Procedure 23(a)(3)_, typicality, because Plaintiffs' claims arose from the same factual and legal circumstances that form the bases of the class members' claims. _See Hernandez v. Merrill Lynch & Co., Inc., No. 11 Civ. 8472, 2012 U.S. Dist. LEXIS 165771, 2013 WL 1209563, at *3 (S.D.N.Y. Nov. 15, 2012)_ typicality satisfied where "[p]laintiffs' claims [for overtime pay] arose from the same factual and legal circumstances **[*10]** that form[ed] the bases of the [c]lass [m]embers' claims"); _Morris, 859 F. Supp. 2d at 616_ (same).

6. Plaintiffs satisfy _Federal Rule of Civil Procedure 23(a)(4)_ because there is no evidence that the Plaintiffs' and the class members' interests are at odds. _See Beckman, 293 F.R.D. 467, 2013 U.S. Dist. LEXIS 60894, 2013 WL 1803736, at *3_ (finding adequacy requirement met where there was no evidence that plaintiffs' and class members' interests were at odds); _Morris, 859 F. Supp. 2d at 616_ (same).

7. In addition, Plaintiffs' Counsel are experienced and adequate to serve as Class Counsel. _See, e.g., Beckman, 293 F.R.D. 467, 2013 U.S. Dist. LEXIS 60894, 2013 WL 1803736, at *3_ (noting that Outten & Golden LLP and Shavitz Law Group, P.A. "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and class action law," and finding both firms adequate class counsel) (internal quotation and citation omitted); _Tiro v. Pub. House Invs., LLC, 288 F.R.D. 272, 275 (S.D.N.Y. 2012)_ (Fitapelli & Schaffer approved as class counsel); _Han v. AB Gansevoort_, No. 11 Civ. 2423, Docket No. 40 (S.D.N.Y. April 4, 2012) (appointing Kraselnik & Lee, PLLC as class counsel).

8. Plaintiffs also satisfy _Rule 23(b)(3)_. **[*11]** Plaintiffs' common factual allegations and a common legal theory — that Defendants violated federal and state wage and hour

2013 U.S. Dist. LEXIS 144327, *11

laws by misclassifying Plaintiffs as exempt administrative employees and failing to pay them for premium overtime hours — predominate over any factual or legal variations among class members. *See Hernandez, 2012 U.S. Dist. LEXIS 165771, 2013 WL 1209563, at \*3* (common factual allegations and legal theory predominated over variations in wage and hour misclassification case); *Torres v. Gristede's Corp., No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, 2006 WL 2819730, at \* 16 (S.D.N.Y. Sept. 29, 2006)* (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "[t]his issue predominates over any individual calculations of overtime wages").

9. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Beckman, 293 F.R.D. 467, 2013 U.S. Dist. LEXIS 60894, 2013 WL 1803736, at \*3; Morris, 859 F. Supp. 2d at 617.* [\*12] Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction.

## APPROVAL OF THE SETTLEMENT AGREEMENT

10. The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement.

11. *Rule 23(e)* requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. *Fed. R. Civ. P. 23(e).* To determine procedural fairness, courts examine the negotiating process leading to the settlement. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005); D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001).* To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974).*

12. Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores, 396 F.3d at 116* [\*13] (internal quotation and citation omitted); *see also In re EVCI Career Colls. Holding Corp. Sec. Litig., No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, 2007 WL 2230177, at \*4 (S.D.N.Y. July 27, 2007); Spann v. AOL Time Warner, Inc., No. 02 Civ. 8238, 2005 U.S. Dist. LEXIS 10848, 2005 WL 1330937, at \*6 (S.D.N.Y. June 7, 2005).*

13. A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length

negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, 396 F.3d at 116* (quoting *Manual for Complex Litigation, Third,* § 30.42 (1995)); *see also D'Amato, 236 F.3d at 85.* "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig., 2007 U.S. Dist. LEXIS 57918, 2007 WL 2230177, at \*4; see also In re Top Tankers, Inc. Sec. Litig., No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106, 2008 WL 2944620, at \*3 (S.D.N.Y. July 31, 2008); In re BankAmerica Corp. Secs. Litig., 210 F.R.D. 694, 700 (E.D. Mo. 2002).*

### Procedural Fairness

14. The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See Fed. R. Civ. P. 23(e); McMahon v. Olivier Cheng Catering & Events, LLC, No. 08 Civ. 8713, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at \*4 (S.D.N.Y. Mar. 3, 2010).* The settlement was reached after the parties [\*14] had conducted a thorough investigation and evaluated the claims and defenses, and after arm's-length negotiations between the parties. Swartz Decl. ¶¶ 6-13, 18-23.

15. Prior to mediation, Plaintiffs and Defendants both retained economic experts to analyze the data and perform damages calculations. Swartz Decl. ¶ 19. On August 22, 2012, the parties attended a 17.5 hour mediation with an experienced employment law mediator. *Id.* ¶ 20. The parties made progress toward a settlement and, during the next three months, exchanged more information and ultimately reached an agreement on all terms, which they memorialized in the Settlement Agreement. *Id.* These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores, 396 F.3d at 116; McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at \*4.*

16. In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Hernandez v. Merrill Lynch & Co., Inc., No. 11 Civ. 8472, 2012 U.S. Dist. LEXIS 165771, 2012 WL 5862749, at \*2 (S.D.N.Y. Nov. 15, 2012)* [\*15] (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P., No. 09 Civ. 10211, 2011 U.S. Dist. LEXIS 64218, 2011 WL 2208614, at \*10 (S.D.N.Y. June 7, 2011)* (commending Plaintiffs' attorneys for negotiating early settlement); *In re Interpublic Sec. Litig., No. 02 Civ. 6527,*

2013 U.S. Dist. LEXIS 144327, *15

*2004 U.S. Dist. LEXIS 21429, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004)* (early settlements should be encouraged when warranted by the circumstances of the case). The parties here acted responsibly in reaching an early settlement. *See Hernandez, 2012 U.S. Dist. LEXIS 165771, 2012 WL 5862749, at *2; In re Interpublic Sec. Litig., 2004 U.S. Dist. LEXIS 21429, 2004 WL 2397190, at *12*.

**Substantive Fairness**

17. The settlement is substantively fair. All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

18. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the **[*16]** defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *495 F.2d at 463*.

19. Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

20. The class's reaction to the settlement was positive. The Notices included an explanation of the allocation formula and an estimate of each Class Member's award. The *Rule 23* Notice also informed *Rule 23* Class Members of their right to object to or exclude themselves from the Settlement and explained how to do so. No Class Member objected to the settlement, and only eight of the 2,203 *Rule 23* Class Members opted out. This favorable response demonstrates that the class approves of the settlement and supports final approval. "The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness." *See Willix v. Healthfirst, Inc., No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011)* (approving settlement where **[*17]** seven of 2,025 class member submitted timely objections and two requested exclusion); *Khait v. Whirlpool Corp., No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010)* (the fact that no class members objected and two opted out demonstrated

favorable response weighing in favor of final approval); *Wright v. Stern, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008)* ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

21. The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004)* (internal quotation marks omitted). Here, through an efficient, informal exchange of information, Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue. The parties' participation in a 17.5 hour mediation allowed them to further explore the claims and defenses. The third *Grinnell* factor weighs in favor of final approval.

22. The risk of establishing liability **[*18]** and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Paine Webber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997)*. Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits. *See In re Ira Haupt & Co., 304 F. Supp. 917, 934 (S.D.N.Y. 1969)*; *see also Velez v. Majik Cleaning Serv., Inc., No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 22, 2007)*. Here, Plaintiffs faced numerous risks as to both liability and damages, including overcoming Defendants' exemption defenses, proving willfulness in order to obtain a third year of liability and damages, and overcoming Defendants' likely fluctuating workweek argument, among others. The proposed settlement eliminates this uncertainty. This factor therefore weighs in favor of final approval.

23. The risk of obtaining collective and class certification and maintaining both through trial is also present. Contested collective and class certification motion would likely require extensive discovery and briefing. If the Court did authorize notice to the FLSA collective, Defendants would likely challenge that determination by seeking decertification at a **[*19]** later date, after the close of discovery. If the Court were to grant class certification, Defendants might seek to file an appeal under *Federal Rule of Civil Procedure 23(f)*, the resolution of which would require an additional round of briefing. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The fifth *Grinnell* factor weighs in favor of final approval.

24. Even if Defendants could have withstood a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement

2013 U.S. Dist. LEXIS 144327, *19

is unfair." *Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005)* (quoting *In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000)*) (alterations and citation omitted)). Accordingly, this factor is neutral and does not preclude the Court from approving the settlement.

25. The substantial amount of the settlement, in light of the best possible recovery and the attendant risks of litigation, weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank, 228 F.R.D. at 186* [*20] (quoting *In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d at 178*). "Instead, 'there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)*). These factors also weigh in favor of final approval.

## APPROVAL OF THE FLSA SETTLEMENT

26. The Court hereby approves the FLSA settlement.

27. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," *McKenna v. Champion Intern. Corp., 747 F.2d 1211, 1213 (8th Cir. 1984)*; FLSA collective actions do not implicate the same due process concerns as *Rule 23* actions, *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6*. Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under *Rule 23*.

28. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)*; [*21] *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6*. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores, 679 F.2d at 1353-54*. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id. at 1354*; *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *6*.

29. In this case, the settlement was the result of arm's-length negotiation involving vigorous back and forth. Swartz Decl. ¶ 23. During the entire process, Plaintiffs and Defendants were represented by counsel experienced in wage and hour law. Accordingly, the Settlement Agreement resolves a *bona fide* dispute under circumstances supporting a finding that is fair and reasonable.

## DISSEMINATION OF NOTICE

30. Pursuant to the Preliminary Approval Order, the *Rule 23* and FLSA Notices were sent by first-class mail to each respective Class Member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located). The Court finds that the *Rule 23* and FLSA Notices fairly and adequately advised Class Members of the terms of the settlement, as well as the right of *Rule 23* Class Member to opt [*22] out of or to object to the settlement, and to appear at the fairness hearing conducted on July 25, 2013. Class Members were provided with the best notice practicable under the circumstances.

31. On August 1, 2013, additional Notices were sent to the 62 Class Members who were inadvertently excluded from the data sent to the Claims Administrator.

32. The second notice period ended on September 3, 2013. No Class Members included in this second mailing opted out or objected.

33. The addition of the 62 Class Members who had inadvertently been omitted from the original mailing and the corrected workweeks for the 93 Class Members who were entitled to higher settlement amounts caused a shortfall in the Settlement Fund because the original Notices advised Class Members that they would receive no less than the amount that had been printed on their Notice. To absorb some of the shortfall, Class Counsel voluntarily reduced their fee request from one-third to 31.7% of the Settlement Fund. An additional $45,000 will be used from the errors and omissions fund, and HSBC agreed to pay the remaining balance.

34. The Court further finds that the Notices and their distribution comported with all constitutional [*23] requirements, including those of due process.

35. The Court confirms Kurtzman Carson Consultants, LLC as the claims administrator.

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND AWARD OF SERVICE AWARDS TO PLAINTIFFS

36. On April 29, 2013, the Court appointed Outten & Golden LLP; Fitapelli & Schaffer, LLP; Lee Litigation

2013 U.S. Dist. LEXIS 144327, *23

Group, PLLC; and Shavitz Law Group, P.A. as Class Counsel because they met all of the requirements of *Federal Rule of Civil Procedure 23(g)*. *See Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 165 (S.D.N.Y. 2008)* (*Rule 23(g)* requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class.") (internal quotation marks omitted).

37. Class Counsel are experienced employment lawyers with good reputations among the employment law bar. *See Sewell v. Bovis Lend Lease, Inc., No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556, 2012 WL 1320124, at *12 (S.D.N.Y. Apr. 16, 2012)* (noting Outten & Golden LLP's reputation as [*24] a "respected labor and employment firm" and that attorneys had "prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Palacio v. E*TRADE Fin. Corp., No. 10 Civ. 4030, 2012 U.S. Dist. LEXIS 41886, 2012 WL 1058409, at *2 (S.D.N.Y. Mar. 12, 2012)* (appointing Outten & Golden LLP and Shavitz Law Group, P.A. as Class Counsel based on their experience in "numerous wage and hour class and collective actions"); *Tiro v. Pub. House Investments, LLC, 288 F.R.D. 272, 280 (S.D.N.Y. 2012)* (appointing Fitapelli & Schaffer, LLP as class counsel because "counsel is qualified to represent the classes").

38. The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests. Class Counsel have committed substantial resources to prosecuting this case.

39. The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $4,953,125, which is 31.7% of the settlement fund.

40. The trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one. *McDaniel v. County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010)*; [*25] *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005)*; *Sewell, 2012 U.S. Dist. LEXIS 53556, 2012 WL 1320124, at *10*; *Beckman, 293 F.R.D. 467, 2013 U.S. Dist. LEXIS 60894, 2013 WL 1803736, at *8*.

41. Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, *McDaniel, 595 F.3d at 417*,

in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *Beckman, 293 F.R.D. 467, 2013 U.S. Dist. LEXIS 60894, 2013 WL 1803736, at *8*; *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7*. Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg, No. 08 Civ. 7840, 2010 U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)*. The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7*; *Sand, 2010 U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3*.

42. Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately [*26] compensated for their efforts. *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7*; *Sand, 2010 U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3*. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Willix v. Healthfirst Inc., No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011)*; *Sand, 2010 U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3* ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

41. Class Counsel's request for 31.7% of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *7*.

42. Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany* does not address a common fund fee petition, it supports class counsel's request for one-third of the fund because "'reasonable, paying client[s]' . . . typically pay one-third of their recoveries under private retainer agreements." *McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *8* (internal citation and quotations omitted).

43. In addition, in Plaintiffs' retainer agreements with Class Counsel, Plaintiffs agreed that Class Counsel could apply to the Court for up to 33% of a class-wide recovery and [*27] that they would pay Class Counsel 33% of any individual recovery. Decl. of Justin M. Swartz in Supp. of Pls.' Mot. for Approval of Attys' Fees and Reimbursement

of Expenses and Pls.' Mot. for Approval of Service Awards ("Swartz Fees & Service Awards Decl.") ¶ 11. This also provides support for Class Counsel's request for 31.7% of the fund.

44. No Class Member objected to Class Counsel's request for one-third of the fund, which also provides support for Class Counsel's fee request of 31.7%.

45. All of the factors in *Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 48-49 (2d Cir. 2000)* weigh in favor of the requested fee award.

46. Applying the lodestar method as a "cross check," *see id. at 50*, the Court finds that the fee that Class Counsel seeks is reasonable. "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman, 293 F.R.D. 467, 2013 U.S. Dist. LEXIS 60894, 2013 WL 1803736, at *13*; *see also Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1052-54 (9th Cir. 2002)* ( nationwide class action settlements where multiplier ranged up to 8.5 times); *Sewell, 2012 U.S. LEXIS 53556, 2012 WL 1320124, at *13* ("Courts commonly award lodestar multipliers between two and six."); *In re Lloyd's Am. Trust Fund Litig., No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002)* **[*28]** (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *see, e.g., Steiner v. Am. B'casting Co., Inc., 248 Fed. Appx. 780, 783 (9th Cir. 2007)* (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed); *Ramirez v. Lovin' Oven Catering Suffolk, Inc., No. 11 Civ. 520, 2012 U.S. Dist. LEXIS 25060, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012)* (granting attorneys' fees equal to 6.8 times lodestar); *Davis v. J.P. Morgan Chase & Co., 827 F. Supp. 2d 172, 184-86 (W.D.N.Y. 2011)* (awarding multiplier of 5.3 in wage and hour class action); *Buccellato v. AT&T Operations, Inc., No. 10 Civ. 463, 2011 U.S. Dist. LEXIS 85699, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011)* (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund v. First Data-bank, Inc., No. 05 Civ. 11148, 2009 U.S. Dist. LEXIS 68419, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009)* (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig., 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008)* (awarding multiple of 5.2); *In re Cardinal Health Inc. Sec. Litigs., 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007)* (awarding multiplier of six times); *In re Rite Aid Corp. Secs. Litig., 362 F. Supp. 2d 587 (E.D. Pa. 2005)* **[*29]** (awarding multiplier of seven times); *Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002)* ("modest

multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig., No. 88 Civ. 7905, 1992 U.S. Dist. LEXIS 12702, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992)* (awarding multiplier of 6); *Cosgrove v. Sullivan, 759 F. Supp. 166, 167 n. 1 (S.D.N.Y. 1991)* (awarding multiplier of 8.74).

47. Here, the lodestar sought by Class Counsel, approximately 7.6 times, falls within the range granted by courts and equals the 31.7% being sought. While this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial. *See Wal-Mart Stores, 396 F.3d at 121* ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); *Vizcaino, 290 F.3d at 1050 n. 5* (noting that "the lodestar method does not reward early settlement" and that "class counsel **[*30]** should [not] necessarily receive a lesser fee for settling a case quickly"); *Savoie v. Merchants Bank, 166 F.3d 456, 461 (2d Cir. 1999)* ("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.").

48. The lodestar multiplier Class Counsel seeks is also reasonable because it will diminish over time. *Parker v. Jekyll & Hyde Entm't Holdings, LLC, No. 08 Civ. 7670, 2010 U.S. Dist. LEXIS 12762, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010)* ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time"). "[W]here 'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower' because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell, 2012 U.S. Dist. LEXIS 53556, 2012 WL 1320124, at *13* (quoting *Bellifemine v. Sanofi-Aventis U.S. LLC, No. 07 Civ. 2207, 2010 U.S. Dist. LEXIS 79679, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010)).* **[*31]** In wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund. *See* Swartz Fees &

2013 U.S. Dist. LEXIS 144327, *31

Service Awards Decl. ¶ 12. "The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request." *See McMahon, 2010 U.S. Dist. LEXIS 18913, 2010 WL 2399328, at *8.*

49. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $33,155.56. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003).* Here, Class Counsel's unreimbursed expenses, including court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's fees, are reasonable and **[*32]** were incidental and necessary to the representation of the class.

50. The attorneys' fees and the amount in reimbursement of litigation costs and expenses shall be paid from the settlement fund.

51. The Court finds reasonable service awards of $10,000 each to named Plaintiffs Sharon Yuzary, Jon Racow, Henry Hu, Mina Dimetry, Teron Haughton, Daniel Hauer, Billy Tzewa Mui, Calvin Mazlumyan, and Kim LeBleu. These amounts shall be paid from the settlement fund.

52. Service awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *McMahon, 2010 U.S. Dist. LEXIS 18913, 2011 4599822, at *9.* Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take. *Massiah v. MetroPlus Health Plan, Inc., No. 11 Civ. 5669, 2012 U.S. Dist. LEXIS 166383, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012).*

53. The "Effective Date" of the settlement shall be 5 days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlement shall be the **[*33]** day after all appeals are finally

resolved. This Order shall constitute a judgment for purposes of *Rule 58 of the Federal Rules of Civil Procedure.*

54. Within 3 days of time to appeal this Order has expired, the claims administrator shall distribute the funds in the settlement account by making the following payments in the order below:

A. Paying Class Counsel 31.7% of the fund ($4,953,125);

B. Reimbursing Class Counsel for $33,155.56 in litigation costs and expenses;

C. Paying service awards of $10,000 each to named Plaintiffs Sharon Yuzary, Jon Racow, Henry Hu, Mina Dimetry, Teron Haughton, Daniel Hauer, Billy Tzewa Mui, Calvin Mazlumyan, and Kim LeBleu;

D. Paying the remainder of the fund to class members in accordance with the allocation plan described in the Settlement Agreement.

55. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

56. Upon the Effective Date, this litigation shall be dismissed with prejudice, and all *Rule 23* Class Members who have not excluded themselves **[*34]** from the settlement and all FLSA Class Members who have opted in to the lawsuit shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the settlement.

Plaintiffs pending motions (Dkt. Nos. 73, 79 and 81) are granted. The Clerk of Court is respectfully requested to terminate these motions and to close this case.

It is so ORDERED this 2nd day of October, 2013.

/s/ Paul G. Gardephe

Honorable Paul G. Gardephe

United States District Judge